HOLLAND & KNIGHT LLP
Neal N. Beaton (*pro hac vice*)
Email: neal.beaton@hklaw.com
31 West 52nd Street
New York, NY 10019
Telephone (212) 513-3470
Facsimile (212) 385-9010

Attorneys for Defendant
JAPAN TOBACCO INC.

*Additional Counsel Listed on Signature Page*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| PETER STALEY; *et al.*<br><br>Plaintiffs,<br><br>v.<br><br>GILEAD SCIENCES, INC.; *et al*,<br><br>Defendants. | Case No. 3:19-cv-02573-EMC<br><br>**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR RECONSIDERATION BASED ON NEWLY DISCOVERED EVIDENCE**<br><br>Ctrm: 5-17th Floor<br>Judge: Honorable Edward M. Chen |

**<u>REDACTED</u> VERSION OF DOCUMENT SOUGHT TO BE SEALED**

# TABLE OF CONTENTS

Page

I. INTRODUCTION ...............................................................................................................1

II. LEGAL STANDARD..........................................................................................................1

III. RELEVANT BACKGROUND ...........................................................................................2

    A. The 2003 License Granted JT a License to Sell Gilead's Products Only in Japan..............2

    B. Notwithstanding the Lack of Relevance, JT Produced the 2003 License When Asked......3

    C. Plaintiffs' Misquote JT's Counsel ........................................................................................3

IV. LEGAL ARGUMENT.........................................................................................................4

    A. The 2003 License Does Not Contain a "No Generics Restraint" .......................................4

        1. Section 6.8 Does Not Restrict Competition in the United States ..................................4

        2. Section 6.7(c) Does Not Contain a "No-Generics Restraint" .......................................5

            a) "Licensed Products" Do Not Include Generic Versions..........................................6

            b) JT Could Terminate the 2003 License at Will and Without Penalty ......................7

        3. JT Was Free to Develop New Antiviral Compounds with Third Parties ......................8

        4. The Terms of the 2003 License Are Different from Gilead's Agreements
            with BMS and Janssen......................................................................................................9

    B. Plaintiffs Do Not Carry Their Procedural Burden for Reconsideration ............................11

V. CONCLUSION..................................................................................................................13

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA  90071
Tel: 213.896.2400
Fax: 213.896.2450

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Automotive Alignment v. State Farm*,
  – F.3d – (2020), 2020 WL 1074420 (11th Cir. Mar. 6, 2020) ....................................................... 12

*In re Finisar Corporation Securities Litigation*,
  Slip Copy, 2019 WL 22247750, *5 (N.D. Cal. May 24, 2019) ............................................. 12, 13

*Kona Enters., Inc. v. Estate of Bishop*,
  229 F.3d 877 (9th Cir. 2000) ................................................................................................. 2, 13

*Turner v. City and County of San Francisco*,
  892 F. Supp. 2d 1188, 1220 (N.D. Cal. 2012) ............................................................................ 12

**Other Authorities**

Civil Local Rule 7-9(b) ............................................................................................... 1, 2, 11, 12

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA  90071
Tel: 213.896.2400
Fax: 213.896.2450

-ii-

DEFENDANTS' OPPOSITION TO
PLAINTIFFS' MOTION FOR RECONSIDERATION
BASED ON NEWLY DISCOVERED EVIDENCE

Case No. 3:19-cv-02573-EMC

## I. INTRODUCTION

Japan Tobacco Inc. ("JT") and Gilead Sciences, Inc., Gilead Holdings, LLC, Gilead Sciences, LLC, and Gilead Sciences Ireland UC ("Gilead") (together, "Defendants") hereby respond to Plaintiffs' Motion for Reconsideration Based on Newly Discovered Evidence. Plaintiffs' Motion is a "Hail Mary" attempt to save their conspiracy claims against JT and Gilead by advancing an entirely new theory of liability based on a completely different agreement than the one upon which the Complaint was based. They do so by misinterpreting the agreement, the July 2003 License Agreement between JT and Gilead ("2003 License"); by distorting the comments of JT's counsel at the January 16, 2020 hearing on the motions to dismiss; by mischaracterizing the 2003 License as "newly discovered evidence"; and by erroneously arguing that their interpretation of the 2003 License provides a basis for the Court to reconsider its decision on the 2005 EVG License. By its terms, the 2003 License was limited to the distribution of Gilead's branded "Licensed Products" by JT only in Japan; it had nothing to do with any products in the United States. Any careful reading of the language in the 2003 License upon which Plaintiffs rely for their "No Generics Restraint" argument reveals that the language does not apply to generic products and would not prohibit JT from distributing generic products in competition with Gilead in the United States.

