# Arnold & Porter

**Laura Shores**
+1 202.942.6855 Direct
Laura.Shores@arnoldporter.com

July 19, 2020

**VIA ECF**

Honorable Edward M. Chen
United States District Court
Northern District of California
Courtroom 5 - 17th Floor
450 Golden Gate Avenue
San Francisco, CA 94102

  Re: *Staley, et. al. v. Gilead Sciences, Inc., et al.*, No. 3:19-cv-02573-EMC

Your Honor:

  As you know, we represent Bristol-Myers Squibb Company and E. R. Squibb & Sons, LLC (together, "BMS") in the *Staley* matter. I have reviewed the transcript of the July 16, 2020 hearing before your Honor and there are two points in my answers to the Court's questions that I feel I should clarify.

  First, with respect to the definition of the "Combination Product" in Section 1.50 of the Atripla Agreement, Your Honor asked: "If a combination product had a proprietary ingredient and then a generic ingredient in the FDC . . . would it go through NDA?" Tr. 10:1-3. I responded "Yes, because it's a new drug." Tr. 10:4. I understood the Court to be asking whether branded Atripla, had it initially consisted of proprietary and generic ingredients, would require an NDA. I now believe that Your Honor was posing a hypothetical in which Atripla already had been approved under an NDA, a generic version of a component drug became available, and one of the parties to the joint venture wished to market a combination product containing both proprietary and generic ingredients. If so, my response to the Court's question was incorrect. The correct answer is no—as discussed in our brief, an ANDA (and not an NDA) would be the appropriate route for a combination product comprised of the same active ingredients as a product previously approved under an NDA. *See* Dkt. 367, Mem. 8:21-9:4; *see also* 21 C.F.R. § 314.101(d)(9). In particular, in this case, once the Combination Product developed pursuant to the Atripla Agreement (i.e., Atripla) had been approved by the FDA, if BMS desired to create a combination product comprised of its patent-protected EFV and a generic version of TDF and/or FTC (assuming generic versions had been available), then it would have filed an ANDA referring to Atripla as the reference listed drug ("RLD") in its application. And because such a "partially" generic combination product would be approved under an ANDA following the approval of the Combination Product, it necessarily could not be the "Combination Product" within the meaning of Section 1.50, but rather would be a "Generic Version" within the meaning of Section 1.96, and thus nothing in Section 2.9(a) (or anywhere else in the Atripla Agreement) would have

# Arnold & Porter

Honorable Edward M. Chen
July 19, 2020
Page 2

prohibited BMS from developing and commercializing such a "partially" generic version of Atripla outside of the joint venture.  *See also* Dkt. 313, Mem. 16:12-28.

Second, at a later point in the argument, I also failed to squarely address the Court's inquiry regarding the use of "Combination Product" in Section 14.6(b)(iii).  The Court suggested that "the use of the term '[C]ombination [P]roduct' as it appears in Section 14.6(b)(iii) seems to include the possibility of generics at that point." Tr. 25:11-13.  It does not.  Section 14.6(b)(iii) addresses sales by the joint venture after termination of one of the members and contemplates that either the terminated member will continue to supply its active pharmaceutical ingredient ("API") to the continuing member or will assist the continuing member (or a designated third party) in manufacturing the API itself.  The Combination Product the joint venture would sell in these circumstances remains the product approved under the NDA, *i.e.*, a brand pharmaceutical product.  Accordingly, and as discussed in the reply memorandum submitted in support of Defendants' Motion to Dismiss, Section 14.6(b)(iii) provides no support for Plaintiffs' reading of the term "Combination Product" to include fully or partially generic versions of Atripla.  *See* Dkt. 367, Mem. 9:5-11.

I apologize for the confusion and hope this information is helpful to the Court.

Respectfully,

*/s/ Laura S. Shores*

Laura S. Shores