UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STALEY, et al.,<br><br>          Plaintiffs,<br><br>     v.<br><br>GILEAD SCIENCES, INC., et al.,<br><br>          Defendants | Case No. 19-cv-02573-EMC<br><br>**ORDER GRANTING DEFENDANTS' MOTION FOR RELIEF FROM NONDISPOSITIVE PRETRIAL ORDER OF MAGISTRATE JUDGE**<br><br>Docket No. 632 |

Defendants have filed a motion seeking relief from Judge Beeler's discovery order of June 18, 2021. *See* Docket No. 624 (order). In the order, Judge Beeler held that Plaintiffs[1] did not have to respond to certain interrogatories propounded by Defendants. Having considered the parties' briefs and accompanying submissions, the Court hereby **GRANTS** Defendants' motion.

## I.     FACTUAL & PROCEDURAL BACKGROUND

At issue is whether Plaintiffs should be compelled to provide responses to the following interrogatories:

- **Interrogatory No. 1(l):** Identify each and every purchase by You of cART Products, including: . . . (l) Whether Your purchase of each cART Product was for the treatment of HIV infection, for pre-exposure prophylaxis ("PrEP"), or for some other purpose.

- **Interrogatory No. 1(m):** Identify each and every purchase by You of cART Products, including: . . . (m) If Your purchase of a cART Product was for reasons

---

[1] "Plaintiffs" as used herein refers to the end-payor plaintiffs.

1         other than the treatment of HIV infection or pre-exposure prophylaxis ("PrEP"), the

2         reason(s) why You purchased each such cART Product.

3      • **Interrogatory No. 4:** Identify and describe any time You switched or considered

4         switching Your HIV treatment regimen from one (or more) cART Product(s) to

5         another cART Product(s), and for each time You switched or considered switching,

6         identify the alternative cART Product(s) You considered, as well as the reason(s) or

7         factor(s) You decided to purchase any cART Product(s) over the alternative cART

8         Product(s) You considered, including but not limited to any adverse medical

9         reactions or side effects You had to any cART Products and the identity of the

10        cART Product(s) that caused the adverse medical reaction(s) or any instances in

11        which cART Products were contraindicated for You based on Your HIV drug

12        resistance profile and the identity of the cART Products for which You were

13        contraindicated.

14 As Defendants state in their motion, the interrogatories essentially ask "what products Plaintiffs

15 took, why they did so, and whether they were willing and able to take alternative products

16 instead." Mot. at 2.

17      Defendants propounded these interrogatories on Plaintiffs after Judge Beeler issued an

18 order in August 2020 in which she denied a *document request* seeking medical information about

19 Plaintiffs. In the August 2020 order, Judge Beeler acknowledged that the medical information

20 was "(at least conceptually) . . . relevant to the typicality of the plaintiffs as class representatives

21 and their antitrust injury." Docket No. 424 (Order at 2). The issue, therefore, was "the scope of

22 the production." Docket No. 424 (Order at 2). In this regard, Judge Beeler noted that Plaintiffs

23 were willing to provide some medical information, in particular, prescription and insurance

24 information. She essentially found this information sufficient. Defendants *also* "want[ed]

25 medical-record information about the reasons for the particular HIV treatment and . . . whether the

26 plaintiffs could have chosen substitute treatments." Docket No. 424 (Order at 2). But, Judge

27 Beeler stated, "[w]hile relevance is a broad standard, the connection between the individual

28 medical information and the market-wide inquiry about the interchangeability of drugs is

2

1   attenuated. Given the privacy implications, the court does not order the discovery." Docket No.
2   424 (Order at 2). In making this statement, Judge Beeler's focus seemed to be on whether the
3   medical-record information was relevant to the issue of product market. *See Staley v. Gilead Scis.,*
4   *Inc.*, 446 F. Supp. 3d 578, 615 (N.D. Cal. 2020) ("A product market 'encompass[es] the product at
5   issue as well as all economic substitutes for the product.'").

