August 20, 2021

**VIA ECF**

The Honorable Laurel Beeler
United States District Court
Northern District of California
Courtroom B - 15th Floor
450 Golden Gate Avenue
San Francisco, CA 94102

Re:  *Staley et al. v. Gilead Sciences, Inc. et al.* - Case No. 3:19-cv-02573-EMC

Dear Magistrate Judge Beeler:

Plaintiffs Peter Staley, Ivy Kwan Arce, Steve Fuller, Gregg S. Gonsalves, PhD, Brenda Emily Goodrow, Andrew R. Spieldenner, PhD, Michael Warner, Michael Snipe, John Carroll, Josh McDonald, Gabriel Molina, Troy Vazquez-Cain, Fraternal Order of Police, Miami Lodge 20, Insurance Trust Fund, Service Employees International Union, Local No. 1 Health Fund, Teamsters Local 237 Welfare Fund, Teamsters Local 237 Retirees' Benefit Fund, and Pipe Trades Services MN Welfare Fund ("Plaintiffs") and Defendants Gilead Sciences, Inc., Gilead Holdings, LLC, Gilead Sciences, LLC, and Gilead Sciences Ireland UC ("Defendants" or "Gilead") (collectively, the "Parties") respectfully submit this supplemental joint letter brief with respect to select redactions for attorney-client privilege and/or work product privilege contained in documents clawed back by Gilead.

The Parties have agreed to submit a representative sample of six documents for the Court's *in camera* review and will meet and confer regarding applying the Court's ruling across all of the documents that Plaintiffs have challenged.  For *in camera* review, Gilead is filing under seal original versions of the six documents for the Court's review, as Exhibits 1-6, with all text visible. These are not production versions of the documents.  Gilead has highlighted, in green, the text that was redacted for privilege in the production versions.  Where there is yellow highlighting in any of the at issue documents, that highlighting is original to the document and not at issue in this motion.  In addition, Gilead is also submitting for *in camera* review five additional documents in support of its privilege claims, all of which have been withheld in full, as described in the Declaration of Katharine Rice filed herewith and attached as Exhibit 13.

The Parties, including their lead counsel, have met and conferred on this issue and have been unable to reach a resolution.

Respectfully submitted,

_/s/ Daralyn J. Durie_
Daralyn J. Durie
Steve D. Shadowen
Steve W. Berman
_Interim Co-Lead Counsel for Plaintiffs_

_/s/ Heather M. Burke_
Heather M. Burke
Christopher M. Curran
Peter J. Carney
Raj S. Gandesha
Bryan D. Gant
Michael E. Hamburger
Heather K. McDevitt
Kristen O'Shaughnessy
Jeremy K. Ostrander
_Counsel for Defendants Gilead_
_Sciences, Inc., Gilead Holdings, LLC,_
_Gilead Sciences, LLC, and Gilead_
_Sciences Ireland UC_

cc:  All Counsel of Record (via ECF)

## I.     STATEMENT OF UNRESOLVED ISSUE

Whether certain information redacted from Gilead's documents is privileged.

## II.    PLAINTIFFS' POSITION

To establish attorney-client privilege, Gilead must prove that the document was created "because of" or "for the primary purpose of obtaining legal advice." *In re CV Therapeutics, Inc. Sec. Litig.*, No. C-03-3709 SI (EMC), 2006 WL 2585038, at *3 (N.D. Cal. Aug. 30, 2006). The privilege is "narrowly and strictly construed" and does not extend to business advice from in-house counsel. *Dolby Labs Licensing Corp. v. Adobe Inc.*, 402 F. Supp. 3d 855, 863, 866 (N.D. Cal. 2019) (quotation marks and citation omitted). For all but one document at issue (Exs. 2-6), Gilead claims the privileged communications were with in-house counsel. Because deciphering the distinction between in-house business and legal advice is difficult, the "court's inquiry is focused on whether the communication is designed to meet problems which can fairly be characterized as predominantly legal." *AbbVie Inc. v. Boehringer Ingelheim Int'l GmbH*, 2018 WL 2995677, at *2 (D. Del. June 14, 2018) (internal quotations and citations omitted).

Gilead has not met its burden. Each document is a quintessential business document, wherein non-attorneys are discussing business decisions, from which Gilead has redacted select sentences or parts of sentences. Gilead does not claim that *any* of these documents was drafted by or for counsel or sent to or from counsel, but rather that the non-attorney documents "reflect[]" attorney advice or requests for advice. Gilead has failed to substantiate its claim, let alone establish that the communications are "predominantly legal." Gilead's redactions should be removed.

Gilead asserts that the redacted content in Exs. 1-4 "reflect[s] attorney advice." But it fails to disclose the basic information required to support its redactions, such as the attorney involved, the nature and date of the privileged communication, and all persons who received, sent, or prepared it. *In re Grand Jury Investigation*, 974 F.2d 1068, 1071 (9th Cir. 1992). A declaration claiming a document reflects attorney advice is insufficient. *Dolby Labs*, 402 F. Supp. 3d at 866; *Hynix Semiconductor Inc. v. Rambus Inc.*, 2008 WL 350641, at *3 (N.D. Cal. Feb. 2, 2008). Gilead's declarant is unable to assert that she was involved with *any* of the documents at issue; she did not even work at Gilead when Exs. 1, 3-5 were created. *Dolby Labs*, 402 F. Supp. 3d at 871.

