1  DURIE TANGRI LLP
2  DARALYN J. DURIE (SBN 169825)
   ddurie@durietangri.com
3  217 Leidesdorff Street
   San Francisco, CA 94111
4  Telephone: (415) 362-6666

5
6  HILLIARD & SHADOWEN LLP
   STEVE D. SHADOWEN (*pro hac vice*)
7  steve@hilliardshadowenlaw.com
   1135 W. 6th Street, Suite 125
   Austin, TX 78703
8  Telephone: (855) 344-3298

9
   HAGENS BERMAN SOBOL SHAPIRO LLP
10 STEVE W. BERMAN (*pro hac vice*)
   steve@hbsslaw.com
11 1301 Second Avenue, Suite 2000
   Seattle, WA 98101
12 Telephone: (206) 623-7292

13
   *Co-Lead Counsel for End-Payor Plaintiffs*
14
   *Additional Counsel on Signature Page*
15

16                 **IN THE UNITED STATES DISTRICT COURT**
17               **FOR THE NORTHERN DISTRICT OF CALIFORNIA**

18

| | |
|---|---|
| PETER STALEY, et al., | Case No. 3:19-cv-2573-EMC |
| Plaintiff, | **END-PAYOR CLASS PLAINTIFFS'** |
| | **UNOPPOSED MOTION FOR** |
| v. | **PRELIMINARY APPROVAL OF** |
| | **SETTLEMENT WITH BRISTOL-** |
| GILEAD SCIENCES, INC., et al., | **MYERS SQUIBB COMPANY AND E.R.** |
| | **SQUIBB & SONS L.L.C.,** |
| Defendants. | **CERTIFICATION OF THE** |
| | **SETTLEMENT CLASSES, APPROVAL** |
| | **OF FORM AND MANNER OF NOTICE,** |
| This Document Relates to: | **APPOINTMENT OF SETTLEMENT** |
| | **ADMINISTRATOR, OF ESCROW** |
| *Staley, et al., v. Gilead Sciences, Inc., et al.,* | **AGENT, AND OF SETTLEMENT** |
| No. 3:19-cv-02573-EMC | **CLASS COUNSEL, AND APPROVAL** |
| | **OF FINAL SETTLEMENT SCHEDULE** |
| | **AND DATE FOR FINAL APPROVAL** |
| | **HEARING** |

Date: December 9, 2021
Time: 1:30 p.m.
Courtroom: 5, 17th Floor
Before: Edward M. Chen

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**NOTICE OF MOTION AND MOTION**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on December 9, 2021 at 1:30 p.m., or as soon thereafter as the matter may be heard, before the Honorable Edward M. Chen, United States District Judge, in Courtroom 05 of the United States District Court for the Northern District of California in San Francisco, CA, plaintiffs Peter Staley, Ivy Kwan Arce, Gregg S. Gonsalves, PhD, Brenda Emily Goodrow, Andrew R. Spieldenner, PhD,  Michael Snipe, Josh McDonald, Troy Vazquez-Cain, Fraternal Order of Police, Miami Lodge 20, Insurance Trust Fund, Local No. 1 Health Fund, Teamsters Local 237 Welfare Fund and Teamsters Local 237 Retirees' Benefit Fund, and Pipe Trades Services MN Welfare Fund ("Plaintiffs"), individually and on behalf of the End-Payor classes to be certified under Fed. R. Civ. P. 23(a), (b)(2) and (b)(3) for settlement purposes only (the "End-Payor Classes"), will move the Court pursuant to Federal Rule of Civil Procedure 23(e) for entry of an Order:

1. Granting preliminary approval of the agreement by and between Plaintiffs, individually and on behalf of the End-Payor Classes, with Defendants Bristol-Myers Squibb Company and E.R. Squibb & Sons, L.L.C. (together, "BMS") to settle the claims brought on behalf of the End-Payor Classes against BMS;

2. Certifying the settlement classes;

3. Approving the proposed form and manner of notice of the settlement to the End-Payor Classes;

4. Appointing A.B. Data Ltd. as administrator to assist in disseminating settlement notice to End-Payor Class members and, if the settlement is granted final approval, administer distribution of the settlement fund to the End-Payor Classes;

5. Appointing The Huntington National Bank as escrow agent to receive and invest the settlement funds in accordance with the terms of the escrow agreement;

6.      Appointing Interim Co-Lead Counsel as Settlement Class Counsel; and

7.      Setting a schedule for the final approval process, including the date for a Final Approval Hearing.

In support of this motion, Plaintiffs submit that the proposed settlement is fair, reasonable, and adequate. It provides significant injunctive relief by prohibiting BMS from enforcing the only No-Generics Restraint to which it is currently a party with Defendant Gilead Sciences, Inc. In addition, it requires BMS to make a cash payment to the End-Payor Classes of ten million dollars ($10,000,000) and to pay half the costs of providing notice to the classes, up to a maximum of $200,000. In exchange, the Classes will provide defined releases to BMS.

This motion is based on the Notice of Motion, the Supporting Memorandum of Points and Authorities, the supporting declarations and exhibits, all papers and records on file in this matter, and the argument of counsel.

The Court is familiar with the facts of this case, and Plaintiffs respectfully submit that a hearing on preliminary approval of the settlement is not necessary. If, however, the Court wishes to hold a hearing, Plaintiffs respectfully request that it occur at as early a date as is convenient for the Court.

Plaintiffs have conferred with counsel for BMS. BMS does not oppose this motion, however BMS does not agree with Plaintiffs' characterization of the terms of the BMS-Gilead collaboration agreements or characterization of BMS's conduct.

**TABLE OF CONTENTS**

I.  INTRODUCTION ................................................................................................ 1

II. ARGUMENT ...................................................................................................... 3

A. The Proposed Settlement Easily Meets the Standard for Preliminary Approval. ................................................................................................. 3

1. The proposed settlement is the product of good faith, arm's-length negotiations. ....................................................................... 6

2. The proposed settlement has no obvious deficiencies. ................ 7

3. The proposed settlement treats all Class Members fairly and equitably. ...................................................................................... 7

4. The settlement secures an excellent result for the Class and is well within the range of possible approval. ....................................... 8

B. The Proposed Plan to Allocate the Settlement *Pro Rata* to Class Members Is Fair, Reasonable, and Adequate. ....................................................... 13

C. The Settlement Classes Merit Certification. ....................................... 15

1. Rule 23(a): Each class is sufficiently numerous. ....................... 15

2. Rule 23(a): The case involves questions of law or fact common to the classes. ................................................................................. 16

3. Rule 23(a): Plaintiffs' claims are typical of the claims of the classes. ........................................................................................ 16

4. Rule 23(a): Plaintiffs will fairly and adequately represent the interests of the classes. ............................................................... 17

5. Rule 23(b)(2): Certification is appropriate for the injunction-only classes. ........................................................................................ 17

6. Rule 23(b)(3): Common questions of fact or law predominate. .. 18

7. Rule 23(b)(3): Class-action treatment is superior to individual cases. .......................................................................................... 20

D. The Proposed Form and Manner of Notice Will Fairly and Efficiently Inform Class Members of the Terms of the Settlement and Their Options. ............. 20

1. The form of the settlement notice clearly and concisely describes all information required by Rule 23(c)(2)(b). ............................ 21

2. The proposed manner of disseminating the settlement notice will ensure that Class Members receive timely notice. ..................... 22

E. The Court Should Appoint A.B. Data Ltd., an Experienced, Nationally Recognized Settlement Administration Company, as Settlement Administrator. ..................................................................................... 23

iii

F.   The Court Should Appoint Huntington National Bank, a Top-25 U.S. Bank Holding Company that Has Handled Thousands of Settlements, as Escrow Agent. ........................................................................................................................23

G.   The Court Should Appoint Interim Co-Lead Counsel as Settlement Class Counsel. ........................................................................................................................24

H.   The Proposed Final Settlement Schedule Is Appropriate, Comports with Due Process, and Satisfies the Requirements of the Class Action Fairness Act. ........................................................................................................................24

III.   CONCLUSION..................................................................................................................25

MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT
BETWEEN END-PAYOR CLASSES AND BMS
3:19-cv-02573-EMC

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Acosta v. Frito-Lay, Inc.*,
  No.15-cv-02128, 2018 WL 646691 (N.D. Cal. Jan 31, 2018)................................4, 6, 7

*Bellinghausen v. Tractor Supply Co.*,
  303 F.R.D. 611 (N.D. Cal. 2014) ........................................................ 8

*Brown v. CVS Pharm., Inc.*,
  No. 15-cv-7631, 2017 WL 3494297 (C.D. Cal. Apr. 24, 2017) ......................... 7

*In re Cathode Ray Tube (Crt) Antitrust Litig.*,
  No. C-07-5944-SC, 2016 WL 721680 (N.D. Cal. Jan. 28, 2016) ....................... 9

