1

Heather M. Burke (SBN 284100)
Jeremy K. Ostrander (SBN 233489)
**WHITE & CASE**LLP
3000 El Camino Real
2 Palo Alto Square, Suite 900
Palo Alto, CA 94306-2109
Telephone: (650) 213-0300
Facsimile: (650) 213-8158
hburke@whitecase.com
jostrander@whitecase.com

Paul J. Riehle (SBN 115199)
FAEGRE DRINKER BIDDLE & REATH LLP
paul.riehle@faegredrinker.com
Four Embarcadero Center, 27th Floor
San Francisco, CA 94111
Telephone: (415) 591-7521

Attorney for Defendants Janssen R&D Ireland,
Janssen Products, LP and Johnson & Johnson

Attorneys for Defendants Gilead Sciences, Inc.,
Gilead Holdings, LLC, Gilead Sciences, LLC,
and Gilead Sciences Ireland UC

(Additional Counsel for Defendants Listed on
Signature Page)

2

3

4

5

6

7

8

9

10

IN THE UNITED STATES DISTRICT COURT

11

FOR THE NORTHERN DISTRICT OF CALIFORNIA

12

SAN FRANCISCO DIVISION

13

STALEY, *et al.*,

14

Plaintiffs,

15

v.

16

GILEAD SCIENCES, INC., *et al.*,

17

Defendants.

Case No. 3:19-cv-02573-EMC

**DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS PETER STALEY AND MICHAEL SNIPE PURSUANT TO RULE 12(b)(1) OF THE FEDERAL RULES OF CIVIL PROCEDURE**

Hrg:      March 24, 2022
Time:     1:30 p.m.
Ctrm:     5-17th Floor
Judge:    Honorable Edward M. Chen

18

19

20

THIS DOCUMENT RELATES TO :

21

*Staley, et al., v. Gilead Sciences, Inc., et al.*,
No. 3:19-cv-02573-EMC

22

**REDACTED VERSION
SOUGHT TO BE SEALED**

23

24

25

26

27

28

1

## **NOTICE OF MOTION AND MOTION TO DISMISS**

2

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD: PLEASE TAKE NOTICE that

3 on March 24, 2022, or as soon thereafter as this matter may be heard, in the United States District Court

4 for the Northern District of California, located at 450 Golden Gate Avenue, San Francisco, CA 94102-

5 3489, in Courtroom 5 on the 17th Floor, before the Honorable Edward M. Chen, Defendants Gilead

6 Sciences, Inc., Gilead Holdings, LLC, Gilead Sciences, LLC, and Gilead Sciences Ireland UC

7 (collectively, "Gilead"), and Janssen R&D Ireland, Janssen Products, LP, and Johnson & Johnson

8 (collectively, "Janssen") (together, "Defendants") will move the Court for an order dismissing, with

9 prejudice, all claims by Plaintiffs Peter Staley and Michael Snipe under Rule 12(b)(1) of the Federal

10 Rules of Civil Procedure.  The Motion is based on this Notice of Motion and Motion to Dismiss, the

11 contemporaneously filed Declaration of Heather M. Burke ("Burke Decl.") and its exhibits, all other

12 pleadings and papers on file in this action, any matters upon which the Court may take judicial notice,

13 the arguments of counsel, and any other matter the Court may properly consider.

14

## **RELIEF SOUGHT**

15

Defendants seek dismissal, with prejudice, of all claims against them by Plaintiffs Peter Staley

16 and Michael Snipe under Rule 12(b)(1) for lack of subject-matter jurisdiction.

17

18

19

20

21

22

23

24

25

26

27

28

# **TABLE OF CONTENTS**

**Page(s)**

TABLE OF AUTHORITIES ..................................................................................................iii

INTRODUCTION ............................................................................................................1

STATEMENT OF FACTS ................................................................................................1

      A.    Mr. Staley and Mr. Snipe Repeatedly and Falsely Alleged that They ████████████████████████████ ...............................2

      B.    Given Mr. Staley's and Mr. Snipe's Discovery Deficiencies, Defendants First Suspected the Allegations about Mr. Staley's and Mr. Snipe's ████████████████ Two Years into Fact Discovery ...................4

      C.    Mr. Staley's and Mr. Snipe's Deposition Testimony ██████████ ████████ ...................................................................................5

LEGAL STANDARD ...................................................................................................10

ARGUMENT ...............................................................................................................11

      I.    Mr. Staley and Mr. Snipe Have Not Suffered Any Economic Harm Because ███████████████████ .................12

      II.    Mr. Staley and Mr. Snipe Have Not Articulated Any "Imminent" Harm That Warrants Injunctive Relief Because ████████████████ ...................14

CONCLUSION...........................................................................................................16

# TABLE OF AUTHORITIES

**Page(s)**

## FEDERAL CASES

*Associated Gen. Contractors, Inc. v. Cal. State Council of Carpenters,*
459 U.S. 519 (1983)...................................................................................................13

*Augustine v. United States,*
704 F.2d 1074 (9th Cir. 1983) .................................................................................10

*Cetacean Cmty. v. Bush,*
386 F.3d 1169 (9th Cir. 2004) .................................................................................10

*Chapman v. Pier 1 Imps. (U.S.), Inc.,*
631 F.3d 939 (9th Cir. 2011) ...................................................................................14

*In re Citric Acid Antitrust Litig.,*
145 F. Supp. 2d 1152 (N.D. Cal. 2001) ...................................................................12

*Clapper v. Amnesty Int'l USA,*
568 U.S. 398 (2013)..................................................................................................14

*In re Coordinated Pretrial Proceedings in Petroleum Prods. Antitrust Litig.,*
691 F.2d 1335 (9th Cir. 1982), *cert. denied,* 464 U.S. 1068 (1984)...................12, 13

