DURIE TANGRI LLP
DARALYN J. DURIE (SBN 169825)
ddurie@durietangri.com
217 Leidesdorff Street
San Francisco, CA 94111
Telephone: (415) 362-6666

HILLIARD & SHADOWEN LLP
STEVE D. SHADOWEN (*pro hac vice*)
steve@hilliardshadowenlaw.com
1135 W. 6th Street, Suite 125
Austin, TX 78703
Telephone: (855) 344-3298

HAGENS BERMAN SOBOL SHAPIRO LLP
STEVE W. BERMAN (*pro hac vice*)
steve@hbsslaw.com
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292

*Interim Co-Lead Counsel for End-Payor Plaintiffs*

*Additional Counsel on Signature Page*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PETER STALEY, et al., | Case No. 3:19-cv-2573-EMC |
| Plaintiff, | **END-PAYOR CLASS PLAINTIFFS' MOTION FOR FINAL APPROVAL OF SETTLEMENT WITH BRISTOL-MYERS SQUIBB COMPANY AND E.R. SQUIBB & SONS L.L.C.** |
| v. | |
| GILEAD SCIENCES, INC., et al., | |
| Defendants. | |
| | Date: April 28, 2022 |
| This Document Relates to: | Time: 1:30 p.m. |
| | Courtroom: 5, 17th Floor |
| *Staley, et al., v. Gilead Sciences, Inc., et al.*, No. 3:19-cv-02573-EMC | Before: Edward M. Chen |

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## NOTICE OF MOTION

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on April 28, 2022 at 1:30 p.m., or as soon thereafter as the matter may be heard, before the Honorable Edward M. Chen, United States District Judge, in Courtroom 05 of the United States District Court for the Northern District of California in San Francisco, CA, Plaintiffs Peter Staley, Ivy Kwan Arce, Gregg S. Gonsalves, PhD, Brenda Emily Goodrow, Andrew R. Spieldenner, PhD,  Michael Snipe, Josh McDonald, Troy Vazquez-Cain, Fraternal Order of Police, Miami Lodge 20, Insurance Trust Fund, Local No. 1 Health Fund, Teamsters Local 237 Welfare Fund and Teamsters Local 237 Retirees' Benefit Fund, Pipe Trades Services MN Welfare Fund, and Blue Cross Blue Shield Association  ("Plaintiffs"), individually and on behalf of the End-Payor classes certified under Fed. R. Civ. P. 23(a), (b)(2) and (b)(3) for settlement purposes only[1] (the "End-Payor Classes"), will move the Court pursuant to Federal Rule of Civil Procedure 23(e) for entry of an Order:

1. Granting final approval of the agreement by and between Plaintiffs, individually and on behalf of the End-Payor Classes, with Defendants Bristol-Myers Squibb Company and E.R. Squibb & Sons, L.L.C. (together, "BMS") to settle the claims brought on behalf of the End-Payor Classes against BMS;

2. Approving the Plan of Allocation of Settlement Proceeds as proposed by Class Counsel; and

---

[1] *See* Order Granting End-Payor Class Plaintiffs' Motion for Preliminary Approval of Settlement with BMS, Approval of Form and Manner of Notice, Appointment of Settlement Administrator, of Escrow Agent, and of Settlement Class Counsel, and Final Settlement Schedule and Date for Final Approval Hearing ("Preliminary Approval Order"), ECF No. 782.

3.  Dismissing all claims in the above-captioned matter against Defendants BMS with prejudice and without costs.

This motion is based on the accompanying Memorandum of Points and Authorities, the supporting declarations and exhibits, including Plaintiffs' filings with respect to preliminary approval, all papers and records on file in this matter, and the argument of counsel.

1

**TABLE OF CONTENTS**

2

I.    INTRODUCTION ................................................................................................1

3

II.   ARGUMENT.....................................................................................................3

4

A.    The Settlement is Fair, Reasonable, and Adequate ....................................4

5

6
      1.    Factors (1) The Strength of the Plaintiff's Case, (2) The Risk,
            Expense, and Complexity, and Likely Duration of Further
            Litigation, and (4) The Amount Offered in Settlement .................5

7

8
      2.    Factor (3): The Risk of Maintaining Class Action Status
            Throughout the Trial .................................................................11

9

10
      3.    Factor (5): The Extent of Discovery Completed and the Stage of
            the Proceedings.........................................................................11

11

12
      4.    Factor (6): The Experience and Views of Counsel......................12

      5.    Factor (7): The Presence of a Governmental Participant.............13

13
      6.    Factor (8): The Reaction of Class Members to the Proposed
            Settlement.................................................................................13

14

15
      7.    The Settlement Was the Result of Arms'-Length Negotiations and
            Raises No Concerns Under *Bluetooth*.........................................15

16

17
B.    Notice of the Settlement Complied with the Court's Preliminary Approval
      Order and Applicable Law.....................................................................16

18
C.    The Proposed Allocation Plan is Fair, Reasonable, and Adequate ..........19

19

III.  CONCLUSION................................................................................................23

20

21

22

23

24

25

26

27

28

-iii-

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**Cases**

*Acosta v. Frito-Lay, Inc.*,
   No.15-cv-02128, 2018 WL 646691 (N.D. Cal. Jan 31, 2018) ..................................................... 19

*Allen v. Bedolla*,
   787 F.3d 1218 (9th Cir. 2015) .................................................................................................... 4

*Banks v. Nissan N. America, Inc.*,
   11-cv-2022-PJH, 2015 WL 7710297 (N.D. Cal. 2015) ............................................................. 11

*Beck-Ellman v. Kaz USA, Inc.*,
   3:10-CV-02134-H-DHB, 2013 WL 1748729 (S.D. Cal. Jan. 7, 2013) ....................................... 18

*Bellinghausen v. Tractor Supply Co.*,
   306 F.R.D. 245  (N.D. Cal. 2015) ..........................................................................................5, 11

*Booth v. Strategic Realty Tr., Inc.*,
   No. 13-cv04921, 2015 WL 6002919 (N.D. Cal. Oct. 15, 2015) ................................................ 19

*Briseño v. Henderson*,
   998 F.3d 1014 (9th Cir. 2021) ................................................................................................. 4, 5

*Brown v. CVS Pharm., Inc.*,
   No. 15-cv-7631, 2017 WL 3494297 (C.D. Cal. Apr. 24, 2017) .................................................. 9

*Chun-Hoon v. McKee Foods Corp.*,
   716 F. Supp. 2d 848 (N.D. Cal. 2010) ..................................................................................... 5, 6

*Churchill Vill., LLC v. Gen. Elec.*,
   361 F.3d 566 (9th Cir. 2004) ..................................................................................................... 16

*Churchill Village LLC. v. Gen Elec.*,
   361 F.3d 566 (9th Cir. 2004) ....................................................................................................... 4

*Collins v. Cargill Meat Sols. Corp.*,
   274 F.R.D. 294 (E.D. Cal. 2011) .............................................................................................. 11

*Dukes v. Wal-Mart Stores, Inc.*,
   603 F.3d 571 (9th Cir. 2010) ..................................................................................................... 11

*Garner v. State Farm Mut. Auto. Ins. Co.*,
   No. CV 08 1365 CW EMC, 2010 WL 1687832 (N.D. Cal. Apr. 22, 2010) .............................5, 13

*Gaudin v. Saxon Mortg. Servs., Inc.*,
   No. 11-cv-01663, 2015 WL 7454183 (N.D. Cal. Nov. 23, 2015) .............................................. 19

*Gen. Tel. Co. of Sw. v. Falcon*,
   457 U.S. 147, 160 (1982) .......................................................................................................... 11

*Glass v. UBS Fin. Servs., Inc.*,
   No. C 06-4068, 2007 WL 221862 (N.D. Cal. Jan. 26, 2007) ...................................................... 9

*Glass v. UBS Fin. Servs., Inc.*,
   No. C-06-4068, 2007 WL 221862 (N.D. Cal. Jan. 26, 2007) ...................................................... 4

-iv-

*GPNE Corp. v. Apple, Inc.*,
   No. 12-CV-02885-LHK, 2014 WL 1494247  (N.D. Cal. Apr. 16, 2014) ..................................... 8

*Guttmann v. Ole Mexican Foods, Inc.*,
   14-CV-04845-HSG, 2016 WL 9107426 (N.D. Cal. Aug. 1, 2016) ........................................ 7

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998)................................................................................................ 4

*In re Aggrenox Antitrust Litig.*,
   No. 14-md-2516 (D. Conn.), ECF Nos. 733-1, 740 (approved Dec. 19, 2017)............................ 22

*In re Asacol Antitrust Litig.*,
   No. 15-cv-12730 (D. Mass.), ECF Nos. 419-9, 648) (approved Dec. 7, 2017)............................ 22

*In re Bluetooth Headset Prods. Liability Litig.*,
   654 F.3d 935 (9th Cir. 2011)..........................................................................................5, 15

