1   Francis O. Scarpulla (Cal. Bar 41059)
    Patrick B. Clayton (Cal. Bar 240191)
2   **LAW OFFICES OF**
    **FRANCIS O. SCARPULLA**
3   3708 Clay Street
    San Francisco, CA 94118
4   Telephone: (415) 751-4193
    Facsimile: (415) 751-0889
5   fos@scarpullalaw.com
    pbc@scarpullalaw.com
6
7   *Interim Liaison Counsel for the*
    *Proposed Direct Purchaser Class*

8   Dianne M. Nast
    Michele Burkholder
9   **NASTLAW LLC**
    1101 Market Street, Suite 2801
10  Philadelphia, PA 19107
    Telephone: (215) 923-9300
11  Fax: (215) 923-9302
    dnast@nastlaw.com
12
13  Michael L. Roberts
    Erich Schork
14  **ROBERTS LAW FIRM US, PC**
    1920 McKinney Avenue, Suite 700
15  Dallas, TX 75201
    Telephone: (501) 952-8558
16  mikeroberts@robertslawfirm.us

17  *Interim Co-Lead Counsel for the*
    *Proposed Direct Purchaser Class*

18              IN THE UNITED STATES DISTRICT COURT
              FOR THE NORTHERN DISTRICT OF CALIFORNIA
19                    SAN FRANCISCO DIVISION

20  STALEY, *et al.*,                          Case No. 3:19-cv-02573-EMC (lead case)
                              Plaintiffs,
21        v.                                   **NOTICE OF MOTION AND MOTION**
                                               **FOR PRELIMINARY APPROVAL OF**
22  GILEAD SCIENCES, INC., *et al.*,           **CLASS ACTION SETTLEMENT**
                              Defendants.
23                                             Date: May 12, 2022
                                               Time: 1:30 p.m.
24  This Document Relates to:                  Courtroom: 5, 17th Floor
    *KPH Healthcare Services, Inc. v. Gilead*  Before: Honorable Edward M. Chen
25  *Sciences, Inc. et al.*, 3:20-cv-06961-EMC
26
27
28

                                    1

**NOTICE OF MOTION AND MOTION**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on May 12, 2022, at 1:30 p.m., or as soon thereafter as the matter may be heard, before the Honorable Edward M. Chen, United States District Judge, in Courtroom 5 of the United States District Court for the Northern District of California in San Francisco, California, Plaintiff KPH Healthcare Services, Inc. a/k/a Kinney Drugs, Inc. ("KPH" or "Plaintiff"), on behalf of itself and a proposed Direct Purchaser Settlement Class ("Settlement Class"), will move the Court pursuant to Federal Rule of Civil Procedure 23(e) for entry of an Order:

1.      Granting preliminary approval of the agreement by and between Plaintiff and Defendants Bristol-Myers Squibb Company and E.R. Squibb & Sons, LLC (together, "BMS") to settle the claims against BMS in this action (the "Settlement" or "Settlement Agreement"), based on the Court's finding that the Settlement is fair, reasonable, and adequate within the meaning of Fed. R. Civ. P. 23;

2.      Certifying the proposed Settlement Class for settlement purposes only;

3.      Appointing KCC Class Action Services, LLC ("KCC") as Claims Administrator to disseminate settlement notice to the Settlement Class, process and engage in follow-up communications relating to Claim Forms and Opt-Out Requests, and, if the Settlement is granted final approval, administer distribution of the Settlement Fund;

4.      Appointing Computershare Trust Company, N.A. as Escrow Agent to receive and invest the Settlement Funds in accordance with the terms of the Escrow Agreement;

5.      Appointing Interim Co-Lead Counsel for the Direct Purchaser Plaintiffs ("Class Counsel") as Co-Lead Settlement Class Counsel ("Settlement Counsel");

6.      Finding that dissemination of notice to the Settlement Class is warranted and approving the proposed forms and manners of notice as compliant with Rule 23 and due process;

7.      Directing BMS to serve notice on the appropriate federal and state officials as required by the Class Action Fairness Act, 28 U.S.C. § 1715 ("CAFA Notice") and contemporaneously provide an electronic copy of the notice to Class Counsel;

8.      Approving the proposed Plan of Allocation;

9.     Setting a schedule for the final approval process, including deadlines for claim submissions, opt-outs, and objections and a date for a Final Approval Hearing; and

10.     Providing that if final approval of the Settlement is not obtained, the Settlement shall be null and void, and the settling parties will revert to their positions *ex ante* without prejudice to their claims or defenses.

In support of this motion, Plaintiff submits that the Settlement is fair, reasonable, and adequate. The Settlement provides that BMS will forever waive enforcement of contractual provisions that would otherwise prohibit Gilead from making, or licensing others to make, a generic version of Evotaz. The Settlement further requires BMS to pay $10,800,000 into a Settlement Fund for the benefit of the Settlement Class, and up to an additional $200,000 toward the cost of providing notice of the Settlement to the Settlement Class.

This motion is based on the Notice of Motion, the Supporting Memorandum of Points and Authorities, the supporting declarations and exhibits, all papers and records on file in this matter, and the arguments of counsel.

Plaintiff has conferred with counsel for BMS. BMS does not oppose this motion.

# TABLE OF CONTENTS

I.      INTRODUCTION ...................................................................................................1

II.     SUMMARY OF THE SETTLEMENT ...............................................................1

        A.      The Settlement Class ..............................................................................1

        B.      Monetary Relief ......................................................................................1

        C.      Injunctive Relief .....................................................................................2

        D.      Stay of Proceedings and Cooperation ....................................................2

        E.      Class Release ...........................................................................................3

        F.      Reduction or Termination of the Settlement ..........................................3

III.    ARGUMENT ........................................................................................................4

        A.      The Settlement Class Merits Certification ............................................4

                1.      Numerosity ...................................................................................4

                2.      Commonality ................................................................................5

                3.      Typicality .....................................................................................5

                4.      Adequacy ......................................................................................5

                5.      Predominance and Superiority .....................................................6

                6.      Injunctive Relief ..........................................................................7

        B.      The Settlement Meets the Standard for Preliminary Approval ..............7

                1.      The Settlement is Fair, Reasonable, and Adequate .....................9

                        a.      Adequate Representation of the Class ..............................9

                        b.      Arm's-Length Negotiations ..............................................9

                        c.      Relief Provided for the Class .........................................11

                                i.      Costs, Risks, and Delay of Trial and Appeal....................12

                                        (a)     Claims Against BMS .............................12

                                        (b)     Class Definition and Release .................14

                                ii.     Method of Distributing Relief to the Class........................16

                                        (a)     The Settlement Administrator Selection Process ..16

                                        (b)     The Proposed Manner of Notice............................17

                                        (c)     The Proposed Claim Form Process........................18

                                iii.    Attorneys' Fees........................................................20

                                iv.     Identification of Agreement.........................................20

                        d.      Equitable Treatment of Class Members .........................21

                2.      The Proposed Forms of Notice Satisfy the Guidance Provided in Rule 23(c)(2)(B), the Manual, and the ND CA Procedural Guidance .............23

        C.      The Proposed Schedule Meets the Standard for Approval ...................24

IV.     CONCLUSION...................................................................................................25

i

# TABLE OF AUTHORITIES

## CASES

*Acosta v. Frito-Lay, Inc.*,
  No. 15-cv-02128-JSC, 2018 WL 646691 (N.D. Cal. Jan. 31, 2018)...................................... 12

*Acosta v. Trans Union, LLC*,
  243 F.R.D. 377  (C.D. Cal. 2007) ..................................................................................... 9, 10

*Alberto v. GMRI, Inc.*,
  252 F.R.D. 652 (E.D. Cal. 2008) ............................................................................................ 7

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591 (1997)............................................................................................... 6, 7, 15

*Amgen Inc. v. Conn. Ret. Plans and Trust Funds*,
  568 U.S. 455 (2013)................................................................................................................ 6

*Churchill Vill., LLC v. Gen. Elec.*,
  361 F.3d 566 (9th Cir. 2004) .............................................................................................. 8, 9

*Class Plaintiffs v. City of Seattle*,
  955 F.2d 1268 (9th Cir. 1992) ................................................................................................ 7

*Cottle v. Plaid Inc.*,
  No. 20-cv-03056-DMR, 2021 WL 5415252 (N.D. Cal. Nov. 19, 2021) ........................... 8, 9

*Cuzick v. Zodiac U.S. Seat Shells, LLC*,
  No. 16-cv-03793-HSG, 2017 WL 4536255 (N.D. Cal. Oct. 11, 2017).................... 9, 12, 22

*Ehret v. Uber Techs., Inc.*,
  148 F. Supp. 3d 884 (N.D. Cal. 2015) .................................................................................... 5

*Eisen v. Carlisle & Jacquelin*,
  417 U.S. 156 (1974)............................................................................................................... 18

*Ellis v. Costco Wholesale Corp.*,
  657 F.3d 970 (9th Cir. 2011) ................................................................................................... 6

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011  (9th Cir. 1998) ...................................................................................... 4, 6, 8

*Haralson v. U.S. Aviation Servs. Corp.*,
  383 F. Supp. 3d 959 (N.D. Cal. 2019)................................................................................. 7, 8

*Harris v. Vector Mktg. Corp.*,
  No. 08-cv-05198-EMC, 2011 WL 1627973 (N.D. Cal. Apr. 29, 2011)........................... 9, 12

*Hesse v. Sprint Corp.*,
  598 F.3d 581 (9th Cir. 2010) ................................................................................................. 16

