UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STALEY, et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>GILEAD SCIENCES, INC., et al.,<br><br>    Defendants. | Case No. 19-cv-02573-EMC<br><br>**ORDER RE SUPPLEMENTAL BRIEFING AND/OR EVIDENCE**<br><br>Docket No. 1002 |

The Court has reviewed KPH's motion for preliminary approval of the class action settlement with BMS. The Court orders the parties to file a joint brief addressing the issues identified below. For some issues, it may be that only one party is called upon to provide a response. If the parties do not agree on an issue, then each may state, in the joint brief, its respective position. **The joint brief (including any supporting evidence, if necessary) shall be filed within one week of the date of this order.**

A.    <u>Settlement Class Definition and Release</u>

KPH acknowledges that the class definition in the complaint is broader than the settlement class definition. Whereas the class definition in the complaint refers to cART drugs generally, including but not limited to the defendant brand companies' drugs, *see* KPH Compl. ¶ 426 (defining the class as "[a]ll persons in the United States and its territories who directly purchased cART drugs from December 17, 2004 until the anticompetitive effects of Defendants' unlawful conduct cease"); *see also* KPH Compl. ¶ 351 (listing cART drugs), the settlement class definition refers to a subset of cART drugs. *See* Sett. Agmt. ¶ 1(p) (defining the settlement class as "all persons or entities in the United States and its territories who directly purchased Atripla, Evotaz,

Reyataz, Sustiva, Truvada, Complera or Stribild, or any of their generic equivalents, . . . from any Defendant or any brand or generic manufacturer from October 6, 2016 until October 19, 2021").

KPH has provided an explanation as to why the parties focused on this subset of drugs:

> The parties readily agreed to include the two drugs for which BMS and Gilead had entered into no-generic restraint agreements (Atripla and Evotaz), the two drugs that are components of Atripla (Truvada and Sustiva), and the BMS drug that is a component of Evotaz (Reyataz). After additional negotiation, the parties added two drugs referenced throughout the operative complaint – Complera and Stribild – in consideration of the fact that the Settlement Class would forego the right to file an appeal and, if successful, seek relief for those purchases based on an overarching conspiracy claim against BMS. Class Counsel also sought and obtained agreement to include generic purchases, consistent with their theory that higher brand prices trickle down to cause higher generic prices.

Roberts Decl. ¶ 11. However, the release in the settlement agreement seems to extend to all cART drugs (*i.e.*, is not limited to the subset of drugs). The parties shall address this difference between the settlement class definition and the scope of the release.

B.  Number of Settlement Class Members

The parties shall provide additional information on the number of settlement class members. (An estimate is acceptable.) The Lamb Declaration refers to 73 settlement class members but KPH admits that this is not the entirety of the class. *See* Lamb Decl. ¶ 2 ("I identified 73 Settlement Class Members based on my review of transaction-level sales data produced by Gilead [and certain other nondefendant companies] relating to sales of Truvada, Atripla, and Complera and known assignees provided to me by counsel").

C.  Plan of Allocation

The Plan of Allocation indicates that

> Plaintiff's expert economist, Dr. Russell Lamb, will calculate each Direct-Purchaser Settlement Class Member's percentage share of the Net BMS Settlement Fund as a function of (a) the amount (measured in units) of each Direct-Purchaser Settlement Class Member's purchases of Atripla, Complera, Evotaz, Reyataz, Sustiva, Stribild, and Truvada and their generic equivalents, (b) the Relevant Share (explained below) assigned to each concerned drug, and (c) a multiplier based on whether a drug is branded or generic (explained below).

POA ¶ 1. The Plan of Allocation also specifies that, with respect to (b), "[t]he relative share

allocated to each concerned drug will be based on each drug's share of Extended Units ("EUs") in the IQVIA National Sales Perspectives ('NSP') data from October 2016 through June 2021: Atripla (14%), Complera (5%), Evotaz (1%), Reyataz (7%), Stribild (7%), Sustiva (3%), Truvada (63%)." POA ¶ 11. KPH shall provide a clearer explanation of what "relative share" means here.

D.   Average Payout

What does KPH expect the average payout to be per settlement class member? KPH indicates that, "[b]ased on preliminary estimates of the likely number of claimants, Class Members may receive five-to-six figure settlement payments." Prop. Order ¶ 8. However, no further information or explanation is provided here.

