JAMES L. COOPER (appearance *pro hac vice*)
james.cooper@arnoldporter.com
ANNE P. DAVIS (appearance *pro hac vice*)
anne.davis@arnoldporter.com
LAURA S. SHORES (appearance *pro hac vice*)
laura.shores@arnoldporter.com
ELISABETH S. THEODORE (appearance *pro hac vice*)
elisabeth.theodore@arnoldporter.com
**ARNOLD & PORTER KAYE SCHOLER LLP**
601 Massachusetts Ave., N.W.
Washington, D.C. 20001
Telephone:    202.942.5000
Facsimile:     202.942.4999

DANIEL B. ASIMOW (SBN 165661)
**ARNOLD & PORTER KAYE SCHOLER LLP**
Three Embarcadero Center, 10th Floor
San Francisco, CA 94111-4024
Telephone:    415.471.3100
Facsimile:     415.471.3400
Email: daniel.asimow@arnoldporter.com

Attorneys for Defendants
BRISTOL-MYERS SQUIBB COMPANY &
E. R. SQUIBB & SONS, L.L.C.

## IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| PETER STALEY, et al., on behalf of themselves and all others similarly situated,<br><br>*Plaintiffs*,<br><br>    v.<br><br>GILEAD SCIENCES, INC., et al.,<br><br>*Defendants*. | Case No. 3:19-cv-02573-EMC (lead case)<br><br>**BRISTOL-MYERS SQUIBB COMPANY AND E.R. SQUIBB & SONS LLC'S MOTION TO ENFORCE THE SETTLEMENT AGREEMENT AND TO ENJOIN THE NEW MEXICO ACTION**<br><br>Hrg:        June 30, 2022, 1:30 p.m.<br>Ctrm:      5 – 17th Floor<br>Judge:     Honorable Edward M. Chen |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## NOTICE OF MOTION

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD: PLEASE TAKE NOTICE that on June 30, 2022, at 1:30 p.m., or as soon thereafter as this matter may be heard, in the United States District Court for the Northern District of California, located at 450 Golden Gate Avenue, San Francisco, CA 94102-3489, in Courtroom 5 on the 17th Floor, before the Honorable Edward M. Chen, Defendants Bristol-Myers Squibb Company and E. R. Squibb & Sons, LLC (collectively, "BMS") will move the Court for an order enforcing the Settlement Agreement by enjoining an action against BMS pending in the First Judicial District Court in the County of Santa Fe, New Mexico (the "New Mexico Action"), and enjoining the New Mexico Attorney General from prosecuting that action against BMS, pursuant to the All Writs Act, 28 U.S.C. § 1651(a).  The Motion is based on this Notice of Motion and Motion to Enforce the Settlement Agreement and to Enjoin the New Mexico Action, the Memorandum of Points and Authorities, the Declaration of Ada Añon, all other pleadings and papers on file in this action, any other such matters upon which the Court may take judicial notice, the arguments of counsel, and any other matter the Court may properly consider.

## RELIEF SOUGHT

BMS seeks an order enforcing the Settlement Agreement by enjoining the New Mexico Action from proceeding against BMS and enjoining the New Mexico Attorney General from prosecuting that action against BMS.

1

## <u>**TABLE OF CONTENTS**</u>

2

Page

3

INTRODUCTION ................................................................................................................ 1

4

BACKGROUND ................................................................................................................. 1

5

    A.    The *Staley* Class Action ................................................................................ 1

6

    B.    The New Mexico Action ................................................................................ 2

7

    C.    This Court's Final Order and Judgment Approving the Class Settlement ............. 4

8

    D.    The Notice to New Mexico and New Mexico's Decision Not to Opt Out ............ 5

9

ARGUMENT ...................................................................................................................... 6

10

I.    THE COURT SHOULD ENFORCE THE CLASS SETTLEMENT AND ITS FINAL JUDGMENT BY ENJOINING THE PENDING ACTION IN NEW MEXICO ............... 6

11

    A.    The All Writs Act Permits Federal Courts to Enjoin State Court Proceedings Where Necessary to Effectuate Federal Judgments, Including Class Settlements ................................................................................................... 7

12

13

    B.    New Mexico Is Bound by the Class Settlement and Enjoining the New Mexico Action is Necessary and Appropriate to Effectuate this Court's Judgment ............ 9

14

15

        1.    The Final Order and Judgment Approving the Class Settlement is a Final Judgment on the Merits ................................................................. 9

16

17

        2.    The New Mexico Action and the *Staley* Action Involve the Same Cause of Action and Claims ................................................................. 10

18

19

        3.    The *Staley* Class Action and the New Mexico Action Involve the Same Party or Parties in Privity ......................................................... 12

20

    C.    The Settlement Agreement Precludes all the Claims in the New Mexico Action Against BMS ............................................................................................. 14

21

22

    D.    State Sovereign Immunity Did Not Prevent the Class Settlement from Extinguishing New Mexico's Claims ............................................................ 14

23

CONCLUSION ................................................................................................................. 23

24

25

26

27

28

1

## <u>TABLE OF AUTHORITIES</u>

2

<u>Page(s)</u>

3

<u>Cases</u>

4

*Arnold v. Anthem Inc.*,
    2019 WL 1048254 (N.D. Cal. Mar. 5, 2019) ............................................................................. 10
5

6

*Asante v. California Dep't of Health Care Servs.*,
    886 F.3d 795 (9th Cir. 2018) ...................................................................................................... 16
7

*Bland v. Fessler*,
    88 F.3d 729 (9th Cir. 1996) ........................................................................................................... 8
8

9

*Bowman v. UBS Fin. Servs., Inc.*,
    2007 WL 1456037 (N.D. Cal. May 17, 2007) ............................................................................ 13
10

*Brownell v. Chase Nat'l Bank of City of N.Y.*,
    352 U.S. 36 (1956) .......................................................................................................................... 8
11

12

*California ex rel. Lockyer v. Dynergy, Inc.*,
    375 F.3d 831 (9th Cir. 2004) ................................................................................................. 21, 22
13

14

*California v. Intelligender, LLC*,
    771 F.3d 1169 (9th Cir. 2014) ........................................................................................... *passim*
15

*Chick Kam Choo v. Exxon Corp.*,
    486 U.S. 140 (1988) ........................................................................................................................ 7
16

17

*Class Plaintiffs v. City of Seattle*,
    955 F.2d 1268 (9th Cir. 1992) ........................................................................................... *passim*
18

19

*Cohens v. Virginia*,
    19 U.S. 264 (1821) ............................................................................................... 20, 21, 23
20

*Cooper v. Fed. Rsrv. Bank of Richmond*,
    467 U.S. 867 (1984) ............................................................................................................. 15, 19
21

22

*Demint v. Nationsbank Corp.*,
    208 F.R.D. 639 (M.D. Fla. 2002) .............................................................................................. 13
23

24

*Fed. Mar. Comm'n v. S.C. State Ports Auth.*,
    535 U.S. 743 (2002) ..................................................................................................................... 21
25

*Flanagan v. Arnaiz*,
    143 F.3d 540 (9th Cir. 1998) ......................................................................................................... 7
26

27

*Hathorn v. Lovorn*,
    457 U.S. 255 (1982) ..................................................................................................................... 19
28

---

*Hesse v. Sprint Corp.*,
 598 F.3d 581 (9th Cir. 2010)............................................................................... 10, 11

*Howard v. Am. Online Inc.*,
 208 F.3d 741 (9th Cir. 2000)..................................................................................... 11

*In re Am. Invs. Life Ins. Co. Annuity Mktg. & Sales Pracs. Litig.*,
 2013 WL 3463503 (E.D. Pa. July 10, 2013).............................................................. 9

*In re Baldwin-United Corp. (Single Premium Deferred Annuities Ins. Litig.)*,
 770 F.2d 328 (2d Cir. 1985)........................................................................................ 9

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
 2014 WL 4181732 (N.D. Cal. Aug. 20, 2014)......................................................... 13

*In re Chase Bank USA, N.A. "Check Loan" Cont. Litig.*,
 2013 WL 772714 (N.D. Cal. Feb. 28, 2013) .............................................................. 8

*In re Chase Bank USA, N.A. "Check Loan" Cont. Litig.*,
 607 F. App'x 737 (9th Cir. 2015) ............................................................................... 8

*In re Columbia/HCA Healthcare Corp. Billing Practices Litig.*,
 93 F. Supp. 2d 876 (M.D. Tenn. 2000) ...................................................................... 8

*In re Corrugated Container Antitrust Litig.*,
 659 F.2d 1332 (5th Cir. 1981).................................................................................... 8

*In re Diet Drugs (Phentermine, Fenfluramine, Dexfenfluramine) Prods. Liab. Litig.*,
 282 F.3d 220 (3d Cir. 2002)........................................................................................ 8

