May 19, 2022

**VIA ECF**

The Honorable Laurel Beeler
United States District Court
Northern District of California
Courtroom B - 15th Floor
450 Golden Gate Avenue
San Francisco, CA 94102

Re:  *Staley et al. v. Gilead Sciences, Inc. et al.* - Case No. 3:19-cv-02573-EMC

Dear Magistrate Judge Beeler:

Defendants Gilead Sciences, Inc., Gilead Holdings, LLC, Gilead Sciences, LLC, Gilead Sciences Ireland UC ("Gilead"), Janssen R&D Ireland, Janssen Products, LP, and Johnson & Johnson ("Janssen") (collectively, "Defendants") and End-Payor Plaintiffs ("EPPs" or "Plaintiffs"), including Plaintiff Blue Cross Blue Shield Association ("Plaintiff" or "BCBSA") (together, the "Parties"), respectfully submit this supplemental joint letter brief.

Respectfully submitted,

| | |
|---|---|
| */s/ Heather M. Burke* | */s/     Lauren Barnes* |
| Heather M. Burke | Lauren G. Barnes |
| Christopher M. Curran | *Counsel for Blue Cross Blue Shield* |
| Peter J. Carney | *Association* |
| Raj S. Gandesha | |
| Bryan D. Gant | |
| Michael E. Hamburger | Daralyn J. Durie |
| Heather K. McDevitt | Steve D. Shadowen |
| Kristen O'Shaughnessy | Steve W. Berman |
| Jeremy K. Ostrander | *Interim Co-Lead Counsel for End* |
| *Counsel for Gilead* | *Payor Plaintiffs* |

*/s/ Paul J. Riehle*
Paul J. Riehle
Joanne C. Lewers
Paul H. Saint-Antoine
*Counsel for Janssen*

cc:  All Counsel of Record (via ECF)

## I. STATEMENT OF UNRESOLVED ISSUE

The Parties submitted a joint letter brief to the Court on May 12, 2022, concerning discovery issues involving BCBSA. (ECF No. 1054). On May 17, 2022, Defendants deposed Brendan Stuhan as a percipient witness and 30(b)(6) representative for BCBSA on certain identified Topics. BCBSA produced a document during that deposition. Defendants argue that document and all similar documents are relevant, responsive to Defendants' document requests, and improperly withheld. BCBSA argues that the document and similar records are irrelevant, consistent with the Court's prior ruling on the defendants' motion to compel. Because of the recent nature of this dispute, the defendants did not seek a formal conference on this issue. However, the Parties' positions are at odds, and the dispute relates to the depositions Defendants have requested to resume or take next week on May 23 and May 25, a matter already set for hearing on May 19, 2022.

## II. DEFENDANTS' POSITION

BCBSA designated Mr. Stuhan as its 30(b)(6) witness on noticed Topic Nos. 1, 2, 7, 8, 13-15, and 17(b-c). Barnes 4.11.2022 email. Some of these Topics relate to the finances of the Federal Employee Program ("FEP") that BCBSA administers for the federal government. During his deposition on May 17, Mr. Stuhan testified that he reviewed a "reconciliation report," which reflected information on the movement of funds relating to the payment of pharmaceutical claims. Stuhan Dep. Tr. at 45:23 – 46:16, 47:2-9. As Mr. Stuhan described it, the report is "like a bank account type of statement." *Id.* at 48:4-10. Mr. Stuhan initially testified that he believed that reconciliation reports had been produced, and BCBSA counsel also expressed a belief that the document had already been produced. *Id.* at 47:10-48:2. Upon realizing that the document had not been produced, BCBSA produced the "reconciliation report" during the deposition as BCBSA_000326344. *Id.* at 48:23-49:5. The report is better understood as a Bank of America account statement, dated October 1, 2021-October 29, 2021 (the "October 2021 BofA Statement") showing payments to and from various accounts.[1] Mr. Stuhan testified that he had reviewed the document because he thought it would "disprove" Defendants' argument that BCBSA lacks standing. *Id.* at 77:8-13.

After production of the October 2021 BofA Statement, Mr. Stuhan testified that BCBSA did not produce the document or similar documents from other months to Defendants because they were "not relevant to any issue in the lawsuit." *Id.* at 100:1-11.

