Heather M. Burke (SBN 284100)
Jeremy K. Ostrander (SBN 233489)
**WHITE & CASE** LLP
3000 El Camino Real
2 Palo Alto Square, Suite 900
Palo Alto, CA  94306-2109
Telephone: (650) 213-0300
Facsimile: (650) 213-8158
hburke@whitecase.com
jostrander@whitecase.com

Attorneys for Defendants Gilead Sciences, Inc.,
Gilead Holdings, LLC, Gilead Sciences, LLC,
and Gilead Sciences Ireland UC

PAUL J. RIEHLE (SBN 115199)
Paul.Riehle@faegredrinker.com
FAEGRE DRINKER BIDDLE & REATH LLP
Four Embarcadero Center, 27th Floor
San Francisco, CA 94111-4180
Telephone: (415) 591-7500
Facsimile: (415) 591-7510

Attorneys for Defendants
JANSSEN R&D IRELAND,
JANSSEN PRODUCTS, LP, and
JOHNSON & JOHNSON

*Additional Counsel for Defendants Listed on
Signature Page*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| STALEY, *et al.*,<br><br>                Plaintiffs,<br><br>   v.<br><br>GILEAD SCIENCES, INC., *et al.*,<br><br>                Defendants.<br><br>THIS DOCUMENT RELATES TO:<br><br>Staley, *et al.*, v. Gilead Sciences, Inc., *et al.*,   No. 3:19-cv-02573-EMC | Case No. 3:19-cv-02573-EMC<br><br>**DEFENDANTS' NOTICE OF MOTION AND RENEWED MOTION TO DISMISS BLUE CROSS BLUE SHIELD ASSOCIATION'S CLAIMS FOR LACK OF STANDING**<br><br>Hrg:     July 21, 2022<br>Time:    1:30 p.m.<br>Ctrm:   5 – 17th Floor<br>Judge:   Honorable Edward M. Chen<br><br>**REDACTED VERSION SOUGHT TO BE SEALED** |

1

## **NOTICE OF MOTION AND MOTION TO DISMISS**

2      TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD: PLEASE TAKE NOTICE that

3  on Thursday, July 21, 2022 at 1:30 p.m., or as soon thereafter as this matter may be heard, in the United

4  States District Court for the Northern District of California, located at 450 Golden Gate Avenue, San

5  Francisco, CA 94102-3489, in Courtroom 5 on the 17th Floor, before the Honorable Edward M. Chen,

6  Defendants Gilead Sciences, Inc., Gilead Holdings, LLC, Gilead Sciences, LLC, and Gilead Sciences

7  Ireland UC ("Gilead") and Janssen R&D Ireland, Janssen Products, L.P., and Johnson & Johnson

8  ("Janssen") (collectively, "Defendants") will move the Court for an order dismissing, with prejudice,

9  all claims brought by Plaintiff Blue Cross Blue Shield Association ("BCBSA") under Rule 12(b)(1) of

10  the Federal Rules of Civil Procedure because BCBSA lacks standing to bring such claims.  The Motion

11  is based on this Notice of Motion and Renewed Motion to Dismiss, the Memorandum of Points and

12  Authorities, the contemporaneously filed Declaration of Heather M. Burke and its exhibits, all other

13  pleadings and papers on file in this action, any other such matters upon which the Court may take

14  judicial notice, the arguments of counsel, testimony and other evidence from an evidentiary hearing if

15  a hearing is ordered by the Court, and any other matter the Court may properly consider.

16

## **RELIEF SOUGHT**

17      Defendants seek dismissal, with prejudice, of all of BCBSA's claims against them under Rule

18  12(b)(1) because BCBSA lacks standing and therefore this Court lacks subject-matter jurisdiction over

19  BCBSA's purported claims.

20

21

22

23

24

25

26

27

28

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ........................................................................................................ iii

INTRODUCTION ....................................................................................................................... 1

LEGAL STANDARD ................................................................................................................. 1

STATEMENT OF FACTS .......................................................................................................... 3

ARGUMENT .............................................................................................................................. 5

I.      BCBSA DOES NOT HAVE ARTICLE III STANDING TO PURSUE DAMAGES
        OR INJUNCTIVE-RELIEF CLAIMS ............................................................................ 5

        A.      BCBSA Does Not Pay for Pharmacy Benefits with Its Own Funds ...................... 5

        B.      BCBSA Does Not Underwrite Pharmacy Benefits ............................................... 11

        C.      BCBSA Fails to Proffer Any Evidence that There Is a Real and Immediate
                Threat of Future Injury to It .................................................................................. 15

CONCLUSION .......................................................................................................................... 16

## TABLE OF AUTHORITIES

**Page(s)**

### FEDERAL CASES

*Augustine v. United States*,
704 F.2d 1074 (9th Cir. 1983) ...................................................................................2

*Butler v. IMA Regiomontana S.A. de C.V.*,
2000 U.S. App. LEXIS 1607 (9th Cir. 2000) .............................................................11

*In re Capacitors Antitrust Litig.*,
154 F. Supp. 3d 918 (N.D. Cal. 2015) .......................................................................12

