United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

PETER STALEY, et al.,

Plaintiffs,

v.

GILEAD SCIENCES, INC., et al.,

Defendants.

Case No. 19-cv-02573-EMC (LB)

**DISCOVERY ORDER**

Re: ECF No. 1104

## INTRODUCTION

The parties dispute two issues: (1) whether the scope of Teva's privilege waiver is too narrow, and (2) whether Teva's waiver extends to the work-product documents held by Teva's outside counsel that were not communicated to Teva and do not reference communications with Teva.[1] The court can decide the dispute without oral argument. Civ. L.R. 7-1(b).

Generally, courts construe waivers narrowly. But the opposing party must have a fair opportunity to test the veracity of the waiving party's position on the subject matter of the waiver. Therefore, the scope of Teva's privilege waiver extends to advice concerning the merits of the

---

[1] Disc. Ltr. at 3–7 – ECF No. 1104 (filed under seal at ECF No. 1103-2). Citations refer to material in the Electronic Case File (ECF); pinpoint citations are to the ECF-generated page numbers at the top of documents.

ORDER – No. 19-cv-02573-EMC (LB)

patent dispute and whether Teva retained first-filer exclusivities but does not include antitrust advice. The plaintiffs can test Teva's arguments concerning the strength of the subject patents without referencing antitrust advice. Concerning the uncommunicated work product, uncommunicated information is unlikely to have informed Teva's views on the subject matter of the waiver. Thus, the privilege waiver does not extend to materials that were not communicated to Teva and do not reference communications with Teva.

## SUMMARY OF ARGUMENT

Teva argues that it waived its privilege on "two narrow issues: (1) 'the patent merits of Gilead's and BMS's U.S. patents covering tenofovir, emtricitabine, and efamirenz,' and (2) 'whether Teva had retained or forfeited its regulatory first-filer exclusivities.'"[2] Teva asserts that it has "produced otherwise privileged documents within the scope of its waiver in four broad categories: (1) Teva's substantive evaluation of the patent merits of Teva's disputes with Gilead and/or BMS; (2) Teva's assessment of the likely outcome of those disputes; (3) potential settlement of those disputes; and (4) negotiations of those settlements."[3] The plaintiffs contend that Teva's selective waiver of privilege is improper because it paints an incomplete and inaccurate picture of settlements between Teva and Gilead.[4]

According to the retailer plaintiffs, the waiver includes all reasons for the settlement between Teva and Gilead. The plaintiffs maintain that Teva's waiver necessarily implicates the following four core antitrust issues: "(1) any potential or actual agreements to settle the patent litigations, including the value or significance of any terms in those agreements; (2) the negotiation of, and decision to enter, any settlement agreements, including the issues the parties considered in deciding to enter agreements; (3) Teva's exclusivity, including the value and propriety of exclusivity for Teva; and (4) the merits and likely outcomes of the patent infringement actions."[5]

_____

[2] *Id.* at 3.

[3] *Id.*

[4] *Id.* at 2–3.

[5] *Id.* at 2.

United States District Court
Northern District of California

United States District Court
Northern District of California

1    The plaintiffs argue that Teva cannot withhold documents concerning "the reverse payment

2    value it received from Gilead, its exclusivity, and antitrust advice it received in connection with

3    the settlement negotiations" because those matters "relate directly to the 'reasons' it agreed to the

4    Gilead settlement, and thus are inextricably part of the same subject as to which it selectively

5    waived."[6] Thus, a primary aspect of the dispute is whether Teva has waived privilege over

6    antitrust advice it received concerning the settlement with Gilead. The plaintiffs also claim that

7    Teva has not, in fact, produced all information concerning its first-filer exclusivity or the value of

8    the settlements.[7]

9    For instance, the plaintiffs cite redactions in documents discussing the settlement generally and

10   argue that these redactions obscure Teva's "reasons for settling."[8] In response, Teva asserts that

11   the redactions contain "antitrust advice with no discussion of valuation," "privileged and non-

12   responsive information about irrelevant products," and a "discussion of unrelated litigation

13   between Teva and GSK."[9] Teva has also offered to provide unredacted versions of the documents

14   for *in camera* review.[10]

15   Concerning the uncommunicated work product, the plaintiffs contend that excluding that

16   material from the waiver will prevent the plaintiffs from accessing "oral advice actually

17   conveyed" to Teva because the witnesses will not be able to recall the information during

18   "deposition[s] conducted without the benefit of the lawyer's files."[11] The plaintiffs note that

19   limiting the waiver to only those documents that were actually transmitted to Teva or that

20   memorialized oral advice "ignores how lawyers and clients really work."[12]

---

[6] *Id.*

[7] *Id.* at 3–4.

[8] *Id.* at 3.

[9] *Id.* at 4.

