July 23, 2022

**VIA ECF**

The Honorable Laurel Beeler
United States District Court
Northern District of California
Courtroom B - 15th Floor
450 Golden Gate Avenue
San Francisco, CA 94102

Re:   *Staley et al. v. Gilead Sciences, Inc. et al.* - Case No. 3:19-cv-02573-EMC

Dear Magistrate Judge Beeler:

Plaintiffs Humana Inc., Blue Cross and Blue Shield of Florida, Inc. (d/b/a Florida Blue) and Health Options, Inc. (d/b/a Florida Blue HMO), Centene Corporation, Blue Cross and Blue Shield of South Carolina and BlueChoice HealthPlan of South Carolina, Inc., Triple-S Salud, Inc., Kaiser Foundation Health Plan, Inc., and Blue Cross and Blue Shield of Kansas City (together, the "IHPPs"), together with Defendant Teva Pharmaceuticals USA, Inc. ("Teva"), submit this joint letter brief regarding a discovery dispute they have been unable to resolve through the meet-and-confer process.[1]

Pursuant to Paragraph 7.3(b) of the Supplemental Protective Order entered in this case, a "declaration describing the parties' efforts to resolve the matter by agreement" is attached. Dkt. 484, ¶ 7.3(b).

Respectfully submitted,

*/s/ Joshua C. Stokes*
Joshua C. Stokes
*Counsel for the IHPPs*

*/s/ Christopher T. Holding*
Christopher T. Holding
*Counsel for Teva*

cc:  All Counsel of Record (via ECF)

---

[1] Consistent with Your Honor's Standing Order, the parties have not attached any exhibits containing the facts cited in this joint submission other than the Declaration required by the Supplemental Protective Order, but can supply them at the Court's request.

I.      **Statement of Unresolved Issue.**

IHPPs seek leave to provide Teva's confidential information to Stephen R. Auten, who may present reply expert opinions concerning the development and approval of pharmaceutical products. Teva objects to Mr. Auten receiving its confidential information under Paragraph 7.3(b) of the Supplemental Protective Order based on Teva's engagement of Mr. Auten as an expert in a tax matter, *Actavis Laboratories FL, Inc. v. United States*, No. 19-798 (Fed. Cl.) ("Actavis Tax Matter"). (Dkt. 484, ¶ 7.3(b)). The parties disagree on whether Mr. Auten may receive confidential information in this matter.

A.      **Plaintiffs' Position:** Mr. Auten's prior work for Teva in the Actavis Tax Matter is not grounds for barring him from receipt of Teva's confidential information in this matter. Mr. Auten has not worked on that matter since April 2021. That prior work should not disqualify him here.

1. **Teva Agreed to Mr. Auten Providing Consultation Services Adverse to Teva.**

Teva expressly waived any purported conflict in its engagement letter in the Actavis Tax Matter. The letter states, "neither Teva nor its affiliates will seek to disqualify the [Mr. Auten or his firm] from representing any other entity or individual in patent litigation or patent consultation adverse to Teva or its affiliates (including Cephalon) based on the present engagement." Mr. Auten's work as an expert in the present case, which involves a pay-for-delay ("PFD") settlement of patent litigation, is the type of "patent consultation" to which Teva expressly consented. Teva quotes from Plaintiffs' initial disclosure that Mr. Auten's opinions may be "related to the development of regulatory and product development issues," but omits that the protective order only requires expert disclosures to the extent they may opine on these limited issues, as opposed to patent issues. IHPPs have made clear that the focus of Mr. Auten's opinions will be Hatch-Waxman patent litigation. The fact that Mr. Auten's analysis of the patent issues in this case may also touch on related regulatory and product development issues does not take his opinions outside the scope of Teva's prior written consent.

Mr. Auten's opinions in the Actavis Tax Matter do not overlap with those he may present in this PFD antitrust litigation. As Teva itself stated in the Actavis Tax Matter, that matter involves "a refund of taxes from Defendant the United States, after the Internal Revenue Service . . . disallowed Taxpayer's deductions for expenses incurred in defending against claims of patent infringement in the 2008 and 2009 tax years." (No. 19-798, Dkt. 31-1, Actavis Br. 31-1.) The present case is no tax case. Here, Plaintiffs allege that Teva conspired with Gilead to delay generic entry and further Gilead's cART regimen monopoly. (ECF No. 1055 ¶ 21.) Mr. Auten's report, declaration, and deposition transcript from the Actavis Tax Case are publicly available. (Dkt. 31-2, A0001-98, A0858-901.) Nowhere did Mr. Auten provide opinions about tenofovir or any other cART drug at issue here. Instead, Teva attempts to paint Mr. Auten's opinions here as overlapping with his prior ones because they both fall within his general area of expertise, Hatch-Waxman patent litigation. The passages of Mr. Auten's prior report that Teva quotes contain nothing more than general descriptions of the Hatch-Waxman process (No. 19-798, Dkt. 31-2, A0007-08, A0090); they cite no Teva confidential information, nor do they present any opinions about Teva's business or the drugs at issue here.

