1

2

3

4

5

6

7

8                           UNITED STATES DISTRICT COURT

9                          NORTHERN DISTRICT OF CALIFORNIA

10                                San Francisco Division

11    PETER STALEY, et al.,                          Case No. 19-cv-02573-EMC (LB)

12                    Plaintiffs,
                                                     **DISCOVERY ORDER**
13            v.
                                                     Re: ECF No. 1243
14    GILEAD SCIENCES, INC., et al.,

15                    Defendants.

16

17                                    **INTRODUCTION**

18         The parties dispute whether the individual health-plan plaintiffs may provide information

19    marked confidential under the Supplemental Protective Order (ECF No. 484) to Stephen R. Auten

20    so that he may present reply expert testimony.[1] Defendant Teva Pharmaceuticals USA, Inc. seeks

21    to bar the individual health-plan plaintiffs from (1) providing Teva's confidential information to

22    Mr. Auten or (2) using him as an expert, based on his work for Teva in a different matter (*i.e.*, the

23    Actavis Tax Matter).[2] The issue is whether Mr. Auten's past work for Teva presents a conflict that

24

25    [1] Joint Disc. Ltr. – ECF No. 1243 at 1–2 (The individual health-plan plaintiffs include Humana Inc.,
      Blue Cross and Blue Shield of Florida, Inc. (d/b/a Florida Blue) and Health Options, Inc. (d/b/a Florida
26    Blue HMO), Centene Corporation, Blue Cross and Blue Shield of South Carolina and BlueChoice
      HealthPlan of South Carolina, Inc., Triple-S Salud, Inc., Kaiser Foundation Health Plan, Inc., and Blue
27    Cross and Blue Shield of Kansas City). Citations refer to material in the Electronic Case File (ECF);
      pinpoint citations are to the ECF-generated page numbers at the top of documents.

28    [2] *Id.* at 4.

United States District Court
Northern District of California

should disqualify him from working for Teva's adversaries in this case under the general rules of expert disqualification or under Mr. Auten's agreement with Teva in the Actavis Tax Matter.

Because Mr. Auten received confidential information from Teva in the Actavis Tax Matter that is relevant to this matter and Teva's agreement with Mr. Auten provides only that it will not seek disqualification in matters involving "patent litigation or patent consultation," he is disqualified from serving as an expert for the plaintiffs in this case on issues that go beyond the strengths or weaknesses of patents.

## STATEMENT

Teva hired Mr. Auten to serve as an expert witness "in connection with several cases pending . . . concerning the proper tax treatment for generic manufacturers' defense costs in Hatch-Waxman patent litigation."[3] For example, Mr. Auten served as an expert for Teva in *Actavis Laboratories FL, Inc. v. United States*, and his expert report was used to support Teva's motion for summary judgment in that case. App. to Pl.'s Mot. for Summ. J., *Actavis Laboratories, FL, Inc. v. United States*, No. 1:19-cv-00798-RTH (Fed. Cl. Apr. 1, 2021), ECF No. 31-2 at 7–101.

According to Teva, Mr. Auten's expert work for Teva related to the tax treatment of defense costs in Hatch-Waxman patent litigation and whether "the regulatory review by the FDA of a Paragraph IV ANDA and any patent infringement suit brought by the branded drug manufacturer [Hatch-Waxman litigation] are intertwined processes."[4] While working for Teva, "Mr. Auten reviewed, and cited as material considered in his report, the deposition transcript of Colman Ragan, Vice President and General Counsel at Teva for North America IP Litigation, which was designated confidential in that litigation."[5]

The individual health-plan plaintiffs refer to this matter as the Actavis Tax Matter because it involved the 2008–2009 tax years for Watson Pharmaceuticals Inc. (Teva acquired Watson's successor (Actavis) in 2016).[6] Teva, however, points out that because the Actavis Tax Matter

---

[3] *Id.* at 4 (emphasis omitted).

[4] *Id.*

[5] *Id.* at 5.

[6] *Id.* at 3.

