UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STALEY, et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>GILEAD SCIENCES, INC., et al.,<br><br>    Defendants. | Case No. 19-cv-02573-EMC<br><br>**FILED UNDER SEAL**<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS BLUE CROSS BLUE SHIELD ASSOCIATION**<br><br>Docket No. 1122 |

Previously, the Court denied Gilead and Janssen's motion to dismiss Blue Cross Blue Shield Association ("BCBSA") for lack of standing. *See* Docket No. 948 (order, filed on 3/14/2022). BCBSA is part of the class action brought by the End Purchaser Plaintiffs ("EPPs").

Now pending before the Court is Gilead and Janssen's renewed motion to dismiss BCBSA for lack of standing. Gilead/Janssen argue that, with the benefit of more discovery, it is now clear that BCBSA does not have standing. Having considered the parties' briefs and accompanying submissions, as well as the supplemental briefing ordered by the Court, the Court hereby **GRANTS** the motion to dismiss.

### I.   FACTUAL & PROCEDURAL BACKGROUND

In the Federal Employees Health Benefits Act ("FEHBA"),

> Congress "establishe[d] a comprehensive program of health insurance for federal employees." Congress envisioned the creation of a system whereby "OPM [the Office of Personnel Management] is 'responsible for the overall administration of the program while sharing the day-to-day operating responsibility with the employing agencies and the insurance carriers.'" FEHBA "authorized [OPM] to contract with private carriers for federal employees' health insurance" . . . .

*Goncalves v. Rady Children's Hosp. San Diego*, 865 F.3d 1237, 1245-46 (9th Cir. 2017); *see also Jacks v. Meridian Res. Co., LLC*, 701 F.3d 1224, 1227 (8th Cir. 2012) (stating that the FEHBA "establishes a comprehensive program of health insurance for federal employees and charges the [OPM] with negotiating contracts with private insurance carriers to provide an array of health-care plans").

OPM has entered into such a contract with BCBSA. In the contract, BCBSA is identified as the carrier. *See* Barnes Decl., Ex. 1 (OPM/BCBSA Contract). The health care plan set up pursuant to the OPM/BCBSA contract is known as the Federal Employee Program ("FEP").

The FEP is funded through contributions from (1) the federal government and (2) federal employees who sign up for the FEP. Contributions are in the form of premiums. *See* 5 U.S.C. § 8906(b); *see also Goncalves*, 865 F.3d at 1246 (noting that the government pays for about 75 percent of the premiums, and the enrollee the remainder). Most of the contributions are put into a Letter of Credit Account ("LOCA") which, in turn, is located within a special fund in the U.S. Treasury.[1] *See* 5 U.S.C. § 8909(a) ("There is in the Treasury of the United States an Employees Health Benefits Fund which is administered by the Office of Personnel Management."); 5 C.F.R. § 1632.170(b)(1) ("OPM will make payments on a letter of credit (LOC) basis. Premium payments received for the plan, less the amounts credited to the contingency and administrative reserves and amounts for other obligations due under the contract, will be made available for carrier drawdown not later than 30 days after receipt by the FEHB Fund.").

The money in the LOCA is ultimately used to pay for health care benefits related to the FEP. Both parties agree on the general payment process where pharmaceutical benefits are at issue. *See* Mot. at 7-8; Opp'n at 16-18 & n.15.

- BCBSA's pharmacy benefits manager ("PBM") invoices BCBSA for the pharmacy benefit expenses.
- BCBSA has a FEP Operating Account (a bank account) and it transfers funds from the FEP Operating Account to pay the PBM. On the same day, BCBSA draws

---

[1] Each FEBHA Program carrier, not just BCBSA, has a LOCA. It appears that, technically, there is a separate LOCA "for each plan option" offered by a carrier. Opp'n at 2.

         funds from the LOCA to the FEP Operating Account to cover the cost of the pharmacy benefit expenses.

- After paying the PBM, BCBSA internally allocates and reports the pharmacy benefit expenses to the Local Blues (based on the zip codes of the members receiving the prescriptions).

For the services it provides, BCBSA is paid a subscription fee. *See* 5 U.S.C. § 8901(7) (defining "carrier" as an organization "lawfully engaged in providing, paying for, or reimbursing the cost of, health services . . . in consideration of premiums *or* other periodic charges payable to the carrier") (emphasis added); 48 C.F.R. § 1652.230-70 to -71 (providing that the following clause shall be inserted in all community-rated and experience-rated FEHBP contracts: "OPM will pay to the Carrier, in full settlement of its obligations under this contract, . . . . the subscription charges received for the plan by the Employees Health Benefits Fund"); Barnes Decl., Ex. 1 (OPM/BCBSA Contract § 3.1(a)) (providing that "OPM will pay to the Carrier, in full settlement of its obligations under this contract, . . . the subscription charges received for the Plan by the Employees Health Benefits Fund"). Nothing in the record suggests the subscription fee paid to BCBSA is negatively affected by the (alleged) supracompetitive prices of drugs dispensed to federal employees enrolled in the FEP.

