UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE HIV ANTITRUST LITIGATION | Case No. 19-cv-02573-EMC<br><br>**ORDER GRANTING IN PART AND DENYING IN PART EPPS' MOTION FOR LEAVE TO FILE A MOTION FOR RECONSIDERATION, AND DENYING EPPS' MOTION FOR RECONSIDERATION**<br><br>Docket No. 1347 |

Previously, the Court granted Defendants' motion to dismiss BCBSA. *See* Docket No. 1269 (order). Now pending before the Court is the EPPs' motion for leave to file a motion for reconsideration of that decision. Having considered the papers submitted, the Court hereby **GRANTS** in part and **DENIES** in part the motion for leave to file a motion to reconsider. To the extent the Court has given leave to file a motion to reconsider, that motion to reconsider is **DENIED** on the merits.

### I.   FACTUAL & PROCEDURAL BACKGROUND

In its prior order, the Court granted the motion to dismiss BCBSA reasoning as follows: (1) the funds at issue belonged to OPM, not BCBSA, and thus payment for pharmaceutical benefits was not an injury suffered by BCBSA; and (2) even if BCBSA or the Local Blues bore some risk as underwriters, that would be future injury and such injury was too remote given that the funds in the LOCA had never been exhausted. The Court also stated that it did not have to decide whether OPM had authorized BCBSA to file suit or delegated to BCBSA the authority to file suit because the EPPs had defined the class as excluding federal government entities.

## II. DISCUSSION

A.  Legal Standard

Civil Local Rule 7-9(b) provides in relevant part as follows:

> A motion for leave to file a motion for reconsideration must be made in accordance with the requirements of Civil L.R. 7-9. The moving party must specifically show reasonable diligence in bringing the motion and one of the following:
>
> (1) That at the time of the motion for leave, a material difference in fact or law exists from that which was presented to the Court before entry of the interlocutory order for which reconsideration is sought. The party also must show that in the exercise of reasonable diligence the party applying for reconsideration did not know such fact or law at the time of the interlocutory order; or
>
> (2) The emergence of new material facts or a change of law occurring after the time of such order; or
>
> (3) A manifest failure by the Court to consider material facts or dispositive legal arguments which were presented to the Court before such interlocutory order.

Civ. L.R. 7-9(b).

In the instant case, the EPPs invoke (3) above.

B.  *Goncalves*

According to the EPPs, when the Court found that the funds belonged to the government, and not BCBSA, the Court did so based on the facts in the Ninth Circuit case it cited, *Goncalves v. Rady Children's Hospital San Diego*, 865 F.3d 1237 (9th Cir. 2017), and not on the facts presented in the case before it. *See also* Mot. at 4 (arguing that stare decisis does not apply to facts but rather to law). Thus, the EPPs assert that the Court failed to consider material facts presented to it.

The Court does not agree. In reaching its conclusion that the funds belonged to the government, the Court took note of the evidence of record which established "the general payment process where pharmaceutical benefits are at issue." Docket No. 1269 (Order at 2) (also noting that both parties agreed on this general payment process). The Court also took into account the testimony of BCBSA's 30(b)(6) witness (Ms. Holladay). She

> never claimed, in her deposition, that the money in the LOCA or the

2

> FEP Operating Account belonged to BCBSA outright. She simply testified that the LOCA funds could be used only for the FEP program and that the funds were BCBSA funds "in the sense that we are the agent for the plans related to the [FEP], and [BCBSA], as the agent, has access to the [LOCAs] and uses those funds to administer the pharmacy benefits."

Docket No. 1269 (Order at 5) (quoting Holladay deposition).

To be sure, the Court did quote the statement in *Goncalves* that "'OPM, not the carrier, owns the funds'" and go on to say that "*Goncalves* answers the question of 'whose money' is used to pay for benefits." Docket No. 1269 (Order at 5). However, the Court's order did not rest solely on its citation to *Goncalves*. It evaluated the evidence of record before it.

The EPPs also take issue with the Court's quoting that part of *Goncalves* that says that the carrier is not at risk and does not act as an insurer but rather as a claims processor, with the government taking the place of a typical insurer. *See* Docket No. 1269 (Order at 5). But here the Court did not expressly hold that BCBSA (or the Local Blues) did not bear risk as an underwriter. Rather, it stated as follows:

> BCBSA is left with the argument that it still has standing to seek injunctive relief – *i.e.*, given that it (or the Local Blues) underwrites the FEP, which thus makes it responsible for the payment of benefits should the funds in the LOCA ever be exhausted. But "[a] plaintiff threatened with future injury has standing to sue if the threatened injury is certainly impeding, or there is a substantial risk that the harm will occur." As Gilead/Janssen argue, BCBSA has failed to show how it has met this standard given that there has never been a shortfall in the sixty-plus years that the FEP has been in existence and BCBSA's own admission that there is no expectation that there will be insufficient funding for benefits in 2022.

