# No. 22-____

## UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

### IN RE HIV ANTITRUST LITIGATION

On Appeal from the
United States District Court for the Northern District of California,
No. 3:19-cv-02573-EMC, The Honorable Edward M. Chen

## DEFENDANTS-PETITIONERS' PETITION PURSUANT TO RULE 23(f) OF THE FEDERAL RULES OF CIVIL PROCEDURE FOR PERMISSION TO APPEAL FROM ORDER GRANTING CLASS CERTIFICATION

Heather M. Burke
**WHITE & CASE**
3000 El Camino Real
2 Palo Alto Square, Suite 900
Palo Alto, CA 94306-2109
Telephone: + 1 650 213 0300

Christopher M. Curran
**WHITE & CASE**
701 Thirteenth Street, N.W.
Washington, D.C. 20005
Telephone: + 1 202 626 3600

*Counsel for Defendants-Petitioners Gilead Sciences, Inc., Gilead Holdings, LLC, Gilead Sciences, LLC, and Gilead Sciences Ireland UC*

Paul J. Riehle
FAEGRE DRINKER BIDDLE & REATH LLP
Four Embarcadero Center, 27th Floor
San Francisco, CA 94111-4180
Telephone: (415) 591-7500

Paul H. Saint-Antoine*
Joanne C. Lewers*
FAEGRE DRINKER BIDDLE & REATH LLP
One Logan Square, Ste. 2000
Philadelphia, PA 19103
Telephone: (215) 988-2990

*Counsel for Defendants-Petitioners Janssen R&D Ireland, Janssen Products, LP, and Johnson & Johnson*

*Application for Admission Forthcoming

(Additional counsel listed on signature page)

## CORPORATE DISCLOSURE STATEMENT

Petitioners, Defendants below, are Gilead Sciences, Inc., Gilead Holdings, LLC, Gilead Sciences, LLC, Gilead Sciences Ireland UC (collectively, "Gilead"), Janssen R&D Ireland, Janssen Products, L.P., and Johnson & Johnson (collectively, "Janssen").

Pursuant to Rule 26.1(a) of the Federal Rules of Appellate Procedure, Petitioners submit the following statement:

Gilead Sciences, Inc. does not have a parent corporation. No publicly held corporation owns 10 percent or more of Gilead Sciences, Inc.'s stock.

Gilead Holdings, LLC is a wholly owned subsidiary of Gilead Sciences, Inc. No publicly held corporation owns 10 percent or more of Gilead Holdings, LLC's stock.

Gilead Sciences, LLC is a wholly owned subsidiary of Gilead Sciences, Inc. No publicly held corporation owns 10 percent or more of Gilead Sciences, LLC's stock.

Gilead Sciences Ireland UC is a wholly owned subsidiary of Gilead Sciences, Inc. No publicly held corporation owns 10 percent or more of Gilead Sciences Ireland UC's stock.

Johnson & Johnson does not have a parent corporation. No publicly held corporation owns 10 percent or more of Johnson & Johnson's stock.

Janssen R&D Ireland is a wholly owned subsidiary of Johnson & Johnson. No publicly held corporation owns 10 percent or more of Janssen R&D Ireland's stock.

Janssen Products, L.P. is a wholly owned subsidiary of Johnson & Johnson. No publicly held corporation owns 10 percent or more of Janssen Products, L.P.'s stock.

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................... 1

QUESTION PRESENTED ...................................................... 4

STATEMENT OF THE FACTS ............................................... 5

STANDARD OF REVIEW ..................................................... 6

REASONS FOR GRANTING THE PETITION .................................. 7

I.    REVIEW IS NEEDED TO RESOLVE AN INTRA-CIRCUIT SPLIT AND CONFIRM THAT EVEN CLASS-ACTION PLAINTIFFS MUST SATISFY ARTICLE III STANDING FOR ALL CLAIMS ............. 8

    A.    The Order Commits Legal Error By Adopting A Minority Approach That Treats Named Plaintiffs' Failure To Purchase Products In Dozens Of States As A Rule 23 Issue, Rather Than As A Lack Of Standing ........................................................ 9

    B.    The Order's Legal Error Resulted In The First Decision In This Circuit To Certify Damages Classes As To States Where No Named Plaintiff Made Any Purchases ................................... 13

II.    REVIEW IS NEEDED TO RESOLVE AN INTRA-CIRCUIT SPLIT AND CONFIRM THIS COURT'S BAR ON "UMBRELLA DAMAGES" ...................................................................... 14

    A.    The Order Commits Legal Error By Adopting A Minority Approach That Improperly Inflates The Truvada And Atripla Classes With Alleged Umbrella Purchasers ...................................... 15

    B.    The Order's Legal Error Is Based On The Selective Application Of Certain Out-Of-Circuit Decisions That Diverge From The Majority Approach In This Circuit ........................................ 20

CONCLUSION ................................................................... 22

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Amarel v. Connell*,
   102 F.3d 1494 (9th Cir. 1997)............................................................................7

*In re Am. Express Anti-Steering Rules Antitrust Litig.*,
   19 F.4th 127 (2d Cir. 2021)..............................................................................19

*In re Asacol Antitrust Litig.*,
   907 F.3d 42 (1st Cir. 2018) ..............................................................................14

*Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of
   Carpenters*,
   459 U.S. 519 (1983)..........................................................................................18

*In re Capacitors Antitrust Litig.*,
   154 F. Supp. 3d 918 (N.D. Cal. 2015)..............................................................11

*Chamberlan v. Ford Motor Co.*,
   402 F.3d 952 (9th Cir. 2005)...................................................................6, 7, 20

*In re Citric Acid Antitrust Litig.*,
   145 F. Supp. 2d 1152 (N.D. Cal. 2001).............................................................17

*In re Coordinated Pretrial Proceedings in Petroleum Products
   Antitrust Litig.*,
   691 F.2d 1335 (9th Cir. 1982).....................................................................passim

*Costco Wholesale Corp. v. AU Optronics Corp.*,
   2014 U.S. Dist. LEXIS 133798 (W.D. Wash. Sept. 23, 2014).........................22

*DaimlerChrysler Corp. v. Cuno*,
   547 U.S. 332 (2006)......................................................................................9, 10

