Anna T. Neill (SBN 270858)
KENNY NACHWALTER, P.A.
Four Seasons Tower, Suite 1100
1441 Brickell Avenue
Miami, Florida 33131
Telephone: (305) 373-1000
Facsimile: (305) 372-1861
Email: aneill@knpa.com
*Attorneys for Plaintiffs*

(Additional Counsel for Plaintiffs
Listed on Signature Page)

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| STALEY, *et al.*,<br><br>　　　　　Plaintiffs,<br><br>v.<br><br>GILEAD SCIENCES, INC., *et al.*,<br><br>　　　　　Defendants.<br><br>This Document Relates to:<br><br>ALL CASES | Case No.: 3:19-cv-2573-EMC<br><br>**RETAILER PLAINTIFFS' TRIAL STRUCTURE BRIEF AND MOTION TO BIFURCATE**<br><br>Hearing:<br>Time:<br>Courtroom: 5—17th Floor<br>Judge: Hon. Edward M. Chen |

# INTRODUCTION

Pursuant to Rule 42(b) of the Federal Rules of Civil Procedure, Retailer Plaintiffs respectfully move to bifurcate the jury trial in this litigation into two phases. The first phase would involve all Plaintiffs and would try all issues common to all Plaintiffs' claims, *i.e.*, whether the reverse payment from Gilead to Teva violated the antitrust laws under the rule of reason; whether that violation caused some delay in the sale of generic Truvada and/or Atripla; and, if so, when generic entry would have occurred in the absence of the violation and the number of generics that would have entered earlier, as reasonably estimated by the jury. If Plaintiffs prevail on those common issues, the second phase would try the issue of the economic consequence of the (previously determined) delay, *i.e.*, whether the delay caused some overcharge, and, if so, the amount of the overcharge based on the estimated generic entry from phase one. In this second phase, the End Payor Plaintiff ("EPP") Class, the Individual Health Care Plan Plaintiffs ("IHPPs"), and United Healthcare Services, Inc. ("United") in its capacity as an end payor (collectively the "state law Plaintiffs"), would use the same jury that decided the common issues to address those Plaintiffs' state law overcharge issues. The Direct Purchaser Plaintiffs ("DPPs"), Retailer Plaintiffs and United in its capacity as a direct purchaser (the "federal law Plaintiffs") would use a new jury to address their federal-law overcharge claims.

This proposal has three significant aspects.

First, it is required by the critical need to ensure that the determination of direct purchaser overcharges complies with federal law. It is virtually inevitable that a jury asked to award damages to both direct and end payor purchasers (the latter of which buy the product from some of the former) will impermissibly consider the fact that the direct purchasers pass on a portion of the overcharge to their customers (or their customers' customers) in evaluating the direct purchasers' overcharge claims. But pass-on evidence and argument are inadmissible under federal law, *see Hanover Shoe Co. v. United Shoe Mach. Corp.*, 392 U.S. 481 (1968), while the same evidence and argument are inherent in the proof of an end payor's claim under state law. Separately addressing the economic consequences of generic delay to the two groups avoids that otherwise unavoidable conflict.

The challenge of structuring a trial in this litigation arises because of a fundamental inconsistency between the legal rules governing an award of damages under federal law to the federal law Plaintiffs (the Direct Purchasers, Retailers and United), and the legal rules governing an award of damages under state law (to the EPPs, IHPPs and United). The Supreme Court has held that, in federal antitrust cases, "a direct purchaser . . . is injured . . . by the full amount of the overcharge paid by it and . . . the antitrust defendant *is not permitted to introduce evidence that indirect purchasers were in fact injured by the illegal overcharge.*" *Illinois Brick Co. v. Illinois*, 431 U.S. 720, 724-25 (1977) (emphasis added). Yet, the Supreme Court has also recognized that *Illinois Brick*'s limitation on antitrust standing under federal antitrust law does not preempt or displace indirect purchasers' rights to seek damages under applicable state law. *See California v. ARC America Corp.*, 490 U.S. 93 (1989). Of course, to recover damages under state law, an end payor must prove the elements of its claim, including injury resulting from the illegal overcharge. Thus, state law requires an end payor to present the very evidence of downstream injury that federal law prohibits. A court cannot both exclude and admit the same evidence in the same trial.

