UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

IN RE HIV ANTITRUST LITIGATION

Case No.  19-cv-02573-EMC

**ORDER RE COURT'S PROPOSED JURY INSTRUCTIONS**

Attached are the Court's proposed jury instructions.  The parties shall meet and confer in real time and attempt to agree on any proposed modifications to these instructions.  If any disagreements remain, the parties shall submit objections and/or any comments on the proposed instructions by **April 7, 2023**.

**IT IS SO ORDERED**.

Dated: March 28, 2023

EDWARD M. CHEN
United States District Judge

## I.     PRELIMINARY JURY INSTRUCTIONS
### (GIVEN AT THE BEGINNING OF TRIAL)

### JURY INSTRUCTION NO. [1.3]
### DUTY OF JURY

Jurors:  You now are the jury in this case, and I want to take a few minutes to tell you something about your duties as jurors and to give you some preliminary instructions.  At the end of the trial, I will give you more detailed instructions that will control your deliberations.

When you deliberate, it will be your duty to weigh and to evaluate all the evidence received in the case and, in that process, to decide the facts.  To the facts as you find them, you will apply the law as I give it to you, whether you agree with the law or not.  You must decide the case solely on the evidence and the law before you.

Perform these duties fairly and impartially.  You should not be influenced by any person's race, color, religious beliefs, national ancestry, sexual orientation, gender identity, likes or dislikes, sympathy, prejudice, fear, public opinion, or biases, including unconscious biases.  Unconscious biases are stereotypes, attitudes, or preferences that people may consciously reject but may be expressed without conscious awareness, control, or intention.  Like conscious bias, unconscious bias can affect how we evaluate information and make decisions.

Do not be afraid to examine any assumptions you or other jurors have made which are not based on the evidence presented at trial.  Please do not take anything I may say or do during the trial as indicating what I think of the evidence or what your verdict should be – that is entirely up to you.

[Court Notes: 9th Cir. Model Instruction No. 1.3.  The Court has modified the instruction.  As the parties note, the modified instruction was used in one of the Court's recent trials. *See In re Tesla Inc. Secs. Litig.*, No. C-18-4865 EMC (N.D. Cal.).  The parties appear to be amenable to the modified instruction.]

United States District Court
Northern District of California

**JURY INSTRUCTION NO. \_\_\_\_**

**IMPLICIT/UNCONSCIOUS BIAS**

We all have feelings, assumptions, perceptions, fears, and stereotypes about others.  Some biases we are aware of, and others we might not be fully aware of, which is why they are called implicit or unconscious biases.  No matter how unbiased we think we are, our brains are hard-wired to make unconscious decisions. We look at others and filter what they say through our own personal experience and background.  Because we all do this, we often see life and evaluate evidence in a way that tends to favor people who are like ourselves, or who have had life experiences like our own.  We can also have biases about people like ourselves.  One common example is the automatic association of male with career and female with family. Bias can affect our thoughts, how we remember what we see and hear, whom we believe or disbelieve, and how we make important decisions.

As jurors, you are being asked to make an important decision in the case.  You must one, take the time you need to reflect carefully and thoughtfully about the evidence.

Two, think about why you are making the decision you are making and examine it for bias. Reconsider your first impressions of the people and the evidence in this case.  If the people involved in this case were from different backgrounds, for example, richer or poorer, more or less educated, older or younger, or of a different gender, gender identity, race, religion or sexual orientation, would you still view them, and the evidence, the same way?

Three, listen to one another.  You must carefully evaluate the evidence and resist, and help each other resist, any urge to reach a verdict influenced by bias for or against any party or witness. Each of you have different backgrounds and will be viewing this case in light of your own insights, assumptions and biases.  Listening to different perspectives may help you to better identify the possible effects these hidden biases may have on decision making.

And four, resist jumping to conclusions based on personal likes or dislikes, generalizations, gut feelings, prejudices, sympathies, stereotypes, or unconscious biases.

United States District Court
Northern District of California

The law demands that you make a fair decision based solely on the evidence, your individual evaluations of that evidence, your reason and common sense, and these instructions.

[Court Notes: The parties have stipulated to this instruction which, as the parties note, was used in one of the Court's recent trials. *See In re Tesla Inc. Secs. Litig.*, No. C-18-4865 EMC (N.D. Cal.).]

**JURY INSTRUCTION NO. [1.6]**

**BURDEN OF PROOF – PREPONDERANCE OF THE EVIDENCE**

This is a civil case.  Plaintiffs are the parties that brought this lawsuit, and they have the burden of proving their case by what is called the preponderance of the evidence.  When a party has the burden of proving any claim or affirmative defense by a preponderance of the evidence, it means you must be persuaded by the evidence that the claim or affirmative defense is more probably true than not true.

If plaintiffs fail to meet this burden, the verdict must be for defendants.  If you find after considering all the evidence that a claim or fact is more likely so than not, then the claim or fact has been proved by a preponderance of the evidence.  If you find that the evidence is evenly divided such that you cannot determine whether a claim or fact is more likely so than not so, then you must find for defendants.

You should base your decision on all of the evidence, regardless of which party presented it.

[Court Notes: 9th Cir. Model Instruction No. 1.6.  The parties have stipulated to a modification of the instruction.  The Court has modified the parties' proposal slightly.]

**JURY INSTRUCTION NO. [1.8]**

**TWO OR MORE PARTIES – DIFFERENT LEGAL RIGHTS**

You should decide the case as to each plaintiff and each defendant separately.  Unless otherwise stated, the instructions apply to all parties.

[Court Notes: 9th Cir. Model Civil Jury Instruction No. 1.8.  Defendants have requested the instruction; Plaintiffs do not object.]

1

**JURY INSTRUCTION NO. [4.1]**

2

**CORPORATIONS AND PARTNERSHIPS – FAIR TREATMENT**

3       All parties are equal before the law, and corporations – whether they be plaintiff entities or

4  defendants Gilead and Teva – are entitled to the same fair and conscientious consideration by you

5  as any party.

6

7       [Court Notes: 9th Cir. Model Civil Jury Instruction No. 4.1.  Defendants have requested a

8  modified instruction; Plaintiffs do not object.  The modified instruction shall be given.]

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**JURY INSTRUCTION NO. [_____]**

**GENERAL OVERVIEW**

As I noted previously, this is a civil case.  There are multiple plaintiffs and multiple defendants in the case.  I will give you more details about the parties and the claims in a moment.  However, I want to give you a general overview first.

The plaintiffs are entities that purchased certain HIV drugs, and they claim that they were overcharged for the drugs.  The HIV drugs at issue are the brand drugs Truvada and Atripla, as well as generic versions of those drugs.  The plaintiffs assert that the defendants violated of federal antitrust law, state antitrust law, and/or state consumer protection law.

The defendants are Gilead and Teva, two drug manufacturers.  Gilead is a manufacturer of brand drugs, including brand HIV drugs such as Truvada and Atripla.  Teva is a manufacturer of generic drugs, including generic HIV drugs generally and generic versions of Truvada and Atripla specifically.  The defendants deny the plaintiffs' claims.

Some plaintiffs purchased the HIV drugs directly from the defendants.  These plaintiffs will be referred to as the "direct purchasers."  Some plaintiffs did not purchase the HIV drugs directly from defendants and instead purchased the HIV drugs from resellers such as pharmacies.  These plaintiffs will be referred to as the "indirect purchasers."

Some plaintiffs are asserting claims on their own behalf *and* on the behalf of others who are similarly situated.  These kinds of claims will be referred to as "class claims."  Some plaintiffs are asserting claims only on their own behalf.  These kinds of claims will be referred to as "individual claims."

Some direct purchasers have brought class claims, while other direct purchasers have brought individual claims only.  For the class claims, you will hear reference to "direct purchaser classes."

Similarly, some indirect purchasers have brought class claims, while other indirect purchasers have brought individual claims only.  For the class claims, you will hear reference to "indirect purchaser classes."

[Court Notes: The Court has independently proposed this instruction.  Although the parties have proposed a similar kind of instruction (there are competing versions), it is more detailed in nature and thus may be confusing to the jury without getting first a general overview.]

**JURY INSTRUCTION NO. [_____]**

**[DISPUTED INSTRUCTION NO. 12]**

**OVERVIEW OF PLAINTIFFS**

I will now provide more details about the plaintiffs in this case.

There are five sets of plaintiffs in this case.

**First**, there is a group of plaintiffs known as the End-Payor Purchasers, or "EPPs."  The EPPs are entities that purchased the HIV drugs at issue for purposes of final use, and not for resale.  They include health plans that pay for some or all of the cost of prescription drugs for individual members of the health plans.  You may hear the EPPs referred to as third-party payors, or "TPPs."  The EPPs are indirect purchasers and have brought class claims on behalf of other indirect purchasers.  The EPPs who are representing the indirect purchaser classes are the following:

- the Fraternal Order of Police, Miami Lodge 20, Insurance Trust Fund ("FOP");
- the Service Employees International Union, Local No. 1 Health Fund ("Local 1");
- the Teamsters Local 237 Welfare Fund and the Teamsters Local 237 Retirees Benefit Fund ("Teamsters"); and
- the Pipe Trades Services MN Welfare Fund ("Pipe Trades").

The EPPs have asserted violations of state law.  They have sued Gilead.

**Second**, there is the plaintiff United Healthcare Services, Inc., or "United."  United is an entity that provides services to affiliated health plans, including by paying for prescription drugs.  It is an indirect purchaser.  However, it has also been assigned claims by an affiliated entity, OptumRx, which is a direct purchaser.  For both the indirect purchaser claims and the direct purchaser claims, United is bringing individual claims only.  It is not part of any class.  For its indirect purchaser claims, United is asserting violations of state law.  For its direct purchaser claims, United is asserting violations of federal law.  [Note for parties: The Court notes that the parties have a dispute about what law governs the state law claims.  The parties shall be providing supplemental briefing on the issue.]  United has sued Gilead and Teva.

**Third**, there is a group of plaintiffs known as the Individual Health Plan Purchasers, or

United States District Court
Northern District of California

1   "IHPPs."  The IHPPs operate health plans.  They are indirect purchasers and have brought

2   individual claims only.  They are not part of any class.  The IHPPs are the following entities:

3   • Blue Cross and Blue Shield of Florida, Inc. (d/b/a Florida Blue) and Health

4       Options, Inc. (d/b/a Florida Blue HMO) (collectively, "Florida Blue");

5   • Centene Corporation ("Centene");

6   • Health Care Services Corporation, a Mutual Legal Reserve Company ("HCSC");

7   • Humana, Inc. ("Humana");

8   • Triple-S Salud, Inc. ("Triple-S");

9   • Blue Cross and Blue Shield of Kansas City ("Blue KC); and

10  • Kaiser Foundation Health Plan, Inc. ("Kaiser").

11  The IHPPs assert violations of state law.  They have sued Gilead and Teva.

12      **Fourth**, there is a group of plaintiffs known as the Direct Purchaser Plaintiffs, or "DPPs."

13  The DPPs are entities that bought the HIV drugs at issue directly from defendants or from other

14  drug manufacturers.  They include pharmacies.  The DPPs are direct purchasers and have asserted

15  class claims.  The DPP who is representing the direct purchaser classes is KPH Healthcare

16  Services, Inc. ("KPH").  The DPPs have asserted violations of federal law.  They have sued

17  Gilead.

18      **Fifth**, there is a group of plaintiffs known as the Retail Purchaser Plaintiffs, or "RPPs."

19  The RPPs are entities that own and operate retail pharmacies.  They are direct purchasers and have

20  brought individual claims.  They are not part of any class.  Some of the RPPs' claims are based on

21  purchases assigned to them by their wholesalers.  The RPPs assert violations of federal law.  They

22  have sued Gilead and Teva.

23      In general, when I use the term "purchasers" in these instructions, I am referring to all of

24  the plaintiffs.  For those plaintiffs who have brought state law claims, I will give you a list of the

25  state laws that have allegedly been violated at the end of trial.  Please note that the federal and

26  state law standards as to what constitutes a violation of antitrust or consumer protection law are

27  similar.  However, federal and state laws have some differences when it comes to damages.

