UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE HIV ANTITRUST LITIGATION. | Case No. 19-cv-02573-EMC<br><br>**ORDER RE BELLWETHERS**<br>Docket No. 1757-1 |

This order addresses the bellwether exhibits identified by the parties. The Court notes that, for a number of the bellwethers identified by Plaintiffs, Defendants have said they are withdrawing their objections. Nevertheless, Plaintiffs have left the bellwethers on the list, asserting that it is not clear if (1) Defendants are conditionally withdrawing their objections and/or if (2) Defendants are also withdrawing their objections to similar categories of documents. On (1), the Court sees no reason why it should not credit Defendants' statement that they are withdrawing their objections. On (2), the Court does not wade into that morass. There will likely be disputes about whether a document is similar in kind to an exhibit that the Court did provide a ruling on. The Court is simply ruling here on the specific bellwethers, and these rulings should give guidance to the parties as to how to proceed.

## I.     PLAINTIFFS' BELLWETHERS

A.     Plaintiffs' Ex. 2000

Defendants withdrew their objections. *See* Docket Nos. 1693, 1757. Thus, the exhibit is admissible.

1   B.   Plaintiffs' Ex. 334

2   Defendants withdrew their objections.  *See* Docket Nos. 1693, 1757.  Thus, the exhibit is

3   admissible.

4   C.   Plaintiffs' Ex. 5150

5   Defendants withdrew their objections.  *See* Docket Nos. 1693, 1757.  Thus, the exhibit is

6   admissible.

7   D.   Plaintiffs' Ex. 5148

8   Defendants withdrew their objections.  *See* Docket Nos. 1693, 1757.  Thus, the exhibit is

9   admissible.

10  E.   Plaintiffs' Ex. 330

11  Defendants withdrew their objections.  *See* Docket No. 1757.  Thus, the exhibit is

12  admissible.

13  F.   Plaintiffs' Ex. 5189

14  Defendants withdrew their objections.  *See* Docket No. 1757.  Thus, the exhibit is

15  admissible.

16  G.   Defendants' Ex. 1254

17  Any dispute regarding the exhibit is moot as Defendants have withdrawn the exhibit from

18  their exhibit list.

19  H.   Plaintiffs' Ex. 1351

20  Defendants withdrew their objections.  *See* Docket No. 1757.  Thus, the exhibit is

21  admissible.

22  I.   Plaintiffs' Ex. 136

23  The 402, 403, and hearsay objections are overruled.  The Court defers ruling on the

24  foundation and authentication objections, although they seem to have little merit.  As the Court

25  noted for the parties at the second final pretrial conference (held on April 10, 2023), meritless

26  foundation and authentication objections will be charged against the objecting party's trial time.

27  J.   Plaintiffs' Ex. 2905

28  Defendants withdrew their objections.  *See* Docket No. 1757.  Thus, the exhibit is

admissible.

K.  Defendants' Ex. 7661 [formerly Ex. 1560]

The Court defers ruling on the exhibit, especially since Ms. Julie is a defense witness who is designated to testify live.

L.  Defendants' Ex. 7419

Plaintiffs describe Exhibit 7419 as a "Reconciliation Manufacturing Document related to generic Atripla, dated September 13, 2019." Docket No. 1757-1 (ECF Page 22). According to Plaintiffs, Defendants intend to rely on this technical document to show "Teva's readiness to enter the market prior to September 30, 2020 [the entry date under the FTC patent settlement agreement]," but the document is irrelevant because it "post-date[s] FDA final approval of Teva's generic products." Docket No. 1757-1 (ECF Page 22). It is not clear that the document is irrelevant just because the document post-dates the FDA's approval. The Court defers ruling on the exhibit as context may matter.

M.  Defendants' Exs. 7452-53, 7777-80, and 7826

These exhibits are documents issued by a third party, IPD Analytics, commenting on the TDF and FTC patents and associated litigation. They contain statements such as the following: "[W]e continue to believe that Gilead has the advantage on protecting Truvada and Atripla from generic competition until September 9, 2021." Ex. 7780.

The Court sustains the 403 objection. Even if Defendants did not need to disclose IPD Analytics as an expert, the bases for the company's conclusions (*e.g.*, that "Gilead has the advantage on protecting Truvada and Atripla from generic competition until September 9, 2021," Ex. 7780), are not apparent from the documents. That also makes the document problematic under Rule 702. The exhibits are not admissible.

N.  Defendants' Ex. 7137

This exhibit is an internal Gilead email (dated 6/4/2010), attached to which is a press release. The press release talks about Gilead's AIDS Drug Assistance Programs (ADAPs) and its co-pay programs.

The Court defers ruling on the exhibit since context may matter. For instance, do

Defendants seek its admission for a non-hearsay purpose? Do they assert a business record exception? Is there hearsay within hearsay? The Court notes that, even if the press release is not admissible, presumably, there is still a Gilead witness who is able to talk about the Gilead's AIDS Drug Assistance Programs and its co-pay programs.

O.  Plaintiffs' Ex. 5285

Exhibit 5285 is basically a custodian-of-record declaration from a third-party drug manufacturer (Amneal).

The Court defers ruling on the exhibit. As the Court noted for the parties at the second final pretrial conference (held on April 10, 2023), meritless foundation and authentication objections will be charged against the objecting party's trial time.

