UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE HIV ANTITRUST LITIGATION | Case No. 19-cv-02573-EMC<br><br>**ORDER RE IHPPS' CLAIMS UNDER STATE CONSUMER PROTECTION LAWS**<br><br>Docket Nos. 1659, 1724, 1725 |

The Court previously held in its order on the in limine motions that California law would not apply across the board to the IHPPs' claims. *See* Docket No. 1716 (Order at 6-7). Anticipating that ruling, Defendants argued that, if the laws of multiple states apply, then some of the IHPPs' consumer protection claims should be dismissed. According to Defendants, "some state consumer protection laws . . . do not apply where there is only anticompetitive conduct at issue," Docket No. 1716 (Order at 7), as opposed to, *e.g.*, deceptive conduct.[1] The Court asked the parties to provide supplemental briefing on the laws of the states identified by Defendants. *See* Docket No. 1716 (Order at 7). Having received that briefing, the Court rules as follows. The IHPPs' consumer protection claims based on the laws of the following states are **DISMISSED**: Colorado, Indiana, Pennsylvania, Virginia, and Wyoming. The IHPPs' consumer protection claims based on the laws of Louisiana and Utah are allowed to proceed.

---

[1] In its class certification order, the Court addressed a similar argument that Defendants made with respect to consumer protection claims asserted by the EPPs. *See* Docket No. 1388 (Order at 26-32). The IHPPs do not contest Defendants' assertion that the IHPPs do not have any consumer protection claims based on deceptive conduct, now that the TAF claim has been dismissed.

# I.     DISCUSSION

### A.     Indiana and Wyoming

The IHPPs concede that the consumer protection laws of Indiana and Wyoming do not provide a cause of action for anticompetitive conduct. Accordingly, these consumer protections claims are dismissed.

### B.     Colorado

To state a private cause of action under the Colorado Consumer Protection Act ("CCPA"), a plaintiff must show: (1) that the defendant engaged in an unfair or deceptive trade practice; (2) that the challenged practice occurred in the course of the defendant's business ; (3) that the challenged practice significantly impacts the public as actual or potential consumers of the defendant's goods; (4) that the plaintiff suffered injury in fact to a legally protected interest; and (5) that the challenged practice caused the plaintiff's injury. *Rhino Linings USA, Inc. v. Rocky Mountain Rhino Lining, Inc.*, 62 P.3d 142, 146–47 (Colo. 2003).

The relevant statute is entitled the Colorado Consumer Protection Act. Colo. Rev. Stat. § 6–1–105 addresses what constitutes "unfair or deceptive trade practices." Specifically, § 6–1–105(1) lists various conduct that is prohibited by the CCPA. The majority of the conduct explicitly concerns deceptive conduct. Furthermore, anticompetitive conduct is not expressly included in the list. Nevertheless, Plaintiffs assert that anticompetitive conduct is covered by the CCPA based on § 6–1–105(1)(rrr) which proscribes "knowingly or recklessly engag[ing] in any unfair, unconscionable, deceptive, deliberately misleading, false, or fraudulent act or practice." C.R.S.A. § 6–1–105(1)(rrr). Plaintiffs add that the list in §6–1–105(1) is illustrative, not exhaustive, as noted by several courts. *See, e.g.*, *Showpiece Homes Corp. v. Assurance Co. of Am.*, 38 P.3d 47 (Colo. 2001), *as modified on denial of reh'g* (Jan. 11, 2002) ("we must keep in mind the liberal construction we have given the CCPA in prior cases"); *Shekarchian v. Maxx Auto Recovery, Inc.*, 2019 COA 60, 487 P.3d 1026, 1033 ("the statutory list is not exhaustive").

The Court is not persuaded by Plaintiffs' arguments.

First, Defendants' position, and not Plaintiffs', is supported by the structure of the statute. The CCPA contains more than seventy provisions outlining proscribed conduct, and yet none

1    mentions anticompetitive conduct.  Nearly all are examples of deceptive practices.  Indeed,

2    subsection (rrr) is the only provision to even reference "unfair" conduct, and that provision itself is

3    an elucidation of what constitutes a "deceptive trade practice."  C.R.S.A. § 6–1–105(1).

