1

2

3

4                        UNITED STATES DISTRICT COURT

5                       NORTHERN DISTRICT OF CALIFORNIA

6

7    IN RE HIV ANTITRUST LITIGATION.          Case No.  19-cv-02573-EMC

8

9                                             ORDER GRANTING PLAINTIFFS'
                                              MOTION TO EXCLUDE TESTIMONY
10                                            AND EVIDENCE OF POTENTIAL
                                              MEDICARE PART D OFFSETS
11                                            Docket No. 1840

12

13

14        Currently pending before the Court is Plaintiffs' motion to exclude in which Plaintiffs seek

15   to limit testimony from Defendants' damages expert Dr. Jena.  Dr. Jena filed a supplemental report

16   on May 11, /2023.  This was in response to an updated report being provided by Plaintiffs'

17   damages expert D. Frank.  (The Court allowed an updated report which broke down damages by

18   state.  *See* Docket No. 1766-3 (Updated Frank Rpt.).)  In his supplemental report, Dr. Jena opines,

19   in relevant part, that

20              Dr. Frank's updated damages calculations *still* fail to account for the
                portion of at-issue Medicare Part D prescriptions paid by the
21              government to the EPP class [*i.e.*, the government payments should
                be counted as a set-off to the EPPs' damages].  Dr. Frank's failure to
22              account for these payments is inconsistent with . . . the approach
                implemented by the two other indirect purchaser Plaintiffs' experts
23              [the IHPPs and United), both of whom now account for government
                Medicare Part D payments . . . .
24

25   Docket No. 1850-3 (Ex. B) (Supp. Jena Rpt. ¶ 3) (emphasis added).  Dr. Jena uses the word "still"

26   because he made the same criticism with respect to Dr. Frank's original report.  According to

27   Plaintiffs, Dr. Jena should be barred from providing this testimony because, as a pure legal matter,

28   Defendants should not be allowed to claim the government payments as a set-off.

Having considered the parties' briefs and accompanying submissions, the Court hereby **GRANTS** Plaintiffs' motion.

A.  <u>Prior Orders</u>

As an initial matter, the Court take notes that it has previously issued opinions that relate to Medicare payments by the government: (1) its order on Defendants' *Daubert* motions (dated March 13, 2023), *see* Docket No. 1704 (order); and (2) its order on Defendants' motions in limine (dated March 19, 2023).  *See* Docket No. 1716 (order).  Of particular note is the latter order addressing Defendants' motions in limine.  In the relevant underlying motion, Defendants argued, *inter alia*, that, "if Medicare paid for part of the drugs, then Plaintiffs cannot include that as part of their damages."  Docket No. 1716 (Order at 7).  In response, the Court stated that Defendants made a "fair argument" but "exclusion is not the proper remedy because the parties essentially dispute whether it is possible to allocate the Medicare payments to serve as a set-off.  *See also In re Namenda Indirect Purchaser Antitrust Litig.*, No. 115CV6549CMRWL, 2022 WL 3362429, at *11-12 (S.D.N.Y. Aug. 15, 2022) (concluding that 'the measure of damages is the actual damage – the out-of-pocket cost – that is suffered by a [TPP] as a result of being overcharged for memantine,' but '[w]hether Dr. Vogt has calculated the measure correctly in light of the various government reimbursement programs presents a question of fact for the trier of fact – not a ruling of law for the court to make')."  Docket No. 1716 (Order at 7).

In spite of the Court's prior orders, Plaintiffs have moved for relief because they are now making *pure legal arguments* as to why Medicare payments should not be able to be used as a set-off.  Plaintiffs make two legal arguments: (1) as a legal matter, the Court should not use a Medicare payment as a set-off because that would interfere with the Medicare regulatory process; and (2) as a legal matter, the Medicare payments from the government should not be used as set-offs because most of the repealer states at issue follow the common law collateral source rule.

Defendants note that Plaintiffs are essentially moving for reconsideration here and complain that Plaintiffs are doing so on an untimely basis given that the Court's prior orders issued in mid-March.  Although the Court is not without some sympathy for Defendants' timeliness argument, the Court nevertheless considers the motion – especially since Defendants

1  themselves have also been moving for reconsideration of prior Court rulings, and arguably on an

2  untimely basis as well.

3  B.   <u>First Legal Argument: Reconciliation Process</u>

4       To the extent Plaintiffs seek relief based on their first legal argument, the Court is not

5  persuaded.  As a preliminary matter, the Court notes that Plaintiffs made a similar argument at the

6  time they opposed Defendants' motions in limine; specifically, they argued that the DIR process

7  would be rendered *unnecessary* if government payments could be used as set-offs.  Now, Plaintiffs

8  present a slightly different argument – *i.e.*, that the DIR process would be *interfered* with, and

9  therefore set-offs should not be permitted.  The problem for Plaintiffs is that they have not

10 articulated any legal basis that would give the Court authority to reject set-offs based on an

11 interference theory.