In any event, Plaintiffs cannot show that the 2003 License was discovered *after* the Court issued its March 3, 2020 Order, as required for reconsideration under the Local Rules. It was the subject of a 2003 press release, was referenced in the public 2005 EVG License Agreement filed with the Court on September 4, 2019, and was itself produced on February 21, 2020.

For all these reasons, the Court should deny the Motion for Reconsideration.

## II. LEGAL STANDARD

A party seeking leave for reconsideration must show "reasonable diligence in bringing the motion," and one of the three grounds for reconsideration set forth in Civil Local Rule 7-9(b), as relevant here "the emergence of new material facts or a change of law occurring after the time of such order." Civ. L.R. 7-9(b)(2).

Reconsideration is an "extraordinary remedy, to be used sparingly." *Kona Enters., Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000). Absent highly unusual circumstances, a motion for reconsideration will not be granted "unless the district court is presented with *newly discovered evidence, committed clear error, or if there is an intervening change in the controlling law.*" *Id.* (emphasis added) (citation omitted) (post-judgment motion).

Plaintiffs fail to carry their substantive burden on the merits and to meet the procedural standard for reconsideration.

## III.   RELEVANT BACKGROUND

Before turning to the merits of Plaintiffs' arguments, Defendants will address the Plaintiffs' accusations that JT and/or its counsel have tried to hide facts by withholding production of the 2003 License and by making false statements to the Court at the hearing on the Motions to Dismiss. Mot. at 2:15, 3:7-17. Neither of these accusations has any merit whatsoever and Plaintiffs' reliance on such attacks reinforces what JT has said all along, there is no basis to keep JT in this lawsuit.

### A.    The 2003 License Granted JT a License to Sell Gilead's Products Only in Japan

The sole purpose of the 2003 License was to allow JT to sell Gilead's HIV products only in Japan, where "JT possesse[d] extensive capabilities in the development, promotion and marketing in Japan of pharmaceutical products" and "desire[d] to obtain the exclusive right to develop and commercialize" Gilead products "in Japan." *See* E. Kelly Declaration in support of Plaintiffs' Motion, Ex. 2 ("2003 License") at Recitals. The 2003 License solely concerns the development and commercialization of Gilead's "Licensed Products," including TDF, FTC, GS-7340 (TAF), and the" Combination Product" (TDF and FTC) in Japan—not anywhere else in the world. *See* 2003 License § 6.1. The "Licensed Products," including Truvada—the "Combination Product"—were all products patented by Gilead and did not include any products co-formulated with JT. Unsurprisingly, the 2003 License did not permit JT to do anything outside of Japan with Gilead's Licensed Products. As Section 6.3 states, "the scope of the license granted to JT pursuant to Section 6.1 is limited to activities conducted with respect to the Licensed Products for the Licensed Indication in the JT Territory." *See* § 1.37 ("JT Territory shall mean Japan, and the possessions and territories thereof."). Plaintiffs do not dispute that the exclusive license is limited to Japan. *See* Mot. at 1:16, 3:26-27. Tellingly, the

-2-

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA  90071
Tel: 213.896.2400
Fax: 213.896.2450

Gilead Patents at issue in Exhibit B to the License Agreement are all *Japanese* patents or patent applications (the only mention of U.S. patents is in connection with identifying new Japanese applications not yet submitted). *See* 2003 License, Exhibit B.