6        As indicated above, after Judge Beeler issued her order, Defendants propounded the above
7   interrogatories on Plaintiffs as an alternative means of getting the information about why Plaintiffs
8   were taking the drugs at issue and whether they were willing to take alternative products instead.
9   Plaintiffs refused to respond to the interrogatories and thus the parties filed a joint letter with
10  Judge Beeler on their dispute. In the joint letter, Defendants argued that the interrogatories were
11  relevant not only to product market but also class certification issues and injury. *See* Docket No.
12  621-1 (Joint Letter at 2). Judge Beeler still denied Defendants' relief. In her order, she noted that
13  she had "previously denied discovery on [this] category of information and denies it here."
14  Docket No. 624 (Order at 1). She stated that the reasons articulated in her prior art were
15  applicable here. *See* Docket No. 624 (Order at 2) (quoting from the prior order).

16       Defendants now seek relief from this discovery order.

## II. DISCUSSION

### A. Standard of Review

19       "Rule 72(a) of the Federal Rules of Civil Procedure allows aggrieved parties to file timely
20  objections to rulings of a magistrate judge in nondispositive matters. Such objections are
21  sustained if the magistrate judge's order is 'found to be clearly erroneous or contrary to law.'" *In*
22  *re McKesson HBOC, Inc. Sec. Litig.*, No. C-99-20743 RMW, 2005 U.S. Dist. LEXIS 7098, at
23  *20-21 (N.D. Cal. Mar. 31, 2005); *see also Freudeman v. Landing of Canton*, No. 5:09 CV 175,
24  2010 U.S. Dist. LEXIS 72329, at *3 (N.D. Ohio July 19, 2010) (stating that "[t]he 'clearly
25  erroneous' standard applies to the magistrate judge's findings of fact, and the magistrate judge's
26  legal conclusions are reviewed under the 'contrary to law' standard").

### B. Relevance

28       In the pending motion, Defendants argue that Judge Beeler clearly erred and/or acted

3

contrary to law because the interrogatories at issue are relevant and because Plaintiffs' privacy interests can be protected through the protective order in this case.

The Court agrees with Defendants that the interrogatories at issue are relevant, in particular, with respect to class certification issues and antitrust injury.[2] Plaintiffs' arguments to the contrary are not persuasive.

For example, Plaintiffs argue that their "injuries do not turn on whether [they] would have switched from brand products to the generic, to other comparable versions of the drug, or to other branded cART drugs" because Plaintiffs were injured solely by virtue of the fact that "'the prices of the *branded product* [they purchased] were artificially inflated by Defendants' unlawful conduct.'" Opp'n at 2 (emphasis in original). Although Plaintiffs are entitled to assert this injury, the problem is that they have not forsaken the claim that they were *also* injured because they were not able to substitute to products using generics. *See also* Reply at 1 (underscoring that Plaintiffs have simply claimed irrelevance for "*just one* theory of injury") (emphasis in original); Mot. at 1 (arguing that "[t]he Interrogatories are directly relevant to Plaintiffs' allegations that they and the putative class members were injured because Defendants' conduct, rather than some other factor, prevented them from taking different products they would have preferred or forced them to switch to products that they did not want (such as TAF-based products)").[3]

According to Plaintiffs, even if the Court considers "*additional* injury from the absence of generic versions of the brand drugs that Plaintiffs bought," they still should not be compelled to answer the interrogatories because "the purchase records [which Plaintiffs have willingly produced] will show whether any Plaintiff was an uninjured 'brand loyalist'" – *i.e.*, someone who

---

[2] The Court does not address whether the interrogatories are also relevant to product market. Although Defendants presented this argument to Judge Beeler, it did not do so with this Court. The passing reference that Defendants made to product market in their motion is not sufficient.