**Exhibit 1.** Gilead redacts two slides  from summary of the  Complera deal prepared by a non-attorney for the Strategy Review Committee, a business unit. The document was created for business purposes, and Gilead fails to establish that the primary purpose of the purportedly referenced attorney communication was the provision of legal advice. Nor has Gilead been able to clearly identify that legal advice. For months, Gilead could not identify *any* attorney involvement, nor any privilege log entries. Gilead's new claim regarding outside counsel should be substantiated *in camera*; its claim regarding in-house counsel should be disregarded, as it is unable to identify any attorneys and its declarant's assertions are based on "[her] understanding." Rice Dec. ¶ 3.

**Exhibit 2.**[1] This business plan for Odefsey was prepared by the CMC Team, a business unit made up of 17 non-attorneys, and approved by 6 additional non-lawyers. Non-attorney Monica Tijerina

---

[1] Plaintiffs do not challenge the redacted portion in comment "MT9" on Ex. 2, at p. 5.

authored the redlines, including those in the redacted portion, as illustrated by the lines along the left margin. Gilead claims the redactions "reflect[] attorney advice," but does not establish how Ms. Tijerina could author attorney advice nor that she received any. The privilege claim fails. *Dugan v. Lloyds TSB Bank, PLC*, 2013 WL 12173934, at *2 (N.D. Cal. Dec. 23, 2013) (where a party "fails to identify which in-house counsel received a request for legal advice or offered such advice, and fails to offer an 'extremely specific' description of the communication in its privilege log," it "fails to carry its burden of showing that the communication was legal, as opposed to business-related."). Ms. Tijerina writes comments to "MJ"—a reference Gilead represents is to in-house counsel[2]—but a request for attorney "review" does not establish privilege.[3] *See* ECF No. 590 at 2 ("[A]n attorney's reviewing and revising documents is not privileged when one cannot tell 'what the legal advice or edits were'" (quoting *Epic Games, Inc. v. Apple Inc*., No. 20-cv-05640-YGR (TSH), ECF 512 at 2 (N.D. Cal. Apr. 28, 2021))); *In re CV Therapeutics, Inc. Sec. Litig*., No. 03-cv-3709 SI(EMC), 2006 WL 1699536, at *4 (N.D. Cal. June 16, 2006), *as clarified on reconsideration*, 2006 WL 2585038 (N.D. Cal. Aug. 30, 2006) (requiring "particularized showing of the role legal counsel played and whether she actually provided legal advice").

**Exhibit 3.**[4] This exhibit is a presentation from an August 19, 2009 business meeting among leadership where the "███████████████████████████████████████████████████████████████████████████████████ even though EFV went generic in 2017. *See Holley v. Gilead Scis., Inc*., 2021 WL 2371890, at *4 (N.D. Cal. June 10, 2021) (rejecting Gilead's privilege redactions for generic products that have launched). Following the redactions on slide 18, the authors make a *business* recommendation concerning Atripla upon EFV patent expiry, supporting the inference that the information provided was primarily for business purposes. In discussions with Plaintiffs, Gilead represented that the attorney advice "reflected" here was also "reflected" in a privilege log entry for an August 28, 2009 email. *See* Ex. 7 (June 28, 2021 Letter from J. Ostrander to A. Ognibene). But this entry *post-dates* the presentation and thus the presentation cannot "reflect" it. Gilead now claims the memo is from July 2009 and was incorrectly dated. Gilead's declarant's representation, made only on information and belief (Rice Decl. ¶ 5), that the memo was circulated prior to the August meeting is insufficient to meet Gilead's burden.

**Exhibit 4.** Gilead redacts select "General Assumptions" used to inform a TAF forecasting model circulated on April 13, 2003. This forecast was drafted by and exchanged between non-lawyers to assist the Development Committee, a business unit, in making a business decision about TAF. There is no apparent attorney involvement. To substantiate its privilege claim, Gilead points to a privilege log entry dated May 16, 2003, more than a month *after* Exhibit 4. Gilead has failed to establish that this quintessential business document discloses legal advice from counsel, let alone a communication made "because of" the need for legal—rather than business—advice.

Gilead claims Exhibits 5 and 6 are privileged because they reflect a request for attorney advice. But Gilead has failed to make a "clear showing" that the documents reflect any request to an attorney, let alone one made for *the purpose of* obtaining legal advice. *U.S. v. ChevronTexaco*

---

[2] While this in-house counsel still works at Gilead, Rice Decl. ¶ 4, Gilead failed to obtain a declaration from her detailing her role in providing legal advice or edits. ECF No. 590 at 2.

[3] Indeed, other content with comments for "MJ" is unredacted. *See* Ex. 2, at p. 4.

[4] Plaintiffs do not challenge the redactions in the "Europe" section on Ex. 3, at p. 18.