*In re Citric Acid Antitrust Litig.*,
  145 F. Supp. 2d 1152 (N.D. Cal. 2001) ................................................ 9

*Cuzick v. Zodiac U.S. Seat Shells, LLC*,
  No. 16-cv-03793, 2017 WL 4536255 (N.D. Cal. Oct. 11, 2017)....................3, 4, 6, 7

*Denney v. Deutsche Bank AG*,
  443 F.3d 253 (2d Cir. 2006)............................................................15

*Edenborough v. ADT, LLC*,
  No. 16-cv-02233, 2017 WL 4641988 (N.D. Cal. Oct. 16, 2017)....................... 3

*Fronda v. Staffmark Holdings, Inc.*,
  No. 15-cv-02315, 2017 WL 5665671 (N.D. Cal. Nov. 27, 2017)....................6, 8

*Glass v. UBS Fin. Servs., Inc.*,
  No. C 06-4068, 2007 WL 221862 (N.D. Cal. Jan. 26, 2007) ....................... 7

*Haralson v. U.S. Aviation Servs. Corp.*,
  383 F. Supp. 3d 959 (N.D. Cal. 2019) ................................................ 3

*In re High-Tech Emp. Antitrust Litig.*,
  No. 11-cv-2509, 2013 WL 6328811 (N.D. Cal. Oct. 30, 2013)....................... 3

*Hunt v. Check Recovery Sys., Inc.*,
  No. C05-04993, 2007 WL 2220972 (N.D. Cal. Aug. 1, 2007)........................14

*Lane v. Facebook*,
  696 F.3d 811 (9th Cir. 2012)...........................................................12

*In re LendingClub Sec. Litig.*,
 Nos. C 16-02627, C 16-02670, C 16-03072, 2018 WL 1367336 (N.D. Cal. Mar.
 16, 2018) ........................................................................................................................... 7

*Low v. Trump Univ.*,
 881 F.3d 1111 (9th Cir. 2018) ..........................................................................................15

*In re Mego Fin. Corp. Sec. Litig.*,
 213 F.3d 454 (9th Cir. 2000) ............................................................................................. 7

*In re MetLife Demut. Litig.*,
 689 F. Supp. 2d 297 (E.D.N.Y. 2010) ..............................................................................15

*Nat'l Rural Telecommc'ns Coop. v. DIRECTV, Inc.*,
 221 F.R.D. 523, 527 (C.D. Cal. 2004) ............................................................................... 8

*Officers for Justice v. Civil Service Commission of City and County of San Francisco*,
 688 F.2d 615 (9th Cir. 1982) ............................................................................................15

*Pac. Enters. Sec. Litig.*,
 47 F.3d 373 (9th Cir. 1995) ................................................................................................ 8

*Satchell v. Fed. Express Corp.*,
 No. C03-2659, 2007 WL 1114010 (N.D. Cal. Apr. 13, 2007)............................................ 4

*Smith v. Am. Greetings Corp.*,
 No. 14-cv-02577, 2015 WL 4498571 (N.D. Cal. July 23, 2015) ....................................... 8

*Torres v. Pick-A-Part Auto Wrecking*,
 No. 16-cv-01915, 2018 WL 306287 (E.D. Cal. Jan. 5, 2018) ........................................... 5

*Uschold v. NSMG Shared Serv., LLC*,
 333 F.R.D. 157 (N.D. Cal. 2019) ...........................................................................4, 7, 12

*Zepeda v. PayPal, Inc.*,
 Nos. C 10-2500, C 10-1668, 2014 WL 718509 (N.D. Cal. Feb. 24, 2014) ....................... 3

**Statutes**

Class Action Fairness Act of 2005, Pub. L 109-2, 119 Stat. 4-14 (codified at 28
 U.S.C. §§ 1332(d), 1453, 1712-1715) ..............................................................................17

**Other Authorities**

Fed. R. Civ. P. 23 ...................................................................................................*passim*

*Manual for Complex Litigation (Fourth)* (2015) ...............................................3, 12, 14

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.      INTRODUCTION

Plaintiffs filed this antitrust class action on May 14, 2019, individually and on behalf of the End-Payor Classes, against defendants Gilead Sciences, Inc., Gilead Holdings, LLC, Gilead Sciences, LLC, and Gilead Sciences Ireland UC ("Gilead"); Bristol-Myers Squibb Company and E. R. Squibb & Sons, L.L.C. ("BMS"); and Johnson & Johnson, Janssen Products LP, and Janssen R&D Ireland ("Janssen") (collectively, "Defendants"). Plaintiffs allege that Gilead, BMS, and Janssen have restrained competition for certain antiretroviral drugs used to treat or prevent HIV, and that these restraints violate federal and state antitrust laws and state consumer protection laws, causing damage to Plaintiffs and Settlement Class members. All of the Defendants deny the essential allegations of the Complaint.

The litigation has proceeded through extensive motion practice and discovery, the beginning of class certification proceedings and the exchange of expert reports, and the beginnings of preparation for trial scheduled to begin on November 7, 2022.  For more than six months, beginning on March 24, 2021, Plaintiffs and BMS intensively negotiated the Settlement Agreement for which the Plaintiffs now seek the Court's preliminary approval.

The Agreement provides that BMS will permanently waive and not enforce the No-Generics Restraint that currently exists in the BMS-Gilead collaboration agreement on the product Evotaz.[1] This is the only such restraint that currently exists in a BMS-Gilead agreement. In addition, BMS will pay $10 million in cash[2] and contribute up to $200,000 toward the cost of providing notice to the classes.[3] In exchange, the classes agree to dismissal of the litigation with prejudice as to BMS only

---

[1] *See* Declaration of Steve D. Shadowen ("Shadowen Decl."), Ex. 1, Settlement Agreement between End-Payor Classes and BMS ("Settlement Agreement") § 8.

[2] *Id.* §§ 1(b), 7(a).

[3] *Id.* § 7(c).

1  and will provide certain releases as to BMS only.[4] Class counsel will not seek any attorneys fees

2  from these BMS funds.

3  The injunctive relief—BMS's disclaiming its contractual right to enforce the No-Generics

4  Restraint as to Evotaz—terminates a restraint that began having its principal anticompetitive bite in

5  December 2017 and that would otherwise exist until at least September 2029.[5] The relief will thus

6  eliminate about two-thirds of the effective life of the anticompetitive restraint.[6]

7  In addition, the consumer members of the proposed class of Evotaz purchasers will receive

8  $1.25 million of the $10 million in cash that BMS is paying. That amount represents at least 100% of

9  those consumers' aggregate damages on their Evotaz purchases.[7]

10  The Complaint alleges two other bases for BMS's potential liability: (1) the No-Generics

11  Restraint on Atripla;[8] and (2) BMS's participation in Gilead's overall scheme to monopolize cART

12  drugs.[9] Absent the No-Generics Restraint in the Atripla collaboration agreement, BMS could have

13  begun making a generic-drug-based version of Atripla once generic Truvada (TDF/FTC) became

14  available in September 2020.[10] But Gilead had already terminated the Atripla collaboration

15  agreement—and its No-Generics Restraint—effective December 31, 2017. Thus, while the

16  collaboration agreement was anticompetitive when the Defendants entered into it, as events unfolded

17  it did not generate any overcharges that Plaintiffs seek to recover in this litigation. As to BMS's

18

19

---

20  [4] *Id*. § 14.

21  [5] First Amended Complaint, ECF No. 347 ("FAC") ¶¶ 124-125.

     [6] Assuming final approval of the Agreement in January 2022.

22  [7] The consumers' damages are modest because Evotaz is a relatively low-selling drug and

23  consumers pay only about 6% of the price for the product, with Third-Party Payors paying the rest.
     See the detailed discussion further below.

24  [8] FAC ¶¶ 104-16.

25  [9] FAC ¶¶ 478-91. Notably, the Complaint does not allege, and discovery did not reveal, that

26  BMS participated in Gilead's making of the reverse payments to Teva to delay generic entry of
     Atripla and Truvada.

27  [10] FAC ¶ 115.

28

1   potential liability for participating in Gilead's overall anticompetitive scheme, the Court granted

2   BMS's motion to dismiss that claim.[11]

3       In short, the Settlement Agreement achieves nearly everything that remains in the litigation

4   for these Plaintiffs to achieve against BMS. It represents an excellent result for the End-Payor

5   Classes and it was negotiated in good faith and at arm's length by counsel experienced in

6   pharmaceutical antitrust matters. The Court should grant preliminary approval of the Agreement;

7   certify the settlement classes; approve the form and manner of notice to the Class; appoint a notice

8   administrator and escrow agent; appoint Interim Co-Lead Counsel as Settlement Class Counsel; and

9   schedule the final approval process.