*In re Flash Memory Antitrust Litig.,*
No. 07-cv-0086, 2010 U.S. Dist. LEXIS 59491 (N.D. Cal. June 9, 2010)...............12

*Garabet v. Autonomous Techs. Corp.,*
116 F. Supp. 2d 1159 (C.D. Cal. 2000) ...................................................................13

*Lujan v. Defenders of Wildlife,*
504 U.S. 555 (1992)............................................................................................10, 11

*Maya v. Centex Corp.,*
658 F.3d 1060 (9th Cir. 2011) .................................................................................13

*Oliver v. SD-3C LLC,*
No. 11-cv-1260, 2016 U.S. Dist. LEXIS 146427 (N.D. Cal. Sept. 30, 2016)...........13

*Rattlesnake Coal. v. EPA,*
509 F.3d 1095 (9th Cir. 2007) .................................................................................10

*Robinson v. United States,*
586 F.3d 683 (9th Cir. 2009) ...................................................................................10

*Safe Air for Everyone v. Meyer,*
373 F.3d 1035 (9th Cir. 2004) .................................................................................10

*In re Skelaxin (Metaxalone) Antitrust Litig.*,
No. 12-md-2343, 2014 U.S. Dist. LEXIS 66707 (E.D. Tenn. May 15, 2014) .......................... 13

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016) ................................................................................................................ 14

*Summers v. Earth Island Inst.*,
555 U.S. 488 (2009) ................................................................................................................ 14

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
MDL No. 1827, 2012 U.S. Dist. LEXIS 182374 (N.D. Cal. Dec. 26, 2012) .......................... 12

*United States v. Students Challenging Regulatory Agency Procedures*,
412 U.S. 669 (1973) ................................................................................................................ 13

*In re Vitamins Antitrust Litig.*,
MDL No. 1285, 2001 U.S. Dist. LEXIS 12114 (D.D.C. July 2, 2001) .................................... 13

*Wolfe v. Strankman*,
392 F.3d 358 (9th Cir. 2004) .................................................................................................. 10

## FEDERAL RULES

Fed. R. Civ. P. 12(b)(1) .......................................................................................................... 10

# **INTRODUCTION**

Discovery has revealed that Plaintiffs Peter Staley and Michael Snipe ███████

███████████████████████████████████████████████

███████ Mr. Staley testified that ████████████████

████████████████████. Mr. Snipe testified that ████████

████████████████████████████████. Both

Plaintiffs testified that ████████████████████████████

████████████████. Mr. Staley, Mr. Snipe, and their counsel (interim counsel for the

end-payor plaintiffs) must have known these facts since before the litigation began, and certainly they

knew these facts months ago when they conceded that neither Mr. Staley nor Mr. Snipe was a member

of any of the proposed end-payor-plaintiff classes.  Nevertheless, all six versions of their complaints

alleged that Mr. Staley and Mr. Snipe had purchased Defendants' products or generic versions thereof

since May 14, 2015 (the start of the relevant time period in the complaints), and intended to do so in

the future.  The currently operative complaint includes these allegations as well, despite these Plaintiffs'

counsel filing it *after* Mr. Staley and Mr. Snipe testified that ████████████████.  Mr. Staley

and Mr. Snipe lack standing to pursue the claims that remain against Defendants in this case.  Therefore,

all claims brought by each of Mr. Staley and Mr. Snipe must be dismissed with prejudice.

# **STATEMENT OF FACTS**

For over two years, Mr. Staley has been named the "lead plaintiff" of the putative class in this

consolidated class action, and Mr. Snipe has been identified as a named plaintiff and putative class

representative.  *See* Compl., ECF No. 1, at 1; Compl., ECF No. 96, at 1; Compl., ECF No. 118, at 1;

Compl., ECF No. 304, at 1; Compl. ECF No. 347, at 1; Am. FAC, ECF No. 788, at 1.  On October 20,

2021, however, when putative class counsel moved for certification of several damages and injunctive

relief classes, counsel disclosed—███████████████████████████

███████████████████████████. *See* ECF No. 694-1, at 10 n.34.

Further, class counsel confirmed that the end-payor-plaintiff action no longer seeks damages for any

consumers.  ECF No. 694, at 1-2.  Instead, only third-party payors that purchased Defendants'

Atripla®, Complera®, or Truvada® products on or after February 1, 2018 are included in the proposed

damages classes, while only consumers and payors that purchased one of the following subset of Defendants' products as of May 14, 2015, are in the proposed injunctive relief classes: Atripla, Biktarvy®, Complera, Descovy®, Evotaz®, Genvoya®, Odefsey®, Prezcobix®, Stribild®, Symtuza®, Truvada, and Viread®.  *Id.* at 1-2 & n.2.  Thus, the only relevant purchases in this litigation, under both the class certification motion and the operative complaint, are purchases of a subset of Defendants' products (or their generic equivalents) on or after May 14, 2015.  Am. FAC, ECF No. 788, at ¶ 456.  Although Mr. Staley and Mr. Snipe are not members of any proposed class, their counsel asserted that Mr. Staley and Mr. Snipe ███████████████████████████████████ ████████████████████████ either Plaintiff could possibly have.  ECF No. 694-1, at 10 n.34.

Below, Defendants describe the assertions regarding Mr. Staley's and Mr. Snipe's supposed past purchases, their alleged intent to purchase Defendants' products (or generic versions of those products) in the future, and the evidence that ████████████████████.