*In re Brand Name Prescription Drugs Antitrust Litig.*,
   123 F.3d 599 (7th Cir. 1997)................................................................................................ 8

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
   MDL No. 1917, 2016 WL 721680 (N.D. Cal. Jan. 28, 2016) .................................................13, 19

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
   No. C-07-5944, 2016 WL 3648478 (N.D. Cal. July 7, 2016).......................................... 19

*In re Celebrex (Celecoxib) Antitrust Litig.*,
   No. 14-cv-361 (E.D. Va.), ECF Nos. 609-4, 630 (approved Apr. 18, 2018)........................ 22

*In re Citric Acid Antitrust Litig.*,
   145 F. Supp. 2d 1152 (N.D. Cal. 2001) ................................................................................. 19

*In re Critical Path, Inc.*,
   No. C 01-00551, 2002 WL 32627559 (N.D. Cal. June 18, 2002).................................... 6

*In re Dom. Air Transp. Antitrust Litig.*,
   141 F.R.D. 534 (N.D. Ga. 1992) ............................................................................................ 18

*In re Heritage Bond Litig.*,
   No. 02-ml-2475, 2005 WL 1594403 (C.D. Cal. June 10, 2005)........................................ 19

*In re LendingClub Sec. Litig.*,
   Nos. C 16-02627, C 16-02670, C 16-03072, 2018 WL 1367336 (N.D. Cal. Mar. 16, 2018).......... 9

*In re Lidoderm Antitrust Litig.*,
   14-MD-02521-WHO, 2018 WL 11375216 (N.D. Cal. Sept. 20, 2018)..................................... 21

*In re Lidoderm Antitrust Litig.*,
   No. 14-md-2521 (N.D. Cal.), ECF Nos. 1004-5, 1004-6, 1054 (approved Sept. 20, 2018).......... 22

*In re Linkedin User Priv. Litig.*,
   309 F.R.D. 573 (N.D. Cal. 2015) ......................................................................................... 11

*In re LinkedIn User Privacy Litig.*,
   309 F.R.D. 573 (N.D. Cal. 2015) ......................................................................................... 13

*In re Lithium Ion Batteries Antitrust Litig.*,
   13-MD-02420 (DMR), 2020 WL 7264559 (N.D. Cal. Dec. 10, 2020)..........................................6

*In re Loestrin 24 Fe Antitrust Litig.*,
   No. 13-md-2472 (D.R.I.), ECF Nos. 1396-8, 1462 (approved Sept. 1, 2020)..............................22

*In re Mego Fin. Corp. Sec. Litig.*,
   213 F.3d 454 (9th Cir. 2000)...........................................................................................9, 14

*In re Motor Fuel Temperature Sales Practices Litig.*,
   279 F.R.D. 598 (D. Kan. 2012).....................................................................................................18

*In re NASDAQ Mkt.-Makers Antitrust Litig.*,
   187 F.R.D. 465 (S.D.N.Y. 1998)......................................................................................................6

*In re Nexus 6P Products Liability Litig.*,
   No. 17-cv-02185-BLF, 2019 WL 6622842 (N.D. Cal. Nov. 12, 2019) ........................................19

*In re Omnivision Techs., Inc.*,
   559 F. Supp. 2d 1036 (N.D. Cal. 2007) .........................................................................................12

*In re Painewebber Ltd. P'ships Litig.*,
   171 F.R.D. 104 (S.D.N.Y. 1997)....................................................................................................12

*In re PaineWebber Ltd. P'ships Litig.*,
   171 F.R.D. 104 (S.D.N.Y. 1997)......................................................................................................6

*In re Restasis (Cyclosporine Ophthalmic Emulsion) Antitrust Litig.*,
   No. 18-md-2819 (E.D.N.Y.), ECF Nos. 490-7, 562 (approved Oct. 7, 2020).............................22

*In re Solodyn (Minocycline Hydrochloride) Antitrust Litig.*,
   No. 14-md-2503, (D. Mass.), ECF Nos. 1163-4, 1179 (approved July 18, 2018).......................22

*In re Superior Beverage/Glass Container Consol. Pretrial*,
   133 F.R.D. 119 (N.D. Ill. 1990) .......................................................................................................6

*In re Tableware Antitrust Litig.*,
   484 F. Supp. 2d 1078 (N.D. Cal. 2007) .........................................................................................18

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
   3:07-MD-1827 SI, 2015 WL 12912348 (N.D. Cal. Nov. 2, 2015) ...............................................18

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
   No. 07-md-1827, 2011 WL 75750004 (N.D. Cal. Dec. 27, 2011)................................................19

*In re TracFone Unlimited Serv. Plan Litig.*,
   112 F. Supp. 3d 993 (N.D. Cal. 2015) .............................................................................................7

*In re Zynga Inc. Sec. Litig.*,
   No. 12-cv-04007, 2015 WL 6471171 (N.D. Cal. Oct. 27, 2015)..................................................19

*In re: Cathode Ray Tube (CRT) Antitrust Litig.*,
   No. C-07-5944 JST, 2016 WL 6778406 (N.D. Cal. Nov. 16, 2016)............................................19

*In re: High-tech Employee Antitrust Litig.*,
   11-CV-2509-LHK, 2014 WL 10520478 (N.D. Cal. May 16, 2014)..............................................21

-vi-

*Jermyn v. Best Buy Stores, L.P.*,
  08 CIV. 00214 CM, 2010 WL 5187746 (S.D.N.Y. Dec. 6, 2010)................................ 18

*King Drug Co. of Florence, Inc. v. Cephalon, Inc.*,
  No. 06-cv-1797 (E.D. Pa.), ECF Nos. 864-17, 870 (approved Oct. 15, 2015).............................. 22

*Marshall v. Holiday Magic, Inc.*,
  550 F.2d 1173 (9th Cir. 1977)................................ 14

*Morrison v. Ross Stores, Inc.*,
  4:18-CV-2671-YGR, 2021 WL 3852726 (N.D. Cal. Aug. 27, 2021)............................ 7

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,
  221 F.R.D. 523 (C.D. Cal. 2004) .........................................5, 6, 12

*Nen Thio v. Genji, LLC*,
  14 F. Supp. 3d 1324 (N.D. Cal. 2014) ................................ 10

*Newell v. Ensign United States Drilling (California) Inc.*,
  No. 1:19-cv-01314-NONE-JLT, 2021 WL 6000227 (E.D. Cal. Dec. 20, 2021).......................... 11

*Officers for Justice v. Civil Serv. Comm'n of San Francisco*,
  688 F.2d 615 (9th Cir. 1982).........................................3, 4, 6

*ResQNet.com, Inc. v. Lansa, Inc.*,
  594 F.3d 860 (Fed. Cir. 2010) ................................ 8

*Rodriguez v. West Publ'g Corp.*,
  563 F.3d 948 (9th Cir. 2009).........................................5, 6, 14, 15

*Sandoval Ortega v. Aho Enters., Inc.*,
  No. 19-cv-00404-DMR, 2021 WL 5584761 (N.D. Cal. Nov. 30, 2021) ................................ 11

*Schneider v. Chipotle Mexican Grill, Inc.*,
  16-CV-02200-HSG, 2019 WL 1512265 (N.D. Cal. Apr. 8, 2019)................................ 18

*Smith v. Am. Greetings Corp.*,
  No. 14-cv-02577, 2015 WL 4498571 (N.D. Cal. July 23, 2015)................................ 11

*Torres v. Pick-A-Part Auto Wrecking*,
  No. 16-cv-01915, 2018 WL 306287 (E.D. Cal. Jan. 5, 2018) ................................ 10

*Uschold v. NSMG Shared Servs., LLC*,
  333 F.R.D. 157,(N.D. Cal. 2019) ................................ 16

*Vinh Nguyen v. Radient Pharm. Corp.*,
  No. 11-cv-00406, 2014 WL 1802293 (C.D. Cal. May 6, 2014) ................................ 19

*Wal-Mart Stores, Inc. v, Visa U.S.A., Inc.*,
  396 F.3d 96, (2d Cir. 2005)................................ 6

**Statutes**

28 U.S.C. § 1715 ................................ 13

**Other Authorities**

Fed. R. Civ. P. 23 .........................................1, 4, 5, 16

-vii-

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.      INTRODUCTION**

End-Payor Plaintiffs ("Plaintiffs" or "EPPs") filed this antitrust class action on May 14, 2019, individually and on behalf of the End-Payor Classes, against defendants Gilead Sciences, Inc., Gilead Holdings, LLC, Gilead Sciences, LLC, and Gilead Sciences Ireland UC ("Gilead"); Bristol-Myers Squibb Company and E. R. Squibb & Sons, L.L.C. ("BMS"); and Johnson & Johnson, Janssen Products LP, and Janssen R&D Ireland ("Janssen") (collectively, "Defendants"). Plaintiffs allege that Gilead, BMS, and Janssen have restrained competition for certain antiretroviral drugs used to treat or prevent HIV, and that these restraints violate federal and state antitrust laws and state consumer protection laws, causing damage to Plaintiffs and Settlement Class members. All of the Defendants deny the essential allegations of the Complaint.