*Hunt v. Check Recovery Sys., Inc.*,
  No. 05-cv-04993-MJJ, 2007 WL 2220972 (N.D. Cal. Aug. 1, 2007)................................... 18

ii

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
USDC/NDCA No. 3:19-02573-EMC / Related Case No. 3:20-cv-06961-EMC

*In re Aggrenox Antitrust Litig.,*
  No. 14-md-02516, 2017 WL 11636126 (D. Conn. Dec. 21, 2017)......................................22

*In re Aggrenox Antitrust Litig.,*
  No. 14-md-02516, ECF 733-8 (D. Conn. Nov. 22, 2017)..................................................22

*In re Asacol Antitrust Litig.,*
  No. 15-cv-12730, ECF 582-4 (D. Mass. Nov. 20, 2017) .................................................19

*In re Asacol Antitrust Litig.,*
  No. 15-cv-12730, ECF 756 (D. Mass. Feb. 28, 2019)......................................................19

*In re Auto. Refinishing Paint Antitrust Litig.,*
  MDL No. 1426, 2004 WL 1068807 (E.D. Pa. May 11, 2004) ...........................................14

*In re Banc of Cal. Sec. Litig.,*
  326 F.R.D. 640 (C.D. Cal. 2018)..........................................................................................4

*In re Bluetooth Headset Prods. Liab. Litig.,*
  654 F.3d 935 (9th Cir. 2011) .......................................................................................11, 22

*In re Cathode Ray Tube (CRT) Antitrust Litig.,*
  No. 07-cv-5944-JST, 2016 WL 721680 (N.D. Cal. Jan. 28, 2016)...................................21

*In re Cathode Ray Tube (CRT) Antitrust Litig.,*
  No. 14-cv-2058-JST, 2015 WL 9266493 (N.D. Cal. Dec. 17, 2015).................................14

*In re Celebrex (Celecoxib) Antitrust Litig.,*
  No. 14-cv-00361, 2018 WL 2382091 (E.D. Va. Apr. 18, 2018).......................................22

*In re Citric Acid Antitrust Litig.,*
  145 F. Supp. 2d 1152 (N.D. Cal. 2001)..............................................................................21

*In re High-Tech Emp. Antitrust Litig.,*
  985 F. Supp. 2d 1167 (N.D. Cal. 2013)................................................................................5

*In re High-Tech Emp. Antitrust Litig.,*
  No. 11-cv-02509-LHR, 2013 WL 6328811 (N.D. Cal. Oct. 30, 2013)...............................8

*In re Hyundai and Kia Fuel Economy Litig.,*
  926 F.3d 539 (9th Cir. 2019) ..............................................................................................15

*In re K-Dur Antitrust Litig.,*
  686 F.3d 197 (3d Cir. 2012) ..................................................................................................6

*In re Lidoderm Antitrust Litig.,*
  No. 14-md-2521, 2018 WL 11375216 (N.D. Cal. Sept. 20, 2018) ....................................21

*In re Loestrin 24 Fe Antitrust Litig.,*
  No. 13-md-02472, 2020 WL 5203323 (D.R.I. Sept. 1, 2020)...........................................22

*In re Loestrin 24 Fe Antitrust Litig.,*
  No. 13-md-02472, ECF 1396-8 (D.R.I. Jan. 22, 2020) ....................................................22

*In re Pac. Enters. Sec. Litig.*,
   47 F.3d 373 (9th Cir. 1995) ................................................................. 10

*In re Painewebber Ltd. P'Ships Litig.*,
   171 F.R.D. 104 (S.D.N.Y. 1997) ........................................................... 10

*In re Restasis (Cyclosporine Ophthalmic Emulsion) Antitrust Litig.*,
   No. 18-md-02819, 2020 WL 6193857 (E.D. N.Y. Oct. 7, 2020) ....................... 22

*In re Restasis (Cyclosporine Ophthalmic Emulsion) Antitrust Litig.*,
   No. 18-md-02819, ECF 663 (E.D. N.Y. Mar. 23, 2021) ......................... 19, 23

*In re Restasis (Cyclosporine Ophthalmic Emulsion) Antitrust Litig.*,
   No. 18-md-02819, ECF 667, at ¶¶ 2-3 .................................................. 23

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
   No. 07-md-1827-SI, 2011 WL 7575004 (N.D. Cal. Dec. 27, 2011) ................... 21

*James v. Uber Techs. Inc.*,
   338 F.R.D. 123 (N.D. Cal. 2021) .......................................................... 5, 6

*Mazza v. Am. Honda Motor Co., Inc.*,
   666 F.3d 581 (9th Cir. 2012) ................................................................. 5

*Merck & Co. v. Louisiana Wholesale Drug Co.*,
   570 U.S. 913 (2013) ............................................................................ 6

*Morgan v. U.S. Soccer Fed'n, Inc.*,
   No. 19-cv-01717, 2019 WL 7166978 (C.D. Cal. Nov. 8, 2019) ...................... 4

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,
   221 F.R.D. 523 (C.D. Cal. 2004) ......................................................... 10

*Nen Thio v. Genji, LLC*,
   14 F. Supp. 3d 1324 (N.D. Cal. 2014) ................................................... 15

*O'Connor v. Uber Techs., Inc.*,
   Nos. 13-cv-03826-EMC, 15-cv-00262-EMC,
   2019 WL 1437101 (N.D. Cal. Mar. 29, 2019) .................................... 4, 9, 11

*Rodriguez v. W. Publ'g Corp.*,
   563 F.3d 948 (9th Cir. 2009) ................................................................. 9

*Smith v. Am. Greetings Corp.*,
   No. 14-cv-02577-JST, 2015 WL 4498571 (N.D. Cal. July 23, 2015) ................. 12

*Torres v. Mercer Canyons Inc.*,
   835 F.3d 1125 (9th Cir. 2016) .............................................................. 15

*Torres v. Pick-A-Part Auto Wrecking*,
   No. 16-cv-01915, 2018 WL 306287 (E.D. Cal. Jan. 5, 2018) ......................... 20

*Uschold v. NSMG Shared Servs., LLC*,
   333 F.R.D. 157 (N.D. Cal. 2019) .......................................................... 10

*Wal-Mart Stores, Inc. v. Dukes,*
  564 U.S. 338 (2011) ......................................................................................... 4, 5
*Wolin v. Jaguar Land Rover N. Am., LLC,*
  617 F.3d 1168 (9th Cir. 2010) ............................................................................. 5
*Zepeda v. PayPal, Inc.,*
  Nos. 10-cv-02500-SBA, 10-cv-01668-SBA,
  2014 WL 718509 (N.D. Cal. Feb. 24, 2014) ....................................................... 7

## RULES

Fed. R. Civ. P. 23 ................................................................................................ *passim*

## OTHER AUTHORITIES

*Manual for Complex Litigation (Fourth)* ............................................................. 8, 23

Northern District of California's *Procedural Guidance for Class Action Settlements* ....... *passim*

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.      INTRODUCTION

After several months of arm's-length negotiations, Plaintiff entered into a Settlement Agreement with BMS ("Settlement") that requires BMS to pay $10.8 million in cash, contribute up to an additional $200,000 toward notice costs, and provide injunctive relief.[1] This Settlement, if approved, will provide fair, reasonable, and adequate relief to the proposed DPP Settlement Class ("Settlement Class"). Plaintiff now moves for preliminarily approval of the Settlement.

## II.      SUMMARY OF THE SETTLEMENT

### A.  The Settlement Class

Plaintiff and BMS agreed to propose certification of the following Settlement Class for settlement purposes only:

> All persons or entities in the United States and its territories who directly purchased Atripla, Evotaz, Reyataz, Sustiva, Truvada, Complera, Stribild, or any of their generic equivalents, if any (together, "cART Drugs") from any Defendant or any brand or generic manufacturer from October 6, 2016 until October 19, 2021.

> Excluded from the Settlement Class are (1) Defendants; Janssen R&D Ireland; Janssen Products, LP; Johnson & Johnson, Inc.; and their officers, directors, managers, employees, agents, servants, representatives, parents, subsidiaries, or affiliates; (2) all government entities; (3) Retailer Plaintiffs; and (4) the judges in this case, court personnel, and any members of their immediate families.[2]

### B.  Monetary Relief

Under the Settlement, BMS will pay $10.8 million into the BMS Settlement Fund, which will be used to pay valid claims submitted by Settlement Class Members in accordance with the Allocation Plan, settlement administration expenses, notice costs to the extent they are not paid via the BMS Notice Fund, and any Court-approved class representative service award and attorneys' expenses.[3]

---

[1] A copy of the Settlement Agreement is attached as Exhibit 1 to the Declaration of Michael L. Roberts in Support of Motion for Preliminary Approval of Class Action Settlement ("Roberts Declaration"), filed contemporaneously with this motion. The definitions in the Settlement Agreement are incorporated herein by reference. All exhibit references in this motion are to the exhibits to the Roberts Declaration.

[2] *Id.* at ¶ 1(p).

[3] *Id.* at ¶ 7(c). The parties have agreed to confidential terms regarding the potential reduction of the Settlement Amount. *See* Section II(F), *infra*.