E.   Maximum Damages Value and Litigation Risk

In its papers, KPH indicates that several of its liability theories against BMS essentially have zero value (*e.g.*, the theories based on the No-Generics Restraint in the Atripla Agreement and based on BMS being part of an overarching conspiracy). Is this correct?

If so, this leaves KPH with only the theory based on the No-Generics Restraint in the Evotaz Agreement. What was the maximum damages value of this theory and how was this value calculated? The Lamb Declaration states "I estimated B-G damages for Evotaz purchases in the amount of $31.1 million," Lamb Decl. ¶ 3, but there does not appear to be any further information or explanation.

What was the litigation risk associated with this theory of liability specifically? *See* Mot. at 14 (referring to general risks such as no class certification or decertification; also referring to a risk of the arbitration order being overturned). Both parties shall address litigation risk in the joint brief.

F.   Litigation Expenses

KPH indicates that it will not seek attorneys' fees from the $10.8 million gross settlement fund but that it will ask for up to $2.5 million in litigation expenses. KPH shall provide an estimate as to what its litigation expenses are to date. It would also be helpful for KPH to categorize its litigation expenses so that the Court may make some assessment at this stage as to whether the expenses are reasonable.

G.   Notice to the Class

In addition to direct mail notice, there shall be both electronic publication notice and digital notice. Is that correct?

Will the electronic publication notice, like the digital notice, be carried out through the *HDA Weekly Digest*? How long will the electronic publication notice be posted? How long will the digital notice be posted? Did the parties discuss publication notice (electronic or otherwise) or digital notice through a means other than the *HDA Weekly Digest*?

H.   Content of Notices and Claim Form

The Court has the following comments re the content of the notices and claim form.

1.   Summary Notice/Direct Mail Notice (Exhibit B to the Settlement Agreement)

- The first sentence of the summary notice ("If you purchased HIV cART drugs directly from the manufacturer, . . .") should be followed by a sentence stating what is the estimated average payout. Like the first sentence, the new sentence should be in the same size font and in bold.
- The paragraph beginning "A proposed settlement has been reached . . ." refers to the case name but does not provide any case number. The *KPH* case number should be provided, as well as a reference to main *Staley* case and case number (as that is where filings have largely been made).

2.   Postcard Reminder (Exhibit C to the Settlement Agreement)

- Similar to above, the bolded sentences at the beginning of the reminder should be followed by a sentence (also in bold) stating what is the estimated average payout.

3.   Long-Form Notice/Notice Posted on Settlement Website (Exhibit D to the Settlement Agreement)

- The first sentence of the long-form notice ("If you purchased HIV cART drugs directly from the manufacturer, . . .") should be followed by a sentence stating what is the estimated average payout. Like the first sentence, the new sentence should be in the same size font and in bold.
- The first bullet point should include the *KPH* case name and case number. It

4

should also refer to the main *Staley* case and case number.

- Question 1. There should also be a reference to the main *Staley* case and case number.
- Question 7. There should be a statement regarding the estimated average payout per class member.
- Question 12. The main *Staley* case and case number should also be specified.
- Question 13. Is it possible for opt-outs to be submitted electronically or online (*i.e.*, not just by mail)? Claim forms can be.

4. <u>Publication Notice (Exhibit E to the Settlement Agreement)</u>

- The first sentence of the publication notice ("If you purchased HIV cART drugs directly from the manufacturer, . . .") should be followed by a sentence stating what is the estimated average payout. Like the first sentence, the new sentence should be in the same size font and in bold.
- The paragraph beginning "A proposed settlement has been reached . . ." refers to the case name but does not provide any case number. The *KPH* case number should be provided, as well as a reference to main *Staley* case and case number.

5. <u>Blank and Pre-Populated Claim Forms (Exhibits F and G to the Settlement Agreement)</u>

- The pre-populated claim form (Exhibit G) appears to reference beginning dates and/or end dates (in multiple places) that do not match the class period dates. The parties shall explain the basis for the dates if they do not match the class period dates.

**IT IS SO ORDERED**.

Dated: April 19, 2022

_____
EDWARD M. CHEN
United States District Judge

5