*In re Ellett*,
 254 F.3d 1135 (9th Cir. 2001).................................................................................. 17

*In re Flonase Antitrust Litig.*,
 879 F.3d 61 (3d Cir. 2017)..................................................................... 20, 21, 22, 23

*In re Hewlett-Packard Co. Shareholder Derivative Litig.*,
 2015 WL 1153864 (N.D. Cal. Mar. 13, 2015) ......................................................... 10

*In re Joint E. & S. Dist. Asbestos Litig.*,
 134 F.R.D. 32 (E.D.N.Y. 1990) ................................................................................. 8

*In re Manufacturers Life Ins. Co. Premium Litig.*,
 2012 WL 12969312 (S.D. Cal. Apr. 3, 2012) ............................................................ 8

*In re Nat'l Football League Players' Concussion Injury Litigation*,
 2019 WL 95917 (E.D. Pa. Jan 3, 2019) ................................................................... 13

*In re Prudential Ins. Co. of Am. Sales Practices Litig.*,
 314 F.3d 99 (3d Cir. 2002)......................................................................................... 8

iv

*In re Prudential Securities Inc. Ltd. Partnerships Litigation*,
 164 F.R.D. 362 (S.D.N.Y.1996) ............................................................... 13

*In re Sch. Asbestos Litig.*,
 1991 WL 61156 (E.D. Pa. Apr. 16, 1991) ................................................... 9

*In re Sch. Asbestos Litig.*,
 950 F.2d 723 (3d Cir. 1991).......................................................................... 9

*In re Schimmels*,
 127 F.3d 875 (9th Cir. 1997)........................................................................ 19

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.*,
 2017 WL 2212783 (N.D. Cal. May 17, 2017) ............................................. 8

*Jacobs v. CSAA Inter-Ins.*,
 2009 WL 1201996 (N.D. Cal. May 1, 2009) ................................................ 8

*Juris v. Inamed Corp.*,
 685 F.3d 1294 (11th Cir. 2012)..................................................................... 7

*Kazi v. PNC Bank, N.A.*,
 2021 WL 965372 (N.D. Cal. Mar. 15, 2021)............................................... 10

*Keith v. Volpe*,
 118 F.3d 1386 (9th Cir. 1997)....................................................................... 7

*Lapides v. Bd. of Regents of Univ. Sys. of Ga*,
 535 U.S. 613 (2002).................................................................................... 21

*Leon v. IDX Sys. Corp.*,
 464 F.3d 951 (9th Cir. 2006)......................................................................... 9

*Lorillard Tobacco Co. v. Chester, Willcox & Saxbe*,
 589 F.3d 835 (6th Cir. 2009)......................................................................... 7

*McCormick v. Am. Equity Inv. Life Ins. Co.*,
 2016 WL 850821 (C.D. Cal. Feb. 29, 2016)....................................... 7, 8, 11

*Midkiff v. Tom*,
 725 F.2d 502 (9th Cir. 1984).......................................................................... 7

*Missouri v. Fiske*,
 290 U.S. 18 (1933)...................................................................................... 23

*Negrete v. Allianz Life Ins. Co. of N.A.*,
 926 F. Supp. 2d 1143 (C.D. Cal. 2013) ..................................................... 13

*New Mexico ex rel. King v. Capital One Bank (USA) N.A.*,
 980 F.Supp.2d 1346 (D.N.M. 2013) ...................................... 14, 15, 18, 19

v

*Penson v. Terminal Transp. Co.*,
 634 F.2d 989 (5th Cir. 1981) ................................................................. 13

*Phillips Petroleum Co. v. Shutts*,
 472 U.S. 797 (1985) ................................................................... 21, 22

*Pierce v. Cent. United Life Ins. Co.*,
 2011 WL 13183215 (D. Ariz. Dec. 29, 2011) ........................................ 13

*Rangel v. PLS Check Cashers of California, Inc.*,
 899 F.3d 1106 (9th Cir. 2018) ............................................................... 10

*Raquedan v. Centerplate of Delaware Inc.*,
 2018 WL 3368820 (N.D. Cal. July 10, 2018) ......................................... 10

*Reider v. Philip Morris USA Inc.*,
 2013 WL 12157871 (M.D. Fla. June 3, 2013) ......................................... 13

*Reyn's Pasta Bella, LLC v. Visa USA, Inc.*,
 442 F.3d 741 (9th Cir. 2006) ........................................................... 10, 12

*S. States Police Benev. Ass'n, Inc. v. First Choice Armor & Equip., Inc.*,
 241 F.R.D. 85 (D. Mass. 2007) ............................................................... 8

*Sloan v. Winn Dixie Raleigh, Inc.*,
 25 Fed. App'x. 197 (4th Cir. 2002) ...................................................... 13

*Spinelli v. Cap. One Bank, USA*,
 2012 WL 3609028 (M.D. Fla. Aug. 22, 2012) ....................................... 19

*State ex rel. Stratton v. Gurley Motor Co.*,
 737 P.2d 1180 (N.M. Ct. App. 1987) .................................................... 14

*TBK Partners, Ltd. v. W. Union Corp.*,
 675 F.2d 456 (2d Cir. 1982) ................................................................. 11

*Tennessee Student Assistance Corp. v. Hood*,
 541 U.S. 440 (2004) ................................................................... 22, 23

*Trabakoolas v. Watts Water Techs., Inc.*,
 2021 WL 3848044 (N.D. Cal. Aug. 27, 2021) ........................................ 8

*United States v. Peters*,
 9 U.S. (5 Cranch) 115 (1809) ......................................................... 20, 21

*Va. Office for Prot. & Advocacy v. Stewart*,
 563 U.S. 247 (2011) ............................................................................ 21

*Wis. Dep't of Corr. v. Schacht*,
 524 U.S. 381 (1998) ............................................................................ 21

vi

**Statutes and Constitutional Provisions**

U.S. Const. amend. XI ........................................................................................................ 21

28 U.S.C. § 1651(a) ............................................................................................................. 7

28 U.S.C. § 1715(b) ............................................................................................................. 5

28 U.S.C. § 2283 ................................................................................................................. 7

New Mexico Antitrust Act, N.M. Stat. Ann. §§ 57-1-1 et seq............................................. 2

New Mexico Unfair Practices Act, N.M. Stat. Ann. §§ 57-12-1 et seq............................... 2

N.M. Stat. Ann. § 57-12-8(A) ............................................................................................ 16

N.M. Stat. Ann. § 57-12-11 ......................................................................................... 17, 19

# MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

Bristol-Myers Squibb Company and E.R. Squibb & Sons, LLC (together, "BMS") bring this motion to enjoin an impermissible lawsuit by the State of New Mexico, which continues to litigate against BMS in New Mexico state court for claims that were resolved in an extensively negotiated settlement agreement between BMS and the class of End-Payor Plaintiffs.  As an End Payor through Medicaid and other healthcare programs, the State of New Mexico is a member of the class of End Payors, as are any citizens of the State of New Mexico who paid for the drugs at issue in this case. New Mexico did not opt out, and its claims were settled and released when this Court entered a final order and judgment certifying classes of End-Payor Plaintiffs who paid for Atripla and other HIV treatments between 2015 and 2021 and approving a class action settlement extinguishing Plaintiffs' claims against BMS.

New Mexico received notice of the settlement through multiple avenues approved by this Court, was indisputably aware of this action, and had more than four months to decide whether to remain a member of the class, object to the settlement, or opt out.  New Mexico chose to remain in the class, and is now bound by the Settlement Agreement, which this Court approved as fair and reasonable and which entitles New Mexico's citizens and New Mexico, as an End Payor itself, to compensation.  Under ordinary principles of res judicata, New Mexico is barred from seeking duplicative recovery by asserting claims arising out of the same conduct that the Settlement Agreement resolved.  This Court retained jurisdiction to enforce the Settlement Agreement, and it should do so by enjoining New Mexico's state-court lawsuit.

## BACKGROUND

### A.   The *Staley* Class Action

In May 2019, putative classes of End-Payor Plaintiffs filed this class action lawsuit against BMS, Gilead, and other defendants.  Plaintiffs' claims against BMS centered on alleged conduct by BMS and Gilead to delay the introduction of generic competition for the treatment of HIV, including with respect to Atripla, which was the first single tablet regimen to treat HIV and was created pursuant to BMS's and Gilead's joint venture agreement in 2004.  First Amended Consolidated Class Action

Complaint ("FAC")" ¶ 104-128, ECF No. 347.  Atripla is a combination of component drugs developed by BMS and Gilead; each company licensed its components to the joint venture.  Gilead terminated BMS from the Atripla joint venture in December 2017, once generic versions of BMS's component drug became available.  FAC ¶¶ 113, 128; End-Payor Motion for Preliminary Approval of Settlement, at 9, ECF No. 711.  Upon termination, Gilead continued to operate the joint venture and market Atripla without BMS.  FAC ¶ 389.  Plaintiffs also asserted claims related to a 2011 licensing agreement under which Gilead permitted BMS to develop a second HIV combination drug, Evotaz, by combining a BMS drug with Gilead's COBI, a booster drug then in development. *Id.* at ¶¶ 117, 119.