Account statements such as the October 2021 BofA Statement are plainly relevant to the issues in this litigation, as well as responsive to the document requests served upon BCBSA by the Defendants. The Court's Order on Defendants' motion to dismiss BCBSA left open the issue of standing for a more complete record. Order at 15 n.9 (ECF No. 948) ("The Court's holding is limited to whether BCBSA has established a prima facie case of standing in the context of this motion. The Court has not addressed whether at some other stage, it could find BCBSA has not established standing by, *e.g.*, a preponderance of the evidence."). BCBSA refers to statements at an earlier hearing about whether the dispute was simply a contract-based inquiry but fails to mention Judge Chen found the Plan Participation Agreement itself to be ambiguous: "Given the

---

[1] Defendants will have the October 2021 BofA Statement available at the hearing and will provide it to the Court immediately upon request.

language above, Moving Defendants do have a basis for contending that the Local Blues are responsible for both medical and pharmaceutical benefits; however, the language of the agreement is not crystal clear—*i.e.*, there is some ambiguity. At this juncture, the ambiguous language of the Plan Participation Agreement is not dispositive. Given BCBSA's verified interrogatory responses, BCBSA has, for purposes of this motion, laid out a prima facie case to support its position that it—and not the Local Blues—administers and underwrites the pharmaceutical benefits." ECF 948 at 10.  In issuing its ruling, the Court relied on BCBSA's answers to interrogatories, verified by Mr. Stuhan, and the representations of counsel about the flow of funds.

> Ms. Barnes: 'The Blue Cross Blue Shield Association pays out of its own fund. It then reaches back to the Office of Personnel Management, the letter of credit account, to draw in funds.
>
> THE COURT: All right. Well, let me hear Mr. Hamburger -- I mean, there is a clear statement -- you may take issue with its accuracy -- that the association pays its pharmacy benefits managers for the covered portion of the prescription from its own funds, in its own name, and then later gets payment back from OPM.

3.10.2022  Tr. of Motion to Dismiss Proceedings at 10:6-9, 11:1-6.

Defendants believe that these account statements help develop that record by reflecting the flow of funds among the relevant accounts, as well as the amount available in the accounts, and so are relevant to the question of financial risk and responsibility. Further, BCBSA's 30(b)(6) witness' reliance on such an account statement during his deposition preparation also shows that BCBSA—through its corporate representative—thought the information was relevant.

After Mr. Stuhan's deposition, Defendants requested BCBSA advise whether it intended to stand on the claim of lack of relevance or whether it will produce all readily available statements for that same Bank of America account, generated since January 1, 2017 until the present. Hand 5.17.2022 Email. Defendants also requested that BCBSA produce account statements for specifically-identified additional accounts to which BCBSA has access, and which are referenced in the October 2021 BofA Statement. *Id.* At the time of filing, BCBSA has not agreed to produce the requested records.

This dispute relates to Defendants' earlier request for the completion of Ms. Holladay's deposition because she has personal knowledge about the functioning of the operating account for BCBSA, and she should be able to testify about the significance of the entries and the account statements generally. Mr. Stuhan was unable to testify on this subject. Stuhan Dep. Tr. at 30:2-13, 31:6-32:4, 43:20-24, 44:22-25, 50:20-51:11, 71:18-72:17, 76:11-77:3, 78:5-79:15, 87:19-22. Defendants thus also asked that BCBSA agree to make Ms. Holladay available on May 23, 2022, to testify about these account statements, given that their contents are directly within her personal knowledge.

Defendants seek an Order (1) demanding BCBSA produce—before the resumption of Ms. Holladay's deposition—all account statements similar to the October 2021 BofA Statement going back to January 1, 2017; (2) demanding BCBSA produce—before the resumption of Ms. Holladay's deposition—statements for the other accounts implicated in the October 2021 BofA Statement; (3) instructing BCBSA to re-review its records and apply the standard that documents like the FEP Manual and the October 2021 BofA Statement are relevant and discoverable; and (4)

requiring BCBSA produce all responsive, discoverable documents. Defendants expect producing the accounting statements and similar documents should impose little to no burden on BCBSA.

While BCBSA contends that this Court previously "denied the defendants' motion almost in its entirety," this Court's order did no such thing; instead, it ordered BCBSA to produce specific information that could be produced quickly. ECF No. 820. BCBSA did not request an order, and this Court did not issue one, determining that none of the other standing-related information Defendants sought was relevant or producible. Indeed, BCBSA's immediate agreement to produce the document during the deposition, as well as its belief that it had already done so, confirm that (1) BCBSA knows these documents are responsive to Defendants' discovery requests, (2) this Court's January 13, 2022 order did not relieve BCBSA of its obligation to produce them, and (3) there is no burden for BCBSA to produce them. The only "waste of the Court's time," to use BCBSA's terminology, stems from BCBSA's decision to withhold these responsive documents despite ostensibly believing that they are directly relevant to the issue of BCBSA's lack of standing.