*Chapman v. Pier 1 Imps. (U.S.), Inc.*,
631 F.3d 939 (9th Cir. 2011) .....................................................................................16

*Clapper v. Amnesty Int'l USA*,
568 U.S. 398 (2013) ...................................................................................................16

*Data Disc, Inc. v. Sys. Tech. Assoc., Inc.*,
557 F.2d 1280 (9th Cir. 1977) .................................................................................1, 2

*De La Fuente v. United States*,
2010 U.S. Dist. LEXIS 69159 (S.D. Tex. Mar. 31, 2010) .........................................11

*Fraser v. Team Health Holdings, Inc.*,
2022 U.S. Dist. LEXIS 60544 (N.D. Cal. Mar. 31, 2022) .........................................12

*Gerlinger v. Amazon.com, Inc.*,
526 F.3d 1253 (9th Cir. 2008) ................................................................................2, 12

*Jones v. Regents of the Univ. of Cal.*,
2022 U.S. Dist. LEXIS 70745 (N.D. Cal. Apr. 18, 2022) .........................................12

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
572 U.S. 118 (2014) ...................................................................................................12

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992) .....................................................................................................1

*Robinson v. United States*,
586 F.3d 683 (9th Cir. 2009) .......................................................................................2

*Sierra Club v. EPA*,
292 F.3d 895 (D.C. Cir. 2002) ...................................................................................11

*Snapp v. United Transp. Union*,
889 F.3d 1088 (9th Cir. 2018) ...................................................................................11

*Sun Microsystems, Inc. v. Hynix Semiconductor, Inc.*,
    608 F. Supp. 2d 1166 (N.D. Cal. 2009) ........................................................................2

*Thornhill Pub. Co. v. General Tel. Elecs. Corp.*,
    594 F.2d 730 (9th Cir. 1979) ........................................................................2

*Uniloc 2017 LLC v. Google LLC*,
    508 F. Supp. 3d 556 (N.D. Cal. 2020) ........................................................................1, 12

## FEDERAL RULES

Fed. R. Civ. P. 12(b)(1) ........................................................................2, 12

Fed. R. Civ. P. 30(b)(6) ........................................................................ passim

Fed. R. Civ. P. 56(c)(4) ........................................................................12

Fed. R. Civ. P. 56(e) ........................................................................2

**INTRODUCTION**

In denying Defendants' initial motion to dismiss Plaintiff Blue Cross Blue Shield Association ("BCBSA") for lack of standing, this Court relied on statements from Brendan Stuhan, an assistant general counsel at BCBSA, that BCBSA pays for pharmacy benefits "from its own funds in its own name," and that BCBSA underwrites pharmacy benefits for the Federal Employee Program ("FEP"). *See* Order at 9-12 (Mar. 14, 2022), ECF No. 948 ("Order").  This Court's holding was "limited to whether BCBSA has established a prima facie case of standing in the context of this motion," and the Court expressly contemplated revisiting BCBSA's standing on a fuller record: "The Court has not addressed whether at some other stage, it could find BCBSA has not established standing by, *e.g.*, a preponderance of the evidence." *Id.* at 15 n.9.

Following the Order, Defendants successfully moved to compel the production of additional documents from BCBSA and have taken the deposition of Mr. Stuhan.  Defendants also deposed Tracy Holladay, BCBSA's Director of Program Financial Services, who BCBSA designated as its Rule 30(b)(6) corporate representative with respect to the issues pertinent to BCBSA's standing, and who is the most knowledgeable person at BCBSA about the funds used to pay for FEP benefits.  This newly obtained evidence irrefutably establishes that BCBSA has no "skin in the game" because it has ***never*** used its "own funds" to pay for pharmacy benefits ***and does not*** bear underwriting risk for ***any*** benefits for the FEP, including pharmacy benefits.

All claims asserted by BCBSA should be dismissed for lack of standing in light of the new evidence.

**LEGAL STANDARD**

A plaintiff invoking federal jurisdiction must establish the elements for standing, and "each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).  A prima facie showing of standing "does not necessarily mean that [the plaintiff] may then go to trial on the merits." Order at 8 n.5 (citing *Data Disc, Inc. v. Sys. Tech. Assoc., Inc.*, 557 F.2d 1280, 1285 (9th Cir. 1977)).  Rather, courts often grant renewed motions to dismiss for lack of standing following discovery.  *See, e.g.*, *Uniloc 2017 LLC v.*

*Google LLC*, 508 F. Supp. 3d 556, 563, 575 (N.D. Cal. 2020) (granting renewed motion to dismiss for lack of standing after additional discovery); *Sun Microsystems, Inc. v. Hynix Semiconductor, Inc.*, 608 F. Supp. 2d 1166, 1175, 1212 (N.D. Cal. 2009) (same).