[10] *Id.* at 4 n.2.

[11] *Id.* at 5.

[12] *Id.*

ORDER – No. 19-cv-02573-EMC (LB)                3

Teva, relying on *In re EchoStar Comm'n Corp.*, 448 F.3d 1294 (Fed. Cir. 2006), contends that it would be improper to require Teva to produce work-product materials from outside counsel that were not communicated to Teva because that uncommunicated material could not possibly have impacted Teva's decisions concerning the settlements between Teva and Gilead.[13] Teva argues that forcing it to produce this material would encourage speculation about its possible motives for the settlements and undermine the work-product doctrine based on unfounded concerns that Teva's outside counsel communicated their work to Teva without leaving a paper trail.[14]

In this regard, Teva also cites the parties' apparent agreement that Teva would only need to search the records of certain custodians, not including outside counsel, for discoverable materials.[15] To support its contention that this agreement applies to the present dispute, Teva notes that the parties reached this agreement after Teva indicated it may selectively waive privilege.[16] The plaintiffs counter that the retailer plaintiffs "never agreed [that] Teva need not search outside counsel's files if it elected to produce a partial set of privileged materials." The plaintiffs also argue that certain plaintiffs (including United HealthCare Services, Inc. and the Individual Health Plan Plaintiffs) were not partis to any such agreement because they served their own discovery requests.[17]

## ANALYSIS

### 1. Scope of Waiver

Under Rule 502(a), when a party "waives the attorney-client privilege or work-product protection, the waiver extends to an undisclosed communication . . . only if: (1) the waiver is intentional; (2) the disclosed and undisclosed communications or information concern the same subject matter; and (3) they ought in fairness to be considered together." Fed. R. Evid. 502(a)(1).

---

[13] *Id.* at 6–7.

[14] *Id.* at 7.

[15] *Id.* at 7 n.3

[16] *Id.*

[17] *Id.* at 6.

1    Generally, then, a waiver extends to all communications on the same subject matter. *Cormack v.*

2    *United States*, 118 Fed. Cl. 39, 43 (2014) (citing cases); *see also Weil v. Inv./Indicators, Rsch. &*

3    *Mgmt., Inc.*, 647 F.2d 18, 24 (9th Cir. 1981) ("[V]oluntary disclosure of the content of a privileged

4    attorney communication constitutes waiver of the privilege as to all other such communications on

5    the same subject."). There is no bright-line test for evaluating the scope of a waiver; instead,

6    courts weigh the circumstances of the disclosure, the nature of the legal advice, and the prejudice

7    to the parties of permitting or prohibiting further disclosures. *See Cormack*, 118 Fed. Cl. at 43.

8         Courts are concerned with fairness and avoiding the inequitable results that can attend the

9    selective waiver of privilege. *See id*. In the context of an implicit waiver, the Ninth Circuit has

10   stated that "[t]he privilege which protects attorney-client communications may not be used both as

11   a sword and a shield." *Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156, 1162 (9th Cir. 1992). And,

12   in general, the waiver should be no broader than fairness requires. *Bittaker v. Woodford*, 331 F.3d

13   715, 720 (9th Cir. 2003).

14        For example, courts in this district have held that it is improper for a reverse-payment antitrust

15   defendant to waive privilege as to the "decision to *seek* a settlement" but not the "decision to *effect*

16   a settlement." *In re Glumetza Antitrust Litig.*, No. 19-cv-05822-WHA (RMI), 2020 WL 3498067,

17   at *4 (N.D. Cal. June 29, 2020). The court held that the defendant's "'subjective views of the

18   merits of the patent litigation leading up to the settlement' would necessarily include the

19   settlement negotiations themselves, up to and including the day that the final version of that

20   agreement was signed and executed by" the defendant. *Id.* (cleaned up).

21        In essence, the court held that it would be improper for the defendant to rely on or waive

22   privilege for information concerning its views of the underlying patent litigation at the beginning

23   of settlement negotiations while retaining privilege over its views of the underlying patent

24   litigation during the later stages of the settlement negotiations. *Id.* ("Therein lies the obfuscation –

25   it cannot be said that '[the defendant] had decided to settle,' until after it had communicated with

26   [the defendant's counsel in the patent litigation] about 'the exact terms of the settlement.'"). The

27   court ordered the defendant to produce "all documents that discuss: (1) the likely outcome of the

28   underlying patent litigation; (2) whether [the defendant's] at-risk launch would constitute willing

United States District Court
Northern District of California

1    infringement; (3) whether [the defendant] had a legal path to market before June of 2020; (4)

2    whether [the defendant's] agreement to launch after 2012 was a delay; and, (5) the terms of the

3    settlement agreement (including the no-AG [authorized generic] provision)." *Id.*