2. **Teva Cannot Show Mr. Auten Received Relevant Confidential Information.**

Nor does the unrelated, questionably confidential information Mr. Auten may have received in the

Actavis Tax Litigation warrant disqualifying him as an expert. Although Mr. Auten is an attorney, he was engaged only as an expert in the Actavis Tax Litigation – not counsel. No. 19-798, Dkt. 31-2:10-13 ("Q. . . . Do you currently have an attorney-client relationship with Teva . . . ? A. I do not."). "[D]isqualification of an expert is warranted based on a prior relationship with an adversary if (1) the adversary had a confidential relationship with the expert and (2) the adversary disclosed *confidential information* to the expert that is *relevant* to the current litigation." *Hewlett-Packard Co. v. EMC Corp.*, 330 F. Supp. 2d 1087, 1092-93 (N.D. Cal. 2004) (emphases added). "The party seeking to disqualify an expert carries the burden to establish that disqualification is warranted." *In re Xyrem (Sodium Oxybate) Antitrust Litig.*, No. 20-md-2966, 2022 WL 393208, at *2 (N.D. Cal. Feb. 9, 2022). Where only one of the two Hewlett-Packard factors exists, "disqualification likely is inappropriate." *Id.* at 1093.

First, under the *Hewlett-Packard* standard, the purported confidential information received by Mr. Auten in the Actavis Tax Matter is not relevant to the current litigation. Teva has pointed to only two allegedly confidential documents Mr. Auten may have received in the Actavis Tax Matter: (1) a deposition transcript of Colman Ragan, an in-house attorney for Teva; and (2) Teva's interrogatory responses. If these discovery documents were truly relevant to this matter, they should have been produced. Indeed, Teva makes no claim that these documents discuss the specific Teva drug products at issue in the present litigation. Instead, Teva contends that the alleged confidential documents contain general information about "Teva's accounting procedures and business practices for manufacturing generic pharmaceuticals," "Teva's considerations and strategies for settling Hatch-Waxman litigation" and responses to general questions about "reverse payment antitrust litigation." (Holding Ltr. at 2.) This general information is not relevant to the specific drug products in this case and is not grounds for disqualification. By contrast, in each of the cases Teva cites in which experts were disqualified, the expert received information in the course of the prior confidential relationship that had direct relevance to the current case. *E.g.*, *Xyrem*, 2022 WL 393208, at *4 & n.8 (disqualifying experts who were previously retained by another party in litigation for the same drug product); *Broadcom Corp. v. Emulex Corp.*, No. 09-1058, 2010 WL 11465478, at *3 (C.D. Cal. Apr. 5, 2010) (disqualifying expert who "participated in privileged communications during patent prosecution").

Furthermore, the relevant time periods and parties involved undermine Teva's claim that the Actavis Tax Matter documents are relevant to this litigation. The Actavis Tax Matter involves the 2008-2009 tax years for Watson Pharmaceuticals Inc. ("Watson"). (No. 19-798, Dkt. 31-1, Actavis Br. 31-1.) Teva did not acquire Watson's successor (Actavis) until 2016. (No. 19-798, Dkt. 31-2, A1063:14-1065:12.) The current litigation involves products that were developed and litigated by Teva itself dating back before 2016 – not Watson or Actavis. Business practices related to a 14-year-old tax dispute involving a company Teva later acquired have no relevance here.

Teva's argument that Mr. Auten received confidential information is questionable at best. The entirety of Mr. Auten's reports, which quote substantial portions of Mr. Ragan's testimony, have been publicly disclosed by Teva. (No. 19-798, Dkt. 31-2, A0004-98, ¶¶ 51, 54, 56, 75, 77, 80-82, 87-88.) Teva also waived confidentiality on large portions of the transcript itself. (No. 19-798, Dkt. 31-2, A1058-82.) That publicly-disclosed testimony concerns Teva's general internal business practices – the same type of content Teva now claims is confidential.