United States District Court
Northern District of California

relates to an argument that generally applies to the tax treatment of Teva's Hatch-Waxman defenses, including its defenses in the underlying patent litigations here, Mr. Auten's consultation is not strictly limited to Watson's tax burden for 2008 and 2009.[7]

Teva's agreement with Mr. Auten for the Actavis Tax Matter includes a limited conflict waiver providing that "neither Teva nor its affiliates will seek to disqualify [Mr. Auten or his firm] from representing any other entity or individual in patent litigation or patent consultation adverse to Teva or its affiliates . . . based on the present engagement."[8]

In this case, the individual health plan plaintiffs have identified Mr. Auten as a potential expert on "the development and approval of pharmaceutical products."[9] Teva argues that the scope of Mr. Auten's potential opinions in this case falls outside of the waiver it agreed to with Mr. Auten.[10] Specifically, Teva argues that Mr. Auten's potential opinions exceed the waiver because they could go beyond opining on the strength or merits of patents and would, therefore, constitute more than "patent litigation or patent consultation."[11] The plaintiffs counter that they specifically disclosed that Mr. Auten's potential opinion may "relate[] to the development of regulatory and product development issues" only because "the protective order only requires expert disclosures to the extent they may opine on these limited issues."[12] Nonetheless, the plaintiffs have not agreed to limit Mr. Auten's opinion to the merits of the subject patents.[13]

## ANALYSIS

"Federal courts have the inherent power to disqualify expert witnesses to protect the integrity of the adversary process, protect privileges that otherwise may be breached, and promote public

---

[7] *Id.* at 4.

[8] *Id.* at 2.

[9] *Id.* at 5 (emphasis omitted).

[10] *Id.*

[11] *Id.*

[12] *Id.* at 2.

[13] *Id.* at 5.

1  confidence in the legal system." *Hewlett–Packard Co. v. EMC Corp.*, 330 F. Supp. 2d 1087, 1092

2  (N.D. Cal. 2004). "There is no bright-line rule for expert disqualification." *Kane v. Chobani, Inc.*,

3  No. 12-cv-02425-LHK, 2013 WL 3991107, at *5 (N.D. Cal. Aug. 2, 2013) (cleaned up). "Rather,

4  courts balance the policy objectives that favor disqualification — ensuring fairness and preventing

5  conflicts of interest — against policies militating against disqualification, including guaranteeing

6  that parties have access to witnesses who possess specialized knowledge and allowing witnesses to

7  pursue their professional callings." *Id.* The party seeking disqualification has the burden to

8  establish that disqualification is warranted under this standard. *Hewlett–Packard*, 330 F. Supp. 2d

9  at 1092. In any case, "disqualification is a drastic measure that courts should impose only

10  hesitantly, reluctantly, and rarely." *Id.* at 1092.

11  Though there is no bright-line rule, courts in this district generally disqualify experts based on

12  "a prior relationship with an adversary if (1) the adversary had a confidential relationship with the

13  expert and (2) the adversary disclosed confidential information to the expert that is relevant to the

14  current litigation." *In re Xyrem (Sodium Oxybate) Antitrust Litig.*, No. 20-md-02966-RS, 2022 WL

15  393208, at *2 (N.D. Cal. Feb. 9, 2022) (cleaned up).

16  To determine whether a confidential relationship existed, the focus "is not on whether the

17  expert was retained per se but whether there was a relationship that would permit the litigant

18  reasonably to expect that any communications would be maintained in confidence." *Hewlett-*

19  *Packard*, 330 F. Supp. 2d at 1093. Factors include (1) the existence of a formal confidentiality

20  agreement, (2) whether the expert was retained, (3) the number of meetings between counsel and

21  the expert, (4) whether work product was discussed or provided to the expert, (5) whether the

22  expert was paid, (6) whether the expert was asked to maintain confidentiality, and (7) whether the

23  expert's ideas were derived from work done under the direction of the retaining party. *Id.*

24  "Confidential information essentially is information of either particular significance or [that]

25  which can be readily identified as either attorney work product or within the scope of the attorney-

26  client privilege." *Id.* at 1094 (cleaned up). Confidential information includes, for example,

27  litigation strategy and views concerning the strengths and weaknesses of a party's position. *Id.*;

28  *see also Kane*, 2013 WL 3991107, at *6 ("Such information concerning litigation strategy and

anticipated defenses falls squarely within the realm of disclosed confidential information that requires expert disqualification.").

For example, in *Xyrem*, the court disqualified two expert witnesses that the plaintiffs in that reverse-payment case retained based on the experts' prior work for the defendant, Hikma, in patent litigation that involved the same patents at issue in the reverse-payment case. 2022 WL 393208, at *4–6. The experts had received confidential information from Hikma's lawyers concerning the strength of the underlying patent litigation, and the court held that "[t]hose thoughts [were] relevant to the present litigation." *Id.* at *5.