## II.    DISCUSSION

A.    Legal Standard

A motion to dismiss for lack of standing is brought pursuant to Federal Rule of Civil Procedure 12(b)(1). *See Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010) (noting that, "[b]ecause standing and ripeness pertain to federal courts' subject matter jurisdiction, they are properly raised in a Rule 12(b)(1) motion to dismiss"). Such a motion can be facial in nature or factual. *See Pride v. Correa*, 719 F.3d 1130, 1139 (9th Cir. 2013). Where a factual attack is made and a court considers only written materials, a plaintiff need only establish a prima facie case of jurisdiction. *See Societe de Conditionnement en Aluminum v. Hunter Eng'g Co.*, 655 F.2d 938, 942 (9th Cir. 1985); *cf. Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1285-86 (9th Cir. 1977) (adopting that approach where personal jurisdiction is at issue).

B.   Standing

For Article III standing, a plaintiff must show: (1) an injury in fact, (2) a sufficient causal connection between the injury and the conduct complained of (*i.e.*, traceability), and (3) a likelihood that the injury will be redressed by a favorable decision. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). "[A] plaintiff must demonstrate standing separately for each form of relief sought," *Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167, 185 (2000) – "whether it be injunctive relief, damages or civil penalties." *Bates v. UPS*, 511 F.3d 974, 985 (9th Cir. 2007).

In the case at bar, the parties' dispute concerns the first element above: injury in fact. BCBSA argues that it has suffered an injury in fact – thus giving it standing to seek damages – by making overpayments for the cART drugs at issue. BCBSA also argues that, because it will continue to be overcharged for the cART drugs unless the anticompetitive conduct is enjoined, it has standing to seek injunctive relief.

In turn, Gilead/Janssen assert that BCBSA cannot claim that it has been injured because BCBSA has never spent its own money for the cART drugs; rather, all money used to pay for the drugs has come from the government (*i.e.*, the LOCA in the U.S. Treasury). Gilead/Janssen add that any alleged overpayments in the future would also be made by the government. Finally, Gilead/Janssen argue that the Court should reject any suggestion by BCBSA that it still has standing for injunctive relief because it (or the Local Blues) would have to pay out-of-pocket for benefits should government funds be exhausted. Gilead/Janssen maintain that this situation is entirely speculative given that there never has been a shortfall in the more-than-sixty years that the FEP has been in existence, and BCBSA's 30(b)(6) witness (Ms. Holladay) indicated in her deposition that she did not see any shortfall in this year.

In light of the Ninth Circuit's decision in *Goncalves*, the Court finds Gilead/Janssen's position more persuasive. In *Goncalves*, the Ninth Circuit discussed the relationship between the government (OPM), the insurance carrier (BCBSA on behalf of the Local Blues), and the health benefits plan (FEP). It noted as follows:

> The government pays about seventy-five percent of the premiums,

4

  and the enrollee pays the remainder. *See* 5 U.S.C. § 8906(b). These premiums are all deposited into a special fund in the U.S. Treasury from which the carriers withdraw money to pay benefits. *See id.* § 8909(a); [*Empire Healthchoice Assurance, Inc. v.*] *McVeigh*, 547 U.S. [677,] 703 [(2006)] (Breyer, J., dissenting). **But OPM, not the carrier, owns the funds.** At the end of the year, OPM decides how to use any surplus in the fund. *McVeigh*, 547 U.S. at 703 (Breyer, J., dissenting). "**The carrier is not at risk. Rather, it earns a profit, not from any difference between plan premiums and the cost of benefits, but from a negotiated service charge that the federal agency pays directly.**" *Id.* **A carrier is not acting as an insurer so much as it is acting as a claims processor, serving as the government's agent while the government takes the place of the typical health insurer in hedging bets.** "The private carrier's only role in this scheme is to administer the health benefits plan for the federal agency in exchange for a fixed service charge."

*Goncalves*, 865 F.3d at 1246 (emphasis added).

  *Goncalves* answers the question of "whose money" is used to pay benefits: it is the government's, and not BCBSA's. Notably, even BCBSA's 30(b)(6) witness (Ms. Holladay) never claimed, in her deposition, that the money in the LOCA or the FEP Operating Account belonged to BCBSA outright. She simply testified that that the LOCA funds could be used only for the FEP program and that the funds were BCBSA funds "in the sense that we are the agent for the plans related to the [FEP], and [BCBSA], as the agent, has access to the [LOCAs] and uses those funds to administer the pharmacy benefits." Burke Decl., Ex. C (Holladay Depo. at 61); *see also* Burke Decl., Ex. C (Holladay Depo. at 63-64) (stating that "the funds in the LOCA are Blue Cross Blue Shield funds because they are specific to the premiums for the program[;] [p]remiums for another carrier in the FEHB P are not deposited into our LOCA accounts" but rather "[t]hey're strictly the funds for Blue Cross Blue Shield.").