Docket No. 1269 (Order at 7).

Accordingly, to the extent that the EPPs claim a manifest failure on the part of the Court based on its references to *Goncalves*, the Court does not agree and therefore denies the motion for leave to file a motion for reconsideration.

C.      Federal Government Entity

Next, the EPPs argue that the Court erred by characterizing the money in the LOCA as OPM's funds because the federal government contributed only a part of those funds not all (federal employees contributed the remainder). The EPPs also suggest that the FEP is not a federal government entity because there is a federal statute that excludes FEHB plans from the

3

definition of "federal health care program." *See* 42 U.S.C. § 1320a-7b (addressing criminal penalties for acts involving "Federal health care programs"; defining "Federal health care program" as "any plan or program that provides health benefits, whether directly, through insurance, or otherwise, which is funded directly, in whole or in part, by the United States Government (*other than* the health insurance program under chapter 89 of title 5, United States Code [5 U.S.C. §§ 8901 et seq.])") (emphasis added).

The problem for the EPPs is that (1) they never cited the statute above previously (and it is questionable whether that statute is on point with respect to the issue before the Court) and (2) at the hearing, both parties essentially framed the question as whether the money was government money or BCBSA money. Thus, there was no manifest failure on the part of the Court here.

That being said, the EPPs bring up a fair point which is that, even if the Court were inclined to view the FEP (in effect) as a federal government entity, that would simply mean that the FEP would not be a part of the class as defined. That would not preclude the FEP from prosecuting its own claim. In other words, the Court should have decided whether BCBSA has been given the authority to file suit by OPM to recover against Defendants for the alleged anticompetitive conduct alleged herein. As to this issue, the Court grants the EPPs' motion for leave to file a motion for reconsideration. The Court should consider whether BCBSA can bring suit on behalf of OPM, even if not as part of the class. However, on the merits, the Court denies the motion to reconsider.

The question is whether there is a statute, regulation, or contract provision (in the OPM/BCBSA contract) that gives BCBSA the authority to file suit on behalf of OPM. The Court has reviewed the statutes/regulations and contract provisions cited by the EPPs but finds none of them availing.

**5 C.F.R. § 890.106(a).** This regulation provides as follows: "All health benefit plan contracts shall provide that the Federal Employees Health Benefits (FEHB) carrier is entitled to pursue subrogation and reimbursement recoveries, and shall have a policy to pursue such recoveries in accordance with the terms of this section." 5 C.F.R. § 890.106(a). The regulation does not support the EPPs' position that they have the right to file *this* lawsuit on behalf of the

4

OPM because "subrogation" and "reimbursement" have specific meanings that are not applicable to the case at bar. *See id.* § 890.101(a) ("Reimbursement means a carrier's pursuit of a recovery if a covered individual has suffered an illness or injury and has received, in connection with that illness or injury, a payment from any party that may be liable, any applicable insurance policy, or a workers' compensation program or insurance policy, and the terms of the carrier's health benefits plan require the covered individual, as a result of such payment, to reimburse the carrier out of the payment to the extent of the benefits initially paid or provided. The right of reimbursement is cumulative with and not exclusive of the right of subrogation."); *id.* ("Subrogation means a carrier's pursuit of a recovery from any party that may be liable, any applicable insurance policy, or a workers' compensation program or insurance policy, as successor to the rights of a covered individual who suffered an illness or injury and has obtained benefits from that carrier's health benefits plan."); *see id.* § 890.106(c) ("Contracts shall provide that the FEHB carriers' rights to pursue and receive subrogation or reimbursement recoveries arise upon the occurrence of the following: (1) The covered individual has received benefits or benefit payments as a result of an illness or injury; and (2) The covered individual has accrued a right of action against a third party for causing that illness or injury; or has received a judgment, settlement or other recovery on the basis of that illness or injury; or is entitled to receive compensation or recovery on the basis of the illness or injury, including from insurers of individual (non-group) policies of liability insurance that are issued to and in the name of the enrollee or a covered family member.").

**OPM/BCBSA Contract § 2.5(a).** This contract provision states as follows: "The Carrier's subrogation rights, procedures and policies, including recovery rights, for payments with respect to benefits shall be in accordance with the provisions of the agreed upon brochure text, which is incorporated in this Contract in Appendix A. As the member is obligated by Section 2.3(a) to comply with the terms of this Contract, the Carrier, in its discretion, shall have the right to file suit in federal court in order to enforce those rights." OPM/BCBSA Contract § 2.5(a). Here, BCBSA would have the right to file suit in federal court to enforce its subrogation rights. But as indicated above, subrogation has a specific meaning not applicable to the case at bar.