*Davis v. Fed. Election Comm'n*,
   554 U.S. 724 (2008)............................................................................................9

*In re Ditropan XL Antitrust Litig.*,
   529 F. Supp. 2d 1098 (N.D. Cal. 2007)............................................................11

*Easter v. Am. W. Fin.*,
  381 F.3d 948 (9th Cir. 2004) .................................................................................passim

*FTC v. Mylan Labs., Inc.*,
  62 F. Supp. 2d 25 (D.D.C. 1999) ..............................................................................18, 19

*Garabet v. Autonomous Techs. Corp.*,
  116 F. Supp. 2d 1159 (C.D. Cal. 2000) ....................................................................17, 18

*In re Glumetza Antitrust Litig.*,
  2020 U.S. Dist. LEXIS 39649 (N.D. Cal. Mar. 5, 2020) ..................................10

*In re Graphics Processing Units Antitrust Litig.*,
  527 F. Supp. 2d 1011 (N.D. Cal. 2007) ............................................................12

*In re Hard Disk Drive Susp. Assemb. Antitrust Litig.*,
  2020 U.S. Dist. LEXIS 197736 (N.D. Cal. Oct. 23, 2020) ..............................10

*Hawkins v. Comparet-Cassani*,
  251 F.3d 1230 (9th Cir. 2001) ..............................................................................passim

*Illinois Brick Co. v. Illinois*,
  431 U.S. 720 (1977) ...........................................................................................17

*Int'l Primate Prot. League v. Adm'rs of Tulane Educ. Fund*,
  500 U.S. 72 (1991) .............................................................................................10

*Jones v. Micron Tech, Inc.*,
  400 F. Supp. 3d 897 (N.D. Cal. 2019) ....................................................2, 11, 14

*King Drug Co. of Florence v. Cephalon, Inc.*,
  309 F.R.D. 195 (E.D. Pa. 2015) .....................................................................21

*In re Lithium Ion Batteries Antitrust Litig.*,
  2014 U.S. Dist. LEXIS 141358 (N.D. Cal. Oct. 2, 2014) ..................................13

*In re Loestrin 24 FE Antitrust Litig.*,
  2019 U.S. Dist. LEXIS 118308 (D.R.I. July 2, 2019)..................................21, 22

*Los Gatos Mercantile, Inc. v. E.I. Dupont de Nemours & Co.*,
  2014 U.S. Dist. LEXIS 133540 (N.D. Cal. Sept. 22, 2014)..............................12

*Mercado v. Audi of Am., LLC*,
2019 U.S. Dist. LEXIS 231689 (C.D. Cal. Nov. 26, 2019) ............................11

*Microsoft Corp. v. Baker*,
137 S. Ct. 1702 (2017) ......................................................................................6

*Mid-West Paper Products v. Continental Group*,
596 F.2d 573 (3d Cir. 1979) ............................................................................21

*In re Modafinil Antitrust Litig.*,
837 F.3d 238 (3d Cir. 2016) ............................................................... 16, 20, 21

*O'Shea v. Littleton*,
414 U.S. 488 (1974) ..........................................................................................8

*In re Online DVD Rental Antitrust Litig.*,
2011 U.S. Dist. LEXIS 49090 (N.D. Cal. Apr. 29, 2011) ................................18

*In re Processed Egg Prod. Antitrust Litig.*,
881 F.3d 262 (3d Cir. 2018) ............................................................................21

*Schertzer v. Bank of Am.*,
445 F. Supp. 3d 1058 (S.D. Cal. 2020) ...........................................................10

*Simon v. E. Ky. Welfare Rts. Org.*,
426 U.S. 26 (1976) ............................................................................................9

*In re Skelaxin (Metaxalone) Antitrust Litig.*,
2014 U.S. Dist. LEXIS 66707 (E.D. Tenn. May 15, 2014) ................. 17, 18, 19

*Soo v. Lorex Corp.*,
2020 U.S. Dist. LEXIS 164664 (N.D. Cal. Sept. 8, 2020) ...............................10

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016) ..........................................................................................9

*Stewart v. Kodiak Cakes, LLC*,
537 F. Supp. 3d 1103 (S.D. Cal. 2021) ...........................................................10

*Sultanis v. Champion Petfoods, U.S., Inc.*,
2021 U.S. Dist. LEXIS 145293 (N.D. Cal. Aug. 3, 2021). ................................2

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
    2012 U.S. Dist. LEXIS 182374 (N.D. Cal. Dec. 26, 2012)................ 4, 15, 17, 22

*TransUnion LLC v. Ramirez*,
    141 S. Ct. 2190 (2021) .........................................................................9

*Tyson Foods, Inc. v. Bouaphakeo*,
    577 U.S. 442 (2016).........................................................................3, 12

*UFCW Local 1776 v. Teikoku Pharma USA, Inc.*,
    74 F. Supp. 3d 1052 (N.D. Cal. 2014) ............................................14

*In re Vitamins Antitrust Litig.*,
    2001 U.S. Dist. LEXIS 12114 (D.D.C. June 2, 2001) .....................18

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011)...........................................................................12

*Warth v. Seldin*,
    422 U.S. 490 (1975).............................................................................9

*Waste Mgmt. Holdings, Inc. v. Mowbray*,
    208 F.3d 288 (1st Cir. 2000) ...............................................................7

*In re Zetia Antitrust Litig.*,
    7 F.4th 227 (4th Cir. 2021).................................................................16

## STATUTES AND RULES

The Rules Enabling Act, 28 U.S.C. § 2072(b)................................................12, 13

Fed. R. Civ. P. 23................................................................................passim

## OTHER AUTHORITIES

Adv. Cmte. 1998 Note on subd. (f) of Fed. R. Civ. P. 23 ........................6

Areeda & Hovenkamp, Antitrust Law (5th ed.)......................................22

Pursuant to Rule 23(f) of the Federal Rules of Civil Procedure and Rule 5 of the Federal Rules of Appellate Procedure, Petitioners respectfully request that this Court permit an appeal from the District Court's class-certification order (Ex. 1, ECF 1388) ("Order").