Second, the proposal ensures that all common issues—but only common issues—are tried at the same time before one jury. Trying the issues common to all Plaintiffs in a single trial involving all Plaintiffs is judicially efficient and avoids the perceived unfairness of "one-way collateral estoppel." Trying the uncommon issues (*i.e.*, the economic consequence of the generic delay) separately avoids the federal-state law conflict. And dividing the trial in this way also ensures no overlap of evidence or witnesses.[1]

---

[1] We note this proposed bifurcation does not separate the trial into a "liability" phase and a "damages" phase. Antitrust liability (when for monetary relief) includes proof of impact, which in a generic delay case has two parts: (i) proof of generic delay and (ii) proof of overpayment by reason of the delay. A traditional bifurcation between liability and damages would require each of the plaintiff groups to bring its damages expert to trial during phase one to testify that the members of the group overpaid because of the generic delay (a non-common issue), and then again during phase two to quantify the extent of that injury. This is exactly what occurred during the *Opana ER* trial this past summer in Chicago, which was bifurcated between liability and damages. This duplication of expert testimony is unnecessary and easily avoided.

Third, each phase two proceeding will be brief. For each, there is likely to be no more than a handful of witnesses (the parties' damages economists) over a couple of days.

## ARGUMENT

### I. THIS COURT HAS AUTHORITY TO BIFURCATE THE TRIAL.

Rule 42(b) grants federal district courts the authority to order a separate trial of issues "[f]or convenience, to avoid prejudice, or to expedite and economize." In this case, bifurcation will allow common issues to be tried in a single proceeding while avoiding the error and jury confusion that would arise from trying to comply with the inconsistent legal rules applicable to the damage claims of the federal law Plaintiffs and the state law Plaintiffs.

To recover damages in a private antitrust action, the plaintiff must ultimately prove: (1) a violation of the antitrust laws, (2) impact on or injury to the plaintiff resulting from the violation; and (3) measurable damages. *Olean Wholesale Grocery Cooperative, Inc. v. Bumblebee Foods LLC*, 31 F.4th 651, 666 (9th Cir. 2022) (en banc). The need to prove individual injury or impact is imposed on private plaintiffs by section 4 of the Clayton Act, 15 U.S.C. § 15(a)—not section 1 of the Sherman Act, which requires only proof of a "contract, combination . . . or conspiracy in restraint of trade." 15 U.S.C. § 1. *See, e.g., In re Nexium (Esomeprazole) Antitrust Litig.*, 842 F.3d 34, 60 (1st Cir. 2016) (no inconsistency between jury's finding that the defendants violated the antitrust laws and finding that the violation did not delay generic entry); *In re AndroGel Antitrust Litig. (II)*, 2018 WL 2984873, at *10 (N.D. Ga. June 14, 2018) (on remand from the Supreme Court in *Actavis*, FTC was not required to prove actual delay in generic entry to prove an antitrust violation); *Apotex, Inc. v. Cephalon, Inc.*, 255 F. Supp. 3d 604 (E.D. Pa. 2017) (in bifurcated liability trial, jury would first decide whether the defendants violated the antitrust laws and then whether the violation caused a delay in generic entry). Limiting the first phase of the trial to proof of the antitrust violation itself and the elements of injury common to all Plaintiffs (whether there would have been earlier generic entry and when) will permit an efficient trial of common elements while avoiding the issues on which federal and state law conflict.

## II. FEDERAL LAW DOES NOT PERMIT ADMISSION OF DOWNSTREAM EVIDENCE IN A DIRECT PURCHASER CASE.

Evidence of downstream injury is irrelevant and inadmissible in a trial governed by federal antitrust law. In *Hanover Shoe, Inc. v. United Shoe Mach. Corp.*, 392 U.S. 481 (1968), the Supreme Court ruled that evidence that a federal antitrust plaintiff has passed on an overcharge to its own customers in the form of higher prices is legally irrelevant to that plaintiff's recovery—*i.e.*, that such a plaintiff establishes its right to recovery "when it prove[s] that [the defendant] . . . overcharged it during the damage period and show[s] the amount of the overcharge." *Id.* at 494. In *Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977), the Court recognized and confirmed that "a direct purchaser suing for treble damages under § 4 of the Clayton Act is injured within the meaning of § 4 by the full amount of the overcharge paid by it and . . . the antitrust defendant is *not permitted* to introduce evidence that indirect purchasers were in fact injured by the illegal overcharge." *Id.* at 724-25 (emphasis added).