28

United States District Court
Northern District of California

[Court Notes: The parties have submitted similar, but competing instructions.  The Court has taken out some of the detail proposed by one or both sides – *e.g.*, which specific state laws are at issue and information about the EPPs who are individual consumers (who are not seeking damages).  The Court has included information about which Plaintiffs are suing which Defendants.  Plaintiffs suggest that this information should not be provided, *see* Docket No. 32 (Jt. Prop. Jury Instructions at 32) (arguing that this "improperly emphasizes that Teva has not been sued by all of the plaintiffs"), but this is basic information about which the jury should be informed.  That being said, the Court agrees with Plaintiffs that it is not necessary to repeat multiple times information about which Defendants have been sued by which Plaintiffs.]

United States District Court
Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

**JURY INSTRUCTION NO. [_____]**

**[DISPUTED INSTRUCTIONS NOS. 13, 16]**

**OVERVIEW OF PLAINTIFFS – EPP AND DPP CLASSES**

As I just noted, some plaintiffs have brought class claims.  Those plaintiffs are the EPPs and the DPPs.  The EPPs bring class claims on behalf of indirect purchasers, and the DPPs bring class claims on behalf of direct purchasers.

There are two classes of indirect purchasers and two classes of direct purchasers. Membership in each of these classes is determined by which drugs were purchased and when. Purchasers can belong to more than one class.  The classes are as follows:

(1) **The Truvada EPP Class:** All entities that indirectly purchased or paid for Gilead's Truvada or Teva's generic Truvada in the applicable states between February 1, 2018, and September 27, 2022.  The class representatives for this class are FOP, Local 1, Teamsters, and Pipe Trades.

(2) **The Atripla EPP Class:** All entities that indirectly purchased or paid for Gilead's Atripla or Teva's generic Atripla in the applicable states between February 1, 2018, and September 27, 2022.  The class representative for this class is Teamsters.

(3) **The Truvada DPP Class:** All persons or entities in the United States and its territories that purchased Truvada or generic Truvada directly from defendants or from any other drug manufacturer between February 1, 2018, and September 2022.  The class representative for this class is KPH.

(4) **The Atripla DPP Class:** All persons or entities in the United States who purchased Atripla or generic Atripla directly from defendants or from any other drug manufacturer between February 1, 2018, and September 27, 2022.  The class representative for this class is KPH.

The fact that this case is proceeding, in part, as a class action does not mean that any decision has been made about the merits of the case.  You must not infer anything about the merits of this case based on the fact that part of the case is a class action.

[Court Notes: The parties have offered competing versions of the instruction describing the classes (Disputed Instruction No. 13).  The Court has proposed its own version.  It has not included language stating that the classes have sued only Gilead.  It is not necessary to repeat this information as it has already been provided in the instruction above (Overview of Plaintiffs).

Defendants have also asked for an instruction to be given to inform the jury that no inference should be made from the fact that the case is proceeding in part as a class action (Disputed Instruction No. 16).  Although Plaintiffs have opposed such an instruction, the request is reasonable.  The Court adopts the language proposed by Plaintiffs.]

United States District Court
Northern District of California

14

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

**JURY INSTRUCTION NO. [_____]**

**[DISPUTED INSTRUCTION NO. 14]**

**OVERVIEW OF DEFENDANTS**

I will now provide you more details about the defendants in this case.

The defendants are Gilead and Teva.

"Gilead" refers to several affiliated companies: Gilead Sciences, Inc.; Gilead Holdings, LLC; Gilead Sciences LLC (formerly known as Bristol-Myers Squibb & Gilead Sciences, LLC); and Gilead Sciences Ireland UC (formerly known as Gilead Sciences Limited).  Gilead is a company that develops, manufactures, and sells brand drugs, including brand HIV drugs.  Gilead developed and sells the brand HIV drug Truvada.  Gilead co-developed and sells the brand HIV drug Atripla.

"Teva" refers to Teva Pharmaceuticals USA, Inc.  Teva develops, manufactures, and sells generic drugs, including generic HIV drugs.  Teva developed and sells generic versions of Truvada and Atripla.


[Court Notes: The parties have offered competing versions of this instruction.  The Court has proposed its own version.]

1
2
3

**JURY INSTRUCTION NO. [1.5]**

**[DISPUTED INSTRUCTION NO. 15]**

**CLAIMS AND DEFENSES**

4       To help you follow the evidence, I will give you some general background information and

5  then provide you with a brief summary of the positions of the parties.

6       A brand drug manufacturer will typically get patents to protect a brand drug it sells –

7  specifically, inventions related to the brand drug.  For example, the brand manufacturer may

8  secure patent protection over the active ingredient in the drug, the drug's formulation (meaning the

9  combination of active and inactive ingredients in the drug), or a method of using the drug.

10      Sometimes, generic manufacturers will not challenge the brand manufacturer's patents, in

11  which case the generic manufacturers will have to wait until the patents expire to sell generic

12  versions of the brand drug.  Sometimes, generic manufacturers will challenge the brand

13  manufacturer's patents, for example, claiming that the patents are invalid or that the generic

14  versions of the brand drug will not infringe on the patents.  Federal law encourages generic

15  manufacturers to challenge a brand manufacturer's patents, and, as a result, it is common for brand

16  manufacturers to file patent infringement suits against generic manufacturers.  It is also common

17  for these patent infringement suits to be settled.

18      In this case, Gilead filed a patent infringement suit against Teva after Teva challenged

19  Gilead's patents related to its brand drugs Truvada and Atripla.  Gilead and Teva settled their

20  dispute.  The plaintiffs have claimed that the defendants violated federal antitrust law, state

21  antitrust law, and/or state consumer protection law because the settlement agreement contained

22  anticompetitive provisions.  Specifically, the plaintiffs assert that Gilead made a large and

23  unjustified payment to Teva (sometimes called a "reverse payment" since Gilead was the one to

24  sue Teva, and not vice-versa) and, in exchange, Teva agreed to delay its entry into the market with

25  generic drugs that would compete with Gilead's brand drugs.

26      The defendants deny the plaintiffs' claims.

27

28      [Court Notes: 9th Cir. Model Civil Jury Instruction No. 1.5 (modified).  The parties have

1   offered competing versions of this instruction.  The Court has proposed its own instruction.  Both

2   parties' versions are too detailed.  The Court has included some language from Disputed

3   Instruction No. 18 (Defendants' proposal) which talks about what can be patented.]

**JURY INSTRUCTION NO. [1.9]**

**WHAT IS EVIDENCE**

The evidence you are to consider in deciding what the facts are consists of:

    (1) the sworn testimony of any witness;

    (2) the exhibits that are admitted into evidence;

    (3) any facts to which the lawyers have agreed; and

    (4) any facts that I may instruct you to accept as proved.


    [Court Notes: 9th Cir. Model Instruction No. 1.9.  The parties have stipulated to this instruction.]

United States District Court
Northern District of California

**JURY INSTRUCTION NO. [1.10]**

**WHAT IS NOT EVIDENCE**

In reaching your verdict, you may consider only the testimony and exhibits received into evidence.  Certain things are not evidence, and you may not consider them in deciding what the facts are. I will list them for you:

(1) Arguments and statements by lawyers are not evidence.  The lawyers are not witnesses.  What they may say in their opening statements, closing arguments and at other times is intended to help you interpret the evidence, but it is not evidence. If the facts as you remember them differ from the way the lawyers have stated them, your memory of them controls.

(2) Questions and objections by lawyers are not evidence.  Attorneys have a duty to their clients to object when they believe a question is improper under the rules of evidence.  You should not be influenced by the objection or by the court's ruling on it.

(3) Testimony that is excluded or stricken, or that you are instructed to disregard, is not evidence and must not be considered.  In addition some evidence may be received only for a limited purpose; when I instruct you to consider certain evidence only for a limited purpose, you must do so and you may not consider that evidence for any other purpose.

(4) Anything you may see or hear when the court was not in session is not evidence. You are to decide the case solely on the evidence received at the trial.

[Court Notes: 9th Cir. Model Instruction No. 1.10.  The parties have stipulated to this instruction.]

**JURY INSTRUCTION NO. [1.11]**

**EVIDENCE FOR LIMITED PURPOSE**

Some evidence may be admitted only for a limited purpose.

When I instruct you that an item of evidence has been admitted only for a limited purpose, you must consider it only for that limited purpose and not for any other purpose.

[Court Notes: 9th Cir. Model Instruction No. 1.11.]

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

**JURY INSTRUCTION NO. [1.12]**

**DIRECT AND CIRCUMSTANTIAL EVIDENCE**

Evidence may be direct or circumstantial.  Direct evidence is direct proof of a fact, such as testimony by a witness about what that witness personally saw or heard or did.  Circumstantial evidence is proof of one or more facts from which you could find another fact.  You should consider both kinds of evidence.  The law makes no distinction between the weight to be given to either direct or circumstantial evidence.  It is for you to decide how much weight to give to any evidence.

By way of example, if you wake up in the morning and see that the sidewalk is wet, you may find from that fact that it rained during the night.  However, other evidence, such as a turned on garden hose, may provide a different explanation for the presence of water on the sidewalk.  Therefore, before you decide that a fact has been proved by circumstantial evidence, you must consider all the evidence in the light of reason, experience and common sense.

[Court Notes: 9th Cir. Model Instruction No. 1.12.]

**JURY INSTRUCTION NO. [1.13]**

**RULING ON OBJECTIONS**

There are rules of evidence that control what can be received into evidence.  When a lawyer asks a question or offers an exhibit into evidence and a lawyer on the other side thinks that it is not permitted by the rules of evidence, that lawyer may object.  If I overrule the objection, the question may be answered or the exhibit received.  If I sustain the objection, the question cannot be answered, and the exhibit cannot be received.  Whenever I sustain an objection to a question, you must ignore the question and must not guess what the answer might have been.

Sometimes I may order that evidence be stricken from the record and that you disregard or ignore that evidence.  That means when you are deciding the case, you must not consider the stricken evidence for any purpose.

[Court Notes: 9th Cir. Model Instruction No. 1.13.  The parties have stipulated to this instruction.]

**JURY INSTRUCTION NO. [1.14]**

**[DISPUTED INSTRUCTION NO. 42]**

**CREDIBILITY OF WITNESSES**

In deciding the facts in this case, you may have to decide which testimony to believe and which testimony not to believe. You may believe everything a witness says, or part of it, or none of it.

In considering the testimony of any witness, you may take into account:

    (1) the opportunity and ability of the witness to see or hear or know the things testified to;

    (2) the witness's memory;

    (3) the witness's manner while testifying;

    (4) the witness's interest in the outcome of the case, if any;

    (5) the witness's bias or prejudice, if any;

    (6) whether other evidence contradicted or corroborated the witness's testimony;

    (7) the reasonableness of the witness's testimony in light of all the evidence; and

    (8) any other factors that bear on believability.

Sometimes a witness may say something that is not consistent with something else he or she said. Sometimes different witnesses will give different versions of what happened. People often forget things or make mistakes in what they remember. Also, two people may see the same event but remember it differently. You may consider these differences, but do not decide that testimony is untrue just because it differs from other testimony.

However, if you decide that a witness has deliberately testified untruthfully about something important, you may choose not to believe anything that witness said. On the other hand, if you think the witness testified untruthfully about some things but told the truth about others, you may accept the part you think is true and ignore the rest.

The weight of the evidence as to a fact does not necessarily depend on the number of witnesses who testify. What is important is how believable the witnesses were, and how much weight you think their testimony deserves.

United States District Court
Northern District of California

1    Your evaluation of witness testimony should not be influenced by any prejudice or bias,

2 including unconscious bias.

3

4    [Court Notes: 9th Cir. Model Instruction No. 1.14.  The Court has slightly modified this

5 instruction.

6    Defendants have asked for an additional instruction on the number of witnesses.  *See*

7 Disputed Instruction No. 42.  The Court does not find it necessary in light of the above

8 instruction.]

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

**JURY INSTRUCTION NO. [2.4]**

**DEPOSITION IN LIEU OF LIVE TESTIMONY**

A deposition is the sworn testimony of a witness taken before trial.  The witness is placed under oath to tell the truth and lawyers for each party may ask questions.  The questions and answers are recorded.  When a person is unavailable to testify at trial, the deposition of that person may be used at the trial.

Insofar as possible, you should consider deposition testimony, presented to you in court in lieu of live testimony, in the same way as if the witness had been present to testify.