## II.  DEFENDANTS' BELLWETHERS

A.  Plaintiffs' Ex. 337

Exhibit 337 is a chart that seems to have been created for the purposes of this litigation. It provides a timeline of the negotiations between Gilead and Teva, with proposed entry dates.

Plaintiffs may use the chart as a demonstrative, but the chart will not be given to the jury as an exhibit.

B.  Plaintiffs' Ex. 1253

Exhibit 1253 is a brief filed by the Federal Trade Commission back in 2013 in a different antitrust case, *In re Wellbutrin XL Antitrust Litig.* (E.D. Penn.), back in 2013.

The 403 objection is sustained, particularly as the exhibit may lead the jury to ask what the agency's views were on the FTC patent settlement agreement.

C.  Plaintiffs' Ex. 3773

Exhibit 3773 is an article called: "Why some drug prices should be high." It is authored by Dhruv Khullar and Anupam B. Jena. Dr. Jena is one of the defense experts. He is a medical doctor and economist.

The Court defers ruling on the exhibit, as context may matter. For example, will Plaintiffs use the article to impeach Dr. Jena? The article appears to be hearsay unless, *e.g.*, Federal Rule of Evidence 803(18) could apply. And, even then, the article could not physically be given to the

jury. *See* Fed. R. Evid. 803(18) ("A statement contained in a treatise, periodical, or pamphlet if: (A) the statement is called to the attention of an expert witness on cross-examination or relied on by the expert on direct examination; and (B) the publication is established as a reliable authority by the expert's admission or testimony, by another expert's testimony, or by judicial notice. If admitted, the statement may be read into evidence but not received as an exhibit.").

D. <u>Plaintiffs' Ex. 3774</u>

Exhibit 3774 is testimony of a professor (Robert M. Grant, MD, MPH) given in May 2019 in a federal government hearing on "HIV Prevention Drug: Billions in Corporate Profits After Millions in Taxpayer Investments." (The hearing was before the House Committee on Oversight and Reform.)

The Court has serious concerns that the document is hearsay. But even if not hearsay, there are risks under Rule 403 to the extent the jury might imply some kind of governmental imprimatur. The Court defers ruling.

E. <u>Plaintiffs' Ex. 5002</u>

Exhibit 5002 is a Teva internal email exchange, dated 8/7/2013 in which forecasts were made about what Teva could earn on generic Viread (TDF), generic Truvada (TDF/FTC), and generic Atripla (TDF/FTC/EFV) based on certain entry dates, exclusivity, and whether there was an authorized generic.

The Court defers ruling on the exhibit. It orders the parties to further meet and confer to see if they can reach agreement on the exhibit. For example, can Plaintiffs use the document as evidence of the value of exclusivity so long as Plaintiffs do not introduce evidence about the surrounding context for the valuation – *i.e.*, that Teva did the valuation after getting the Federal Trade Commission's response to the TDF patent settlement agreement? Also, should any parts of the email be redacted?

F. <u>Plaintiffs' Ex. 5023</u>

Exhibit 5023 is an internal Teva email, dated 12/10/2012, attached to which is a slide presentation by Richard Egosi (a Teva employee) titled: "US Gx Value Creation: First to Market – The Role of PIVs." The presentation talks about patent challenges, statutory exclusivity, etc.

1    The Court defers ruling on the exhibit since context may matter. Apparently, Mr. Egosi is
2    now deceased, so Plaintiffs cannot question Mr. Egosi about the document. However, the
3    document could be a Teva business record, and Plaintiffs might be able to ask another Teva
4    employee questions about statements made in the presentation.

G.    Plaintiffs' Ex. 5109

Exhibit 5109 is a Teva internal email exchange (including Teva outside counsel) dated 7/30/2013. One email notes, *inter alia*, that Gilead had received a letter from the Federal Trade Commission, (apparently expressly concern about the no authorized generic provision in the TDF patent settlement agreement) and that Gilead was inclined either to drop the authorized generic provision or void the agreement and go to trial. Another email notes: "I think our view is that we believe the exclusivity is material, but are willing to dismiss removing it, in the context of a broader discussion with them."

The Court excludes the exhibit, consistent with its rulings on Gilead/Teva's interaction with the Federal Trade Commission on the patent settlement agreements.

H.    Plaintiffs' Ex. 5113

Exhibit 5113 is an internal Teva email concerning settlement of Canadian litigation between Gilead and Teva.

Relevance is not entirely clear. The Court defers ruling since context will matter here.

I.    Plaintiffs' Ex. 5818

Exhibit 5818 is a figure/chart that totals the damages claimed for (1) the reverse payment claims and (2) the NGR claims (assuming different dates of generic entry). Apparently, the figure comes from the expert report of one of Plaintiffs' experts (Dr. Berndt).

Plaintiffs may use the exhibit as a demonstrative only – and only once information about the NGR claims is redacted. The exhibit is not admissible as evidence unless Plaintiffs can demonstrate otherwise.

J.    Plaintiffs' Ex. 6289

Exhibit 6289 is part of a privilege log for this case. Plaintiffs have argued that the document should not have been withheld as privileged.

6

This document relates to a discovery dispute that the Court has referred to Judge Beeler. The privilege log shall not be admitted as evidence. It will be up to Judge Beeler to decide whether the document is privileged or not.

K.   Defendants' Ex. 7452

This exhibit has already been addressed above. It is one of the documents issued by the third-party IPD Analytics.

**IT IS SO ORDERED**.

Dated: April 13, 2023

_____
EDWARD M. CHEN
United States District Judge