4    Furthermore, § 6–1–105(3) provides that "[t]he *deceptive trade practices* listed in this section are

5    in addition to and do not limit the types of *unfair trade practices* actionable at common law or

6    under other statutes of this state."  C.R.S.A. § 6–1–105(3) (emphasis added).  The implication of

7    this language is that the foregoing provisions proscribe only *deceptive* conduct and that

8    nondeceptive *unfair* trade practices are actionable only if brought under other statutory or common

9    law causes of action such as the Colorado Antitrust Act.  *See* C.R.S.A. § 6–4–101, *et seq* (the

10   "Colorado Antitrust Act of 1992").

11   Second, other courts confronted with this question have "refrain[ed] from adopting any

12   broader construction of the CCPA" that would sweep in anticompetitive conduct.  *Sheet Metal

13   Workers Loc. 441 Health & Welfare Plan v. GlaxoSmithKline, PLC*, 737 F. Supp. 2d 380, 408

14   (E.D. Pa. 2010); *see also In re New Motor Vehicles Canadian Exp. Antitrust Litig.*, 350 F. Supp.

15   2d 160, 180 n.28 (D. Me. 2004) ("[a]lthough the word 'unfair' appears in these decisions, I have

16   found no Colorado case where the court applied the term substantively to broaden the CCPA's

17   reach to unfair, in addition to deceptive, practices"); *In re Restasis (Cyclosporine Ophthalmic

18   Emulsion) Antitrust Litig.*, 355 F. Supp. 3d 145 (E.D.N.Y. 2018) ("I agree, however, with the

19   conclusion in *Sheet Metal Workers* . . . that there is no standalone claim under the CCPA for an

20   'unfair' trade practice").

21   The cases cited by the IHPPs for the contrary proposition are unpersuasive.  To be sure, the

22   district court in *In re Liquid Aluminum Sulfate Antitrust Litig.* held that plaintiffs could bring a claim

23   under the CCPA because they "alleged that Defendants' unfair trade practices were in the form of

24   price-fixing and customer allocation."  No. CV 16-MD-2687 (JLL), 2017 WL 3131977 at *26

25   (D.N.J. July 20, 2017).  But the court there cited only the elements listed in *Rhino Linings*, 62 P.3d

26   142 at 146–47; it cited no Colorado cases holding that the subsection (rrr) or any other provision of

27   the CCPA is meant to cover anticompetitive conduct..  *See* 2017 WL 3131977 at *26; *see also In re

28   Generic Pharms. Pricing Antitrust Litig.*, 368 F. Supp. 3d 814, 846 (E.D. Pa. 2019) (deciding that

United States District Court
Northern District of California

1    plaintiffs "have sufficiently alleged that Defendants engaged in deceptive and/or unconscionable
2    conduct to permit their claims to withstand dismissal" under the CCPA without expressly analyzing
3    whether the CCPA permits claims premised on anticompetitive conduct alone).  The IHPPs also
4    misread *In re DDAVP Indirect Purchaser Antitrust Litig.* 903 F. Supp. 2d 198, 223–24 (S.D.N.Y.
5    2012).  There, the district court concluded only that a CCPA plaintiff does not need to have directly
6    communicated with the defendant to state a claim.  *See id.* ("Although the Sheet Metal court
7    determined that a CCPA claim fails where the deceptive conduct *is not aimed at consumers*, I do
8    not find a basis in caselaw for that determination) (emphasis added).  The court did not address the
9    question, presented here, of whether the CCPA provides a cause of action to a plaintiff injured by
10   anticompetitive, but not deceptive, conduct because in that case the plaintiffs brought a CCPA claim
11   "based on Defendants' *fraudulent conduct* before the PTO and FDA." *Id.* at 224.

        Accordingly, the IHPPs' claims under the CCPA are dismissed.

C.    Louisiana

        The Louisiana Unfair Trade Practices and Consumer Protection Law ("LUTPA") provides that "*[u]nfair methods of competition* and *unfair* or deceptive *acts or practices* in the conduct of any trade or commerce are hereby declared unlawful." La. Stat. Ann. § 51:1405 (emphasis added).  LUTPA does not otherwise enumerate the proscribed conduct.  Instead, "Louisiana has left the determination of what is an 'unfair trade practice' largely to the courts to decide on a case–by–case basis." *City of Baton Rouge/E. Baton Rouge Par. v. Bank of Am., N.A.*, No. CV 19–725–SDD–RLB, 2021 WL 1321302 at *3 (M.D. La. Apr. 8, 2021).