12      Potentially, Plaintiffs were trying to make a preemption-type argument.  *See, e.g.*, *Ass'n*

13 *des Éleveurs de Canards et d'Oies du Québec v. Bonta*, 33 F.4th 1107, 1113-14 (9th Cir. 2022)

14 (discussing different kinds of preemption, including conflict preemption which "arises when state

15 law conflicts with a federal statute"); *Chae v. SLM Corp.*, 593 F.3d 936, 943 (9th Cir. 2010)

16 (noting that "[a] state law, whether arising from statute or common law, is preempted if it creates

17 an 'obstacle to the accomplishment and execution of the full purposes and objectives of

18 Congress'").  But if that is the case, Plaintiffs did not sufficiently brief the issue.  Plaintiffs did

19 not, for example, cite any preemption case law.  Plaintiffs did not take into account that courts are

20 to be "cautious about conflict preemption . . . [w]hen we deal with an area in which states have

21 traditionally acted," *i.e.*, "a state's historic police powers."  *Id.* at 944.  And there is room to argue

22 that there would not be interference with the Reconciliation process if Medicare payments could

23 be used as set-offs in this litigation because the Part D sponsors could still, during the

24 Reconciliation process, tell the government what happened in this litigation – *e.g.*, that they settled

25 or that they prevailed and thus their costs for the drugs were diminished.  That the government

26 could not then obtain recovery from the Part D sponsors amounts which were offset would not

27 clearly preclude the government from seeking its portion reflecting overpayment from Gilead.  At

28 least Plaintiffs have not made any such showing which would appear to be a predicate to an

United States District Court
Northern District of California

3

United States District Court
Northern District of California

1    effective obstruction preemption claim.

2    C.    Second Legal Argument: Collateral Source

3      Although the Court does not rule in Plaintiffs' favor on their first legal argument, it finds

4    that their second legal argument has merit.  To be sure, Plaintiffs initially raised this legal

5    argument in their opposition to Defendants' motions in limine in conclusory terms.  *See* Docket

6    No. 1630-8 (Opp'n at 6-7).  However, now that Plaintiffs have shed more light on their argument,

7    the Court is persuaded.

8      The Court's ruling here turns on the following.  First, as Plaintiffs point out, one major

9    justification for the collateral source rule is that a tortfeasor should be held accountable for the

10   wrong done and should not benefit from the fact that the victim later escapes some of the

11   consequences of the harm.  *See, e.g.*, *Collier v. Roth*, 434 S.W.2d 502, 507 (Mo. 1968); *Int'l*

12   *Longshore & Warehouse Union v. ICTSI Or., Inc.*, No. 3:12-cv-1058-SI, 2019 U.S. Dist. LEXIS

13   8501, at *49 (D. Or. Jan. 17, 2019).  Second, the collateral source rule comes from the common

14   law, and most, if not all, states have adopted the approach that a state statute does not abrogate the

15   common law unless it is clear that the legislature so intended.  *See, e.g.*, *State v. Allen*, 513 P.3d

16   282, 310 (Ariz. 2022) ("Arizona adopts the common law unless it is 'repugnant to or inconsistent

17   with the Constitution of the United States or the constitution or laws of this state.'  And 'if the

18   common law is to be changed or abrogated by statute, the legislature must do so expressly or by

19   necessary implication,' and '[a]bsent a clear manifestation of legislative intent to abrogate the

20   common law, we interpret statutes with "every intendment in favor of consistency with the

21   common law."'"); *Freeman v. Grain Processing Corp.*, 848 N.W.2d 58, 88 (Iowa 2014) ("With

22   respect to whether a statute abrogates common law, the test is somewhat similar.  We have

23   declared that absent express statutory language, a party seeking to demonstrate that a statute

24   impliedly overrides common law must show that this result is 'imperatively required.'"); *Ed*

25   *Dewitte Ins. Agency, Inc. v. Fin. Assocs. Midwest*, 427 P.3d 25, 30 (Kan. 2018) ("[W]e presume

26   the Legislature acts with '"full knowledge and information about the statutory subject matter, prior

27   and existing law, and the judicial decisions interpreting the prior and existing law and

28   legislation."'  Because of this preexisting knowledge, courts also presume legislatures do not

4

intend to alter or abrogate the common law unless a statute makes clear such an intention.").  Here, even though many of the relevant state statutes refer to "actual damages" as the remedy for an injured plaintiff, that phrase in and of itself establish that a state legislature clearly intended to override the common law collateral source rule, particularly in light of the underlying policy that the tortfeasor not benefit as a result of the diligence of the victim.

The Court acknowledges that its ruling here does not entirely preclude Defendants from raising Medicare payments as a set-off.  Plaintiffs concede that, although the majority of relevant states do follow the collateral source rule, some states do not, and others follow the rule in limited circumstances only.  But Plaintiffs have pointed out – and Defendants do not dispute – that it is a decision *for the Court*, and not the jury, as to what should happen in these minority states. Accordingly, for purposes of the *jury trial*, Defendants shall not be permitted to raise Medicare payments as a set-off to Plaintiffs' damages.  Should Plaintiffs prevail at trial, then there may need to be a limited bench trial on the issue of Medicare payments and set-off.

This order disposes of Docket No. 1849.


**IT IS SO ORDERED**.


Dated: May 23, 2023

_____
EDWARD M. CHEN
United States District Judge