### B. Notwithstanding the Lack of Relevance, JT Produced the 2003 License When Asked

JT did not initially produce the 2003 License in this case because the license related solely to Japan—it did not impact sales of any drugs, including EVG, in the U.S. market. The Complaint is clear that the relevant geographic market in this case is limited to the United States. Compl. ¶ 399. However, in the course of producing non-custodial files related to the 2005 EVG License negotiations between JT and Gilead, JT inadvertently produced a Japanese language summary of the 2003 License. *See* Declaration of Ashley L. Shively, filed concurrently ("Shively Decl.") ¶ 2. JT realized on February 11, 2020 that it had made this inadvertent production when Plaintiffs' counsel requested a copy of the underlying 2003 License, stating that Plaintiffs' translation of the Japanese language summary indicated that the 2003 License had a "no generics restraint." *Id.* ¶ 4. Rather than claw back the summary, JT decided to produce a copy of the 2003 License to show Plaintiffs' counsel that their contentions as to the 2003 License, based on a Japanese language summary, were clearly wrong. *Id.* ¶ 5. JT sought to avoid wasting the Court's time with a meritless dispute over an irrelevant license agreement. JT located an executed copy of the English language 2003 License and sent it to Plaintiffs as a stand-alone document on February 21, 2020, twelve days before the Court's Order on the Motion to Dismiss. *Id.* ¶ 6. JT thus produced the document within seven business days of Plaintiffs' request. Plaintiffs' insinuation that JT resisted production and "finally" produced the document on February 21 is quite an exaggeration. *See* Mot. at 2:15.

### C. Plaintiffs' Misquote JT's Counsel

Plaintiffs also make the baseless and troubling accusations that "[w]e now know that JT's representations regarding the absence of any express restraint on their ability to compete with Gilead, on which this Court relied, were inaccurate." Mot. at 3:16-17. As an initial matter, JT's argument at

-3-

DEFENDANTS' OPPOSITION TO
PLAINTIFFS' MOTION FOR RECONSIDERATION
BASED ON NEWLY DISCOVERED EVIDENCE

Case No. 3:19-cv-02573-EMC

that hearing concerned the only JT license at issue in the Complaint—the March 2005 EVG License[1] between JT and Gilead, not the 2003 License. Counsel's statements to the Court during the January 16, 2020 hearing were directed at the 2005 EVG License and are, and remain, 100% correct in the context of that License which was the only agreement at issue for JT.[2]

But the comments were 100% accurate as applied to the 2003 License as well. As set forth below, the 2003 License, which does not even concern the sorts of FDCs at issue in Plaintiffs' Complaint, also does not contain a so-called "No-Generics Restraint." Nor does the 2003 License prevent JT from competing with Gilead outside of Japan using JT's own drugs or using any drugs that are not Gilead's branded drugs. And as the Court has concluded, the 2005 EVG License does not include a so-called "No-Generics Restraint" (Order at 31-33), and nothing in the 2003 License changes the accuracy of that conclusion.

## IV.   LEGAL ARGUMENT

### A.   The 2003 License Does Not Contain a "No Generics Restraint"

#### 1.   Section 6.8 Does Not Restrict Competition in the United States

Plaintiffs contend that the 2003 License contains two "express non-compete provisions": Section 6.8 and Section 6.7(c)(ii). Mot. at 3-4. But contrary to Plaintiffs' assertion, the 2003 License contains only one such provision. *See* 2003 License at § 6.8 ("Exclusivity Commitment"). And, as Plaintiffs concede, that provision was limited to Japan. Mot. at 3-4 ("Section 6.8, which applies only 'in the JT Territory' (i.e., Japan) . . . ."). Thus, Section 6.8 contains no restrictions as to the development, sale, or marketing of any products by JT in the United States. JT was free to compete against Gilead in the United States with any products of its own, or in combination with other companies' products.

---

[1] The Court's March 3, 2020 Order (Dkt. 273) at page 31 contains a typographic error as to the date of the EVG License; the EVG License was dated March 2005, not March 2015.

[2] Defendants call to the attention of the Court that the quotation of JT's counsel that appears at page 3 of Plaintiffs' Motion is <u>not</u> an accurate verbatim quote. Inserting only a "[¶]," Plaintiffs truncated the quote and inserted words that did not appear in the transcript without properly disclosing that alterations had been made. *See* Shively Decl. ¶ 10 (comparing Plaintiffs excerpt with the hearing transcript).