[3] In their reply brief, Defendants posit that, if Plaintiffs restricted their claimed injury to paying more for branded products, then they could well lose because they might not have paid more for branded products. *See* Reply at 3 ("Any patient who would have taken the same product in the but-for world that she took in the actual world likely would be uninjured because her copay would not have changed: she would have paid the same amount regardless of whether the total brand price would have been lower."). Of course, this argument is applicable only to the end-payor plaintiffs.

4

would not have switched to a product containing generics. Opp'n at 4 (emphasis in original). "The purchase records will establish whether a Plaintiff continued to buy the brand version after a generic version became available (only two such generic versions – for Truvada and Atripla – are at issue here, and they became available only in September 2020)." Opp'n at 4. But there are two problems with this position.

First, although Plaintiffs dispute Defendants' assertion that the production of purchase records has been deficient, they essentially admit that they do not have full and complete purchase records.[4] *See* Opp'n at 4 n.7 ("Plaintiffs timely produced the records *they have been able to obtain* from their insurers and pharmacies, and are continuing to produce additional records as they are made available.") (emphasis added).

Second, even if the purchase records were full and complete, that does not mean that Defendants would not need to get information about the reasons why there was or was not switching. For example, if a given individual did switch to generics, the reasons for that switch may have had nothing to do with the fact that the products were generics and therefore cheaper. If the switch was made for different reasons, then the individual arguably would not be typical of the putative class and might not have suffered antitrust injury. *See also* Reply at 4 ("Discovery into whether a patient 'would have' used a different product requires inquiry into brand loyalty and other factors, such as why the patient used the products (e.g., treating HIV or for PrEP [HIV prevention], for which there are fewer options), whether any products were contraindicated for the patient, and whether the patient has developed any drug resistances."). This is concrete relevant, not just "conceptual" relevance (as Judge Beeler suggested). *See Wit v. United Behavioral Health*, No. 14-cv-02346-JCS, 2016 U.S. Dist. LEXIS 7242, at *35-36 (N.D. Cal. Jan. 21, 2016) (noting that, "[t]raditionally, the relevance requirement of Rule 26(b)(1) has been construed broadly"); *see also* Wright & Miller, 8 Fed. Prac. & Proc. Civ. § 2008 (stating that "[m]ost courts which have addressed the issue find that the [2000] amendments to Rule 26 still contemplate liberal discovery, and that relevancy under Rule 26 is extremely broad").

---

[4] It appears that Judge Beeler was not alerted to this problem.

5

The only issue remaining is whether Plaintiffs' privacy concerns militate against compelling responses to the interrogatories.[5] The Court acknowledges that Plaintiffs' privacy concerns are not without any merit. Just because Plaintiffs are willing to disclose that they have HIV or are taking drugs to prevent HIV does not mean that they should be forced to disclose everything about their medical information related to HIV. However, Defendants are not asking for Plaintiffs' complete medical files and are seeking only specific medical information, tailored to the issues raised in this case. Furthermore, Plaintiffs' privacy may be protected through the existing protective order or, if necessary, through a modification to the existing protective order (*e.g.*, restricting the number of copies that are made of the interrogatory responses, limiting the number of people who may view the interrogatory responses, etc.).

Accordingly, the Court grants Defendants' motion for relief and orders Plaintiffs to provide responses to the interrogatories at issue. (The parties shall meet and confer regarding a date for the interrogatory responses to be provided.) The Court emphasizes that, in reaching this conclusion, it has borne in mind Rule 72's standard for review – *i.e.*, that it is reviewing Judge Beeler's decision only to determine if it is in clear error or contrary to law. Although a close call, the Court reluctantly concludes that her order is erroneous because it did not expressly take into account all aspects of relevance asserted by Defendants.

### III. CONCLUSION

The motion for relief is granted.

This order disposes of Docket No. 632.

**IT IS SO ORDERED**.

Dated: July 19, 2021

_____
EDWARD M. CHEN
United States District Judge

---

[5] Plaintiffs do not argue that the discovery sought is not "proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1).