*Corp.*, 241 F. Supp. 2d 1065, 1076 (N.D. Cal. 2002); *see also id.* ("The privilege does not protect an attorney's business advice"); *CV Therapeutics*, 2006 WL 2585038, at *3. Nor has Gilead established that the "communications were so permeated by the need for legal advice such that the documents were created '*because of*' the need to obtain legal advice." *CV Therapeutics*, 2006 WL 1699536, at *8 (emphasis added). In analyzing privilege, courts look to the context surrounding the document's creation and dissemination, including "the breadth of the recipient list" and "whether a communication explicitly sought advice and comment." *Id.* at *4.

**Exhibits 5 and 6.** These minutes from widely-attended business meetings, wherein discussions about "███████████████████████████"—quintessential business decisions—are redacted. Gilead claims the discussions were matters about which legal advice was later sought. This is insufficient. *See Dolby*, 402 F. Supp. 3d at 873 (no privilege where document "also relate[s] to the business impact" of a decision, despite employee seeking legal advice on same topic). Each meeting was widely attended: Ex. 5 by 21 non-lawyers and Ex. 6[5] by 39, and the minutes were circulated to all attendees *and* the Executive Committee. Gilead has not established that these discussions were held for the *purpose* of obtaining legal advice—indeed, no lawyers were present at the meeting in Ex. 6, and the only lawyer present in Ex. 5 (Gregg Alton) worked in a commercial role—or that legal advice was actually sought or provided. *CV Therapeutics*, 2006 WL 1699536, at *4. The redactions should be removed.

For each of the documents at issue, Gilead has failed to meet its burden in establishing privilege. It has failed to (i) substantiate its claims that the documents reflect attorney advice or a request for such advice, and (ii) establish that any attorney advice received or requested was *legal* in nature, as opposed to business advice. Gilead should be ordered to remove its redactions.

## III.   Defendant Gilead's Position

Plaintiffs have brought a challenge to a total of six, disparate documents clawed back by Gilead. For each document, Gilead presents below, and in the accompanying Declaration of Katharine Rice (Ex. 13, "Rice Decl."), evidence that the redactions in each document reflect legal advice provided by attorneys, and that the legal advice was kept confidential within Gilead. The Court should uphold Gilead's limited and justified redactions.

Similarly to the arguments made in their previous, unsuccessful privilege challenge to redactions made by Gilead's co-defendant, Plaintiffs argue that each of the documents at issue here is a "quintessential business document" and that because the documents themselves were not drafted by lawyers, Gilead's redactions are not justified.  *See* ECF No. 573 at 3.  The Court rightly rejected that argument, upholding the clear proposition that even a "business document" can still contain privileged information justifying redaction.  ECF No. 645 (affirming redactions on business documents as reflecting attorney advice); *see also In re Intuniv Antitrust Litig.*, 2018 U.S. Dist. LEXIS 207545, at *11 (D. Mass. Dec. 10, 2018) ("Confidential advice from an attorney does not lose its privileged character merely because it affects business plans or is conveyed within a document that also has non-privileged information.").  Moreover, the Court found that "if an attorney gives a client *legal advice on a business decision*, that communication is protected by the privilege . . . ."  ECF No. 645 at 3.

---

[5] Plaintiffs do not challenge the redacted portion in "DPR Decisions" on Ex. 6, at p. 2.

Indeed, Plaintiffs' position ignores the practical reality of how legal advice is conveyed to (or requested by) decision-makers in companies like Gilead, and it ignores cases protecting just such communications. *AT&T Corp. v. Microsoft Corp.*, 2003 U.S. Dist. LEXIS 8710, at *7 (N.D. Cal. Apr. 18, 2003) ("Communications between non-lawyer employees about matters which the parties intend to seek legal advice are likewise cloaked by attorney-client privilege."); *see also In re Zetia (Ezetimibe) Antitrust Litig.*, 2020 U.S. Dist. LEXIS 61020, at *16 (E.D. Va. Feb. 6, 2020).  For each of the six documents at issue, Gilead has applied only limited redactions sufficient to protect the actual advice (or subject matter on which advice was requested) at issue.  In each instance, the redacted material reflects legal advice of counsel, which was maintained in confidence, and the redactions are as narrowly tailored as possible to protect the privilege.

**Exhibit 1** is a summary of the license and collaboration agreement between Gilead and Tibotec regarding Complera® (not Odefsey®), dated July 16, 2009.  Plaintiffs challenge the redactions of the information at pages 36 and 37 of this document.[6]  Those redactions reflect legal advice regarding the "competition" law (i.e., antitrust) issues surrounding the Complera agreement provided by outside counsel at Hogan & Hartson on June 29, 2009.  *See* Ex. 13, Rice Decl., ¶ 3 & Ex. 8.[7]  Gilead in-house counsel also provided legal advice regarding antitrust risks and appropriate safeguards related to the Complera agreement.  Rice Decl. ¶ 3.  The redacted material on pages 36 and 37 summarizes and presents this legal advice regarding pricing arrangements for the combination product—it is properly redacted.