## II.   ARGUMENT

### A.   The Proposed Settlement Easily Meets the Standard for Preliminary Approval.

12      Pursuant to Federal Rule of Civil Procedure 23(e), "[t]he claims, issues, or defenses of a

13  certified class may be settled . . . only with the court's approval." Approving a settlement is a two-

14  step process, the first of which requires the Court to "make a preliminary determination that the

15  settlement is 'fair, reasonable, and adequate' when considering the factors set out in Rule 23(e)(2)."[12]

16  At the preliminary approval stage, "a full fairness analysis is unnecessary;"[13] the Court need only

17  make an "'initial evaluation of the fairness of the proposed settlement . . . on the basis of written

18  submissions and informal presentation from the settling parties."[14] At this phase:

> Courts may preliminarily approve a settlement and direct notice to the
> class if the proposed settlement: (1) appears to be the product of
> serious, informed, non-collusive negotiations; (2) has no obvious
> deficiencies; (3) does not grant improper preferential treatment to class

---

[11] ECF No. 384, at 13-16.

[12] *Haralson v. U.S. Aviation Servs. Corp.*, 383 F. Supp. 3d 959, 966 (N.D. Cal. 2019) (quoting Fed. R. Civ. Pro. 23(e)(1)(B)); *see also Edenborough v. ADT, LLC*, No. 16-cv-02233, 2017 WL 4641988, at *5-6 (N.D. Cal. Oct. 16, 2017); *Manual for Complex Litigation (Fourth)* § 21.632 (2015) ("Manual").

[13] *Zepeda v. PayPal, Inc.*, Nos. C 10-2500, C 10-1668, 2014 WL 718509, at *4 (N.D. Cal. Feb. 24, 2014) (quoting *Alberto v. GMRI, Inc.*, 252 F.R.D. 652, 665 (E.D. Cal. 2008)).

[14] *In re High-Tech Emp. Antitrust Litig.*, No. 11-cv-2509, 2013 WL 6328811, at *1 (N.D. Cal. Oct. 30, 2013) (quoting Manual § 21.632).

representatives or other segments of the class; and (4) falls within the range of possible approval.[15]

The Court does not have the authority to "delete, modify or substitute certain provisions," so the settlement "must stand or fall in its entirety."[16] While courts "must be particularly vigilant" for signs of collusion or self-interest, "[t]he Ninth Circuit maintains a 'strong judicial policy' that favors the settlement of class actions."[17]

The Settlement Agreement contemplates the certification of seven settlement classes, covering different drugs and sets of drugs.[18] It provides for certification of a class for purchasers of:

- each of the BMS drugs at issue in this case—Atripla and Evotaz—including Third-Party Payors ("TPPs") and consumers and providing for damages;[19]

- each of three non-BMS drugs—Truvada, Complera, and Stribild—including only TPPs, not consumers, and providing for damages;[20]

- one non-BMS drug, Prezcobix, including TPPs and consumers and certified for injunctive relief only;[21] and

- any cART Foundation drug,[22] including TPPs and consumers and certified for injunctive relief only.[23]

---

[15] *Cuzick v. Zodiac U.S. Seat Shells, LLC*, No. 16-cv-03793, 2017 WL 4536255, at *5 (N.D. Cal. Oct. 11, 2017) (citing *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007)).

[16] *Id.* (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)).

[17] *Haralson*, 383 F. Supp. 3d at 966 (quoting *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011)); *Class Plaintiffs v. Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992)).

[18] Settlement Agreement § 1(e).

[19] Settlement Agreement § 1(e)(i)(1)-(2). For all of the damages classes, class membership is limited to those who made purchases in one or more of the *Illinois-Brick* repealer States (or, as to TPPs, has its principal place of business there).

[20] Settlement Agreement § 1(e)(i)(3)-(5).

[21] Settlement Agreement § 1(e)(ii)(1).

[22] For purposes of the Settlement Agreement, the cART Foundation drugs are Atripla, Biktarvy, Complera, Descovy, Genvoya, Odefsey, Stribild, Symtuza, Truvada, and Viread.

[23] Settlement Agreement § 1(e)(ii)(2).

The proposed classes here are narrower than, but are all subsets of, the class definition in the Complaint.[24] Narrowing class definitions is a frequent and entirely proper part of the class-certification process.[25] Plaintiffs narrowed the classes, compared to those defined in the Complaint, in connection with Plaintiffs' previously filed motion to certify classes for *purposes of the ongoing litigation against Gilead and Janssen.*[26] The classes proposed for this settlement are similarly narrower compared to the Complaint's class definition (though slightly broader than those proposed for the ongoing litigation).[27] The Court can therefore be assured that the narrowing was driven by Plaintiffs' legitimate strategic litigation considerations and not by an undue desire to achieve a settlement.

The initial evaluation for preliminary approval does not require a hearing and may be made on the basis of information already known. In light of the Court's extensive knowledge of this case, Plaintiffs respectfully submit that no hearing is necessary and that the Court should grant preliminary approval on the papers. If the Court desires a hearing, however, Class Counsel will, of course, make themselves available at the Court's convenience.

---

[24] FAC ¶¶ 456-57. Plaintiffs' Complaint alleges relevant markets for a number of individual drugs and their generic equivalents, FAC ¶ 389, plus a broader relevant market for all cART drugs or "narrower markets therein." *Id.* ¶ 391. Correspondingly, the Complaint alleges a class of all end-payors of "any cART drug." *Id.* ¶ 456. Plaintiffs have narrowed the scope of the litigation classes to take account of their experts' definitions of the relevant markets and the drugs as to which Plaintiffs have already incurred measurable overcharges. *See* § 1(a) of the *Procedural Guidance for Class Action Settlements* ("Procedural Guidance") (requiring explanation for deviation from class definition in the Complaint), https://www.cand.uscourts.gov/forms/procedural-guidance-for-class-action-settlements/ (updated Nov. 1, 2018 & Dec. 5, 2018).

[25] *See* Memorandum of Points and Authorities in Support of End-Payor Plaintiffs' Motion for Class Certification and Appointment of Counsel ("Class Cert. Brief"), ECF No. 694-1 at 10 & n.33.

[26] *Id.* at 10-12.

[27] The proposed settlement classes are broader than the proposed litigation classes in several respects, including that some of the former include certain State entities, include a class for TPP purchasers of Stribild, include a damages class for Evotaz, and include consumers as well as TPPs in the classes for Atripla and Evotaz (the two BMS drugs at issue). None of these aspects makes any of the settlement classes broader than the class defined in the Complaint.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**1.      The proposed settlement is the product of good faith, arm's-length negotiations.**

The first preliminary approval factor evaluates the means by which the parties reached the settlement agreement. To grant preliminary approval, "a court must be satisfied that the parties 'have engaged in sufficient investigation of the facts to enable the court to intelligently make . . . an appraisal of the settlement.'"[28] There is "an initial presumption of fairness" afforded to settlements "recommended by class counsel after arm's-length bargaining."[29]

The parties reached the proposed settlement following extensive investigation of and discovery on the merits of the case. Discovery began around November 2019 and Defendants have produced over 700,000 unique documents.[30] When this Agreement was reached, Counsel for the End-Payor Classes had expended more than 35,900 hours, at a value of more than $21.3 million, developing and preparing the Plaintiffs' case.[31] Counsel further had the benefit of the detailed briefing and decisions on the motions to dismiss the Complaint and of extensive expert analyses.[32] The Court is well aware of the intensity of the settling parties' engagement in this case.

The proposed settlement was the result of arm's-length, non-collusive negotiations. The parties began negotiations on March 24, 2021, and they accelerated and intensified throughout the Summer, leading to an agreement in principle reached on September 1, 2021.[33] The parties had sufficiently developed their claims and defenses, enabling both sides to negotiate with a fulsome understanding of the strengths and weaknesses of their cases.

---

[28] *Uschold v. NSMG Shared Serv., LLC*, 333 F.R.D. 157, 169 (N.D. Cal. 2019) (quoting *Acosta v. Trans Union, LLC*, 243 F.R.D. 377, 396 (C.D. Cal. 2007)); *see also Acosta v. Frito-Lay, Inc.,* No.15-cv-02128, 2018 WL 646691, at *8 (N.D. Cal. Jan 31, 2018) ("For the parties 'to have brokered a fair settlement, they must have been armed with sufficient information about the case to have been able to reasonably assess its strengths and value.'" (quoting *Acosta*, 243 F.R.D. at 396)).

[29] *Cuzick*, 2017 WL 4536255, at *5 (quoting *Harris v. Vector Mktg. Corp.*, No. 08-cv-5198, 2011 WL 1627973, at *8 (N.D. Cal. Apr. 29, 2011)).

[30] Shadowen Decl. ¶ 12.

[31] Shadowen Decl. ¶ 11.

[32] Shadowen Decl. ¶ 13.

[33] Shadowen Decl. ¶ 14.