**A.    Mr. Staley and Mr. Snipe Repeatedly and Falsely Alleged that They ██████ ███████████████████████.**

In May 2019, Mr. Staley and Mr. Snipe each filed a class-action complaint, in which each alleged that he "purchased and/or paid for some or all of the purchase price for one or more of brand Viread, Emtriva[®], Truvada, Atripla, Complera, Stribild, Odefsey, Genvoya, Descovy, Vemlidy[®], Reyataz[®], Evotaz, Prezista[®], Prezcobix, Edurant[®], Symtuza, Tybost[®], or other cART drugs other than for re-sale, . . . at supracompetitive prices during the Class Period and has thereby been injured."  *Staley v. Gilead Scis., Inc.*, No. 19-cv-2573, ECF No. 1, Class Action Compl. ¶ 18 (May 14, 2019); *Snipe v. Gilead Scis., Inc.*, No. 19-cv-2734, ECF No. 1, Class Action Compl. ¶ 18 (May 20, 2019).  Mr. Staley and Mr. Snipe each also expressly alleged that "there is a substantial probability that [he] will in the future purchase one or more of these products manufactured by the Defendants, and he has purchased and/or intends to purchase generic versions of those drugs, other than for re-sale, once they become available."  *Id.*

Since those initial complaints, putative class counsel subsequently filed five consolidated, corrected, or revised complaints in which Mr. Staley and Mr. Snipe are named Plaintiffs, most recently

- 2 -

on December 15, 2021:

- July 1, 2019 Consolidated Class Action Complaint (ECF No. 96, ¶¶ 18, 27);

- August 22, 2019 Corrected Consolidated Class Action Complaint (ECF. 118, ¶¶ 18, 27);

- April 21, 2020 First Amended Consolidated Class Action Complaint (ECF No. 304, ¶¶ 19, 29);

- May 28, 2020 First Amended Consolidated Class Action Complaint (ECF No. 347, ¶¶ 19, 29); and

- December 15, 2021 First Amended Consolidated Class Action Complaint (ECF No. 788, ¶¶ 19, 29) ("Am. FAC").

Each new complaint contains the same misleading allegations relating to Mr. Staley and Mr. Snipe as in the preceding complaints: (1) allegations that each of them had ███████████████████████ ████████████████████████████████████████████████████████ and (2) allegations that each of them ██████████████████████████████████████████████████████. *Id.* The operative complaint repeats these same allegations, even though it was filed on December 15, 2021, *after* Mr. Staley and Mr. Snipe testified ████████████████████████████ ████████████████████████████████████ *See infra* at 5-8.

Because of these allegations, Defendants expended significant resources pursuing discovery regarding Mr. Staley's and Mr. Snipe's alleged purchases, in order to determine whether they could be adequate class representatives and may have suffered any cognizable injury. For instance, Defendants repeatedly requested that Mr. Staley and Mr. Snipe produce years of missing information about their prescription history (*i.e.*, Mr. Staley's missing data █████████████ and Mr. Snipe's missing data ████████████). *See, e.g.*, Burke Decl. Ex. A (Ostrander Dec. 18, 2020 Ltr.), at 2; Burke Decl. Ex. B (Ostrander Aug. 27, 2021 Ltr.), at 6-7. These efforts included motion practice over discovery disputes and the exchange of nearly 50 letters concerning discovery deficiencies relating to Mr. Staley and/or Mr. Snipe. *See, e.g.*, ECF No. 621-1; ECF No. 717.

It was only after nearly two years of diligent inquiry by Defendants that Defendants confirmed their growing suspicion that neither Mr. Staley nor Mr. Snipe ████████████████████████

1   █████████████████████████████ since the originally proposed class period started on May 14,

2   2015, let alone the later start dates proposed in the class-certification motion.  As shown below, Mr.

3   Staley ████████████████████████████████████████████████████████████████████████████

4   ████████████████████.  *See* Burke Decl. Ex. C (Staley Dec. 3, 2021 Dep. Tr.), at 27:15-28:2, 28:19-

5   29:12.  Instead, Mr. Staley has purchased ████████████████████████████████████████

6   ████████████████████████████████████████████████████████████████████████████████████

7   ████████████████████████████████████████ *Id.*  Rather than admitting that Mr. Staley ████

8   ████████████████████████████████████████████████████████████, Mr. Staley and his

9   counsel misleadingly alleged that he purchased "one or more of" a list of 17 of Defendants' products,

10  tacking on "or other cART drugs" at the end of that list.  *See* ECF No. 1, ¶ 18; ECF No. 96, ¶ 18; ECF

11  No. 118, ¶ 18; ECF No. 304, ¶ 19; ECF No. 347, ¶ 19; Am. FAC, ¶ 19.

12      Mr. Snipe has ████████████████████████████████████████████████████████████████

13  ████████████████████ Burke Decl. Ex. D (Snipe Oct. 11, 2021 Dep. Tr.), at 63:2-18, 148:14-150:11.

14  Moreover, he has ████████████████████████████████████████████████████████████████████

15  ████████████████████████████████████ *Id.*  Instead, ████████████████████████████████

16  ████████████████████████████████ *Id.*  Rather than admitting that Mr. Snipe █████████████

17  ██████████████████████████ Mr. Snipe and his counsel falsely alleged that he purchased "one or more

18  of" a list of 17 of Defendants' products, "or other cART drugs."  *See* No. 19-cv-2734, ECF No. 1, ¶ 18;

19  ECF No. 96, ¶ 27; ECF No. 118, ¶ 27; ECF No. 304, ¶ 29; ECF No. 347, ¶ 29; Am. FAC, ¶ 29.

20      **B.    Given Mr. Staley's and Mr. Snipe's Discovery Deficiencies, Defendants First
        Suspected the Allegations about Mr. Staley's and Mr. Snipe's ██████████**

21      **███████████████████ Two Years into Fact Discovery**

22      After two years of fact discovery, Mr. Staley and Mr. Snipe continued to have significant gaps

23  in their prescription data.  *See* Ex. B.  In mid-2021, however, Mr. Staley's and Mr. Snipe's written