The litigation has proceeded through extensive motion practice and discovery, the beginning of class certification proceedings and the exchange of expert reports, and the initial preparation for trial scheduled for March 27, 2023.  For more than six months, beginning on March 24, 2021, Plaintiffs and BMS intensively negotiated the Settlement Agreement for which the Court granted preliminary approval on December 14, 2021.[2]  Notice of the settlement having been disseminated in accordance with the Court's order, Plaintiffs now seek the Court's final approval.

The Agreement provides that BMS will permanently waive and not enforce the No-Generics Restraint that currently exists in the BMS-Gilead collaboration agreement on the product Evotaz.[3] This is the only such restraint that currently exists in a BMS-Gilead agreement. In addition, BMS

---

[2] Plaintiffs filed their motion for preliminary approval on November 4, 2021, ECF No. 711.  The Court ordered supplemental briefing on a series of points.  *See* Order re Supplemental Briefing, Nov. 10, 2021, ECF No. 719.  On November 18, 2021, Plaintiffs fully responded in a supplemental brief and in camera filing. *See* ECF No. 726.  At the Court's request, Plaintiffs amended their notice and plan of allocation to provide for a claim form that consumers could submit upon preliminary approval.  *See* ECF No. 726, Ex. 5 (claim form), Ex. 7 (revised plan of allocation).

[3] *See* Declaration of Steve D. Shadowen ("First Shadowen Prel. App. Decl."), ECF No 711-1, Ex. 1, Settlement Agreement between End-Payor Classes and BMS ("Settlement Agreement") § 8.

will pay $10 million in cash[4] and contribute up to $200,000 toward the cost of providing notice to the classes.[5] In exchange, the classes agree to dismissal of the litigation with prejudice as to BMS only and will provide certain releases as to BMS only.[6] Class counsel will not seek any attorneys fees from these BMS funds.

The injunctive relief—BMS's disclaiming its contractual right to enforce the No-Generics Restraint as to Evotaz—terminates a restraint that began having its principal anticompetitive bite in December 2017 and that would otherwise exist until at least September 2029.[7] The relief will thus eliminate almost two-thirds of the effective life of the anticompetitive restraint.[8]

In addition, the consumer members of the proposed class of Evotaz purchasers will receive $1.25 million of the $10 million in cash that BMS is paying. That amount represents at least 100% of those consumers' aggregate damages on their Evotaz purchases.[9]

The Complaint alleges two other bases for BMS's potential liability: (1) the No-Generics Restraint on Atripla;[10] and (2) BMS's participation in Gilead's overall scheme to monopolize cART drugs.[11] Absent the No-Generics Restraint in the Atripla collaboration agreement, BMS could have begun making a generic-drug-based version of Atripla once a generic version of Truvada (TDF/FTC)

---

[4] *Id*. §§ 1(b), 7(a). The amount is subject to pro rata reduction based on the percentage of relevant purchases of potential class members who opt out of the settlement once a threshold is reached. *Id*. § 17.  Opt-out notices were required to be postmarked by April 6, 2022, and therefore EPPs expect that all or most of them were received as of the date of this filing.

[5] *Id*. § 7(c).

[6] *Id*. § 14.

[7] First Amended Complaint, ECF No. 347 ("FAC") ¶¶ 124-125.

[8] Assuming final approval of the Agreement in April 2022.

[9] The consumers' damages are modest because Evotaz is a relatively low-selling drug and consumers pay only about 6% of the price for the product, with Third-Party Payors paying the rest. See the detailed discussion further below.

[10] FAC ¶¶ 104-16.

[11] FAC ¶¶ 478-91. Notably, the Complaint does not allege, and discovery did not reveal, that BMS participated in Gilead's making of the reverse payments to Teva to delay entry of generic versions of Atripla and Truvada.

became available in September 2020.[12] But Gilead had already terminated the Atripla collaboration agreement—and its No-Generics Restraint—effective December 31, 2017. Thus, while the collaboration agreement was anticompetitive when the Defendants entered into it, as events unfolded it did not generate any overcharges that Plaintiffs seek to recover in this litigation. As to BMS's potential liability for participating in Gilead's overall anticompetitive scheme, the Court granted BMS's motion to dismiss that claim.[13] In addition to directing $1.25 million to the consumer members of the Evotaz class, the allocation plan provides for the consumer members of the Atripla class to receive $1.25 million, and for another $5 million to be divided among the TPP purchasers of Evotaz and of Atripla, Truvada, Complera, and Stribild for forgoing the possibility of getting appellate reversal on BMS's liability for Gilead's overall anticompetitive scheme.

In short, the Settlement Agreement achieves nearly everything that remains in the litigation for these Plaintiffs to achieve against BMS. It represents an excellent result for the End-Payor Classes and it was negotiated in good faith and at arm's length by counsel experienced in pharmaceutical antitrust matters. A relatively small number of TPP class members (largely those who are bringing their own actions) and only two consumers have opted out. Only one (consumer) class member has raised objections, which we address below. The Court should grant final approval of the Agreement.

## II.    ARGUMENT

In this Circuit "voluntary conciliation and settlement are the preferred means of dispute resolution."[14] The "overriding public interest in settling and quieting litigation" is "particularly true in class action suits[.]" Indeed, the Court of Appeals has "'repeatedly noted that there is a strong judicial policy that favors settlements, particularly where complex class action litigation is

---

[12] FAC ¶¶ 115.

[13] ECF No. 384, at 13-16.

[14] *Officers for Justice v. Civil Serv. Comm'n of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982).

concerned.'"[15] "[T]he decision to approve or reject a settlement is committed to the sound discretion of the trial judge because he is 'exposed to the litigants, and their strategies, positions and proof.'"[16] In exercising such discretion, courts should give "proper deference to the private consensual decision of the parties" because:

> [T]he court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned.[17]

The Court may approve a class action settlement "'only after a hearing and on finding that the settlement . . . is fair, reasonable, and adequate.'"[18]

## A.   The Settlement is Fair, Reasonable, and Adequate

In assessing whether a settlement is fair, reasonable, and adequate, courts in the Ninth Circuit consider the eight *Churchill*[19] factors:

> (1) the strength of the plaintiff's case; (2) the suit's risk, expense, and complexity; (3) the risk of maintaining class action status throughout the trial; (4) the amount; (5) the extent of discovery and stage [of the proceedings]; (6) abilities and views of counsel; (7) a governmental participant (if any); and (8) the "reaction of the class members [to] the proposed settlement."

In addition, courts consider "the factors enumerated in [amended] Rule 23(e)(2) not fully addressed by the *Churchill* factors,"[20] including, in particular, whether "the proposal was negotiated

---

[15] *Briseño v. Henderson*, 998 F.3d 1014, 1030 (9th Cir. 2021) (quoting *Allen v. Bedolla*, 787 F.3d 1218, 1223 (9th Cir. 2015)).

[16] *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998) (quoting *Officers for Justice*, 688 F.2d at 626).

[17] *Id*. at 1027 (citation omitted).

[18] *Glass v. UBS Fin. Servs., Inc.*, No. C-06-4068, 2007 WL 221862, at *3 (N.D. Cal. Jan. 26, 2007) (citing Fed. R. Civ. P. 23(e)(1)(c)).

[19] *Churchill Village LLC. v. Gen Elec.*, 361 F.3d 566, 575 (9th Cir. 2004). The Ninth Circuit has\also referred to these factors as the "Hanlon factors" or "Stanton factors." *Briseño*, 998 F.3d at 1023.

[20] *Id*. Fed. R. Civ. P. 23(e)(2) provides:

---

-4-

at arm's length."[21] Courts recognize that "'[n]ot all of these [*Churchill*] factors will apply to every class action settlement. Under certain circumstances, one factor alone may prove determinative.'"[22]

Evaluating the Settlement against these factors demonstrates that it merits the Court's final approval.

**1.      Factors (1) The Strength of the Plaintiff's Case, (2) The Risk, Expense, and Complexity, and Likely Duration of Further Litigation, and (4) The Amount Offered in Settlement**

In assessing the strength of a plaintiff's case, "there is no 'particular formula by which th[e] outcome must be tested.'"[23] "Rather, the Court's assessment of the likelihood of success is 'nothing

---

If the proposal would bind class members, the court may approve it only after a hearing and only on finding that it is fair, reasonable, and adequate after considering whether:

(A) the class representatives and class counsel have adequately represented the class;

(B) the proposal was negotiated at arm's length;

(C) the relief provided for the class is adequate, taking into account:

(i) the costs, risks, and delay of trial and appeal;

(ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

(iii) the terms of any proposed award of attorney's fees, including timing of payment; and

(iv) any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other.

The Advisory Committee notes indicate that paragraphs (A) and (B) address procedural concerns, while (C) and (D) focus on a substantive review.