1

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
USDC/NDCA No. 3:19-02573-EMC / Related Case No. 3:20-cv-06961-EMC

1
2
3

BMS will pay an additional $200,000 into a separate BMS Notice Fund, which will be used to pay 50% of the first $400,000 of actual notice costs relating to the Settlement.[4] Any money left in this fund as of the Effective Date or at the time the Settlement is terminated will be returned to BMS.[5]

4

**C. Injunctive Relief**

5
6

The Settlement provides that BMS will waive enforcement of Section 14.2(a) of its October 25, 2011 Duo License Agreement with Gilead by providing the following written notice to Gilead:

7
8
9
10
11
12
13
14

> As provided for under the terms of the October 25, 2011 Duo License Agreement by and among Gilead Sciences, Inc. and Gilead Sciences Limited (together, "Gilead") and Bristol-Myers Squibb Company, BMS hereby irrevocably consents to Gilead's manufacture, use, sale or import of the Combination Product, any Generic Combination Product, or any Other Combination Product. Further, BMS consents to Gilead's granting of any rights to a Third Party to make, use, sell, have sold, offer for sale, or import, the Combination Product, any Generic Combination Product, or any Other Combination Product. This written consent is not intended to, and shall not, modify any other rights and/or obligations of BMS and Gilead under the terms of the Duo License Agreement, or any other agreement between the parties. All capitalized terms are defined in accordance with the terms of the Duo License Agreement.[6]

15
16
17
18
19

This waiver will immediately open the door to the possibility of generic competition with Evotaz by removing the barrier that had prohibited Gilead from marketing, or licensing a third party to market, a fixed-dose combination drug to compete with Evotaz, comprised of Gilead's drug Cobicistat and a generic version of BMS's drug atazanavir (brand name Reyataz).[7] Generic competition otherwise would have been precluded for another seven years, until September 2029.[8]

20

**D. Stay of Proceedings and Cooperation**

21
22

Per the Settlement, Plaintiff seeks a stay of these proceedings against BMS pending this Court's final approval determination.[9] In the event the case against any Gilead defendant proceeds to

23
24

[4] *See* Exhibit 1 at ¶ 7(d).

25

[5] *Id.*

26

[6] *Id.* at ¶ 8.

27

[7] *See* Roberts Declaration at ¶ 12.

[8] *See* ECF 559 (Amended Complaint) at ¶ 127. Unless otherwise noted, all ECF references are to the Master Docket for this litigation (19-cv-02573-EMC).

28

[9] Exhibit 1 at ¶ 4.

trial, BMS will consult with Plaintiff regarding evidence or testimony needed to authenticate and meet the requirements of the business records exception to the hearsay rule for any BMS business document produced by BMS in the litigation that has been identified as a potential trial exhibit.[10] BMS will: (a) provide a declaration and/or certification from a custodian of records; (b) if necessary, make a custodian of records available for deposition solely to authenticate and meet the requirements of the business record exception to the hearsay rule for documents created and kept in the ordinary course of business and produced by BMS in the litigation that are listed as trial exhibits; and (c) if further necessary, make a custodian of records available for trial for the same limited purpose.[11]

**E.  Class Release**

In exchange for the relief described above, the action against BMS will be dismissed with prejudice.[12] Settlement Class Members will release BMS from all claims asserted against BMS or its affiliates in this action, and all claims with regard to cART drugs that Plaintiff or the Settlement Class could have asserted or could assert against BMS or its affiliates that arise out of the facts, occurrences, transactions or other matters alleged or asserted in this action, whether known or unknown.[13] This includes any claim that would be barred as *res judicata* by virtue of the dismissal with prejudice of the action.[14] The release does not extend to personal injury claims or any claims arising in the ordinary course of business with BMS under Article 2 of the Uniform Commercial Code (related to sales).[15]

**F.  Reduction or Termination of the Settlement**

The parties have agreed to confidential terms regarding the potential reduction of the Settlement Amount or termination of the Settlement.[16] The Settlement also may be terminated if this

---

[10] *Id.*

[11] *Id.*

[12] *Id.* at ¶ 2.

[13] *Id.* at ¶¶ 1(l), 14, 15.

[14] *Id.* at ¶¶ 1(l), 14. This *res judicata* provision was added to confirm that the release encompasses any claims that could arise from the fraudulent concealment allegations that had been pleaded in the initial Complaint but dropped from the First Amended Complaint. Even without the release, such claims could not have been pursued, given that *res judicata* is a doctrine applied as a matter of law.

[15] *Id.*

[16] *Id.* at ¶ 18(a). Class Counsel are contemporaneously emailing a copy of this separate agreement for *in camera* inspection by the Court.

1    Court or an appellate court materially modifies or rejects the Settlement.[17] Modifications to the Plan

2    of Allocation, or modifications to or rejections of the requested awards to the representative plaintiff

3    or Settlement Counsel, shall not affect or delay the Settlement.[18]

4                                    **III.    ARGUMENT**

5    **A.  The Settlement Class Merits Certification**

6            If a class has not yet been certified, as in this case, the Court's "threshold task is to ascertain

7    whether the proposed settlement class satisfies the requirements of Rule 23(a) of the Federal Rules of

8    Civil Procedure applicable to all class actions, namely: (1) numerosity, (2) commonality, (3)

9    typicality, and (4) adequacy of representation." *O'Connor v. Uber Techs., Inc.,* Nos. 13-cv-03826-

10   EMC, 15-cv-00262-EMC, 2019 WL 1437101, at * 5 (N.D. Cal. Mar. 29, 2019) (quoting *Hanlon v.*

11   *Chrysler Corp.,* 150 F.3d 1011, 1019 (9th Cir. 1998) (overruled on other grounds by *Wal-Mart Stores,*

12   *Inc. v. Dukes,* 564 U.S. 338 (2011)). "If all four Rule 23(a) prerequisites are satisfied, the court must

13   then decide whether the action can be maintained under one of the three subsections of Rule 23(b)."

14   *Id.* (citing *Hanlon,* 150 F.3d at 1022). Plaintiff seeks certification under two subsections: (1) Rule

15   23(b)(3) (predominance and superiority); and (2) Rule 23(b)(2) (injunctive relief). Plaintiff can

16   sufficiently establish all these criteria to support its request for settlement-only class certification.

17           **1.    Numerosity**

18           The numerosity prong addresses whether joinder of all members is "impracticable." Fed. R.

19   Civ. P. 23(a)(1). "[I]t is 'generally accepted that when a proposed class has at least forty members,

20   joinder is presumptively impracticable based on numbers alone.'" *Morgan v. U.S. Soccer Fed'n, Inc*.,

21   No. 19-cv-01717, 2019 WL 7166978, at *5 (C.D. Cal. Nov. 8, 2019) (quoting *In re Banc of Cal. Sec.*

22   *Litig.*, 326 F.R.D. 640, 646 (C.D. Cal. 2018)). Based on his review of data produced, Plaintiff's

23   economic expert, Dr. Russell Lamb, has determined that there will be at least 73 Settlement Class

24   Members, which is presumptively sufficient to satisfy numerosity.[19]

25   _____

26   [17] *Id.* at ¶ 16.

     [18] *Id.* at ¶¶ 13(b), 16.

27   [19] *See* Declaration of Dr. Russell Lamb (Exhibit 2) at ¶ 2. This figure accounts for direct purchasers
     of brand and generic Truvada, Atripla, and Complera. Any non-duplicative purchasers of Evotaz,

28

### 2. Commonality

"The Ninth Circuit has found that Rule 23(a)(2)'s commonality requirement is 'limited.'" *Ehret v. Uber Techs., Inc.*, 148 F. Supp. 3d 884, 890 (N.D. Cal. 2015) (quoting *Mazza v. Am. Honda Motor Co., Inc.*, 666 F.3d 581, 589 (9th Cir. 2012)). "Not all questions of fact and law need to be common to satisfy the rule." *Id.* "[E]ven a single common question will suffice." *James v. Uber Techs. Inc.*, 338 F.R.D. 123, 131 (N.D. Cal. 2021) (quoting *Dukes*, 564 U.S. at 359) (internal quotation and punctuation marks omitted). "Antitrust liability alone constitutes a common question that will resolve an issue that is central to the validity of each class member's claim in one stroke … because proof of an alleged conspiracy will focus on defendants' conduct and not on the conduct of individual class members." *In re High-Tech Emp. Antitrust Litig.,* 985 F. Supp. 2d 1167, 1180 (N.D. Cal. 2013) (internal citations, quotations, and punctuation marks omitted). The central issue in this litigation is whether Defendants' conduct constitutes an antitrust violation. This is sufficient to establish commonality.

### 3. Typicality

The typicality requirement ensures that the interests of the class representative and class are aligned. *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010). "In antitrust cases, typicality usually will be established by plaintiffs and all class members alleging the same antitrust violations by defendants." *High-Tech,* 985 F. Supp. 2d at 1181 (citation and internal quotations omitted). In this case, Plaintiff and all other Settlement Class Members allege the same injuries (supracompetitive charges) arising from the same anticompetitive conduct by Defendants. Liability will not depend on the individual circumstance of any Settlement Class Member; the same factual presentations and legal arguments will be made. This is sufficient to establish typicality.

### 4. Adequacy

"A named plaintiff satisfies the adequacy test if the individual has no conflicts of interest with other class members and if the named plaintiff will prosecute the action vigorously on behalf of the

---

Reyataz, Sustiva, and Stribild will be added at the time of direct-mail notice. To the extent additional support regarding numerosity is required, Plaintiff incorporates its memorandum in support of class certification. *See* ECF 693-3 (Class Certification Memo) at 18-21.

class." *James,* 338 F.R.D. at 132-33 (citing *Ellis v. Costco Wholesale Corp.,* 657 F.3d 970, 985 (9th Cir. 2011)). As part of this analysis, a court should assess if the named plaintiff is represented by competent counsel. *Hanlon,* 150 F.3d at 1021.