Plaintiffs alleged that BMS and Gilead had entered into so-called "No-Generics Restraints" that prevented each company from combining their own patented components of Atripla and Evotaz with generic versions of the other company's component.  *Id.* at ¶¶ 104-128.  Plaintiffs alleged in particular that the Atripla agreement "prevented BMS and every other manufacturer from competing against Atripla," *id.* at ¶ 109, and permitted BMS and Gilead to unlawfully maintain monopoly power and charge supracompetitive prices.  *Id.* at ¶ 486.  They asserted that the Atripla agreement violated the federal antitrust laws and various state antitrust and consumer protection laws, including the New Mexico Antitrust Act, N.M. Stat. Ann. §§ 57-1-1 et seq., and the New Mexico Unfair Practices Act, N.M. Stat. Ann. §§ 57-12-1 et seq.  *Id.* at ¶¶ 522(r), 535(r), 592(q), and 619(u).

Plaintiffs asserted that many of the "costs of these unlawfully monopolized drugs" are "borne" by state governments, and included state governments in their putative class of End Payors.  FAC ¶¶ 14, 457(c); *see also* Class Action Complaint ¶¶ 13, 412(c), ECF No. 1.

**B.    The New Mexico Action**

Almost two years later, in February 2021, the New Mexico Attorney General filed suit in New Mexico state court against BMS, Gilead, and Teva on behalf of the state of New Mexico (the "New Mexico Action").  Like the *Staley* case, the New Mexico Action purports to assert claims under the New Mexico Antitrust Act and the New Mexico Unfair Practices Act alleging that Gilead and BMS suppressed generic competition for HIV treatments, including Atripla.  *See* Complaint, *State of New Mexico ex rel. Balderas v. Gilead*, No. D-101-CV-2021-00377 (Feb. 24, 2021) ("New Mexico Compl.") (attached as Exhibit 1 to the Declaration of Ada Añon ("Añon Decl.")).  Like the *Staley* case,

the New Mexico Action alleges (as to BMS) that the Atripla joint venture contained a "'no generics' restraint," *id.* at ¶ 48, that "prevented Gilead and BMS (along with other manufacturers) from competing against Atripla," *id.* at ¶ 242, and that a delay in generic entry permitted BMS and Gilead to maintain a monopoly and supracompetitive prices, *id.* at ¶¶ 43, 49.

The New Mexico Action seeks damages on behalf of the state of New Mexico on the ground that it reimbursed purchasers for HIV treatments, including Atripla, at allegedly supracompetitive prices; damages on behalf of state residents who paid for HIV treatments; restitution; penalties; and injunctive relief. *Id.* at ¶¶ 375, 420, 443, 446. The New Mexico Action and the *Staley* class action thus, as to BMS, arise out of common predicate facts and seek overlapping relief on behalf of the same parties. Among other overlaps, both cases:

- Generally allege that Defendants engaged in conduct to monopolize and engaged in unfair trade practices in markets for drugs to treat HIV infection, and thereby suppressed generic competition;

- Arise from the same alleged conduct and alleged conspiracy regarding BMS's joint venture with Gilead to produce Atripla;

- Assert that an alleged "No Generics" restraint in that joint venture delayed generic entry;

- Allege that the Atripla joint venture was designed to extend exclusivity of Gilead's weak patents;

- Allege that but for the "No Generics" restraint, BMS could have or should have successfully challenged Gilead's related patents;

- Allege that the "No Generics" restraint allowed BMS and Gilead to charge supra-competitive prices for HIV treatments, including Atripla;

- Assert the rights of the state of New Mexico, New Mexico consumers, and New Mexico end payors, including third-party payors; and

- Bring claims under the New Mexico Antitrust Law and the New Mexico Unfair Practices Act.

In December 2021, the New Mexico court denied BMS's motion to dismiss, which focused on

1    a state-law statute of limitations argument.  The litigation has been largely inactive while BMS awaited

2    this Court's ruling giving final approval of the Class Settlement and release.

3              **C.      This Court's Final Order and Judgment Approving the Class Settlement**

4              On October 13, 2021, after over two years of litigation, BMS and the End-Payor Plaintiffs in

5    the *Staley* class action signed a proposed class action settlement agreement, to which this Court granted

6    final approval on May 6, 2022.  *See* Order Granting End-Payor Class Plaintiffs' Motion for Final

7    Approval of Settlement with Bristol-Myers Squibb Company and E.R. Squibb & Sons L.L.C. (May 6,

8    2022), ECF No. 1044 ("Final Order and Judgment"); Settlement Agreement Between the End-Payor

9    Classes and Bristol-Myers Squibb Company and E.R. Squibb & Sons L.L.C. (Nov. 4, 2021), ECF No.

10   711-2 ("Settlement Agreement").  The Atripla Settlement Class is defined and certified in this Court's

11   Final Order and Judgment to include all "persons or entities residing in the United States and its

12   territories who purchased, paid and/or provided reimbursement in (which shall include, with respect to

13   [third party payors], the state in which the [third party payor] has its principal place of business) any

14   of the Damages States for some or all of the purchase price for brand or generic Atripla … for

15   consumption by themselves, their families, or, with respect to [third party payors], by their members,

16   employees, insureds, participants, citizens, residents, or beneficiaries, other than for resale, during the

17   period May 14, 2015 through and until October 13, 2021."  Final Order and Judgment at 2.  Settlement

18   Classes for other HIV treatments are defined similarly.  *Id*. at 2–3.

19             Members of the Settlement Classes include individual consumers who purchased Atripla and

20   the other covered HIV treatments, as well as other payors who reimbursed for Atripla and other covered

21   HIV treatments, including the state of New Mexico.  Specifically, the term "Damages States" is defined

22   to include New Mexico, and the Settlement Class is defined to include all states other than a defined

23   set of  "Excluded States," which do not include New Mexico.  Settlement Agreement at 4-5, 10-11.

24   Excluded States are those states that, unlike New Mexico, are "by law … precluded from participation

25   as plaintiffs in private class action litigation."  *Id.* at 4-5; *see id.* at 10-11 (listing Excluded States).

26             As part of the settlement, BMS agreed to pay $10 million to compensate consumers and end

27   payors who purchased Atripla and other combination HIV drugs, with an agreed-upon diminution to

28   account for any class members that opted out of the settlement.  *Id.* at  3, 22-23.  The Settlement

Agreement also contained injunctive relief with respect to the Evotaz agreement.  Because the Atripla agreement had ended in 2017, however, the Settlement Agreement did not include injunctive relief with respect to Atripla; there was (and is) no ongoing conduct to enjoin.

The Court concluded that "the Settlement is in all respects fair, reasonable, and adequate to the End-Payor Classes," which include the State of New Mexico.  Final Order and Judgment ¶ 13. Members of the Settlement Classes, including consumers who purchased Atripla and other covered HIV treatments in New Mexico and the State of New Mexico itself, agreed to release against BMS "all claims in law or equity that were asserted against BMS or its affiliates in this Action with regard to … Atripla" and other covered HIV treatments and "all claims in law or equity [with regard to Atripla and other covered HIV treatments] that arise out of the facts, occurrences, transactions, or other matters alleged or asserted in this Action, whether known or unknown."  *Id.* at ¶ 16 (incorporating Settlement Agreement at 11).  As part of its Final Order and Judgment approving the Settlement Agreement, this Court "permanently enjoined and barred" members of the Settlement Classes and their agents and representatives from "prosecuting any action or other proceeding asserting any Released Claims against the Releasees."  Final Order and Judgment ¶ 26; *see* Settlement Agreement at 12 (defining "Releasors" to include all Class Members and their "agents and representatives").

**D.     The Notice to New Mexico and New Mexico's Decision Not to Opt Out**

This Court approved a notice plan on December 14, 2021 that was fully consistent with Rule 23, the Due Process Clause, and the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1715(b).  The Settlement Administrator provided direct notice of the settlement via U.S. mail to a database of approximately 42,000 entities, including third-party payors.  Settlement Agreement, Exhibit A, at ¶ 11. The Settlement Administrator also provided publication notice designed to reach over 80 percent of class members and posted the short-form and long-form notices, as well as the settlement itself, on the settlement website.  *Id.*, Exhibit E, at ¶ 7.