Finally, it is correct that Ms. Holladay testified about underwriting risk pursuant to the FEP contract, but it is equally true that she testified only the non-party Local Blue Cross Blue Shield Plans bear this risk; BCBSA does not. Holladay Rough Tr. at 55:12-23. Defendants should be able to confirm with Ms. Holladay that these unproduced accounting statements do not, as Mr. Stuhan testified (despite not being able to explain the contents of the documents) support BCBSA's baseless suggestion that it pays for pharmaceutical claims.

### III.   PLAINTIFF'S POSITION

This dispute is a waste of the Court's time.

On January 13, 2022, the defendants moved the Court to compel BCBSA to produce documents showing, among other things, "cash flows into and out of the fund(s) from which benefits under the FEP are paid over the course of each year," "monies deposited with or distributed by BCBSA in connection with the payment of benefits for an At-Issue Product under the FEP," and "the identity of all funds, reserves, or similar accounts in which payments to BCBSA from any federal government entity or agency are held." Dkt. No. 813. The Court denied the defendants' motion almost in its entirety, stating repeatedly during the hearing that this appeared to be a "contract-based inquiry." Jan. 14, 2022 Hr'g Tr. at, *e.g.*, 9:23–10:05, 14:8–10, Dkt. No. 826 (stating "it seems contract-based," and "[w]hat the contracts are seem that it would define what Blue Cross does and doesn't do"). And in response to defense counsel's last-minute efforts to get the identity of any accounts where money is held, the Court said, "I don't know that you need the granular look at a standing motion to trace everything, but to have some understanding of the financing of it does seem – the contract is more relevant." *Id*. at 18:15–18.

The defendants did not appeal that decision. Yet they ask for the same types of information here: five years' worth of bank account statements for what they think are six different "accounts," as

well as a general ledger for the FEP.[2] The defendants barely reference the Court's decision on this issue in their position statement and do not indicate why and how it should no longer apply.

The Court determined in January that bank statements were not relevant. The record developed since then only reinforces the Court's initial ruling.

*There is no dispute about the flow of funds*. Ms. Holladay, BCBSA's Director of Program Financial Services and Rule 30(b)(6) witness on topics concerning the flow of funds, testified that premium funds collected by the U.S. government and federal agencies for the FEP are deposited into dedicated LOCA accounts that can only be drawn by BCBSA to administer and pay FEP-related benefits and expenses. *See* Holladay Dep. at 59:23–61:18. She explained that the rules governing how funds are deposited into and drawn from the LOCA and the purposes for which BCBSA can use them are set forth in the OPM contract. *See id.* at 61:24–62:24. She repeatedly testified that the FEP operating account held by BCBSA is funded only from the LOCA and contains no non-FEP-related monies from either BCBSA or the BCBS plans. *See id.* at 63:9–64:1, 65:10–17, 80:4–14, 105:13–106:19. But even this is superfluous because the governing statute and federal regulations already lay out how the LOCA is funded, what can be paid, and how the funds flow. *See, e.g.*, 5 USC § 8903 *et seq.*, 5 CFR § 890.501 *et. seq.*, 48 CFR § 1632 *et seq.*, etc. U.S. statutes and the implementing regulations explain how this works. Bank statements will shed no light on this.

*There is no true dispute that the FEP is an "underwritten health insurance contract" that removes any risk from OPM*. During her deposition in this matter, Ms. Holladay confirmed that "the FEP Contract is an experience-rated underwritten health insurance contract," meaning "underwritten is that, you know, that they bear the risk of that liability. So if they did not rate a premium level at a level that covers the expenses, then they have the liability to cover those expenses." Holladay Dep. at 72:18–73:6.[3] BCBSA provided a pre-existing declaration of Ms. Holladay from an unrelated dispute over medical claims that confirmed that BCBSA and the local Blues bear the risk that there are not enough premiums to cover expenses. *See id*. at 50:17–51:5 (defense counsel reading from the declaration). And, most importantly, the contract between OPM and BCBSA states that "OPM will pay to the Carrier, *in full settlement of its obligations under this contract* . . . the subscription charges received for the Plan by the Employees Health Benefits Fund," a statement Judge Chen quoted in the decision denying the defendants' motion to dismiss. Order Denying Defs.' Motion to Dismiss at 11:8–11, Dkt. No. 948 (emphasis added). Bank statements will shed no light on this.