If the pleadings and other submitted materials raise credibility issues or disputed questions of fact with regard to standing, the plaintiff must establish the relevant facts by a preponderance of the evidence. *Data Disc*, 557 F.2d at 1285. To establish Article III standing in the post-pleading stage, a plaintiff "can no longer rest on 'mere allegations' but must set forth by affidavit or other admissible evidence 'specific facts' as delineated in Federal Rule of Civil Procedure 56(e) as to the existence of such standing." *See Gerlinger v. Amazon.com, Inc.*, 526 F.3d 1253, 1256 (9th Cir. 2008). But the standards applicable to a Rule 12(b)(1) motion "differ greatly" from the standards for ruling on a motion for summary judgment:

> The trial court may proceed as it never could under Rule 12(b)(6) or Fed. R. Civ. P. 56. No presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims. Moreover, the plaintiff will have the burden of proof that jurisdiction does in fact exist.

*Thornhill Pub. Co. v. General Tel. Elecs. Corp.*, 594 F.2d 730, 733 (9th Cir. 1979). In ruling on a challenge to subject-matter jurisdiction, the trial court may resolve factual disputes, if necessary. *Robinson v. United States*, 586 F.3d 683, 685 (9th Cir. 2009); *Augustine v. United States*, 704 F.2d 1074, 1077 (9th Cir. 1983). The trial court also "has the discretion to take evidence at a preliminary hearing in order to resolve the contested issues." *Data Disc*, 557 F.2d at 1285.

While Defendants believe that there are no bona fide factual disputes as to BCBSA's lack of standing, if the Court believes otherwise, Defendants respectfully request an evidentiary hearing. The question of BCBSA's standing is a discrete issue having profound implications on the course of this action. *See* ECF No. 730 (Defendants' Opposition to the End-Payor Plaintiffs' Motion to Amend Complaint to Add Party), at 1-3, 6 (Plaintiffs sought to cure standing defects for claims in at least twenty-five separate state classes by adding BCBSA as a party).

## **STATEMENT OF FACTS**

In the March 14, 2022 Order denying Defendants' initial motion to dismiss BCBSA for lack of standing, the Court based its holding on two factual issues: (1) whether BCBSA paid for pharmacy benefits for the FEP with its own funds; and (2) whether BCBSA underwrites pharmacy benefits for the FEP.  *See* Order at 9-13.  ***First***, with respect to whether BCBSA paid for pharmacy benefits, the Court relied on statements declared or verified by Mr. Stuhan that BCBSA pays for pharmacy benefits "from its own funds in its own name" and "[o]nly later . . . reconcile[s] the financial aspects of that payment with OPM [U.S. Office of Personnel Management]."  *Id.* at 10-11.  The Court found that "Defendants have not offered any specific evidence to support its position" that "BCBSA does not initially put up its own money" to pay FEP claims, but instead only manages payments "on behalf of the federal government."  *Id.* at 11-12 & n.6 (finding investment provision in BCBSA's contract with OPM "does not address the issue of whether BCBSA has an account from which it uses its own money to pay for drugs in the first instance").

***Second***, on the question of whether BCBSA underwrites pharmacy benefits, the Court credited interrogatory responses verified by Mr. Stuhan that the Local Blues "underwrite the *medical* benefit component of the Federal Employee Plan and BCBSA underwrites the *pharmacy* benefit."  *Id.* at 2-3, 9.  While the Court agreed that documents produced by BCBSA, such as the Plan Participation Agreement (the agreement governing the responsibilities of BCBSA and the Local Blues for the FEP) and Ms. Holladay's Declaration, provided a "basis" for Defendants' position, the Court found that the documents were inconclusive or had ambiguous language.  *Id.* at 10.  In issuing this Order, the Court noted that it was only evaluating whether BCBSA had made a prima facie showing of standing, and did not decide whether BCBSA could establish its standing by a preponderance of the evidence.  *Id.* at 15 n.9.

After the Court's March 14, 2022 Order, BCBSA produced over 160,000 pages of documents and Defendants successfully moved to compel two additional sets of documents relevant to the question of BCBSA's standing.  *See* ECF Nos. 1054, 1084, 1094.  Defendants also took the depositions of Mr. Stuhan and Ms. Holladay in their individual and Rule 30(b)(6) capacities, with Ms. Holladay designated as BCBSA's corporate representative on topics relating to the flow of funds for the payment

of FEP benefits (whereas Mr. Stuhan was not designated to testify to those topics). Burke Decl. Ex. A (Rule 30(b)(6) Notice of Deposition); Burke Decl. Ex. B (BCBSA May 20, 2022 Email).

***New Evidence Proves BCBSA Does Not Pay for Pharmacy Benefits with Its Own Funds.*** Ms. Holladay has been employed at BCBSA working on the FEP for 19 years, and she confirmed in her Rule 30(b)(6) capacity that she is the most knowledgeable person at BCBSA about the funds that are used to pay for FEP benefits. Burke Decl. Ex. C (Holladay Apr. 28, 2022 Tr.), at 20:17-27:23, 112:23-113:14 ███████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████ *Id.* at 24:9-25:22.