4        The issue in *Glumetza* was an affirmative waiver — like the waiver at issue here — but the

5    parties also cite *In re Lidoderm Antitrust Litig.*, which concerned an involuntary waiver. No. 14-

6    md-02521-WHO, 2016 WL 4191612, at *1 (N.D. Cal. Aug. 9, 2016). In *Lidoderm*, the court

7    evaluated whether certain of the defendant's subjective beliefs about an allegedly anticompetitive

8    settlement implied a waiver of privilege. 2016 WL 4191612, at *1–2. In conducting this analysis,

9    the court focused on fairness, stating that "it would be unfair to not allow plaintiffs access to

10   defendants' contemporaneous attorney-client information to test the veracity of the defendants'

11   justifications in this litigation even though that belief is based in part on business judgment and

12   executive experience." *Id.* at *5 (footnote omitted). The court also held that it "must impose a

13   waiver no broader than needed to ensure the fairness of the proceedings before it." *Id.* at *3 n.4

14   (citing *Bittaker*, 331 F.3d at 721).

15       The court in *Lidoderm* individually evaluated several of the defendant's subjective beliefs

16   about the settlement to determine whether the defendant waived attorney-client privilege for each

17   specific issue. *Id.* at *21 ("[The defendant] cannot provide subjective testimony on these subject

18   matters (contents, chances of success, and timing) without putting all related attorney-client

19   information on those matters at issue."). The court held, among other things, that "the concept [of

20   an 'at risk' launch before the resolution of patent litigation] requires reference to the status and

21   strength of the patent litigation and necessarily implicates legal advice." *Id.* at *17.

22       The *Lidoderm* decision does not stand for the proposition that whenever a party puts forward

23   privileged justifications (*e.g.*, views on the strength of the underlying patents) for a purportedly

24   anticompetitive settlement, the party has necessarily waived privilege for all reasons for the

25   settlement. If that were the case, then the court's individualized evaluation of each subjective

26   belief or reason for entering the settlement in *Lidoderm* would have been unnecessary. Thus, while

27   it is true that an agreement is forbidden "[i]f the basic reason [for a settlement] is a desire to

28   maintain and to share patent-generated monopoly profits" (*F.T.C. v. Actavis, Inc.*, 570 U.S. 136,

United States District Court
Northern District of California

158 (2013)), the waiver of privilege for one or two justifications for the settlement does not open the door to the entire universe of reasons for the settlement.

Here, Teva has voluntarily waived privilege with respect to the following: (1) "the patent merits of Gilead's and BMS's U.S. patents covering tenofovir, emtricitabine, and efavirenz" and (2) "whether Teva had retained or forfeited its regulatory first-filer exclusivities."[18] The scope of Teva's waiver encompasses the material that is necessary for the plaintiffs to have a fair opportunity to test the veracity of Teva's position on these two matters. Teva does not dispute that its waiver encompasses the following: "(1) Teva's substantive evaluation of the patent merits of Teva's disputes with Gilead and/or BMS; (2) Teva's assessment of the likely outcome of those disputes; (3) potential settlement of those disputes; and (4) negotiations of those settlements."[19] Limiting the scope of the waiver in this way ensures that the plaintiffs have a fair opportunity to refute Teva's position and aligns with what other courts in this district have required. *See Glumetza*, 2020 WL 3498067, at *4.

Fairness does not require giving the plaintiffs access to Teva's privileged antitrust advice. First, Teva is not relying on antitrust advice to establish its subjective views about the merits of the patent litigation or first-filer exclusivities. *Cf. Lidoderm*, 2016 WL 4191612, at *1–2. Second, permitting Teva to maintain privilege over the antitrust advice it received concerning the settlement would not permit it to obfuscate how its views on the merits of the patent litigation may have changed over time. *Cf. Glumetza*, 2020 WL 3498067, at *4 (holding that the defendant's subjective views of the underlying patent litigation leading up to the settlement would necessarily include the settlement negotiations themselves).

The plaintiffs claim that Teva redacted information concerning the valuation of the settlement and point to redactions relating to general possibilities and ideas concerning the settlement.[20] Because the value of the settlement is relevant to Teva's view of the strength of the patents, the

---

[18] *Id.* at 3.

[19] *Id.*

[20] *Id.* at 2–3.

United States District Court
Northern District of California

plaintiffs are entitled to access privileged information concerning Teva's valuation of the settlement. Nonetheless, the redactions identified by the plaintiffs do not necessarily implicate privileged information concerning Teva's valuation of the settlement. There is no reason to believe that Teva's description of the redacted information is false.