Moreover, both of the confidential documents identified by Teva constitute *discovery* in the Actavis Tax Matter. Discovery documents with general business information from a prior litigation are simply not the type of information that is of "particular significance" or that "can be readily

identified as either attorney work product or within the scope of the attorney-client privilege" such that it might warrant disqualification. *Hewlett*, 330 F. Supp. 2d at 1094.

### 3. Permitting IHPPs to Work with Mr. Auten Promotes Fairness.

Mr. Auten's access to confidential information for a potential reply report is consistent with principles of fairness and minimizing prejudice. *See Hewlett*, 330 F. Supp. 2d at 1094; Dkt. 484, ¶ 7.3(b) (party opposing disclosure "shall bear the burden of providing that the risk of harm that the disclosure would entail . . . outweighs the Receiving Party's need to disclose the Protected Material to its Expert"). Considerations of fairness and prejudice weigh against disqualification.

Teva's claim that it will be harmed by Mr. Auten's access to Teva's confidential information for in this case cannot be squared with its acquiescence to Mr. Auten working directly adverse to Teva concurrently with the Actavis Tax Matter. (No. 19-798, Dkt. 31-2, A0874:24-A0875:1 ("Q. Are you currently adverse to Teva as part of your substantive practice? A. Some of its affiliated companies, yes.").) Indeed, Teva points to no specific harm other than vague concerns that Mr. Auten will be "tainted" by his access to discovery documents in the prior case.

IHPPs will be prejudiced if Mr. Auten is disqualified from providing reply expert opinions in this matter. With only three weeks for reply reports, IHPPs lack sufficient time to identify and retain a new expert with Mr. Auten's unique combination of experience relevant to this PFD patent litigation, including experience in-house at a generic pharmaceutical company, expertise with Hatch-Waxman patent litigation and regulatory issues, and familiarity with stereochemistry. "[D]isqualification is a drastic measure that courts should impose only hesitantly, reluctantly, and rarely." *Hewlett*, 330 F. Supp. 2d at 1092. The facts here do not warrant this drastic measure.

**B. Teva's Position:** Mr. Auten's work for and receipt of Teva's confidential information raises a direct conflict with IHPPs' proposed disclosures and use of Mr. Auten as an expert now.

Simply put, IHPPs cannot justify the need to hire an expert concerning drug development and regulatory approval that Teva has actively engaged for the same purpose; particularly when Teva first told IHPPs of its objections on ***June 8***, and IHPPs only see fit to claim unfairness now.

### 1. IHPPs Misstate the Scope of Mr. Auten's Engagement with Teva.

Though Mr. Auten is currently serving as an expert for Teva in what IHPPs refer to as the "Actavis Tax Matter," his engagement extends beyond that—Mr. Auten agreed "to serve as an expert witness **for Teva Pharmaceuticals USA, Inc.** ('Teva') in connection with **several cases pending** … concerning the proper tax treatment for generic manufacturers' defense costs in Hatch-Waxman patent litigation," including Teva's costs (emphasis added) (collectively, the "Tax Engagement"). While the pending motions in the Actavis Tax Matter specifically concern Watson's tax burden for 2008-2009, the case involves a *per se* legal argument by the government that "the regulatory review by the FDA of a Paragraph IV ANDA and any patent infringement suit brought by the branded drug manufacturer [Hatch-Waxman litigation] are intertwined processes," affecting the tax treatment of all such defense costs. (No. 19-798, Dkt. 46-1, at 9.) Mr. Auten's work, then, concerns not just Watson's expenditures in 2008-2009, but also **all of Teva's** Hatch-Waxman defenses, ***including*** its defenses in the underlying patent litigations here.

### 2. The Subject Matter of the Tax Engagement Overlaps with IHPPs' Broad Disclosure of Mr. Auten's Potential Opinions.

In Mr. Auten's engagement letter with Teva, Teva reserved its ability to object to conflicts where

3

Mr. Auten "represent[ed] an interest directly adverse to Teva on a matter substantially related to" the Tax Engagement. That restriction applies here.