Similarly, in *Packet Intel. LLC v. Juniper Networks Inc.*, the court disqualified the plaintiff's claim-construction expert in a patent case based on the expert's prior work for the defendant in a different matter. No. 19-cv-04741-WHO, 2020 WL 4001460, at *1–2, *6 (N.D. Cal. July 15, 2020). The expert's previous work for the defendant involved litigation with a third party but the same products and patents. *Id.* at *1.

Here, Teva had a confidential relationship with Mr. Auten. Teva retained Mr. Auten "in connection with several cases pending . . . concerning the proper tax treatment for generic manufacturers' defense costs in Hatch-Waxman patent litigation."[14] Mr. Auten also received confidential information.

For instance, Mr. Auten received a "deposition transcript of Colman Ragan, an in-house attorney for Teva" that, according to Teva, was over 170 pages long and marked confidential.[15] While some of the transcript has been disclosed on the public docket in the Actavis Tax Matter, the majority remains confidential.[16] Mr. Auten confirmed that he reviewed the deposition transcript. App. to Pl.'s Mot. for Summ. J., *Actavis Laboratories, FL, Inc. v. United States*, No. 1:19-cv-00798-RTH (Fed. Cl. Apr. 1, 2021), ECF No. 31-2 at 30.

---

[14] *Id.* at 4 (emphasis omitted).

[15] *Id.* at 3, 6.

[16] *Id.* at 6 ("[O]nly twenty pages of Mr. Ragan's substantive question-and-response appears in the public record.").

United States District Court
Northern District of California

1    Regarding the relevancy of the confidential material Mr. Auten received in the Actavis Tax

2    Matter to this matter, Mr. Ragan's deposition testimony included information about Teva's

3    "strategies for settling Hatch-Waxman litigation and answers to questions about reverse payment

4    antitrust litigation."[17] Furthermore, Mr. Auten's own deposition testimony in the Actavis Tax

5    Matter included responses to questions about whether reverse-payment settlements have been used

6    to resolve Hatch-Waxman litigation. App. to Pl.'s Mot. for Summ. J., *Actavis Laboratories, FL,*

7    *Inc. v. United States*, No. 1:19-cv-00798-RTH (Fed. Cl. Apr. 1, 2021), ECF No. 31-2 at 896–97.

8    Accordingly, it is apparent that the confidential information Mr. Auten received in the course of

9    his work for Teva has at least some relevance to this case.

10    Concerning fairness, Teva states that it first objected to the plaintiffs' retention of Mr. Auten

11    more than a month ago on June 8, 2022.[18] The plaintiffs do not dispute this point. Therefore, the

12    plaintiffs' claim that they will be prejudiced because there are only three weeks left for reply

13    reports does not militate against disqualification.

14    Finally, although Teva's agreement specifically provides that Teva will not seek to disqualify

15    Mr. Auten "from representing any other entity or individual in patent litigation or patent

16    consultation adverse to Teva or its affiliates," the plaintiffs are asking Mr. Auten to opine on

17    issues that go beyond "patent litigation or patent consultation."[19] The term "patent litigation or

18    patent consultation" plainly refers to matters involving the strength or weakness of patents. The

19    plaintiffs, however, are seeking to have Mr. Auten opine on issues "related to the development of

20    regulatory and product development issues."[20] This is broader than patent litigation or

21    consultation. Even if the plaintiffs' disclosure of Mr. Auten's potential testimony was driven by

22    the disclosure requirements in the protective order, that does not change the fact that his potential

23    testimony could exceed "patent litigation or patent consultation." Thus, Teva's limited

---

[17] *Id.* at 5.

[18] *Id.* at 6.

[19] *Id.* at 2.

[20] *Id.*

United States District Court
Northern District of California

1    disqualification waiver does not apply to the work the plaintiffs are asking Mr. Auten to perform

2    in this case.

3                                           **CONCLUSION**

4          To the extent the plaintiffs plan to rely on Mr. Auten to provide expert testimony that goes

5    beyond the strength or weakness of patents, he is disqualified and may not receive information

6    marked confidential under the Supplemental Protective Order.

7          This disposes of ECF No. 1243.

8          **IT IS SO ORDERED.**

9          Dated: July 29, 2022

10   _____

11   LAUREL BEELER
     United States Magistrate Judge

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28