  BCBSA argues that the Court should not credit *Gonsalves* because it relied on a "factual misstep in dicta in the *McVeigh* dissent." Pl.'s Supp. Br. at 3. But even if Justice Breyer's comments in his dissent in *McVeigh* were dicta and he made a "factual misstep," that is beside the point. The Ninth Circuit in *Goncalves* relied on and endorsed his comments. To the extent BCBSA argues that the Ninth Circuit's statements above from *Goncalves* also constituted dicta, the Court is not persuaded. It is true that the legal issue in *Goncalves* differed from the issue before the Court here. In *Goncalves*, the Ninth Circuit was addressing the issue of whether the Local Blues had properly removed a case to federal court based on the federal officer removal

5

statute. *See* 28 U.S.C. § 1442(a)(1) ("A civil action . . . that is commenced in a State court and that is against or directed to any of the following may be removed by them to the district court of the United States for the district and division embracing the place wherein it is pending: (1) The United States or any agency thereof or any officer (*or any person acting under that officer*) of the United States or of any agency thereof, in an official or individual capacity, for or relating to any act under color of such office . . . ."). However, the Ninth Circuit had to "understand how the Blues' FEHBA plan operates and their association with the relevant federal officer, OPM" so that the court could assess "whether the Blues 'acted under' a federal officer in filing a subrogation lien." *Goncalves*, 865 F.3d at 1245. Thus, BCBSA's attempt to disregard the statements in *Goncalves* as dicta is not convincing. *See United States v. Vongxay*, 594 F.3d 1111, 1115 (9th Cir. 2010) (taking note of Black's Law Dictionary's definition of dictum – *i.e.*, a statement in an opinion that is "'unnecessary to the decision in the case and therefore not precedential'"); *see also United States v. Crawley*, 837 F.2d 291, 292-93 (7th Cir. 1988) (stating that "[w]e have defined dictum as 'a statement in a judicial opinion that could have been deleted without seriously impairing the analytical foundations of the holding – that, being peripheral, may not have received the full and careful consideration of the court that uttered it").

BCBSA can hardly dispute that the *Goncalves* statements are material: In opposing this motion to dismiss, BCBSA repeatedly cited from a brief filed by the federal government in *Health Care Service Corporation v. Pollitt*, No. 09-38, 2010 WL 360215 (U.S. Feb. 1, 2010). Like *Goncalves*, that case also addressed the legal issue of whether a government contractor administering a FEBHA plan was acting under a federal officer for purposes of the federal officer removal statute. Although *Health Care* dealt with that legal issue which is not relevant to the instant case, BCBSA still considered the government's brief characterizing the relationship between OPM, the carrier, and the FEHBA plan as significant.[2]

---

[2] Ultimately, the Supreme Court never issued a decision in *Health Care* because the case was dismissed pursuant to Supreme Court Rule 46.1. *See Health Care Serv. Corp. v. Pollitt*, 130 S. Ct. 1574 (2010); *see also* Supreme Ct. R. 46.1 ("At any stage of the proceedings, whenever all parties file with the Clerk an agreement in writing that a case be dismissed, specifying the terms for payment of costs, and pay to the Clerk any fees then due, the Clerk, without further reference to the Court, will enter an order of dismissal.").

6

1    Because it is the government's money used to pay benefits, and not BCBSA's, and because
2 BCBSA itself has not suffered any financial loss, BCBSA is left with the argument that it still has
3 standing to seek injunctive relief – *i.e.*, given that it (or the Local Blues) underwrites the FEP,
4 which thus makes it responsible for the payment of benefits should the funds in the LOCA ever be
5 exhausted. But "[a] plaintiff threatened with future injury has standing to sue if the threatened
6 injury is certainly impending, or there is a substantial risk that the harm will occur." *McGee v. S-L*
7 *Snacks Nat'l*, 982 F.3d 700, 709 (9th Cir. 2020). As Gilead/Janssen argue, BCBSA has failed to
8 show how it has met this standard given that there has never been a shortfall in the sixty-plus years
9 that the FEP has been in existence and BCBSA's own admission that there is no expectation that
10 there will be insufficient funding for benefits in 2022.

11    The Court acknowledges that there is, in theory, room for an argument that the government
12 (OPM) has authorized BCBSA or delegated to BCBSA the authority to file a lawsuit (in
13 particular, an antitrust suit) on its behalf. However, the Court need not address this issue (the
14 parties dispute what authority the OPM-BCBSA contract gives to BCBSA) because the EPPs have
15 excluded from the proposed Injunctive Relief Classes (as well as the proposed Damages Classes)
16 all federal government entities. *See* Docket No. 694 (Not. of Mot. at 2).

17 ///
18 ///
19 ///
20 ///
21 ///
22 ///
23 ///
24 ///
25 ///
26 ///
27 ///
28 ///

### III. CONCLUSION

Accordingly, the Court hereby grants Gilead/Janssen's motion to dismiss BCBSA for lack of standing.

As a temporary measure, the Court shall file the entirety of this order (other than the caption) under seal, although it notes that it is of the initial view that no part of the order need be filed under seal. The parties shall meet and confer to determine what part, if any, should be filed under seal and shall file a joint statement regarding sealing no later than a week of the date of this order.

This order disposes of Docket No. 1122.

**IT IS SO ORDERED**.

Dated: August 5, 2022

_____
EDWARD M. CHEN
United States District Judge