**OPM/BCBSA Contract § 2.3(g).**  This contract provision states as follows: "*Erroneous Payments*.  It is the Carrier's responsibility to proactively identify overpayments through comprehensive, statistically valid reviews and a robust internal control program.  If the Carrier determines that a Member's claim has been paid in error for any reason (except in the case of fraud or abuse), the Carrier shall make a prompt and diligent effort to recover the erroneous payment to the member from the member or, if to the provider, from the provider. . . ."  OPM/BCBSA Contract § 2.3(g).  This provision is not on point for two reasons.  First, this provision allows a carrier to get an erroneous payment from a member or from a provider.  Defendants here are neither a member or a provider – they are drug manufacturers.  Second, this provision makes a distinction between erroneous payments and payments made as a result of fraud or abuse.  Because there is a carve-out for fraud or abuse, this provision is not applicable to the instant case which does (as alleged) involve fraud or abuse.

**OPM/BCBSA Contract § 1.9(a).**  This contract provision notes as follows: "Detection of Fraud and Abuse.  The Carrier shall conduct a program to assess its vulnerability to fraud and abuse and shall operate a system designed to detect and eliminate abuse internally by Carrier employees and subcontractors, by providers providing goods or services to FEHB members, and by individual FEHB Members. . . ."  OPM/BCBSA Contract § 1.9(a).  This provision is potentially on point, although an argument could be made still that Defendants, as drug manufacturers, are not providers.  But the Court is not persuaded that the provision gives BCBSA the unilateral right to file a lawsuit on behalf of OPM so long as fraud or abuse is at issue.  Indeed, in prior filings, the EPPs provided a FEHB Program Carrier Letter (Letter No. 2017-13) that further addresses fraud, waste, and abuse ("FWA").  This Letter contains content indicating that a carrier does not in the first instance have the right to file suit on behalf of OPM.  For example, the Letter states that a carrier should develop programs to "proactively identify FWA issues, identify program vulnerabilities, initiate action to deny or suspend payments where there is potential fraud, waste, or abuse, *develop and refer cases to OPM-Office of the Inspector General (OIG) for consideration of civil and criminal prosecution and/or application of administrative sanctions*, and provide outreach to providers and beneficiaries (further details can be found in Attachment 2

related to the requirement to refer cases to OPM OIG)." Letter at 2-3 (emphasis added).

Attachment 2, in turn, talks about: case notifications; OPM-OIG response to case notifications; status updates (information sharing after initial case notification); referral process; carrier settlement agreements; response to OPM-OIG requests for information. The attachment does not seem to contain anything about the authority of a carrier to file a lawsuit on behalf of OPM. At best, the attachment states – in the section on "Case Notifications" – that "FEHB Carriers are required to submit a written notification to OPM-OIG within 30 working days when there is a reportable FWA that has occurred against the FEHB Program. Potential FWA issue becomes reportable to the OIG if, after a preliminary review of the allegation and/or complaint, the Carrier takes an affirmative step to expand, further investigate, develop and/or close an allegation/complaint." Letter, Attachment 2, at 1. The attachment then goes to provide examples of "FWA reportable to the OIG," including "Carrier participation in class action lawsuits." Letter, Attachment 2, at 1. The EPPs seem to suggest that "participation" here can include the filing of a class action lawsuit. But that is a questionable position given that, in the body of the FEHB Program Carrier Letter, there is discussion of referring FWA matters to OPM-OIG to decide whether to pursue a civil or criminal prosecution, not bringing suit. Moreover, "participation" is an ambiguous term; it could, for example, simply refer to a carrier representing OPM when OPM is an absent class member (*i.e.*, not authorizing unilateral action on the part of the carrier to file suit without input by OPM).

Based on the above, the Court concludes that the EPPs' position on the merits is not persuasive. To be clear, the Court does not discount the possibility that OPM-OIG could authorize a carrier to file suit on its behalf. The problem for the EPPs here is that there is no record to support that having happened in the instant case. Indeed, the EPPs have not even alleged, *e.g.*, that a case notification was provided to OPM-OIG, how OPM-OIG responded to that case notification, etc. The EPPs only have represented that OPM is aware of this lawsuit and the motions challenging BCBSA's standing.   That fact is not sufficient to establish implied authorization for BCBSA to file a lawsuit, particularly in light of the procedure outlined in the FEHB Program Carrier Letter.

### III.  CONCLUSION

For the foregoing reasons, the Court grants in part and denies in part the motion for leave to file a motion for reconsideration. To the extent the motion is granted, and a motion to reconsider allowed, the Court denies the motion to reconsider on the merits. The evidence of record is insufficient to support the EPPs' position that BCBSA has been authorized to file suit on behalf of the FEP.

This order disposes of Docket No. 1347.

**IT IS SO ORDERED**.

Dated: October 5, 2022

_____
EDWARD M. CHEN
United States District Judge