## INTRODUCTION

This Petition arises from an antitrust action where Plaintiffs seek over $10 billion in damages (pre-trebling) on behalf of various classes based on allegations that the Defendant pharmaceutical companies improperly delayed generic competition. The Order granted class certification only because the District Court declined to follow the approach applied by a majority of courts in this Circuit on two legal issues where it is now clear that intra-Circuit splits exist. This Court should grant the Petition to correct the Order's manifest errors and confirm that the majority view on both issues is the law of this Circuit.

First, the Order departed from decades of precedent in this Circuit holding that Rule 23 cannot be used to override Article III's requirement that named plaintiffs have standing to press *each claim* they assert on behalf of a class. The Order certifies three End-Purchaser-Plaintiff ("EPP") damages classes under the antitrust or consumer-protection laws of 31 states, even though the named EPPs purchased class products in just a handful of those states (and thus have claims only under the laws of those states). As a result, the Order allows the named EPPs

to bring claims under the laws of dozens of states that they lack Article III standing to pursue.

The Order expressly relies on Judge Chen's prior ruling in *Sultanis v. Champion Petfoods, U.S., Inc.*, where he recounted how his position on this standing issue "has evolved in recent years." 2021 U.S. Dist. LEXIS 145293, at *13 (N.D. Cal. Aug. 3, 2021). Judge Chen acknowledged an earlier ruling in which he held that named plaintiffs "do not have standing to assert claims from states in which they do not reside or did not purchase" products at issue. *Id.* at *13-14. He went on to describe a "split" among district courts in this Circuit, and that "most courts have held that plaintiffs can only bring claims on behalf of other consumers in states where 'they were injured or had any pertinent connection.'" *Id.* at *15-16 (quoting *Jones v. Micron Tech, Inc.*, 400 F. Supp. 3d 897, 909 (N.D. Cal. 2019) (White, J.)). But he believed a "growing minority of courts in this circuit" treat the issue not as one of standing but as one under Rule 23's class-certification requirements, and Judge Chen had "joined the minority." *Id.* at *18-21. The Order follows the minority position.

But the minority position disregards that "a named plaintiff cannot represent a class alleging [] claims that the named plaintiff does not have standing to raise," *Hawkins v. Comparet-Cassani*, 251 F.3d 1230, 1238 (9th Cir. 2001), and gives the named EPPs "different rights in a class proceeding than they could have asserted in

-2-

an individual action," *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 458 (2016). This legal error—which miscasts a fundamental Article III standing defect as a mere Rule 23 issue—alone warrants granting the Petition.

Even beyond the need to correct this legal error, the express split among district judges in this Circuit demands a definitive resolution from this Court without delay. As detailed below, the split is well-entrenched, with district judges on both sides firmly committed; there is no realistic hope that the split will resolve itself. And the stakes are high: The Order's admitted reliance on the minority approach led to an unprecedented result, with Judge Chen becoming the first judge in this Circuit to certify "headless" damages classes—classes certified under the laws of states where no named plaintiff made purchases and which accordingly no named plaintiff has standing to invoke.

Second, the Order certifies Direct-Purchaser-Plaintiff ("DPP") damages classes pursuing federal antitrust damages claims, even though most class members never purchased the Defendants' products.[1] Again, the Order follows the *minority* approach and adopts an overly narrow view of this Court's decision in *In re Coordinated Pretrial Proceedings in Petroleum Products Antitrust Litig.*, 691 F.2d 1335 (9th Cir. 1982), which barred "umbrella damages" claims based on purchases

---

[1] Janssen is not a party to the DPP case; its participation in this Petition is limited to the EPP case.

of products sold not by defendants or alleged co-conspirators, but by other market participants.

Most district courts in this Circuit properly apply *Petroleum Products* to prohibit all umbrella-damages claims and umbrella classes, but a minority have tried to create exceptions to the prohibition. *See In re TFT-LCD (Flat Panel) Antitrust Litig.*, 2012 U.S. Dist. LEXIS 182374, at \*60-64 (N.D. Cal. Dec. 26, 2012) (Illston, J.) (collecting cases). Had the Order followed the majority approach and excluded the dozens of entities that bought *nothing from Defendants or their alleged co-conspirators*, the two DPP classes would fail to satisfy numerosity under the Order's own reasoning. *See* Order at 73, 87. Review is necessary to clarify the scope of this Court's umbrella-damages bar and to resolve this second intra-Circuit split.

## QUESTION PRESENTED

The question presented is whether interlocutory review of the Order under Rule 23(f) is warranted where the District Court adopted the minority side of intra-Circuit splits to reach the following results:

1.      The District Court is the first in this Circuit to certify EPP damages classes covering claims under the laws of dozens of states in which the named EPPs made no purchases and thus lack standing to bring such claims.

2.      The District Court certified DPP damages classes under federal

antitrust law where the proposed classes satisfied Rule 23's numerosity requirement only by impermissibly relying on an "umbrella price" theory to sweep in entities that never purchased products sold by any Defendant or alleged co-conspirator.

## STATEMENT OF THE FACTS

Plaintiffs seek overcharge damages relating to three HIV medications: Gilead's Truvada® and Atripla®; and Gilead and Janssen's jointly developed Complera®. These products simplified and revolutionized the treatment of HIV, improving and extending the lives of millions in the United States and around the world. But, as to Truvada and Atripla, Plaintiffs allege that Gilead and non-party Teva entered into patent-litigation settlements that delayed the entry of generic versions of these products. As to Complera, EPPs challenge a narrow non-compete provision that Gilead and Janssen included in their agreement to jointly develop Complera that limited either party from making and selling on their own an identical generic version, but which left them otherwise free to compete.

The Order certifies three EPP damages classes "of third-party payors ('TPPs') only (*i.e.*, not individual consumers)"—insurers and employer groups that self-insure. Order at 7. The Truvada and Atripla classes cover TPPs that paid for brand Truvada or Atripla, or generic versions sold by Teva. *Id.* The Complera class covers TPPs that paid for brand Complera. *Id.* at 8. The District Court

certified these classes under the antitrust or consumer-protection laws of 31 states. *See id.* at 60 (dismissing claims in 4 of the 35 states originally at issue). Of those 31 states, the named EPPs bought Complera in only 1 state, Atripla in 3 states, and Truvada in 8 states. Defs.' Opp'n to EPP Class Cert. Mot. at 3:20-4:5, ECF 1127-3.