Courts in this Circuit, including this one, have rigorously enforced *Hanover Shoe*. *See In re Cathode Ray Tube (CRT) Antitrust Litig.*, 720 Fed. App'x 835, 838 (9th Cir. 2017) ("a direct purchaser is harmed the moment it pays an illegal overcharge, even if the inflated price is passed-through to subsequent purchasers"); *In re Glumetza Antitrust Litig.*, 2021 WL 3773621, at *7 (N.D. Cal. Aug. 25, 2021) (*Hanover Shoe* "rejected the antitrust defense that a defendant's illegal overcharge does not injure a direct purchaser when that overcharge was 'passed on' to the direct purchaser's customers"); *In re Glumetza Antitrust Litig.*, 336 F.R.D. 468, 480-81 (N.D. Cal. 2020) (direct purchaser's injury is complete at the moment an overcharge is paid).

Courts in this Circuit have also recognized that curative jury instructions are not a substitute for exclusion of pass-on evidence in cases involving both federal and state-law claims. *See In re Cathode Ray Tube (CRT) Antitrust Litig.*, 2016 WL 7800819, at *8 (N.D. Cal. Nov. 15, 2016) (rejecting defense argument that it was "unnecessary" to exclude evidence of downstream injury in light of the parties' proposed jury instruction on downstream pass-on). "If the evidence is irrelevant or prohibited by *Hanover Shoe*, it should be excluded." *Id.*

### III. THE PROPOSED BIFURCATION TRIES COMMON ISSUES TOGETHER AND AVOIDS IMPERMISSIBLE ADMISSION OF DOWNSTREAM EVIDENCE IN THE DIRECT PURCHASER CASE.

To permit a single jury trial on common issues without prejudicing the federal law Plaintiffs' right to recover the overcharges they are legally entitled to recover, we propose trying all issues common to all Plaintiffs in the first phase of the trial. Following the trial of common issues, the first jury would continue to determine damages under state law, while a second jury would be empaneled to determine the existence and quantum of overcharge to the federal law Plaintiffs. This second jury would be tasked with calculating overcharges to the federal law Plaintiffs without being prompted to consider pass-on issues by an awareness that the federal law Plaintiffs' customers—or their customers' customers—are also claiming to have suffered downstream injury passed on through the distribution chain.

This approach—trying common issues in the first phase to a single jury and non-common issues in the second phase—has been used extensively in prior trials involving similar claims. *See In re Nexium (Esomeprazole) Antitrust Litig.*, 842 F.3d 34, 59-61 (1st Cir. 2016); *In re Loestrin 24 Fe Antitrust Litig.*, Case No. 13-md-2472-WES-PAS, Text Order dated Oct. 4, 2019 (D.R.I. Oct. 4, 2019) (adopting identical proposal); *In re Solodyn Antitrust Litig.*, Case No. 14-md-2503-DJC, ECF Doc. 1089 (D. Mass. March 8, 2018) (same); *In re Prograf Antitrust Litig.*, 2014 WL 4745954, at *4 & n.6 (D. Mass. June 10, 2014). *See also In re Restasis (Cyclosporine Ophthalmic Emulsion) Antitrust Litig.*, 335 F.R.D. 1, 12 n.5 (E.D.N.Y. 2020) (noting that the same groups of plaintiffs had proposed a similar trial structure).

The bifurcation addressed by these courts and proposed here avoids an otherwise irreconcilable conflict between federal and state antitrust law. In an indirect purchaser case brought under state law, an end payor is *required* to introduce evidence of an overcharge that first occurred at a higher level of the distribution chain and was passed on in the form of higher resale prices. Thus, an end payor case inherently seeks to prove downstream effects. Yet the Supreme Court has held that very same evidence is prejudicial and *inadmissible* in antitrust cases arising under federal law.