[Court Notes: 9th Cir. Model Civil Jury Instruction No. 2.4.  The parties have stipulated to this instruction.]

**JURY INSTRUCTION NO. [2.13]**

**[DISPUTED INSTRUCTION NO. 43]**

**EXPERT OPINION**

You will hear testimony from certain witnesses who will testify to opinions and the reasons for their opinions.  This opinion testimony is allowed, because of the education or experience of the witness.

Such opinion testimony should be judged like any other testimony.  You may accept it or reject it, and give it as much weight as you think it deserves, considering the witness's education and experience, the reasons given for the opinion, and all the other evidence in the case.

[Court Notes: 9th Cir. Model Civil Jury Instruction No. 2.13.  Defendants have asked for additional language to be included – *i.e.*, regarding potential bias of paid experts.  The Court deems it unnecessary and adheres to the language of the model instruction.]

**JURY INSTRUCTION NO. [_____]**

**[DISPUTED INSTRUCTION NO. 44]**

**INVOCATION OF ATTORNEY-CLIENT PRIVILEGE**

During trial, you may hear witnesses decline to answer questions because of the attorney-client privilege.  The attorney-client privilege is a privilege recognized in federal law to encourage full and frank communications between clients and lawyers.  The client chooses whether to invoke the privilege.  ~~You should know that it is perfectly proper for any witness to invoke the attorney-client privilege while testifying, and~~ You should not draw any conclusion adverse to either party simply because a witness has invoked the privilege.  Nor should you speculate on what the witness might have testified if the privilege had not been raised.

[Court Notes: Defendants have offered this instruction.  It is reasonable to include an instruction given that (1) Gilead, but not Teva, has continued to assert privilege over attorney-client communications related to the FTC patent settlement agreement and that (2) the Court is allowing Plaintiffs to comment that there is no evidence of Gilead's subjective beliefs regarding its likelihood of prevailing at the FTC patent infringement trial because Gilead invoked the privilege.  The Court has modified Defendants' proposed instruction slightly.]

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**JURY INSTRUCTION NO. [1.15]**

**CONDUCT OF THE JURY**

I will now say a few words about your conduct as jurors.

First, keep an open mind throughout the trial, and do not decide what the verdict should be until you and your fellow jurors have completed your deliberations at the end of the case.

Second, because you must decide this case based only on the evidence received in the case and on my instructions as to the law that applies, you must not be exposed to any other information about the case or to the issues it involves during the course of your jury duty.  Thus, until the end of the case or unless I tell you otherwise:

>Do not communicate with anyone in any way and do not let anyone else communicate with you in any way about the merits of the case or anything to do with it.  This includes discussing the case in person, in writing, by phone, tablet, or computer, or any other electronic means, via email, text messaging, or any internet chat room, blog, website or application, including but not limited to Facebook, YouTube, Twitter, Instagram, LinkedIn, Snapchat, TikTok, or any other forms of social media.  This applies to communicating with your fellow jurors until I give you the case for deliberation, and it applies to communicating with everyone else including your family members, your employer, the media or press, and the people involved in the trial, although you may notify your family and your employer that you have been seated as a juror in the case, and how long you expect the trial to last.  But, if you are asked or approached in any way about your jury service or anything about this case, you must respond that you have been ordered not to discuss the matter and report the contact to the court.

>Because you will receive all the evidence and legal

28

United States District Court
Northern District of California

1   instruction you properly may consider to return a verdict: do not

2   read, watch or listen to any news or media accounts or commentary

3   about the case or anything to do with it[, although I have no

4   information that there will be news reports about this case]; do not

5   do any research, such as consulting dictionaries, searching the

6   Internet, or using other reference materials; and do not make any

7   investigation or in any other way try to learn about the case on your

8   own.  Do not visit or view any place discussed in this case, and do

9   not use the Internet or any other resource to search for or view any

10   place discussed during the trial.  Also, do not do any research about

11   this case, the law, or the people involved – including the parties, the

12   witnesses or the lawyers – until you have been excused as jurors.  If

13   you happen to read or hear anything touching on this case in the

14   media, turn away and report it to me as soon as possible.

15   These rules protect each party's right to have this case decided only on evidence that has

16   been presented here in court.  Witnesses here in court take an oath to tell the truth, and the

17   accuracy of their testimony is tested through the trial process.  If you do any research or

18   investigation outside the courtroom, or gain any information through improper communications,

19   then your verdict may be influenced by inaccurate, incomplete or misleading information that has

20   not been tested by the trial process.  Each of the parties is entitled to a fair trial by an impartial

21   jury, and if you decide the case based on information not presented in court, you will have denied

22   the parties a fair trial.  Remember, you have taken an oath to follow the rules, and it is very

23   important that you follow these rules.

24   A juror who violates these restrictions jeopardizes the fairness of these proceedings, and a

25   mistrial could result that would require the entire trial process to start over.  If any juror is exposed

26   to any outside information, please notify the court immediately.

27

28   [Court Notes: 9th Cir. Model Instruction No. 1.15.  The parties stipulated to this

instruction.  The Court has stricken the language in brackets above, particularly in light of Instruction No. 1.16.]

**JURY INSTRUCTION NO. [1.16]**

**PUBLICITY DURING TRIAL**

If there is any news media account or commentary about the case or anything to do with it, you must ignore it.  You must not read, watch or listen to any news media account or commentary about the case or anything to do with it.  The case must be decided by you solely and exclusively on the evidence that will be received in the case and on my instructions as to the law that applies. If any juror is exposed to any outside information, please notify me immediately.

[Court Notes: 9th Cir. Model Civil Jury Instruction No. 1.16.  The parties have stipulated to this instruction.]

**JURY INSTRUCTION NO. [1.17]**

**NO TRANSCRIPT AVAILABLE TO JURY**

I urge you to pay close attention to the trial testimony as it is given. During deliberations you will not have a transcript of the trial testimony.

[Court Notes: 9th Cir. Model Instruction No. 1.17.  The parties have stipulated to this instruction.]

**JURY INSTRUCTION NO. [1.18]**

**TAKING NOTES**

If you wish, you may take notes to help you remember the evidence.  If you do take notes, please keep them to yourself until you go to the jury room to decide the case.  Do not let notetaking distract you.  When you leave, your notes should be left in the jury room.  No one will read your notes.

Whether or not you take notes, you should rely on your own memory of the evidence. Notes are only to assist your memory.  You should not be overly influenced by your notes or those of other jurors.

[Court Notes: 9th Cir. Model Instruction No. 1.18.  The parties have stipulated to this instruction.]

1

2

**JURY INSTRUCTION NO. [1.20]**

**BENCH CONFERENCES AND RECESSES**

3       From time to time during the trial, it may become necessary for me to talk with the

4   attorneys out of the hearing of the jury, either by having a conference at the bench when the jury is

5   present in the courtroom, or by calling a recess.  Please understand that while you are waiting, we

6   are working.  The purpose of these conferences is not to keep relevant information from you, but

7   to decide how certain evidence is to be treated under the rules of evidence and to avoid confusion

8   and error.

9       Of course, we will do what we can to keep the number and length of these conferences to a

10  minimum.  I may not always grant an attorney's request for a conference.  Do not consider my

11  granting or denying a request for a conference as any indication of my opinion of the case or of

12  what your verdict should be.

13

14      [Court Notes: 9th Cir. Model Instruction No. 1.20.  The parties have stipulated to this

15  instruction.]

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

**JURY INSTRUCTION NO. [1.21]**

**OUTLINE OF TRIAL**

Trials proceed in the following way: First, each side may make an opening statement.  An opening statement is not evidence.  It is simply an outline to help you understand what that party expects the evidence will show.  A party is not required to make an opening statement.

The plaintiff will then present evidence, and counsel for the defendant may cross-examine.  Then the defendant may present evidence, and counsel for the plaintiff may cross-examine.

After the evidence has been presented, I will instruct you on the law that applies to the case and the attorneys will make closing arguments.

After that, you will go to the jury room to deliberate on your verdict.

[Court Notes: 9th Cir. Model Instruction No. 1.21.  The parties stipulated to this instruction.]

**JURY INSTRUCTION NO. [____]**

**[DISPUTED INSTRUCTION NO. 17]**

**OVERVIEW OF DRUG APPROVAL**

To help you understand the parties' opening statements and the evidence that will be presented to you, I will give you a brief overview of the drug approval process which is regulated by a federal agency known as the Food and Drug Administration, or "FDA."

[Court Notes: The parties dispute how much "background information" should be given to the jury. Given the complexity of this case, the Court concludes that background information should be given and not an inconsequential amount. The Court is not alleviating Plaintiffs of the burden of proving their case. It will simply give undisputed legal information (and a minimum of undisputed factual information) to the jury, consistent with the Supreme Court's statements in *FTC v. Actavis*, 570 U.S. 136 (2013).]

United States District Court
Northern District of California

United States District Court
Northern District of California

**JURY INSTRUCTION NO. [_____]**

**[DISPUTED INSTRUCTION NO. 18]**

**OVERVIEW OF DRUG APPROVAL –**

**APPROVAL OF NEW DRUG APPLICATION**

The FDA regulates both brand drugs and generic drugs.  I will first give a brief description of FDA approval for a brand drug.

If a drug manufacturer wishes to market a new prescription drug, it must submit what is called a New Drug Application, or "NDA," to the FDA.  The NDA contains information on the active and inactive ingredients in the drug, information on the method of manufacturing the drug, and scientific data related to the effect of the drug on the human body (for example, derived from clinical testing).  The purpose of an NDA is to demonstrate to the FDA that the drug is safe and effective for its proposed uses.

If the FDA concludes that the drug is both safe and effective, it approves the NDA which allows the drug to be sold in the United States.  Drugs approved under the NDA process are often called brand drugs or brand-name drugs, because manufacturers market them under a brand name instead of under the drug's chemical name.

In this case, the relevant brand drugs that the FDA approved are Truvada and Atripla.  Both are used to treat HIV.  Each of the drugs is a combination of two or more active ingredients, where each active ingredient was previously approved individually as a component drug.  In other words, each component drug goes through the FDA approval process, and each combination drug also goes through the FDA process separately.  Combination drugs are sometimes called "FDCs," which stands for fixed-dose combination drugs.


[Court Notes: The parties have offered competing versions of this instruction.  The Court has proposed its own version, taking elements from each side's proposal.]

**JURY INSTRUCTION NO. [_____]**

**[DISPUTED INSTRUCTIONS NOS. 19-20]**

**OVERVIEW OF DRUG APPROVAL –**

**APPROVAL OF ABBREVIATED NEW DRUG APPLICATION**

Once the FDA has approved a brand drug for marketing, a manufacturer of a generic drug can obtain similar marketing approval through use of abbreviated procedures.  A federal law known as the Hatch-Waxman Act permits a generic manufacturer to file an Abbreviated New Drug Application, or "ANDA," specifying that the generic has the same active ingredients as, and is biologically equivalent to, the already-approved brand drug.  In this way, the generic manufacturer can obtain approval while avoiding the cost of the studies needed to obtain approval for the brand drug.

The FDA can give final or tentative approval to an ANDA.  If the FDA gives final approval, then the generic manufacturer may launch its product immediately.  If the FDA gives tentative approval, that means that there is still a legal impediment that prevents the generic manufacturer from launching its product immediately – for example, the brand drug is protected by patents that have not yet expired.

[Court Notes: The parties have offered competing versions related to this instruction.  The Court has proposed its own version, relying in large part on language from the Supreme Court's *Actavis* decision.  *See FTC v. Actavis*, 570 U.S. 136, 142 (2013).]

United States District Court
Northern District of California

**JURY INSTRUCTION NO. [_____]**

**[DISPUTED INSTRUCTIONS NOS. 21-22, 30, 32-33, 36]**

**OVERVIEW OF PATENTS**

A patent is a legal right granted by the federal government – specifically, the United States Patent and Trademark Office – for an invention. A patent gives the patent owner, also known as the patent holder, the right to exclude others from making, using, offering to sell, or selling the invention in the United States for a set period of time. Because a patent is a legal right granted by the federal government, a patent by itself does not violate the law, including antitrust law.

A patent usually expires after twenty years from the date of the filing of the patent application. During the patent term, a patent owner can consent to someone else using the invention. This is often referred to as a "patent license." If, however, a person or entity sells a product covered by a patent without the patent owner's permission, the patent owner can sue the seller for what is called "patent infringement."