        Louisiana courts have held that "[a] trade practice is unfair under the statute only when it offends established public policy and is immoral, unethical, oppressive or unscrupulous." *Schenck v. Living Centers–E., Inc.*, 917 F. Supp. 432, 439 (E.D. La. 1996).  The Louisiana Supreme Court has explained that "the range of prohibited practices under LUTPA is extremely narrow." *Cheramie Servs., Inc. v. Shell Deepwater Prod., Inc.*, 2009–1633 (La. 4/23/10), 35 So. 3d 1053, 1060.  Despite this narrow scope, a Louisiana appellate court has held "when, as in this case, Defendants' conduct allegedly violates the antitrust laws, a valid LUTPA claim has been stated." *S. Tool & Supply, Inc. v. Beerman Precision, Inc.*, 2003–0960 (La. App. 4 Cir. 11/26/03), 862 So.

2d 271, 286.

In addition, the express language of LUTPA (prohibiting "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce") parallels that used in the FTCA, suggesting that, like the FTCA, the LUTPA is intended to cover anticompetitive conduct. *See Quality Env't Processes, Inc. v. I.P. Petroleum Co.*, 2013–1582 (La. 5/7/14), 144 So. 3d 1011, 1025 ("LUTPA was modeled after the Federal Trade Commission Act . . . . and the two acts share the same goals: to protect consumers and to foster competition") (citing Keith E. Andrews, *Louisiana Unfair Trade Practices Act: Broad Language and Generous Remedies Supplemented by A Confusing Body of Case Law*, 41 LOY. L. REV. 759 (1996)). Indeed, Defendants concede as much in their papers. *See* Defs' Brief at 5 ("[o]f the states at issue in this brief, Louisiana has the statute that is the closest in substance to the Federal Trade Commission Act, and thus the closest to covering anticompetitive conduct").

Accordingly, the Court does not dismiss the IHPPs' claims under LUTPA.

D.  Pennsylvania

Pennsylvania's Unfair Trade Practices and Consumer Protection Law ("UTPCPL") makes unlawful "[u]nfair methods of competition and unfair or deceptive acts or practices." 73 P.S. § 201–3(a). The law lists 21 specific qualifying practices, none of which involves anticompetitive conduct. *See* 73 P.S. § 201–2(4). According to Plaintiffs, the final subsection is a "catch–all" provision, even though it facially seems to proscribe only deceptive conduct: "[e]ngaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding." 73 P.S. § 201–2(4)(xxi). The plain text requiring fraudulent or deceptive conduct and does not extend generally to anticompetitive antitrust conduct.

A state court has held that the UTPCPL does not parallel the FTCA. *See Anadarko Petroleum Corp. v. Commonwealth*, 206 A.3d 51, 60 (Pa. Commw. Ct. 2019), *aff'd in part, rev'd in part by* 247 A.3d 934 (Pa. 2021) ("the UTPCPL is not designed to render all antitrust violations actionable and . . . the scope of actionable antitrust behavior under the UTPCPL is narrower than

5

under federal antitrust law").[2] The *Anadarko* court explained that to state an actionable UTPCPL claim premised on a theory of anticompetitive conduct, such conduct must "fit within one of the categories of behavior deemed, by administrative rule or in the Law itself, 'unfair methods of competition' or 'unfair or deceptive acts or practices.'" *Id.*

The IHPPs claim that *Anadarko* weighs in their favor because the court there held that a legally viable "UTPCPL-based antitrust claim" could be stated. *See* IHPP Br. at 2 (quoting 206 A.3d at 60–61). But the IHPPs' reading of *Anadarko* is flawed. There, the court rejected one claim grounded in anticompetitive conduct and allowed a second to proceed. *See id.* However, the latter was able to proceed only because it involved "allegedly disingenuous and misleading behavior." *Id.* at 61. The court explained that when alleged conduct is not expressly within one UTPCPL's enumerated categories, it only becomes actionable under the UTPCPL when the state legislature or the Attorney General, through their rulemaking powers, deems it so. *See id.* at 61 ("the only manner in which these [anticompetitive] activities can give rise to viable UTPCPL actions is if they fit within one of the categories of behavior deemed, by rule or in the Law itself, 'unfair methods of competition' or 'unfair or deceptive acts or practices'"). The anticompetitive conduct at issue here has not been made illegal by any of these channels.