-4-

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA  90071
Tel: 213.896.2400
Fax: 213.896.2450

Having conceded that Section 6.8 applies only to Japan, Plaintiffs next turn to ▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ As the title suggests, this Section contains express covenants not to do what the 2003 License does not expressly authorize. The covenants in Section 6.7 are totally unremarkable: In Sections 6.7(a) and (b), Gilead and JT each expressly promise, in reciprocal fashion, to abide by the scope of the license. Plaintiffs' reliance [*see* Mot. at 4] on Section 6.7(b) offers no basis for reconsideration. As Plaintiffs concede, in Section 6.7(b) JT merely "covenants that it shall not practice ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

*See* Mot. at 4:3-4.

### 2.   Section 6.7(c) Does Not Contain a "No-Generics Restraint"

Plaintiffs' argument finally resorts to Section 6.7(c), specifically sub-section (ii). Mot. at 4:4-8. In Section 6.7(c)(ii), JT covenants that it will not use the Licensed Products in a way that would create a new combination product using Gilead's TDF, FTC, or TAF. Section 6.7(c)(ii) reads as follows:



This covenant as to the Licensed Products merely backstops the exclusive license that Gilead granted to JT. *See* 2003 License in Section 6.1. In other words, JT agreed not to do something that the license (under Section 6.1) did not expressly permit JT to do—combine Gilead's "Licensed Products" with any other product.

-5-

Ignoring that the 2003 License in Section 6.1 gives JT rights to Gilead's "Licensed Products" only in the JT Territory (Japan), Plaintiffs assert that Section 6.7(c)(ii) applies to JT "*worldwide.*" *See* Mot. at 4:17 (emphasis in original). But Section 6.7(c)(ii) obviously must be read in light of its defined terms and contractual context.

Plaintiffs further argue that Section 6.7(c)(ii) is a "No-Generics" provision—"the very No-Generics Restraints that JT told this Court JT had not entered into with Gilead." Mot. at 3:17-19. In fact, nowhere in Section 6.7(c)(ii) is a restraint against generic products mentioned—the provision speaks only of "Licensed Products," and Plaintiffs have flatly ignored the definition of the term "Licensed Product(s)" in the 2003 License. As relevant here, the term plainly does <u>not</u> include any generic versions of the "Licensed Products."

### a)     "Licensed Products" Do Not Include Generic Versions

"Licensed Product(s)" is defined in Section 1.41 to mean ████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████ This definition uses two other key terms, "Product" and "MAA," that are themselves defined terms in the 2003 License.

The term "Product" is defined in Section 1.57 to mean ████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ██████████████.

But Gilead never filed an MAA in the United States for a generic version of TDF, GS-7340 (TAF), FTC, or any "Combination Product" (defined in Section 1.4 of the 2003 License as ████ ████. Thus, these definitions in the 2003 License make it clear that "Licensed Products" include only

-6-

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400
Fax: 213.896.2450

1  the branded versions of TDF, GS-7340 (TAF), FTC and a combination of TDF and FTC; versions
2  for which Gilead holds an NDA or the equivalent. The term "Licensed Products" does not include
3  ANDA products or generics by competing generic manufacturers.
4      Although there is no ambiguity that the term "Licensed Product" in Section 6.7(c)(ii) does not
5  include generic equivalents, Section 8.3(a)(iii) reinforces this fact. ███████████████████
6  ████████████████████████████████████████████████████████████████████████████
7  ████████████████████████████████████████████████████████████████████████████
8  ████████████████████████████████ Clearly, the parties did not intend to include a "Generic Product"
9  in the definition of a "Licensed Product."
10      Finally, the term "Licensed Products" is used throughout the License to refer to Gilead's
11  products. *See, e.g.*, 2003 License, Article 7 ("Manufacture and Supply"), § 7.1 ██████████
12  ██████████████████████████████. If this term were re-defined, as Plaintiffs seek to do, to
13  include generic versions of Gilead's products, few of these terms would make sense. ████████
14  ████████████████████████████████████████████████████████████████████████████
15  ████████████████████████████████████████████████████████████████████████████
16  ████████████████████████████████████████████████████████████████████████████
17  ███████████████████████████████████████████████████████████████████ The use
18  of the term "Licensed Products" in Section 6.7(c)(ii) therefore clearly does <u>not</u> include generic
19  equivalents of a "Licensed Product."
20      Plaintiffs' interpretation of the 2003 License is mistaken; it is contradicted not only by the
21  plain overall intent of the License as limited to Japan, but also by the clear and unambiguous
22  definition of the term "Licensed Products," which expressly does not include any generic equivalents.
23  Nothing in the 2003 License restricted JT's ability to compete with Gilead in the United States or
24  anywhere else in the world outside of Japan, as long as JT did not use the branded Gilead "Licensed
25  Products" in combination with other drugs.
26      **b)    JT Could Terminate the 2003 License at Will and Without Penalty**
27      Plaintiffs are also mistaken in their contention that JT was barred by the 2003 License from
28  entering into the generic market "for a minimum of ten years even if Gilead's patents have expired."