**Exhibit 2** is a January 2016 post-approval plan for Odefsey.  The redacted material at pages 2, 5 and 6 of Exhibit 2 reflects privileged analysis of loss of exclusivity for Odefsey, as well as an analysis of potential patent infringement risks related to the product.  Indeed the redacted material—contained in sections entitled ███████████████████████████ ████████"—reflect precisely the kind of legal analysis regarding when particular drugs might lose exclusivity, specific factors that might impact the potential exclusivity period, and certain caveats regarding potential extensions and other considerations" that this Court previously found privileged. ECF No. 623 at 3.  Further, the redacted portions of Exhibit 2 at pages 5 and 6 contain a specific request to in-house counsel MJ Edwards, who was a part of the Project Team for Odefsey, to review sections providing a patent infringement analysis (under "Patents") and a loss of exclusivity analysis (under "███████████").  *See* Rice Decl. ¶ 4.  Though Plaintiffs assert that Gilead did not redact a comment requesting that MJ Edwards ██████████████████████ ████████████████████████████████████████, this merely shows that Gilead has narrowly applied redactions to only legal advice and analysis.  *See* Ex. 2 at p. 5.

**Exhibit 3** is a presentation regarding Gilead's HIV Portfolio Opportunity Project, dated August 19, 2009.  Gilead's limited redaction of material in this document relates to legal advice regarding a loss of exclusivity analysis for the product Efavirenz provided by in-house patent attorneys Allan

---

[6] For ease of reference, each page of the submitted *in camera* documents is stamped with a unique page identifier.  For example, page 36 of Exhibit 1 is marked "Ex. 1 – 36."

[7] Gilead was not required to log outside counsel communications like this one pursuant to the ESI Protocol.  *See* ECF No. 245, § VI.C.3 (Jan. 7, 2020).  Gilead informed Plaintiffs on June 28, 2021 that the redactions in this document reflected the advice of "in-house and external counsel."  *See* Exhibit 7 at 3.  Exhibit 8 is the memorandum, as provided for *in camera* review.

Kutzenco and Steve Krawczyk to the author of this document, Liz Bhatt.  Rice Decl. ¶ 5.  The attorney analysis by in-house attorneys Kutzenco and Krawczyk is reflected in a memorandum titled "█████████████," dated July 31, 2009.  *See* Rice Decl. ¶ 5 & Ex. 9.[8]

**Exhibit 4** is a document prepared by Peter Virsik, a former Gilead employee in Corporate Development.  As shown in the cover email to the redacted document, Mr. Virsik was asked to complete a financial analysis based on the expiration of patents and related periods of exclusivity.  *See* Ex. 4 at 1.  Mr. Virsik reached out to in-house intellectual property counsel Alex Andrus on April 7, 2003 for legal advice regarding patent expiration dates and related periods of exclusivity to include in his analysis, which Mr. Andrus then provided on April 8, 2003.  *See* Rice Decl. ¶ 6 & Ex. 10.  Because Exhibit 4 incorporates the legal advice Mr. Virsik received from Alex Andrus, the legal advice remains privileged and is properly redacted.

**Exhibit 5** is a document dated Nov. 18, 2008 containing minutes of Gilead Portfolio Review meetings.  Gilead's Portfolio Review process involves assessment of the company's entire portfolio of products, and the Portfolio Review Committee would have relied on in-house intellectual property counsel to assess patent exclusivity issues.  Rice Decl. ¶ 7.  Moreover, the redacted material at issue in these minutes (at p. 3) does not relate to the development of TAF as Plaintiffs assert but rather to Tybost® (cobicistat), referred to in Exhibit 5 by its development number "GS-9350."  Contrary to Plaintiffs' position that the "purpose of obtaining legal advice" is not clear from the document, the unredacted portions make it clear that the █████████ ████████████████████████ by the Gilead legal department.  Although the Portfolio Review meetings did not take place solely for the purpose of requesting this legal advice, that does not mean that privileged discussions that took place within those meetings became unprivileged.  *See In re Intuniv Antitrust Litig.*, 2018 U.S. Dist. LEXIS 207545, at *11.  Moreover, Gilead's understanding is that at the time Allan Kutzenco, in-house intellectual property counsel, was responsible for the GS-9350 product and provided the requested patent analysis.  Rice Decl. ¶ 7.

**Exhibit 6** is a document containing the minutes from Gilead's Development Project Review ("DPR") meeting on September 24, 2012.  The redacted material in Exhibit 6 relates to a legal assessment of patent and regulatory exclusivity of GS-7340 provided by in-house counsel Daniel Collins as early as May 2012.  *See* Rice Decl. ¶ 8 & Ex. 11.  Moreover, the unredacted material in Exhibit 6 shows that the DPR committee planned to "████████████████████" four days later on September 28 to request additional legal advice regarding the redacted material.  Gregg Alton, on behalf of the DPR committee, contacted Lorie Ann Morgan of Gilead's intellectual property department on August 27 (and Ms. Morgan replied by email on August 28) to once again discuss the subject matter of the redacted material with counsel.  *See* Rice Decl. ¶ 8 & Ex. 12.  As with Exhibit 5, although the purpose of this meeting was not solely requesting legal advice, the redacted material reflects a subject matter on which the company sought the advice of counsel, and Gilead has narrowly redacted this document to reflect that limited request.