1

2

**2.      The proposed settlement has no obvious deficiencies.**

The proposed Settlement has no clear omissions or deficiencies. It does not allow for a

3

reversion of any settlement funds to BMS.[34] It does not provide for any incentive awards for the

4

Class representatives (though they would have been justified by the work performed and service

5

provided by these representatives).[35] And Plaintiffs' counsel determined not to seek any fees from

6

the BMS funds. The proposed use of $2.5 million of the funds for litigation expenses (see the

7

discussion of the plan of allocation below) will benefit the members of all the classes.

8

**3.      The proposed settlement treats all Class Members fairly and equitably.**

9

The Ninth Circuit requires the Court, when considering this factor, to be "'particularly

10

vigilant' for signs that counsel have allowed the 'self-interests' of 'certain class members to infect

11

negotiations.'"[36]

12

No such improper interests infected the process here. Co-Lead Counsel appointed Allocation

13

Counsel to determine the split of $7.5 million among the damages classes, and they did so based on

14

criteria including the relative strength of Plaintiffs' claims against BMS with respect to the respective

15

drugs and the relative magnitude of Plaintiffs' purchases of those drugs.[37]

16

Those basic allocations having been made, the proposed plan of allocation provides that each

17

Class Member's share of the settlement will be calculated in exactly the same way. Specifically, as is

18

standard in allocation plans that have been approved in similar pharmaceutical antitrust class actions,

19

each Class Member's share of the settlement fund will be calculated on a *pro rata* basis based on that

20

21

[34] The Agreement provides for a *pro rata* "ratchet-down" of the funds to account for any opt-outs (Settlement Agreement § 17(b)), but does not provide for a reversion to BMS of any funds unclaimed by members who remain in the classes.

22

[35] Settlement Agreement § 13(a).

23

[36] *Cuzick*, 2017 WL 4536255, at *6 (quoting *Bluetooth Headset*, 654 F.3d at 947).

24

25

26

27

[37] Shadowen Decl. ¶ 15. Courts in this district and elsewhere recommend appointing Allocation Counsel in these and similar circumstances. *See, e.g.*, *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, No. C 06-4333 PJH, 2013 WL 12333442, at *40 (N.D. Cal. Jan. 8, 2013), report and recommendation adopted, 2014 WL 12879520 (N.D. Cal. June 27, 2014); *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Pracs., & Prod. Liab. Litig.*, No. 810ML02151JVSFMOX, 2013 WL 12212364, at *4 (C.D. Cal. July 24, 2013).

28

Class Member's purchases.[38] As a result, all Class Members are treated equally and fairly with respect to their monetary recovery. Courts routinely hold that when class members receive their *pro rata* share of a settlement fund, no member can be said to be granted preferential treatment.[39]

    **4.**    **The settlement secures an excellent result for the Class and is well within the range of possible approval.**

        To determine whether the settlement falls within the range for possible approval, courts focus on "substantive fairness and adequacy," including "plaintiff's expected recovery balanced against the value of the settlement offer."[40] This "requires the Court to evaluate the strength of Plaintiff's

---

[38] This is the standard allocation plan approved in similar pharmaceutical antitrust class actions brought to recover overcharges arising from impaired generic competition. *See, e.g., In re Restasis (Cyclosporine Ophthalmic Emulsion) Antitrust Litig.*, No. 18-md-2819 (E.D.N.Y.), ECF Nos. 490-7, 562 (approved Oct. 7, 2020); *In re Loestrin 24 Fe Antitrust Litig.*, No. 13-md-2472 (D.R.I.), ECF Nos. 1396-8, 1462 (approved Sept. 1, 2020); *In re Lidoderm Antitrust Litig.*, No. 14-md-2521 (N.D. Cal.), ECF Nos. 1004-5, 1004-6, 1054 (approved Sept. 20, 2018); *In re Solodyn (Minocycline Hydrochloride) Antitrust Litig.*, No. 14-md-2503, (D. Mass.), ECF Nos. 1163-4, 1179 (approved July 18, 2018); *In re Celebrex (Celecoxib) Antitrust Litig.*, No. 14-cv-361 (E.D. Va.), ECF Nos. 609-4, 630 (approved Apr. 18, 2018); *In re Aggrenox Antitrust Litig.*, No. 14-md-2516 (D. Conn.), ECF Nos. 733-1, 740 (approved Dec. 19, 2017); *In re Asacol Antitrust Litig.*, No. 15-cv-12730 (D. Mass.), ECF Nos. 419-9, 648) (approved Dec. 7, 2017); *King Drug Co. of Florence, Inc. v. Cephalon, Inc.*, No. 06-cv-1797 (E.D. Pa.), ECF Nos. 864-17, 870 (approved Oct. 15, 2015).

[39] *See, e.g., Acosta*, 2018 WL 646691, at *8 (finding no preferential treatment where proposed allocation plan entitled each class member to claim their *pro rata* share of settlement fund based on number of workweeks worked during class period); *In re Cathode Ray Tube (Crt) Antitrust Litig.*, No. C-07-5944, 2016 WL 3648478, at *15 (N.D. Cal. July 7, 2016) ("[T]he allocation plan appears to have a reasonable, rational basis, and fairly treats class members by awarding each a pro rata share . . . ."); *Gaudin v. Saxon Mortg. Servs., Inc.*, No. 11-cv-01663, 2015 WL 7454183, at *8 (N.D. Cal. Nov. 23, 2015) (finding proposed plan to distribute net settlement fund fairly "award[ed] a pro rata share to class members based on the extent of their injuries"); *In re Zynga Inc. Sec. Litig.*, No. 12-cv-04007, 2015 WL 6471171, at *12 (N.D. Cal. Oct. 27, 2015) ("A settlement in a securities class action case can be reasonable if it fairly treats class members by awarding a pro rata share to every Authorized Claimant . . . . (quoting *Vinh Nguyen v. Radient Pharm. Corp.*, No. 11-cv-00406, 2014 WL 1802293, at *5 (C.D. Cal. May 6, 2014))); *Booth v. Strategic Realty Tr., Inc.*, No. 13-cv-04921, 2015 WL 6002919, at *7 (N.D. Cal. Oct. 15, 2015) (finding the plaintiffs' proposed allocation plan "'fairly treats class members by awarding a pro rata share' to each class member" (quoting *In re Heritage Bond Litig.*, No. 02-ml-2475, 2005 WL 1594403, at *11 (C.D. Cal. June 10, 2005)).

[40] *Acosta*, 2018 WL 646691, at *9 (quoting *Harris*, 2011 WL 1627973, at *9).

1    case."[41] "[I]t is well-settled law that a proposed settlement may be acceptable even though it amounts

2    to only a fraction of the potential recovery that might be available to class members at trial."[42]

3         The Complaint alleges three principal types of anticompetitive conduct: (1) an overall

4    anticompetitive scheme orchestrated by Gilead to monopolize cART drugs; (2) Gilead's reverse

5    payments to Teva Pharmaceuticals to delay entry of generic Truvada and Atripla;[43] and (3) No-

6    Generics Restraints on a number of drugs, including BMS drugs Atripla and Evotaz.[44] As to Gilead's

7    overall monopolization scheme, the Court dismissed Plaintiffs' claim that BMS can be liable for

8    participating in it.[45] As to the reverse payments, the Complaint does not allege, and discovery did not

9    reveal, that BMS participated in Gilead's decision to make those payments or Teva's decision to

10   accept them.

11        That leaves only the No-Generics Restraints on the BMS drugs Atripla and Evotaz. Atripla

12   comprises BMS's Sustiva (efavirenz) and Gilead's Truvada (TDF and FTC). Gilead terminated the

13   collaboration agreement regarding Atripla—and thus terminated the No-Generics Restraint—

14   effective December 31, 2017, before a generic version of Gilead's Truvada became available in

15   September 2020.[46] That termination also occurred before the earliest date that Plaintiffs contend (for

16   purposes of calculating overcharge damages) that generic Truvada would have become available

17   absent the reverse payments to Teva, i.e., February 2018.[47] Thus, the No-Generics Restraint on

18   Atripla never had the anticompetitive effect of preventing BMS from making Atripla with generic

19   TDF/FTC.

20   _____

21        [41] *Cuzick*, 2017 WL 4536255, at *6.

22        [42] *Uschold*, 333 F.R.D. at 171 (quoting *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 527 (C.D. Cal. 2004)).

23        [43] The Complaint also alleges that Gilead made a reverse payment to Teva with respect to a third drug, Viread. FAC ¶¶ 327-39. Plaintiffs are no longer pursuing that claim.

24        [44] FAC ¶¶ 104-28, 340-47.

25        [45] ECF No. 384, at 13-16.

26        [46] Shadowen Decl. ¶ 20.

27        [47] Declaration of Richard D. Frank, Ph.D., ECF No. 694-2, Exhibit 2, at ¶ 112.