24  discovery responses first alerted Defendants ████████████████████████████████████████

25  █████████████████████████████████████████.  *See* Burke Decl. Ex. E (June 3,

26  2021 Responses to Requests for Admission), Nos. 27, 31 (admitting that ██████████████████

27  ████████████████████████████████████████████████████████████████████████████████████

28  ██████████████████████████████████████, Nos. 34, 37 (admitting that ████████████████

- 4 -

1  ██████████████████████████████████████████████████████████

2  ████████████████████████████████████████ Burke Decl. Ex. F (Aug. 18, 2021

3  Responses to Interrogatories), at 11:22-23 ████████████████████████████████

4  ████████████████████ ; *id.* at 12:10-11 ████████████████████████████████

5  ████████████████████████████████████ *see also* Burke Decl. Ex.

6  G (Dec. 17, 2021 Supplemental Responses to Interrogatories), at 11:3-4, 11:20-21.   The limited

7  prescription records that Mr. Staley and Mr. Snipe did produce ███████████████████████

8  ██████████████████████████████████████████████████████████

9  *See* Burke Decl. Exs. H, I.

10       However, other statements in the interrogatory responses, which Defendants later confirmed

11  ██████████████████████████       For example, Mr. Staley's Responses to

12  Defendants' Requests for Admission admitted that ████████████████████████████

13  ██████████████████████ Ex. E, No. 37.   Yet, he also represented multiple times in his

14  August 18, 2021 interrogatory responses that ██████████████████████████████

15  ████████ Ex. F, at 12:14-15, 22:14-15.   Both assertions cannot be true.   Similarly, in conflict with his

16  response to Defendants' Requests for Admission, Mr. Snipe stated in his interrogatory responses that

17  ████████████████████████████████ *Id.* at 25:10-12.   Given the

18  conflicting statements in Mr. Staley's and Mr. Snipe's interrogatory responses, the false allegations in

19  the complaints, and the large gaps in their prescription records, Defendants needed to depose both

20  Plaintiffs to confirm ████████████████████████████████ .

21       **C.      Mr. Staley's and Mr. Snipe's Deposition Testimony Confirms that** ████

22  ██████████████████████

23       Defendants finally learned the truth at Mr. Staley's and Mr. Snipe's depositions: Mr. Staley and

24  Mr. Snipe made ████████████████████████████████████████████

25  ██████████████████████ (1) Mr. Staley and Mr. Snipe ████████████████

26  ██████████████████████████ and (2) Mr. Staley and Mr. Snipe

27  ██████████████████████████████████

28



1    **Mr. Staley**—The false statements by and regarding Mr. Staley are set forth below, together

2    with his related deposition testimony:

| Mr. Staley's Complaint Allegations and Interrogatory Responses | Mr. Staley's Deposition Testimony (Dec. 3, 2021) |
|---|---|
| Mr. Staley alleged he purchased or paid for "Viread, Emtriva, Truvada, Atripla, Complera, Stribild, Odefsey, Genvoya, Descovy, Vemlidy, Reyataz, Evotaz, Prezista, Prezcobix, Edurant, Symtuza, Tybost, or other cART drugs" or "generic versions of those drugs." Am. FAC, ¶ 19.<br><br>Mr. Staley stated in his interrogatory responses that he ███████████ ███████████████████████████ ███████████████████████████ ███████████████████████████ Ex. F, at 12:15, 22:16-17. | Mr. Staley testified ███████ ████████████████████████████ █████ ██  ██    ██  ██ ████████████████████████████ ████████████████ Ex. C, at 49:5-22, 52:1-53:9, 54:22-55:9. |
| Mr. Staley alleged he "will in the future purchase one or more of these products manufactured by the Defendants" or "generic versions of those drugs." Am. FAC, ¶ 19. | Mr. Staley testified at his deposition that he ████████████████████████████ ████████████████ Ex. C, at 36:3-19 |

17    Mr. Staley admitted that ████████████████████████████████████████████

18    ████████████████████████████████████████████████████████████████████████

19    Ex. C, at 52:25-53:2 █████████████████████████████████████████████████████

20    ███████ *id.* at 53:6-9 █████████████████████████████████████████████████

21    █████████████████████████████████████████████████████████████████████████

22    *compare* Ex. F, at 18:21-22 *with* Ex. C, at 52:1-53:20 (testimony confirming that ████████

23    ████████████████████████████████████████████████████.

24    In fact, Mr. Staley testified that ██████████████████████████████████ (Ex.

25    C, at 207:23-208:7), ████████████████████████████████████████████████████

26    █████████████████████████████████████████████████████████████████████████

27    ████████████████ *See* Burke Decl. Ex. J (2022 DHHS Guidelines), at I-9.  Mr. Staley went on to

28    testify that ████████████████████████████████████████████████████████████

1   ██████—a profile that none of Defendants' challenged products fits, as they are only FDA-

2   approved for daily use.  Ex. C, at 207:23-208:7 ████████████████████████

3   ████████████████████████████████████████████████████████████████

4   ████████████████████████████████   For over a year, Defendants

5   repeatedly requested that counsel produce this exact type of information; *i.e.*, ████████████

6   ████████████████████████████████████████████████████████████████

7   ████████   Counsel refused to produce this information—████████████████████

8   ████████████████████████████████████████████████—until

9   the Court compelled production.  *See* Ex. K (Miranda June 8, 2021 Ltr.); Order, ECF No. 646 (July 19,

10  2021).