[21] Fed. R. Civ. P. 23(e)(2)(B); *see, e.g., Briseño*, 998 F.3d at 1023 (courts should "apply… *Bluetooth* factors to smoke out potential collusion" even when class has already been certified, citing *In re Bluetooth Headset Prods. Liability Litig.*, 654 F.3d 935 (9th Cir. 2011)); *see also Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 851 (N.D. Cal. 2010) (Walker, C.J.) ("To these [*Churchill*] factors, the court adds as a ninth factor to consider the procedure by which the settlement was arrived at." (citing *Manual for Complex Litig. (Fourth)* § 21.6 (2004)).

[22] *Garner v. State Farm Mut. Auto. Ins. Co.*, No. CV 08 1365 CW EMC, 2010 WL 1687832, at *9 (N.D. Cal. Apr. 22, 2010) (quoting *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 525-26 (C.D. Cal. 2004)).

[23] *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 255 (N.D. Cal. 2015) (quoting *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009)).

more than an amalgam of delicate balancing, gross approximations and rough justice."[24] Here, the strength of Plaintiffs' case supports settlement, given the "significant barriers plaintiffs must overcome in making their case."[25] "Antitrust cases are particularly risky, challenging, and widely acknowledged to be among the most complex actions to prosecute."[26] "[T]he history of antitrust litigation is replete with cases in which antitrust plaintiffs succeeded at trial on liability, but recovered no damages, or only negligible damages, at trial or on appeal."[27] "The 'best' case can be lost and the 'worst' case can be won, and juries may find liability but no damages. None of these risks should be underestimated."[28]

The amount of the proposed settlement "is generally considered the most important" factor.[29] But there is no "particular formula by which [the settlement] must be tested."[30] "[T]he very essence of a settlement is compromise, a yielding of absolutes and an abandoning of highest hopes."[31] Thus, "a proposed settlement may be acceptable even though it amounts to only a fraction of the potential recovery that might be available to the class members at trial."[32] And, although "the settlement class could conceivably extract more" at trial, it would be "at a plausible risk of getting nothing," and it is "not unreasonable for counsel and the class representatives to prefer the bird in hand."[33] The value

---

[24] *Id*. (quoting Rodriguez, 563 F.3d at 965).

[25] *Chun-Hoon*, 716 F. Supp. 2d at 851.

[26] *In re Lithium Ion Batteries Antitrust Litig.*, 13-MD-02420 (DMR), 2020 WL 7264559, at *15 (N.D. Cal. Dec. 10, 2020) (citing *Wal-Mart Stores, Inc. v, Visa U.S.A., Inc.*, 396 F.3d 96, 118 (2d Cir. 2005)).

[27] *In re NASDAQ Mkt.-Makers Antitrust Litig.*, 187 F.R.D. 465, 476 (S.D.N.Y. 1998).

[28] *In re Superior Beverage/Glass Container Consol. Pretrial*, 133 F.R.D. 119, 127 (N.D. Ill. 1990).

[29] *Bayat*, 2015 WL 1744342, at *4.

[30] *Rodriguez*, 563 F.3d at 965; *see also In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 130 (S.D.N.Y. 1997), *aff'd*, 117 F.3d 721 (2d Cir. 1997).

[31] *Officers for Justice*, 688 F.2d at 624.

[32] *Nat'l Rural Telecomm. Coop.*, 221 F.R.D. at 527.

[33] *In re Critical Path, Inc.*, No. C 01-00551, 2002 WL 32627559, at *7 (N.D. Cal. June 18, 2002) (also noting that while small, the settlement was "not unreasonable in light of the perils plaintiffs face in obtaining a meaningful recovery on their claims").

of injunctive relief is an important consideration.[34] Indeed, a settlement may be fair and reasonable

when it provides only for injunctive relief.[35] "When both [monetary and injunctive] relief are

valuable and substantial . . . the most important *Churchill Village* factor weighs strongly in favor of

final approval."[36]

The Complaint alleges three principal types of anticompetitive conduct: (1) an overall

anticompetitive scheme orchestrated by Gilead to monopolize certain cART drugs; (2) Gilead's

reverse payments to Teva Pharmaceuticals to delay entry of generic Truvada and Atripla;[37] and (3)

No-Generics Restraints on a number of drugs, including BMS drugs Atripla and Evotaz.[38] As to

Gilead's overall monopolization scheme, the Court dismissed Plaintiffs' claim that BMS can be

liable for participating in it.[39] As to the reverse payments, the Complaint does not allege, and

discovery did not reveal, that BMS participated in Gilead's decision to make those payments or

Teva's decision to accept them.

That leaves only the No-Generics Restraints on the BMS drugs Atripla and Evotaz.[40] Atripla

comprises BMS's Sustiva (efavirenz) and Gilead's Truvada (TDF and FTC). Gilead terminated the

collaboration agreement regarding Atripla—and thus terminated the No-Generics Restraint—

effective December 31, 2017, before a generic version of Gilead's Truvada became available in

September 2020.[41] That termination also occurred before the earliest date that Plaintiffs contend (for

---

[34] *In re TracFone Unlimited Serv. Plan Litig.*, 112 F. Supp. 3d 993, 1005 (N.D. Cal. 2015) (Chen, J.).

[35] *See Morrison v. Ross Stores, Inc.*, 4:18-CV-2671-YGR, 2021 WL 3852726, at *4 (N.D. Cal. Aug. 27, 2021); *Guttmann v. Ole Mexican Foods, Inc.*, 14-CV-04845-HSG, 2016 WL 9107426, at *3 (N.D. Cal. Aug. 1, 2016).

[36] *TracFone*, 112 F. Supp. 3d 993 at 1001.

[37] The Complaint also alleges that Gilead made a reverse payment to Teva with respect to a third drug, Viread. FAC ¶¶ 327-39. Plaintiffs are no longer pursuing that claim.

[38] FAC ¶¶ 104-28, 340-47.

[39] ECF No. 384, at 13-16.

[40] Further detail on the litigation risks with respect to the five damages classes and two injunctive relief classes is set forth in Plaintiffs' supplemental brief, ECF No. 726, at 3-7.

[41] First Shadowen Prel. App. Decl. ¶ 20.

purposes of calculating overcharge damages) that generic Truvada would have become available absent the reverse payments to Teva, i.e., February 2018.[42] Thus, the No-Generics Restraint on Atripla never had the anticompetitive effect of preventing BMS from making Atripla with generic TDF/FTC.

As for the sole remaining BMS anticompetitive conduct—the No-Generics Restraint on Evotaz—the Settlement Agreement provides very substantial relief. Evotaz comprises Gilead's cobicistat and BMS's Reyataz (atazanavir). BMS expected to encounter generic competition to Reyataz as early as August 2012, whereas Gilead's patents on cobicistat extend to September 2029.[43] The No-Generics Restraint on Evotaz was intended to protect BMS's ingredient long past its patent expiration.[44]

The Settlement Agreement requires BMS to forgo that protection. It requires BMS to forever waive the enforcement of the contractual provisions that prohibit Gilead from making, or licensing others to make, a version of Evotaz formulated with a generic version of BMS's component, atazanavir.[45] The relief will eliminate almost two-thirds of the effective life of the anticompetitive restraint. While the annual sales of Evotaz are relatively modest—$38 million to $68 million in the

---

[42] Declaration of Richard D. Frank, Ph.D., in Support of the Certification of Classes of End-Payors and the Calculation of Damages, ECF No. 694-2, Ex. 2 ("Frank Class Cert. Decl."), ¶ 112.

[43] FAC ¶¶ 118, 124-25.

[44] FAC ¶ 117.

[45] Settlement Agreement § 8. Eliminating the No-Generics Restraint will free Gilead to make a generic-based version of Evotaz. It is possible that Gilead will choose not to do so, as a strategic move in this litigation. *See, e.g.*, *In re Brand Name Prescription Drugs Antitrust Litig.*, 123 F.3d 599, 615 (7th Cir. 1997) (discounting evidence of defendants' conduct because action taken "after this litigation commenced … may be strategic"); *GPNE Corp. v. Apple, Inc.*, No. 12-CV-02885-LHK, 2014 WL 1494247, at *9 (N.D. Cal. Apr. 16, 2014) ("[L]itigation itself can skew the results of the hypothetical negotiation.") (quoting *ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 872 (Fed. Cir. 2010)). If that happens, Plaintiffs will seek additional injunctive relief against Gilead with respect to Evotaz. *See, e.g.*, Class Cert. Brief, ECF No. 694-1, at 32-33; Expert Report of Dr. Russell L. Lamb, ECF No. 694-2, Exhibit 3 ¶¶ 54-87 (defining relevant market for Evotaz).

U.S.[46]—one of Plaintiffs' goals is to eliminate all of the No-Generics Restraints at issue in this litigation; the Evotaz restraint is the only one to which BMS is currently a party.