Plaintiff has no interest that conflicts with those of the Settlement Class, and along with all other Settlement Class Members, Plaintiff has "the same financial incentive for purposes of this litigation—i.e., proving that they were overcharged and recovering damages based on that overcharge." *See In re K-Dur Antitrust Litig.,* 686 F.3d 197, 223 (3d Cir. 2012), *vacated sub nom., Merck & Co. v. Louisiana Wholesale Drug Co.,* 570 U.S. 913 (2013), *reinstated, In re K-Dur Antitrust Litig.,* Nos. 10-cv-02077, 10-cv-02078, 10-cv-04571, 2013 WL 5180857 (3d Cir. Sept. 9, 2013). Plaintiff has vigorously prosecuted this action with counsel for the past two years and will continue to do so until the case is concluded.

Likewise, Plaintiff's counsel, Michael Roberts and Dianne Nast, have extensive experience serving as class counsel in similar direct purchaser antitrust class actions. This Court appointed them to serve as Interim Co-Lead Counsel of the Proposed Direct Purchaser Class,[20] and since being entrusted with representing the interests of the proposed class, they have worked diligently and efficiently in pursuing this litigation. This is sufficient to establish adequacy and their adequacy to serve as Settlement Counsel.

### 5.  Predominance and Superiority

Rule 23(b)(3) requires that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

"Rule 23(b)(3) requires a showing that *questions* common to the class predominate, not that those questions will be answered, on the merits, in favor of the class." *Amgen Inc. v. Conn. Ret. Plans and Trust Funds*, 568 U.S. 455, 459 (2013). As the Supreme Court has recognized, "predominance is a test readily met in certain cases alleging … violations of the antitrust laws." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997). The Settlement Class satisfies the predominance requirement

---

[20] *See* ECF 454 (Leadership Order).

because the core of this case involves common questions of law and fact, including whether Defendants' conduct violated antitrust laws and resulted in supracompetitive prices.

The superiority assessment tests whether the settlement will "achieve economies of time, effort, and expense, and promote … uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Id.* at 615. When a court is "[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems … for the proposal is that there be no trial." *Id.* at 620. Courts would be incredibly burdened if forced to listen to the same facts in dozens of trials held in dozens of courts dispersed throughout the United States, and the parties may come out of those trials with inconsistent rulings. The burden on the parties would likewise be heavy and prohibitive to some who could not spend the millions of dollars required to litigate complex antitrust cases such as this. Without question, classwide resolution is superior.

### 6. Injunctive Relief

Rule 23(b)(2) assesses whether the opposing party "has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief … is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). As addressed above, allegations relating to BMS's no-generics restraint agreement with Gilead with respect to Evotaz are identical for each Settlement Class Member and eliminating that agreement will have the same effect – the allowance of generic competition – for all of them. The provision of injunctive relief on a classwide basis is appropriate.

## B. The Settlement Meets the Standard for Preliminary Approval

"The Ninth Circuit maintains a 'strong judicial policy' that favors the settlement of class actions." *Haralson v. U.S. Aviation Servs. Corp.*, 383 F. Supp. 3d 959, 966 (N.D. Cal. 2019) (quoting *Class Plaintiffs v. City of Seattle,* 955 F.2d 1268, 1276 (9th Cir. 1992)). Class action settlements require court approval, Fed. R. Civ. P. 23(e), but "[a]t the preliminary approval stage, 'a full fairness analysis is unnecessary.'" *Zepeda v. PayPal, Inc*., Nos. 10-cv-02500-SBA, 10-cv-01668-SBA, 2014 WL 718509, at *4 (N.D. Cal. Feb. 24, 2014) (quoting *Alberto v. GMRI, Inc*., 252 F.R.D. 652, 665 (E.D. Cal. 2008)). The Court need make only an "initial evaluation of the fairness of the proposed settlement … on the basis of written submissions and informal presentation from the settling parties."

1   *In re High-Tech Emp. Antitrust Litig.*, No. 11-cv-02509-LHR, 2013 WL 6328811, at *1 (N.D. Cal.

2   Oct. 30, 2013) (citing *Manual for Complex Litigation (Fourth)* ("*Manual*") at § 21.632).

3   　　　The first step is for the Court to "make a preliminary determination that the settlement is 'fair,

4   reasonable, and adequate' when considering the factors set out in Rule 23(e)(2)." *Haralson*, 383 F.

5   Supp. 3d at 966. Those factors, set forth in the December 1, 2018 amendments to Rule 23, are whether:

6   
(A)　the class representatives and class counsel have adequately
7   　　　represented the class;

8   
(B)　the proposal was negotiated at arm's length;

9   
(C)　the relief provided for the class is adequate, taking into account:

10  
(i)　the costs, risks, and delay of trial and appeal;

11  
(ii)　the effectiveness of any proposed method of distributing
　　　relief to the class, including the method of processing
12  　　　class-member claims;

13  
(iii)　the terms of any proposed award of attorneys' fees,
　　　including timing of payment; and

14  
(iv)　any agreement required to be identified under Rule
15  　　　23(e)(3); and

16  
(D)　the proposal treats class members equitably relative to each
　　　other.

17  Fed. R. Civ. P. 23(e)(2).

18  　　　These amended factors were not intended to "displace" any factor previously adopted by

19  courts, "but rather to focus the court and the lawyers on the core concerns of procedure and substance

20  that should guide the decision whether to approve the proposal." Rule 23(e)(2) Advisory Committee

21  Notes to 2018 Amendments. To that end, the Court additionally may consider the *Churchill* factors

22  previously adopted by the Ninth Circuit:

23  
(1) the strength of the plaintiff's case; (2) the risk, expense, complexity,
and likely duration of future litigation; (3) the risk of maintaining class
24  action status throughout the trial; (4) the amount offered in settlement;
(5) the extent of discovery completed and the state of the proceedings;
25  (6) the experience and views of counsel; (7) the presence of a
governmental participant; and (8) the reaction of the class members to
26  the proposed settlement.

27  *Churchill Vill., LLC v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) (citing *Hanlon*, 150 F.3d at

28  1026); *see also Cottle v. Plaid Inc.*, No. 20-cv-03056-DMR, 2021 WL 5415252, at *11 (N.D. Cal.

8

Nov. 19, 2021) (court examines Rule 23(e)(2) and *Churchill* factors in deciding whether to grant preliminary approval). No additional analysis is required here, however, because the first six *Churchill* factors are included within the analysis of the factors listed in Rule 23(e)(2),[21] and the last two factors are not pertinent to this motion.[22]

The Court also should consider the extent to which the Settlement complies with the Northern District of California's *Procedural Guidance for Class Action Settlements* ("ND CA Procedural Guidance"). Consideration of the foregoing demonstrates that the Settlement is fair, reasonable, adequate, and likely to be granted final approval.

### 1. The Settlement is Fair, Reasonable, and Adequate

#### a. Adequate Representation of the Class

"The first factor asks whether 'the class representatives and class counsel have adequately represented the class.'" *O'Connor,* 2019 WL 1437101, at *6 (quoting Fed. R. Civ. P. 23(e)(2)(A)). As discussed above, representation by Plaintiff and Class Counsel has been, and will continue to be, more than adequate. Thus, this factor weighs in favor of preliminary approval.

#### b. Arm's-Length Negotiations

"The second factor asks whether 'the [settlement] proposal was negotiated at arm's length.'" *Id.* at *7 (quoting Fed. R. Civ. P. 23(e)(2)(B)). "[A]n initial presumption of fairness" is afforded to settlements "recommended by class counsel after arm's-length bargaining." *Cuzick v. Zodiac U.S. Seat Shells, LLC*, No. 16-cv-03793-HSG, 2017 WL 4536255, at *5 (N.D. Cal. Oct. 11, 2017) (quoting *Harris v. Vector Mktg. Corp.*, No. 08-cv-05198-EMC, 2011 WL 1627973, at *8 (N.D. Cal. Apr. 29, 2011)). To negotiate at arm's length, counsel "must have been armed with sufficient information about the case to have been able to reasonably assess its strengths and value." *Acosta v. Trans Union,*

---

[21] The first four factors are covered under Rule 23(e)(2)(C)(i)'s analysis of whether "the relief provided for the class is adequate, taking into account … the costs, risks, and delay of trial and appeal." The fifth and sixth factors are covered under Rule 23(e)(2)(B)'s analysis of whether "the proposal was negotiated at arm's length."

[22] The seventh factor "is inapplicable because there is no government participant in this case." *See Cottle,* 2021 WL 5415252, at *14 (citation omitted). The eighth factor "is best asserted at the final approval hearing since the court can look at how many class members submitted claim forms and objections." *Id.* (citing *Rodriguez v. W. Publ'g Corp.,* 563 F.3d 948, 967 (9th Cir. 2009)).

1    *LLC*, 243 F.R.D. 377, 396 (C.D. Cal. 2007)). The "court must be satisfied that the parties 'have

2    engaged in sufficient investigation of the facts to enable the court to intelligently make … an appraisal

3    of the settlement.'" *Uschold v. NSMG Shared Servs., LLC*, 333 F.R.D. 157, 169 (N.D. Cal. 2019)

4    (quoting *Acosta*, 243 F.R.D. at 396).