Additionally, on November 16, 2021, BMS sent notice of the Settlement Agreement directly to the Office of the Attorney General for the State of New Mexico.  *See* Añon Decl. ¶ 3 & Ex. 2.  New Mexico received a copy of the complaint and a copy of the Settlement Agreement, the Short Form Notice, and the Long Form Notice, including detailed information about who was included in the

1    Settlement Class and how to opt out.  *See id.* ¶ 4 & Ex. 2 (Notice Pursuant to Class Action Fairness

2    Act (Nov. 16, 2021)).

3        In particular, the Long Form Notice apprised New Mexico of the consequences of failing to

4    opt-out: "[i]f you do nothing, and the Court approves the Settlement, you will be bound by its terms.

5    Unless you exclude yourself from the Settlement Damages Classes you will be subject to the terms of

6    the release that applies to members of the Settlement Damages Classes."  Settlement Agreement,

7    Exhibit C, at 12.  The Long Form Notice further advised New Mexico that, by failing to opt out, "[y]ou

8    will be able to participate as a Settlement Class Member in the settlement and y*ou will give up rights*

9    *to be part of any other lawsuit* that asserts certain claims related to the allegations or claims against

10   BMS in this case."  *Id.* at 3 (emphasis added).

11       New Mexico and New Mexico's Attorney General thus received detailed written notice of the

12   pending Settlement Agreement and New Mexico's right to opt out.  Despite being indisputably aware

13   of the pending Settlement Agreement, and the fact that the State and its citizens are members of the

14   Settlement Classes, New Mexico chose not to opt out by the April 6, 2022 opt-out deadline.  Nor did

15   New Mexico file any objections for the Court to consider before final approval.  New Mexico therefore

16   became bound by the Settlement Agreement upon final approval on May 6, 2022.

17       On May 9, 2022, after this Court's final approval, counsel for BMS advised the New Mexico

18   Attorney General that all claims asserted against BMS in the New Mexico Action were released and

19   precluded by the settlement.  BMS advised New Mexico of the basis for its forthcoming motion and

20   asked New Mexico to voluntarily dismiss its claims against BMS, but New Mexico declined to do so.

21       This Court "retain[ed] exclusive jurisdiction over the Settlement and the Settlement

22   Agreement."  Final Order and Judgment ¶¶ 19, 28.  BMS accordingly now moves the Court to enforce

23   the Settlement Agreement and the Court's injunction barring class members from prosecuting released

24   claims against BMS.

25                                        **ARGUMENT**

26   **I.    THE COURT SHOULD ENFORCE THE CLASS SETTLEMENT AND ITS FINAL**

27   **JUDGMENT BY ENJOINING THE PENDING ACTION IN NEW MEXICO**

28       The Court should enforce the Settlement Agreement and its final judgment by enjoining the

---

6

New Mexico Action insofar as it concerns BMS and by enjoining the Attorney General from continuing to prosecute any claims against BMS.

A.   **The All Writs Act Permits Federal Courts to Enjoin State Court Proceedings Where Necessary to Effectuate Federal Judgments Approving Class Settlements**

The All Writs Act, 28 U.S.C. § 1651(a), "empowers the federal courts to enjoin state proceedings that interfere, derogate, or conflict with federal judgments, orders, or settlements." *Keith v. Volpe*, 118 F.3d 1386, 1390 (9th Cir. 1997); 28 U.S.C. § 1651(a) (authorizing federal courts to "issue all writs necessary or appropriate in aid of their respective jurisdictions"). Such injunctions are also expressly authorized by the Anti-Injunction Act, which allows a federal court to "grant an injunction to stay proceedings in a State court … to protect or effectuate its judgments." 28 U.S.C. § 2283. This provision in the Anti-Injunction Act is known as the "relitigation exception," and is "designed to permit a federal court to prevent state litigation of an issue that was previously presented to and decided by the federal court." *Chick Kam Choo v. Exxon Corp.*, 486 U.S. 140, 147 (1988).

Accordingly, "federal courts may enjoin state court proceedings in order to protect the res judicata effect of their own judgments." *Midkiff v. Tom*, 725 F.2d 502, 504 (9th Cir. 1984). Indeed, "the very purpose of the relitigation exception is to 'empower[ ] a federal court to be the final arbiter of the res judicata effects of its own judgments because it allows a litigant to seek an injunction from the federal court rather than arguing the res judicata defense in the state court.'" *McCormick v. Am. Equity Inv. Life Ins. Co.*, 2016 WL 850821, at *9 (C.D. Cal. Feb. 29, 2016) (quoting *Juris v. Inamed Corp.*, 685 F.3d 1294, 1340 (11th Cir. 2012)). And the relitigation exception "applies where, as here, the district court has expressly retained jurisdiction to construe and enforce a settlement agreement." *Flanagan v. Arnaiz*, 143 F.3d 540, 546 (9th Cir. 1998). Injunctions to bar state court litigation are particularly appropriate where the "federal case involves a complex class settlement." *Lorillard Tobacco Co. v. Chester, Willcox & Saxbe*, 589 F.3d 835, 848 (6th Cir. 2009).

Courts in this Circuit routinely employ the All Writs Act and relitigation exception to the Anti-Injunction Act to enforce class action settlements by enjoining state court proceedings that seek to relitigate or reassert the claims released in the class settlement. *See, e.g.*, *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1284, 1293 (9th Cir. 1992) (affirming injunction against ongoing state-court

litigation as part of class settlement approval); *Trabakoolas v. Watts Water Techs., Inc.*, 2021 WL 3848044, at *8 (N.D. Cal. Aug. 27, 2021) (enjoining further prosecution of state-court claims that were "based on an identical factual predicate of the claims at issue in the [settled] class action"); *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.*, 2017 WL 2212783, at *27 (N.D. Cal. May 17, 2017) (approving class action settlement, concluding that "a stay of all state court actions relating to the Released Claims is necessary to preserve the Court's jurisdiction," and "enjoin[ing] Class Members who have not opted out from participating in any state court litigation relating to the Released Claims"); *McCormick*, 2016 WL 850821, at *9 (enjoining "further prosecution of the [state-court] action" on the basis of prior settlement approval); *In re Chase Bank USA, N.A. "Check Loan" Cont. Litig.*, 2013 WL 772714, at *6 (N.D. Cal. Feb. 28, 2013), *aff'd in part, appeal dismissed in part*, 607 F. App'x 737 (9th Cir. 2015) (ordering absent class member to dismiss state-court action that was released by class settlement and imposing sanctions for non-compliance); *In re Manufacturers Life Ins. Co. Premium Litig.,* 2012 WL 12969312, at *7 (S.D. Cal. Apr. 3, 2012) (enforcing class action settlement and enjoining state-court action to the extent it concerned conduct covered by the release); *Jacobs v. CSAA Inter-Ins.*, 2009 WL 1201996, at *2 (N.D. Cal. May 1, 2009) (noting that "[a] district court may enjoin named and absent members who have been given the opportunity to opt out of a class from prosecuting separate class actions in state court").[1]

That the plaintiff in the New Mexico Action is a state attorney general is no barrier to issuing an All Writs Act injunction or applying ordinary principles of res judicata. *See Bland v. Fessler*, 88 F.3d 729, 738 (9th Cir. 1996) (noting that the "doctrine of claim preclusion" applies to the state "Attorney General"); *Brownell v. Chase Nat'l Bank of City of N.Y.*, 352 U.S. 36, 39 (1956) (holding that "familiar principles of res judicata" apply to relitigation efforts by the U.S. Attorney General). States are frequently themselves included as absent class members in federal class settlements, as are their citizens. *See S. States Police Benev. Ass'n, Inc. v. First Choice Armor & Equip., Inc.*, 241 F.R.D. 85, 93 (D. Mass. 2007).   The Ninth Circuit and other courts have accordingly enjoined state

---

[1] Courts in other jurisdictions do the same. *See, e.g., In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 314 F.3d 99, 104 (3d Cir. 2002); *In re Diet Drugs (Phentermine, Fenfluramine, Dexfenfluramine) Prods. Liab. Litig.*, 282 F.3d 220 (3d Cir. 2002); *In re Corrugated Container Antitrust Litig.*, 659 F.2d 1332, 1334-35 (5th Cir. 1981); *In re Columbia/HCA Healthcare Corp. Billing Practices Litig.*, 93 F. Supp. 2d 876, 881 (M.D. Tenn. 2000); *In re Joint E. & S. Dist. Asbestos Litig.*, 134 F.R.D. 32, 36 (E.D.N.Y. 1990).

governments from pursuing separate actions that would undermine the preclusive effect of a federal class settlement.  Thus, for example, in *California v. Intelligender, LLC*, 771 F.3d 1169 (9th Cir. 2014), the Ninth Circuit enjoined certain portions of a state court lawsuit brought on behalf of California because "sufficient privity exist[ed] between *Gram* class members and the State with respect to claims for restitution" to require preclusion of the restitution claims on the basis of the *Gram* class settlement. *Id.* at 1179.  Likewise, the Second Circuit has enjoined state-court actions brought by state Attorneys General in their representative capacity where doing so would interfere with ongoing class settlement negotiations.  *In re Baldwin-United Corp. (Single Premium Deferred Annuities Ins. Litig.)*, 770 F.2d 328 (2d Cir. 1985); *see also, e.g.*, *In re Am. Invs. Life Ins. Co. Annuity Mktg. & Sales Pracs. Litig.*, 2013 WL 3463503, at *5 (E.D. Pa. July 10, 2013) (enjoining Pennsylvania Attorney General from prosecuting state-court action seeking restitution or other damages relating to conduct covered by class action settlement); *In re Sch. Asbestos Litig.*, 1991 WL 61156, at *1 (E.D. Pa. Apr. 16, 1991), *aff'd*, 950 F.2d 723 (3d Cir. 1991) (enjoining Akron school district from pressing its claims in state court in light of pending class settlement).