*Who bears the risk is a separate issue from how large the risk is.* The defendants suggest that they need bank statements to develop the record about "the amount available in the accounts," as though there is a dispute about whether the FEP has ever run out of funds. There is no dispute about this. BCBSA stated in a verified interrogatory response that "during the Relevant Period,

---

[2] At least, this was the defendants' demand at midnight Tuesday night. The defendants did not disclose the demand in this letter or the grounds for their demand until we received their portion of this letter brief at 3:35 pm ET Wednesday.

[3] *See also id*. at 91:1–92:6 ("It's an underwritten contract. So if your premiums are not enough to cover your expenses, then you have that liability.").

there has not been a situation where the funds available to BCBSA from OPM were completely depleted." BCBSA's Resp. & Objs., Jan. 24, 2022, at 24. Quoting that interrogatory response, the Court was clear that the fact that BCBSA has managed the risk well "does not mean that BCBSA is merely a financial intermediary without insurance risk." Order Denying Defs.' Motion to Dismiss at 11:22–25, Dkt. No. 948. Bank statements will shed no light on this.

Mr. Stuhan testified that he spoke with two other people at BCBSA, including Ms. Holladay, and reviewed a single statement for BCBSA's FEP operating account in "confirming that the association transfers funds from an operating account to reimburse the PBM for FEP members' pharmaceutical claims." Stuhan Rough Dep. Tr. at 43:5–44:20. The statement showed that payments for pharmacy claims go out from, and the drawdowns from the LOCA come into, the same association-controlled account. *Id*. He also testified that he reviewed it "months ago." *Id*. (He did not, contrary to the defendants' assertion, review it or rely on it for the deposition.[4]) Defense counsel's questioning of Mr. Stuhan focused on whether he had personal knowledge of the following portion of an interrogatory response: "BCBSA contracts with a pharmacy benefits manager (PBM) to perform various pharmacy benefit services . . . . On a routine and periodic basis, BCBSA makes funds available to the PBM for any claims submitted by retail pharmacies on behalf of FEP members. The funds provided to the PBM come from a BCBSA operating account for the service benefit plan. Nearly simultaneously, in most instances, BCBSA requests an aggregate drawdown from the LOCA to reimburse BCBSA for the aggregate payments it has made in that period, including any funding provided to the PBM for pharmacy payments made by the PBM on behalf of the FEP." *Id*. at 39:5–44:20.

Because Mr. Stuhan testified that he saw the statement in connection with confirming an interrogatory response about the order of payments into and out from the FEP operating account, BCBSA produced the document to defense counsel during the deposition and defense counsel were able to question Mr. Stuhan on it. How we get from there to a demand for the production of five plus years of bank statements, for multiple accounts, is mystifying.

The defendants state, again, that they may continue to build a record on BCBSA's standing. We do not dispute that. But, as BCBSA pointed out last week, we are following an ever-moving target that has now turned into prototypical harassment, and it is past time for this to end.

---

[4] The defendants' statement is rife with other misrepresentations like this too. For example, the defendants say "BCBSA designated Mr. Stuhan as its 30(b)(6) witness on noticed Topic Nos. 1, 2, 7, 8, 13-15, and 17(b-c)." The truth is that Mr. Stuhan was also designated as BCBSA's Rule 30(b)(6) witness on topics 17(a) and 18-22. (Yet without explanation, the defendants only questioned Mr. Stuhan about, counting charitably, three of the thirteen topics.) The defendants say "some" of Mr. Stuhan's "[t]opics relate to the finances of the Federal Employee Program ("FEP") that BCBSA administers for the federal government." The truth is that not even one related to FEP finances. The topics for which Mr. Stuhan was designated include, for example, the role, responsibilities, and contractual obligations of BCBSA and the BCBS plans under the OPM contract (topics 1 and 2), BCBSA's authority to pursue legal actions (topic 7), alleged injuries suffered as a result of the defendants' alleged conduct (topic 13), and communications regarding the lawsuit (topic 15), etc.

**FILER'S ATTESTATION**

Pursuant to Civil L.R. 5-1(i)(3), regarding signatures, I, Heather M. Burke, attest that concurrence in the filing of this document has been obtained.

Dated:  May 19, 2022          By:          */s/ Heather M. Burke*
                                            Heather M. Burke

## **CERTIFICATE OF SERVICE**

      I hereby certify that on May 19, 2022 the within document was filed with the Clerk of the Court using CM/ECF which will send notification of such filing to the attorneys of record in this case.

*/s/ Heather M. Burke*

Heather M. Burke