Ms. Holladay explained ███████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

The FEP Operating Account is ████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████ (*id.* at 105:8-12). Ms. Holladay repeatedly testified that ████████████

████████████████████████████████████████████████████████████████████

████████████████████████ (*see, e.g.*, *id.* at 65:1-17). *See also infra* § I.A; Ex. C at

106:1-5 ██████████████████████████████████████████████████████

████ ████████████████ Recently produced documents obtained only after Defendants successfully moved to compel—including a bank account statement for the FEP Operating Account, BCBSA's FEP Administrative Manual, and BCBSA's FEP Finance documents—corroborate Ms. Holladay's testimony. *See infra* § I.A.

***New Evidence Proves BCBSA Does Not Underwrite Pharmacy Benefits.*** Ms. Holladay also has personal knowledge about the allocation of underwriting responsibilities for FEP benefits. Ex. C

- 4 -

at 40:24-41:10.  She repeatedly testified, in her personal and corporate capacities, that ████████

████████████████████████████████████████████████████████

████████   *See infra* § I.B.  Documents produced after the March 14, 2022 Order—including the FEP

Administrative Manual (which was written █████████████████████████████████████████

███████████████████████████████████████████ (Ex. C at 101:24-102:4)), and an

index decoding the claims data BCBSA produced from its PBM—corroborate Ms. Holladay's

testimony.  *See infra* § I.B.

These new documents and testimony resolve the ambiguities initially raised by the Court and

definitively show that BCBSA does not pay for or underwrite pharmacy benefits for the FEP.

## ARGUMENT

**I.     BCBSA DOES NOT HAVE ARTICLE III STANDING TO PURSUE DAMAGES OR INJUNCTIVE-RELIEF CLAIMS**

### A.     BCBSA Does Not Pay for Pharmacy Benefits with Its Own Funds

In opposing Defendants' initial Motion to Dismiss BCBSA for lack of standing, BCBSA

represented to this Court that it "indisputably pays" for Defendants' products and bears risk.  ECF No.

897 (End-Payor Plaintiffs' Opposition to Defendants' Motion to Dismiss BCBSA's Claims for Lack

of Standing), at 6, 8.  BCBSA asserted that it initially pays the PBM for pharmacy benefits, and these

payments were only "later offset" or "reimbursed" by funds BCBSA drew from the federal

government—specifically from the LOCA.  *Id.* at 6, 8.  BCBSA filed statements in this litigation, sworn

to or verified by Mr. Stuhan, asserting that:

- "When an FEP beneficiary presents a covered prescription, the Association pays its pharmacy benefits manager for the covered portion of that prescription ***from its own funds in its own name***.  Only later does the Association reconcile the financial aspects of that payment with OPM" (ECF No. 747-3 (Declaration of Brendan Stuhan, dated Nov. 23, 2021), ¶ 10) (emphasis added); and

- "BCBSA makes funds available to the PBM for any claims submitted by retail pharmacies on behalf of FEP members" and "***BCBSA requests an aggregate drawdown from the LOCA to reimburse BCBSA*** for the aggregate payments it has made in that period, including any funding provided to the PBM for pharmacy payments made by the PBM on behalf of the FEP" (ECF No. 895-2 (BCBSA's Responses and Objections to Defendants' First Set of Interrogatories), at 15) (emphasis added).

Notably, BCBSA's interrogatory responses did not assert that BCBSA pays pharmacy claims using "its own funds in its own name," as paragraph 10 of Mr. Stuhan's previously filed declaration had asserted, nor did BCBSA even cite to paragraph 10 of Mr. Stuhan's declaration in opposing Defendants' motion to dismiss. *See generally* ECF No. 897.  Nevertheless, without having a complete discovery record as to BCBSA, this Court credited these statements as sufficient to establish a prima facie case of standing.  Order at 10-12.

Now, after full fact discovery, there is specific—indeed, conclusive—evidence showing that BCBSA ***does not use*** its own money, initially or otherwise, to pay for pharmacy benefits.  Ms. Holladay, BCBSA's designated Rule 30(b)(6) corporate representative on topics relating to the flow of funds for the payment of FEP benefits, ███████████████████████████████████████ ███████████████

████████████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ███████████████████████████ ████████████████████████████████████████████████████████

Ex. C at 105:8-106:5 (emphasis added); *id.* at 59:23-65:17 ████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████ (emphasis added); *id.* at 103:24-104:23.

This testimony is in accord with the OPM-contract requirement that BCBSA must keep all of its own funds "physically separate" from the federal government funds it receives to pay claims.  *Id.* at 103:14-21; ECF No. 860-3 (OPM Contract § 3.5).  Indeed, according to Ms. Holladay,██████████ ████████████████████ Burke Decl. Ex. D (Holladay May 23, 2022 Tr.), at 156:5-12 ██████████