In sum, Teva has waived privileged with respect to (1) the strength of "Gilead's and BMS's U.S. patents covering tenofovir, emtricitabine, and efavirenz" and (2) "whether Teva had retained or forfeited its regulatory first-filer exclusivities."[21] The waiver encompasses "(1) Teva's substantive evaluation of the patent merits of Teva's disputes with Gilead and/or BMS; (2) Teva's assessment of the likely outcome of those disputes; (3) potential settlement of those disputes; and (4) negotiations of those settlements."[22] If Teva has withheld information on these subjects, then it must produce them within seven days of this order. Teva, is not, however, required to produce privileged antitrust advice it received concerning the settlements.

### 2.  Uncommunicated Work-Product

The plaintiffs ask the court to compel Teva to produce uncommunicated work product materials. The court in *In re EchoStar Comm'n Corp.* identified three categories of work product "(1) documents that embody a communication between the attorney and client concerning the subject matter of the case, such as a traditional opinion letter; (2) documents analyzing the law, facts, trial strategy, and so forth that reflect the attorney's mental impressions but were not given to the client; and (3) documents that discuss a communication between attorney and client concerning the subject matter of the case but are not themselves communications to or from the client." 448 F.3d at 1302. The court held that when a party asserts an advice-of-counsel defense, the party waives the privilege for the first and third categories. *Id.* at 1303.

The plaintiffs have cited some out-of-district cases and cases pre-dating *EchoStar* to support their position that Teva must produce work product that was not communicated to the client and

---

[21] *Id.* at 3.

[22] *Id.*

United States District Court
Northern District of California

does not reference attorney-client communications (*i.e.*, the second category noted in *EchoStar*). *United Specialty Ins. Co. v. Dorn Homes Inc.*, 334 F.R.D. 542, 545 (D. Ariz. 2020); *Electro Sci. Indus., Inc. v. Gen. Scanning, Inc.*, 175 F.R.D. 539, 545 (N.D. Cal. 1997). But the weight of the recent authority supports Teva's view that the waiver does not apply to the second category of work product identified in *EchoStar. See, e.g., Rising Tide I, LLC v. Fitzsimmons*, No. 17-cv-01232-TSH, 2019 WL 6245379, at *2 (N.D. Cal. Nov. 22, 2019); *Monster Energy Co. v. Integrated Supply Network, LLC*, No. ED CV 17-00548 CBM (RAO), 2018 WL 6133717, at *7 (C.D. Cal. June 18, 2018).

Furthermore, the holding in *Electro Sci. Indus.*, which the plaintiffs cite, relied on a broader pre-2015 version of Rule 26(b). 175 F.R.D. at 546 ("A conclusion that such material [uncommunicated work product] might well be relevant, or might well lead to the discovery of admissible evidence, does not, of course, end our inquiry."). The 2015 amendments to Rule 26 changed the rule such that it was no longer "good enough to hope that the information sought might lead to the discovery of admissible evidence." *Gilead Scis., Inc. v. Merck & Co, Inc.*, No. 5:13-cv-04057-BLF, 2016 WL 146574, at *1 (N.D. Cal. Jan. 13, 2016). Consequently, the 2015 amendments to Rule 26 also support Teva's position that the waiver does not extend to work product that was not communicated to Teva and does not reference communications with Teva.

Concerning the purported agreement to limit the scope of discovery and exclude outside counsel from custodians whose records need to be searched, the parties disagree on the meaning of this agreement.[23] Teva has not identified any evidence establishing that all parties intended to exclude all material held by outside counsel or uncommunicated work product from the scope of discovery. The impact of the parties' discovery agreement on this dispute is unclear and the court does not rely on it to decide this dispute.

Thus, Teva is not required to produce protected work product from outside counsel that was not communicated to Teva and does not reference any communication with Teva. Teva may also redact uncommunicated work product in documents that must be produced because they reference

---

[23] *Id.* at 6.

communication with Teva. *See EchoStar*, 448 F.3d at 1304 ("[T]he parties should take special care to redact such information [*i.e.*, uncommunicated work product within documents referring to attorney-client communications], and if necessary the district court may review such material *in camera*.").

## CONCLUSION

Teva has waived its privilege with respect to the following: "(1) Teva's substantive evaluation of the patent merits of Teva's disputes with Gilead and/or BMS; (2) Teva's assessment of the likely outcome of those disputes; (3) potential settlement of those disputes; and (4) negotiations of those settlements."[24] If Teva has withheld privileged information concerning these subjects, then it must produce that information within seven days of this order. Teva is not, however, required to produce privileged antitrust advice related to the settlement with Gilead.

Regarding the work-product dispute, Teva is not required to produce protected work product from outside counsel that was not communicated to Teva and does not reference any communication with Teva.

This disposes of ECF No. 1104.

**IT IS SO ORDERED.**

Dated: June 3, 2022

_____
LAUREL BEELER
United States Magistrate Judge

---

[24] *Id.* at 4.