IHPPs argue that Mr. Auten's representation falls within Teva's limited waiver of conflicts for "patent consultations" (*i.e.*, in consideration of Mr. Auten's work as a patent litigator, opinions related to patent merits in Hatch-Waxman patent litigation). But that waiver is inapplicable. IHPPs have put forth Mr. Auten as a potential expert concerning "***the development and approval of pharmaceutical products***," not patent strength or patent merits. IHPPs claim that they have "made clear" that Mr. Auten's "focus" will be on the (already unlimited) topic of "Hatch-Waxman patent litigation," but they pointedly refuse to limit his proposed testimony to patent issues or "patent consultations," and thus there is no waiver. Rather, the scope IHPPs *have* proposed for Mr. Auten here falls outside of patent issues alone and implicates topics on which he did testify about or opine on in the Tax Engagement, including, among others:

- "[T]he process for FDA approval of generic drugs" (No. 19-798, Dkt. 31-2, A0007);
- "The factors that influence a generic drug company's decision to seek to market its drug sooner by filing an ANDA with a Paragraph IV certification" (*id.*);
- "The factors that influence a branded drug company's decision to sue for patent infringement" (*id.* at A0008);
- "[T]he economic benefits enjoyed by ANDAs with a Paragraph IV certification compared to other ANDAs which do not have Paragraph IV certifications" (*id.* at A0090); and
- "[The] particular economic benefits of being the first to file an ANDA with a Paragraph IV certification for a specific drug" (*id.*).

The conflict is clear. The issue is not whether, broadly construed, a reverse payment antitrust litigation "is" a "tax case," as IHPPs suggest. The issue is that Mr. Auten has already given opinions on "the development and approval of pharmaceutical products," *for Teva*, in a case that directly implicates Teva's rights with regard to defense spending in past Hatch-Waxman litigation.

### 3. As Part of the Tax Engagement, Mr. Auten Received Confidential Information Concerning Teva's Drug Development and Approval Processes.

Beyond the direct conflict raised in Mr. Auten's engagement letter, this Court has previously held that "disqualification of an expert is warranted" where "(1) [the objecting party] had a confidential relationship with the expert and (2) [that party] disclosed confidential information to the expert that is relevant to the current litigation." *In re Xyrem (Sodium Oxybate) Antitrust Litig.*, 2022 WL 393208, at *2, *4-5 (N.D. Cal. Feb. 9, 2022) (disqualifying experts retained by antitrust plaintiffs previously retained by defendant during prior patent litigation); *see also Broadcom Corp. v. Emulex Corp.*, 2010 WL 11465478, at *1 (C.D. Cal. Apr. 5, 2010) (disqualifying expert based on confidential relationship and relevant information sharing). This doctrine applies here. IHPPs do not contest the first factor—Mr. Auten has a confidential relationship with Teva as an expert.

As to the second factor, Mr. Auten clearly received confidential information "relevant" to his proposed work in this litigation. As part of his work for the Actavis Tax Matter, Mr. Auten reviewed, and cited as material considered in his report, the deposition transcript of Colman Ragan, Vice President and General Counsel at Teva for North America IP Litigation, which was designated confidential in that litigation. (No. 19-798, Dkt. 31-2, A0059, A1058; *id.*, Dkt. 21 (Protective Order).) That testimony included ***Teva's*** considerations and strategies for settling Hatch-Waxman litigation and answers to questions about reverse payment antitrust litigation, the core substantive issue here. Relevant to Mr. Auten's proposed opinions, Mr. Ragan also explained

4

*Teva's* review process for potential products, including, what "data points" Teva specifically evaluates in the development of new products, and the factors that go into Teva's assessment of product competition and profitability. Mr. Ragan also testified concerning how Hatch-Waxman litigation interacts with Teva's decision-making, why generic manufacturers withdraw ANDAs, and in what circumstances generic manufacturers might decide to launch at risk. This confidential information about Teva's practices from Teva deposition testimony, which Mr. Auten received in connection with rendering expert opinions for Teva, overlaps directly with "the development and approval of pharmaceutical products" subject matter for which IHPPs propose to use Mr. Auten in this case and would inevitably taint Mr. Auten's proposed opinions in this case.

IHPPs raise three primary arguments against this conclusion. None succeed.

First, IHPPs claim that, if relevant, this material should have been produced. But Mr. Ragan is not a witness in Teva's disclosures, nor have IHPPs identified any document request that would reach Mr. Ragan's views of Teva's development and regulatory approval processes not focused on HIV products (because there isn't one). Nor, in any event, have IHPPs ever asked to see the transcript.

Second, IHPPs posit that if Mr. Ragan's statements were not specifically about the drug products at issue here, they cannot be relevant to Mr. Auten's opinions here. How not? IHPPs want Mr. Auten to render opinions ***not limited*** to the specific products at issue. Likewise, Mr. Auten was provided confidential thoughts of Teva counsel on drug development and approval not limited to the specific products at issue. Even if Mr. Auten's opinions in this litigation were limited, Mr. Ragan's statements concerning the more general case would inevitably color the specific.