The Order also certifies two proposed DPP damages classes—one each for purchasers of brand or generic versions of Atripla or Truvada *from any company*. Order at 90-91. The Order finds both of the Atripla and Truvada classes to be sufficiently numerous because they contain 51 and 78 members, respectively, once dozens of entities that never purchased products from Defendants or any alleged co-conspirator are swept in. *Id.* at 73-82, 87. Without these additional entities, both the Atripla and Truvada classes would be comparable to the proposed 25-member Complera class that the Order properly declined to certify. *Id.* at 83, 87.

## STANDARD OF REVIEW

This Court has "unfettered discretion whether to permit the appeal, akin to the discretion exercised by the Supreme Court in acting on a petition for certiorari." Adv. Cmte. 1998 Note on subd. (f) of Fed. R. Civ. P. 23; *see also Microsoft Corp. v. Baker*, 137 S. Ct. 1702, 1709-10 (2017) (courts of appeals may grant Rule 23(f) review "on the basis of *any* consideration"). As this Court recognized in *Chamberlan v. Ford Motor Co.*, 402 F.3d 952 (9th Cir. 2005), Rule

23(f) interlocutory review is appropriate where a grant of class certification "may force a defendant to settle rather than incur the costs of defending a class action and run the risk of potentially ruinous liability" or where the ruling turns on an "unsettled question of law." *Id.* at 957. As to the latter circumstance, Rule 23(f) enables this Court to "take earlier-than-usual cognizance of important, unsettled legal questions, thus contributing to both the orderly progress of complex litigation and the orderly development of law." *Id.* at 958 (quoting *Waste Mgmt. Holdings, Inc. v. Mowbray*, 208 F.3d 288, 293 (1st Cir. 2000)).

## REASONS FOR GRANTING THE PETITION

The certification of each EPP and DPP damages class turns on pure legal issues—Article III standing and antitrust standing (sometimes referred to as antitrust injury)—that this Court reviews *de novo*. *Easter v. Am. W. Fin.*, 381 F.3d 948, 956 (9th Cir. 2004) (Article III standing); *Amarel v. Connell*, 102 F.3d 1494, 1507 (9th Cir. 1997) (antitrust standing). Most district judges in this Circuit believe that the Ninth Circuit, the U.S. Supreme Court, or both, have foreclosed the minority positions on which the Order relies. But a minority of district judges, including Judge Chen, persist in splitting from their colleagues on both issues. Only this Court can resolve these splits and promote the orderly and consistent advancement of this case and untold other cases.

## I. REVIEW IS NEEDED TO RESOLVE AN INTRA-CIRCUIT SPLIT AND CONFIRM THAT EVEN CLASS-ACTION PLAINTIFFS MUST SATISFY ARTICLE III STANDING FOR ALL CLAIMS

This Court has recognized that standing should be decided before class certification, and that a named plaintiff who lacks standing to assert a particular cause of action cannot acquire standing by asserting the claim in a class action. *Easter*, 381 F.3d at 961-62. In *Easter*, the named plaintiffs attempted to sue certain defendants that "never held a named plaintiff's loan" for charging usurious interest, but this Court held those borrowers "cannot allege a traceable injury and lack standing" as to those defendants. *Id.* at 961-62. Similarly, in *Hawkins* this Court vacated certification of a class of detainees challenging the use of "stun belts" in courtrooms. 251 F.3d at 1235. The class brought claims under the Fourth (for pretrial detainees) and Eighth (for post-conviction detainees) Amendments, but the named plaintiff had been convicted and thus could not "bring a Fourth Amendment claim." *Id.* at 1238. Due to his lack of standing to bring that particular claim, this Court held that he could not bring that claim on behalf of a class either: "A named plaintiff cannot represent a class alleging constitutional claims that the named plaintiff does not have standing to raise," even if "the class members share other claims in common." *Id.* (citing *O'Shea v. Littleton*, 414 U.S. 488, 493-94 (1974)).

The Order manifestly errs by conflating Article III standing with Rule 23

issues—despite most other judges within this Circuit correctly applying the rules from *Easter* and *Hawkins*.

**A. The Order Commits Legal Error By Adopting A Minority Approach That Treats Named Plaintiffs' Failure To Purchase Products In Dozens Of States As A Rule 23 Issue, Rather Than As A Lack Of Standing**

Article III does not "allow standing as to one claim to suffice for all claims arising from the same 'nucleus of operative fact.'" *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006). Instead, "a plaintiff must demonstrate standing for each claim he seeks to press" and show "the particular plaintiff is entitled to an adjudication of the *particular claims* asserted." *Id.* (quotations omitted); *see also Davis v. Fed. Election Comm'n*, 554 U.S. 724, 734 (2008) (standing must be shown "for each claim" and "each form of relief"). The Supreme Court in *TransUnion* recognized that even if a federal statute afforded a citizen in Hawaii a cause of action to sue a company polluting land in Maine, where the violation "did not personally harm the plaintiff in Hawaii" the "lawsuit may not proceed" because the plaintiff has not suffered concrete injury and therefore lacks Article III standing. *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2205-06 (2021).

"That a suit may be a class action . . . adds nothing to the question of standing." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 n.6 (2016) (quoting *Simon v. E. Ky. Welfare Rts. Org.*, 426 U.S. 26, 40 n.20 (1976) (quoting *Warth v. Seldin*, 422 U.S. 490, 502 (1975))). "Claims for relief under the laws of the several states

are *separate* claims for relief and, per *DaimlerChrysler*, require separate proof of standing." *In re Glumetza Antitrust Litig.*, 2020 U.S. Dist. LEXIS 39649, at *38 (N.D. Cal. Mar. 5, 2020) (Alsup, J.). Standing depends on "the specific common-law, statutory or constitutional claims that a party presents," not a general capacity to appear in court or present some other claim. *Int'l Primate Prot. League v. Adm'rs of Tulane Educ. Fund*, 500 U.S. 72, 77 (1991).