PLAINTIFFS' TRIAL STRUCTURE BRIEF
CASE NO:3:19-CV-02573-EMC
- 6 -

Defendants may cite Judge Leinenweber's rejection of a similar motion in *In re Opana ER Antitrust Litig.*, Case No. 14 C 10150, ECF Doc. 793 (N.D. Ill. April 21, 2022). But that decision demonstrates the merit of this proposal. Since liability includes the fact of injury, including some amount of overpayment, Judge Leinenweber's decision to bifurcate the trial between "liability" and "damages" required each of the three plaintiff groups to bring its damages expert to trial during the liability phase to testify to the *existence* of some overpayment even though the same three experts would have been needed to re-appear to testify to the *amount* of injury during phase two. That testimony was unnecessary, duplicative, and tedious. Testimony on the existence and amount of injury should be deferred until phase two of the jury trial.[2]

Under the proposal made here, the first phase determines (i) whether Gilead and Teva violated the antitrust laws through the reverse payment in their settlement agreement (the issue of violation); (ii) whether that violation caused some delay of generic entry (a component of causation or impact); and, if so, (iii) an estimate of when generic entry would have occurred in the absence of the violation and the number of generics that would have entered earlier (inputs into the calculation of damages in the second phase). The second phase determines the existence and extent of overpayment from the previously-estimated generic delay. This ensures that evidence and witnesses on the related issues of violation and generic delay appear in the first phase, and that witnesses relating to the issue of the overpayments by reason of generic delay appear in the second.

---

[2] Defendants may also cite two cases decided by Judge Orrick that declined to bifurcate direct and indirect damage claims: *In re Lidoderm Antitrust Litig.*, No. 3:14-md-02521, ECF Doc. 912 at 1 (N.D. Cal. Nov. 13, 2017); and *In re Korean Ramen Antitrust Litig.*, No. 3:13-cv-4115, ECF Doc. 563 at 4 (N.D. Cal. Apr. 5, 2017). Because *Lidoderm* settled before trial, Judge Orrick never had to face the question of whether it was truly possible to give the jury inconsistent instructions regarding damages under federal and state law. And, in *Korean Ramen*, Judge Orrick denied plaintiffs' motion to bifurcate without prejudice to its reconsideration following the court's rulings on motions for summary judgment. *See In re Korean Ramen Antitrust Litigation*, No. 3:13-cv-4115, ECF Doc. 613 at 4 (N.D. Cal. Sept. 28, 2017). The plaintiffs appear to have subsequently waived their objection to a joint trial by failing to renew it before trial. Retailer Plaintiffs do not intend to waive their objection to a joint trial of direct and end payor damage claims.

The proposal here differs from the traditional bifurcation between liability and damages because it draws the line between the first phase and the second phase based on the distinction between *common issues* and *non-common issues*. As the Seventh Circuit has explained, "there is no rule that if a trial is bifurcated, it must be bifurcated between liability and damages. The judge can bifurcate (or for that matter trifurcate, or slice even more finely) a case at whatever point will minimize the overlap in evidence between the segmented phases or otherwise promote economy and accuracy in adjudication." *Hydrite Chem. Co. v. Calumet Lubricants Co.*, 47 F.3d 887, 891 (7th Cir. 1995). Bifurcating the trial as proposed here avoids the artificial distinction between fact of injury (litigated in phase one) and amount of injury (litigated in phase two) and the need to have the same three damages experts testify in both phases. *See, e.g., In re Foreign Exchange Benchmark Rates Antitrust Litig.* ("*Forex*"), 2022 WL 3971006, at *5, *7 (S.D.N.Y. Aug. 31, 2022) (approving a bifurcation plan where the first jury would determine whether defendants engaged in a price-fixing conspiracy while subsequent trials would determine fact of injury and damages, and noting that "sub-issues within liability are familiar to antitrust cases"). *See also Fink-Carver v. Kuhn*, 2022 WL 9496635, at *1 (N.D. Cal. Oct. 14, 2022) ("The determination of whether to bifurcate a trial is a matter within the Court's discretion," and the factors to be considered include "avoiding prejudice" and "reducing risk of confusion").