As I previously noted, a brand manufacturer typically gets patents to protect a brand dug it sells. A generic manufacturer, therefore, faces a legal obstacle if it wants to make a generic version of the brand drug during the lifetime of the patents that protect the brand drug. A generic manufacturer, however, can challenge a brand manufacturer's patent, for example, claiming that the patent is not valid because it covers something that was already known or that was obvious at the time the invention was made.

[Court Notes: The parties have submitted a number of instructions related to patents generally. In general, the parties have included too many details. The Court is not inclined to give an instruction that goes through the patent prosecution process, nor show a video about patents (Disputed Instruction No. 32). The Court is also not inclined to give an instruction on authorized generics since the Court already refers to a license above and the concept of an authorized generic is likely to be confusing out of context (Disputed Instruction No. 30). Likewise, getting into details about some of the specific patents at issue in this case is likely to be confusing out of context (Disputed Instruction No. 33). A lengthy instruction on patent law and its intersection

1    with antitrust law is both confusing and unnecessary (Disputed Instruction No. 36).]

**JURY INSTRUCTION NO. [\_\_\_\_]**

**[DISPUTED INSTRUCTIONS NOS. 23-29, 34-35]**

**OVERVIEW OF PATENTS – PATENT DISPUTES INVOLVING BRAND AND GENERIC DRUGS**

The federal Hatch-Waxman Act sets forth special procedures for identifying, and resolving, patent disputes between brand and generic manufacturers.  It requires the brand manufacturer to list in its New Drug Application the number and the expiration date of any relevant patent.  And it requires the generic manufacturer in its Abbreviated New Drug Application to assure the FDA that the generic drug will not infringe the brand manufacturer's patents.

One way that the generic manufacturer can assure the FDA is to provide a certification that any listed, relevant patent is invalid or will not be infringed by the manufacture, use, or sale of the generic drug described in the Abbreviated New Drug Application.  This is called a "Paragraph IV" certification.

A Paragraph IV certification often leads to litigation.  If the brand manufacturer brings a patent infringement suit within 45 days after the certification, then the FDC must withhold approving the generic drug, usually for a 30-month period, while the parties litigate patent validity or infringement in court.  If patent validity or infringement is decided in court within that 30-month period, the FDA follows that determination.  If patent validity or infringement is not decided within that 30-month period, then the FDA may go forward and give approval to the generic manufacturer to market the generic drug.  However, in that case, because the lawsuit has not concluded, the generic manufacturer – if it goes ahead and launches its generic product – does so "at risk."  A launch is at risk anytime a generic manufacturer launches before the patent infringement lawsuit is finally over.

Even though a Paragraph IV certification often leads to litigation, the Hatch-Waxman Act provides an incentive for a generic manufacturer to be the first to file an Abbreviated New Drug Application with a Paragraph IV certification.  Specifically, that applicant will enjoy a period of 180 days of exclusivity (from the first commercial marketing of its drug).  This means that, during

United States District Court
Northern District of California

1   a 180-day period, no other generic can compete with the brand drug.  If the first-to-file generic

2   manufacturer can overcome any patent obstacle and bring the generic drug to market, this 180-day

3   period of exclusivity can prove very valuable.  The 180-day exclusivity period, however, can

4   belong only to the first generic to file.  Should that first-to-file generic forfeit the exclusivity right

5   in one of the ways specified by statute (for example, the generic manufacturer fails to get FDA

6   approval of its Abbreviated New Drug Application within 30 months), no other generic can obtain

7   it.

8

9          [Court Notes: Plaintiffs have asked for instructions covering the above subject matter.  The

10   Court agrees that it is helpful to give much of this information to the jury, although not in the

11   detailed form suggested by Plaintiffs.  The Court has taken language largely from *FTC v. Actavis,*

12   *Inc.*, 570 U.S. 136, 143-44 (2013).  The Court does not believe that it is necessary to get into the

13   details of whether a patent is valid or infringed (Disputed Instructions Nos. 34-35).  With respect

14   to Teva's forfeiture of exclusivity (Disputed Instruction No. 29), the Court orders the parties to see

15   if they can submit as a stipulation of fact: (1) that Teva was the first generic manufacturer to

16   include a Paragraph IV certification in an ANDA for Truvada and for Atripla and (2) that Teva

17   forfeited the 180-day exclusivity for each.]

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

1

**JURY INSTRUCTION NO. [_____]**

2

**[DISPUTED INSTRUCTION NO. 31]**

3

**STATE DRUG SUBSTITUITON LAWS**

4

During this trial, you will also hear about various state laws commonly referred to as

5

"generic substitution" laws.

6

All 50 states and the District of Columbia have such substitution laws.  They either permit

7

or require pharmacists to dispense a therapeutically equivalent, lower-cost generic drug in place of

8

a brand drug.

9

Many states adopt the FDA's definition of therapeutically equivalent and only allow

10

generic substitution if the FDA designates the generic as "AB-rated."  To receive an AB-rating, a

11

generic must not only be bioequivalent to the brand, but be pharmaceutically equivalent to the

12

brand drug as well.  That means that the generic has the same active ingredient, dosage form,

13

strength, and route of administration as the brand drug.

14

15

[Court Notes: This instruction has been submitted by Plaintiffs only.  The Court has

16

modified the instruction.]

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

1

2

## II.        INSTRUCTIONS DURING TRIAL

3

### JURY INSTRUCTION NO. [2.0]

4

### CAUTIONARY INSTRUCTIONS

5         **At the End of Each Day of the Case:**

6             As I indicated before this trial started, you as jurors will decide this case based solely on

7    the evidence presented in this courtroom.  This means that, after you leave here for the night, you

8    must not conduct any independent research about this case, the matters in the case, the legal issues

9    in the case, or the individuals or other entities involved in the case.  This is important for the same

10   reasons that jurors have long been instructed to limit their exposure to traditional forms of media

11   information such as television and newspapers.  You also must not communicate with anyone, in

12   any way, about this case.  And you must ignore any information about the case that you might see

13   while browsing the internet or your social media feeds.

14

15        ~~**At the Beginning of Each Day of the Case:**~~

16            ~~As I reminded you yesterday and continue to emphasize to you today, it is important that~~

17   ~~you decide this case based solely on the evidence and the law presented here.  So you must not~~

18   ~~learn any additional information about the case from sources outside the courtroom.  To ensure~~

19   ~~fairness to all parties in this trial, I will now ask each of you whether you have learned about or~~

20   ~~shared any information about this case outside of this courtroom, even if it was accidental.~~

21

22            ~~[ALTERNATIVE 1 (in open court): if you think that you might have done so, please let~~

23   ~~me know now by raising your hand.  [Wait for a show of hands].  I see no raised hands; however,~~

24   ~~if you would prefer to talk to the court privately in response to this question, please notify a~~

25   ~~member of the court's staff at the next break.  Thank you for your careful adherence to my~~

26   ~~instructions.]~~

27

28            ~~[ALTERNATIVE 2 (during voir dire with each juror, individually): Have you learned~~

United States District Court
Northern District of California

1   ~~about or shared any information about this case outside of this courtroom? . . . Thank you for your~~

2   ~~careful adherence to my instructions.]~~

3

4          [Court Notes: 9th Cir. Model Civil Jury Instruction No. 2.0.  At this juncture, the Court

5   deems it sufficient to give the first part of the instruction only (at the end of each day of the case).]

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**JURY INSTRUCTION NO. [2.2]**

**STIPULATIONS OF FACT**

The parties have agreed to certain facts (listed below).  You must therefore treat these facts as having been proved.


[Court Notes: 9th Cir. Model Instruction No. 2.2.  The parties have stipulated to this instruction but have not listed any facts.  The Court orders the parties to meet and confer to determine whether they can stipulate to any facts, such as those deemed undisputed in the parties' joint pretrial conference statement.  *See* Docket No. 1636-3 (Jt. PTC St. at 4-6).]

**JURY INSTRUCTION NO. [2.3]**

**JUDICIAL NOTICE**

The court has decided to accept as proved the fact that [state fact].  You must accept this fact as true.


[Court Notes: 9th Cir. Model Instruction No. 2.3.  The parties have stipulated to this instruction but have not provided any facts that may be judicially noticed.]

**JURY INSTRUCTION NO. [2.9]**

**IMPEACHMENT EVIDENCE – WITNESS**

The evidence that a witness, e.g., has been convicted of a crime, lied under oath on a prior occasion, etc. may be considered, along with all other evidence, in deciding whether or not to believe the witness and how much weight to give to the testimony of the witness and for no other purpose.

[Court Notes: 9th Cir. Model Civil Jury Instruction No. 2.9.]

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

**JURY INSTRUCTION NO. [2.16]**

**EVIDENCE IN ELECTRONIC FORMAT**

Those exhibits received in evidence that are capable of being displayed electronically will be provided to you in that form, and you will be able to view them in the jury room.  A computer, projector, printer and accessory equipment will be available to you in the jury room.


[Court Notes: 9th Cir. Model Civil Jury Instruction No. 2.16 (modified).  The Court will give an abbreviated instruction during trial and the complete instruction at the end of trial.]

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

### III.      FINAL JURY INSTRUCTIONS (GIVEN AT THE END OF THE CASE)

### JURY INSTRUCTION NO. [1.4]

Members of the jury: Now that you have heard all the evidence, it is my duty to instruct you on the law that applies to this case.  A copy of these instructions will be sent to the jury room for you to consult during your deliberations.

It is your duty to weigh and to evaluate all the evidence received in the case and, in that process, to decide the facts.  It is also your duty to apply the law as I give it to you to the facts as you find them, whether you agree with the law or not.  You must decide the case solely on the evidence and the law.  Do not allow personal likes or dislikes, opinions, prejudices, sympathy, or bias, including unconscious biases, influence you.  Unconscious biases are stereotypes, attitudes, or preferences that people may consciously reject but may be expressed without conscious awareness, control, or intention.  Like conscious bias, unconscious bias, too, can affect how we evaluate information and make decisions.  You should also not be influenced by any person's race, color, religion, national ancestry, or gender, sexual orientation, profession, occupation, celebrity, economic circumstances, or position in life or in the community.  Do not be afraid to examine any assumptions you or other jurors have made which are not based on the evidence presented at trial.  You will recall that you took an oath promising to do so at the beginning of the case.

You must follow all these instructions and not single out some and ignore others; they are all important.  Please do not read into these instructions or into anything I may have said or done any suggestion as to what verdict you should return – that is a matter entirely up to you.

[Court Notes: 9th Cir. Model Instruction No. 1.4.  The Court has modified the instruction.]

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

## JURY INSTRUCTION NO. [1.6]

### BURDEN OF PROOF – PREPONDERANCE OF THE EVIDENCE

When a party has the burden of proving any claim or affirmative defense by a preponderance of the evidence, it means you must be persuaded by the evidence that the claim or affirmative defense is more probably true than not true.

You should base your decision on all of the evidence, regardless of which party presented it.

[Court Notes: 9th Cir. Model Instruction No. 1.6.]

**JURY INSTRUCTION NO. [1.9]**

**WHAT IS EVIDENCE**

The evidence you are to consider in deciding what the facts are consists of:

    (1) the sworn testimony of any witness;

    (2) the exhibits that are admitted into evidence;

    (3) any facts to which the lawyers have agreed; and

    (4) any facts that I have instructed you to accept as proved.

[Court Notes: 9th Cir. Model Instruction No. 1.9.]

**JURY INSTRUCTION NO. [1.10]**

**WHAT IS NOT EVIDENCE**

In reaching your verdict, you may consider only the testimony and exhibits received into evidence.  Certain things are not evidence, and you may not consider them in deciding what the facts are.  I will list them for you:

    (1) Arguments and statements by lawyers are not evidence.  The lawyers are not witnesses.  What they have said in their opening statements, closing arguments and at other times is intended to help you interpret the evidence, but it is not evidence. If the facts as you remember them differ from the way the lawyers have stated them, your memory of them controls.

    (2) Questions and objections by lawyers are not evidence.  Attorneys have a duty to their clients to object when they believe a question is improper under the rules of evidence.  You should not be influenced by the objection or by the court's ruling on it.