Moreover, other federal district courts interpreting the UTPCPL have come to the same conclusion as the Commonwealth Court in *Anadarko*. In *In re Lidoderm Antitrust Litig.*, for example, Judge Orrick declined to extend the UTPCPL's catch–all to claims of pure anticompetitive conduct because the plaintiffs were unable to "demonstrate that defendants' conduct created a 'likelihood of confusion or of misunderstanding' on behalf of purchasers." 103 F. Supp. 3d 1155, 1171 (N.D. Cal. 2015) (quoting 73 P.S. § 201–2(4)(xxi)); *see also In re New*

---

[2] The court's holding in *Anadarko* – *i.e.*, that not all antitrust theories are actionable under the UTPCPL – was vacated as moot because the Supreme Court of Pennsylvania found that the UTPCPL provides a cause of action only as to buyers against infringing sellers, and in that case, the defendants were acting as buyers. *See Commonwealth v. Chesapeake Energy Corp.*, 247 A.3d 934, 950 (Pa. 2021) ("Because we have concluded that the OAG cannot bring UTPCPL claims against Anadarko based on its allegedly unfair and deceptive conduct as a purchaser of mineral estates . . . [the question of whether antitrust remedies are cognizable under the UTPCPL] is now moot"). Thus, while the decision of the Commonwealth Court is no longer binding on lower Pennsylvania courts, it is the most persuasive decision issued by a Pennsylvania court regarding the UTPCPL's coverage of antitrust actions.

1  *Motor Vehicles Canadian Exp. Antitrust Litig.*, 350 F. Supp. 2d 160 (D. Me. 2004) ("The plain
2  language of this catchall subsection requires fraud or deception").

3  Accordingly, the IHPPs' claims under the UTPCPL are dismissed.

4  E.     Virginia

5  The Virginia Consumer Protection Act ("VCPA") lists 72 unique "fraudulent acts or
6  practices" as unlawful. Va. Code Ann. § 59.1–200. The only unlawful practice that could be
7  relevant here is the proscription against "[u]sing any other deception, fraud, false pretense, false
8  promise, or misrepresentation in connection with a consumer transaction." Va. Code Ann. § 59.1–
9  200(A)(14). "[T]he plain language of the statute requires fraud or misrepresentation, and Virginia
10 courts have so interpreted it." *In re New Motor Vehicles Canadian Exp. Antitrust Litig.*, 350 F.
11 Supp. 2d 160, 206–07 (D. Me. 2004) (citing *Lambert v. Downtown Garage, Inc.*, 553 S.E.2d 714,
12 716–18 (2001)).

13 Plaintiffs cite a number of cases in which courts have permitted VCPA claims premised on
14 antitrust theories to proceed. However, in all of those cases, the plaintiff made allegations that the
15 anticompetitive conduct was infused with fraud or deception. *See In re Generic Pharms. Pricing
16 Antitrust Litig.*, 368 F. Supp. 3d 814, 846 (E.D. Pa. 2019) (plaintiffs alleged "an illegal price–
17 fixing conspiracy among Defendants, hatched in secret and *maintained through deception*, during
18 which Defendants *misleadingly conveyed* to Plaintiffs and the market that pricing for Defendants'
19 products was competitive") (emphasis added); *In re Suboxone (Buprenorphine Hydrochloride &
20 Naloxone) Antitrust Litig.*, 64 F. Supp. 3d 665, 703 (E.D. Pa. 2014) ("the End Payors have
21 sufficiently *pleaded fraud and/or misrepresentations* sufficient to state a claim under Virginia's
22 consumer protection law) (emphasis added). Claims which do not adequately involve fraud or
23 deception wrapped up in the anticompetitive conduct have been dismissed under the VCPA. *See
24 In re Niaspan Antitrust Litig.*, 42 F. Supp. 3d 735, 760 (E.D. Pa. 2014) (dismissing VCPA claim
25 because "[t]here are no such allegations of deceit in this case"); *In re New Motor Vehicles
26 Canadian Exp. Antitrust Litig.*, 350 F. Supp. 2d at 207 (dismissing VCPA claim because "the
27 plaintiffs have not adequately alleged fraud or deception, including misrepresentation").