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA  90071
Tel: 213.896.2400
Fax: 213.896.2450

1  Mot. at 4. Contrary to Plaintiffs' argument, the 2003 License did not lock JT in for ten years; instead

2  it was easily terminable by JT. ███████████████████████████████████████████████

3  ████████████████████████████████████████.³ The only "penalty" to which

4  Plaintiffs refer [Mot. at 4:11] ████████████████████████████████████████

5  ████████████████████████████████████████████████████████████ This very

6  normal condition, ██████████████████████████████████████, did not in

7  any way impair JT's ability to market generic or other branded drugs in competition with Gilead in

8  the United States or anywhere else. Had JT voluntarily terminated the 2003 License by which it was

9  authorized to sell Gilead's products in Japan, JT would obviously no longer have the right to sell

10 those Gilead products.⁴ The requirement █████████████████████████████

11 ██████████████████████ is not anticompetitive. To do otherwise would endanger patients in

12 Japan who were relying on those Gilead drugs to treat HIV.

### 3.  JT Was Free to Develop New Antiviral Compounds with Third Parties

14 There is at least one additional provision that undercuts Plaintiffs' interpretation of the 2003

15 License as anti-competitive.

16 ████████████████████████████████████████████████████████████████

17 ████████████████████████████████████████████████████████████████

18 ████████████████████████████████████████████████████████████████

19 ████████████████████████████████████████████████████████████████

20 ████████████████████████████████████████████████████████████████

21 ████████████████████████████████████████████████████████████████

22 ████████████████████████████ Under Section 6.9(c), if JT were to develop a new

23 compound useful to prevent or treat HIV, ████████████████████████████████

24 ████████████████████████████████████████████████████████████████

25  ³ ██████████████████████████████████████████████████████████

26 ████████████████████████████████████████████████████████████████

27  ⁴Moreover, once terminated, Section 6.7 of the 2003 License would no longer have been in
    effect. That Section was not included in any of the sections that survived termination of the 2003
28  License. *See* 2003 License at § 14.9.

-8-

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400
Fax: 213.896.2450

1 ▮▮▮▮▮ Importantly for current purposes, JT was required ▮▮▮▮▮
2 ▮▮▮▮▮
3 ▮▮▮▮▮
4 ▮▮▮▮▮
5 ▮▮▮▮▮
6 ▮▮▮▮▮ If the intent of the 2003 License was to restrain generic competition, as Plaintiffs' claim,
7 ▮▮▮▮▮
8 ▮▮▮▮▮

### 4. The Terms of the 2003 License Are Different from Gilead's Agreements with BMS and Janssen

Plaintiffs also contend that "JT has signed the same No-Generics Restraint extending beyond the expiration of Gilead's patents that pervades each of the co-defendants' agreements with Gilead." Mot. at 4, line 23.[5] But as shown above, the 2003 License does not contain any "No Generic Restraint." Furthermore, the structure, purpose, and terms of the 2003 License materially differ from the agreements that Gilead entered with BMS and Janssen. Those agreements generally involved joint development of "Combination Products" using drugs developed by both parties to those agreements. By contrast, the 2003 License involves only drugs under patent to Gilead and none under patent to JT. Under the 2003 License, Gilead is the sole licensor. As such Gilead is entitled to impose reasonable restrictions on its licensee. That is all that Gilead did in the 2003 License.