---

[8] Plaintiffs' incredulity at the timing of this memorandum is hard to understand.  When asked to investigate the basis for the privilege assertion, Gilead pointed Plaintiffs to the relevant privilege log entry and explained that the log entry had an incorrect date—the date in the log entry reflected the date of the parent email scanning and distributing the memorandum, August 28, 2009—but the date on the face of the memorandum itself is July 31, 2009. *See* Exhibit 9.

**FILER'S ATTESTATION**

Pursuant to Civil L.R. 5-1(i)(3), regarding signatures, I, Heather M. Burke, attest that concurrence in the filing of this document has been obtained.

Dated:  August 20, 2021          By:          */s/ Heather M. Burke*
                                                    Heather M. Burke

**<u>CERTIFICATE OF SERVICE</u>**

      I hereby certify that on August 20, 2021 the within document was filed with the Clerk of the Court using CM/ECF which will send notification of such filing to the attorneys of record in this case.

      */s/ Heather M. Burke*
      Heather M. Burke

# EXHIBIT 1

# DOCUMENT PROPOSED TO BE FILED UNDER SEAL IN ITS ENTIRETY

# EXHIBIT 2

# DOCUMENT PROPOSED TO BE FILED UNDER SEAL IN ITS ENTIRETY

# EXHIBIT 3

# DOCUMENT PROPOSED TO BE FILED UNDER SEAL IN ITS ENTIRETY

# EXHIBIT 4

# DOCUMENT PROPOSED TO BE FILED UNDER SEAL IN ITS ENTIRETY

# EXHIBIT 5

# DOCUMENT PROPOSED TO BE FILED UNDER SEAL IN ITS ENTIRETY

# EXHIBIT 6

# DOCUMENT PROPOSED TO BE FILED UNDER SEAL IN ITS ENTIRETY

# EXHIBIT 7

**WHITE & CASE**

June 28, 2021

Abbye R. K. Ognibene
HAGENS BERMAN SOBOL SHAPIRO LLP
55 Cambridge Parkway, Suite 301
Cambridge, MA 02142
(617) 475-1975
abbyeo@hbsslaw.com

White & Case LLP
3000 El Camino Real
2 Palo Alto Square, Suite 900
Palo Alto, CA 94306-2109
**T** +1 650 213 0300

**whitecase.com**

Re: *Staley, et al. v. Gilead Sciences, Inc., et al*., Case No. 3:19-cv-02573-EMC (N.D. Cal.)

Dear Ms. Ognibene:

We write to follow up on the documents discussed during our meet and confer on June 7, 2021. Gilead has considered your requests for additional information, and the existing redactions, in light of Magistrate Judge Beeler's recent Order (ECF No. 623).  In particular, Gilead notes that Judge Beeler specifically found that redacted information "regarding when particular drugs might lose exclusivity, specific factors that might impact the potential exclusivity period, and certain caveats regarding potential extensions and other consideration"—the very type of redactions at issue in some of the documents at issue here—"constitutes legal advice and is privileged."  ECF No. 623 at 3.  We have included our positions below regarding each of the documents we understand to still be at issue, or subject to further consideration by Plaintiffs, based on the information provided during our meet and confer.

**GIL_002421498, GIL_004763014:**   Both of these documents are versions of the TAF Development Plan.  As discussed on our meet-and-confer call, Gilead can confirm that the redactions within these documents reflect privileged advice provided by in-house intellectual property counsel Allan Kutzenco in connection with his role on the TAF Development Plan Team. *See, e.g.*, GIL_002421515.  As the parties discussed, Gilead has reviewed the existing redactions and will agree to unredact certain purely factual material regarding publicly stated patent expiration dates at GIL_002421502 and GIL_002421506.  With respect to GIL_004763014, Gilead agrees to unredact similar material at GIL_004763021.

**GIL_002988013:**  As we disclosed on our meet-and-confer call, the redacted material in this document at GIL_002988013_011 reflects privileged material from the IP Position in the TAF Development Plan, as provided by Mr. Kutzenco.  Similar to the narrowing of the redactions in the challenged TAF Development Plans, Gilead will agree to narrow the existing redactions to unredact certain purely factual material regarding publicly stated patent expiration dates.

**GIL_003288901:**  As discussed on our meet-and-confer call, this document is a product development plan for the product that ultimately became Biktarvy®. Similar to the TAF Development Plan discussed above, in-house intellectual property counsel MJ Edwards was a member of the Biktarvy Project Team.  *See* GIL_003288947.  The redacted material within this

June 28, 2021

document reflects attorney advice from Ms. Edwards regarding various intellectual property issues.  Gilead has conducted a review of the redacted material, as requested by Plaintiffs, in order to assess whether the redactions might be narrowed.  However, based on our review, Gilead plans to stand on the redactions as-is.