28

As for the sole remaining BMS anticompetitive conduct—the No-Generics Restraint on Evotaz—the Settlement Agreement provides very substantial relief. Evotaz comprises Gilead's cobicistat and BMS's Reyataz (atazanavir). BMS expected to encounter generic competition to Reyataz as early as August 2012, whereas Gilead's patents on cobicistat extend to September 2029.[48] The No-Generics Restraint on Evotaz was intended to protect BMS's ingredient long past its patent expiration.[49]

The Settlement Agreement requires BMS to forgo that protection. It requires BMS to forever waive the enforcement of the contractual provisions that prohibit Gilead from making, or licensing others to make, a version of Evotaz formulated with a generic version of BMS's component, atazanavir.[50] The relief will eliminate about two-thirds of the effective life of the anticompetitive restraint. While the annual sales of Evotaz are relatively modest--$38 million to $68 million in the U.S.[51]—one of Plaintiffs' goals is to eliminate all of the No-Generics Restraints at issue in this litigation; the Evotaz restraint is the only one to which BMS is currently a party.

In addition, under the proposed allocation plan the consumer members of the Evotaz class will receive $1.25 million of the $10 million in cash that BMS is paying. The amount paid to those

---

[48] FAC ¶¶ 118, 124-25.

[49] FAC ¶ 117.

[50] Settlement Agreement § 8. Eliminating the No-Generics Restraint will free Gilead to make a generic-based version of Evotaz. It is possible that Gilead will choose not to do so, as a strategic move in this litigation. *See, e.g.*, *In re Brand Name Prescription Drugs Antitrust Litig.*, 123 F.3d 599, 615 (7th Cir. 1997) (discounting evidence of defendants' conduct because action taken "after this litigation commenced … may be strategic"); *GPNE Corp. v. Apple, Inc.,* No. 12-CV-02885-LHK, 2014 WL 1494247, at *9 (N.D. Cal. Apr. 16, 2014) ("[L]itigation itself can skew the results of the hypothetical negotiation.") (quoting *ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 872 (Fed. Cir. 2010)). If that happens, Plaintiffs will seek additional injunctive relief against Gilead with respect to Evotaz. *See, e.g.*, Class Cert. Brief, ECF No. 694-1, at 32-33; Expert Report of Dr. Russell L. Lamb, ECF No. 694-2, Exhibit 3 ¶¶ 54-87 (defining relevant market for Evotaz).

[51] *See* Shadowen Decl. Ex. 6, Declaration of Richard D. Frank, Ph.D. on the Calculation of Damages for Third-Party Payor Purchasers of Evotaz ("Frank BMS Declaration") ¶ 11(a).

consumers is at least 100% of their aggregate damages.[52] That percentage of course well exceeds the ranges that courts have deemed to be fair and adequate.[53]

The allocation plan also provides for the consumer members of the Atripla class to receive $1.25 million, and for another $5 million to be divided among the TPP purchasers of Evotaz and of Atripla, Truvada, Complera, and Stribild for forgoing the possibility of getting appellate reversal of this Court's decision that BMS is not liable for participating in Gilead's overall monopolization. And the plan provides an additional $2.5 million to be used to defray some of the costs of the litigation— which benefits all of the classes, including the injunction classes for purchasers of Prezcobix and cART Foundation drugs.[54]

In short, the Settlement Agreement provides to Plaintiffs most of everything they could realistically get from BMS in this litigation. It does so with decisive structural relief and with a cash recovery that is immediate and certain.

In exchange, the releases granted to BMS are narrowly tailored to the allegations at issue in the litigation.[55] The Settlement release here extends beyond the specific claims asserted in the

---

[52] *See id.* ¶ 10 (TPP damages in *Illinois-Brick* repealer States are $5.8 million, and TPPs pay 94% of the cost of Evotaz, while consumers pay 6%). The damages are modest because Evotaz's sales are modest. It is not yet possible to determine what percentage of their damages the TPP purchasers of Evotaz will recover, because the allocation plan defers the allocation until Plaintiffs have recovered additional amounts, if any, from the other defendants.

[53] *See, e.g., In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) (affirming preliminary approval of class settlement representing approximately one-sixth of potential recovery); *In re LendingClub Sec. Litig.*, Nos. C 16-02627, C 16-02670, C 16-03072, 2018 WL 1367336, at *2 (N.D. Cal. Mar. 16, 2018) (granting preliminary approval of settlement representing approximately 17% of the maximum recoverable at trial); *Brown v. CVS Pharm., Inc.*, No. 15-cv-7631, 2017 WL 3494297, at *4 (C.D. Cal. Apr. 24, 2017) (recovery of 27% of class's potential damages is "well within the range of possible approval"); *Glass v. UBS Fin. Servs., Inc.*, No. C 06-4068, 2007 WL 221862, at *4 (N.D. Cal. Jan. 26, 2007) (preliminarily approving settlement amount constituting 25%–35% of recoverable damages).

[54] See the discussion below of the Plan of Allocation.

[55] *See, e.g., Torres v. Pick-A-Part Auto Wrecking*, No. 16-cv-01915, 2018 WL 306287, at *3 (E.D. Cal. Jan. 5, 2018) (finding no obvious deficiencies in proposed agreement providing for non-reversionary cash fund to be divided among class members who submit valid claims and release of liability narrowly tailored to the claims); *Nen Thio v. Genji, LLC*, 14 F. Supp. 3d 1324, 1334 (N.D.

-11-

Complaint, but only to encompass potential claims that "arise out of the facts, occurrences, transactions, or other matters alleged or asserted in this Action, whether known or unknown."[56] This is an appropriate release. The Ninth Circuit recognizes that a release may properly extend to "claims not alleged in the underlying complaint where those claims depended on the same set of facts as the claims that gave rise to the settlement." *Hesse v. Sprint Corp.*, 598 F.3d 581, 590 (9th Cir. 2010).

Although Class Counsel have always been (and remain) confident in the strength of the Classes' claims, there was no guarantee that a jury would have found in favor of the Classes against BMS or that Plaintiffs would obtain appellate reversal of the Court's dismissal of claims against BMS (or that Plaintiffs would prevail on the merits after any reversal). Given the risk of no or substantially reduced recovery—a risk that would persist even after a lengthy and costly trial, appellate reversal of the dismissed claims, followed by another lengthy and costly trial—the relief provided to the Classes is substantial.[57]

Additionally, the Class is represented by lawyers with extensive pharmaceutical antitrust class action experience, with decades of collective experience representing classes of end-payors in similar cases. In approving proposed class settlements, "courts afford great weight . . . to the recommendation of counsel, who are most closely acquainted with the facts of the underlying

---

Cal. 2014) (finding no obvious deficiencies in settlement agreement where scope of release, while broad, was limited to claims based on the facts set forth in the complaint).

[56] Settlement Agreement §1(n).

[57] *See Smith v. Am. Greetings Corp.*, No. 14-cv-02577, 2015 WL 4498571, at *7 (N.D. Cal. July 23, 2015) (evaluating recovery in view of trial hurdles faced by class); *Bellinghausen v. Tractor Supply Co.*, 303 F.R.D. 611, 624 (N.D. Cal. 2014) ("The Court considers that even if 'Plaintiffs were to prevail, they would be required to expend considerable additional time and resources potentially outweighing any additional recovery obtained through successful litigation,' and these delays will affect 'payment to the Class Members and increase the amount of attorneys' fees.'" (quoting *Collins v. Cargill Meat Sols. Corp.*, 274 F.R.D. 294, 302 (E.D. Cal. 2011)).

1   litigation."[58] The proposed settlement has the imprimatur of Class Counsel and is unanimously

2   supported by the class representatives.[59]

3   **B.      The Proposed Plan to Allocate the Settlement *Pro Rata* to Class Members Is Fair,
            Reasonable, and Adequate.**
4

5          A plan for allocating a class settlement fund is governed by the same legal standards applied

6   to settlement approval: it must be "fair, reasonable and adequate."[60] Generally, an allocation plan is

7   reasonable if it reimburses class members based on the type and extent of their injuries.[61] "Indeed, in

8   this district, a '*pro-rata* [plan] for allocation has been used in many antitrust cases.'"[62]

9          In summary, the Allocation Plan[63] allocates the Settlement Fund as follows:

10  A.   A total of $2.5 million will be distributed to the consumer members of the Atripla Damages

11         Class and the consumer members of the Evotaz Damages Class. The net amount, after the

12         cost of claims administration, will be allocated 50% to the consumer members of the Atripla

13         Damages Class, and 50% to the consumer members of the Evotaz Damages Class. Allocation

14         Counsel determined that, while the purchases of Atripla far exceed those of Evotaz, the

15         classes' claim against BMS for Evotaz are far stronger than for Atripla. Each claimant's

16         recovery will be limited to his or her total unreimbursed costs of Atripla and Evotaz

17         purchases during the class period. Any amount remaining from the $2.5 million allocated to

18         these consumers will be re-allocated to the other damages classes. In no event will those

19         funds revert to BMS.