11      **Mr. Snipe**—The false statements by and regarding Mr. Snipe are set forth below, together with

12  his related deposition testimony:

| Mr. Snipe's Complaint Allegations and Interrogatory Responses | Mr. Snipe's Deposition Testimony (Oct. 11, 2021) |
|---|---|
| Mr. Snipe alleged he purchased or paid for "Viread, Emtriva, Truvada, Atripla, Complera, Stribild, Odefsey, Genvoya, Descovy, Vemlidy, Reyataz, Evotaz, Prezista, Prezcobix, Edurant, Symtuza, Tybost, or other cART drugs" or "generic versions of those drugs." Am. FAC, ¶ 29.<br><br>Mr. Snipe stated in his interrogatory responses that ████████████ ████████████████ Ex. F, at 25:10-12. | Mr. Snipe testified at his deposition that he ████████████████████████ ████████████████ (Ex. D, at 88:14-19), and   that ████████████ ████████████████████████ ████████ (*id.* at 148:9-150:11). |
| Mr. Snipe alleged he "will in the future purchase one or more of these products manufactured by the Defendants" or "generic versions of those drugs." Am. FAC, ¶ 29. | Mr. Snipe testified at his deposition that he ████████████████████ Ex. D, at 64:24-65:2 ████████████████████ ████████████████████████ |

1    In fact, Mr. Snipe testified that ███████████████████████████████████

2  ████████████████████████████████████████████████████████████████████████

3  ████████████████

| Mr. Snipe's Complaint Allegations | Mr. Snipe's Deposition Testimony (Oct. 11, 2021) |
|---|---|
| "Mr. Snipe purchased and/or paid for some or all of the purchase price for one or more of brand Viread, Emtriva, Truvada, Atripla, Complera, Stribild, Odefsey, Genvoidy, Descovy, Vemlidy, Reyataz, Evotaz, Prezista, Prezcobix, Edurant, Symtuza, Tybost, or other cART drugs . . . ."<br><br>Compl., No. 19-cv-2734, ECF No. 1 (May 20, 2019), ¶ 18. | ████████████████████████<br>██████████<br>A: Correct.<br>Ex. D, at 110:16-20. |
| "Mr. Snipe purchased and/or paid for some or all of the purchase price for one or more of Viread, Emtriva, Truvada, Atripla, Complera, Stribild, Odefsey, Genvoidy, Descovy, Vemlidy, Reyataz, Evotaz, Prezista, Prezcobix, Edurant, Symtuza, Tybost, or other cART drugs . . . ."<br><br>Compl., No. 19-cv-2573, ECF No. 96 (July 1, 2019), ¶ 27. | █████████████████████████<br>███████████████████<br>████<br>█████████████████████████<br>███████████████████<br>████<br>Ex. D, at 128:3-14.<br><br>█████████████████████████<br>████████████████████<br>█████████████<br>*Id.* at 129:21-130:5 (attorney objections omitted). |

- 8 -



| Mr. Snipe's Complaint Allegations | Mr. Snipe's Deposition Testimony (Oct. 11, 2021) |
|---|---|
| "Mr. Snipe purchased and/or paid for some or all of the purchase price for one or more of Viread, Emtriva, Truvada, Atripla, Complera, Stribild, Odefsey, Genvoya, Descovy, Vemlidy, Reyataz, Evotaz, Prezista, Prezcobix, Edurant, Symtuza, Tybost, or other cART drugs . . . ."<br><br>Compl., ECF No. 118 (Aug. 22, 2019), ¶ 27. | ████████████████████<br>████████████████████<br>████████████████████<br>████<br>████████████████████<br>████<br>████<br>████████████████████<br>████<br>Ex. D, at 132:2-133:4 (attorney objections omitted). |
| "Mr. Snipe purchased and/or paid for some or all of the purchase price for one or more of Viread, Emtriva, Truvada, Atripla, Complera, Stribild, Odefsey, Genvoya, Descovy, Vemlidy, Reyataz, Evotaz, Prezista, Prezcobix, Edurant, Symtuza, Tybost, or other cART drugs . . . ."<br><br>Compl., ECF No. 347 (May 28, 2020), ¶ 29. | ████████████████████<br>████████████<br>████<br>████████████████████<br>████<br>████████████████████<br>████<br>Ex. D, at 135:7-25 (attorney objections omitted). |

Mr. Snipe also ███████████████████████████████████ ██████████████████████████ Ex. D, at 138:14-24.   *Compare* Ex. F, at 11:19-25 (interrogatory response ████████████████), *with* Ex. D, at 143:18-144:1 (testifying that ███████████████████████████████████). Yet, even after Mr. Snipe unequivocally testified that ████████████████████████, his counsel refused to dismiss his claims, and instead doubled down on their falsehoods by filing yet another complaint alleging that Mr. Snipe had "paid" for Defendants' HIV medications. Am. FAC, ¶ 29.

- 9 -

1          *     *     *

2          As shown above, both Mr. Staley and Mr. Snipe ███████████████████████

3  █████████████  Further, they both confirmed that ███████████████████████████

4  ████████████████████████████████████████████████████████████████████████

5  ████████████████████████████████████████  Ex. C, at 44:11-45:5 (Mr. Staley

6  confirming ██████████████████████████████████████████████████); Ex. D, at

7  64:24-65:2 (Mr. Snipe confirming █████████████████████████████████████████

8  ████████).  Despite the many false assertions catalogued above, these Plaintiffs and their counsel

9  have refused to dismiss Mr. Staley's and Mr. Snipe's claims.

10                        **LEGAL STANDARD**

11         A plaintiff who lacks standing cannot invoke this Court's subject-matter jurisdiction and his

12  claims should be dismissed under Rule 12(b)(1) of the Federal Rules of Civil Procedure.  *Cetacean*

13  *Cmty. v. Bush*, 386 F.3d 1169, 1174 (9th Cir. 2004).  This Court "may 'hear evidence regarding

14  jurisdiction' and 'resolv[e] factual disputes'" in deciding a Rule 12(b)(1) motion.  *Robinson v. United*

15  *States*, 586 F.3d 683, 685 (9th Cir. 2009) (citation omitted).  Because Defendants challenge Mr.