In addition, under the proposed allocation plan the consumer members of the Evotaz class will receive $1.25 million of the $10 million in cash that BMS is paying. The amount paid to those consumers is at least 100% of their aggregate damages.[47] That percentage of course well exceeds the ranges that courts have deemed to be fair and adequate.[48]

The allocation plan also provides for the consumer members of the Atripla class to receive $1.25 million for forgoing the possibility of getting appellate reversal of this Court's decision that BMS is not liable for participating in Gilead's overall monopolization.  In addition, $5 million will be divided among the TPP purchasers of Evotaz, as well as of Atripla, Truvada, Complera, and Stribild (also for forgoing the possibility of getting appellate reversal on the overall monopolization issue).[49] And the plan provides an additional $2.5 million to be used to defray some of the costs of

---

[46] *See* First Shadowen Prel. App. Decl. Ex. 6, Declaration of Richard D. Frank, Ph.D. on the Calculation of Damages for Third-Party Payor Purchasers of Evotaz, ECF No. 711-7 ("Frank Evotaz Decl.") ¶ 11(a).

[47] *See id*. ¶ 10, Table 1 (TPP damages in *Illinois-Brick* repealer States are $7.5 million, and TPPs pay 94% of the cost of Evotaz, while consumers pay 6%). The damages are modest because Evotaz's sales are modest.

[48] *See, e.g.*, *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) (affirming preliminary approval of class settlement representing approximately one-sixth of potential recovery); *In re LendingClub Sec. Litig.*, Nos. C 16-02627, C 16-02670, C 16-03072, 2018 WL 1367336, at *2 (N.D. Cal. Mar. 16, 2018) (granting preliminary approval of settlement representing approximately 17% of the maximum recoverable at trial); *Brown v. CVS Pharm., Inc.*, No. 15-cv-7631, 2017 WL 3494297, at *4 (C.D. Cal. Apr. 24, 2017) (recovery of 27% of class's potential damages is "well within the range of possible approval"); *Glass v. UBS Fin. Servs., Inc.*, No. C 06-4068, 2007 WL 221862, at *4 (N.D. Cal. Jan. 26, 2007) (preliminarily approving settlement amount constituting 25%–35% of recoverable damages).

[49] It is not yet possible to determine what percentage of their damages the TPP purchasers of Evotaz will recover, because the allocation plan defers the allocation until Plaintiffs have recovered additional amounts, if any, from the other defendants.

the litigation—which benefits all of the classes, including the injunction classes for purchasers of Prezcobix and cART Foundation drugs.[50]

In short, the Settlement Agreement provides to Plaintiffs virtually everything they could realistically get from BMS in this litigation. It does so with decisive structural relief and with a cash recovery that is immediate and not subject to litigation risk.  The range of average claim payouts for consumer members of the Atripla Damages Class and Evotaz Damages Class is estimated to be $70.50 to $282.00, providing an excellent result for these consumers.[51]

In exchange, the releases granted to BMS are narrowly tailored to the allegations at issue in the litigation.[52] The Settlement release here extends beyond the specific claims asserted in the Complaint, but only to encompass potential claims that "arise out of the facts, occurrences, transactions, or other matters alleged or asserted in this Action, whether known or unknown."[53] This is an appropriate release. The Ninth Circuit recognizes that a release may properly extend to "claims not alleged in the underlying complaint where those claims depended on the same set of facts as the claims that gave rise to the settlement." *Hesse v. Sprint Corp.*, 598 F.3d 581, 590 (9th Cir. 2010).

Although Class Counsel have always been (and remain) confident in the strength of the Classes' claims, there was no guarantee that a jury would have found in favor of the Classes against BMS or that Plaintiffs would obtain appellate reversal of the Court's dismissal of claims against BMS (or that Plaintiffs would prevail on the merits after any reversal). Given the risk of no or substantially reduced recovery—a risk that would persist even after a lengthy and costly trial,

---

[50] See the discussion below of the Plan of Allocation.

[51] *See* Short Form Notice, ECF No. 780-1.

[52] *See, e.g.*, *Torres v. Pick-A-Part Auto Wrecking*, No. 16-cv-01915, 2018 WL 306287, at *3 (E.D. Cal. Jan. 5, 2018) (finding no obvious deficiencies in proposed agreement providing for non-reversionary cash fund to be divided among class members who submit valid claims and release of liability narrowly tailored to the claims); *Nen Thio v. Genji, LLC*, 14 F. Supp. 3d 1324, 1334 (N.D. Cal. 2014) (finding no obvious deficiencies in settlement agreement where scope of release, while broad, was limited to claims based on the facts set forth in the complaint).

[53] Settlement Agreement §1(n).  Moreover, consumers retain individual rights to pursue claims with respect to any drugs others than Evotaz and Atripla. *Id.*

appellate reversal of the dismissed claims, followed by another lengthy and costly trial—the relief provided to the Classes is substantial.[54]  Accordingly, the First, Second, and Fourth *Churchill* factors strongly support final approval.

### 2.    Factor (3): The Risk of Maintaining Class Action Status Throughout the Trial

The Court certified seven EPP classes for the purposes of this settlement only;[55] otherwise, the EPP classes have not yet been certified, and Defendants will mount a vigorous defense to certification. "[T]here is a chance that, should litigation continue and [Defendant] opposes class certification, the action would not be maintained as a class. Thus, the risk of never obtaining or losing class status in the absence of settlement weighs in favor of approval."[56] Moreover, in the event that the classes are certified, "[e]ven after a certification order is entered, the judge remains free to modify it in light of subsequent developments."[57] And Defendants would be expected to try to immediately appeal a class-certification order.[58] Therefore, the risk of the EPP classes not being certified in this matter, as well as the risk of subsequent decertification, cut in favor of the settlement.

### 3.    Factor (5): The Extent of Discovery Completed and the Stage of the Proceedings

The stage of the proceedings also supports settlement.[59] The proposed settlements were reached following extensive investigation of and discovery on the merits of the case, including

---

[54] *See Smith v. Am. Greetings Corp.*, No. 14-cv-02577, 2015 WL 4498571, at *7 (N.D. Cal. July 23, 2015) (evaluating recovery in view of trial hurdles faced by class); *Bellinghausen v. Tractor Supply Co.*, 303 F.R.D. 611, 624 (N.D. Cal. 2014) ("The Court considers that even if 'Plaintiffs were to prevail, they would be required to expend considerable additional time and resources potentially outweighing any additional recovery obtained through successful litigation,' and these delays will affect 'payment to the Class Members and increase the amount of attorneys' fees.'" (quoting *Collins v. Cargill Meat Sols. Corp.*, 274 F.R.D. 294, 302 (E.D. Cal. 2011)).

[55] Preliminary Approval Order, ECF No. 782.

[56] *In re Linkedin User Priv. Litig.*, 309 F.R.D. 573, 587 (N.D. Cal. 2015).

[57] *Dukes v. Wal-Mart Stores, Inc.*, 603 F.3d 571, 579 (9th Cir. 2010) (citing *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982), *rev'd on other grounds*, 564 U.S. 338 (2011)).

[58] This factor considers "the risk of maintaining class action status throughout trial and on appeal." *Banks v. Nissan N. America, Inc.*, 11-cv-2022-PJH, 2015 WL 7710297, at *9 (N.D. Cal. 2015).

[59] "A settlement is presumed fair if it follows sufficient discovery and genuine arms-length negotiation." *Newell v. Ensign United States Drilling (California) Inc.*, No. 1:19-cv-01314-NONE-

-11-

1   reviewing more than 700,000 unique documents produced by the Defendants, with 105,354 unique

2   documents produced by BMS.[60] When this Agreement was reached, Counsel for the End-Payor

3   Classes had expended more than 35,900 hours, at a value of more than $21.3 million, developing and

4   preparing the Plaintiffs' case.[61] Counsel further had the benefit of the detailed briefing and decisions

5   on the motions to dismiss the Complaint and of extensive expert analyses.[62]

6           **4.      Factor (6): The Experience and Views of Counsel**

7           "The recommendations of plaintiffs' counsel should be given a presumption of

8   reasonableness."[63] In approving proposed class settlements, "courts afford great weight . . . to the

9   recommendation of counsel, who are most closely acquainted with the facts of the underlying

10  litigation."[64] After reviewing their credentials, the Court previously appointed Daralyn Durie of

11  Durie Tangri LLP, Steve Shadowen of Hilliard & Shadowen LLP, and Steve Berman of Hagens

12  Berman Sobol Shapiro LLP as Settlement Class Counsel.[65] These firms have decades of experience

13  representing classes of end-payors in pharmaceutical antitrust cases,[66] and, as the Court has seen

14  first-hand, have vigorously and effectively prosecuted this case. The proposed settlement has the

15  imprimatur of Class Counsel and is unanimously supported by the class representatives.[67] This factor

16  weighs in favor of final approval.

17  JLT, 2021 WL 6000227, at *12 (E.D. Cal. Dec. 20, 2021) (cleaned up); *Sandoval Ortega v. Aho
18  Enters., Inc.*, No. 19-cv-00404-DMR, 2021 WL 5584761, at *7 (N.D. Cal. Nov. 30, 2021) (same).