5            By the time Plaintiff and BMS executed their Memorandum of Understanding ("MUO") on

6    October 20, 2021, Plaintiff had defeated arbitration and dismissal motions, evaluated extensive

7    briefings and rulings on motions to dismiss other actions, reviewed millions of pages of discovery

8    documents along with other Plaintiff groups, participated in depositions of dozens of fact witnesses,

9    prepared and nearly finalized expert reports and a memorandum in support of class certification, and

10   began working with merit experts to support its case-in-chief.[23] Negotiations continued for an

11   additional five months while Plaintiff and BMS met, conferred, and edited the Settlement Agreement

12   and its many attachments until they finally came to a meeting of the minds on important matters such

13   as the scope of the Settlement Class, the terms of the release, timing for funding, and cooperation that

14   could materially impact the ongoing litigation against the Gilead Defendants.[24] They then signed the

15   Settlement Agreement and related documents on March 30, 2022.[25]

16           Without a doubt, Class Counsel entered into this agreement with a clear understanding of the

17   strengths, weaknesses, and value of their claims. They have extensive experience litigating antitrust

18   cases and believe the recovery provided for in the Settlement Agreement is a highly favorable result

19   for the Settlement Class in light of the risks.[26] This factor weighs in favor of preliminary approval.

20   *See Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004) (quoting

21   *In re Painewebber Ltd. P'Ships Litig.*, 171 F.R.D. 104, 125 (S.D.N.Y. 1997)) (Courts afford "[g]reat

22   weight … to the recommendation of counsel, who are most closely acquainted with the facts of the

23   underlying litigation."); *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995) ("Parties

24   represented by competent counsel are better positioned than courts to produce a settlement that fairly

25   _____

26   [23] *See* Roberts Declaration at ¶ 5.

     [24] *Id.* at ¶ 6.

27   [25] *Id.*

28   [26] *Id.* at ¶ 14.

reflects each party's expected outcome in litigation.").

As an additional consideration, "[i]n the context of pre-certification settlements, courts must be especially vigilant to ensure that 'the settlement is not the product of collusion among the negotiating parties.'" *O'Connor,* 2019 WL 1437101, at *7 (quoting *In re Bluetooth Headset Prods. Liab. Litig.,* 654 F.3d 935, 946-47 (9th Cir. 2011)). "Signs of collusion include: (1) 'when counsel receive a disproportionate distribution of the settlement;' (2) when the parties negotiate a 'clear sailing' arrangement under which defendants agree not to oppose an attorneys['] fee award up to a certain amount separate from the class's actual recovery; and (3) 'when the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund.'" *Id.* (quoting *In re Bluetooth,* 654 F.3d at 947).

There are no such red flags here. Class Counsel are not requesting fees; they seek to recover only their out-of-pocket costs. This will be paid from the BMS Settlement Fund,[27] so any amounts requested but not awarded will revert to the Settlement Class. While BMS has agreed not to take any position with respect to this request,[28] the Settlement is not contingent on this award. To the contrary, Class Counsel and BMS have agreed that the Court will consider this request separately from the fairness, reasonableness, and adequacy of the Settlement, and that any order relating to this award, or any appeal from any such order, or any modification or reversal to this award on appeal, shall not operate to modify, cancel, or allow for the termination of the Settlement or affect or delay the finality of any judgment approving the Settlement.[29] This factor weighs in favor of preliminary approval.

### c.  Relief Provided for the Class

The third factor asks whether "the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class member claims; (iii) the terms of any proposed award of attorneys' fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)." Fed. R. Civ. P. 23(e)(2)(C).

---

[27] Exhibit 1 at ¶ 13(a).

[28] *Id.*

[29] *Id.* at ¶ 13(b).

1

2

### i.    Costs, Risks, and Delay of Trial and Appeal

This section involves consideration of the relative strengths and weaknesses of the claims against BMS that led counsel to conclude the settlement terms are fair and adequate to compensate Settlement Class Members, and descriptions of and explanations for the resultant modifications to the class definition and release, as recommended by the ND CA Procedural Guidance at § 1(a), (c), (e).

### (a)    Claims Against BMS

To determine whether a settlement falls within the range of possible approval, courts focus on "substantive fairness and adequacy" and "consider plaintiff's expected recovery balanced against the value of the settlement offer." *Acosta v. Frito-Lay, Inc.,* No. 15-cv-02128-JSC, 2018 WL 646691, at *9 (N.D. Cal. Jan. 31, 2018) (quoting *Harris*, 2011 WL 1627973, at *9). The estimated claim value cannot be viewed in a vacuum; the court must evaluate the strengths and weaknesses of the case to determine the likelihood of recovering that value. *See Cuzick,* 2017 WL 4536255, at *6; *see also Smith v. Am. Greetings Corp.,* No. 14-cv-02577-JST, 2015 WL 4498571, at *7 (N.D. Cal. July 23, 2015) (evaluating recovery in view of risks).

Plaintiff's operative complaint alleges that BMS participated in anticompetitive conduct by: (1) benefitting from Gilead's overall scheme to monopolize the cART market;[30] (2) benefitting from Gilead's unlawful deals with Teva to delay entry of generic versions of Atripla;[31] (3) entering into the Atripla No-Generics Restraint agreement with Gilead, which incentivized Gilead to switch patients to Atripla, thereby increasing BMS's sales of its third agent (EFV) as a component of Atripla;[32] and (4) entering into the Evotaz No-Generics Restraint agreement with Gilead, which protected BMS's third agent (atazanavir) and its fixed-dose combination drug Evotaz from competition.[33]

This Court ruled that the first claim is not viable against BMS, holding that one cannot

---

[30] *See* ECF 559 (Amended Complaint) at ¶ 435.

[31] *Id.* at ¶ 435(b).

[32] *Id.* at ¶¶ 435(a), 455.

[33] *Id.* at ¶¶ 435(c), 455.

reasonably infer that BMS had benefitted from or agreed to an overarching conspiracy by Gilead.[34] As to the second claim, Plaintiff did not allege, and discovery did not reveal, that BMS was aware of and embraced or otherwise participated in the consideration Gilead had provided to Teva to delay its launch of generic versions of Atripla,[35] as required for liability to attach.[36] Thus, no recovery can be obtained from BMS for either claim unless Plaintiff undergoes the expense of taking the surviving claims against BMS to trial and obtaining a final judgment; files, briefs, argues, and wins an appeal on the dismissed claims; and then undergoes the expense of a second trial. Given that the jury trial in this case is not scheduled to be completed until May 2023,[37] it is unlikely that this process would be completed for at least two more years.

As to the third claim, discovery has revealed that Gilead terminated its Atripla-related collaboration agreement with BMS (and, consequently, their no-generic restraint agreement) on December 31, 2017.[38] This is two months before the earliest date of February 2018 on which Plaintiff contends generic Truvada – an essential ingredient to generic Atripla – would have entered the market absent Gilead's anticompetitive agreement with Teva.[39]

That leaves only one claim against BMS that can be presented to the jury during next year's trial: the claim that BMS's no-generic restraint agreement with Gilead regarding Evotaz prevented and will prevent generic competition for Evotaz for almost 12 years, from December 2017 until September 2029.[40] If this Settlement is approved, however, generic competition could begin this year, which would eliminate two-thirds of the period of generic delay. Plaintiff's economist, Dr. Lamb, estimated damages for Evotaz at $31.1 million.[41] One-third of that amount is $10.3 million, meaning

---

[34] *See* ECF 387 (Order re Motion to Dismiss EPP's First Amended Complaint) at 15-16.

[35] *See* Roberts Declaration at ¶ 8.

[36] *See* ECF 387 (Order re Motion to Dismiss EPP's First Amended Complaint) at 14.

[37] *See* ECF 781 (Scheduling Order) at 7 (setting start date of trial), as amended Dec. 15, 2021 (setting each trial date).

[38] *See* Roberts Declaration at ¶ 9.

[39] *See* ECF 693-3 (Class Certification Memo) at 14.

[40] *See* ECF 559 (Amended Complaint) at ¶ 127. Claims related to Reyataz, a BMS drug that is a component of Evotaz, are encompassed within this claim.

[41] *See* Exhibit 2 at ¶ 3.

1  that with the $10.8 million cash payment and the injunctive relief that would be provided via the

2  Settlement, the Settlement Class essentially would receive complete relief for this claim.

3      Class Counsel will continue to litigate this claim, and the other three claims, against Gilead,

4  the primary actor in this monopolistic scheme that is most likely to be held jointly and severally liable

5  for the damages caused by the actions outlined in the operative complaint. *See In re Auto. Refinishing*

6  *Paint Antitrust Litig.*, MDL No. 1426, 2004 WL 1068807, at *2 (E.D. Pa. May 11, 2004) (("[T]his

7  settlement does not affect the joint and several liability of the remaining Defendants in this alleged

8  conspiracy."); *In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. 14-cv-2058-JST, 2015 WL

9  9266493, at *6 (N.D. Cal. Dec. 17, 2015) (noting settlement preserved right to litigate against non-

10  settling defendants for entire amount of damages based on joint and several liability).

11      Independent from the merits, an additional risk lies with the possibility that BMS may appeal

12  this Court's denial of its joint motion with Gilead to compel arbitration.[42] Plaintiff is confident in its

13  ability to succeed on appeal, but the appellate process could add another year or more of delay before

14  payments are made to class members, and success is never guaranteed. While Plaintiff is similarly

15  confident in its ability to get the proposed class certified, certification is not certain, especially in a

16  class action like this that involves dozens, rather than hundreds or thousands, of class members. For

17  many reasons, this factor weighs in favor of preliminary approval.