As discussed in sections B and C, *infra*, all claims against BMS in the New Mexico Action are precluded by the Settlement Agreement.

### B. New Mexico Is Bound by the Class Settlement and Enjoining the New Mexico Action Is Necessary and Appropriate to Effectuate this Court's Judgment

Under the relitigation exception to the Anti-Injunction Act, federal courts enjoin ongoing state court actions that interfere with federal court judgments where the elements of res judicata are satisfied. *Intelligender*, 771 F.3d at 1176.  "Res judicata applies when the earlier suit: (1) reached a final judgment on the merits; (2) involved the same cause of action or claim; and (3) involved identical parties or privies." *Id.* (quoting *Leon v. IDX Sys. Corp.*, 464 F.3d 951, 962 (9th Cir. 2006)).  All three of those elements are satisfied here.

### 1. The Final Order and Judgment Approving the Class Settlement is a Final Judgment on the Merits

"It is well-settled that a class settlement resulting in final judgment is sufficient to meet the 'final and on the merits' element of res judicata, and 'is as conclusive a bar as a judgment rendered

1    after trial.'"  *Rangel v. PLS Check Cashers of California, Inc.*, 899 F.3d 1106, 1110 (9th Cir. 2018)

2    (internal quotation marks omitted); *see Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746

3    (9th Cir. 2006) (federal court's "approval of [a class] settlement constitute[s] a final judgment on the

4    merits" triggering application of res judicata).  Indeed, extinguishing claims by class members that do

5    not opt out is the very purpose of a class action settlement.

6            **2.    The New Mexico Action and the *Staley* Action Involve the Same Cause of**

7            **Action and Claims**

8            To determine whether a class action settlement involves the "same cause of action" or claim as

9    a proceeding sought to be enjoined, courts "look[] first to the release contained in the prior proceeding's

10   settlement agreement."  *Arnold v. Anthem Inc.*, 2019 WL 1048254, at *4 (N.D. Cal. Mar. 5, 2019)

11   (quoting *Raquedan v. Centerplate of Delaware Inc.*, 2018 WL 3368820, at *6 (N.D. Cal. July 10,

12   2018)).  "Specifically, the preclusive effect of the prior class action settlement extends to all causes of

13   action that were released by the prior proceeding's settlement agreement so long as those causes of

14   action are 'based on the identical factual predicate as that underlying the claims in the settled class

15   action.'"  *Raquedan*, 2018 WL 3368820, at *6 (quoting *Hesse v. Sprint Corp.*, 598 F.3d 581, 590 (9th

16   Cir. 2010)).  "Plaintiffs' claims [in a new action] are extinguished by [a class] settlement [where] the

17   two actions share an identical factual predicate."  *Reyn's Pasta Bella*, 442 F.3d at 744.  "Courts have

18   generally interpreted that [identical factual predicate] requirement to coincide with the general res

19   judicata test of whether claims share a 'common nucleus of operative fact.'"  *Kazi v. PNC Bank, N.A.*,

20   2021 WL 965372, at *15 (N.D. Cal. Mar. 15, 2021) (quoting *Class Plaintiffs*, 955 F.2d at 1288); *see*

21   *also, e.g.*, *In re Hewlett-Packard Co. Shareholder Derivative Litig.*, 2015 WL 1153864, at *5 (N.D.

22   Cal. Mar. 13, 2015) (same).

23           Here, both conditions are satisfied.  The release in the Settlement Agreement squarely extends

24   to the New Mexico Action, and the New Mexico Action and the *Staley* action share a common factual

25   predicate.  The Settlement Agreement's release covers "all claims in law or equity that were asserted

26   against BMS or its affiliates in [the *Staley*] Action with regard to … Atripla" and other covered HIV

27   treatments, and "all claims in law or equity [with regard to Atripla and other covered HIV treatments]

28   that arise out of the facts, occurrences, transactions, or other matters alleged or asserted in [the *Staley*]

1   Action, whether known or unknown." Final Order and Judgment ¶ 16 (incorporating Settlement

2   Agreement at 11). The New Mexico Action exclusively asserts claims under the New Mexico Antitrust

3   Act and the New Mexico Unfair Practices Act. The *Staley* Complaint asserts those same causes of

4   action. *See supra* at 2. Like the *Staley* Action, the New Mexico Action's claims against BMS focus

5   on the availability of generic competition with Atripla and other HIV treatments, including as a

6   consequence of the joint venture between BMS and Gilead. *See, e.g.*, N.M. Compl. ¶¶ 235-57. The

7   New Mexico Action and *Staley* Action claims arise out of the same transactions—namely, the same

8   alleged overcharges on purchases of HIV treatments in or by New Mexico caused by the same alleged

9   absence of generic competition. *See, e.g.*, *Howard v. Am. Online Inc.*, 208 F.3d 741, 747 (9th Cir.

10  2000) ("The *Hagen* settlement unequivocally bars claims that "arise out of or are related to the matters

11  referred to" in the complaint. Plaintiffs' RICO claims cite the identical billing allegations

12  as *Hagen.* The settlement bars the use of these claims by the same parties.").

13          To the extent that the New Mexico Action seeks any forms of relief or asserts any claims that

14  were not presented in *Staley*, that would not alter *Staley*'s claim preclusive effect. "[A] federal court

15  may release ... a claim 'based on the identical factual predicate as that underlying the claims in the

16  settled class action even though the claim was not presented *and might not have been presentable in

17  the class action*.'" *Class Plaintiffs*, 955 F.2d at 1287 (quoting *TBK Partners, Ltd. v. W. Union Corp.*,

18  675 F.2d 456, 460 (2d Cir. 1982); *see, e.g.*, *McCormick*, 2016 WL 850821, at *8 ("While each action

19  also asserts additional claims, the Ninth Circuit has held that federal district courts may properly release

20  claims not alleged in the underlying complaint "'where those claims depended on the same set of facts

21  as the claims that gave rise to the settlement.'"). In other words, whether or not New Mexico's claim

22  for civil penalties under the New Mexico Unfair Practices Act would "have been presentable" in the

23  *Staley* class action is irrelevant for this prong of claim preclusion; what matters is whether the civil

24  penalties claim depends on common facts relating to generic competition, which it does. *See also

25  Hesse*, 598 F.3d at 591 (explaining that, under the same reasoning, a "state court's approval of a

26  settlement agreement could release not only the state law fraudulent billing claims before it, but also

27  federal RICO claims arising from the same billing practices" even though the RICO claims were not

28  asserted in state court).

1

2

### 3.   The *Staley* Class Action and the New Mexico Action Involve the Same Party or Parties in Privity

3

Finally, the Class Settlement bars the New Mexico Action under the final prong of the res

4

judicata test, the "identical parties or privies" prong.  The New Mexico Action satisfies the "identical

5

parties" requirement because the State of New Mexico is itself a member of the Settlement Classes

6

this Court approved.  New Mexico alleges in its complaint that it has paid for Atripla and other HIV

7

treatments.  New Mexico Compl. 70.  And New Mexico is not an Excluded State under the Settlement

8

Agreement's definition of the Atripla Class or the other classes.  Settlement Agreement at 4-5, 10-11.

9

Accordingly, the State is a party to the class settlement "by virtue of [its] membership in the class."

10

*Reyn's Pasta Bella*, 442 F.3d at 747.  Indeed, New Mexico is entitled to recover damages under the

11

Settlement Agreement that would be duplicative of the damages New Mexico seeks in the New

12

Mexico Action.

13

Separately and in addition, insofar as the Attorney General in the New Mexico Action is

14

bringing claims in a representative capacity on behalf of New Mexico citizens who purchased Atripla

15

and other HIV treatments, those individuals are also members of the settlement classes, and the

16

Attorney General is in privity with them.  *See* New Mexico Compl. ¶¶ 375, 420, 432-33 (identifying

17

"New Mexico persons" who paid supracompetitive prices as a group entitled to relief under the New

18

Mexico Antitrust Act and New Mexico UPA).  All individual consumer purchasers of Atripla and other

19

HIV treatments in New Mexico were members of the Settlement Classes and are eligible to seek

20

compensation from the Claims Administrator.  As the Ninth Circuit has held, "[w]hen a government

21

entity sues for the same relief that "plaintiff [has] already pursued then the requisite closeness of

22

interests for privity is present."  *Intelligender*, 771 F.3d at 1179.