- 6 -

1 ███████████████████████████████████████████████████

2 ███████████████████████████████████████████████████

3 ████████████████████████████

4      As BCBSA's corporate representative, Ms. Holladay testified about each step in the flow of

5 payments for FEP pharmacy benefits, ████████████████████████

6    1) ██████████████████████████████████████

7 ██████████████████████████████████████

8    2) ██████████████████████████████████████

9 ██████████████████████████████████████

10 ██████████████████████████████████████

11    3) ██████████████████████████████████████

12    4) ██████████████████████████████████████

13 ██████████████████████████████████████

14 ██████████████████████████████████████

15      a. █████████████████████████████████

16 █████████████████████████████████

17    5) ██████████████████████████████████████

18 ██████████████████████████████████████

19 ██████████████████████████████████████

20 ███████████████████████

21      a. █████████████████████████████████

22 █████████████████████████████████

23 █████████████████████████████████

24 ██████████████████████████

25      b. █████████████████████████████████

26 ██████████████████████

27      c. █████████████████████████████████

28

d. ███████████████████████████████████

6) ██████████████████████████████████

BCBSA documents maintained in the ordinary course of business, including bank statements for the FEP Operating Account, corroborate Ms. Holladay's testimony, and show that none of BCBSA's own funds were used to pay pharmacy benefits or fund the FEP Operating Account.  *See* Burke Decl. Ex. F (Oct. 2021 Bank of America FEP Operating Account Statement).  While the FEP Operating Account bank statement is responsive to many of Defendants' document requests served to BCBSA in December 2021, it was only first produced during Mr. Stuhan's deposition, after Mr. Stuhan testified that ████████████████████████████████████████████████████████ ████████ Burke Decl. Ex. H (Stuhan Tr.), at 45:23-46:16, 75:1-76:3.  According to Mr. Stuhan, who BCBSA designated as its Rule 30(b)(6) corporate representative on issues relating to BCBSA's production of documents in this litigation, BCBSA did not previously produce FEP Operating Account bank statements ████████████████████████████████ *Id.* at 100:6-11.

Ms. Holladay explained that ████████████████████████████████████████ ████████████████████████████████████████████ Ex. D at 160:15-176:17.  She also explained ████████████████████████████████

(1) █████████████████████████████████████████████

(2) █████████████████████████████████████████████

(3) █████████████████████████████████████████████

(4) █████████████████████████████████████████████

1    (5) ███████████████████████████████████████████████████████

2    ██████████████████████████████████████████████████████████

3    ████████████████████████████████

4    Ms. Holladay's testimony explains that ████████████████████████████████████

5    ████████████████████████████████████████████████████ (Ex. C at 65:1-17) and that the

6    █████████████████████████████████████ (*id.* at 106:1-5).  BCBSA's internal

7    documents on the FEP financial arrangements also show ██████████████████████████

8    ██████████████████████████████████████████████████████████████████████████████

9    ██████████████████████████████████ Burke Decl. Ex. G (BCBSA's FEP

10   Finance Policies), at BCBSA_000332871.  Indeed, BCBSA's counsel conceded in a joint discovery-

11   letter brief that "[t]here is no dispute about the flow of funds," given that Ms. Holladay "repeatedly

12   testified that the FEP operating account held by BCBSA is funded only from the LOCA and contains

13   no non-FEP-related monies from either BCBSA or the BCBS plans."  ECF No. 1084 at 5 (BCBSA's

14   portion of joint-discovery-letter brief in which Defendants sought to compel FEP Operating Account

15   statements).

16   The only documents BCBSA has proffered to suggest that BCBSA pays for pharmacy benefits

17   with its own funds in the first instance are Mr. Stuhan's declaration (ECF No. 747-3)—submitted in

18   connection with Plaintiffs' motion to amend the complaint to add BCBSA as a party (ECF No. 710)—

19   and BCBSA's interrogatory responses verified by Mr. Stuhan (ECF No. 895-2).  But neither of these

20   documents are admissible for the proposition that BCBSA pays for pharmacy benefits using money

21   that belongs to BCBSA, rather than to the federal government.

22   ***First***, both documents are inadmissible hearsay.  Mr. Stuhan testified ████████████████

23   ██████████████████████████████████████████████████████████████████████████████

24   ██████████████████████████████████████████████████████████████████████████████

25   ███████████████████████████████ Ex. H at 51:5-11, 71:18-72:5.  At his deposition, Mr.

26   Stuhan confirmed ████████████████████████████████████████████████████████████

27   ████████████████ *Id.* at 30:2-31:10, 31:23-32:4, 43:20-24, 50:25-51:4, 76:25-77:3, 85:21-86:3.

28   ██████████████████████████████████████████████████████████████████████████████



1

2

3 (*id.* at 70:25-72:17,

4 77:8-79:1).

5 To the extent Mr. Stuhan testified he had "personal knowledge" about the information in

6 BCBSA's verified interrogatories, he clarified that

7

8

9

10 Ex. H at 45:1-18.  He also testified that

11 *Id.* at 45:19-22.

12 **Second**, unlike Mr. Stuhan, Ms. Holladay is the person designated by BCBSA as its corporate

13 representative about the flow of funds for the FEP benefits, including pharmacy benefits, and she

14 testified that no one has more knowledge than her on that subject.  Ex. C at 112:23-113:14.  As set

15 forth above, she testified to

16 In fact,

17 Mr. Stuhan recommended

18 *Id.* at 70:25-72:17.