Third, IHPPs challenge the confidentiality of the material received by Mr. Auten, citing the fact that Mr. Auten's reports and deposition transcript and a portion of Mr. Ragan's deposition transcript appear on the docket of the Actavis Tax Matter. In truth, however, only twenty pages of Mr. Ragan's substantive question-and-response appears in the public record. (No. 19-798, Dkt. 31-2, A1062-82.) The transcript is over 170 pages long and stamped "CONFIDENTIAL." (*Id.*)

### 4. Any Prejudice Felt by IHPPs from Disqualification Is Their Own Doing

Having Mr. Auten opine against Teva here on the topic of drug development and approval (after having opined ***for*** Teva on the same subject in pending litigation) would not, as IHPPs suggest, "promote[] fairness." Rather, allowing such flip-flopping would undermine "the goal of protecting the integrity of the adversary process and of promoting public confidence in the legal system." *Hewlett-Packard Co. v. EMC Corp.*, 330 F. Supp. 2d 1087, 1095 (N.D. Cal. 2004) (warning experts "might be motivated 'to sell their opinions to the opposing parties or the highest bidder without concern about the potential confidentiality of their previous consultations'"). That is why there is no inconsistency with disqualifying Mr. Auten here but also his appearing adverse to Teva affiliates on other unrelated issues. Here, IHPPs want to use Mr. Auten to opine on regulatory matters that ***overlap*** with the substance of his testimony for Teva.

IHPPs also complain that they have "only three weeks" until reply expert reports are due and thus "lack sufficient time to identify and retain a new expert." But IHPPs created this time crunch. On May 26, 2022, IHPPs disclosed Mr. Auten as a potential expert. On ***June 8*** (more than two weeks before the opening expert report deadline), Teva objected to Mr. Auten being retained by IHPPs for these purposes. IHPPs ***did not respond*** until they reasserted their disclosure on July 12. IHPPs cannot claim prejudice after having sat on their hands for over a month, knowing Teva objected, and having made no move to seek relief from this Court or to use another expert.

5

## Declaration of Joshua C. Stokes

1. I, Joshua Stokes, am a partner at Berry Silberberg Stokes PC.

2. I am counsel for Plaintiffs Humana Inc., Blue Cross and Blue Shield of Florida, Inc. (d/b/a Florida Blue) and Health Options, Inc. (d/b/a Florida Blue HMO), Centene Corporation, Blue Cross and Blue Shield of South Carolina and BlueChoice HealthPlan of South Carolina, Inc., Triple-S Salud, Inc., Kaiser Foundation Health Plan, Inc., and Blue Cross and Blue Shield of Kansas City (together, the "IHPPs") in *Staley et al. v. Gilead Sciences, Inc. et al.* - Case No. 3:19-cv-02573-EMC (N.D. Cal.) ("Litigation").

3. On July 12, 2022, I provided notice to Defendants as required by Paragraphs 7.2(b) and 7.3 of the Supplemental Protective Order entered in the Litigation (Dkt. 484) that Stephen R. Auten may provide reply expert opinions in the Litigation, which will require him to review certain documents containing information Defendants have designated as Confidential and/or Highly Confidential – Outside Counsel Only.

4. Defendant Teva Pharmaceuticals USA, Inc. ("Teva") objected pursuant to the Supplemental Protective order and provided a letter stating its reasons for objecting.

5. I provided Teva with a responsive letter explaining why IHPPs disagree with Teva's objections.

6. On July 19, 2022 the parties' counsel met and conferred via telephone regarding Teva's objections during which they discussed the parties' positions as well as possible means to reduce the purported risks identified by Teva.

7. In Teva's letter and during the subsequent discussions, Teva identified Mr. Auten's work as an expert for Teva in *Actavis Laboratories FL, Inc. v. United States*, No. 19-798 (Fed. Cl.) as its basis for objecting to Mr. Auten.

8. The parties communicated again via email on July 20, 2022, about possible means to reduce the purported risks identified by Teva, but were unable to reach agreement.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed this 23rd day of July, 2022, at Los Angeles, California.

*/s/ Joshua C. Stokes*
Joshua C. Stokes
*Counsel for the IHPPs*

## **FILER'S ATTESTATION**

   Pursuant to Civil L.R. 5-1(h)(3), regarding signatures, I, Joshua C. Stokes, attest that concurrence in the filing of this document has been obtained.

Dated:  July 23, 2022   By:   */s/ Joshua C. Stokes*

**CERTIFICATE OF SERVICE**

      I hereby certify that on July 23, 2022 the within document was filed with the Clerk of the Court using CM/ECF which will send notification of such filing to the attorneys of record in this case.

                                            */s/ Joshua C. Stokes*