The Order errs by treating these limits on Article III standing as, instead, a Rule 23 issue it was free to disregard so long as typicality and adequacy were met. Order at 10. And it does so even though the "district courts in this Circuit routinely hold" that named plaintiffs "do not" have standing to assert class claims under the laws of states where named plaintiffs do not reside and were not injured. *Soo v. Lorex Corp.*, 2020 U.S. Dist. LEXIS 164664, at *28 (N.D. Cal. Sept. 8, 2020) (Corley, M.J.) (citing cases by Judges Alsup, Donato, Gilliam, Gonzalez Rogers, and Orrick (N.D. Cal.); and Judge Miller (S.D. Cal.)); *see also Stewart v. Kodiak Cakes, LLC*, 537 F. Supp. 3d 1103, 1124 (S.D. Cal. 2021) (Anello, J.); *Schertzer v. Bank of Am.*, 445 F. Supp. 3d 1058, 1072 (S.D. Cal. 2020) (Miller, J.) (noting courts within the "Northern, Eastern, and Southern Districts of California" treat this as an Article III standing defect and dismiss such claims at the pleading stage after *Easter*) (citing cases by Judge Sammartino (S.D. Cal.); Judge Shubb (E.D. Cal.); and Judges Conti, Donato, Ware, and White (N.D. Cal.)); *In re Hard*

-10-

*Disk Drive Susp. Assemb. Antitrust Litig.*, 2020 U.S. Dist. LEXIS 197736, at *18-19 (N.D. Cal. Oct. 23, 2020) (Chesney, J.); *Mercado v. Audi of Am., LLC*, 2019 U.S. Dist. LEXIS 231689, at *38-40 (C.D. Cal. Nov. 26, 2019) (Kronstadt, J.) (collecting cases); *In re Capacitors Antitrust Litig.*, 154 F. Supp. 3d 918, 926 (N.D. Cal. 2015) (Donato, J.) (citing cases by Judges Freeman, Orrick, and White (N.D. Cal.)); *In re Ditropan XL Antitrust Litig.*, 529 F. Supp. 2d 1098, 1107 (N.D. Cal. 2007) (White, J.) (finding that *Easter* "rejected" the contention that standing exists in class actions on claims the named plaintiff lacks individual standing to bring). Some of these decisions expressly reject Judge Chen's minority approach. *See, e.g.*, *Jones*, 400 F. Supp. 3d at 909-10 (explaining why the minority approach is flawed and noting that, even where Judge Chen had previously applied the approach, he dismissed class claims under the laws of states where no named plaintiff made purchases).

The Order also conflicts with *Hawkins*, which the Order tries to distinguish by suggesting that the Fourth and Eighth Amendments involve "a different legal standard." Order at 10-11. But *Hawkins* did not turn on differing standards or even refer to them. Because "Hawkins himself [could not] bring a Fourth Amendment claim," this Court vacated a certified class raising such claims since Hawkins "[could not] represent a class alleging constitutional claims that the named plaintiff does not have standing to raise." 251 F.3d at 1238.

The Order not only contravenes *Hawkins*, it also violates the Rules Enabling Act. The "Federal Rules of Civil Procedure do not create standing in a plaintiff who otherwise lacks it." *Easter*, 381 F.3d at 963 (citing Rule 82's prohibition on using the Federal Rules to "extend" district court jurisdiction). The "Rules Enabling Act forbids interpreting Rule 23 to 'abridge, enlarge or modify any substantive right.'" *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 367 (2011). Thus, Rule 23 cannot be used to give EPPs "different rights in a class proceeding than they could have asserted in an individual action." *Tyson*, 577 U.S. at 458.

Here, the named EPPs lack standing to pursue individual damages claims under the laws of the dozens of states where they did not purchase Atripla, Truvada, or Complera; each "claim under each state statute must be analyzed separately," and no named EPP has standing to bring antitrust claims in states where it neither resides nor purchased relevant products. *In re Graphics Processing Units Antitrust Litig.*, 527 F. Supp. 2d 1011, 1026 (N.D. Cal. 2007); *see also Los Gatos Mercantile, Inc. v. E.I. Dupont de Nemours & Co.*, 2014 U.S. Dist. LEXIS 133540, at *13-14 (N.D. Cal. Sept. 22, 2014) (citing *Hawkins* in joining "the majority of courts in the Northern District" to dismiss claims in states where no named plaintiff "resides or has purchased products").

This Court should grant review to correct the Order's manifest error of law. At a minimum, because certain district judges in this Circuit have sharply

divergent views on Article III standing in contravention of Ninth Circuit precedent and the Rules Enabling Act, clarity is needed to ensure consistency on this threshold issue that will continue to arise in class actions without further guidance.

### B. The Order's Legal Error Resulted In The First Decision In This Circuit To Certify Damages Classes As To States Where No Named Plaintiff Made Any Purchases

While a handful of other decisions in this Circuit have followed the Order's approach of treating the lack of purchases in multiple states as a Rule 23 issue rather than a standing issue, until now *all of them* "consistently" declined to certify damages classes including purchasers in states where no representative bought class products. *See In re Lithium Ion Batteries Antitrust Litig.*, 2014 U.S. Dist. LEXIS 141358, at *106-08 (N.D. Cal. Oct. 2, 2014) (collecting cases declining to do so under Article III or Rule 23). The Order becomes the first in this Circuit to certify such classes, first by treating this defect as a Rule 23 issue (Order at 10), and then holding that classes under the antitrust or consumer-protection laws of 31 states can be certified without violating Rule 23—even though no representative made purchases in dozens of these states (*id.* at 16-21).

The Order *cites no authority* from this Circuit certifying such "headless" damages classes, an expression describing classes with claims brought on behalf of absent class members under the laws of states where no named plaintiff has standing to bring its own claims. Neither did EPPs in any of their briefing to the

District Court.  Instead, EPPs' reply brief cited a First Circuit decision finding that named plaintiffs have standing to assert such claims (EPP Reply at 4:8-14 (citing *In re Asacol Antitrust Litig.*, 907 F.3d 42, 47-50 (1st Cir. 2018))), but that decision relies on the same logic underlying the minority approach that most courts in this Circuit have rightly rejected as inconsistent with prior precedent from the Supreme Court and this Court.  *See, e.g.*, *Jones*, 400 F. Supp. 3d at 909-10.  And while, during the class-certification hearing, EPP counsel suggested that Judge Orrick in *Lidoderm* certified headless damages classes, Judge Orrick had actually dismissed all headless damages class claims years before deciding class certification because of a lack of standing.  *See UFCW Local 1776 v. Teikoku Pharma USA, Inc.*, 74 F. Supp. 3d 1052, 1078-80 (N.D. Cal. 2014) ("*Lidoderm*").