This proposal also ensures that the second jury will not reconsider any issues decided by the first jury, thereby avoiding any Seventh Amendment issues. *See Houseman v. U.S. Aviation Underwriters*, 171 F.3d 1117, 1126-28 (7th Cir. 1999) (bifurcating negligence claim against airplane pilot from products liability against manufacturer of airplane part did not violate the Seventh Amendment because the second jury would not have to reconsider any fact found by the first jury); *Forex*, 2022 WL 3971006, at *7 (S.D.N.Y. Aug. 31, 2022) ("The Second Circuit has since joined other courts that have argued that . . . proper case management can easily allay Seventh Amendment concerns and ensure that only one jury passes on each distinct issue") (citation omitted)); *Prograf*, 2014 WL 4745954, at *4 & n.6 (no Seventh Amendment violation in having a first jury decide the existence of an antitrust violation by pharmaceutical manufacturer

and when generic tacrolimus would have entered the market but for the violation and a second jury decide "whether a particular plaintiff made a tacrolimus purchase at a supra-competitive price and the amount of any overcharges incurred").

### IV. THE PROPOSED BIFURCATION IS JUDICIALLY EFFICIENT.

The bifurcation proposed here is judicially efficient. The first phase of the bifurcated jury trial will ensure that the Court, and the jury, will only need to hear evidence once regarding the common issues of violation and generic delay. The second phase entails two proceedings, each of which will be brief. Each of the phase-two trials is likely to involve to involve no more than a handful of witnesses (the parties' damages economists) over a couple of days. Empanelment of the second jury will occur in less than a day, particularly since the narrow issues of direct purchaser overpayment and overcharges will likely only take a couple of days. And the bifurcation is efficient because, by ensuring separate treatment of direct purchaser overcharges, the Court avoids the prospect of a retrial following appeal due to the inappropriate influence of downstream considerations in the jury's verdict.

### CONCLUSION

For the reasons stated, the Court should bifurcate the trial as proposed.

Dated: January 26, 2023
/s/ Anna T. Neill
Anna T. Neill (State Bar No. 270858)
Scott E. Perwin (*pro hac vice*)
Lauren C. Ravkind (*pro hac vice*)
KENNY NACHWALTER P.A.
Four Seasons Tower, Suite 1100
1441 Brickell Avenue
Miami, FL 33131
Telephone: (305) 373-1000
Facsimile: (305) 372-1861
Email: aneill@knpa.com
Email: sperwin@knpa.com
Email: lravkind@knpa.com
*Attorneys for Walgreen Plaintiffs*

Barry L. Refsin (*pro hac vice*)
Caitlin V. McHugh (*pro hac vice*)
Alexander J. Egerváry (*pro hac vice*)
HANGLEY ARONCHICK SEGAL PUDLIN & SCHILLER
One Logan Square, 27th Floor
Philadelphia, PA 19103
Telephone: (215) 568-6200
Email: brefsin@hangley.com
Email: aegervary@hangley.com
Email: cmchugh@hangley.com

Eric L. Bloom (*pro hac vice*)
HANGLEY ARONCHICK SEGAL PUDLIN & SCHILLER
2805 Old Post Road, Suite 100
Harrisburg, PA 17110
Telephone: (717) 364-1030
Email: ebloom@hangley.com
*Attorneys for CVS Pharmacy, Inc., Rite Aid Corp., and Rite Aid Hdqtrs. Corp.*

William F. Murphy (State Bar No. 82482)
DILLINGHAM & MURPHY
601 Montgomery Street, Suite 1900
San Francisco, CA 94111
Telephone: (415) 397-2700
Facsimile: (415) 397-3300
wfm@dillinghammurphy.com
*Counsel for Retailer Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system on February 9, 2023. I further certify that all participants in the case are registered CM/ECF users on whom service will be accomplished by the CM/ECF system.

/s/ Anna T. Neill
Anna T. Neill