    (3) Testimony that is excluded or stricken, or that you have been instructed to disregard, is not evidence and must not be considered.  In addition some evidence was received only for a limited purpose; when I have instructed you to consider certain evidence only for a limited purpose, you must do so and you may not consider that evidence for any other purpose.

    (4) Anything you may have seen or heard when the court was not in session is not evidence. You are to decide the case solely on the evidence received at the trial.

[Court Notes: 9th Cir. Model Instruction No. 1.10.]

United States District Court
Northern District of California

1

2

**JURY INSTRUCTION NO. [1.12]**

**DIRECT AND CIRCUMSTANTIAL EVIDENCE**

3       Evidence may be direct or circumstantial.  Direct evidence is direct proof of a fact, such as

4   testimony by a witness about what that witness personally saw or heard or did.  Circumstantial

5   evidence is proof of one or more facts from which you could find another fact.  You should

6   consider both kinds of evidence.  The law makes no distinction between the weight to be given to

7   either direct or circumstantial evidence.  It is for you to decide how much weight to give to any

8   evidence.

9

10      [Court Notes: 9th Cir. Model Instruction No. 1.12.]

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

**JURY INSTRUCTION NO. [1.14]**

**[DISPUTED INSTRUCTION NO. 42]**

**CREDIBILITY OF WITNESSES**

In deciding the facts in this case, you may have to decide which testimony to believe and which testimony not to believe. You may believe everything a witness says, or part of it, or none of it.

In considering the testimony of any witness, you may take into account:

(1) the opportunity and ability of the witness to see or hear or know the things testified to;

(2) the witness's memory;

(3) the witness's manner while testifying;

(4) the witness's interest in the outcome of the case, if any;

(5) the witness's bias or prejudice, if any;

(6) whether other evidence contradicted or corroborated the witness's testimony;

(7) the reasonableness of the witness's testimony in light of all the evidence; and

(8) any other factors that bear on believability.

Sometimes a witness may say something that is not consistent with something else he or she said. Sometimes different witnesses will give different versions of what happened. People often forget things or make mistakes in what they remember. Also, two people may see the same event but remember it differently. You may consider these differences, but do not decide that testimony is untrue just because it differs from other testimony.

However, if you decide that a witness has deliberately testified untruthfully about something important, you may choose not to believe anything that witness said. On the other hand, if you think the witness testified untruthfully about some things but told the truth about others, you may accept the part you think is true and ignore the rest.

The weight of the evidence as to a fact does not necessarily depend on the number of witnesses who testify. What is important is how believable the witnesses were, and how much weight you think their testimony deserves.

1      Your evaluation of witness testimony should not be influenced by any prejudice or bias,

2  including unconscious bias.

3

4      [Court Notes: 9th Cir. Model Instruction No. 1.14.  The Court has slightly modified this

5  instruction.

6      Defendants have asked for an additional instruction on the number of witnesses.  *See*

7  Disputed Instruction No. 42.  The Court does not find it necessary in light of the above

8  instruction.]

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

**JURY INSTRUCTION NO. [2.2]**

**STIPULATIONS OF FACT**

The parties have agreed to certain facts (listed below).  You must therefore treat these facts as having been proved.

 xxx.


[Court Notes: 9th Cir. Model Instruction No. 2.2.  The parties have stipulated to this instruction but have not listed any facts.  The Court orders the parties to meet and confer to determine whether they can stipulate to any facts, such as those deemed undisputed in the parties' joint pretrial conference statement.  *See* Docket No. 1636-3 (Jt. PTC St. at 4-6).]

**JURY INSTRUCTION NO. [2.3]**

**JUDICIAL NOTICE**

The court has decided to accept as proved the fact that [state fact].  You must accept this fact as true.

[Court Notes: 9th Cir. Model Instruction No. 2.3.  The parties have stipulated to this instruction but have not provided any facts that may be judicially noticed.]

United States District Court
Northern District of California

**JURY INSTRUCTION NO. [2.14 TO -.15]**

**[DISPUTED INSTRUCTION NO. 49]**

**CHARTS AND SUMMARIES RECEIVED AND NOT RECEIVED IN EVIDENCE**

During trial, certain charts and summaries were shown to you to help explain the contents of books, records, documents, or other evidence in the case.  Some of those charts or summaries came into evidence, while others did not.  Charts and summaries are only as good as the underlying evidence that supports them.  You should, therefore, give them only such weight as you think the underlying evidence deserves.

[Court Notes: 9th Cir. Model Civil Jury Instructions Nos. 2.14 to -.15.  Defendants have condensed the model instructions into a single instruction.  Plaintiffs do not oppose; nor does the Court.]

**JURY INSTRUCTION NO. [2.16]**

**EVIDENCE IN ELECTRONIC FORMAT**

Those exhibits received in evidence that are capable of being displayed electronically will be provided to you in that form, and you will be able to view them in the jury room.  A computer, projector, printer and accessory equipment will be available to you in the jury room.

A court technician will show you how to operate the computer and other equipment; how to locate and view the exhibits on the computer; and how to print the exhibits.  You will also be provided with a paper list of all exhibits received in evidence.  You may request a paper copy of any exhibit received in evidence by sending a note through the [clerk] [bailiff].)  If you need additional equipment or supplies or if you have questions about how to operate the computer or other equipment, you may send a note to the [clerk] [bailiff], signed by your foreperson or by one or more members of the jury.  Do not refer to or discuss any exhibit you were attempting to view.

If a technical problem or question requires hands-on maintenance or instruction, a court technician may enter the jury room with [the clerk] [the bailiff] present for the sole purpose of assuring that the only matter that is discussed is the technical problem.  When the court technician or any nonjuror is in the jury room, the jury shall not deliberate.  No juror may say anything to the court technician or any nonjuror other than to describe the technical problem or to seek information about operation of the equipment.  Do not discuss any exhibit or any aspect of the case.

The sole purpose of providing the computer in the jury room is to enable jurors to view the exhibits received in evidence in this case.  You may not use the computer for any other purpose. At my direction, technicians have taken steps to ensure that the computer does not permit access to the Internet or to any "outside" website, database, directory, game, or other material.  Do not attempt to alter the computer to obtain access to such materials.  If you discover that the computer provides or allows access to such materials, you must inform the court immediately and refrain from viewing such materials.  Do not remove the computer or any electronic data [disk] from the jury room, and do not copy any such data.

[Court Notes: 9th Cir. Model Civil Jury Instruction No. 2.16.]

**JURY INSTRUCTION NO. [_____]**

**[DISPUTED INSTRUCTION NO. 53]**

**FEDERAL ANTITRUST LAW, STATE ANTITRUST LAW, AND STATE**

**CONSUMER PROTECTION LAW**

The plaintiffs have brought federal antitrust claims, state law antitrust claims, and/or state law consumer protection claims.

- The plaintiffs that are direct purchasers – *i.e.*, the DPPs, the RPPs, and United to the extent it has been assigned direct purchaser claims – have asserted federal antitrust claims.

- The plaintiffs that are indirect purchasers – *i.e.*, the EPPs, United, and the IHPPs – have asserted state law antitrust claims and state law consumer protection claims.

The direct purchasers' federal antitrust claims are based on the Sherman Act, § 1 which prohibits agreements that unreasonably restrain competition. The purpose of the Sherman Act is to preserve free and unfettered competition in the marketplace. The Sherman Act rests on the central premise that competition produces the best allocation of our economic resources, the lowest prices, the highest quality, and the greatest material progress.

The indirect purchasers' state law antitrust claims and state law consumer protection claims are either modeled after federal antitrust law or are similar to federal antitrust claims. Therefore, I will instruct you on the requirements of federal antitrust law, but those same requirements apply to the state law antitrust claims and the state law consumer protection claims. Please note that there is similarity between federal and state law only with respect to liability – *i.e.*, did a defendant violate the law. There are differences between federal and state law when it comes to damages.


[Court Notes: The parties have submitted competing instructions; the Court has proposed its own version which is closer to Plaintiffs' proposal rather than Defendants'.

Defendants do not object to the language on the purpose of the Sherman Act. This language comes from the ABA Model Jury Instructions in Civil Antitrust Cases A-1. The Ninth

Circuit has specifically noted that the ABA model instructions may be helpful.

Defendants do object to Plaintiffs' proposed instruction because of the remaining content. Defendants note that it departs from the language of the ABA model instruction.  The ABA model instruction, however, does not contemplate the specific situation before the Court where there are both federal and state claims.  The jury needs to be instructed as to the standards to be applied to the federal and state claims.]

**JURY INSTRUCTION NO. [_____]**

**[DISPUTED INSTRUCTIONS NOS. 54-56, 67-68]**

**FEDERAL ANTITRUST LAW – SHERMAN ACT, § 1**

The plaintiffs challenge the defendants' conduct under § 1 of the Sherman Act.  Section 1 prohibits contracts, combinations, and conspiracies that unreasonably restrain trade.  To establish a violation of Section 1 of the Sherman Act, the plaintiffs must prove the following:

> (1) the existence of a contract, combination, or conspiracy between the defendants that unreasonably restrained trade; and
>
> (2) that the restraint caused the plaintiffs to suffer an injury to their business or property.

Element (1) asks you to determine whether the defendants engaged in **anticompetitive conduct**.  You will determine whether there was an unreasonable restraint on trade using a standard called "the rule of reason."

Element (2) asks you to determine whether any anticompetitive conduct caused injury or harm to the plaintiffs.  This is sometimes referred to as "**antitrust injury**."

[Court Notes: 15 U.S.C. § 1 ("Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is hereby declared to be illegal.").

The Court is inclined to give a modified version of ABA Model Jury Instruction in Civil Antitrust Cases B-2.  The Court has not included one of the elements in the model instruction ("(3) that the restraint affects interstate or foreign commerce") because it does not appear to be in dispute in this case.  Therefore, the element is unnecessary.  Given that this case is complex, additional unnecessary information may only confuse the jury.

The Court has added the last two paragraphs because it will likely be helpful for the jury to separate the concepts of anticompetitive conduct and antitrust injury.  *See ZF Meritor, LLC v. Eaton Corp.*, 696 F.3d 254, 269 n.9 (3d Cir. 2012) (noting that "[s]ections 1 and 2 of the Sherman Act . . . each include an anticompetitive conduct element, although each statute articulates that

United States District Court
Northern District of California

element in a slightly different way"; furthermore, "to establish an actionable antitrust violation," a plaintiff must prove not only that the defendant engaged in anticompetitive conduct, but also that the plaintiff suffered antitrust injury); *In re Nexium (Esomeprazole) Antitrust Litig.*, 842 F.3d 34, 60 (1st Cir. 2016) (noting that Question 2 in the special verdict form asked the jury if the patent settlement agreement included a large and unjustified payment, Question 3 asked if the settlement was unreasonably competitive, and Question 4 asked whether the defendants might have agreed that the generic manufacturer could launch a generic product earlier had it not been for the unreasonably anticompetitive settlement; stating that Questions 2 and 3 were driven to evaluating whether "some antitrust violation resulted from the . . . settlement" while "Question 4 inquires whether these private plaintiffs have suffered an 'injury of the type the antitrust laws were intended to prevent'").

The Court declines to give an instruction on the Clayton Act (Disputed Instruction No. 56) because it is unnecessary and more likely to confuse the jury.

The Court also declines to give Disputed Instruction No. 68 as it is overly one-sided.]

**JURY INSTRUCTION NO. [_____]**

**[DISPUTED INSTRUCTIONS NOS. 57, 70, 90-91]**

**FEDERAL ANTITRUST LAW – SHERMAN ACT, § 1 –**

**ELEMENT (1): ANTICOMPETITIVE CONDUCT –**

**RULE OF REASON**

The rule of reason has a three-step, burden-shifting framework.

**First**, the plaintiffs have the initial burden of showing that the defendants' conduct produced significant anticompetitive effects within a relevant market.

**Second,** if the plaintiffs meet that burden, the defendants must then come forward with evidence that their conduct had procompetitive effects.

**Third**, if the defendants make that showing, then the burden shifts back to the plaintiffs to show that any procompetitive benefits could have been reasonably achieved in a substantially less restrictive manner. At the third step, if the plaintiffs prove that the procompetitive benefits could have been reasonably achieved in a substantially less restrictive manner, then those procompetitive benefits cannot be used to justify the defendants' conduct.