28 Accordingly, the IHPPs' claims under the VPCA are dismissed.

F.   Utah[3]

The Utah Consumer Sales Practices Act ("UCSPA") prohibits, in certain circumstances, "[a] deceptive act or practice by a supplier in connection with a consumer transaction." Utah Code Ann. § 13–11–4. Moreover, the UCSPA proscribes "[a]n unconscionable act or practice by a supplier in connection with a consumer transaction." Utah Code Ann. § 13–11–5(1). "The unconscionability of an act or practice is a question of law for the court." Utah Code Ann. § 13–11–5(2). "In determining whether an act or practice is unconscionable, the court shall consider circumstances which the supplier knew or had reason to know." Utah Code Ann. § 13–11–5(3). A claim of unconscionable conduct "does not require a showing of fraud or deception." *Sergeants Benevolent Ass'n Health & Welfare Fund v. Actavis, plc*, No. 15 CIV. 6549 (CM), 2018 WL 7197233 at *50 (S.D.N.Y. Dec. 26, 2018).

While "[t]he list of deceptive practices in the statute is not exclusive, by its own terms," *Sergeants Benevolent*, 2018 WL 7197233 at *50, the IHPPs' claims here cannot be maintained under the UCSPA's prohibition against deceptive acts or practices in § 13–11–4 because no deception has been alleged. *See In re New Motor Vehicles Canadian Exp. Antitrust Litig.*, 350 F. Supp. 2d at 204 (declining to allow anticompetitive conduct claim to proceed under § 13–11–4 absent a showing of fraud or deception). Moreover, "[a]lthough the UCSPA was modeled on the FTCA, *see* Utah Code Ann. § 13–11–2(4), it lacks an analogue to § 5, which prohibits 'unfair competition.' " *In re Pork Antitrust Litig.*, 495 F. Supp. 3d 753, 787 (D. Minn. 2020). Therefore, antitrust allegations do not fall within § 13–11–4.

However, anticompetitive conduct claims can be brought under the UCSPA's unconscionability prong. "[F]ederal courts that have evaluated Utah's statute in the antitrust context have all permitted such claims to proceed, construing the statute liberally to conclude that an antitrust violation can be unconscionable." *In re Namenda Indirect Purchaser Antitrust Litig.*,

---

[3] The Court notes that Defendants did not initially identify Utah as one of the states at issue. The Court does not condone Defendants' failure to raise Utah until their supplemental briefing, particularly as this deprived the IHPPs of the ability to offer competing arguments in their papers. Nevertheless, the Court addresses Utah in the interest of justice. The IHPPs have not been prejudiced as a result since the Court ultimately rules in their favor on Utah law. *See infra*.

No. 115CV6549CMRWL, 2021 WL 2403727 at *33 (S.D.N.Y. June 11, 2021); *see also In re New Motor Vehicles Canadian Exp. Antitrust Litig.*, 350 F. Supp. 2d at 204 (declining to dismiss claims premised on anticompetitive behavior under UCSPA's unconscionability prong); *Sergeants Benevolent*, 2018 WL 7197233 at *50 (same); *but see In re Interior Molded Doors Indirect Purchaser Antitrust Litig.*, No. 3:18–CV–00850–JAG, 2020 WL 2110931 (E.D. Va. May 4, 2020) (dismissing UCSPA claims because antitrust plaintiffs "never bargained directly with the defendants" and thus defendants could not show use of gross bargaining power inequities).

The IHPPs have alleged that they were harmed by being made to pay "artificially inflated, supracompetitive prices for the drugs dispensed to its members throughout the U.S." Docket No. 1055 at 132 (Centene Amended Compl. against Gilead). That is precisely the type of injury that other courts have said can support a claim under the unconscionability prong of the UCSPA. *See, e.g.*, *In re Aftermarket Filters Antitrust Litig.*, No. 08 C 4883, 2009 WL 3754041 at *9 (N.D. Ill. Nov. 5, 2009) (payment of supracompetitive prices sufficient to allege claim under UCSPA's unconscionable prong). The case law does not establish a per se rule that all anticompetitive conduct is "unconscionable" within the meaning of 13–11–5, but the IHPPs should be allowed to present evidence proving that Defendants conduct was indeed unconscionable and thus that they are entitled to recovery under the USCPA.

Accordingly, the Court does not dismiss the IHPPs' claims under the UCSPA.

## II. CONCLUSION

For the foregoing reasons, the Court dismisses the IHPPs' consumer protection claims as brought under the laws of Colorado, Indiana, Pennsylvania, Virginia, and Wyoming. The consumer protection claims under Louisiana and Utah law are allowed to proceed.

**IT IS SO ORDERED**.

Dated: April 18, 2023

_____
EDWARD M. CHEN
United States District Judge

9