This is an important distinction. In its March 3, 2020 Order, the Court, for purposes of the Motions to Dismiss, deemed the Gilead/BMS and Gilead/Janssen agreements to be "joint ventures" to develop "combination products" comprised of drug(s) from Gilead and drug(s) from each of the others ("co-formulated product"). Order at 18. Conversely, the 2003 License is a straight license for JT to sell Gilead's drugs in Japan. While it remains Gilead's position that there was nothing anticompetitive about the BMS and Janssen collaborations, here, with JT, there was no "joint" effort,

---

[5] Nowhere do Plaintiffs specify in their Motion which portions of the BMS/Gilead and Janssen/Gilead agreements are supposedly "the same" as the 2003 License.

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400
Fax: 213.896.2450

no co-formulation, no cross-licensing, and no alleged conspiracy not to compete with the other's drug(s).

What the Court found to be sufficient allegations of potentially anticompetitive terms in Gilead's agreements with BMS and Janssen was not the joint development of a "Combination Product." Instead, it was that one or the other or both parties had allegedly agreed not to use its own patented drug to compete against the "Combination Product." *See* Order at 31; Order at 24. For example, as to the BMS Atripla® agreement, the Court declined to dismiss the "No-Generics Restraint" theory because the Court found that Section 2.9(a) of that Agreement and its limit on a "Combination Product" had ambiguity as to whether that included generic versions, as Plaintiffs contended in support of their "No-Generics Restraint" theory. Order at 24. While Gilead disagreed that there was ambiguity in Section 2.9(a) of the Atripla® agreement, the 2003 License here differs in any event. As set forth above, there is no ambiguity that in the 2003 License, "Licensed Products" (i) only included NDA products of Gilead, and (ii) that "Generic Products" are expressly defined and distinguished from Licensed Products, and so are not included in any restraint on Licensed Products.

In other words, what the Court found allegedly anticompetitive in the BMS and Janssen agreements with Gilead was that those agreements restrained what BMS and Janssen could do with their *own* products. By contrast, the only restraint the 2003 License is on what JT could do with *Gilead's* products in Japan under the license. Section 6.9(c) of the 2003 License underscores the distinction. ███████████████████████████████████████████████████
██████████████████████

The 2003 License also differs from the BMS and Janssen agreements with Gilead in that the termination clause in the 2003 License allowed JT to terminate the agreement "at will" ████████ ██████████ and with no penalty that was allegedly anticompetitive. The Gilead/BMS and the Gilead/Janssen agreements allegedly contained no comparable "at will" termination provisions.

Based on all of the above, there is nothing in the July 2003 License that changes the Court's correct interpretation and ruling *as to the lack of any anticompetitive effect from the March 2005 EVG License.* As the Court stated, "the problem for Plaintiffs is that there is no indication that Gilead and

Japan Tobacco agreed that the [2005 EVG] exclusive license would be used in an anticompetitive way." Order at 32. The same is true as to the 2003 License. The Court should deny Plaintiffs' Motion.

### B.     Plaintiffs Do Not Carry Their Procedural Burden for Reconsideration

Finally, the Court should deny Plaintiffs' Motion because it does not meet the test for "newly discovered evidence."

Plaintiffs premise their Motion solely on the contention that "new evidence" warrants reconsideration of the Court's March 3, 2020 Order. *See* Mot. at 2:2 (citing L.R. 7-9(b)(2)). As a threshold to reconsideration, Plaintiffs must thus show that the supposedly "new evidence" was discovered in the 26 hours between when the Court issued its Order and the afternoon of March 4, 2020—when they filed their Motion. *See* Civ. L.R. 7-9(b)(2) ("A party seeking leave for reconsideration must show reasonable diligence in bringing the motion, and … [t]he emergence of new material facts or a change of law occurring *after* the time of such order.") (emphasis added). Plaintiffs cannot meet this test.

*First*, Plaintiffs learned of the "newly discovered evidence" on which their Motion is based *before* the Court issued its Order. Plaintiffs first inquired about the 2003 License on a meet and confer call between the parties on February 11, 2020, during which Plaintiffs' counsel stated that they had translated the Japanese language summary of the 2003 License and contended that it includes a "No Generics Restraint." *See* Kelly Decl. ¶ 5. Notwithstanding that the document was irrelevant, and in a good faith effort to avoid an unnecessary discovery motion, JT produced a signed copy of the 2003 License, in English, on February 21. Shively Decl. ¶¶ 5, 6. For nearly two weeks after receiving the 2003 License, Plaintiffs did nothing to further engage with JT on this issue, nor did they bring the supposed "No Generics Restraint" clause in the 2003 License to the Court's attention. *Id.* ¶ 7. In other words, Plaintiffs held back supposedly critical "newly discovered" information until after JT prevailed on its Motion to Dismiss, and only then did Plaintiffs raise it belatedly.