**GIL_002837799:**  This document reflects a post-approval plan for the product ultimately known as Odefsey®.  Gilead has already agreed to an initial narrowing of the redactions on this document, as reflected in the version included in Gilead's Production Volume 50.  As discussed on our meet-and-confer call, the remaining redacted material at GIL_002837799 and GIL_002837802-03 reflects the input and advice of in-house intellectual property counsel MJ Edwards.  Indeed, we explained that Ms. Edwards is referred to numerous times in notes related to the redacted material (as "MJ").  *See* GIL_002837892.

**GIL_002818169:**  As we noted in our prior correspondence, the only redacted material in this document, at GIL_002818215, reflects attorney advice regarding issues surrounding the location for production of certain API for Biktarvy, which is irrelevant to this matter.  Plaintiffs indicated on our call that if there was no patent-related analysis regarding a relevant product, there was likely not going to be an ongoing dispute on this document.  As requested by Plaintiffs, we can confirm that the material redacted does not contain any legal analysis, or non-privileged factual information, regarding the loss of exclusivity for Biktarvy or any other relevant product, nor does it contain an assessment of the strength of the patents covering Biktarvy or any other relevant product.  We trust that this is sufficient to satisfy Plaintiffs and that we can remove this document from the list of documents subject to potential dispute.

**GIL_004768652:**  On our meet-and-confer call, Plaintiffs indicated that they did not plan to challenge the redaction in the section entitled "DPR Decisions" at GIL_004768653.  As for the remaining redactions, Plaintiffs asked Gilead to consider whether the redactions above that section could be narrowed to reflect non-privileged information.  As indicated on our call, Gilead's position is that the material within the remaining redactions reflects the subject matter about which the Development Committee planned to "meet with Intellectual Property," as reflected on page GIL_004768653.  Plaintiffs indicated that they would reconsider their challenge to these redactions based on this representation, and we look forward to discussing that with you during our next meet and confer.

**GIL_002949732:**  Based on our meet-and-confer call, Gilead understands that Plaintiffs do not challenge the material redacted at GIL_002949741, as that material relates to products that are irrelevant to this matter.  With respect to the redactions at GIL_002949734, as with the prior document, we discussed that the redacted material reflects the subject matter about which the Development Committee was requesting a "legal assessment."  However, Gilead will agree to a narrowing of the redactions to disclose material that does not appear to be related to the request for legal advice on the intellectual property issue.

**GIL_003366760:**  During our meet and confer, Gilead indicated that this document was created by Mr. Peter Virsik, a Gilead employee, incorporating information that was obtained from in-house counsel regarding certain loss of exclusivity analyses.  To be more specific, on April 7, 2003, Mr.

WHITE & CASE

June 28, 2021

Virsik sought legal advice from one of Gilead's in-house attorneys (Alex Andrus) requesting loss of exclusivity information in connection with the creation of this document. The request from Mr. Virsik to Mr. Andrus is included as part of an email chain that includes both Mr. Andrus and Gilead's then-Vice President of Intellectual Property, Mark Bosse, which Gilead included on its privilege log at GIL_PRIV_000006180. Gilead is happy to meet and confer further with respect to this information once Plaintiffs have assessed it.

**GIL_003081507:** As discussed on our call, the sole redaction in this document, at GIL_003081528, reflects an assessment of the legal risks regarding the withdrawal of certain HIV treatments from sale. Based on our further review, Gilead plans to stand on the redaction as-is.

**GIL_003061892:** We appreciate your confirmation on our meet and confer that Plaintiffs' only challenges to the redacted information in this document would be with respect to the information related to the US market and US patent expirations. The redacted information in this presentation reflects attorney analysis of loss of exclusivity for Efavirenz, as provided by Gilead in-house attorneys Allan Kutzenco and Steve Krawczyk. This analysis of the numerous patents and exclusivity scenarios regarding Efavirenz is reflected in the privileged memorandum included on Gilead's privilege log at GIL_PRIV_000008755.

**GIL_001710443:** With respect to this document, we appreciate your clarification that the Plaintiffs plan to only challenge the material in this document related to the US market or US patents. Given that clarification, the redactions at issue are limited to those on the table at GIL_001710433_0003. To begin with, Gilead agrees to revise the redactions that uncover purely factual material regarding publicly stated patent expiration dates. As to the redactions that will remain on the table and related text, that material reflects attorney advice from Gilead IP regarding the analysis of the patent portfolios for the various HIV treatments included in the table.

**GIL_002678279:** As discussed in our meet and confer, the redactions at GIL_002678279_0035-36 reflect legal advice regarding the "competition" law (i.e., antitrust) issues surrounding the Complera® agreement. This includes, among other items, discussion of competition advice regarding the pricing arrangements for the combination product—which involved attorney advice on the sharing of pricing information between Gilead and Janssen that was also the subject of various clawback redactions made by Janssen and Gilead (and not challenged by Plaintiffs). In connection with entering into and implementing the Complera agreement, Gilead in-house and external counsel provided legal advice regarding antitrust risks and appropriate safeguards related to the Complera agreement.