---

20  [58] *Nat'l Rural Telecomms. Coop.*, 221 F.R.D. at 528 (quoting *In re Painewebber Ltd. P'ships

21  Litig.*, 171 F.R.D. 104, 125 (S.D.N.Y. 1997); *see also, e.g., Pac. Enters. Sec. Litig.*, 47 F.3d 373,
    378 (9th Cir. 1995) ("Parties represented by competent counsel are better positioned than courts to
22  produce a settlement that fairly reflects each party's expected outcome in the litigation.").

23  [59] *See* Shadowen Decl. ¶ 10.

24  [60] *In re Citric Acid Antitrust Litig.*, 145 F. Supp. 2d 1152, 1154 (N.D. Cal. 2001).

    [61] *Id*.
25
    [62] *In re Cathode Ray Tube (Crt) Antitrust Litig.*, No. 07-cv-5944, 2016 WL 721680, at *21 (N.D.
26  Cal. Jan. 28, 2016) (quoting *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. 07-md-1827, 2011 WL
    75750004, at *4 (N.D. Cal. Dec. 27, 2011)).
27
    [63] Shadowen Decl. Ex. 4, Plan of Allocation.
28

1

2   B. A total of $5 million will be distributed to the Complera Damages Class, the Stribild

3   Damages Class, the Truvada Damages Class (which do not include consumers), and the TPP

4   members of the Atripla Damages Class and the TPP members of the Evotaz Damages Class.

5   The allocation of the net amount among these classes will be decided by the Court at a later

6   date, and the distributions will likewise be deferred, so that these funds can be combined and

7   distributed together with any additional amounts that the classes might recover from Gilead

8   and Janssen in this litigation. These class members will receive additional notice at a later

9   date, and will have an opportunity to object to and be heard in connection with the proposed

    plan of distribution at that time.

10  C. $2.5 million will be used to reimburse and pay Court-approved litigation expenses (e.g.,

11  expert-witness fees) incurred by the End-Payor Classes.[64] To date, Plaintiffs have incurred

12  more than $3.3 million in such expenses.[65]

13

14      Within each damages class, the Plaintiffs will calculate each Class Member's allocation *pro*

15  *rata* based on the proportion of that Class Member's volume of net unit purchases, from May 14,

16  2015 through and until October 13, 2021, of all Class Members' qualifying purchases during the

17  class period.[66] Each Claimant will be required to execute and return a Claim Form to receive any

18  distribution from the Net Settlement Fund.[67] The proposed Allocation Plan fairly and appropriately

19

20      [64] The consumer members of the Atripla Damages Class and the Evotaz Damages Class will not
    otherwise receive a monetary recovery from the ongoing litigation of the End-Payor Class Plaintiffs'
21  damages claims against Gilead and Janssen, because Class Counsel have determined that the best
    litigation strategy is to not include individual consumers in any of the litigation damages classes
22  against those defendants. The Plan's allocation of $2.5 million for litigation expenses may be used to
    benefit litigation damages classes of which these consumers will not be members. The Plan therefore
23  allocates a corresponding $2.5 million to these consumers in order to protect them from any
    unfairness.
24

25      [65] Shadowen Decl. ¶ 11.

26      [66] *See* Plan of Allocation § 1.7.

27      [67] Plan of Allocation § 1.5.

28

reimburses Class Members on a *pro rata* basis, based on the extent of their injuries. The Allocation Plan is similar to other court-approved *pro rata* allocation plans in cases involving alleged overcharges from delayed generic competition[68] and can be efficiently implemented.

Plaintiffs anticipate a 10% claims filing rate for the consumers.[69] That estimate is based on comparisons to similar settlements, as well as considerations that include the comprehensive direct notice efforts, the simplicity of the Claim Form and claim submission process, and the anticipated earned media that this Settlement will garner.[70]

**C.      The Settlement Classes Merit Certification.**

**1.      Rule 23(a): Each class is sufficiently numerous.**

The numerosity requirement is generally satisfied by classes containing 40 or more members.[71] Each of the Settlement Classes here has membership ranging from the hundreds to the thousands or more.[72] That more than satisfies numerosity.

---

[68] See cases cited in Footnotes 39 and 40 above.

[69] *See* Shadowen Decl., Ex. 7, Declaration of Linda V. Young at ¶ 17. The actual number of claims paid to consumers here may be modest, because most consumers do not pay out-of-pocket for these drugs. *See* Frank BMS Declaration ¶ 12 Table 3. Consumers suffer additional injury in the form of lack of product choice, inferior product quality, and delayed and dampened innovation; for those reasons among others, the consumers are included in the litigation classes for injunctive relief. A.B. Data estimates that the cost of providing notice will be $370,000 (half of which BMS will pay), and the costs of administering the consumer claims will be in the range of $70,000 to $130,000. Declaration of Linda V. Young at ¶ 18. The Procedural Guidance, at § 11, instructs that lead class counsel should provide certain information "for at least one of their past comparable class settlements." In a recent reverse-payment case, *In re Aggrenox Antitrust Litig.,* No. 3:14-cv-02516 (D. Conn.), Hilliard Shadowen LLP served as co-lead counsel for the end-payor class, which included Third-Party Payors as well as consumers. A.B. Data served as the administrator of both notice and claims. In that $54 million (gross) settlement, 868 TPPs and 29,954 consumers filed claims (there were "likely millions" of potential consumer claimants, *Aggrenox* ECF No. 748-1 at 10). The average pay-out was $44,657.39 to TPPs, and $373.85 to consumers. Shadowen Decl. ¶ 18.

[70] Declaration of Linda V. Young at ¶¶ 19-20.

[71] *Hubbard v. RCM Techs. (USA), Inc.,* 2020 WL 6149694, at *1 (N.D. Cal. Oct. 20, 2020).

[72] *See* Expert Report of Laura R. Craft, ECF No. 694-2 ¶ 47 & Table 11 (from several hundred to more than a thousand TPPs bought each of Atripla, Evotaz, Truvada, Complera, and Prezcobix); Shadowen Decl. ¶ 19 (Stribild sales volume similar to Complera and Atripla).

2. **Rule 23(a): The case involves questions of law or fact common to the classes.**

To satisfy the commonality requirement, "[e]ven a single [common] question will do."[73] "Antitrust liability alone constitutes a common question that will resolve an issue that is central to the validity of each class member's claim in one stroke."[74] To establish antitrust liability here, Plaintiffs must identify the relevant markets and establish the Defendants' anticompetitive behavior. These are manifestly common questions, as is the question of whether the Settlement Classes have been injured or threatened with injury. The commonality requirement is met.

3. **Rule 23(a): Plaintiffs' claims are typical of the claims of the classes.**

Typicality requires that the Named Plaintiffs' claims be "reasonably coextensive with those of absent class members; they need not be substantially identical."[75] "In antitrust cases, typicality usually will be established by plaintiffs and all class members alleging the same antitrust violations by defendants."[76]

Here, the Settlement Class definitions obviate typicality challenges and provide cohesion to the classes. Named Plaintiffs, like all members of the Settlement Classes, have purchased, paid and/or provided reimbursement for the relevant drugs whose prices were affected by the Defendants' alleged anticompetitive behavior.[77] Named Plaintiffs have an interest in the monetary and/or injunctive relief provided by the Settlement Agreement, as do all End-Payors for these drugs.

---

[73] *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359 (2011).

[74] *In re High-Tech Employee Antitrust Litig.*, 985 F. Supp. 2d 167, 1180 (N.D. Cal. 2013).

[75] *B.K. by Next Friend Tinsley v. Snyder*, 922 F.3d 957, 969-70 (9th Cir. 2019).

[76] *High-Tech*, 985 F. Supp. 2d at 1181; *Pecover v. Elec. Arts, Inc.* 2010 WL 8742757, at *11 (N.D. Cal. 2010).

[77] The named plaintiffs whom Plaintiffs propose for each of the classes are: (a) Atripla Settlement Class – Teamsters, Ivy Kwan Arce, and Troy Vazquez Cain; Evotaz Settlement Class – Teamsters; Truvada Settlement Class – Teamsters, Local 1, Pipe Trades, and FOP; Complera Settlement Class – Teamsters; Stribild Settlement Class – Teamsters and Local 1; Prezcobix Settlement Class – Local 1, FOP, and Brenda Emily Goodrow; and cART Foundation Drug Settlement Class – Teamsters, Local 1, FOP, Ivy Kwan Arce, Gregg Gonsalves, Brenda Emily Goodrow, Joshua McDonald, Andrew Spieldenner, and Troy Vazquez Cain. *See* Declaration of W. Henry Huttinger, ECF No. 694-2, Ex. 61.

Additionally, Named Plaintiffs as well as all End-Payors have an interest in the Settlement Fund's capacity for funding expert witnesses for the litigation. Named Plaintiffs are typical of the Settlement Classes.