16  Staley's and Mr. Snipe's standing, none of their allegations is presumed to be true, and the Court need

17  not limit its analysis to Plaintiffs' allegations alone.  *Augustine v. United States*, 704 F.2d 1074, 1077

18  (9th Cir. 1983).  Instead, Mr. Staley and Mr. Snipe must present "evidence necessary to satisfy [their]

19  burden of establishing subject matter jurisdiction."  *Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir.

20  2004) (quoting *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004)); *see also*

21  *Rattlesnake Coal. v. EPA*, 509 F.3d 1095, 1102 n.1 (9th Cir. 2007) ("Once challenged, the party

22  asserting subject matter jurisdiction has the burden of proving its existence.").  Thus, Mr. Staley and

23  Mr. Snipe must establish the three elements of standing, that: (1) each suffered actual "concrete" injury;

24  (2) caused by Defendants' conduct; (3) that will be redressed by the relief they seek if they prevail in

25  this litigation. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).  And "[s]ince they are not

26  mere pleading requirements but rather an indispensable part of the plaintiff's case, each element must

27  be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*,

28  with the manner and degree of evidence required at the successive stages of litigation." *Id.*

1

## **ARGUMENT**

2        Mr. Staley and Mr. Snipe were not personally affected by any of the alleged conduct, and will

3   not personally benefit from any relief even if the class plaintiffs prevail.  Thus, both lack standing to

4   maintain their claims and all their claims must be dismissed from this action.  *See Lujan*, 504 U.S. at

5   560 n.1 ("the injury must affect the plaintiff in a personal and individual way").  While Mr. Staley and

6   Mr. Snipe may have an interest in advocating for HIV-related causes, that does not give them standing

7   to assert claims against Defendants ███████████████████████████████████

8   ███  *Id.* at 563-64 & n.2 (holding plaintiffs lacked standing where no evidence showed "one or more

9   of respondents' members would thereby be 'directly' affected apart from their 'special interest' in the

10  subject," and claiming an "intent, some day, to return," did "not support a finding of the 'actual or

11  imminent' injury that our cases require").  Standing is established only when three elements are met:

12          First, the plaintiff must have suffered an injury in fact -- an invasion of a legally protected
            interest which is (a) concrete and particularized, and (b) actual or imminent, not
13          conjectural or hypothetical.  Second, there must be a causal connection between the injury
            and the conduct complained of -- the injury has to be fairly traceable to the challenged
14          action of the defendant, and not the result of the independent action of some third party
            not before the court.  Third, it must be likely, as opposed to merely speculative, that the
15          injury will be redressed by a favorable decision.

16

17  *Id.* at 560-61 (citations and internal quotations omitted).  As discussed below, neither Mr. Staley nor

18  Mr. Snipe has even met the first element: establishing that each suffered a "concrete and particularized"

19  and "actual or imminent" injury-in-fact stemming from Defendants' alleged conduct.  Indeed, their

20  testimony confirms that ████████████████████████████████████████

21  ████████████████████████████████  Further, Mr. Staley and Mr. Snipe have not even

22  alleged, and certainly not established, how they could have suffered injury "fairly traceable to the

23  challenged action of the defendant" that "will be redressed by a favorable decision" in this putative

24  class action.  Because neither individual can establish injury, there is nothing to be redressed by a

25  favorable decision in this Court.  Neither Mr. Staley nor Mr. Snipe satisfies the constitutional minimum

26  for standing, and therefore their claims must be dismissed.

27

28

**I.     Mr. Staley and Mr. Snipe Have Not Suffered Any Economic Harm Because Neither** ███████████████████████████

Mr. Staley and Mr. Snipe purportedly continue to pursue ██████████████ against Defendants (ECF No. 694-1, at 10 n.34), but no evidence shows that Mr. Staley or Mr. Snipe has standing to bring ████████ in the operative complaint.  *See, e.g.*, *In re Flash Memory Antitrust Litig.*, No. 07-cv-0086, 2010 U.S. Dist. LEXIS 59491, at *78-79 (N.D. Cal. June 9, 2010) (holding that a plaintiff's voluntary dismissal should be with prejudice where the plaintiff "state[d] that he did not purchase any products at issue in this litigation, and as such lacks standing to assert indirect purchaser claims" and that "[t]his admission warrants dismissal of his claims with prejudice").  While the allegations that Mr. Staley and Mr. Snipe purchased Defendants' products during the proposed class period might establish standing if they were true (Am. FAC ¶¶ 19, 29), ████████████████ ███████████████████  *See supra* at 5-9.  Remarkably, Mr. Snipe ██████████████████ ███████████  Further, during the proposed class period, neither Mr. Staley nor Mr. Snipe ████████ ███████████████████████████████████████████████████

While Mr. Staley and Mr. Snipe *did* ██████████████████████████████████████ ███████████████, none of those prescriptions confers standing either.  The Ninth Circuit has long held that *purchasers* of products made by non-Defendant, non-conspiring manufacturers *have no valid antitrust claims.  See In re Coordinated Pretrial Proceedings in Petroleum Prods. Antitrust Litig.*, 691 F.2d 1335, 1341 (9th Cir. 1982), *cert. denied*, 464 U.S. 1068 (1984).  Such purchasers lack standing because their alleged injuries are too remote from the defendants' conduct to prove that defendants' conduct caused their injuries.  *Id.* (rejecting theory that defendants' conduct created a "price umbrella" that caused non-conspiring competitors to raise prices, thereby injuring plaintiffs).