    [60] First Shadowen Prel. App. Decl. ¶ 12.

19  [61] *Id.* ¶ 11.

20  [62] *Id.* ¶ 13.

21  [63] *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2007) (internal quotation
    marks and citation omitted).

22
    [64] *Nat'l Rural Telecomms. Coop.*, 221 F.R.D. at 528 (quoting *In re Painewebber Ltd. P'ships Litig.*,
23  171 F.R.D. 104, 125 (S.D.N.Y. 1997)); *see also, e.g., Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th
    Cir. 1995) ("Parties represented by competent counsel are better positioned than courts to produce a
24  settlement that fairly reflects each party's expected outcome in the litigation.").

25  [65] Preliminary Approval Order, ECF No. 782 at ¶ 15.

26  [66] *See* Plaintiffs' Motion for Appointment of Interim Co-Lead Class Counsel, ECF No. 100 at 5-9.

    [67] *See* First Shadowen Prel. App. Decl. ¶ 10.
27

28                                              -12-

### 5. Factor (7): The Presence of a Governmental Participant

The Class Action Fairness Act requires notice of a settlement be given to the Department of Justice and affected states with time to comment prior to final approval of the settlement.[68] "CAFA presumes that, once put on notice, state or federal officials will raise any concerns that they may have during the normal course of the class action settlement procedures."[69] Here, the Department of Justice and all attorneys general of affected states received CAFA notices of the settlements from BMS.[70] The time for response has passed and no government participant has raised any concern. This factor supports final approval of the settlement.[71]

### 6. Factor (8): The Reaction of Class Members to the Proposed Settlement

Of the more than a hundred thousand consumers that are estimated to have received notice,[72] only two consumer class members opted out. Eight health insurance companies, on behalf of themselves, their subsidiaries, and administrative services clients (amounting to 2,481 TPP Class Members) also opted out, along with seven other TPPs.[73]  And only one class member (a consumer) has raised objections to the settlement.[74]  While the claims submission window for TPPs has not yet opened, to date, 8,283 consumer claims have been submitted.[75] These facts strongly support final

---

[68] See 28 U.S.C. § 1715(b).

[69] *Garner*, 2010 WL 1687832, at *14.

[70] Declaration of Steve D. Shadowen in Support of Final Approval ("Shadowen Final App. Decl.") ¶ 5.

[71] *See In re Cathode Ray Tube (CRT) Antitrust Litig.*, MDL No. 1917, 2016 WL 721680, at *19 (N.D. Cal. Jan. 28, 2016); *In re LinkedIn User Privacy Litig.*, 309 F.R.D. 573, 588-89 (N.D. Cal. 2015).

[72] See description of notice program *infra* and Declaration of Eric Miller ("Miller Decl.") ¶¶ 3-11, attached as Exhibit A to the Shadowen Final App. Decl.; *see also* Declaration of Richard G. Frank, Ph.D. Estimating the Number of Consumers of Specified Gilead cART Drugs, ECF No. 726-9 ("Frank Supp. Decl.").

[73] Miller Decl. ¶ 12. Notably, these eight health insurance companies (represented by the same attorneys) have brought their own claims against not only BMS, but also Gilead and Janssen, basing their claims on those pioneered by the EPPs. Their opting out of the BMS settlement appears to be part of their overall strategy to bring their own claims, not a negative reaction to this Settlement.

[74] *Id.*

[75] A.B. Data has not yet investigated the veracity of the claims filed.

approval of the settlement.[76] The sole objector indicated that he "support[s] approval of the settlement"[77] and considers it "fair, adequate, and reasonable,"[78] but raised four concerns: (1) the protection of the identities of class members who choose to object, opt-out, or file a claim; (2) the lack of direct mail or email notice to potential consumer class members; (3) perceived inadequate targeting of the publication notice to the HIV positive community; and (4) the forthcoming request by Class Counsel for approval from the Court to use $2.5 million of the Settlement Fund to defray reasonable ongoing litigation costs.  As set forth next, EPPs modified their notice program to address the objector's first concern.  The objector's other concerns lack merit and are addressed below in the discussion of notice and the plan of allocation.

EPP counsel share the objector's concern regarding class members' privacy.  Although there was no indication that the original Notice approved by the Court deterred anyone from objecting or opting out, or would deter them from filing a claim, out of an abundance of caution EPPs moved the Court on February 11, 2022 to modify the Long-Form Notice to stress that class members' identities would not be made public without consent.[79] The Court granted the Motion,[80] and the amended Long-Form Notice was promptly uploaded to the settlement website, www.hivdrugsettlement.com.[81] Additionally, the landing page of the website, the claim filing page of the website, and the page containing the printable claim form were amended to feature prominently the statement

---

[76] *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) (approving settlement with one objection from a class of 5,400 members); *Rodriguez*, 563 F.3d at 967 ("The court had discretion to find a favorable reaction to the settlement among class members given that, of 376,301 putative class members to whom notice of the settlement had been sent, 52,000 submitted claims forms and only fifty-four submitted objections."); *Marshall v. Holiday Magic, Inc.*, 550 F.2d 1173, 1178 (9th Cir. 1977) (approving settlement where one percent of the class objected); *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 624 (N.D. Cal. 1979) (objections from only 16% of class was held "persuasive" of settlement's adequacy).

[77] ECF No. 857 at 1.

[78] *Id*. at 3.

[79] Motion to Modify Long-Form Notice, ECF No. 870.

[80] ECF No. 782.

[81] ECF No. 870-3.

"CONSUMER CLASS MEMBERS CAN OBJECT TO THE SETTLEMENT, OPT OUT OF THE SETTLEMENT, OR MAKE A CLAIM WITHOUT THEIR IDENTITIES BEING MADE PUBLIC."[82] In response, the objector wrote to the Court that he supports these modifications and "appreciate[s] the settling parties have taken a proactive step to responsibly deal with the privacy issue."[83] In addition to these amendments, Class Counsel requested in its February 11, 2022 Motion—and the Court approved—an objection and opt-out deadline extension of 22 days.[84]

**7.    The Settlement Was the Result of Arms'-Length Negotiations and Raises No Concerns Under *Bluetooth***

The Settlement was the result of arm's-length, non-collusive negotiations.[85] The parties began negotiations on March 24, 2021, and they accelerated and intensified throughout the Summer, leading to an agreement in principle reached on September 1, 2021.[86] The parties had sufficiently developed their claims and defenses, enabling both sides to negotiate with a fulsome understanding of the strengths and weaknesses of their cases.  The proposed settlement raises no collusion red flags under *Bluetooth*.[87] Class counsel do not and will not seek any attorneys' fees from the settlement amount, and the proposed settlement does not allow for a reversion of any settlement funds to BMS. Moreover, the Settlement does not request any incentive awards for the Class representatives (though they would have been justified by the work performed and service provided by these representatives).

---

[82] *See* www.hivdrugsettlement.com; https://www.hivdrugsettlement.com/FileClaim; https://www.hivdrugsettlement.com/Home/ClaimForms.

[83] ECF No. 888.

[84] ECF No. 871.

[85] *See* First Shadowen Prel. App. Decl. ¶ 14.

[86] *Id*.

[87] *Bluetooth*, 654 F.3d at 947; see *Rodriguez*, 563 F.3d at 965 ("We put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution.").

**B.      Notice of the Settlement Complied with the Court's Preliminary Approval Order and Applicable Law**

Federal Rule of Civil Procedure 23(e)(1) requires the Court to "direct notice in a reasonable manner to all class members who would be bound by the proposal." The notice of settlement must fairly inform class members of the settlement and their options,[88] and "[n]otice is satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard."[89] The notice program that the Court approved and that the Claims Administrator implemented meets this standard and is consistent with the District's Procedural Guidance for Class Action Settlements.

The Notice[90] provides clearly and concisely in plain, easily understood language, a description of: the Classes, at 2-3 and 8-9, the claims contained in the lawsuit and the procedural status of the litigation, at 5-6, the significant terms of the proposed settlement, including the total amount of money that BMS agreed to pay to settle the claims and the injunctive relief obtained, at 6, the releases, at 7-8, the pro rata plan of allocation, at 10, the rights of Class Members under Rule 23 (and deadlines for exercising those rights), including the right to opt out or object and be heard as to the reasonableness and fairness of the proposed settlement, at 3-4 and 11-12, and the contact information of Class Counsel and the website address for obtaining a full copy of the Settlement Agreement and key pleadings, at 13-14.[91]

The manner of dissemination of the settlement notice complies with Fed. R. Civ. P. 23(c)(2)(B), which requires "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." EPPs and A.B.

---

[88] *See Manual* § 21.312 (the notice must "describe clearly the options open to the class members and the deadlines for taking action").

[89] *Uschold v. NSMG Shared Servs.*, LLC, 333 F.R.D. 157, 172 (N.D. Cal. 2019) (quoting *Churchill Vill., LLC v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004)).

[90] ECF No. 870-3.