18                    **(b)      Class Definition and Release**

19      The class definition in the operative complaint covers all cART drugs purchased directly from

20  Defendants during the class period.[43] Plaintiff narrowed that definition when moving to certify their

21  claims against Gilead, limiting the drugs to Truvada, Atripla, and Complera, and extending the

22  purchases to include not only those from Defendants, but also those from any other brand or generic

23  manufacturer of those three drugs.[44] This decision was made to account for its experts' definitions of

24  the relevant markets and the drugs for which Settlement Class Members already have incurred

25  overcharges that could be reliably measured based on anticompetitive agreements involving reverse

26  —————————————————

[42] *See* ECF 555 (Order re Arbitration and Dismissal Motions).

27  [43] *See* ECF 559 (Amended Complaint) at ¶ 413.

28  [44] *See* ECF 693-3 (Class Certification Memo) at 1-2.

1    payments (for Atripla and Truvada) and a no-generics restraint (Complera).[45]

2          Class Counsel negotiated with BMS to similarly narrow the group of purchasers that would

3    be included in this Settlement Class, and, conversely, the group that would be precluded from seeking

4    relief from BMS outside of this litigation. The parties readily agreed to include the two drugs for

5    which BMS and Gilead had entered into no-generic restraint agreements (Atripla and Evotaz), the

6    two drugs that are components of Atripla (Truvada and Sustiva), and the BMS drug that is a

7    component of Evotaz (Reyataz).[46] After additional negotiation, the parties added two drugs referenced

8    throughout the operative complaint – Complera and Stribild – in consideration of the fact that the

9    Settlement Class would forego the right to file an appeal and, if successful, seek relief for those

10   purchases based on an overarching conspiracy claim against BMS.[47] Class Counsel also sought and

11   obtained agreement to include generic purchases, consistent with their theory that higher brand prices

12   trickle down to cause higher generic prices.[48]

13          The Ninth Circuit encourages such modifications to class definitions. *See In re Hyundai and*

14   *Kia Fuel Economy Litig.*, 926 F.3d 539, 558 (9th Cir. 2019) ("[T]he aspects of Rule 23(a) and (b) that

15   are important to certifying a settlement class are 'those designed to protect absentees by blocking

16   unwarranted or overbroad class definitions.'") (quoting *Amchem,* 521 U.S. at 620); *Torres v. Mercer*

17   *Canyons Inc.,* 835 F.3d 1125, 1139 (9th Cir. 2016) ("[T]he district court may construe the class

18   definition more narrowly, or otherwise conform its interpretation of the class definition with the

19   prevailing theory of liability.").

20          Additionally, Class Counsel narrowly tailored the release granted to BMS to conform with the

21   allegations at issue in the litigation. *See Nen Thio v. Genji, LLC*, 14 F. Supp. 3d 1324, 1334 (N.D.

22   Cal. 2014) (noting scope of release, while broad, was limited to claims based on facts in complaint).

23   While the release extends to claims "Plaintiffs could have asserted or could assert against BMS or its

24   affiliates," it is only in relation to those "that arise out of the facts, occurrences, transactions or other

25   _____

26   [45] *See* Roberts Declaration at ¶ 10.

     [46] *Id.* at ¶ 11.

27   [47] *Id.*

28   [48] *Id.*

matters alleged or asserted in the Action."[49] The Ninth Circuit allows releases that extend to "claims not alleged in the underlying complaint where those claims depended on the same set of facts as the claims that gave rise to the settlement." *Hesse v. Sprint Corp.,* 598 F.3d 581, 590 (9th Cir. 2010).

### ii. Method of Distributing Relief to the Class

This "method" section discusses how Class Counsel selected the Settlement Administrator, as required by the ND CA Procedural Guidance at § 2, and how the Settlement Administrator plans to provide notice, process claim forms, and send payments to the Settlement Class. The sections that follow address the content of the settlement notices and the plan for allocating the settlement funds.

### (a) The Settlement Administrator Selection Process

Plaintiff has retained KCC Class Action Services, LLC ("KCC") to serve as Settlement Administrator, and KCC's affiliate, Computershare Trust Company, N.A. ("Computershare"), to serve as Escrow Agent. KCC has been recognized as a best claims administrator by *The Recorder*, *The New York Law Journal*, and *The National Law Journal*, and has administered over 6,500 cases.[50] The 2020 Antitrust Annual Report on Class Action Filings in Federal Court, published in August 2021, reports that from 2009-2020, KCC was the third top claims administrator by aggregate settlement amount and the second top claims administrator by number of settlements.[51] Computershare was established in Melbourne in 1978, became a publicly-traded company in 1994, and entered the US market in 2001.[52] It has a market value of nearly $6 billion and operates in 21 countries with more than 14,000 employees serving more than 40,000 clients.[53]

During the selection process, Class Counsel sought bids from four established settlement administrators, all of which recommended direct mail notice, media notice, a settlement website, and relatively similar plans for processing claims, deficiency letters, resubmissions, and payments.[54] Class

---

[49] Exhibit 1 at ¶ 1(l).

[50] *See* https://www.kccllc.com/our-services/class-action/what-we-do.

[51] *See* https://papers.ssrn.com/sol3/papers.cfm?abstract_id=3898782, Linked Document at 36.

[52] *See* https://www.computershare.com/us/our-history.

[53] *Id.*

[54] *See* Roberts Declaration at ¶ 15.

16

Counsel do not have any financial or other ties with KCC and have not worked with KCC in other cases over the last two years.[55] They selected KCC because of its competitive proposal and its decades of experience administering complex class action settlements.[56]

KCC has estimated the total cost of its administrative services, less discounts, to be $22,278, with approximately two-thirds of those costs relating to notice procedures.[57] As stated above, BMS has agreed to pay half of the first $400,000 of notice costs through the BMS Notice Fund. The other half of the first $400,000 of notice costs, all notice costs above $400,000, and all claims administration costs will be paid via the BMS Settlement Fund, subject to court approval. These estimated costs, representing less than 0.2% of the BMS Settlement Fund, are reasonable. Their experience, along with the reasonableness of their plans and costs when viewed alone and compared to bids submitted by three additional established entities, supports the appointment of KCC as Settlement Administrator and its affiliate, Computershare, as Escrow Agent.

### (b) The Proposed Manner of Notice

The proposed notice plan is comprised of three parts.[58] *First*, KCC will send direct notice via certified mail to each Settlement Class Member identified through transactional-level data produced in this litigation,[59] and will re-mail any returned notices to any alternate addresses available through postal service forwarding information.[60] Prior to the initial mailing, KCC will check all postal addresses against the National Change of Address (NCOA) database maintained by the USPS, certify them via the Coding Accuracy Support System (CASS), and verify them through Delivery Point Verification (DPV).[61]

*Second*, KCC will provide media notice via the *HDA Weekly Digest,* published by the Healthcare Distribution Alliance ("HDA"), the national organization representing primary

---

[55] *Id.* at ¶ 16.

[56] *Id.*

[57] *Id.* at ¶ 17.

[58] *See* Declaration of Carla A. Peak (Exhibit 3) at ¶¶ 9-12.

[59] *Id.* at ¶ 9.

[60] *Id.* at ¶ 10.

[61] *Id.*

pharmaceutical distributors.[62] The *HDA Weekly Digest* is an electronic publication aimed at educating its more than 4,500 subscribers with the most current news and activities in the healthcare supply chain, including information about conferences and seminars, research reports, and guidelines.[63]

*Third*, KCC will design, set up, and maintain a dynamic settlement website that will house the Notice, the Settlement Agreement, the motions for approval, the motion for expenses and incentive award, pertinent court orders, a Claim Form that Settlement Class Members can complete and submit online or print for manual completion and submission by mail, and any other important documents in the case.[64] The website address will be displayed in the notice documents and will be accessible via a hyperlink embedded in the paid notice appearing in the *HDA Weekly Digest.*[65]

This plan of sending "individual notice to all members who can be identified through reasonable effort" constitutes "the best notice that is practicable under the circumstances." *See* Fed. R. Civ. P. 23(c)(2)(B); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173-77 (1974). This is particularly true here where data should allow most, if not all, members to be identified. *See Hunt v. Check Recovery Sys., Inc.*, No. 05-cv-04993-MJJ, 2007 WL 2220972, at *3 (N.D. Cal. Aug. 1, 2007) ("Delivery by first-class mail can satisfy the best notice practicable when there is no indication that any of the class members cannot be identified through reasonable efforts."). The plan to supplement this direct notice with media notice and the settlement website further supports the conclusion that the proposed notice plan satisfies due process. This factor weighs in favor of preliminary approval.

### (c)     The Proposed Claim Form Process

The direct mail notice will include a claim form, pre-populated based on the transactional data referenced above.[66] Settlement Class Members will have an opportunity to verify the accuracy of the information on the pre-populated forms and/or challenge the accuracy of the pre-populated

---

[62] *Id.* at ¶ 11.

[63] *Id.*

[64] *Id.* at ¶ 12.

[65] *Id.*

[66] Exhibit 1(H) at ¶¶ 2-3.

information with supporting purchase records.[67] The Claims Administrator, with assistance from Dr. Lamb and his staff, shall review and process all claim forms and any challenges, after which the Claims Administrator shall advise the claimant in writing if an amendment has been made to its total qualifying purchases.[68]

Distributions will be made solely to Settlement Class Members who timely execute and return a valid Claim Form.[69] To maximize submissions, the Claims Administrator shall follow up by U.S. First Class mail with any Settlement Class Members that do not submit a Claim Form within 30 days prior to the Claim Form deadline, and then by telephone with any Settlement Class Members that do not submit a Claim Form with 15 days prior to the Claim Form deadline.[70] Any Settlement Class Members who submit timely but deficient Claim Forms shall be given 28 days from the date on which they are contacted by the Claims Administrator to cure the deficiency.[71] Class Counsel have conservatively estimated that with all of these follow-up procedures in place, at least 75% of class members will submit a claim form.[72]

Once all allocations are finalized, the Claims Administrator shall mail each Settlement Class Member who had timely submitted a valid Claim Form a check for its approved distribution, which shall be valid for a period of 90 days.[73] At least 14 days prior to the Final Fairness Hearing, the Claims Administrator and Dr. Lamb will submit declarations summarizing their efforts and the costs and

---

[67] *Id.* at ¶ 3.