23

### 4.   New Mexico Chose Not to Opt Out

24

New Mexico could easily have extracted itself from the Settlement Classes by opting out

25

during the months-long opt-out period, but it chose not to do so.  And the mere pendency of the New

26

Mexico Action—which was filed in February 2021, before the class notice was published and the

27

opt-out period began—does not constitute adequate notice of a desire to opt out.  "[T]he weight of

28

authority … is clear: filing an individual case prior to the opt-out period and continuing to litigate that

case through the opt-out period is insufficient" to opt out of a related class action.  *In re Cathode Ray Tube (CRT) Antitrust Litig.*, 2014 WL 4181732, at *5 (N.D. Cal. Aug. 20, 2014); *see, e.g., Sloan v. Winn Dixie Raleigh, Inc.*, 25 Fed. App'x. 197 (4th Cir. 2002) (holding that the "maintenance of [a] suit in North Carolina" was not "adequate notice of [a] desire to opt out of [a] class action in Florida" because the North Carolina suit was "initiated prior to the receipt of the proposed settlement"); *Penson v. Terminal Transp. Co.*, 634 F.2d 989, 996 (5th Cir. 1981) ("A judgment or consent decree entered in a class action can bind the absent class member even though the member had filed a claim or instituted a personal suit before the decision in the class action."); *In re Nat'l Football League Players' Concussion Injury Litigation*, 2019 WL 95917, at *6 (E.D. Pa. Jan 3, 2019) ("Merely continuing to maintain a lawsuit filed before the opt-out period is not a reasonable indication of a desire to opt out."); *Negrete v. Allianz Life Ins. Co. of N.A.*, 926 F. Supp. 2d 1143, 1157-58 (C.D. Cal. 2013) ("While filing of an individual lawsuit *during* the pendency of the opt-out period is an effective expression of a class member's desire to opt out, courts have repeatedly found that maintenance of a separate lawsuit, which was initiated *prior* to the plaintiff receiving notice of the proposed settlement, does not serve as an opt-out from the class settlement." (citation and internal quotation marks omitted)); *Demint v. Nationsbank Corp.*, 208 F.R.D. 639, 641 (M.D. Fla. 2002) ("The mere pendency and continued prosecution of a separate suit, which the litigant instituted before commencement of the 'opt out' period in a related class action, neither registers nor preserves a litigant's election to 'opt out' of the related class action."); *In re Prudential Securities Inc. Ltd. Partnerships Litigation*, 164 F.R.D. 362, 370 (S.D.N.Y.1996) ("It is well-established that pendency of an individual action does not excuse a class member from filing a valid request for exclusion." (internal quotation marks omitted)); *Reider v. Philip Morris USA Inc.*, 2013 WL 12157871, at *3 (M.D. Fla. June 3, 2013) (similar); *Pierce v. Cent. United Life Ins. Co.*, 2011 WL 13183215, at *6 (D. Ariz. Dec. 29, 2011) (similar); *Bowman v. UBS Fin. Servs., Inc.*, 2007 WL 1456037, at *2 (N.D. Cal. May 17, 2007) (similar).

1

2

**C.      The Settlement Agreement Precludes all the Claims in the New Mexico Action Against BMS**

3

4

In the New Mexico Action, the Attorney General seeks three categories of relief against BMS. Each category is precluded and released by the Settlement and barred under principles of res judicata.

5

6

**1.      Damages and Restitution on Behalf of New Mexico Residents under State Antitrust Law and the UPA**

7

8

9

10

11

12

The Attorney General brings claims for restitution on behalf of "New Mexico persons" under the New Mexico Unfair Practices Act, and for overpayment damages on behalf of "New Mexico persons" under the Unfair Practices Act and the New Mexico Antitrust Act. New Mexico Compl. ¶¶ 375, 420, 446; *see also State ex rel. Stratton v. Gurley Motor Co.*, 737 P.2d 1180, 1183 (N.M. Ct. App. 1987) (noting that the "UPA authorizes the attorney general to pursue injunctive relief and restitution *to injured persons*") (emphasis added).

13

14

15

16

17

18

19

20

21

22

23

24

25

26

These claims are precluded by the Ninth Circuit's decision in *Intelligender*, which enjoined the California Attorney General from seeking restitution under California's unfair competition and false advertising law on behalf of California residents who were members of a settlement class. The court explained that the "certified class"—there, all the individuals who "purchased and used" a pregnancy gender-reveal test—"covered … substantially the same individuals for whom the State now seeks restitution." 771 F.3d at 1179. The court explained that, under CAFA, if California believed that the class settlement's compensation regime for its residents was insufficient, it needed to "interven[e] after receiving notice of the proposed settlement," not pursue a separate lawsuit on behalf of its own residents whose claims had been released. *Id.* at 1179-80. "The State chose not to use its authority, and the settlement was approved. Compensation is res judicata." *Id.* The court further explained that "[a]llowing the State's claims for restitution to advance would undermine … 'longstanding principles of preclusion,' which we and other courts have recognized time and again under the basic rule that when the government seeks individual relief on behalf of an already defeated litigant, res judicata usually applies." *Id.* at 1181.

27

28

Likewise, in *New Mexico ex rel. King v. Capital One Bank (USA) N.A.*, 980 F.Supp.2d 1346 (D.N.M. 2013), the court precluded the New Mexico Attorney General from seeking "compensation

for … individual consumers" under the Unfair Practices Act where those individuals were bound by a prior class action settlement concerning the same allegedly unfair practices. *Id.* at 1353. The court explained that New Mexico's Attorney General was in privity with New Mexico's residents with respect to any claims inuring to the benefit of individual consumers, and accordingly enjoined all aspects of the Attorney General's lawsuit seeking "consumer relief." *Id.* at 1353-54, 1356.

Accordingly, under a straightforward application of *Intelligender* and *Capital One Bank*, all of New Mexico's claims for compensation on behalf of its residents must be enjoined.

### 2. Damages, Restitution, and Injunctive Relief on Behalf of the State as an End Payor under State Antitrust Law and the UPA

The Attorney General also seeks damages, restitution, and injunctive relief on behalf of the State in its capacity as an end payor reimbursing for the cost of Atripla and other HIV treatments under Medicaid and other healthcare programs. The New Mexico Action asserts that New Mexico was "injured in its business or property in the form of reimbursements for Defendants' drugs," and that those injuries are compensable and warrant injunctive relief under the New Mexico Antitrust Act and UPA. New Mexico Compl. ¶¶ 375, 420, 446. That category of injuries, too, is precluded by the Class Settlement and must be enjoined.

As noted above, New Mexico is a member of the Settlement Class, and in particular it is a member of the "Atripla Settlement Damages Class," which includes "all persons or entities residing in the United States and its territories who purchased, paid and/or provided reimbursement," including all non-Excluded States that reimbursed for Atripla. New Mexico is a member of similarly-defined damages classes for the other covered HIV treatments. The Settlement Agreement entitles those end-payor States to financial compensation for their reimbursements, which will be allocated pursuant to the Agreement. "There is of course no dispute that under elementary principles of prior adjudication a judgment in a properly entertained class action is binding on class members in any subsequent litigation." *Cooper v. Fed. Rsrv. Bank of Richmond*, 467 U.S. 867, 874 (1984). *Intelligender*'s reasoning makes clear that a state that is itself a member of a settlement class on the ground that it overpaid for a product cannot later bring state-law claims asserting that it overpaid for the same product. The Ninth Circuit declared it "axiomatic that final, court-approved settlements preclude

class members from seeking the same relief for the same claims a second time." *Intelligender*, 771 F.3d at 1180. And CAFA does not "except[] the State from longstanding principles of res judicata." *Id.* at 1182.[2]

Intelligender*'s discussion of the circumstances in which a class settlement can preclude claims by a state in its sovereign capacity, discussed further below, is not relevant to this aspect of the New Mexico Action. "[S]tates are not merely regulators, they are also economic actors that participate in the marketplace." *Asante v. California Dep't of Health Care Servs.*, 886 F.3d 795, 800 (9th Cir. 2018). And when a state reimburses drug purchasers as part of its administration of Medicaid or other programs, it is acting in a proprietary or business capacity, not in a sovereign or regulatory capacity. *Id.* at 800-02 (holding that when a State "purchase[s] benefits for its citizens," such as "medical services for the beneficiaries" of Medi-Cal, its activities are proprietary and "may be analogized to the activity of a private entity"). New Mexico itself pleads that it has been injured in its "business and property," not in any sovereign capacity, with respect to its own alleged overpayments. New Mexico Compl. ¶¶ 375, 420, 446. Accordingly, its claims on its own behalf for compensation under state antitrust law and the UPA must be enjoined.