19 Accordingly, the statements in Mr. Stuhan's declarations and the interrogatories verified by Mr.

20 Stuhan about BCBSA's payments of pharmacy benefits should be stricken or ignored based on lack of

21 personal knowledge and inadmissible hearsay.  *See Butler v. IMA Regiomontana S.A. de C.V.*, 2000

22 U.S. App. LEXIS 1607, at *9-11 (9th Cir. 2000) (affirming striking portions of affidavits when the

23 affiant failed to "set forth any facts in his affidavit that established he had personal knowledge" and his

24 only knowledge stemmed from reviewing accounting records); *Sierra Club v. EPA*, 292 F.3d 895, 901

25 (D.C. Cir. 2002) (holding counsel's submissions to the court "are not evidence" because they "concern

26 matters beyond the scope of counsel's personal knowledge" and the court "require[s] more than

27 representations of counsel in order to establish a complainant's standing"); *De La Fuente v. United

28 States*, 2010 U.S. Dist. LEXIS 69159, at *2 (S.D. Tex. Mar. 31, 2010) (holding that only the portions

of the interrogatory responses based on personal knowledge would be considered since "affidavits supporting or opposing summary judgment 'must be made on personal knowledge'"); *see also Snapp v. United Transp. Union*, 889 F.3d 1088, 1103 (9th Cir. 2018) ("[T]he entity is not allowed to defeat a motion for summary judgment based on an affidavit that conflicts with its Rule 30(b)(6) deposition."); *Uniloc*, 508 F. Supp. 3d at 570-71 (affording declarations little to no weight because "there is no evidence *on the record* to demonstrate personal knowledge," and they thus did not comply with Rule 56(c)(4), which applies to a factual attack under Rule 12(b)(1) and requires a declaration to be "made on personal knowledge").

All of the admissible record evidence confirms that BCBSA does not pay any pharmacy benefits with its own money at any time.  Since ***BCBSA has never paid*** for Defendants' products, or even used a penny of its own money to facilitate payments for such products, BCBSA fails to establish any factual basis for claiming it suffered a "concrete and particularized" and "actual" injury from alleged overcharges for Defendants' products.  *See, e.g.*, *Gerlinger*, 526 F.3d at 1256 (dismissing plaintiff's antitrust claim for lack of Article III standing when plaintiff never "personally paid" for the product after the alleged anticompetitive conduct took place); *Jones v. Regents of the Univ. of Cal.*, 2022 U.S. Dist. LEXIS 70745, at *14 (N.D. Cal. Apr. 18, 2022) (dismissing plaintiff's claim for lack of standing since plaintiff "has not suffered injury in fact or lost money or property" based on defendant's alleged conduct); *Fraser v. Team Health Holdings, Inc.*, 2022 U.S. Dist. LEXIS 60544, at *18-21 (N.D. Cal. Mar. 31, 2022) (dismissing claims for lack of standing when plaintiffs did not pay the fee they alleged was improper); *In re Capacitors Antitrust Litig.*, 154 F. Supp. 3d 918, 927-28 (N.D. Cal. 2015) (holding Article III requirements for standing are not met "if the plaintiff did not actually pay a supra-competitive price [] for the accused product" as "[s]tanding does not arise simply because illegality is in the air") (citing *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 127 n.3 (2014) for the proposition "generalized grievances 'do not present constitutional cases or controversies'").

### B. BCBSA Does Not Underwrite Pharmacy Benefits

In opposing Defendants' initial Motion to Dismiss, BCBSA also represented to this Court that it "bears insurance risk" and is the "underwriter of the prescription drug benefit" (ECF No. 897 at 11, 13), citing interrogatory responses verified by Mr. Stuhan (*id.* at 3-4):

- "The BCBS Plans underwrite the medical benefit component of the Federal Employee Plan and BCBSA underwrites the pharmacy benefit. The BCBS Plans are not involved in the pharmacy benefit portion of the Federal Employee Plan, except in limited and irrelevant circumstances concerning in-patient hospital claims" (ECF No. 895-2 at 13); and

- "To the extent that the premiums charged by BCBSA and collected by OPM do not cover the health benefits payments required for enrollees of the Federal Employee Plan, BCBSA and/or the 35 BCBS Plans are responsible for any overages" (*id.* at 14).

Relying on Mr. Stuhan's statements and verification, this Court found:

"BCBSA has substantial sworn evidence that it is responsible for (*i.e.*, administers and underwrites) pharmaceutical benefits whereas the Local Blues are responsible for medical benefits. BCBSA has provided verified interrogatory responses to back up this claim."

Order at 9. While the Holladay Declaration averred that "the participating Blue Cross and Blue Shield Companies underwrite the Service Benefit Plan" (ECF No. 860-4), the Court found this was not dispositive given BCBSA's contention "the declaration was addressing only medical benefits and not pharmaceutical benefits." Order at 9; *see also* ECF No. 896 ¶ 2 (Mr. Stuhan's declaration, stating the Holladay Declaration "concerns the provision of medical benefits" and "does not consider or talk about the standing and authority issues raised in Defendants' Motion to Dismiss relating to pharmacy benefits under the FEP"). Defendants also cited language in Section 2.1 of the Plan Participation Agreement that the Local Blues shall "underwrite and administer FEP benefits, in accordance with the terms of the [OPM] Contract." *See* ECF No. 896-1 at BCBSA_000012413. Although this Court found that "Defendants do have a basis for contending that the Local Blues are responsible for both medical and pharmaceutical benefits" in the Agreement, it also found "some ambiguity" in the language and concluded that the evidence was not dispositive "[a]t this juncture." Order at 10.