## II.  REVIEW IS NEEDED TO RESOLVE AN INTRA-CIRCUIT SPLIT AND CONFIRM THIS COURT'S BAR ON "UMBRELLA DAMAGES"

The Order also exacerbates another intra-Circuit split on the viability of "umbrella damages" in antitrust class actions—ignoring the majority approach in this Circuit and certifying two *direct*-purchaser classes in which most members *only* have alleged damages for generic products priced and sold by manufacturers that are neither Defendants nor alleged co-conspirators.  *See* Order at 76-82.

This Court has long barred such umbrella-damages theories in the indirect-purchaser context as too "speculative and complex," finding that such purchasers

lack antitrust standing. *Petroleum Products*, 691 F.2d at 1341-42, *cert. denied*, 464 U.S. 1068 (1984). And most courts have applied the reasoning in *Petroleum Products* to reject umbrella damages in the direct-purchaser context. *See TFT-LCD*, 2012 U.S. Dist. LEXIS 182374, at *60-64 (N.D. Cal.) ("Although some federal courts have allowed antitrust claims to proceed under the umbrella theory, most federal courts in recent years have rejected these claims." (collecting cases)).

### A. The Order Commits Legal Error By Adopting A Minority Approach That Improperly Inflates The Truvada And Atripla Classes With Alleged Umbrella Purchasers

The DPP's complaint focuses only on allegations of *generic delay* and seeks to recover brand-generic overcharges, *i.e.*, paying for a more expensive brand drug sold by Defendants because a generic version was unavailable. ECF 559 ¶¶ 2-5. But in its class-certification motion, the DPP inflated the Truvada and Atripla classes by expanding them to be umbrella classes. As a result, both classes primarily consist of *generic-only* purchasers—firms that *only* bought generic versions of these drugs, which were not made, sold, or priced by Defendants or alleged co-conspirators. This shift for the first time at the class-certification phase added 50 members to the Truvada class and 24 members to the Atripla class. Order at 74-78.

When these generic-only purchasers who never bought any of Defendants' products are properly excluded from the proposed classes, the DPPs are left with a

16-28 member Truvada class and a 15-27 member Atripla class (*id.*)—all sophisticated wholesalers able to join this action individually. *See In re Zetia Antitrust Litig.*, 7 F.4th 227, 233 (4th Cir. 2021) (Rule 23(f) appeal reversing certification where DPP class consisted of 35 "sophisticated companies with purportedly large claims"); *In re Modafinil Antitrust Litig.*, 837 F.3d 238, 242 (3d Cir. 2016) (Rule 23(f) appeal reversing certification where DPP class consisted of "twenty-two large and sophisticated corporations").

And that is exactly why the District Court held that the DPP "has not shown that the Rule 23(a) numerosity requirement has been satisfied" for its proposed 25-member Complera class, which did *not* include generic-only purchasers. Order at 87. Like the Complera class, the Truvada and Atripla classes should not have been certified. Nor should the DPP have been permitted to seek $700 million in umbrella damages *from Defendants* for alleged generic-generic overcharges *from non-Defendant* sales. ECF 1124-5, App'x D.1-2.

By certifying these inflated Truvada and Atripla classes, the Order contravenes Ninth Circuit precedent and the majority approach in this Circuit that bars umbrella damages. In *Petroleum Products*, this Court barred plaintiffs from seeking damages based on a "price umbrella" theory "under which non-conspiring competitors of the defendants raised their gasoline prices to an artificial level at or near the fixed price." 691 F.2d at 1338-39. In rejecting the umbrella theory, this

Court found that determining whether "plaintiffs were injured solely as the result of umbrella pricing" resulting from the alleged conduct rather than "numerous other pricing considerations" is "unacceptably speculative and complex." *Id.* at 1340-41. And this Court had "little hesitancy" in rejecting those "umbrella claims in the context of the multi-tiered distribution chain alleged" given that indirect purchasers lack standing under *Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977). *Id.* at 1340.

Relying heavily on *Petroleum Products*, most district courts in this Circuit have not hesitated to reject umbrella-damages theories in DPP actions for products that plaintiffs did not purchase from a defendant or an alleged co-conspirator. *See, e.g.*, *Garabet v. Autonomous Techs. Corp.*, 116 F. Supp. 2d 1159, 1169 (C.D. Cal. 2000) (Collins, J.) ("[U]nder an implicit if not explicit precedent in the Ninth Circuit rejecting 'umbrella' standing, this court declines to recognize purchases from a non-conspirator non-defendant"); *In re Citric Acid Antitrust Litig.*, 145 F. Supp. 2d 1152, 1155 (N.D. Cal. 2001) (Legge, J.) ("Based on *Petroleum Products* and *Garabet*, the 'price umbrella' is not a legal basis for conferring standing on an antitrust plaintiff."); *TFT-LCD*, 2012 U.S. Dist. LEXIS 182374, at *60-64 (Illston, J.) ("[M]ost federal courts in recent years have rejected these claims," including "in the context of a single level of distribution."); *see also In re Skelaxin (Metaxalone) Antitrust Litig.*, 2014 U.S. Dist. LEXIS 66707, at *35-36 (E.D. Tenn.

May 15, 2014) (finding single level of distribution "introduces the same level of uncertainty and complexity" (citing *Petroleum Products*)); *FTC v. Mylan Labs., Inc.*, 62 F. Supp. 2d 25, 39 (D.D.C. 1999) ("[E]ven in the context of a single level of distribution, ascertaining the appropriate measure of damages is a highly speculative endeavor." (citing *Petroleum Products*)).