If you find that the challenged conduct was reasonably necessary to achieve the procompetitive benefits, then you must balance those procompetitive benefits against the competitive harm resulting from the same conduct. If the competitive harm substantially outweighed the procompetitive benefits, then the challenged conduct was unreasonable. If the competitive harm did not substantially outweigh the procompetitive benefits, then the challenged conduct was reasonable. The plaintiffs bear the burden of proving that the anticompetitive effect of the conduct substantially outweighed its procompetitive benefits.

[Court Notes: *Ohio v. Am. Express Co.*, 138 S. Ct. 2274, 2284 (2018); *In re NCAA Ath. Grant-In-Aid Cap Antitrust Litig.*, 958 F.3d 1239, 1256 (9th Cir. 2020); ABA Model Jury Instructions in Civil Antitrust Cases C-8 to -9 (modified).

The Court has several comments on this instruction.

First, this instruction on the rule of reason should come before any discussion of market

power.  Market power is ultimately part of the application of the rule of reason.

Second, for the first step of the rule of reason, the Court agrees with Defendants that Plaintiffs must show that there are anticompetitive effects *in a relevant market*.  Plaintiffs argue that they do not have to define a relevant market.  *See* Pls.' Br. at 4 (citing *PLS.com, LLC v. Nat'l Ass'n of Realtors*, 32 F.4th 824, 838 (9th Cir. 2022) ("A plaintiff is not required to define a particular market for a *per se* claim, nor is it required to do so for a rule of reason claim based on evidence of the actual anticompetitive impact of the challenged practice.")).  But the Court does not read *PLS.com* as rejecting prior Supreme Court and Ninth Circuit precedent.  The Court has previously interpreted that precedent as holding that

> a "full-blown market analysis" is not necessary where a plaintiff relies on direct evidence of anticompetitive effects, as opposed to indirect evidence of such.  *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1413 (9th Cir. 1991) (noting that "[a] lesser analysis may show that the restraint has actually produced significant anti-competitive effects, such as a reduction in output[;] [i]f the plaintiff can make a showing of anti-competitive effects, a formal market analysis becomes unnecessary").  In *FTC v. Indiana Federation of Dentists*, 476 U.S. 447 (1986)), the Supreme Court explained that "the purpose of the inquiries into market definition and market power is to determine whether an arrangement has the potential for genuine adverse effects on competition"; therefore, "'proof of actual detrimental effects [on competition], such as a reduction of output, *can obviate the need for an inquiry into market power*, which is but a 'surrogate for detrimental effects.'"  *Id.* at 460-61 (emphasis added; "conclud[ing] that the finding of actual, sustained adverse effects on competition in those areas where IFD dentists predominated, viewed in light of the reality that markets for dental services tend to be relatively localized, is legally sufficient to support a finding that the challenged restraint was unreasonable even in the absence of elaborate market analysis").  But, as Defendants point out, a "lesser" market analysis is not the same thing as no market analysis (which is what Plaintiffs seem to suggest).  *See* Reply at 7.  As the court explained in *Republic Tobacco Co. v. North Atlantic Trading Co.*, 381 F.3d 717 (7th Cir. 2004), *Indiana Federation* does not "allow[] an antitrust plaintiff to dispense entirely with market definition"; rather, it simply reflects that, "if a plaintiff can show the rough contours of a relevant market, and show that the defendant commands a substantial share of the market, then direct evidence of anticompetitive effects can establish the defendant's market power – in lieu of the usual showing of a precisely defined relevant market and a monopoly market share."  *Id.* at 737; *cf. Am. Express*, 138 S. Ct. at 2284-85 (noting that direct evidence of anticompetitive effects includes "reduced output, increased prices or decreased quality *in the relevant market*"; also stating that "courts usually cannot apply the rule of reason without an accurate definition of the relevant

market" because, without such, "'there is no way to measure [the defendant's] ability to lessen or destroy competition") (emphasis added).

*Intel Corp. v. Fortress Inv. Grp. LLC*, No. 19-cv-07651-EMC, 2020 U.S. Dist. LEXIS 158831, at *23-25.  (N.D. Cal. July 7, 2020); *cf.* ABA Model Jury Instructions in Civil Antitrust Cases A-104 n.1 ("These instructions [on a Sherman Act, § 2 claim] require plaintiff to establish monopoly power within the context of a defined market.  However, some courts have stated that the requirement of a *clearly defined* relevant market may not apply where monopoly power is proven through direct evidence, and where applicable the instructions may be modified accordingly.") (emphasis added).]

**JURY INSTRUCTION NO. [_____]**

**[DISPUTED INSTRUCTIONS NOS. 61, 66]**

**FEDERAL ANTITRUST LAW – SHERMAN ACT, § 1 –**

**ELEMENT (1): ANTICOMPETITIVE CONDUCT –**

**RULE OF REASON –**

**FIRST STEP – RELEVANT MARKET**

As I noted, at the first step of the rule of reason, the plaintiffs have the initial burden of showing that the defendants' conduct produced significant anticompetitive effects within a relevant market.

To apply the rule of reason, you must have some understanding of what the relevant market is so that you may decide whether the challenged conduct did or did not harm competition.

There are two aspects to a relevant market. The first aspect is known as the relevant product market. The second aspect is known as the relevant geographic market. It is the plaintiffs' burden to prove the existence of a relevant market.

In this case, there is no dispute in this case about the relevant geographic market, and you will not need to decide that issue.

As for product market, the basic idea of a relevant product market is that the products within it are reasonable substitutes for each other from the buyer's point of view; that is, the products compete with each other. In other words, the relevant product market includes the products that a consumer believes are reasonably interchangeable or reasonable substitutes for each other. This is a practical test with reference to the actual behavior of buyers and marketing efforts of sellers. Products need not be identical or precisely interchangeable as long as they are reasonable substitutes. Thus, for example, if consumers seeking to cover leftover food for storage considered certain types of flexible wrapping material – such as aluminum foil, cellophane, or even plastic containers – to be reasonable alternatives, then all those products may be in the same relevant product market.

To determine whether products are reasonable substitutes for each other, you must consider whether a small but significant and non-transitory increase in the price of one product

69

would result in enough customers switching from that product to another product such that the price increase would not be profitable.  In other words, will customers accept the price increase or will so many switch to alternative products that the price increase will be withdrawn?  Generally speaking, a small but significant and non-transitory increase in price is approximately a 5 percent increase in price not due to cost factors but you may conclude in this case that some other percentage is more applicable to the product at issue.  If you find that customers would switch and that the price increase would not be profitable, then you must conclude that the products are in the product market.  If, on the other hand, you find that customers would not switch, then you must conclude that the products are not in the product market.

In evaluating whether various products are reasonably interchangeable or reasonable substitutes for each other under the price increase test I have just given you, you may also consider:

- consumers' views on whether the products are interchangeable;
- the relationship between the price of one product and sales of another;
- the presence or absence of specialized vendors;
- the perceptions of either industry or the public as to whether the products are in separate markets;
- the views of plaintiff and defendant regarding who their respective competitors are; and
- the existence or absence of different customer groups or distribution channels.

In this case, plaintiff contends that the relevant product market is [state plaintiff's contention].  By contrast, defendant contends that plaintiff has failed to allege the proper relevant product market.  Defendant contends that [state defendant's contention, if any, about the scope of the relevant product market and/or plaintiff's evidence].  If you find that plaintiff has proven a relevant product market, then you should continue to evaluate the remainder of plaintiff's claim. However, if you find that plaintiff has failed to prove such a market, then you must find in defendant's favor on this claim.

United States District Court
Northern District of California

[Court Notes: ABA Model Jury Instructions in Civil Antitrust Cases C-5 (modified) (noting that "[t]here are two aspects to a relevant market"); ABA Model Jury Instructions in Civil Antitrust Cases A-108 (modified); *Ohio v. Am. Express Co.*, 138 S. Ct. 2274, 228585 (2018) (stating that "courts usually cannot apply the rule of reason without an accurate definition of the relevant market" because, without such, "'there is no way to measure [the defendant's] ability to lessen or destroy competition"); *Hicks v. PGA Tour, Inc.*, 897 F.3d 1109, 1120 (9th Cir. 2018) (stating that "[e]conomic substitutes have a reasonable interchangeability of use or sufficient cross-elasticity of demand with the relevant product[;] [i]ncluding economic substitutes ensures that the relevant product market encompasses the group or groups of sellers or producers who have actual or potential ability to deprive each other of significant levels of business"); *Eastman Kodak Co. v. Image Tech. Servs.*, 504 U.S. 451, 469, 112 S. Ct. 2072, 119 L. Ed. 2d 265 (1992) (indicating that cross-elasticity of demand refers to "the extent to which consumers will change their consumption of one product in response to a price change in another"); *Brown Shoe Co. v. United States*, 370 U.S. 294, 325 (1962) (stating that "[t]he boundaries of . . . a submarket may be determined by examining such practical indicia as industry or public recognition of the submarket as a separate economic entity, the product's peculiar characteristics and uses, unique production facilities, distinct customers, distinct prices, sensitivity to price changes, and specialized vendors").]

**JURY INSTRUCTION NO. [_____]**

**[DISPUTED INSTRUCTIONS NOS. 58-59, 69, 71, 79]**

**FEDERAL ANTITRUST LAW – SHERMAN ACT, § 1 –**

**ELEMENT (1): ANTICOMPETITIVE CONDUCT –**

**RULE OF REASON –**

**FIRST STEP – SIGNIFICANT ANTICOMPETITIVE EFFECTS**

If you find that the plaintiffs have proven the existence of a relevant market, then you must determine whether the plaintiffs also have proven that the challenged conduct produced significant anticompetitive effects within that market.  According to the plaintiffs, the defendants' conduct produced significant anticompetitive effects when Gilead made to Teva what is sometimes called a "reverse payment" since it is a payment from the patent holder to the alleged infringer, the reverse of the more typical settlement where the infringer makes a payment to the patent holder.

For a reverse payment to have an anti-competitive effect, the plaintiffs have the burden of proving the following:

(1) Gilead had market power in the relevant market;

(2) The patent settlement agreement between Gilead and Teva included a payment from Gilead to Teva so that Teva would delay its entry into the market and Gilead could thereby avoid the risk of generic competition from Teva.

[Court Notes: *FTC v. Actavis, Inc.*, 570 U.S. 136 (2013) (stating that "a reverse payment, where large and unjustified, can bring with it the risk of significant anticompetitive effects; one who makes such a payment may be unable to explain and to justify it; such a firm or individual may well possess market power derived from the patent; a court, by examining the size of the payment, may well be able to assess its likely anticompetitive effects along with its potential justifications without litigating the validity of the patent; and parties may well find ways to settle patent disputes without the use of reverse payments").

The Court has decided to incorporate market power into the instruction on reverse payments instead of having it be a "freestanding" requirement.  This is along the lines of Disputed

72

United States District Court
Northern District of California

1 Instruction No. 58 (offered by Plaintiffs).  Both parties agree that Plaintiffs must prove market

2 power.

3      The Court rejects Defendants' position that a large and unjustified payment is a *threshold*

4 *showing* that Plaintiffs must make *before* the rule of reason is applied.  Although there is some

5 authority to support Defendants' position, the Court finds the authority cited by Plaintiffs more

6 convincing – *i.e.*, whether a payment is large and unjustified is part of the rule-of-reason analysis

7 (specifically, the first step).  If a payment is large and unjustified, then that indicates

8 anticompetitive effects (*i.e.*, the inquiry at the first step).  *See, e.g.*, *King Drug Co. of Florence v.*

9 *Cephalon, Inc.*, 88 F. Supp. 3d 402, 413-15 (E.D. Pa. 2015).

10      The Court rejects Plaintiffs' suggestion that they need not prove that the payment was

11 made so that Gilead would delay entry into the market (Disputed Instruction No. 79).  It is true

12 that a large and unjustified payment allows a jury to *infer* that the payment was made for purposes

13 of delaying Gilead's entry into the market, but that simply underscores that Plaintiffs need to make

14 some kind of showing that the payment was made so that Gilead would delay entry into the.

15 market.

16      The Court is not inclined to give another claim overview as suggested by the parties

17 (Disputed Instruction Nos. 69, 71).]