*Second*, Plaintiffs offer no explanation of why, with reasonable diligence, they could not have discovered the 2003 License earlier. *See Automotive Alignment v. State Farm*, – F.3d – (2020), 2020 WL 1074420, *12 (11th Cir. Mar. 6, 2020) (affirming denial of reconsideration where moving party "failed to establish that this new evidence was previously unavailable" during pendency of case);

DEFENDANTS' OPPOSITION TO
PLAINTIFFS' MOTION FOR RECONSIDERATION
BASED ON NEWLY DISCOVERED EVIDENCE

Case No. 3:19-cv-02573-EMC

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400
Fax: 213.896.2450

*Turner v. City and County of San Francisco*, 892 F. Supp. 2d 1188, 1220 (N.D. Cal. 2012) (denying reconsideration where plaintiff failed to show "why he could not have discovered and presented [the supposedly newly discovered] information," which was elicited at deposition two months after the order in question, prior to the order). Plaintiffs say (incredibly) that the 2003 License was "unknown to Plaintiffs during the briefing and argument of the motions." Mot. at 1. But the 2003 License was publicly announced on July 31, 2003 and, in fact, the contemporaneous press release is the first result in a Google search for "Gilead Japan Tobacco License." Shively Decl. ¶ 8. JT and Gilead each also disclosed the existence of the 2003 License in their public SEC filings for multiple years. *Id.* ¶ 9. *See In re Finisar Corporation Securities Litigation*, Slip Copy, 2019 WL 22247750, *5 (N.D. Cal. May 24, 2019) ("Hartzmark 3 may have been newly procured [evidence], but that does mean there is an 'emergence of new material facts' under Civil Local Rule 7-9(b)(2).").

Further, the 2003 License is explicitly referenced no fewer than three times in the 2005 EVG License, and the 2005 EVG License was filed publicly with the SEC and published in Gilead's 2005 10-Q. Defendants also attached a copy of the 2005 EVG License to their motion to dismiss filed on September 4, 2019. *See* Ostrander Decl., Dkt. 144-1, Ex. D. The 2005 EVG License first refers to the 2003 License in Section 5.3(c) ("Gilead shall use commercially reasonable efforts to . . . provide JT or its Affiliates with, the following materials, information and opportunities . . . , which shall be used by JT or its Affiliates for the Commercialization of Products for the Licensed Indication in the JT Territory: . . . (iii) opportunities for two employees of JT or its Affiliates to participate in Gilead's training programs, on terms described in the License Agreement between the Parties dated July 31, 2003)"; the second reference to the 2003 License is in the attached JT draft press release, Schedule 13.3A at GIL-000000258 ("In July 2003, JT and Gilead announced that the two companies had signed a licensing agreement, under which JT would commercialize Gilead's anti-HIV drugs, Viread® (tenofovir disoproxil fumarate), Emtriva® (emtricitabine) and Truvada® (emtricitabine and tenofovir disoproxil fumarate) in Japan."); and the 2003 License is referenced again in Gilead's draft press release, Schedule 13.3(B) at GIL-000000260 ("Gilead and JT first partnered in July 2003, when the companies announced an agreement granting JT commercialization rights for Truvada®

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA  90071
Tel: 213.896.2400
Fax: 213.896.2450

(emtricitabine and tenofovir disoproxil fumarate), Viread® (tenofovir disoproxil fumarate) and Emtriva® (emtricitabine) in Japan."). The 2003 License was not "unknown" to Plaintiffs.