Sincerely,

*/s/ Jeremy Ostrander*
**Jeremy Ostrander**

**T** +1 650 213 0375
**E** jostrander@whitecase.com

cc:      GileadATPlaintiffCounsel@hilliardshadowenlaw.com

# EXHIBIT 8

# DOCUMENT PROPOSED TO BE FILED UNDER SEAL IN ITS ENTIRETY

# EXHIBIT 9

# DOCUMENT PROPOSED TO BE FILED UNDER SEAL IN ITS ENTIRETY

# EXHIBIT 10

# DOCUMENT PROPOSED TO BE FILED UNDER SEAL IN ITS ENTIRETY

# EXHIBIT 11

# DOCUMENT PROPOSED TO BE FILED UNDER SEAL IN ITS ENTIRETY

# EXHIBIT 12

# DOCUMENT PROPOSED TO BE FILED UNDER SEAL IN ITS ENTIRETY

# EXHIBIT 13

Heather M. Burke (SBN 284100)
Jeremy K. Ostrander (SBN 233489)
**WHITE & CASE**LLP
3000 El Camino Real
2 Palo Alto Square, Suite 900
Palo Alto, CA  94306-2109
Telephone: (650) 213-0300
Facsimile: (650) 213-8158
hburke@whitecase.com
jostrander@whitecase.com

Christopher M. Curran (*pro hac vice*)
Peter J. Carney (*pro hac vice*)
**WHITE & CASE**LLP
701 Thirteenth Street, NW
Washington, District of Columbia 20005
Telephone: (202) 626-3600
Facsimile: (202) 639-9355
ccurran@whitecase.com
pcarney@whitecase.com

Heather K. McDevitt (*pro hac vice*)
Bryan D. Gant (*pro hac vice*)
Kristen O'Shaughnessy (*pro hac vice*)
**WHITE & CASE**LLP
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 819-8200
Facsimile: (212) 354-8113
hmcdevitt@whitecase.com
bgant@whitecase.com
kristen.oshaughnessy@whitecase.com

Attorneys for Defendants Gilead Sciences, Inc.,
Gilead Holdings, LLC, Gilead Sciences, LLC,
and Gilead Sciences Ireland UC

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| STALEY, *et al.*,<br><br>                              Plaintiffs,<br><br>     v.<br><br>GILEAD SCIENCES, INC., *et al.*,<br><br>                              Defendants. | Case No. 3:19-cv-02573-EMC (lead case)<br><br>**DECLARATION OF KATHARINE RICE** |

I, KATHARINE RICE, declare as follows:

1.    I make this declaration on behalf of Gilead Sciences, Inc., Gilead Holdings, LLC, Gilead Sciences, LLC, and Gilead Sciences Ireland UC (collectively, "Gilead") in support of Gilead's position in the August 20, 2021 discovery letter brief to Magistrate Judge Beeler, filed herewith. Except for those matters stated on information and belief, which I believe to be true, I have personal knowledge of the facts set forth herein and, if called upon, could and would competently testify thereto under oath.

2.    I am presently employed by Gilead as Senior Associate General Counsel, Litigation & Investigations.  I have been employed as an in-house attorney for Gilead since February 2012, specializing primarily in patent litigation issues.  Throughout my time at Gilead, there have been a substantial number of in-house attorneys responsible for advising Gilead's business units.  The advice of one or more Gilead internal or external counsel is reflected in each of the exhibits at issue in the August 20 letter brief.

3.    Exhibit 1 to the August 20 letter brief is a presentation document that provides a summary of the license and collaboration agreement regarding Complera® between Gilead and Tibotec dated July 16, 2009.  The redactions at pages 36 and 37 of this document reflect legal advice regarding the "competition" law (i.e., antitrust) issues surrounding the Complera agreement provided by outside counsel Robert F. Leibenluft and Eric J. Stock of Hogan & Hartson.  This advice was memorialized in a memorandum received by Gilead from Hogan & Hartson on June 29, 2009.  A true and correct copy of the June 29, 2009 memorandum, which has been withheld from production in this matter, is being submitted under seal with the accompanying motion for *in camera* review as Exhibit 8.  My understanding is that in connection with entering into and implementing the Complera® agreement, Gilead in-house counsel also provided legal advice regarding antitrust risks and appropriate safeguards related to the Complera® agreement, including the information redacted on pages 36 and 37.  The limited redacted information on pages 36 and 37 in Exhibit 1 includes, among other items, discussion of the attorney advice received from Hogan & Hartson as well as in-house counsel regarding the pricing arrangements for the combination product.

4.      Exhibit 2 to the August 20 letter brief is a document entitled "Post-Approval Plan" for the Gilead product ultimately known as Odefsey®.  Within Gilead, each product is assigned a Project Team, which are made up of various employees, including an in-house IP attorney.  The in-house IP attorney serves in the role of Project Attorney and provides legal advice on IP issues as they arise, including advice regarding patent term expirations and related periods of exclusivity.  Exhibit 2 was distributed to in-house attorney MJ Edwards.  *See* Exhibit 2 (cover email at Ex. 2 - 1).  Ms. Edwards, who is still employed at Gilead as Senior Intellectual Property counsel, is referred to as "MJ."  The redacted material at pages 2, 5, and 6 reflects the input and advice of in-house intellectual property counsel MJ Edwards on intellectual property issues related to the Odefsey product.  This intellectual property advice includes an analysis of potential loss of exclusivity for Odefsey, and an analysis of potential patent infringement claims if the product were to launch.  Indeed, at pages 5 and 6, there are specific requests within the document itself to Ms. Edwards, referring to her as "MJ," to confirm the content of her intellectual property advice.