### 4. Rule 23(a): Plaintiffs will fairly and adequately represent the interests of the classes.

The adequacy requirement of Rule 23(a) entails two separate inquiries: (a) whether the class representatives have interests that are antagonistic to or in conflict with those of the class and (b) whether the representatives are represented by counsel of sufficient diligence and competence to fully litigate the case.[78] Both requirements are met here.

First, Named Plaintiffs have been actively involved at each step of this litigation. They have no conceivable conflict of interest with the Settlement Classes. Named Plaintiffs have suffered the same alleged injury as all Settlement Class Members. To the extent Named Plaintiffs prevail on their claims, they will establish liability and antitrust injury for the entire Settlement Class.

Second, Class Counsel have extensive experience in pharmaceutical antitrust and complex litigation, including in this Court, and have leveraged that experience to forcefully advance the Settlement Classes' interests. Class Counsel are committed to prosecuting this action to maximize relief for the classes and have proven track records of litigating efficiently and strategically to achieve that outcome. Rule 23(a)(4)'s requirements are met.

### 5. Rule 23(b)(2): Certification is appropriate for the injunction-only classes

Certification under Rule 23(b)(2) is appropriate where the defendant "has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." With respect to Atripla and Evotaz, BMS clearly "acted on ground[s] that apply generally to the class[es]." The same is true with respect

---

[78] *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir.1998); *Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir.1978).

to the other damages classes and the two injunctive-relief classes (for Prezcobix and for cART Foundation drugs). Although the Court dismissed Plaintiffs' claim that BMS was liable together with Gilead regarding these other drugs, the Complaint alleges, and a successful appeal would permit Plaintiffs to prove, that BMS "acted on ground[s] that apply generally to the class[es]." Certification under Rule 23(b)(2), for purposes of settling that claim against BMS, is thus appropriate.[79]

### 6.    Rule 23(b)(3): Common questions of fact or law predominate.

Class certification is appropriate under Rule 23(b)(3) when "questions of law or fact common to class members predominate over any questions affecting only individual members." The predominance requirement "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation."[80] This "is a test readily met in certain cases alleging . . . violations of the antitrust laws."[81]

In most antitrust cases, the fundamental questions to be adjudicated concern the defendant's conduct—its genesis, effects, and rationale. So it is here. Establishing liability in this action will require resolution of a series of issues that are common the Settlement Classes.[82] These include:

- Whether Defendants had market power in the relevant markets;

- Whether Defendants included No-Generics Restraints in the collaboration agreements;

- Whether the No-Generics Restraints had anticompetitive effects;

---

[79] *See Parsons v. Ryan*, 754 F.3d 657, 688 (9th Cir. 2014) (the Rule 23(b)(2) "inquiry does not require an examination of the viability or bases of the class members' claims for relief….") (internal citation omitted).

[80] *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997).

[81] *Id*. at 625.

[82] *See, e.g., In re NCAA Student-Athlete Name & Likeness Licensing Litig.*, No. 09-cv-1967, 2013 WL 5979327, at *4 (N.D. Cal. Nov. 8, 2013); *In re Apple Pod iTunes Antitrust Litig.*, No. 05-cv-00037, 2008 WL 5574487, at *4 (N.D. Cal. Dec. 22, 2008).

- Whether the restraints' alleged procompetitive benefits outweigh the anticompetitive effects;

- Whether Defendants could have achieved any procompetitive benefits through less restrictive means;

- Whether the restraints had an anticompetitive effect on the classes;

- Whether a common methodology can establish the aggregate damages to the classes.

A similar list of common issues applies to the challenged reverse payments and to the other elements of Gilead's overall anticompetitive scheme.

Unlike the damages classes for which Plaintiffs seek certification in the ongoing litigation against Gilead and Janssen, two of the *settlement* damages classes include consumers as well as TPPs. Some courts have concluded (wrongly, in Plaintiffs' view) that including consumers in pharmaceutical antitrust classes such as these—*for purposes of ongoing litigation rather than settlement*—defeats predominance and thus makes a trial unmanageable.[83] Those courts' conclusions do not apply here: while the Court must assess all applicable requirements of Rule 23, "they are applied differently in litigation classes and settlement classes." *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 556 (9th Cir. 2019) (en banc). In the settlement context, the Court need not be concerned with the manageability at trial because "by definition, there will be no trial."[84] This has profound implications for the predominance and superiority inquiries: "A class that is certifiable for settlement may not be certifiable for litigation if the settlement obviates the need to litigate individualized issues that would make a trial unmanageable."[85]

---

[83] *See, e.g.*, *In re Loestrin 24 FE Antitrust Litig.,* 410 F. Supp. 3d 352, 403-04 (D.R.I. 2019) (lamenting that Circuit precedent required that conclusion).

[84] *In re Hyundai & Kia Fuel Econ. Litig.,* 926 F.3d at 557.

[85] *Id.*; *see also* 2 William B. Rubenstein, *Newberg on Class Actions* § 4:63 (5th ed. 2018) ("Courts ... regularly certify settlement classes that might not have been certifiable for trial purposes because of manageability concerns.").

1

The predominance requirement is met.

2

3      **7.      Rule 23(b)(3): Class-action treatment is superior to individual cases.**

4      The superiority inquiry requires assessment of whether a "class action is superior to other

5      available methods for fairly and efficiently adjudicating the controversy."[86] This requires assessment

6      of whether the settlement will "achieve economies of time, effort, and expense, and promote . . .

7      uniformity of decision as to persons similarly situated without sacrificing procedural fairness or

8      bringing about other undesirable results."[87]

9      Here, it would be inefficient to litigate the predominating common issues in countless

10     individual proceedings, rather than on a class basis.[88] Moreover, for the two Settlement Classes that

11     include individual consumers, and even for many of the TPPs, damages are too small to justify

12     litigation. Class treatment is superior so that these Settlement Class members have "the opportunity

13     of meaningful redress."[89]

14     **D.     The Proposed Form and Manner of Notice Will Fairly and Efficiently Inform Class
       Members of the Terms of the Settlement and Their Options.**

15     Federal Rule of Civil Procedure 23(e)(1) requires the Court to "direct notice in a reasonable

16     manner to all class members who would be bound by the proposal." The notice of settlement must

17     fairly inform class members of the settlement and their options,[90] and notice is satisfactory "if it

18     generally describes the terms of the settlement in sufficient detail to alert those with adverse

19

20     _____

21     [86] Fed. R. Civ. P. 23(b)(3).

22     [87] *Amchem*, 521 U.S. at 615.

       [88] *See In re High-Tech Employee Antitrust Litig.,* 985 F. Supp. 2d 167, 1228-29 (N.D. Cal. 2013)

23     ("[T]he nature of Defendants' alleged overarching conspiracy and the desirability of concentrating
       the litigation in one proceeding weigh heavily in favor of finding that class treatment is superior...").

24     [89] *In re Static Random Access (SRAM) Antitrust Litig.*, 2008 WL 4447592, at *7 (N. D. Cal. Sept.

25     29, 2008); *In re Aftermarket Auto. Lighting Prods. Antitrust Litig.*, 276 F.R.D. 364, 375 (C.D. Cal.
       2011).

26     [90] *See* Manual § 21.312 (the notice must "describe clearly the options open to the class members

27     and the deadlines for taking action").

28

viewpoints to investigate and to come forward and be heard."[91] The proposed notice program here meets this standard.

        **1.**        **The form of the settlement notice clearly and concisely describes all information required by Rule 23(c)(2)(b).**

While notice must "adequately apprise[] class members of all material elements of the settlement agreement," it complies with Rule 23(e) without containing a "detailed analysis of the statutes or causes of action forming the basis for the plaintiff's claims" or "an estimate of the potential value of [the] claims."[92]

Plaintiffs' proposed form of settlement notice contains all elements enumerated in Rule 23(c)(2)(b). Plaintiffs propose to mail a short-form settlement notice to each TPP Class Member and to provide the same information via publication to the Consumer Members.[93] The long-form notice[94] provides, clearly and concisely in plain, easily understood language, a description of the Class, the claims contained in the lawsuit and the procedural status of the litigation, the significant terms of the proposed settlement and the total amount of money that BMS has agreed to pay to settle the Classes' claims, the proposed allocation plan, the releases, the rights of Class Members under Rule 23, including the right to object and be heard as to the reasonableness and fairness of the proposed settlement, and the contact information of Class Counsel and the website for obtaining a full copy of the Settlement Agreement and key pleadings.

The Settlement Notice fairly describes the proposed settlement and its legal significance, satisfying the notice requirements of Rule 23.

---

[91] *Uschold*, 333 F.R.D. at 172 (quoting *Churchill Vill., LLC v. Gen. Elec.,* 361 F.3d 566, 575 (9th Cir. 2004)).

[92] *Lane v. Facebook*, 696 F.3d 811, 826 (9th Cir. 2012) (quoting *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 962 (9th Cir. 2009)).