As a result, there are no cognizable claims based on Mr. Staley's ███████████████ ███████████████████████████████████████████████████ because none of these manufacturers is a Defendant or alleged co-conspirator.  *See, e.g.*, *In re Citric Acid Antitrust Litig.*, 145 F. Supp. 2d 1152, 1155 (N.D. Cal. 2001) (finding that purchasers from non-conspirator suffered no antitrust injury because it "ha[d] been found not to have violated the anti-trust laws," and "the 'price umbrella' is not a legal basis for conferring standing on an antitrust plaintiff"); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, MDL No. 1827, 2012 U.S. Dist. LEXIS 182374, at *59-

65 (N.D. Cal. Dec. 26, 2012) (applying bar on "umbrella" standing to indirect purchaser antitrust claims under California, Illinois, Minnesota, Michigan, and New York law); *Garabet v. Autonomous Techs. Corp.*, 116 F. Supp. 2d 1159, 1169 (C.D. Cal. 2000) (noting the "precedent in the Ninth Circuit rejecting 'umbrella' standing"); *In re Vitamins Antitrust Litig.*, MDL No. 1285, 2001 U.S. Dist. LEXIS 12114, at *27 (D.D.C. July 2, 2001) (citing *Associated Gen. Contractors, Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 537 n.33 (1983)) ("The overwhelming majority of recent court decisions that have addressed the viability of the 'umbrella' theory after *Associated General* have rejected 'umbrella' claims."); *In re Skelaxin (Metaxalone) Antitrust Litig.*, No. 12-md-2343, 2014 U.S. Dist. LEXIS 66707, at *32-34 (E.D. Tenn. May 15, 2014) (same).  And there certainly are no cognizable claims based on Mr. Snipe's ███████████████████████

Courts reject umbrella theories because they require deciding whether non-conspirators' prices resulted from defendants' conduct or "from numerous other pricing considerations," and whether each other entity in the distribution chain (here, insurers, wholesalers, retailers, and others) priced the product based on defendants' conduct.  *See Petroleum Prods.*, 691 F.2d at 1341 ("the obstacles to intelligent inquiry become nearly insurmountable" where a liability theory requires considering "whether the non-conspirators' prices resulted from the defendants' purported price-fixing conspiracy or from numerous other pricing considerations" in the context of a "multi-tiered distribution system").  None of Plaintiffs' complaints, including the operative complaint, contain *any* allegations that ████████ ██████████████ made pricing decisions based on Defendants' pricing, much less that *all* of these entities priced *all* of their HIV medications higher than they should have because of Defendants' allegedly unlawful conduct.  *See, e.g.*, *Oliver v. SD-3C LLC*, No. 11-cv-1260, 2016 U.S. Dist. LEXIS 146427, at *34 (N.D. Cal. Sept. 30, 2016) (dismissing for lack of Article III standing because plaintiffs' complaint "contains no factual allegations" in support of their theory of standing and "a plaintiff may not merely 'engage in an 'ingenious academic exercise in the conceivable' to explain how defendants' actions caused his injury'") (quoting *Maya v. Centex Corp.*, 658 F.3d 1060, 1068 (9th Cir. 2011) and *United States v. Students Challenging Regulatory Agency Procedures*, 412 U.S. 669, 689-90 (1973)).

Instead, the allegations in the complaint underscore why "umbrella" purchasers like Mr. Staley and Mr. Snipe lack standing, because even these allegations state that other pharmaceutical

manufacturers competed aggressively despite Defendants' alleged conduct. *See, e.g.*, Am. FAC ¶ 185

(alleging that "[l]arge pharmaceutical companies including . . . Merck" competed aggressively to win

business, including by "develop[ing] biosimilar versions of branded biologic drugs" and "aggressively

litigat[ing] challenges to patents keeping their biosimilars off the market"). *Petroleum Products* and

its progeny are dispositive of Mr. Staley's and Mr. Snipe's claims.

Moreover, neither Mr. Staley nor Mr. Snipe allege facts establishing that either suffered

concrete injury from his prescriptions for ██████████████████████████████████████

██████████████████████████████████████ *See Spokeo, Inc. v. Robins*, 578 U.S. 330, 340 (2016)

(citation omitted) ("A 'concrete' injury must be '*de facto*'; that is, it must actually exist.  When we

have used the adjective 'concrete,' we have meant to convey the usual meaning of the term—'real,'

and not 'abstract.'").   Indeed, Mr. Staley and Mr. Snipe do not even allege that they made such

purchases; rather, the operative complaint falsely and misleadingly continues to claim that both

████████████████████████████████████████████████████████████████████████████.

Accordingly, since Mr. Staley and Mr. Snipe fail to assert any concrete and particularized injuries, and

because whatever claims they could have are barred by Ninth Circuit authority, their claims should be

dismissed for lack of standing.

## II.   Mr. Staley and Mr. Snipe Have Not Articulated Any "Imminent" Harm That Warrants Injunctive Relief Because ██████████████████████████████████████

██████████████████████████████████████

As set forth above, discovery also revealed that Mr. Staley's and Mr. Snipe's allegations

regarding future injury ██████████ and thus neither of them has standing based on potential future injury.

To have a valid claim for injunctive relief, a claimant must establish a "real and immediate threat of

repeated injury," in addition to meeting the three elements of standing to sue for past injuries. *Chapman*

*v. Pier 1 Imps. (U.S.), Inc.*, 631 F.3d 939, 946 (9th Cir. 2011) (citation omitted).   Article III standing

must be established for each plaintiff seeking injunctive relief, and mere assertions of "possible future

injury are not sufficient." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (citation and internal

quotations omitted); *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009).   To have standing to

pursue injunctive relief, Mr. Staley and Mr. Snipe must show that in the immediate future they intend

to purchase Defendants' products, or generic versions thereof.   They are also required to show there is

- 14 -

1   a concrete risk they will be injured by these intended purchases due to Defendants' conduct.