[91] *Cf. Kudatsky*, 2021 WL 5356724, at *3 (notice approved where it "informed class members about all key aspects of the settlement, the date, time, and place of the fairness hearing, the process for objection and opt-out, and estimated recovery in settlement").

1   Data fully complied with the Notice Plan approved by the Court, which comprised mailing the

2   approved Short-Form Notice to over 42,000 TPPs,[92] engaging in a robust digital media campaign

3   specifically catered to reach consumer class members, and distributing a press release via PR

4   Newswire to approximately 10,000 newsrooms across the country.[93]

5          The sole objector asserts that the manner of notice to the Atripla consumers class is

6   inadequate.[94] He makes two points. He maintains that A.B. Data's digital media campaign was not

7   adequately tailored to reach the HIV-positive community.[95] However, as indicated when the Court

8   ordered Preliminary Approval of this Settlement, industry experts MRI-Simmons, Comscore, and the

9   Alliance for Audited Media supported A.B. Data's estimate that the approved Notice Plan, delivering

10  a minimum of 300 million impressions, would notify 73.5% of class members of the proposed

11  settlement.[96]  Having actually delivered over 450 million digital impressions, A.B. Data confirms

12  that at least 73.5% of consumer class members were notified.[97] The Notice Plan's employment of

13  Google Display Networks and Google AdWords, Facebook, Instagram, YouTube and Twitter was

14  calculated to have digital notice be "highly targeted, specifically delivered to the social media feeds,

15  visited websites, and apps of potential Class Members."[98] Extensive behavioral and interest targeting

16  was utilized to specifically reach members of the LGBTQ community.[99]  Additionally, A.B. Data ran

17  a 30-day campaign on specific websites such TheAdvocate.com, lgbtqnation.com, TheBody.com,

18  Instinct.com, queerty.com, TheNewCivilRightsMovement.com, and many others.[100]

19

20  [92] 759 notices were returned as undeliverable, and 677 were remailed.  Miller Decl. ¶ 11,

21  [93] Declaration of Linda V. Young ("Young Decl."), ECF No. 711-8 at ¶¶ 6-12.

22  [94] ECF No. 857 at 3.

23  [95] Id. at 4.

24  [96] Young Decl. ¶¶ 12, 19.

24  [97] Miller Decl. ¶ 11.

25  [98] Young Decl. ¶ 9; Miller Decl. ¶ 4.

26  [99] Miller Decl. ¶ 4 (describing targeting in detail).

27  [100] Id. at ¶ 14.

28

-17-

The objector also insists that Plaintiffs should have sent direct notice via mail or email to Atripla patients using the names and addresses Defendants would possess through their Atripla patient assistance program.[101] However, courts in the Ninth Circuit commonly find publication notice to consumer class members in class action lawsuits to be the best notice practicable.[102] As noted above, through its robust Court-approved media campaign, A.B. Data estimates that at least 73.5% of consumer class members received notice of the proposed settlement.[103] Moreover, the patient assistance program covers only ████ fraction—██████—of Atripla patients[104] and, as the objector recognizes, patients receiving medication "free of charge" are not eligible to submit a claim.[105] Accordingly, such additional notice is not cost-beneficial.[106] Indeed courts recognize that notice to an under-inclusive fraction of the universe of class members is improper under Rule 23.[107]

---

[101] ECF No. 857 at 3.

[102] *See, e.g., In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078 (N.D. Cal. 2007); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 3:07-MD-1827 SI, 2015 WL 12912348 (N.D. Cal. Nov. 2, 2015); *Schneider v. Chipotle Mexican Grill, Inc.*, 16-CV-02200-HSG, 2019 WL 1512265 (N.D. Cal. Apr. 8, 2019); *Beck-Ellman v. Kaz USA, Inc.*, 3:10-CV-02134-H-DHB, 2013 WL 1748729 (S.D. Cal. Jan. 7, 2013).

[103] Miller Decl. at ¶ 11.

[104] *See* Frank Class Cert. Decl., ECF No. 694-2, Ex. 2, ¶ 38 (calculating that in 2018, only ██ of Atripla prescriptions were covered by the patient assistance program). There were an estimated 229,297 unique Atripla patients during the class period. *See* Frank Supp. Decl., ECF No. 726-9, ¶ 4.

[105] ECF No. 857 at 3; *see* Revised Plan of Allocation, ECF 726-8, § 1.4 ("consumers who did not have any unreimbursed out of pocket expense for Atripla or Evotaz [are] not eligible for any recovery").

[106] The use of the patient assistance information for notice also raises privacy concerns. *See* https://www.rxhope.com/PAP/pdf/atripl1099.pdf.*id.* (noting limited circumstances for which information may be used).

[107] *See, e.g., Jermyn v. Best Buy Stores, L.P.*, 08 CIV. 00214 CM, 2010 WL 5187746 at *5, *7 (S.D.N.Y. Dec. 6, 2010) (notice via text message to reward card members is inadequate when class includes broader set of Best Buy customers, so "publication notice is therefore the only method for informing class members of the pending action"); *In re Dom. Air Transp. Antitrust Litig.*, 141 F.R.D. 534, 553 (N.D. Ga. 1992) (holding consumer notice through publication only is adequate, and "any further expenditure of funds in an attempt to compile a list . . . which at best would represent only a small fraction of the class would be ill-advised"); *In re Motor Fuel Temperature Sales Practices Litig.*, 279 F.R.D. 598, 618 (D. Kan. 2012) (approving publication notice to the class when "[t]he

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**C.      The Proposed Allocation Plan is Fair, Reasonable, and Adequate**

Approval of a plan to allocate settlement proceeds is governed by the same standard as approving a settlement as a whole: the plan must be "fair, reasonable and adequate."[108] A plan of allocation "need only have a reasonable, rational basis, particularly if recommended by experienced and competent counsel."[109] An allocation plan that "reimburses class members based on the type and extent of their injuries" is reasonable.[110] Courts in this district routinely approve plans to distribute settlement funds on a pro rata basis.[111] "Indeed, in this District, "a 'pro-rata [plan] for allocation has been used in many antitrust cases.'"[112]

---

parties have agreed that identifying individual class members would require unreasonable effort because mailing lists, if available, would include only a small percentage of the class . . .")

[108] *In re Citric Acid Antitrust Litig.*, 145 F. Supp. 2d 1152, 1154 (N.D. Cal. 2001).

[109] *In re Nexus 6P Products Liability Litig.*, No. 17-cv-02185-BLF, 2019 WL 6622842, at *9 (N.D. Cal. Nov. 12, 2019) (internal quotation marks omitted); *see also In re: Cathode Ray Tube (CRT) Antitrust Litig.*, No. C-07-5944 JST, 2016 WL 6778406, at *3 (N.D. Cal. Nov. 16, 2016) (noting that "although it is possible that a more precise allocation plan could be fashioned, undertaking such an effort would be time-consuming and costly" and "the standard of review requires only an allocation plan that has a reasonable, rational basis; it does not require the best possible plan of allocation") (internal quotation marks omitted).

[110] *Citric Acid*, 145 F. Supp. 2d at 1154.

[111] *See, e.g.*, *Acosta v. Frito-Lay, Inc.*, No.15-cv-02128, 2018 WL 646691, at *8 (N.D. Cal. Jan 31, 2018) (finding no preferential treatment where proposed allocation plan entitled each class member to claim their pro rata share of settlement fund based on number of workweeks worked during class period); *In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. C-07-5944, 2016 WL 3648478, at *15 (N.D. Cal. July 7, 2016) ("[T]he allocation plan appears to have a reasonable, rational basis, and fairly treats class members by awarding each a pro rata share . . . ."); *Gaudin v. Saxon Mortg. Servs., Inc.*, No. 11-cv-01663, 2015 WL 7454183, at *8 (N.D. Cal. Nov. 23, 2015) (finding proposed plan to distribute net settlement fund fairly "award[ed] a pro rata share to class members based on the extent of their injuries"); *In re Zynga Inc. Sec. Litig.*, No. 12-cv-04007, 2015 WL 6471171, at *12 (N.D. Cal. Oct. 27, 2015) ("A settlement in a securities class action case can be reasonable if it fairly treats class members by awarding a pro rata share to every Authorized Claimant . . . . (quoting *Vinh Nguyen v. Radient Pharm. Corp.*, No. 11-cv-00406, 2014 WL 1802293, at *5 (C.D. Cal. May 6, 2014))); *Booth v. Strategic Realty Tr., Inc.*, No. 13-cv04921, 2015 WL 6002919, at *7 (N.D. Cal. Oct. 15, 2015) (finding the plaintiffs' proposed allocation plan "'fairly treats class members by awarding a pro rata share' to each class member" (quoting *In re Heritage Bond Litig.*, No. 02-ml-2475, 2005 WL 1594403, at *11 (C.D. Cal. June 10, 2005))).

[112] *Cathode*, No. 07-cv-5944, 2016 WL 721680, at *21 (quoting *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. 07-md-1827, 2011 WL 75750004, at *4 (N.D. Cal. Dec. 27, 2011))).