[68] *Id.* at ¶¶ 7, 13, 14.

[69] *Id.* at ¶ 5.

[70] *Id.* at ¶ 6.

[71] *Id.* at ¶ 8.

[72] *See* Roberts Declaration at ¶ 18. As suggested by ND CA Procedural Guidance at § 1(g), Class Counsel have based this estimate on claim form return rates in other recent antitrust class actions involving direct purchaser plaintiffs. *See In re Restasis (Cyclosporine Ophthalmic Emulsion) Antitrust Litig.,* No. 18-md-02819, ECF 663 at ¶ 6 (E.D. N.Y. Mar. 23, 2021) (30 of 37 identified class members, or 81%, submitted claim forms; 2 assignees also submitted claims); *In re Asacol Antitrust Litig.,* No. 15-cv-12730, ECF 582-4 at ¶¶ 4-5 (Declaration) (D. Mass. Nov. 20, 2017) (notices mailed to 27 class members); *In re Asacol Antitrust Litig.,* No. 15-cv-12730, ECF 756 at 2 (Order) (D. Mass. Feb. 28, 2019) (23 (of 27) class members, or 85%, submitted claim forms).

[73] Exhibit 1(H) at ¶ 15.

1    expenses they incurred and expect to incur in connection with the Allocation Plan.[74]

2          It is anticipated that the entire Net BMS Settlement Fund will be distributed at one time, but

3    if amounts that are not *de minimis* remain in the fund 180 days after the initial distribution dates, such

4    amounts shall be distributed *pro rata* to claimants that timely cashed their settlement checks based on

5    the same formula used for the initial distribution.[75] If the amounts remaining are *de minimis* such that

6    a second distribution would not be economically feasible, such amounts shall be held in the escrow

7    account and included in any additional disbursements occurring in connection with this litigation.[76]

8    If no such additional disbursements occur, at the conclusion of this litigation, Settlement Counsel

9    shall make an application with the Court, with notice to BMS, addressing the proposed distribution

10   of those funds.[77] Unless the confidential reduction provision is triggered, no unclaimed amounts from

11   the BMS Settlement Fund will revert to BMS.

12         This factor weighs in favor of preliminary approval. *See Torres v. Pick-A-Part Auto Wrecking*,

13   No. 16-cv-01915, 2018 WL 306287, at *3-4 (E.D. Cal. Jan. 5, 2018) (finding no obvious deficiencies

14   in proposed agreement providing for non-reversionary cash fund to be divided among class members

15   who submit valid claims and release of liability narrowly tailored to claims).

16                            **iii.    Attorneys' Fees**

17         Class Counsel will not seek a fee award from this Settlement. They will seek only to recover

18   out-of-pocket expenses they have incurred so far in litigating this case, for an amount not to exceed

19   $2.5 million, to be paid from the Settlement Fund.[78] As addressed above, the Settlement is not

20   contingent on these expenses being awarded, and if the request is denied, the funds will revert to the

21   Settlement Class. This factor weighs in favor of preliminary approval.

22                            **iv.    Identification of Agreement**

23         The Settlement Agreement is attached as Exhibit 1 to the Roberts Declaration and Class

24   ───────────────────────

[74] *Id.* at ¶ 16.

25   [75] *Id.* at ¶ 17.

26   [76] *Id.*

27   [77] *Id.* Class Counsel do not contemplate requesting *cy pres* distribution.

28   [78] The motion for reimbursement of expenses will state the amount paid to date and, if requested by the Court, Class Counsel will provide an itemized list of expenses for *in camera* inspection.

1
2
3

Counsel are contemporaneously emailing for *in camera* inspection a copy of the agreement with confidential terms about reducing or terminating the Settlement. This factor weighs in favor of preliminary approval.

4

### d. Equitable Treatment of Class Members

5
6
7
8

The standard for approval of a proposed allocation plan is the same as the standard for approval of a class action settlement; each must be "fair, reasonable and adequate." *See In re Citric Acid Antitrust Litig.*, 145 F. Supp. 2d 1152, 1154 (N.D. Cal. 2001) (citations omitted). An allocation plan is reasonable if it "reimburses class members based on the type and extent of their injuries." *Id.*

9
10
11
12
13
14
15
16
17
18

The Plan of Allocation[79] provides that each claimant will receive a *pro rata* share of the Net Settlement Fund based on its total unit volume of applicable purchases, with varying weights applied depending on which drugs were purchased.[80] To address the fact that alleged damages stemming from the purchase of brand drugs are higher than those stemming from the purchase of generic drugs, full value will be placed on purchases of brand drugs for which no generic is available, a multiplier of 0.88 will be applied to brand purchases for which a generic was available, and a multiplier of 0.12 will be applied to generic purchases.[81] Further, the relative share of the Net Settlement Fund allocated to each concerned drug will be based on each drug's relative share of Extended Units in the IQVIA National Sales Perspectives Data from October 2016 through June 2021: Atripla (14%), Complera (5%), Evotaz (1%), Reyataz (7%), Stribild (7%), Sustiva (3%), and Truvada (63%).[82]

19
20
21
22
23
24

This plan should be deemed reasonable, given that "in this District, a '*pro-rata* [plan] for allocation has been used in many antitrust cases.'" *See In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. 07-cv-5944-JST, 2016 WL 721680, at *21 (N.D. Cal. Jan. 28, 2016) (quoting *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. 07-md-1827-SI, 2011 WL 7575004, at *4 (N.D. Cal. Dec. 27, 2011)); *see also In re Lidoderm Antitrust Litig.,* No. 14-md-2521, 2018 WL 11375216, at * 2 (N.D. Cal. Sept. 20, 2018). Indeed, courts throughout the nation have approved *pro rata* allocation plans in

25
26
27
28

---

[79] *See* Exhibit 1(H), produced in compliance with ND CA Procedural Guidance at § 1(f).

[80] *Id.* at ¶¶ 10-12.

[81] *Id.* at ¶¶ 10, 12.

[82] *Id.* at ¶ 11.

1    pharmaceutical antitrust class actions similarly alleging generic delay.[83]

2           The Allocation Plan allows for distribution of additional amounts from the BMS Settlement

3    Fund for litigation and administrative expenses, and for a named plaintiff service award,[84] for which

4    Class Counsel plan to request $10,000 to be paid to Plaintiff (KPH) in recognition of its assistance

5    with developing and pursuing this case, as will be described in the motion for approval of that award.

6    This minimal amount, representing less than 0.093% of the BMS Settlement Fund, is not indicative

7    of counsel allowing the "self-interests [of] certain class members to infect negotiations." *See Cuzick,*

8    2017 WL 4536255, at *6 (quoting *In re Bluetooth,* 654 F.3d at 947). Additionally, as with the request

9    for expenses, Class Counsel and BMS have agreed that this request for a plaintiff service award will

10   be considered separately from the Court's consideration of the fairness, reasonableness, and adequacy

11   of the Settlement, and that its resolution will not affect the Settlement.[85]

12          This proposed allocation plan is similar to the plan approved in the *Restasis* antitrust litigation,

13   where the same class representative (KPH) was represented by the same counsel (Michael Roberts

14   and Dianne Nast), who served on the Court-appointed Direct Purchaser Plaintiffs' Executive

15   Committee.[86] The court awarded amounts from the $51.25 million settlement fund to be paid to class

16   counsel ($16,423,921.65 for fees, $1,978,235.05 for expenses, up to $50,000 additional for expenses

17   without further submission) and the class representatives ($85,000 each to three class representatives,

18   $42,500 to a fourth class representative).[87] The court subsequently awarded amounts to be paid to the

19   claims administrator ($17,497.00) and the economic consultant who had assisted with the claims

20

21   _____

22   [83] *See, e.g., In re Restasis (Cyclosporine Ophthalmic Emulsion) Antitrust Litig.*, No. 18-md-02819, 2020 WL 6193857, at *3 (E.D. N.Y. Oct. 7, 2020); *In re Loestrin 24 Fe Antitrust Litig.*, No. 13-md-02472, ECF 1396-8 at 2-3, 6-8 (D.R.I. Jan. 22, 2020) (plan submitted); *In re Loestrin 24 Fe Antitrust Litig.*, No. 13-md-02472, 2020 WL 5203323, at *5 (D.R.I. Sept. 1, 2020) (plan approved); *In re Celebrex (Celecoxib) Antitrust Litig.*, No. 14-cv-00361, 2018 WL 2382091, at *3 (E.D. Va. Apr. 18, 2018); *In re Aggrenox Antitrust Litig.*, No. 14-md-02516, ECF 733-8 at 2-6 (D. Conn. Nov. 22, 2017) (plan submitted); *In re Aggrenox Antitrust Litig.*, No. 14-md-02516, 2017 WL 11636126, at *2 (D. Conn. Dec. 21, 2017) (plan approved).

26   [84] Exhibit 1(H) at ¶ 1 n.1. The Settlement also allows for these requests. *See* Exhibit 1 at ¶ 13(a).