### 3. Enforcement and Civil Penalties under the New Mexico UPA

The New Mexico Action also includes an enforcement action, seeking injunctive relief and civil penalties under the New Mexico UPA, on behalf of the state of New Mexico. Because New Mexico as a state is itself a member of the Settlement Classes, is bound by the Settlement Agreement, and released "all" claims arising out of the "facts, occurrences, [and] transactions" relating to Atripla and other covered HIV treatments, New Mexico's enforcement and civil penalty claims also must be enjoined. Final Order and Judgment ¶ 16 (incorporating Settlement Agreement at 11).

a. Under the New Mexico UPA, "[w]henever the attorney general has reasonable belief that any person is using, has used or is about to use any method, act or practice which is declared by the Unfair Practices Act to be unlawful, and that proceedings would be in the public interest, he may bring an action in the name of the state alleging violations of the Unfair Practices Act." N.M.S.A.

---

[2] *Intelligender* did not directly address preclusion of the state as class member because California had not paid for any gender-reveal tests and was not a member of the settlement class; California's separate state-court lawsuit accordingly did not pursue any compensation for purchases by the state, just purchases by individuals.

§ 57-12-8(A).  The UPA further states that the "attorney general, upon petition to the court, may recover, on behalf of the state of New Mexico, a civil penalty of not exceeding five thousand dollars ($5,000) per violation."  N.M.S.A. § 57-12-11.

Here, however, the "state of New Mexico," *id.*, released "*all claims* in law or equity" relating to Atripla and other covered HIV treatments "that arise out of the facts, occurrences, transactions, or other matters alleged or asserted in this Action, whether known or unknown."  Final Order and Judgment ¶ 16 (incorporating Settlement Agreement at 11) (emphasis added).  Enforcement actions and claims for civil penalties under the UPA constitute claims in law or equity, and they are subject to the release because New Mexico is a class member.  And where federal law, including federal res judicata principles, so requires, federal courts may issue injunctions that prevent states from collecting penalties.  "Indeed," as the Ninth Circuit has noted, "in *Ex Parte Young* itself, the federal injunction barred the State's Attorney General from collecting substantial monetary penalties against railroads." *In re Ellett*, 254 F.3d 1135, 1144 (9th Cir. 2001).

The fact that the *Staley* complaint did not itself seek civil penalties, and that the Settlement Agreement recovered damages but not civil penalties on behalf of New Mexico, does not diminish the judgment's preclusive effect on claims for civil penalties.  The Ninth Circuit has squarely held that a federal class settlement extinguishes legal claims arising out of the same factual predicate even where the particular cause of action was not and could not have been brought as part of the federal district court action.  In *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, for example, a federal district court approved a class settlement of securities law claims relating to the issuance of certain bonds by the state of Washington and other defendants.  *Id.* at 1274-75.  Class members who had brought a state law, state court action for damages against Washington argued that the district court settlement could not release the state law damages claims because they could not have been asserted in the federal court action as a consequence of sovereign immunity.

The Ninth Circuit rejected that argument: "The weight of authority holds that a federal court may release not only those claims alleged in the complaint, but also a claim based on the identical factual predicate as that underlying the claims in the settled class action even though the claim was not presented *and might not have been presentable in the class action*."  *Class Plaintiffs*, 955 F.2d at

1287 (internal quotation marks omitted).  "Even when the court does not have power to adjudicate a claim, it may still approve release of that claim as a condition of settlement of an action before it." *Id.* at 1287-88 (cleaned up).  "[W]here a particular type of relief potentially available to the class members is compromised in the settlement process, *it is mainly irrelevant whether or not that relief was specifically requested in the complaint*."  *Id.* (internal quotation marks omitted).  The Ninth Circuit thus held that the class settlement properly "approve[d] [the] release" of all claims by absent class members arising out of the "same common nucleus of operative fact as those set forth" in the class action.  *Id.*; *see also Capital One Bank*, 980 F. Supp. 2d at 1354 (explaining that a new lawsuit does not arise out of a "different nucleus of operative facts simply because it is alleging claims under a new legal theory").

b.      Although the Ninth Circuit held in *Intelligender* that the portion of a state enforcement action seeking civil penalties was not precluded by California's "failure to object to a CAFA settlement" by individual state residents, 771 F.3d at 1178, the class settlement here is factually and legally distinguishable.  BMS's argument for precluding New Mexico's UPA penalty claims does not turn on New Mexico's receipt of a CAFA notice or its residents' participation in a class settlement, but on New Mexico's *own* participation *as a member of the settlement class*.  The reasoning of *Intelligender* fully supports preclusion of penalty claims under these circumstances.

As noted, *Intelligender* involved a class settlement of claims for deceptive marketing relating to the sale of pregnancy gender-reveal tests.  The settlement class was limited to "all individuals who personally purchased" and "personally used the Test."  771 F.3d at 1175.  California as a state was *not* a member of the settlement class; in fact, California has passed a law excluding itself from class action settlements, and it is thus an Excluded State in the *Staley* Class Settlement for that reason.  Settlement Agreement at 10-11.  Moreover, California was not a class member because it never alleged (nor could it) that it ever paid for or reimbursed for the gender-reveal product at issue, unlike here where it is undisputed that New Mexico reimbursed for the HIV treatments.  Because California was not a party to the *Intelligender* settlement, the Ninth Circuit explained that "whether sufficient *privity* exists between the State and the class members to warrant the application of res judicata[] is the crux of this case."  *Intelligender*, 771 F.3d at 1176 (emphasis added).  The court ultimately held

18

that, while California was in privity with its individual residents for purposes of the private, restitution aspect of its enforcement action, a "CAFA class action settlement could [not] bind the State in its sovereign capacity" with respect to "public" interests. *Id.* at 1177.  The court cited a variety of cases applying the "general principle" that "the government is not bound by *private* litigation when the government's action seeks to enforce a federal statute that implicates both public and private interests." *Id.* (emphasis added; internal quotation marks omitted).  In the analogous federal enforcement context, *Intelligender* noted, "'the Attorney General is not bound by the resolution of [claims involving enforcement of federal law] in cases *to which he was not a party*.'" *Id.* (quoting *Hathorn v. Lovorn*, 457 U.S. 255, 268 n.23 (1982) (emphasis added)).  "'Common notions of collateral estoppel suggest that [court] proceedings similarly would not bind other interested persons *who did not participate in them*.'" *Id.* (quoting *Hawthorn*, 457 U.S. at 268 n.23 (emphasis added)).

Here, however, it is irrelevant whether New Mexico is in "privity" with its citizens for purposes of enforcing sovereign rights under the UPA "on behalf of the state of New Mexico." N.M.S.A. § 57-12-11.  New Mexico was itself a party to the suit as a member of the Settlement Classes that chose not to opt out, and so all of its claims—public or private—are precluded by the broad settlement release as a consequence of its failure to opt out.  *Cf. Capital One Bank*, 980 F. Supp.2d at 1352 (explaining that courts have declined to enjoin subsequent state enforcement claims seeking civil penalties where, unlike here, the prior class settlement "did not bind the States" and where the states "were not defined as class members and did not have an opportunity to participate in the litigation or opt out of the class"); *Spinelli v. Cap. One Bank, USA*, 2012 WL 3609028, at *2 (M.D. Fla. Aug. 22, 2012) (same).

As *Intelligender* makes clear, while CAFA safeguards the ability of a State "to participate, comment, or object during the Rule 23 class action settlement process," "it does not … except[] the State from longstanding principles of res judicata." *Intelligender*, 771 F.3d at 1182.  Under those longstanding principles as discussed above, when a party settles its claims as part of a class action by not opting out, it settles *all* claims arising out of the common nucleus of predicate facts.  *Cooper*, 467 U.S. at 874; *Class Plaintiffs*, 955 F.2d at 1287-88; *see also In re Schimmels*, 127 F.3d 875, 883 (9th Cir. 1997) (holding that, because the "government is the true party in interest in any *qui tam* action,"

a judgment in the qui tam action precluded the government from relitigating any claims arising out of same facts).  Here, these core principles fully apply to New Mexico's claimed civil penalties because those claimed penalties "arise out of" the very same New Mexico "transactions"—for example, payments for Atripla that were allegedly too high because of a lack of generic competition—as the New Mexico "transactions" that gave rise to the New Mexico claims in the *Staley* litigation and the release in the class settlement.

### D. State Sovereign Immunity Did Not Prevent the Class Settlement from Extinguishing New Mexico's Claims

In refusing to dismiss New Mexico's settled claims in response to BMS's request, the New Mexico Attorney General principally argued that state sovereign immunity prevented New Mexico from being bound as an absent class member by the Class Settlement.  But state sovereign immunity does not apply here, and the principal case on which the Attorney General relied, *In re Flonase Antitrust Litigation*, 879 F.3d 61 (3d Cir. 2017), is not binding on this Court and was wrongly decided. Supreme Court precedent makes clear both that state sovereign immunity applies only to suits *against* states aligned as *defendants*, and that absent class members who are bound as members of Rule 23 opt-out classes are plaintiffs, not defendants.