Ms. Holladay's sworn Rule 30(b)(6) testimony, however, resolved this ambiguity and ██████████████████████████████████████████████████████████ Ex. C at 42:4-43:14; *id.* at 57:23-59:6 ██████████████████████████████████████████ ██████████████████████████████ *id.* at 68:6-69:18, 96:2-10, 97:7-15; Ex. D at 135:15-136:2. Ms. Holladay testified that ████████████████████████████████████████████ (Ex. C at 40:24-41:10), and she confirmed that ████████████████████████

- 12 -

1   ███████████████████████████████████████████ (*id.* at

2   42:22-43:14).  Ms. Holladay testified repeatedly ███████████████

3   • ████████████████████████████████████████████
4   ████████████████████████████████████████████
5   ████████████████████████████████████████████
6   • ████████████████████████████████████████████
7   ████████████████████████████████████████████
8   • ████████████████████████████████████████████
9   ████████████████████████████████████████████
10  ████████████████████████████████████████████
11  • ████████████████████████████████████████████
12  ████████████████████████████████████████████
13  ████████████████████████████████████████████

14  Further, the BCBSA-produced business records in this case corroborate Ms. Holladay's testimony

15  without exception.  For example, the FEP Administrative Manual, which was produced after this

16  Court's March 14, 2022 Order, and for which Ms. Holladay is responsible (Ex. C at 67:2-10), ████

17  ████████████████████████████████████████████

18  ███████████████████████████████████████ (*id.* at 24:9-25:19).  The

19  FEP Manual states that ██████████████████████████████

20  ████████████████████████████████████████████

21  ████████████████████████████████████████████

22  ████████████████████████████████████████████

23  ████████████████████████████████████████████ (emphasis

24  added)).

25       This allocation of the underwriting responsibility for pharmacy benefits to the Local Blues is

26  also reflected in BCBSA's and the Local Blues' accounting practices. ████████████████

27  ████████████████████████████████████████████

28  ████████████████████████████████████████████.

1    Ex. C at 75:12-76:25.  Ms. Holladay testified that ███████████████████████████████

2    ██████████████████████████████████

3    ███████████████████████████████████████████████████████████

4    █████████████████████████████████████████████████████████████

5    █████████████████████████████████████████████████████████████

6    █████████████████████████████████████████████████████████████

7    █████████████████████████████████████████████████████████████

8    █████████████████████████████████████████████████████████████

9    █████████████████████████████████████████████████████████████

10   █████████████████████████████████████████████████████████████

11   █████████████████████████████████████████████████████████████

12   █████████████████████████████████████████████████████████████

13   ████████████████████████

14   *Id.* at 75:13-76:25.

15   ██████████████████████████████████████████████████████████

16   ███████████████████████████████████████████████████████████████

17   ███████████████████████████████████████████████████████████████

18   ██████████████████████████.  *Id.* at 99:17-101:11.  Indeed, the claims data that BCBSA

19   relies on to assert damages in this litigation further confirm that ████████████████████████

20   ███████████████████████████████████████████████████████████████

21   █████████████████████████  ECF No. 895-2 at 13).  *See* Burke Decl. Ex. K (Claims Data).████

22   ███████████████████████████████████████████████████████████████

23   ███████████████████████████████████████████████████████████████

24   ████████████████████████████████████████████████████████████ *See*

25   *id.*; Burke Decl. Ex. L (Plan Codes Index).  These newly produced documents, and deposition

26   testimony, are consistent with the extensive set of litigation documents cited in Defendants' initial

27   Motion to Dismiss that state BCBSA does not underwrite the FEP—the Local Blues do.  *See generally*

28   ECF Nos. 860, 904.

At his deposition, Mr. Stuhan, who in the initial motion was the only source of statements to the contrary, walked back his prior statements.  He testified that ███████████████ █████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ █████████████████████████████████████ (*id.* at 35:17-38:7).  Indeed, Mr. Stuhan's only explanation ████████████████████████████████████████████████████ █████████████████████████████████████████████████████. *Id.* at 33:23-35:2, 81:23-83:6.

███████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████ (*id.* at 103:7-13).  *See Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (mere assertions of "possible future injury are not sufficient").  But even in the unlikely scenario ██████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ██████████████████████ *See supra* at 13-15. ████████████████████████████. *Id.*

All of the admissible evidence—Ms. Holladay's testimony and BCBSA's business records— shows that BCBSA does not underwrite pharmacy benefits; instead, only the Local Blues do. BCBSA's argument that it bears risk through underwriting requirements in the OPM contract is thus not an alternative basis for standing.