Intervening Supreme Court precedent since *Petroleum Products* reinforces this bar on umbrella damages. *See Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519 (1983). As courts in this Circuit have recognized, "the weight of *recent* authority, using the nuanced antitrust analysis outlined in *Associated General Contractors*, has found against allowing 'umbrella' standing to plaintiffs." *Garabet*, 116 F. Supp. 2d at 1168-69 (C.D. Cal. 2000) (Collins, J.); *see also In re Online DVD Rental Antitrust Litig.*, 2011 U.S. Dist. LEXIS 49090, at *48-49 (N.D. Cal. Apr. 29, 2011) (Hamilton, J.) (finding umbrella damages "too attenuated to be considered sufficiently direct" under *AGC*); *Skelaxin*, 2014 U.S. Dist. LEXIS 66707, at *33 ("[T]he overwhelming majority of recent court decisions that have addressed the viability of the 'umbrella' theory after [*AGC*] have rejected 'umbrella' claims." (alteration in original) (quoting *In re Vitamins Antitrust Litig.*, 2001 U.S. Dist. LEXIS 12114, at *27 (D.D.C. June 2, 2001) (collecting cases))).

The Second Circuit also recently rejected umbrella standing under *AGC*

because plaintiffs "did not suffer a direct injury from the alleged antitrust violation" where American Express raised prices for *their merchants* and plaintiffs "do not accept American Express cards." *In re Am. Express Anti-Steering Rules Antitrust Litig.*, 19 F.4th 127, 140 (2d Cir. 2021). And simply enabling "other credit card companies to raise the appellants' fees does not establish the 'direct relation' between injury and antitrust violation." *Id.* at 141. As the Second Circuit emphasized, "'defendants received none of the illegal gains and were uninvolved in the competitors' pricing decisions.'" *Id.* at 138 (quoting *Petroleum Products*).

Similarly, when a plaintiff alleges, as the DPP does here, that a defendant "sought to preclude generic competitors," then "[t]he generic overcharge was therefore never an intended harm and is further indication that the causal connection between the antitrust violation and Plaintiffs' generic overcharge is too attenuated to allow Plaintiffs to seek these damages." *Skelaxin*, 2014 U.S. Dist. LEXIS 66707, at *41; *see also Mylan Labs.*, 62 F. Supp. 2d at 39 (relying on *Petroleum Products* to reject umbrella damages in generic-delay case).

In fact, the Order (at 82) overlooked that only 12 generic-only purchasers purchased from non-party Teva and the remaining 38 generic-only purchasers purchased from other manufacturers *after* mass generic entry when the alleged markets were saturated with generic competition. ECF 1124-3 at 12 (citing ECF 1124-5 ¶ 52, App'x C). And nowhere did the Order account for the numerous

generic-pricing variables outside of Defendants' control. *Id.* (citing ECF 1124-5 ¶¶ 35-36). In short, the causation and related pricing inquiry is especially speculative and attenuated here.

### B. The Order's Legal Error Is Based On The Selective Application Of Certain Out-Of-Circuit Decisions That Diverge From The Majority Approach In This Circuit

Ignoring the above authority altogether, the Order adopted the minority view and certified the two classes inflated by umbrella damages, underscoring that this is an "unsettled and fundamental issue of law" that needs this Court's review. *Chamberlan*, 402 F.3d at 955.

In particular, the District Court failed to consider the majority approach discussed at length by Defendants (ECF 1124-3 at 10-12), and instead hinged its ruling on the out-of-circuit decision in *Modafinil*, quoting a single passage out of context: "'[In] a case about market exclusion . . . all market customers should have antitrust standing to sue those engaged in the allegedly anticompetitive conduct because all suffer equally from the foreclosure of choice.'" Order at 80 (quoting *Modafinil*, 837 F.3d at 264-65). But the "market customers" reference in *Modafinil* was expressly limited to brand-generic overcharges for products the defendant itself *actually sold*: "The DPP class is made up of wholesalers who purchased Provigil *directly from Cephalon*." *Id.* at 246 (emphasis added). As the district court in *Modafinil* noted:

> Plaintiffs convincingly distinguish *Mid-West Paper Products* [596
> F.2d 573 (3d Cir. 1979) that bars umbrella damages], emphasizing
> that the *plaintiff in that case had made no direct purchases from any
> defendant*, which deprived the plaintiff of standing. Here, the class
> members have *all* purchased Provigil *directly from Cephalon* . . . .

*King Drug Co. of Florence v. Cephalon, Inc.*, 309 F.R.D. 195, 211 (E.D. Pa. 2015)

(emphasis added), *aff'd in relevant part by Modafinil*, 837 F.3d at 265-66; *see also*

*In re Processed Egg Prod. Antitrust Litig.*, 881 F.3d 262, 274 (3d Cir. 2018) ("The

direct relationship between the Purchasers and their Suppliers, and the fact that the

Suppliers are alleged price-fixing conspirators and not merely competitors of those

conspirators, are key distinctions from the scenario we confronted in *Mid-West

Paper*."). Simply put, *Modafinil* did not involve generic-only purchasers or an

umbrella-damages theory.

In contrast, the DPP's new class-certification umbrella-damages theory

includes purchases and damages for products other than those sold by Defendants

or alleged co-conspirators, *i.e.*, "generic-generic" overcharges for generic products

"*sold by any generic manufacturer*." Order at 76. Unlike *Modafinil*, where the

four generic manufacturers were named defendants and alleged co-conspirators,

837 F.3d at 260-61, here the DPP classes include sales by generic manufacturers

that are not Defendants or alleged co-conspirators (Order at 76).

The out-of-circuit *Loestrin* decision (Order at 80) also recognizes that courts

are split on this legal issue and departs from the *Petroleum Products* line of

authority. *See In re Loestrin 24 FE Antitrust Litig.*, 2019 U.S. Dist. LEXIS 118308, at *33 n.15 (D.R.I. July 2, 2019) (citing conflicting cases). Likewise, the treatise relied on by the Order (at 81) recognizes discord among courts nationally and within this Circuit, underscoring that this is a recurring issue with significant implications beyond this case that makes review by this Court particularly appropriate. *See* Areeda & Hovenkamp, Antitrust Law ¶ 347 n.4 (5th ed.). Indeed, district courts in this Circuit have recognized similar disarray, including conflicting rulings in related cases. *See, e.g.*, *Costco Wholesale Corp. v. AU Optronics Corp.*, 2014 U.S. Dist. LEXIS 133798, at *12 (W.D. Wash. Sept. 23, 2014) (Jones, J.) (allowing umbrella damages but observing "the MDL court rejected a similar version of the umbrella theory in addressing a summary judgment motion in a case involving retailers similarly situated to Costco" (citing *TFT-LCD*, 2012 U.S. Dist. LEXIS 182374, at *59-65)).