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**JURY INSTRUCTION NO. [_____]**

**[DISPUTED INSTRUCTIONS NOS. 59-60, 62-66]**

**FEDERAL ANTITRUST LAW – SHERMAN ACT, § 1 –**

**ELEMENT (1): ANTICOMPETITIVE CONDUCT –**

**RULE OF REASON –**

**FIRST STEP – SIGNIFICANT ANTICOMPETITIVE EFFECTS – MARKET**

**POWER**

Market power is the ability to profitably raise prices, for a sustained period of time, above those that would be charged in a competitive market. A firm that possesses market power generally can charge higher prices for the same goods or services than a firm in the same market that does not possess market power. The ability to charge higher prices for better products or services, however, is in itself not market power.

Market power may be demonstrated through either direct evidence or indirect evidence.

There is direct evidence of market power where there is evidence that a firm has charged supracompetitive prices for a significant period of time. A supracompetitive price is a price above the price that would be charged in a competitive market. If a firm attempted to maintain prices above competitive levels, but lost so much business to other competitors that the price increase was unprofitable and had to be withdrawn, then the firm did not have market power. For example, if a firm attempted to maintain prices above competitive levels, but new competitors entered the relevant market or existing competitors expanded their sales and took so much business that the price increase became unprofitable and had to be withdrawn, then the firm did not have market power. On the other hand, if the firm is able to keep prices above competitive levels for a significant period of time without losing business to competitors, it has market power.

There is indirect evidence of market power where there is evidence that a firm owns a dominant share of the relevant market, there are significant barriers to entry into that market, and existing competitors lack the capacity to increase their output in the short run.

[Court Notes: ABA Model Civil Jury Instructions in Civil Antitrust Cases C-5, A-121, A-

74

115 (modified); *Aya Healthcare Servs. v. AMN Healthcare, Inc.*, 9 F.4th 1102, 1112 (9th Cir. 2021) (defining market power); *Rebel Oil Co. v. Atl. Richfield Co.*, 51 F.3d 1421, 1434 (9th Cir. 1995) (discussing direct and indirect evidence of market power).

The Court has several comments on this instruction.

First, Plaintiffs object to inclusion of language that charging higher prices for better products is not market power. They underscore that brand products are not better than generic products; rather, the two are identical. *See* Prop. Jury Instructions at 131. That argument, however, may be made to the jury.

Second, the number of instructions on market power and the level of detail on market power is unnecessary and confusing. It also tends to be overly one-sided. The Court has truncated the market power instructions.

Third, the Court is not inclined to instruct that a sufficiently large payment may be evidence that Gilead had market power (Disputed Instruction No. 65). Plaintiffs, however, are not barred from arguing such to the jury. *See FTC v. Actavis, Icn.*, 570 U.S. 136, 157 (2013) (stating that "the 'size of the payment from a branded drug manufacturer to a prospective generic is itself a strong indicator of power' – namely, the power to charge prices higher than the competitive level").]

**JURY INSTRUCTION NO. [_____]**

**[DISPUTED INSTRUCTION NOS. 72-77, 84-89]**

**FEDERAL ANTITRUST LAW – SHERMAN ACT, § 1 –**

**ELEMENT (1): ANTICOMPETITIVE CONDUCT –**

**RULE OF REASON – FIRST STEP –**

**SIGNIFICANT ANTICOMPETITIVE EFFECTS – PAYMENT**

It is anticompetitive for a brand manufacturer and generic manufacturer to settle a patent infringement dispute by having the brand manufacturer pay the generic manufacturer to delay entry into the market, thereby allowing the brand manufacturer to avoid the risk of generic competition.

If the brand manufacturer's payment to the generic manufacturer is large and unjustified, then you may infer that the brand and generic manufacturers agreed that the brand manufacturer would pay the generic manufacturer to delay the generic manufacturer's entry into the market and thereby avoid the risk of generic competition.


[Court Notes: *FTC v. Actavis, Inc.*, 570 U.S. 136, 158 (2013) ("An unexplained large reverse payment itself would normally suggest that the patentee has serious doubts about the patent's survival.  And that fact, in turn, suggests that the payment's objective is to maintain supracompetitive prices to be shared among the patentee and the challenger rather than face what might have been a competitive market – the very anticompetitive consequence that underlies the claim of antitrust unlawfulness.  The owner of a particularly valuable patent might contend, of course, that even a small risk of invalidity justifies a large payment.  But, be that as it may, the payment (if otherwise unexplained) likely seeks to prevent the risk of competition. And, as we have said, that consequence constitutes the relevant anticompetitive harm.").

The Court is not inclined to give an instruction detailing what can and cannot be a payment (Disputed Instruction Nos. 72, 77).  That issue is hotly contested.  That being said, the Court does not expect Defendants to make an argument that a payment must be in cash only.  The Court also does not expect Defendants to argue that there must be a profit sacrifice by Gilead, as it has

United States District Court
Northern District of California

1    already rejected that argument.

2        The Court is not inclined to give separate instructions on "large" and "unexplained"

3    because the concepts in this situation are interrelated.  The Court is also not inclined to give

4    detailed instructions on what constitutes "large" or "unjustified" (and Plaintiffs' suggested

5    instructions are overly one-sided).  The Court, however, does expects its in limine rulings to be

6    followed.]

1

~~JURY INSTRUCTION NO. [____]~~

2

~~[DISPUTED INSTRUCTION NOS. 80-83]~~

3

~~FEDERAL ANTITRUST LAW – SHERMAN ACT, § 1 –~~

4

~~ELEMENT (1): ANTICOMPETITIVE CONDUCT –~~

5

~~RULE OF REASON – SECOND STEP~~

6

7        [Court Notes: The Court is not inclined to give instructions as to what can or cannot

8   constitute procompetitive benefits at step two of the rule-of-reason inquiry.]

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**JURY INSTRUCTION NO. [_____]**

**[DISPUTED INSTRUCTION NOS. 78, 93-97]**

**FEDERAL ANTITRUST LAW – SHERMAN ACT, § 1 –**

**ELEMENT (2): ANTITRUST INJURY**

If the plaintiffs prove that the defendants engaged in anticompetitive conduct (the first element of a Sherman Act, § 1 claim), then you must consider the issue of antitrust injury – *i.e.*, whether any anticompetitive conduct caused injury or harm to the plaintiffs.  You may have heard the parties refer to this issue as one of "causation."  Only if you find that the defendants' anticompetitive conduct caused injury to the plaintiffs do you then consider the amount of damages that should be awarded to the plaintiffs.

The plaintiffs are entitled to recover damages for an injury to their business or property if they can establish three elements of injury and causation:

> (1) the plaintiffs were in fact injured as a result of the defendants' alleged violation of the antitrust laws;
>
> (2) the defendants' alleged illegal conduct was a material cause of the plaintiffs' injury; and
>
> (3) the plaintiffs' injury is an injury of the type that the antitrust laws were intended to prevent.

The first element is sometimes referred to as "injury in fact" or "fact of damage."  For the plaintiffs to establish that they are entitled to recover damages, they must prove that they were injured as a result of the defendants' alleged violation of the antitrust laws.  Proving the fact of damage does not require the plaintiffs to prove the dollar value of their injury.  It requires only that the plaintiffs prove that they were in fact injured by the defendants' alleged antitrust violation.

In considering whether the plaintiffs were injured, you are to consider what would have happened in the "but-for world."  In other words, in a world free of the anticompetitive conduct, what would have happened?  According to the plaintiffs, in a world free of the anticompetitive conduct, generic competition would have taken place earlier than it actually did in the real world, and therefore, the plaintiffs overpaid for the HIV drugs in the real world because of the delayed

United States District Court
Northern District of California

entry of generics into the market.  According to the defendants, in a world free of the anticompetitive conduct, generic entry would not have occurred earlier than it actually did in the real world, and thus there was no antitrust injury.

Second, the plaintiffs must offer evidence that establishes by a preponderance of the evidence that the defendants alleged illegal conduct was a material cause of the plaintiffs' injury. This means that the plaintiffs must have proved that some damage occurred to them as a result of the defendants' alleged antitrust violation, and not some other cause.  The plaintiffs are not required to prove that the defendants' alleged antitrust violation was the sole cause of their injury; nor need the plaintiffs eliminate all other possible causes of injury.  It is enough if the plaintiffs have proved that the alleged antitrust violation was a material cause of their injury.

Finally, the plaintiffs must establish that their injury is the type of injury that the antitrust laws were intended to prevent.  This is sometimes referred to as "antitrust injury."  If the plaintiffs' injuries were caused by a reduction in competition, acts that would lead to a reduction in competition, or acts that would otherwise harm consumers, then the plaintiffs' injuries are antitrust injuries.  On the other hand, if the plaintiffs' injuries were caused by heightened competition, the competitive process itself, or by acts that would benefit consumers, then the plaintiffs' injuries are not antitrust injuries and the plaintiffs may not recover damages for those injuries under the antitrust laws.

In summary, if the plaintiffs can establish that they were in fact injured by the defendants' conduct, that the defendants' conduct was a material cause of the plaintiffs' injury, and that the defendants' injury was the type that the antitrust laws were intended to prevent, then the plaintiffs are entitled to recover damages for the injury to their business or property.

[Court Notes: ABA Model Jury Instructions in Civil Antitrust Cases A-300 (modified). The Court has primarily followed the ABA model jury instruction but has added some language regarding causation and the "but-for world."  The Court has included some language regarding the but-for world but declines to give the detailed instructions suggested by Plaintiffs and Defendants (Disputed Instruction Nos. 95-97), *e.g.*, because they are overly one-sided or because they do not

really fit the circumstances of this case.

The Court finds that Disputed Instruction No. 78 is not properly related to the rule of reason but rather is more related to the issue of antitrust injury.

The Court declines to give Disputed Instruction No. 94 because it is confusing – the standard of proof is preponderance of the evidence.]

1

2

3

4

5

~~**JURY INSTRUCTION NO. [＿＿]**~~

~~**[DISPUTED INSTRUCTION NO. 98]**~~

~~**FEDERAL ANTITRUST LAW – SHERMAN ACT, § 1 –**~~

~~**ELEMENT (2): ANTITRUST INJURY –**~~

~~**ABSENCE OF INFRINGEMENT**~~

6   ~~There cannot be causation when the allegedly suppressed competition would not have been~~

7   ~~lawful.  A generic drug manufacturer cannot lawfully sell a generic drug if the sale of the generic~~

8   ~~drug infringes a valid patent.  Thus, the Plaintiffs must prove, by a preponderance of the evidence,~~

9   ~~that the sale of generic Truvada and Atripla prior to September 30, 2020 would not have infringed~~

10  ~~any valid Gilead patent.  If you find that that the sale of generic Truvada or Atripla prior to~~

11  ~~September 30, 2020 would have infringed a valid Gilead patent, then that patent acted as a legal~~

12  ~~barrier to earlier generic entry, and the patent agreement could not have caused a delay in generic~~

13  ~~entry.~~

14

15  [Court Notes: The Court declines to give this instruction, largely for the reasons argued by

16  Plaintiffs.  That is, Plaintiffs have two theories of causation: (1) Teva would have continued to

17  litigate the patent infringement lawsuit, and it would have prevailed; *or* (2) Gilead and Teva would

18  have continued to discuss settlement, and they would have reached a settlement that (a) did not

19  include an acceleration provision and (b) did include a provision allowing for earlier generic

20  entry.]

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

**JURY INSTRUCTION NO. [5.1]**

**[DISPUTED INSTRUCTIONS NOS. 100-01, 103-04, 109, 112]**

**DAMAGES – PROOF**

If you find that the defendants caused the plaintiffs injury or harm, then you must consider the issue of damages.

It is the duty of the Court to instruct you about the measure of damages. By instructing you on damages, the Court does not mean to suggest for which party your verdict should be rendered.

If you find for the plaintiffs, you must determine the plaintiffs' damages.  The plaintiffs have the burden of proving damages by a preponderance of the evidence.  Damages means the amount of money that will reasonably and fairly compensate the plaintiffs for any injury you find was caused by the defendants.

It is for you to determine what damages, if any, have been proved.

You ae permitted to make just and reasonable estimates in calculating the plaintiffs' damages, including damages based on class claims.  You are not required to calculate damages with mathematical certainty or precision.  However, your award must be based upon evidence and not upon speculation, guesswork or conjecture.


[Court Notes: 9th Cir. Model Civil Jury Instruction No. 5.1 (modified); ABA Model Civil Jury Instructions in Civil Antitrust Cases B-3 (modified).