Thus, because the evidence on which Plaintiffs base their Motion—a publicly announced 2003 license agreement—was not in fact newly discovered and could have been discovered earlier with reasonable diligence, the Court should deny the Motion. *See In re Finisar Corporation Securities Litigation*, 2019 WL 22247750, *5 (reconsideration motion is "not a vehicle for ... presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a 'second bite at the apple.' ") (quoting *Sequa Corp. v. GBJ Corp.,* 156 F.3d 136, 144 (2nd Cir. 1998)); *cf. Kona Enters. v. Estate of Bishop*, 229 F.3d 877, 89 (9th Cir. 2000) (noting that "[a] Rule 59(e) motion [to alter or amend a final judgment] may not be used to raise arguments or present evidence for the first time when they could reasonably have been raised earlier in the litigation").

## V.   CONCLUSION

Plaintiffs' after-the-fact attempt to save their dismissed claims against JT and Gilead under the 2005 EVG License falls far short. They misread the 2003 License and misrepresent it to be something it was not, a "no generic restraint." Plaintiffs attempted the same tactic of misconstruing the 2005 EVG License, and the Court rejected it. The same result is appropriate here. The Court should deny Plaintiffs' Motion for Reconsideration and find that the 2003 License contains no anticompetitive restraints on generic competition.

Dated:  March 12, 2020                            HOLLAND & KNIGHT LLP


By: /s/ Jerome W. Hoffman
    Jerome W. Hoffman (*pro hac vice*)
    Attorneys for Defendant
    JAPAN TOBACCO INC.

*Additional Counsel for Defendant Japan Tobacco Inc.:*

| | |
|---|---|
| Jerome W. Hoffman (*pro hac vice*) | Thomas J. Yoo (SBN 175118) |
| Email: jerome.hoffman@hklaw.com | Email: thomas.yoo@hklaw.com |
| 50 N. Laura Street, Suite 3900 | 400 S. Hope St., 8th Floor |
| Jacksonville, FL 32202 | Los Angeles, CA 90071 |
| Telephone (904) 353-2000 | Telephone (213) 896-2400 |
| Facsimile (904) 358-1872 | Facsimile (415) 896-2450 |

-13-

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA  90071
Tel: 213.896.2400
Fax: 213.896.2450

John Kern (SBN 206001)
Email: john.kern@hklaw.com
Ashley L. Shively (SBN 264912)
Email: ashley.shively@hklaw.com
50 California Street, Suite 2800
San Francisco, CA 94111
Telephone (415) 742-6970
Facsimile (415) 743-6910

*Attorneys for Defendants Gilead Sciences, Inc., Gilead Holdings, LLC, Gilead Sciences, LLC, and Gilead Sciences Ireland UC:*

| | |
|---|---|
| Heather M. Burke (SBN 284100)<br>Jeremy K. Ostrander (SBN 233489)<br>**WHITE & CASE LLP**<br>3000 El Camino Real<br>2 Palo Alto Square, Suite 900<br>Palo Alto, CA  94306-2109<br>Telephone: (650) 213-0300<br>Facsimile: (650) 213-8158<br>hburke@whitecase.com<br>jostrander@whitecase.com | Christopher M. Curran (*pro hac vice*)<br>Peter J. Carney (*pro hac vice*)<br>**WHITE & CASE LLP**<br>701 Thirteenth Street, NW<br>Washington, District of Columbia 20005-3807<br>Telephone: (202) 626-3600<br>Facsimile: (202) 639-9355<br>ccurran@whitecase.com<br>pcarney@whitecase.com |

Heather K. McDevitt (*pro hac vice*)
Bryan D. Gant (*pro hac vice*)
**WHITE & CASE LLP**
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 819-8200
Facsimile: (212) 354-8113
hmcdevitt@whitecase.com
bgant@whitecase.com

### SIGNATURE ATTESTATION

The undersigned attests that, pursuant to Local Rule 5-1(i)(3), concurrence in the filing of this document has been obtained from counsel for all other signatories listed, and on whose behalf the filing is submitted, and counsel concur in the filing's content and have authorized the filing.

By: /s/ Ashley L. Shively
Ashley L. Shively
**HOLLAND & KNIGHT LLP**

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA  90071
Tel: 213.896.2400
Fax: 213.896.2450

-14-

DEFENDANTS' OPPOSITION TO
PLAINTIFFS' MOTION FOR RECONSIDERATION
BASED ON NEWLY DISCOVERED EVIDENCE

Case No. 3:19-cv-02573-EMC