5.      Exhibit 3 to the August 20 letter brief is a presentation on Gilead's HIV Portfolio Opportunity Project, dated August 19, 2009.  On information and belief, based on the electronic metadata in this document, the author of this document was Liz Bhatt, a former Gilead employee.  The redacted information on pages 4 and 18 in this presentation reflects attorney analysis of loss of exclusivity for Efavirenz—a component of the product Atripla®—as provided by Gilead in-house attorneys Allan Kutzenco and Steve Krawczyk.  This loss of exclusivity analysis was reflected in a legal memorandum dated July 31, 2009 prepared by Messrs. Kutzenco and Krawczyk, working with Reza Oliyai of Gilead's research and development group, reflecting their legal analysis of the Efavirenz patent portfolio and likely loss of exclusivity timeline.  A true and correct copy of the July 31, 2009 memorandum, which has been withheld from production in this matter, is being submitted under seal with the accompanying motion for *in camera* review as Exhibit 9.  On information and belief, this memorandum was initially distributed in hard copy within Gilead, including to Ms. Bhatt, at or around the time of its drafting in late July 2009, and was only later scanned and emailed on August 28, 2009, as reflected in Gilead's privilege log.

6.      Exhibit 4 to the August 20 letter brief is an excel spreadsheet entitled "NPV Analysis of GS-7340 as a Patent Extension to Viread."  My understanding is that this document was drafted by Peter Virsik, a former employee in Gilead's corporate development group.  On April 11, 2003, Mr. Virsik initially sent a version of this document to Jung Choi, another former employee in Gilead's corporate development group.  *See* Ex. 4 – 1, GIL_003366758.  Prior to doing so, Mr. Virsik reached out to in-house intellectual property counsel Alex Andrus on April 7, 2003 for legal advice regarding patent expiration dates and related periods of exclusivity to include in his analysis, which Alex Andrus then provided on April 8, 2003.  A true and correct copy of the email chain reflecting Mr. Virsik's outreach to Mr. Andrus, which has been withheld from production in this matter, is being submitted under seal with the accompanying motion for *in camera* review as Exhibit 10.  Mr. Virsik incorporated the information provided by Mr. Andrus into Exhibit 4.

7.      Exhibit 5 to the August 20 letter brief is a document entitled Gilead Portfolio Review Meeting Minutes, for meetings that occurred on September 29, September 30, October 8, and October 17, 2008.  Gilead's portfolio review process involved a review by Gilead executives of the company's entire portfolio of drugs, so that the company can decide on future strategy.  As part of that assessment, the Portfolio Review Committee commonly relied on Gilead's intellectual property attorneys to assess patent exclusivity issues.  The redacted material in Exhibit 5 at page 3 relates to the Portfolio Review Committee requested input on patent exclusivity issues related to a potential competitor product to Gilead's in-development product then known as GS-9350, which contained the active ingredient Cobicistat and was ultimately marketed under the trade name Tybost®.  On information and belief, at the time of the November 18, 2008 Portfolio Review Committee meeting, the Gilead intellectual property attorney on the GS-9350 product team was Mr. Kutzenco, and he was consulted on the subject matter requested by the executive committee, as reflected in Exhibit 5.

8.      Exhibit 6 to the August 20 letter brief is a set of meeting minutes from Gilead's Development Project Review meeting, which took place on September 24, 2012.  The redacted material in Exhibit 6 at pages 1-2 reflects a request for legal advice that was in discussion between the Intellectual Property department and the HIV business in 2012 regarding the launch of TAF-based products.  In particular, Daniel Collins, an attorney in Intellectual Property, had been advising on these

1   launch-related issues as early as May 2012.  A true and correct copy of a May 4, 2012 email chain

2   containing legal advice from Mr. Collins, which has been withheld from production in this matter, is

3   being submitted under seal with the accompanying motion for *in camera* review as Exhibit 11.  Further,

4   the unredacted material in Exhibit 6 shows that Development Committee planned to "meet with

5   Intellectual Property" September 28, 2012.  *See* Ex. 6 – 2.  On information and belief, Gregg Alton,

6   the former general counsel of Gilead, did in fact consult with Lorie Ann Morgan of Gilead's

7   Intellectual Property department shortly after receiving debrief of the Development Project Review

8   meeting to discuss the legal subject matter that is contained with the redactions in Exhibit 6.  A true

9   and correct copy of the September 28, 2012 email communication between Mr. Alton and Ms. Morgan,

10  which has been withheld from production in this matter, is being submitted under seal with the

11  accompanying motion for *in camera* review as Exhibit 12.

12         I declare under penalty of perjury that the foregoing is true and correct.

13         Executed on August, 19th in San Francisco, California.

14                                                    /s/

15                                                    Katharine Rice

16

17

18

19

20

21

22

23

24

25

26

27

28

DECLARATION OF KATHARINE RICE
CASE NO: 3:19-CV-02573-EMC