[93] *See* Shadowen Decl. Ex. 2, Proposed Short-Form Notice.

[94] Shadowen Decl. Ex. 3, Proposed Long-Form Notice.

2. **The proposed manner of disseminating the settlement notice will ensure that Class Members receive timely notice.**

For purposes of notifying a certified class of a proposed settlement, the Court "must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."[95] Sending settlement notice by First-Class mail to the TPP class members constitutes "the best notice practicable under the circumstances."[96]

Plaintiffs also provide for notice via electronic media and earned media directed to reaching the Consumer Members of the classes.[97] This includes banner ads on targeted websites; ads placed in premium positioning on websites and social media sites; and newsfeed ads purchased on Facebook and Instagram.[98] This aspect of the notice plan is consistent with those that courts have approved and implemented for similar pharmaceutical cases.[99] The 30-day campaign is designed to deliver at least 300 million targeted impressions to the consumer members of the classes.[100] This is the best practicable notice for those members.[101]

---

[95] Fed. R. Civ. P. 23(c)(2)(B).

[96] *See Hunt v. Check Recovery Sys., Inc.*, No. C05-04993, 2007 WL 2220972, at *3 (N.D. Cal. Aug. 1, 2007) ("Delivery by first-class mail can satisfy the best notice practicable when there is no indication that any of the class members cannot be identified through reasonable efforts." (citing *Bourlas v. Davis Law Assocs.*, 237 F.R.D. 345, 356 (E.D.N.Y. 2006))); *see also* Manual § 21.311 ("Rule 23(c)(2)(B) requires that individual notice in 23(b)(3) actions be given to class members who can be identified through reasonable effort. . . . When the names and addresses of most class members are known, notice by mail is usually preferred.").

[97] Shadowen Decl. Ex. 7, Declaration of Linda V. Young ¶¶ 8-10, 13.

[98] *Id* ¶¶ 8-10.

[99] *Id*. ¶ 20.

[100] *Id*. ¶ 12.

[101] *See, e.g., Gallucci v. Gonzales*, 603 F. App'x 533, 535–36 (9th Cir. 2015) ("[N]otice was conveyed through nationwide online and print media that, according to reliable expert testimony, were specifically tailored to reach Boiron's customer base. Thus, the notice provided was reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action." (internal citation omitted)); *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1080 (N.D. Cal. 2007) ("[T]he court agrees with plaintiffs that notice by publication is the only reasonable method of informing class members of the pending class action and the Lenox settlement.").

1

2    **E.      The Court Should Appoint A.B. Data Ltd., an Experienced, Nationally Recognized
             Settlement Administration Company, as Settlement Administrator.**
3
4             Plaintiffs have retained A.B. Data Ltd. to serve as administrator for the classes to oversee the

5    settlement notice. In 2021, "[f]or the third year in a row, A.B. Data ranks among the top antitrust

6    claims administrators in the United States, according to The University of San Francisco Law

7    research paper, *2020 Antitrust Annual Report: Class Action Filings in Federal Court*."[102]

8             Class Counsel sent a Request for Proposal to seven notice-administration firms, all of which

9    submitted proposals.[103] Class Counsel chose A.B. Data because its proposal was price-competitive

10   and it has substantial experience administering complex settlements in federal pharmaceutical

11   antitrust class actions.[104] None of Class Counsel have any financial or other ties with A.B. Data,

12   which has provided claims-administration services in nine cases for the three co-lead counsel firms

13   in the last two years.[105]

14   **F.      The Court Should Appoint Huntington National Bank, a Top-25 U.S. Bank Holding
             Company that Has Handled Thousands of Settlements, as Escrow Agent.**
15
16            Plaintiffs, with BMS's assent, request that the Court appoint Huntington National Bank

17   ("Huntington"), as escrow agent. Huntington is a top 25 U.S. bank holding company with $175

18   billion in assets. Founded in 1866, the bank employs more than 21,000 colleagues and maintains

19   more than 1,100 branches in 12 states. Huntington's National Settlement Team has handled more

20   than 2,800 settlements with over $60 billion and 150 million checks for law firms, claims

21   administrators, and regulatory agencies. Counsel for the End-Payor Classes Plaintiffs have securely

22   and successfully used Huntington's services as escrow agent in multiple prior class action

23   _____

24        [102] *See* https://abdataclassaction.com/2021/09/a-b-data-remains-a-top-claims-administrator-for-2020/

25        [103] Shadowen Decl. ¶ 16.

26        [104] *Id.*

27        [105] *Id.*

28                                        -23-

settlements. A copy of the Escrow Agreement between and among Co-Lead Counsel, BMS, and Huntington is attached as Exhibit 5 to the Shadowen Declaration.

**G.      The Court Should Appoint Interim Co-Lead Counsel as Settlement Class Counsel.**

Rule 23(c)(1)(B) provides that "[a]n order that certifies a class action . . . must appoint class counsel under Rule 23(g)." When appointing Interim Co-Lead Counsel for the Class,[106] the Court considered the factors set forth in Fed. R. Civ. P. 23(g)(1)(A)(i)-(iv). Those Counsel have aggressively prosecuted this case, using knowledge gained through years of experience successfully pursuing similar claims and expending the necessary, significant resources. Accordingly, the Court should appoint those same counsel as Settlement Class Counsel to represent the Settlement Classes.

**H.      The Proposed Final Settlement Schedule Is Appropriate, Comports with Due Process, and Satisfies the Requirements of the Class Action Fairness Act.**

As set forth in the Proposed Order, Plaintiffs propose the schedule below for completion of the final settlement approval process. Under this schedule, Class Members will have up to 75 days to object to any or all of the proposed settlement.

a.      Within 10 days from the date of filing for preliminary approval, Defendants shall serve any notices required pursuant to the Class Action Fairness Act of 2005;

b.      Within 15 days from the date that the Court grants preliminary approval to the proposed Settlement, notice will be disseminated to the TPP Class Members via First-Class mail, and the notice administrator will begin placing the internet and publication plan for notice to the Consumer Class Members;

c.      Within 90 days from the date that the Court grants preliminary approval to the proposed Settlement (and within 75 days from the date that notice is begun), Class Members may object to any or all of the proposed settlement;

d.      Within 111 days from the date that the Court grants preliminary approval to the proposed Settlement (and within 21 days after the expiration of the deadline for Class Members to object to any or all of the proposed settlement, Class Counsel will file a motion for final approval of the settlement; and

e.      On a date to be set by the Court no less than 120 days following the issuance of its preliminary approval order, the Court will hold a Final Approval Hearing.

---

[106] Daralyn Durie of Durie Tangri LLP; Steve Shadowen of Hilliard & Shadowen LLP; and Steve Berman of Hagens Berman Sobol Shapiro LLP.

1

2

The proposed schedule comports with due process and complies with the time periods set forth by the Class Action Fairness Act.[107]

3

### III.    CONCLUSION

4

5

6

7

8

For the foregoing reasons, the Court should preliminarily approve the proposed settlement, approve the proposed manner and form of notice, appoint A.B. Data Ltd. as administrator and Huntington National Bank as escrow agent, appoint Interim Co-Lead Counsel as Settlement Class Counsel, and approve the proposed final schedule (or any other schedule satisfactory to the Court), and set a date for a Final Approval Hearing. A proposed order is submitted herewith.

9

10

Dated: November 4, 2021                                      Respectfully submitted,

11

**For the End-Payor Classes:**

12

13

14

*/s/ Steve D. Shadowen*

HILLIARD & SHADOWEN LLP
Steve D. Shadowen (*pro hac vice*)
steve@hilliardshadowenlaw.com
1135 W. 6th Street, Suite 125
Austin, TX 78703
Telephone: (855) 344-3298
Facsimile: (361) 882-3015

DURIE TANGRI LLP
Daralyn J. Durie (SBN 169825)
ddurie@durietangri.com
217 Leidesdorff Street
San Francisco, CA 94111
Telephone: (415) 362-6666
Facsimile: (415) 236-6300

HAGENS BERMAN SOBOL SHAPIRO LLP
Steve W. Berman (p*ro hac vice*)
steve@hbsslaw.com
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594

15

16

17

18

19

20

21

22

23

24

25

26

27

[107] 28 U.S.C. § 1715 (d).

28

-25-

MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT
BETWEEN END-PAYOR CLASSES AND BMS
No. 3:19-cv-2573-EMC

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1

## <u>CERTIFICATE OF SERVICE</u>

2

I hereby certify that on November 4, 2021 the within document was filed with the Clerk of

3

the Court using CM/ECF which will send notification of such filing to the attorneys of record in this

4

case.

5

Dated: November 4, 2021        /s/ Steve D. Shadowen

6

Steve D. Shadowen

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT
BETWEEN END-PAYOR CLASSES AND BMS
No. 3:19-cv-2573-EMC