2   Discovery confirmed that neither Mr. Staley nor Mr. Snipe █████████

3   ████████████████████████████████████████████████████████████

4   ████████████████████████████ *See* Ex. D, at 64:24-65:2 ████████

5   ████████████████████████████████████████████████████████████

6   █████████████; Ex. C, at 44:11-45:5 █████████████████████████████

7   ████████████████████████████████████████████████████████████

8   ████████████████████████████████████████████████████████████

9   Mr. Staley testified that ███████████████████████████████████████

10  ████████████████████████████████—a profile that none of Defendants' challenged

11  products meet—and that, ████████████████████████████████████████

12  ██████████████████████████████ Ex. C, at 207:23-208:7; *see also id.* at 206:3-

13  4 ███████████████████████████

14  Mr. Staley's testimony indicates that, ███████████████████████████

15  ████████████████████████████████████████████████████████████

16  ███████ Mr. Staley ███████████████████████████████████████████

17  ██████████████████ *Id.* at 40:17-41:6; *see also id.* at 27:5-9, 207:23-208:7.  As the class-

18  certification briefing articulates, ████████████████████████████████

19  ████████████████████████████████████████████████████████████

20  █████████████████ (ECF No. 694-1, at 7:1-2)—███████████████████████

21  ██████████████████ Mr. Staley's ██████████████████████████████████

22  ████████████████████████████████████████████████. *Supra* at 6-7.

23  Since Mr. Staley and Mr. Snipe both testified that ██████████████

24  ███████████████████ Mr. Staley and Mr. Snipe lack standing to pursue injunctive relief claims based

25  on assertions of future injury.  Indeed, rather than facing any "concrete" threat of injury from taking

26  Defendants' products in the "immediate" future, Mr. Staley's testimony indicates ███████████

27  █████████████████████████████

28

1

## CONCLUSION

2

      For all of the foregoing reasons, the claims of Plaintiffs Peter Staley and of Michael Snipe

3

should be dismissed with prejudice.

4

5

                      Respectfully submitted,

Dated:    February 14, 2022          WHITE & CASE LLP

6

7

         By:    */s/ Heather M. Burke*
               Heather M. Burke (SBN 284100)

8

               Jeremy K. Ostrander (SBN 233489)
               **WHITE & CASE**LLP

9

               3000 El Camino Real

10

               2 Palo Alto Square, Suite 900
               Palo Alto, CA  94306-2109

11

               Telephone:  (650) 213-0300
               Facsimile: (650) 213-8158

12

               hburke@whitecase.com
               jostrander@whitecase.com

13

               Christopher M. Curran (*pro hac vice*)

14

               Peter J. Carney (*pro hac vice*)
               **WHITE & CASE**LLP

15

               701 Thirteenth Street, NW
               Washington, District of Columbia 20005-3807

16

               Telephone:  (202) 626-3600
               Facsimile: (202) 639-9355

17

               ccurran@whitecase.com
               pcarney@whitecase.com

18

               Heather K. McDevitt (*pro hac vice*)

19

               Bryan D. Gant (*pro hac vice*)
               Kristen O'Shaughnessy (*pro hac vice*)

20

               Michael E. Hamburger (*pro hac vice*)
               Raj S. Gandesha (*pro hac vice*)
               **WHITE & CASE**LLP

21

               1221 Avenue of the Americas

22

               New York, New York 10020
               Telephone: (212) 819-8200

23

               Facsimile: (212) 354-8113
               hmcdevitt@whitecase.com

24

               bgant@whitecase.com
               kristen.oshaughnessy@whitecase.com

25

               michael.hamburger@whitecase.com
               rgandesha@whitecase.com

26

               Attorneys for Defendants Gilead Sciences, Inc.,

27

               Gilead Holdings, LLC, Gilead Sciences, LLC, and
               Gilead Sciences Ireland UC

28

- 16 -

1

Dated:   February 14, 2022                              FAEGRE DRINKER BIDDLE & REATH LLP

2

3                                                   By:   */s/ Paul J. Riehle*
                                                         Paul J. Riehle (SBN 115199)
4                                                        paul.riehle@faegredrinker.com
                                                         Four Embarcadero Center, 27th Floor
5                                                        San Francisco, CA 94111

6                                                        FAEGRE DRINKER BIDDLE & REATH LLP
                                                         Paul H. Saint-Antoine (*pro hac vice*)
7                                                        paul.saint-antoine@faegredrinker.com
                                                         Joanne C. Lewers (*pro hac vice*)
8                                                        joanne.lewers@faegredrinker.com
                                                         One Logan Square, Ste. 2000
9                                                        Philadelphia, PA 19103

10                                                       *Attorneys for Defendants Janssen R&D Ireland,*
                                                         *Janssen Products, LP and Johnson & Johnson*

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **FILER'S ATTESTATION**

Pursuant to Civil L.R. 5-1(i)(3), regarding signatures, I, Heather M. Burke, attest that concurrence in the filing of this document has been obtained.

Executed:        February 14, 2022                    /s/                    *Heather M. Burke*
                                                                                    Heather M. Burke

## CERTIFICATE OF SERVICE

I hereby certify that on February 14, 2022, the within document was filed with the Clerk of the Court using CM/ECF which will send notification of such filing to the attorneys of record in this case.

Executed:        February 14, 2022          /s/                    *Heather M. Burke*
                                                    Heather M. Burke

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS PETER STALEY AND
MICHAEL SNIPE PURSUANT TO RULE 12(b)(1) OF THE FEDERAL RULES OF CIVIL PROCEDURE
CASE NO: 3:19-CV-02573-EMC