In summary, the Allocation Plan[113] allocates the Settlement Fund as follows:

1.      A total of $2.5 million will be distributed to the consumer members of the Atripla Damages Class and the consumer members of the Evotaz Damages Class. The net amount, after the cost of claims administration, will be allocated 50% to the consumer members of the Atripla Damages Class, and 50% to the consumer members of the Evotaz Damages Class. Allocation Counsel determined that, while the purchases of Atripla far exceed those of Evotaz, the classes' claim against BMS for Evotaz are far stronger than for Atripla. Each claimant's recovery will be limited to his or her total unreimbursed costs of Atripla and Evotaz purchases during the class period. Any amount remaining from the $2.5 million allocated to these consumers will be re-allocated to the Complera Damages Class, the Stribild Damages Class, the Truvada Damages Class, and the TPP members of the Atripla Damages Class and the TPP members of the Evotaz Damages Class.[114] In no event will those funds revert to BMS.  Based on the Settlement Administrator's estimate of the likely number of consumer claimants, the average payout to eligible consumer members of the settlement classes for Atripla and Evotaz may range from $70.50 to $282.00.[115]

2.      A total of $5 million will be distributed to the Complera Damages Class, the Stribild Damages Class, the Truvada Damages Class (none of which include consumers), and the TPP members of the Atripla Damages Class and the TPP members of the Evotaz Damages Class. The allocation of the net amount among these classes will be decided by the Court at a later date, and the distributions will likewise be deferred, so that these funds can be combined and distributed together with any additional amounts that the classes might recover from Gilead and Janssen in this litigation. These class members will receive additional notice at a later date, and will have an opportunity to object to and be heard in connection with the proposed plan of distribution at that time.

---

[113] Second Shadowen Prel. App. Decl., Ex. 7, Plan of Allocation, ECF No. 726-8.

[114] Plan of Allocation, ECF No. 726-8 at ¶ 1.8.

[115] *See supra* note 51.

3.      $2.5 million will be used to reimburse and pay Court-approved litigation expenses (e.g., expert-witness fees) incurred by the End-Payor Classes. Such a reimbursement is fair, particularly in light of the fact that as of the date of the preliminary approval filing, Plaintiffs had incurred more than $3.3 million in such expenses and Plaintiffs are not seeking any attorneys fees out of this recovery.[116] The objector claims that it is unfair that these expenses may be used to benefit the litigation damages classes going forward, of which consumers will not be members.[117] But, as EPPs previously explained, the allocation of $2.5 million to Evotaz and Atripla consumers was designed precisely to address this circumstance.[118] EPPs have separately explained to the Court in an in camera filing why consumers are not included in the damages classes going forward. The objector's concern that there is no detailed explanation of these expenses will be allayed when Class Counsel later ask the Court to approve reimbursement of them.[119] The Court knows that expert expenses in antitrust cases are significant, and that is certainly true here.[120]

Within each damages class, the Plaintiffs will calculate each Class Member's allocation *pro rata* based on the proportion of that Class Member's volume of net unit purchases, from May 14, 2015 through and until October 13, 2021, of all Class Members' qualifying purchases during the

---

[116] First Shadowen Prel. App. Decl. ¶ 11.

[117] ECF No. 857 at 5.

[118] EPPs' motion for preliminary approval explained: "The consumer members of the Atripla Damages Class and the Evotaz Damages Class will not otherwise receive a monetary recovery from the ongoing litigation of the End-Payor Class Plaintiffs' damages claims against Gilead and Janssen, because Class Counsel have determined that the best litigation strategy is to not include individual consumers in any of the litigation damages classes against those defendants. The Plan's allocation of $2.5 million for litigation expenses may be used to benefit litigation damages classes of which these consumers will not be members. The Plan therefore allocates a corresponding $2.5 million to these consumers in order to protect them from any unfairness." EPPs' Motion for Preliminary Approval ("Prel. App. Motion") at 14 n.64.

[119] EPPs' Motion for Preliminary Approval ("Prel. App. Motion") at 14.

[120] *See, e.g.*, *In re: High-tech Employee Antitrust Litig.*, 11-CV-2509-LHK, 2014 WL 10520478 (N.D. Cal. May 16, 2014) (class litigation expenses of $3.7); *In re Lidoderm Antitrust Litig.*, 14-MD-02521-WHO, 2018 WL 11375216 (N.D. Cal. Sept. 20, 2018) (class litigation expenses of $2.3 million).

-21-

class period.[121] Each Claimant will be required to execute and return a Claim Form to receive any distribution from the Net Settlement Fund.[122] The proposed Allocation Plan fairly and appropriately reimburses Class Members on a *pro rata* basis, based on the extent of their injuries. The Allocation Plan is similar to other court-approved *pro rata* allocation plans in cases involving alleged overcharges from impaired generic competition[123] and can be efficiently implemented. Plaintiffs anticipate a 10% claims filing rate for the consumers.[124] That estimate is based on comparisons to similar settlements, as well as considerations that include the comprehensive direct notice efforts, the simplicity of the Claim Form and claim submission process, and the anticipated earned media that this Settlement will garner.[125]

---

[121] *See* Plan of Allocation § 1.7.

[122] Plan of Allocation § 1.5.

[123] *See, e.g.,  In re Restasis (Cyclosporine Ophthalmic Emulsion) Antitrust Litig.*, No. 18-md-2819 (E.D.N.Y.), ECF Nos. 490-7, 562 (approved Oct. 7, 2020); *In re Loestrin 24 Fe Antitrust Litig.*, No. 13-md-2472 (D.R.I.), ECF Nos. 1396-8, 1462 (approved Sept. 1, 2020); *In re Lidoderm Antitrust Litig.*, No. 14-md-2521 (N.D. Cal.), ECF Nos. 1004-5, 1004-6, 1054 (approved Sept. 20, 2018); *In re Solodyn (Minocycline Hydrochloride) Antitrust Litig.*, No. 14-md-2503, (D. Mass.), ECF Nos. 1163-4, 1179 (approved July 18, 2018); *In re Celebrex (Celecoxib) Antitrust Litig.*, No. 14-cv-361 (E.D. Va.), ECF Nos. 609-4, 630 (approved Apr. 18, 2018); *In re Aggrenox Antitrust Litig.*, No. 14-md-2516 (D. Conn.), ECF Nos. 733-1, 740 (approved Dec. 19, 2017); *In re Asacol Antitrust Litig.*, No. 15-cv-12730 (D. Mass.), ECF Nos. 419-9, 648) (approved Dec. 7, 2017); *King Drug Co. of Florence, Inc. v. Cephalon, Inc.*, No. 06-cv-1797 (E.D. Pa.), ECF Nos. 864-17, 870 (approved Oct. 15, 2015).

[124] *See* Second Shadowen Prel. App. Decl., Ex. 10, attaching Decl. of Linda V. Young ("Second Young Decl."), ECF No. 726-11, at ¶ 3. The actual number of claims paid to consumers here may be modest, because most consumers do not pay out-of-pocket for these drugs. *See* Frank BMS Decl., ECF No. 711-7, ¶ 12, Table 3. Consumers suffer additional injury in the form of lack of product choice, inferior product quality, and delayed and dampened innovation; for those reasons among others, the consumers are included in the litigation classes for injunctive relief.  A.B. Data estimated that the cost of providing notice would be $370,000 (half of which BMS will pay), and the costs of administering the consumer claims would be in the range of $70,000 to $130,000. Young Decl.  ¶ 18. *See also* EPP Mtn. for Prel. App. at 15 n.69 (describing past distribution in comparable class settlement as required by the Procedural Guidance at § 11).

[125] Young BMS Decl., ECF No. 711-8 at ¶¶ 19-20.

-22-

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### III.   CONCLUSION

For the foregoing reasons, the Court should grant final approval of the settlements and direct the settlement administrator to begin the final administration of the settlements. A proposed order granting final approval and dismissing the claim with prejudice is submitted herewith.

Dated: April 11, 2022                                              Respectfully submitted,

**For the End-Payor Classes:**

_/s/ Steve D. Shadowen_

HILLIARD & SHADOWEN LLP
Steve D. Shadowen (*pro hac vice*)
steve@hilliardshadowenlaw.com
1135 W. 6th Street, Suite 125
Austin, TX 78703
Telephone: (855) 344-3298
Facsimile: (361) 882-3015

DURIE TANGRI LLP
Daralyn J. Durie (SBN 169825)
ddurie@durietangri.com
217 Leidesdorff Street
San Francisco, CA 94111
Telephone: (415) 362-6666
Facsimile: (415) 236-6300

HAGENS BERMAN SOBOL SHAPIRO LLP
Steve W. Berman (p*ro hac vice*)
steve@hbsslaw.com
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 11, 2022, the within document was filed with the Clerk of the Court using CM/ECF which will send notification of such filing to the attorneys of record in this case.

Dated: April 11, 2022

_/s/ Steve D. Shadowen_____
Steve D. Shadowen