     [85] Exhibit 1 at ¶ 13(b).

27   [86] *See In re Restasis*, 2020 WL 6193857, at *2, n.3.

28   [87] *Id.* at * 1, 6.

administration process ($12,226.50).[88] With court approval, the remaining balance (approximately $32 million)[89] was distributed on a *pro rata* basis to the 32 claimants that had submitted valid claim forms.[90] The plan here is even more reasonable, given the significantly lesser amounts being requested for payment to Class Counsel and the class representative. This factor weighs in favor of preliminary approval.

### 2. The Proposed Forms of Notice Satisfy the Guidance Provided in Rule 23(c)(2)(B), the Manual, and the ND CA Procedural Guidance

The proposed long-form notice states the following, as required by Rule 23(c)(2)(B): (1) the nature of the action (at No. 1); (2) the definition of the class certified (at No. 3); (3) the class claims, issues, or defenses (at No. 1); (4) that a class member may enter an appearance through an attorney if the member so desires (at No. 17); (5) that the court will exclude from the class any member who requests exclusion (at No. 13); (6) the time and manner for requesting exclusion (at No. 13); and (7) the binding effect of a class judgment on members under Rule 23(c)(3) (at Nos. 4, 8, 11-14).[91] All this information is likewise in the summary and publication notices, either directly or via direction to the long-form notice.[92]

The proposed long-form notice also includes additional information recommended by the *Manual* at § 21.312 by: (1) describing options and deadlines (at Nos. 6, 11-14); (2) describing essential terms (at No. 4); (3) disclosing any special benefits provided to the class representatives (at No. 10); (4) advising that no attorneys' fees will be requested and providing information regarding costs that will be requested (at No. 10); (5) indicating the time and place of the hearing to consider approval of the settlement (at No. 16); (6) explaining the procedures for allocating and distributing settlement funds (at No. 7); and (7) prominently displaying the procedure for making inquiries (at No.

---

[88] *See In re Restasis (Cyclosporine Ophthalmic Emulsion) Antitrust Litig.*, No. 18-md-02819, ECF 667, at ¶¶ 2-3 (E.D.N.Y. Apr. 8, 2021).

[89] *Id.,* ECF 663, at ¶ 16.

[90] *Id.,* ECF 667, at ¶ 4.

[91] *See* Exhibit 1(D).

[92] *See* Exhibit 1(B); Exhibit 1(E).

1   19).[93] All this information is likewise in the summary and publication notices, either directly or via

2   direction to the long-form notice.[94]

3     The proposed long-form notice also includes the additional non-duplicative information

4   recommended in the ND CA Procedural Guidance at § 3, including: (1) contact information for class

5   counsel (at No. 19); (2) the settlement website address (at No. 19); and (3) how to determine if the

6   final approval hearing date has changed (at No. 16).[95] All this information is likewise in the summary

7   and publication notices.[96] The long-form notice also includes much of the ND CA Procedural

8   Guidance's suggested language about how to access the case docket and Settlement Agreement (at

9   No. 19), how to opt out via the submission of minimal information to KCC (at No. 13), and how to

10  object via the submission of listed information to only the Court (at Nos. 12, 17).[97] In sum, the

11  proposed notices provide sufficient information to Settlement Class Members to satisfy due process.

12  **C. The Proposed Schedule Meets the Standard for Approval**

13    The schedule outlined in the proposed preliminary approval order provides for the notice

14  process to start within 45 days after entry of the order, with direct mail notice, publication notice, and

15  the live settlement website.[98] KCC would follow up with Settlement Class Members that have not

16  submitted claim forms via the postcard reminder notice 30 days later (75 days after entry of the order)

17  and via telephone 15 days after that (90 days after entry of the order).[99] The claim form deadline

18  would follow 15 days after that (105 days after entry of the order).[100] Settlement Counsel would move

19  for reimbursement of litigation expenses and payment of a class representative service award at least

20

---

21  [93] *See* Exhibit 1(D). As to item 6, the notice refers to *pro rata* distributions, without describing how
22  class members can calculate or estimate their individual recoveries, because calculations cannot be
    made until after all claim forms are received and processed

23  [94] *See* Exhibit 1(B); Exhibit 1(E).

24  [95] *See* Exhibit 1(D). As to item 2, the settlement website will contain links to the documents listed in
    the ND CA Procedural Guidance at § 3, as described in the Proposed Manner of Notice section above.

25  [96] *See* Exhibit 1(B); Exhibit 1(E).

26  [97] *See* ND CA Procedural Guidance at §§ 3-5; Exhibit 1(D).

    [98] Exhibit 1(A) at ¶ 14.

27  [99] *Id.* at ¶¶ 15, 16.

28  [100] *Id.* at ¶ 17.

56 days before the Final Approval Hearing,[101] and Settlement Class Members would have 35 days after that (until 21 days before the Final Approval Hearing) to opt out or object to the proposed settlement, litigation expense award, or class representative service award.[102] This proposed schedule comports with due process and complies with the timeline required by the ND CA Procedural Guidance at § 9.

## IV.   CONCLUSION

For all the foregoing reasons, Plaintiff respectfully requests that the Court certify the Settlement Class; preliminarily approve the Settlement, the proposed schedule, and the proposed manner and forms of notice; appoint NastLaw LLC and Roberts Law Firm as Co-Lead Settlement Counsel, KCC as Settlement Administrator, and Computershare as Escrow Agent; and set a schedule for the final approval process and the Final Approval Hearing.

Dated: April 13, 2022

Respectfully submitted,

By: /s/ *Francis O. Scarpulla*
Francis O. Scarpulla (Cal. Bar 41059)
**LAW OFFICES OF FRANCIS O. SCARPULLA**
3708 Clay Street
San Francisco, CA 94118
Telephone: (415) 751-4193
Fax: (415) 751-0889
fos@scarpullalaw.com

*Counsel for KPH Healthcare Services, Inc. a/k/a
Kinney Drugs, Inc. and Interim Liaison Counsel for
the Direct Purchaser Class Plaintiffs*

Dianne M. Nast (admitted *pro hac vice*)
Michele Burkholder (admitted *pro hac vice*)
**NASTLAW LLC**
1101 Market Street, Suite 2801
Philadelphia, PA 19107
Telephone: (215) 923-9300
dnast@nastlaw.com

Michael L. Roberts (admitted *pro hac vice*)
Erich Schork (admitted *pro hac vice*)
**ROBERTS LAW FIRM US, PC**
1920 McKinney Avenue, Suite 700

---

[101] *Id.* at ¶ 23.

[102] *Id.* at ¶ 17.

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
USDC/NDCA No. 3:19-02573-EMC / Related Case No. 3:20-cv-06961-EMC

1

2

Dallas, TX 75201
Telephone: (501) 952-8558Fax: (501) 821-4474
mikeroberts@robertslawfirm.us

3

4

*Counsel for KPH Healthcare Services, Inc. a/k/a*
*Kinney Drugs, Inc. and Interim Co-Lead Counsel for*
*the Direct Purchaser Class Plaintiffs*

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

USDC/NDCA No. 3:19-cv-02573-EMC / Related Case No. 3:20-cv-06961-EMC

**CERTIFICATE OF SERVICE**

I certify that on April 13, 2022, I served a true and correct copy of the Motion for Preliminary

Approval of Class Action Settlement by email to all counsel at the following email addresses.

Heather M. Burke
Jeremy Ostrander
WHITE & CASE LLP
3000 El Camino Real
2 Palo Alto Square, Suite 900
Palo Alto, CA 94306
hburke@whitecase.com
jostrander@whitecase.com

Peter J. Carney
Christopher M. Curran
WHITE & CASE LLP
701 Thirteenth Street, NW, Suite 600
Washington, DC 20005
pcarney@whitecase.com
ccurran@whitecase.com

Heather K. McDevitt
Bryan D. Gant
Gabriella E. Bensur
Alison Hanstead
Kristen O' Shaughnessy
Holly Tao
WHITE & CASE LLP
1221 Avenue of the Americas
New York, NY 10020
hmcdevitt@whitecase.com
bgant@whitecase.com
kristen.oshaughnessy@whitecase.com
holly.tao@whitecase.com
gabriella.bensur@whitecase.com
ahanstead@whitecase.com

*Attorneys for Defendants Gilead Sciences,
Inc., Gilead Holdings, LLC, Gilead Sciences,
LLC, Gilead Sciences Ireland UC*

Rebekah Conroy
STONE CONROY LLC
25 A Hanover Road, Suite 301
Florham Park, NJ 07932
rconroy@stoneconroy.com

*Attorney for Defendant Gilead Sciences, Inc.*

Daniel B. Asimow
ARNOLD & PORTER KAYE SCHOLER LLP
Three Embarcadero Center, 10th Floor
San Francisco, CA 94111-4024
daniel.asimow@arnoldporter.com

James L. Cooper
Anne P. Davis
Laura S. Shores
Michael A. Rubin
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Ave. NW
Washington, DC 20001
James.cooper@arnoldporter.com
Anne.davis@arnoldporter.com
laura.shores@arnoldporter.com
Michael.rubin@arnoldporter.com

Ada Victoria Añon
ARNOLD & PORTER KAYE SCHOLER LLP
ada.anon@arnoldporter.com
250 West 55th Street
New York, NY 10019

*Attorneys for Defendants Bristol-Myers Squibb
Company and E. R. Squibb & Sons, L.L.C.*

By: /s/ *Francis O. Scarpulla*
Francis O. Scarpulla

27

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28