Two centuries of Supreme Court precedent makes clear that state sovereign immunity only applies when the state is a defendant.  As early as 1809, the Court recognized that state sovereign immunity "exempts states *from being sued* in [federal] courts by individuals." *United States v. Peters*, 9 U.S. (5 Cranch) 115, 139 (1809) (emphasis added).  But it has no application when a state is aligned as a plaintiff:  "The right of a state to assert, as plaintiff, any interest it may have in a subject … in one of the courts of the United States, is not affected by th[e] [Eleventh] amendment." *Id.  Peters* thus held that, because a "suit was not instituted against the state," there was no sovereign immunity, even though adjudicating the suit would affect the state's claim to title in property. *Id.* at 139-40.

The Court reiterated the point in *Cohens v. Virginia*, 19 U.S. 264 (1821), holding that sovereign immunity "extend[s] to suits commenced or prosecuted by individuals, but not to those brought by States." *Id.* at 407.  "[I]t [i]s intended for those cases, and for those only, in which some demand against a State is made by an individual in the Courts of the Union." *Id.  Cohens* explained

that, "[b]y a suit commenced by an individual *against* a State, we should understand process sued out by that individual *against* the State, for the purpose of establishing some claim *against* it." *Id.* at 408 (emphasis added).

The rule that states can only claim sovereign immunity when they are defendants in a lawsuit is reflected in the text of the Eleventh Amendment, which divests the federal courts of jurisdiction over "any suit in law or equity, commenced or prosecuted *against* one of the United States by Citizens of another State." U.S. Const. amend. XI (emphasis added). And it has been reiterated by the Supreme Court in case after case in the two centuries since *Cohens* and *Peters*. *See, e.g.*, *Va. Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 253 (2011) (describing state sovereign immunity as "the privilege of the sovereign not to be sued without its consent"); *Fed. Mar. Comm'n v. S.C. State Ports Auth.*, 535 U.S. 743, 752 (2002) (sovereign immunity is "immunity *from* private suits") (emphasis added); *Lapides v. Bd. of Regents of Univ. Sys. of Ga*, 535 U.S. 613, 616 (2002) (similar); *Wis. Dep't of Corr. v. Schacht*, 524 U.S. 381, 389 (1998) (similar).

The Ninth Circuit, too, has held that "plaintiff states may not invoke the [Eleventh] Amendment," because history and Supreme Court precedent "plainly understands sovereign immunity as protection from *being sued*." *California ex rel. Lockyer v. Dynergy, Inc.*, 375 F.3d 831, 846-48 (9th Cir. 2004) (emphasis in original). *Lockyer*—not *Flonase*—is binding precedent here.

The rule that state sovereign immunity does not protect plaintiffs is dispositive of any sovereign immunity issue here, because the Supreme Court held in *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797 (1985), that absent class members are always properly viewed as plaintiffs. *Shutts* concerned the question whether a constitutional limitation protecting defendants—that courts cannot exercise personal jurisdiction unless the defendant has sufficient contacts with the forum state or has affirmatively consented to jurisdiction—should apply to absent plaintiff class members who would be bound as part of an opt-out class. *Id.* at 804-05. The Supreme Court answered no, because absent class members are appropriately treated as plaintiffs, not defendants. *Id.* at 811. "A class-action plaintiff," the Court explained, "is in quite a different posture" than a "defendant." *Id.* at 808; *see id.* at 812 (explaining that the "contention that the Due Process Clause … requires that absent plaintiffs affirmatively 'opt in' to the class, rather than be deemed members of the class if they do not 'opt out,'

1   … ignores the differences between class-action plaintiffs, on the one hand, and defendants in nonclass

2   civil suits on the other"). And the Supreme Court explained that absent class members are plaintiffs

3   even though their claims may be "extinguish[ed] … forever" through settlement or an adverse

4   judgment. *Id.* at 807.

5        *Shutts* thus resolves any sovereign immunity argument here. Because state sovereign

6   immunity only protects states that are aligned as defendants, and because under *Shutts* New Mexico

7   was aligned as a plaintiff when its claims were released as part of the Class Settlement, state sovereign

8   immunity simply was not implicated by the Class Settlement. As an absent class member plaintiff in

9   *Staley*, the State of New Mexico cannot plausibly claim that it was "being sued," *Lockyer*, 375 F.3d

10  at 847, when this Court approved the Settlement Agreement and entered final judgment.

11       In *Flonase*, the Third Circuit held otherwise, concluding that a class settlement that released

12  the state of Louisiana's claims violated Louisiana's sovereign immunity. 879 F.3d at 63. The Third

13  Circuit reasoned that the plaintiff class's motion to approve the settlement agreement asked the district

14  court to enjoin class members, and thus the state, from bringing suits based on the released claim, and

15  that the motion for final approval thus constituted a request for an "equitable remedy against a State."

16  *Id.* at 66. But that reasoning runs headlong into *Shutts*, a case the Third Circuit did not discuss. *Shutts*

17  squarely held that the fact that a class settlement "may extinguish [the absent class member's claim]

18  forever through res judicata" did *not* transform the absent class member into a defendant entitled to

19  constitutional protections uniquely due defendants. 472 U.S. at 807, 810.

20       The Third Circuit's reasoning in *Flonase* is also contrary to *Tennessee Student Assistance*

21  *Corp. v. Hood*, 541 U.S. 440 (2004), which held that states are bound by a federal bankruptcy court's

22  discharge of a debtor's debts—including any debts owed to the state as a creditor—notwithstanding

23  state sovereign immunity. *Id.* at 448. And that is true, *Hood* explained, "whether or not [the state]

24  choose[s] to participate in the proceeding," and even if the discharge order renders "individualized

25  determinations of States' interests." *Id.* at 448, 450. Sovereign immunity is no barrier because "[a]

26  debtor does not seek monetary damages or any *affirmative relief* from a State by seeking to discharge

27  a debt; nor does he subject an unwilling State to a coercive judicial process. He seeks only a discharge

28  of his debts." *Id.* at 450 (emphasis added). Critically, the Court so held even though the bankruptcy

court's discharge order "operat[es] as an injunction to prohibit creditors [including the state] from attempting to collect or to recover the debt." *Id.* at 447. Put another way, because the state is not a defendant in a discharge proceeding, the state cannot claim sovereign immunity, notwithstanding that the discharge disposes of the absent state's affirmative claims against the debtor and notwithstanding that the discharge enjoins the state from pursuing those claims.

The sole theory underlying *Flonase*—that sovereign immunity applies because the motion for final settlement approval sought and won an injunction preventing the state from bringing released claims—is irreconcilable with *Hood*'s holding that a request for an injunction prohibiting the state from pursuing its own claims is *not* a suit *against* a state. *Flonase's* theory is also contrary to common sense; it is the equivalent of a holding that the class representatives were *suing* the absent class members by seeking approval of a settlement on their behalf. And *Flonase*'s theory finds no support in the Supreme Court case on which it largely relied, *Missouri v. Fiske*, 290 U.S. 18 (1933). *Fiske* involved a lawsuit in which the state was the named defendant. Sovereign immunity applied because the complaint was "brought by the [plaintiffs] directly against the state of Missouri." *Id.* at 26.

In short, the motion to approve the Settlement Agreement here did not constitute a "process sued out by [the class] against the State, for the purpose of establishing some claim against it," *Cohens*, 19 U.S. at 408, and it did not implicate sovereign immunity. Sovereign immunity did not prevent this Court from approving the Class Settlement binding and enjoining the state of New Mexico as an absent class member plaintiff and releasing its claims.[3]

## CONCLUSION

For the above reasons, the Court should enforce the Settlement Agreement, enjoin the New Mexico Action as it concerns BMS, and enjoin the New Mexico Attorney General from continuing to prosecute the New Mexico Action against BMS.

---

[3] Even if the Court agreed with *Flonase*, it should still grant BMS's motion insofar as it concerns the claims in the New Mexico Action seeking compensation and restitution on behalf of "New Mexico persons" who paid for Atripla and other covered HIV treatments, i.e., on behalf of individuals and entities other than the State. There is no plausible argument that sovereign immunity prevented the Court from approving a class settlement releasing those claims, or that it prevents the Court from barring a state from reasserting those claims, as the Ninth Circuit did in *Intelligender*.

Dated:  May 16, 2022.

Respectfully submitted,

**ARNOLD & PORTER KAYE SCHOLER LLP**

By:  /s/ *Daniel B. Asimow*
　　　DANIEL B. ASIMOW

*Attorneys for Bristol-Myers Squibb Company*
*and E.R. Squibb & Sons, LLC*