### C.    BCBSA Fails to Proffer Any Evidence that There Is a Real and Immediate Threat of Future Injury to It

BCBSA also fails to establish standing for its injunctive-relief claims.  To assert a valid claim for injunctive relief, a claimant must establish a "real and immediate threat of repeated injury," in

1   addition to meeting the other three elements for standing to sue for past injuries.  *Chapman v. Pier 1*

2   *Imps. (U.S.), Inc.*, 631 F.3d 939, 946 (9th Cir. 2011).  BCBSA does not proffer *any* admissible evidence

3   that it has ever paid for or will ever pay for or underwrite pharmacy benefits; nor does BCBSA offer

4   *any* evidence that anyone's funds other than the government's funds (including the Local Blues' funds)

5   will be used to pay for pharmacy benefits in the imminent future.  *See supra* §§ I.A-B.  Accordingly,

6   BCBSA's injunctive-relief claims must be dismissed.

7                                      <u>**CONCLUSION**</u>

8        For all the foregoing reasons, this Court should dismiss with prejudice all of BCBSA's claims.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANTS' NOTICE OF MOTION AND RENEWED MOTION TO DISMISS
BLUE CROSS BLUE SHIELD ASSOCIATION'S CLAIMS FOR LACK OF STANDING
CASE NO: 3:19-CV-02573-EMC

| | |
|---|---|
| Dated:   June 1, 2022 | Respectfully submitted,<br><br>WHITE & CASE LLP<br><br>By:   /s/ Heather M. Burke<br>Heather M. Burke (SBN 284100)<br>Jeremy K. Ostrander (SBN 233489)<br>**WHITE & CASE** LLP<br>3000 El Camino Real<br>2 Palo Alto Square, Suite 900<br>Palo Alto, CA  94306-2109<br>Telephone:  (650) 213-0300<br>Facsimile: (650) 213-8158<br>hburke@whitecase.com<br>jostrander@whitecase.com<br><br>Christopher M. Curran (*pro hac vice*)<br>Peter J. Carney (*pro hac vice*)<br>**WHITE & CASE** LLP<br>701 Thirteenth Street, NW<br>Washington, District of Columbia 20005-3807<br>Telephone:  (202) 626-3600<br>Facsimile: (202) 639-9355<br>ccurran@whitecase.com<br>pcarney@whitecase.com<br><br>Heather K. McDevitt (*pro hac vice*)<br>Bryan D. Gant (*pro hac vice*)<br>Michael E. Hamburger (*pro hac vice*)<br>Kristen O'Shaughnessy (*pro hac vice*)<br>Raj S. Gandesha (*pro hac vice*)<br>**WHITE & CASE** LLP<br>1221 Avenue of the Americas<br>New York, New York 10020<br>Telephone: (212) 819-8200<br>Facsimile: (212) 354-8113<br>hmcdevitt@whitecase.com<br>bgant@whitecase.com<br>mhamburger@whitecase.com<br>kristen.oshaughnessy@whitecase.com<br>rgandesha@whitecase.com<br><br>Attorneys for Defendants Gilead Sciences, Inc.,<br>Gilead Holdings, LLC, Gilead Sciences, LLC, and<br>Gilead Sciences Ireland UC<br><br>/s/ Paul J. Riehle<br>PAUL J. RIEHLE (SBN 115199)<br>Paul.Riehle@faegredrinker.com<br>FAEGRE DRINKER BIDDLE & REATH LLP<br>Four Embarcadero Center, 27th Floor<br>San Francisco, CA 94111-4180<br>Telephone: (415) 591-7500<br>Facsimile: (415) 591-7510 |

DEFENDANTS' NOTICE OF MOTION AND RENEWED MOTION TO DISMISS
BLUE CROSS BLUE SHIELD ASSOCIATION'S CLAIMS FOR LACK OF STANDING
CASE NO: 3:19-CV-02573-EMC

PAUL H. SAINT-ANTOINE (*pro hac vice*)
Paul.Saint-Antoine@faegredrinker.com
JOANNE C. LEWERS (*pro hac vice*)
Joanne.Lewers@faegredrinker.com
FAEGRE DRINKER BIDDLE & REATH LLP
One Logan Square, Ste. 2000
Philadelphia, PA 19103
Telephone: (215) 988-2990

Attorneys for Defendants
JANSSEN R&D IRELAND,
JANSSEN PRODUCTS, LP, and
JOHNSON & JOHNSON

DEFENDANTS' NOTICE OF MOTION AND RENEWED MOTION TO DISMISS
BLUE CROSS BLUE SHIELD ASSOCIATION'S CLAIMS FOR LACK OF STANDING
CASE NO: 3:19-CV-02573-EMC

1

## **FILER'S ATTESTATION**

2          Pursuant to Civil L.R. 5-1(i)(3) of the Northern District of California, regarding signatures, I,

3   Heather M. Burke, attest that concurrence in the filing of this document has been obtained.

4

5     Executed:      June 1, 2022              /s/          *Heather M. Burke*
                                                            Heather M. Burke

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANTS' NOTICE OF MOTION AND RENEWED MOTION TO DISMISS
BLUE CROSS BLUE SHIELD ASSOCIATION'S CLAIMS FOR LACK OF STANDING
CASE NO: 3:19-CV-02573-EMC