## CONCLUSION

For these reasons, the petition for permission to appeal should be granted.

Dated:    October 11, 2022            Respectfully submitted,

**WHITE & CASE**

 /s/ *Heather M. Burke*
Heather M. Burke
WHITE & CASE LLP
3000 El Camino Real
2 Palo Alto Square, Suite 900
Palo Alto, CA 94306-2109

Telephone: + 1 650 213 0300
Facsimile: + 1 650 213 8158
hburke@whitecase.com

Christopher M. Curran
Peter J. Carney
Adam M. Acosta*
WHITE & CASE LLP
701 Thirteenth Street, N.W.
Washington, D.C. 20005
Telephone: + 1 202 626 3600
Facsimile: + 1 202 639 9355
ccurran@whitecase.com
pcarney@whitecase.com
adam.acosta@whitecase.com

Michael E. Hamburger*
WHITE & CASE LLP
1221 Avenue of the Americas
New York, New York 10020-1905
Telephone: + 1 212 819 8200
Facsimile: + 1 212 354 8113
mhamburger@whitecase.com

*Counsel for Defendants-Petitioners
Gilead Sciences, Inc., Gilead Holdings,
LLC, Gilead Sciences, LLC, and Gilead
Sciences Ireland UC*

*Application for Admission Forthcoming

/s/ *Paul J. Riehle*
Paul J. Riehle
FAEGRE DRINKER BIDDLE &
REATH LLP
Four Embarcadero Center, 27th Floor
San Francisco, CA 94111-4180
Telephone: (415) 591-7500

Paul H. Saint-Antoine*
Joanne C. Lewers*
FAEGRE DRINKER BIDDLE &
REATH LLP
One Logan Square, Ste. 2000
Philadelphia, PA 19103
Telephone: (215) 988-2990

*Counsel for Defendants-Petitioners*
*JANSSEN R&D IRELAND, JANSSEN*
*PRODUCTS, LP, and JOHNSON &*
*JOHNSON*

*Application for Admission Forthcoming

## CERTIFICATE OF COMPLIANCE

This Petition complies with the word limit of Rule 5(c)(1) of the Federal Rules of Appellate Procedure. This Petition contains 5,180 words (as calculated by the automatic word count function of Microsoft Word), excluding the parts of the Petition exempted by Rules 5(b)(1)(E) and 32(f) of the Federal Rules of Appellate Procedure.

This Petition complies with the typeface requirements of Rule 32(a)(5)(A) of the Federal Rules of Appellate Procedure and the type-style requirements of Rule 32(a)(6) of the Federal Rules of Appellate Procedure because this Petition has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in 14-point, Times New Roman font.

Dated:  October 11, 2022

/s/ *Heather M. Burke*
Heather M. Burke
WHITE & CASE LLP
3000 El Camino Real
2 Palo Alto Square, Suite 900
Palo Alto, CA 94306-2109
Telephone: + 1 650 213 0300
Facsimile: + 1 650 213 8158
hburke@whitecase.com

# CERTIFICATE OF SERVICE

I hereby certify that on October 11, 2022, a true and correct copy of the foregoing Petition Pursuant to Rule 23(f) of the Federal Rules of Civil Procedure for Permission to Appeal from Order Granting Class Certification was filed with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit using the Appellate Electronic Filing system.

I certify that on this date I served the foregoing document by third party commercial carrier for delivery overnight and by email to the following case participants:

Steve D. Shadowen
HILLIARD & SHADOWEN LLP
1135 W. 6th Street
Suite 125
Austin, TX 78703
(855) 344-3298
steve@hilliardshadowenlaw.com

Steve W. Berman
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Second Avenue, Suite 2000
Seattle, WA 98101
(206) 623-7292
steve@hbsslaw.com

William F. Murphy
DILLINGHAM & MURPHY
601 Montgomery Street, Suite 1900
San Francisco, CA 94111
 (415) 397-2700
wfm@dillinghammurphy.com

Daralyn J. Durie
DURIE TANGRI LLP
217 Leidesdorff Street
San Francisco, CA 94111
(415) 362-6666
ddurie@durietangri.com

Dianne M. Nast
NASTLAW LLC
1101 Market Street, Suite 2801
Philadelphia, PA 19107
(215) 923-9300
dnast@nastlaw.com

Francis O. Scarpulla
LAW OFFICES OF FRANCIS O. SCARPULLA
3708 Clay Street
San Francisco, CA 94118
(415) 751-4193
fos@scarpullalaw.com

Michael L. Roberts
ROBERTS LAW FIRM
1920 McKinney Avenue, Suite 700
Dallas, Texas 75204
(501) 952-8558
mikeroberts@robertslawfirm.us

Daniel A. Sasse
CROWELL & MORING LLP
3 Park Plaza, 20th Floor
Irvine, California 92614
949.263.8400
DSasse@crowell.com

Joshua Courtney Stokes
BERRY SILBERBERG STOKES PC
6080 Center Drive, Sixth Floor
Los Angeles, CA 90045
(213) 986-2690
jstokes@berrysilberberg.com

Anna T. Neill
KENNY NACHWALTER, P.A.
Four Seasons Tower, Suite 1100
1441 Brickell Avenue
Miami, Florida 33131
(305) 373-1000
aneill@knpa.com

Barry L. Refsin
HANGLEY ARONCHICK
SEGAL PUDLIN & SCHILLER
One Logan Square, 27th Floor
Philadelphia, PA 19103
(215) 568-6200
brefsin@hangley.com

Hamish P.M. Hume
BOIES SCHILLER FLEXNER
LLP
1401 New York Avenue, NW
Washington, D.C. 20005
 (202) 237-2727
hhume@bsfllp.com

Judith A. Zahid
ZELLE LLP
555 12th Street, Suite 1230
Oakland, CA 94607
(415) 693-0700
jzahid@zelle.com

Dated:    October 11, 2022

/s/ *Heather M. Burke*
Heather M. Burke
WHITE & CASE LLP
3000 El Camino Real
2 Palo Alto Square, Suite 900
Palo Alto, CA 94306-2109
Telephone: + 1 650 213 0300
Facsimile: + 1 650 213 8158
hburke@whitecase.com

# Exhibit 1 to Rule 23(f) Petition (Filed Separately Under Seal)