The Court generally finds the Ninth Circuit model instruction adequate instead of the more detailed ABA model instruction(s).]

**JURY INSTRUCTION NO. [5.2]**

**[DISPUTED INSTRUCTIONS NOS. 102, 105, 107]**

**DAMAGES – MEASURE OF DAMAGES**

As I noted, the plaintiffs assert that they were injured because, in a world free of the anticompetitive conduct (the "but-for world"), generic competition would have taken place earlier than it did in the real world, and therefore, the plaintiffs overpaid for the HIV drugs in the real world.  In other words, the plaintiffs claim that they were overcharged.  This claim is made by both the plaintiffs who have class claims and the plaintiffs who have individual claims.

An overcharge is measured by the difference between (1) the price a plaintiff actually paid for the HIV drug in the real world and (2) the price the plaintiff would have paid if the antitrust violation had not occurred (*i.e.*, in the but-for world).

[Court Notes: 9th Cir. Model Civil Jury Instruction No. 5.2 (modified).

The Court is not inclined to give an instruction along the lines of Disputed Instruction No. 107 which describes in further detail Plaintiffs' overcharge claim.

The Court has concern as whether there should be an instruction on statute of limitations and damages.  Similarly, the Court has concern as to whether the verdict form should take into account the statute of limitations, particularly for the indirect purchasers who have claimed based on the laws of various states.]

**JURY INSTRUCTION NO. [_____]**

**[DISPUTED INSTRUCTION NO. 106]**

**DAMAGES – PASS-ON OF OVERCHARGE**

You have heard testimony about the ability of a purchaser to pass on all or some of an overcharge to another entity or person down the chain of distribution.

For the plaintiffs who have direct purchaser claims, the ability of a direct purchaser to pass on an overcharge to another entity/person down the chain of distribution is irrelevant. These plaintiffs have claims under federal antitrust law, and, under federal antitrust law, a direct purchaser is entitled to the full amount of an overcharge regardless of any "passing on."

For the plaintiffs who have indirect purchaser claims, the ability to pass on an overcharge is relevant. These plaintiffs have claims under state antitrust law or state consumer protection law. Under state law, you should consider whether an indirect purchaser was able to pass on all or part of an overcharge in determining what damages should be awarded.

[Court Notes: This issue is the subject of Plaintiffs' MIL No. 6. If the Court gives an instruction on passing on, it will be along the lines of the above.]

1                   ~~JURY INSTRUCTION NO. [\_\_\_\_]~~

2                   ~~[DISPUTED INSTRUCTION NO. 108]~~

3               ~~DAMAGES – JOINT AND SEVERAL LIABILITY~~

4     ~~"[A]ntitrust coconspirators are jointly and severally liable for all damages caused by the[ir]~~

5 ~~conspiracy." This means that each member of a conspiracy that violates antitrust laws is fully~~

6 ~~liable for all overcharges caused by the conspiracy, regardless of the amount of overcharges~~

7 ~~caused by an individual conspirator. Thus, if you award overcharges to any purchaser with respect~~

8 ~~to the reverse payment agreement, you should not concern yourself with how to allocate the~~

9 ~~overcharges to Gilead and Teva.~~

10

11     [Court Notes: Plaintiffs have offered this instruction. The Court does not deem it

12 necessary, and any issue here can essentially be dealt with via the verdict form.]

~~**JURY INSTRUCTION NO. [        ]**~~

~~**[DISPUTED INSTRUCTION NO. 110]**~~

~~**DAMAGES – EXPERT TESTIMONY**~~

~~Certain testimony has been given in this case by experts on the topic of damages.~~

~~As I have explained, an expert is someone who is specially qualified by experience or training and possesses knowledge on matters not common to jurors in general.  In a trial, an expert is permitted to give his or her opinions regarding such matters.  You should consider the testimony of experts like any other testimony.  Any expert testimony should receive such weight and credit as you deem it entitled to, when viewed in connection with all the other facts and circumstances. Its weight and value are questions for you.~~

[Court Notes: Defendants have offered this instruction.  The instruction is unnecessary as the Court is already giving an instruction on experts generally.]

United States District Court
Northern District of California

**JURY INSTRUCTION NO. [____]**

**[DISPUTED INSTRUCTION NO. 111]**

**DAMAGES – MITIGATION OF DAMAGES**

The Defendants have raised an affirmative defense in this case against Plaintiffs' recovery of damages.  Specifically, the Defendants contend that the Plaintiffs failed to mitigate damages.  To mitigate damages means to avoid or reduce damages.  The Plaintiffs have a duty to use reasonable efforts to mitigate damages.

The Defendants have the burden of proving that the Plaintiffs failed to mitigate damages.  To meet this burden, the Defendants must prove by a preponderance of the evidence:

First, that the Plaintiffs failed to use reasonable efforts to mitigate damages; and Second, the amount by which damages would have been mitigated.


[Court Notes: Defendants have offered this instruction.  The Court shall permit this instruction so that Defendants may argue to the jury that there should be set-offs to Plaintiffs' asserted damages (*e.g.*, because Plaintiffs had bargaining power and therefore were able to get rebates or discounts).  This issue has been raised in Plaintiffs' MIL Nos. 5 and 6.]

~~**JURY INSTRUCTION NO. [_____]**~~

~~**[DISPUTED INSTRUCTION NO. 113]**~~

~~**DAMAGES—JURY NOT CONCERNED WITH TREBLE DAMAGES, COSTS, OR ATTORNEYS' FEES**~~

~~If you find for the Plaintiffs in accordance with these instructions, it is your responsibility to determine the actual damages that the Plaintiffs have suffered by reason of the violations of the antitrust laws. Your concern is only with determining actual damages. You are not to concern yourself with the judgment to be entered by the Court in this case.~~

[Court Notes: Defendants have offered this instruction. The Court shall not give the instruction as the issue of treble damages and the like shall not be presented to the jury for purposes of the federal antitrust claim.]

**JURY INSTRUCTION NO. [_____]**

**[DISPUTED INSTRUCTIONS NOS. 114-16]**

**DAMAGES – "FLAGRANT" VIOLATION, "WILLFUL" VIOLATION,**

**"WILLFUL AND WANTON" VIOLATION, OR VIOLATION WITH "ACTUAL**

**MALICE"**

[Court Notes: At this juncture, the Court is not persuaded that, as a practical matter, there is a meaningful difference with respect to these standards.  Indeed, even the parties seem to have divided the standards into two camps only ("flagrant" and "willful").

The Court is also not persuaded by Defendants' suggestion that there is willful behavior only if there is proof that Defendants knew that their conduct violated the law.  Defendants have not cited any clear authority on point.

At this point, however, the Court does not propose an instruction because it is not even clear how this issue will be given to the jury.  *See generally* Docket No. 1659 (Jt. St. at 3) (Defendants raising concerns about state law differences on enhanced damages as well as statute of limitations); Docket No. 1637-10 (Defs.' Tr. B. at 15) (same).]

United States District Court
Northern District of California

**JURY INSTRUCTION NO. [3.1]**

**DUTY TO DELIBERATE**

When you begin your deliberations, elect one member of the jury as your foreperson who will preside over the deliberations and speak for you here in court.

You will then discuss the case with your fellow jurors to reach agreement if you can do so. Your verdict must be unanimous.

Each of you must decide the case for yourself, but you should do so only after you have considered all the evidence, discussed it fully with the other jurors, and listened to the views of your fellow jurors.

Do not be afraid to change your opinion if the discussion persuades you that you should. But do not come to a decision simply because other jurors think it is right.

It is important that you attempt to reach a unanimous verdict but, of course, only if each of you can do so after having made your own conscientious decision. Do not change an honest belief about the weight and effect of the evidence simply to reach a verdict.

Perform these duties fairly and impartially. Do not allow personal likes or dislikes, sympathy, prejudice, fear, public opinion, or biases, including unconscious biases, to influence you. You should also not be influenced by any person's race, color, religion, national ancestry, or gender, sexual orientation, profession, occupation, celebrity, economic circumstances, or position in life or in the community.

Do not be afraid to examine any assumptions you or other jurors have made which are not based on the evidence presented at trial. Please do not take anything I may say or do during the trial as indicating what I think of the evidence or what your verdict should be – that is entirely up to you.

It is your duty as jurors to consult with one another and to deliberate with one another with a view towards reaching an agreement if you can do so. During your deliberations, you should not hesitate to reexamine your own views and change your opinion if you become persuaded that it is wrong.

1

2       [Court Notes: 9th Cir. Model Instruction No. 3.1.  The Court has modified the instruction.]

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

**JURY INSTRUCTION NO. [3.2]**

**CONSIDERATION OF EVIDENCE – CONDUCT OF THE JURY**

Because you must base your verdict only on the evidence received in the case and on these instructions, I remind you that you must not be exposed to any other information about the case or to the issues it involves.  Except for discussing the case with your fellow jurors during your deliberations:

Do not communicate with anyone in any way and do not let anyone else communicate with you in any way about the merits of the case or anything to do with it.  This includes discussing the case in person, in writing, by phone, tablet, computer, or any other means, via email, via text messaging, or any internet chat room, blog, website or application, including but not limited to Facebook, YouTube, Twitter, Instagram, LinkedIn, Snapchat, TikTok, or any other forms of social media.  This applies to communicating with your family members, your employer, the media or press, and the people involved in the trial.  If you are asked or approached in any way about your jury service or anything about this case, you must respond that you have been ordered not to discuss the matter and to report the contact to the court.

Do not read, watch, or listen to any news or media accounts or commentary about the case or anything to do with it, although I have no information that there will be news reports about this case; do not do any research, such as consulting dictionaries, searching the Internet, or using other reference materials; and do not make any investigation or in any other way try to learn about the case on your own.  Do not visit or view any place discussed in this case, and do not use Internet programs or other devices to search for or view any place discussed during the trial.  Also, do not do any research about

93

1    this case, the law, or the people involved – including the parties, the

2    witnesses or the lawyers – until you have been excused as jurors.  If

3    you happen to read or hear anything touching on this case in the

4    media, turn away and report it to me as soon as possible.

5    These rules protect each party's right to have this case decided only on evidence that has

6    been presented here in court.  Witnesses here in court take an oath to tell the truth, and the

7    accuracy of their testimony is tested through the trial process.  If you do any research or

8    investigation outside the courtroom, or gain any information through improper communications,

9    then your verdict may be influenced by inaccurate, incomplete or misleading information that has

10   not been tested by the trial process.  Each of the parties is entitled to a fair trial by an impartial

11   jury, and if you decide the case based on information not presented in court, you will have denied

12   the parties a fair trial.  Remember, you have taken an oath to follow the rules, and it is very

13   important that you follow these rules.

14   A juror who violates these restrictions jeopardizes the fairness of these proceedings, and a

15   mistrial could result that would require the entire trial process to start over.  If any juror is exposed

16   to any outside information, please notify the court immediately.

18   [Court Notes: 9th Cir. Model Instruction No. 3.2.  The parties have stipulated to this

19   instruction.]

**JURY INSTRUCTION NO. [3.3]**

**COMMUNICATION WITH COURT**

If it becomes necessary during your deliberations to communicate with me, you may send a note through the Courtroom Deputy, signed by your presiding juror or by one or more members of the jury.  No member of the jury should ever attempt to communicate with me except by a signed writing; I will communicate with any member of the jury on anything concerning the case only in writing, or here in open court.  If you send out a question, I will consult with the parties before answering it, which may take some time.  You may continue your deliberations while waiting for the answer to any question.  Remember that you are not to tell anyone – including me – how the jury stands, numerically or otherwise, until after you have reached a unanimous verdict or have been discharged.  Do not disclose any vote count in any note to the court.

[Court Notes: 9th Cir. Model Instruction No. 3.3.  The parties have stipulated to this instruction.]

95

**JURY INSTRUCTION NO. [3.5]**

**RETURN OF VERDICT**

A verdict form has been prepared for you.  After you have reached unanimous agreement on a verdict, your presiding juror should complete the verdict form according to your deliberations, sign and date it, and advise the Courtroom Deputy that you are ready to return to the courtroom.

[Court Notes: See 9th Cir. Model Instruction No. 3.5.  The parties have stipulated to this instruction.]

United States District Court
Northern District of California