Michael J. Shipley (SBN 233674)
KIRKLAND & ELLIS LLP
555 South Flower Street
Suite 3700
Los Angeles, California 90071
Tel: (213) 680-8400
michael.shipley@kirkland.com

Jay P. Lefkowitz, P.C. (*pro hac vice*)
Devora W. Allon, P.C. (*pro hac vice*)
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York 10022
Tel: (212) 446-4800
lefkowitz@kirkland.com
devora.allon@kirkland.com

Bart H. Williams (SBN 134900)
Susan L. Gutierrez (SBN 273980)
PROSKAUER ROSE LLP
2029 Century Park East, Suite 2400
Los Angeles, California 90067
Tel: (310) 557-2900
bwilliams@proskauer.com
sgutierrez@proskauer.com

*Attorneys for Defendants Gilead Sciences, Inc.,
Gilead Holdings, LLC, Gilead Sciences, LLC, and
Gilead Sciences Ireland UC*

Christopher T. Holding (*pro hac vice*)
GOODWIN PROCTER LLP
100 Northern Avenue
Boston, Massachusetts 02210
Tel: (617) 570-1000
Email: cholding@goodwinlaw.com

*Attorney for Defendant Teva Pharmaceuticals
USA, Inc.*

*Additional Counsel for Defendants Listed on
Signature Page*

IN THE UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE HIV ANTITRUST LITIGATION | Case No. 3:19-cv-02573-EMC (lead case) |
| | **DEFENDANTS' MOTION TO PRECLUDE UNTIMELY EXPERT OPINION FROM DR. MCGUIRE** |
| THIS DOCUMENT RELATES TO: | |
| All Actions | Ctrm:      5-17th Floor |
| | Judge:     Honorable Edward M. Chen |

Pursuant to Civil L.R. 7-2 and Fed. R. Civ. P. 26 and 37, Defendants move for an order prohibiting Plaintiffs from eliciting a new, undisclosed expert opinion from Dr. Thomas McGuire, as set forth in their proposed demonstrative (Exhibit 5592A, attached hereto as Exhibit A).

## INTRODUCTION[1]

Dr. Thomas McGuire is the linchpin of Plaintiffs' "pay for delay" case. He plugs the alleged "payment" into a spreadsheet he created, and—based on the parameters of that spreadsheet—finds 16 months of "delay." That spreadsheet **is** Plaintiffs' case. Dr. McGuire created it, he explained it in two expert reports, he defended it in two separate depositions, and—for over a year—Defendants have been responding to the dubious output of that Excel file: but for the MFEP, Teva supposedly would have bargained for an entry date in **May 2019**. That is what Plaintiffs told jurors in their opening statement. *See* Ex. B, May 25, 2023 Trial Tr. ("May 25 Trial Tr.") 262:20-24. And Dr. McGuire's spreadsheet, with its May 2019 prediction, featured prominently in the Court's denial of Defendants' motion for summary judgment. ECF No. 1599 at 52.

The entry date predicted by the spreadsheet is highly sensitive to an input labeled "Chance of Teva Winning Litigation"—a purportedly "objective" input that, according to Dr. McGuire, should be the same for two non-conspiring parties:

| | | Gilead | Teva |
|---|---|---|---|
| *Chance of Teva Winning Litigation* | | | |
| [A] FTC Patents expiring 10/2021 ("FTC Patents") | | 77.5% | 77.5% |
| [B] TDF/FTC Combination Patents Expiring 1/2024 ("combo 1 patents") | | 85.0% | 85.0% |
| [C] TDF/FTC/EFV Combination Patents expiring 5/2029 ("combo 2 patents") | | 95.0% | 95.0% |

Previously, the values that Dr. McGuire plugged into this field came from Mr. Lentz: 77.5% odds on the FTC patents, 85% odds on the first set of combination patents, and 95% odds on the second set of combination patents. Those inputs yield a familiar prediction: but-for entry in May 2019. But now, nearly a year after the close of expert discovery, in the middle of trial, and just two court days before Dr.

---

[1] Plaintiffs have stated that they anticipate calling Dr. McGuire to testify on Tuesday, June 13, 2023, and on June 8, 2023 at 4:57 p.m., they disclosed Dr. McGuire's intention to use Exhibit 5592A during his testimony. Consistent with the Court's instructions this morning, Defendants are submitting their brief on this issue on June 9, 2023, with the understanding that Plaintiffs will respond on June 10.

DEFENDANTS' MOTION TO PRECLUDE UNTIMELY EXPERT OPINIONS FROM DR. MCGUIRE
(CASE NO: 3:19-CV-02573-EMC)

McGuire takes the stand, Plaintiffs seek to elicit a new opinion about how to use the spreadsheet.  Perhaps Teva wouldn't have entered in May 2019 after all, Plaintiffs say.  If the jury credits *Teva's* subjective view of the patent merits, then—Plaintiffs claim—Dr. McGuire can simply plug different numbers into his spreadsheet.  Specifically, they propose that Dr. McGuire plug Mr. Lentz's figures into the "Gilead" column (excerpted above) and Ms. Julie's contemporaneous figures into the "Teva" column.

That new methodology yields an entry date that Dr. McGuire has not sponsored and as to which he was not deposed.  In fact, until now, he *declined* to offer any opinion based on Teva's subjective understanding of its odds of success.  *See, e.g.*, Ex. G, Deposition Transcript of Dr. Thomas G. McGuire (Aug. 30, 2022) ("McGuire Aug. 30 Tr.") 117:1-20 (acknowledgment by Dr. McGuire that he "didn't calculate an expected alternative entry date using an input for Teva's expected chances").  His testimony was unambiguous:  "I use one probability for both companies," and that probability came from Mr. Lentz—not Teva.  *Id.* at 121:4-11.  Indeed, in his rebuttal report, Dr. McGuire criticized the very approach that he now purports to follow.  Ex. E, Expert Rebuttal Rpt. of Dr. Thomas G. McGuire (Aug. 12, 2022) ("McGuire Rebuttal Rpt.") ¶¶ 141-44.

Dr. McGuire is not a human calculator.  He cannot simply proffer a spreadsheet and say, for the first time on the stand, that his opinion is whatever the spreadsheet says—no matter how the spreadsheet is manipulated, and no matter what inputs are used.  This is a bait-and-switch:  Plaintiffs put all their eggs in Mr. Lentz's basket, and they cannot rewrite their key expert report because Ms. Julie was powerful on the stand. Under Rule 26, parties are "entitled to a *complete* disclosure of all opinions—not a sneak preview of a moving target."  *Mariscal v. Graco, Inc.*, 52 F. Supp. 3d 973, 983-84 (N.D. Cal. 2014).

No remedy short of exclusion could prevent the severe prejudice to Defendants at this late stage. Defendants' trial strategy is based on the reasonable assumption that, as Dr. McGuire confirmed at his deposition, Dr. McGuire would "testify about material in [his] report, not things that are not in [his] report."  Ex. F, Deposition Transcript of Dr. Thomas G. McGuire (July 18, 2022) ("McGuire July 18 Tr.") 27:11-14.  Thus, in their opening statements, Defendants emphasized the limits of Dr. McGuire's model— *e.g.*, Dr. McGuire "never ran his model using the numbers that Teva put in its documents at the time," which meant that there would be "no evidence from Dr. McGuire that using 17.5 percent combined odds,

2

1   or anything even in that neighborhood," produces an earlier but-for entry date.  Ex. C, May 30, 2023 Trial

2   Tr. ("May 30 Trial Tr.") 451-452; *see* p. 10, *infra*.  It would be exceptionally unfair and prejudicial to

3   Defendants if Plaintiffs were allowed to introduce a new opinion intended to fill the gap that Defendants

4   identified.

5                                                    **ARGUMENT**

6           Federal Rule of Civil Procedure 26(a)(2)(B) requires parties "to disclose the identity of each expert

7   witness accompanied by a written report prepared and signed by the witness."  *Yeti by Molly, Ltd. v.*

8   *Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001) (quotation marks omitted).  "[E]xperts are

9   required to testify only as to arguments and theories disclosed in their expert reports," *Guzik Tech. Enters.,*

10  *Inc. v. W. Digitial Corp.*, 2013 WL 6227626, at \*4, 6 (N.D. Cal. Nov. 22, 2013)—a rule that is intended

11  to "prevent an ambush at trial," *Ortiz-Lopez v. Sociedad Espanola de Auxilio Mutuo Y Beneficiencia de*

12  *Puerto Rico*, 248 F.3d 29, 35 (1st Cir. 2001).  And although Rule 26(e)(1) allows supplementation, the

13  Rule "is not intended [] to permit parties to add new opinions to an expert report based on evidence that

14  was available to them at the time the initial expert report was due."  *France Telecom S.A. v. Marvell*

15  *Semiconductor Inc.*, 2014 WL 1899616, at \*3 (N.D. Cal. May 12, 2014).

16          Dr. McGuire's new opinion violates these rules.  Dr. McGuire concedes that he knew about Teva's

17  subjective views ***before*** he filed his opening report.  McGuire Aug. 30 Tr. 93:21-94:17; *see* p. 7, *infra*.

18  Exclusion is thus warranted unless Plaintiffs can show that their untimely disclosure "is substantially

19  justified or harmless."  *Yeti by Molly*, 259 F.3d at 1106 (citing Fed. R. Civ. Proc. 37(c)(1)).  It is not.

20  **I.      PLAINTIFFS IMPROPERLY DISCLOSED A NEW OPINION MID-TRIAL.**

21          **A.      Dr. McGuire's "Expanded Version of Table 3" is a new opinion.**

22          Comparing Dr. McGuire's original Table 3 with the new "Expanded Version of Table 3"

23  ("Expanded Table 3") proves that the "expanded" table contains a new opinion.  The original Table 3,

24  pasted below, treated litigation odds as a single variable, equal for both Gilead and Teva:

25

26

27

28                                                        3

**TABLE 3**
**THE TIMING OF TEVA GENERIC ENTRY IN ALTERNATIVE SETTLEMENTS**
**BASED ON TEVA'S CHANCE OF WINNING THE TRUVADA/ATRIPLA FTC PATENT LITIGATION**

| Teva's Chance of Winning on the FTC Patents | Entry Month |
|---|---|
| 90.0% | February 2019 |
| 80.0% | May 2019 |
| 77.5% | May 2019 |
| 75.0% | June 2019 |
| 70.0% | August 2019 |
| 60.0% | November 2019 |
| 50.0% | February 2020 |

Plaintiffs' new "Expanded Version of Table 3," which they propose to use as a demonstrative during Dr. McGuire's testimony, is substantially different. Plaintiffs now add a new column to summarize a new opinion from Dr. McGuire that uses a fundamentally different mode of analysis, in at least two ways.

**EXPANDED VERSION OF TABLE 3**
**THE TIMING OF TEVA GENERIC ENTRY IN ALTERNATIVE SETTLEMENTS**
**BASED ON TEVA'S CHANCE OF WINNING THE TRUVADA/ATRIPLA FTC PATENT LITIGATION**

| Teva's Chance of Winning on the FTC Patents | Entry Month (If Parties Have the Same Expectations) * | Entry Month (If Teva Expected a Combined 17.5% Chance of Winning on the FTC and TDF/FTC Patents) ** |
|---|---|---|
| 90.0% | February 2019 | August 2019 |
| 80.0% | May 2019 | September 2019 |
| **77.5%** | **May 2019** | **October 2019** |
| 75.0% | June 2019 | October 2019 |
| 70.0% | August 2019 | November 2019 |
| 60.0% | November 2019 | January 2020 |
| 50.0% | February 2020 | March 2020 |

\* Assumes that both parties expected an 85% chance of Teva winning on the TDF/FTC combination patents, and a 95% chance of Teva winning on the TDF/FTC/EFV combination patents.

\*\* All scenarios assume that *Teva expected* a 50% chance of winning on the FTC patents, a 35% chance of winning on the TDF/FTC combination patents, and a 95% chance of winning on the TDF/FTC/EFV combination patents. *Gilead's expectations* are assumed to be the same as the prior column (i.e., differing probabilities of Teva winning on the FTC patents, an 85% chance of Teva winning on the TDF/FTC/EFV combination patents, and a 95% chance of Teva winning on the TDF/FTC/EFV combination patents).

4

First, while Dr. McGuire previously opined that "Teva's Chance of Winning on the FTC Patents" came from a single, "objective" source, this new chart purports to incorporate the "expectations," and apparently the **subjective expectations**, of the parties into the analysis.  That is the opposite of Dr. McGuire's prior disclosures of the meaning of this chart: "Q. You said that your opinion and analysis with respect to the alternative no payment entry date is informed by what reasonable parties who were non-conspiring would have expected as to the merits of the patent, and I assume that's **in contrast to what the actual parties actually expected** when they entered into the actual settlement.  Is that a fair assumption on my part?  A. I work with the former, **not the latter** …." McGuire July 18 Tr. at 42:22-43:13 (emphasis added); *see also* McGuire Rebuttal Rpt. ¶ 131 n.218 (expressly defining "expectations as shorthand" for "actions of reasonable, non-conspiring companies," and not as subjective expectations).

Second, in the third column, Dr. McGuire changes a core assumption underlying his model:  he uses **different** figures for Gilead and Teva in a belated attempt to account for Teva's actual, contemporaneous assessment of its chances of invalidating the FTC patents and the combination patents. That approach is fundamentally inconsistent with Dr. McGuire's prior testimony—that his "inputs for incorporating patent strength come from … Mr. Lentz, who is taking the perspective of an objective observer."  McGuire Aug. 30 Tr. 66:12-16.  A singular, objective "chance" of success cannot be divided into two separate odds of success for each side of the litigation.  Indeed, Mr. Lentz testified to precisely that fact in open court **today**: "Q.   And when you're [] conducting this analysis, does it matter if the patent attorney is standing in the position of someone in Gilead's shoes or standing in the position of someone in Teva's shoes? A.   Again, it shouldn't matter[,] you take an unbiased view[;] that's what I tried to do here and did do here."[2]

Not only did Dr. McGuire fail to disclose this approach during discovery—he repeatedly disavowed it.  And although Dr. McGuire had access to Teva's internal documents, he specifically declined to offer any opinion based on Teva's subjective assessment of the patent merits.  Dr. McGuire's disclosed opinions additionally did not account for the possibility that Gilead and Teva might have

---

[2] Realtime Feed: 125/17-125/24 (Jun. 9, 2023 at 11:20 a.m.).

different predictions as to Teva's likelihood of success, and Dr. McGuire never offered any opinion to suggest that his model could accommodate such a divergence.

**B.      Dr. McGuire's opinion relied solely on purportedly "objective" odds of patent success, provided by Dr. Lentz.**

The timely disclosed opinions from Dr. McGuire were based solely on an after-the-fact expert evaluation of the odds of patent success without any consideration of Teva's (or any party's) real-time assessment.  As Dr. McGuire repeatedly explained, his "alternative settlement entry date rests on the assumption that parties in the position of Teva and Gilead reviewed the patent merits as a rational nonconspiring pharmaceutical company would view them," an assumption that he "obtained from [Mr.] Lentz."  McGuire Aug. 30 Tr. 116:2-13; *id.* at 67:2-16 ("an objective observer").  Thus, it "wasn't [Dr. McGuire's] original analysis that the patent strength was 62.6 percent.  It was Mr. Lentz's," based on his "expertise" in the patent realm.  *Id.* at 73:23-74:5.

Dr. McGuire had every opportunity to respond to Teva's evaluation of the patent merits.  He had access to Teva's internal documents with Teva's assessments of the patent merits ***before*** he filed his opening report, McGuire Aug. 30 Tr. 93:21-94:17, yet he deliberately chose to disregard this evidence when forming his opinions.  At his deposition, Dr. McGuire disclaimed any attempt to plug subjective probabilities into his model, testifying that he "ha[d] no comment" on what either Gilead or Teva "would have done" outside of his objective approach.  McGuire July 18 Tr. 42:14-43:13 ("I don't have anything more to say about that.").  Worse, in responding to analyses by Defendants' experts, Dr. McGuire criticized the approach he now purports to follow, describing Teva's internal assessment as "suspect" and "irrelevant."  McGuire Rebuttal Rpt. ¶¶ 62, 66 n.108; *see also id.* at ¶ 68 (criticizing any approach other than "[b]asing the but-for world on the objective-market standard").

This was not a minor issue.  In fact, Defendants challenged Dr. McGuire's opinion precisely because he "ignore[d] contemporaneous record evidence about Teva's *actual* assessment of its chance of success in the FTC Litigation and against the subsequently issued Formulation Patents (a combined chance of only 17.5%)."  ECF No. 1406-3 at 14; *see also id.* ("He does not purport to opine that Teva's entry was delayed if Teva's own assessment of its likelihood of success is used in his model instead of the figure

provided by Plaintiffs' counsel.").  In response, Plaintiffs did not suggest that Dr. McGuire could adjust his model to use Teva's subjective assessment as an input for a single party and still yield a conclusion of generic delay.  Instead, they defended Dr. McGuire's omission, insisting that the evidence of Teva's actual evaluation was legally irrelevant.  ECF No. 1442-3 at 16; *see also id.* (arguing that Dr. McGuire's model properly uses as an input the litigation probabilities given by Mr. Lentz).  In light of Plaintiffs' arguments to the Court on this issue, they cannot now credibly argue that the opinion reflected in the new column of Dr. McGuire's "[e]xpanded" table is not new.

### C.   Dr. McGuire expressly disclaimed using different probabilities for Teva and Gilead.

Because Dr. McGuire relied solely on Lentz's *post-hoc* opinion, Dr. McGuire's original report was premised on a *single* probability of success on the patent infringement lawsuits:  62.6%.  As he explained, "I have been instructed by counsel to assume that *the* probability of a generic win in litigation was 62.6%." Ex. D, Expert Rpt. of Dr. Thomas G. McGuire (June 23, 2022) ("McGuire Rpt.") ¶ 170 (emphasis added); *see also id.* ¶ 170 n.340 (presenting 62.6% as "the probability of a generic win on multiple patents"); ¶ 191 (same); ¶ 192 (same); ¶ 199 & n.373 (same); ¶ 204 (same).  That figure, in turn, was based on multiplying a set of purportedly objective evaluations of Teva's chance of success on the relevant patents.  *See id.* ¶ 191 n.364; *id.* at Attachment E.1.  The probabilities are each fixed inputs that Dr. McGuire was provided by Lentz.  *Id.*; *see also id.* ¶ 220 n.392.

Nowhere in his Report, Rebuttal Report, or at his depositions did Dr. McGuire *ever* identify different probabilities for the parties' assessment of success in the patent litigation, much less suggest that the parties could have different views of success or that his model could accommodate that scenario.  Rather, Dr. McGuire repeatedly opined "that Gilead's chance of losing the patent litigation was approximately 62.6%," *id.* ¶ 191, and that "Teva's chance of winning the litigation was 62.6%," *id.* ¶ 199. To be sure, Dr. McGuire did then consider some alternative estimates of Teva's (objective) likelihood of success (down to 50%), and stated that his model could accommodate different "probabilities of the chance of Teva winning on different patents."  McGuire Rpt. ¶ 204 n.381.  But as Dr. McGuire made clear in his deposition, his model *always* used "one probability for both companies."  McGuire Aug. 30 Tr. 121:4-11. Now, however, Dr. McGuire has introduced an opinion predicated on the assumption that the parties might

7

1  have drastically different views of success in the patent litigation.  It is not hard to guess why:  if Dr.

2  McGuire had calculated the entry month assuming, consistent with his previous modeling, that ***both***

3  parties expected a combined 17.5% chance of success on the FTC and combination patents (rather than

4  purporting to adjust the expectation of success for Teva alone), then there is no delay.

5        Dr. McGuire's new opinion is not a gloss on what he said before—it is a contradiction.

6  Defendants' expert, Dr. Saravia, criticized Dr. McGuire for "requir[ing] that both parties have the same

7  expectations regarding the probability of a generic manufacturer winning patent litigation."  Ex. H, Expert

8  Report of Celeste C. Saravia (July 22, 2022) ("Saravia Rpt.") ¶ 124; *see also id.* at ¶ 125 (criticizing "Dr.

9  McGuire's assumption that both parties must have the same expected probabilities of litigation success");

10  *id.* (explaining "that his assumption that the parties have common beliefs regarding the generic's litigation

11  success is erroneous").  Dr. McGuire could have addressed this criticism in his Rebuttal Report—that

12  would have been the time to present an alternative opinion where the parties had different views of success.

13  He did nothing of the kind, maintaining his reliance on Dr. Lentz's probabilities.  McGuire Rebuttal Rpt.

14  ¶ 142; *see also* McGuire Aug. 30 Tr. 121:10-11.

15        The approach Plaintiffs are now attempting to sneak before the jury is thus entirely new.  Rather

16  than use ***one*** figure for the probability of Teva's success at trial, it has different probabilities for Gilead's

17  views of its chance of success and Teva's views of its chance of success.  Doing so results in different

18  entry dates than Dr. McGuire had previously presented and represents an entirely new approach to the

19  critical inputs for his model.  If Dr. McGuire wanted to present this as a new opinion, the time to do so

20  was during discovery—not during trial.  *See, e.g.*, *Salyards v. Metso Mins. Oy*, 2005 WL 5989797, at *4

21  (E.D. Cal. Sept. 15, 2005) (excluding untimely expert opinion regarding "new scenario").

22  **II.    DEFENDANTS WILL BE SEVERELY PREJUDICED IF PLAINTIFFS ARE**

23         **PERMITTED TO INTRODUCE THIS OPINION.**

24        Given Plaintiffs' failure to timely disclose Dr. McGuire's new opinion, as summarized in the new

25  column of the "Expanded Version of Table 3," exclusion is warranted unless Plaintiffs can show that their

26  discovery violation is "harmless."  *Yeti by Molly*, 259 F.3d at 1106.  They cannot satisfy that burden, as

27  the introduction of Dr. McGuire's untested new opinion would be exceptionally prejudicial to Defendants.

28

8

---

DEFENDANTS' MOTION TO PRECLUDE UNTIMELY EXPERT OPINIONS FROM DR. MCGUIRE<br>(CASE NO: 3:19-CV-02573-EMC)

First, Defendants did not have an opportunity to depose Dr. McGuire about this new opinion, undermining a central objective of Rule 26.  *See Sommer v. United States*, 2011 WL 4021048, at *5 (S.D. Cal. Sept. 8, 2011) ("One reason that Rule 26 requires an extensive written expert report is so that opposing counsel is not forced to depose an expert in order to avoid ambush at trial." (quotation marks and citation omitted)).  Trial should not be the first time that Defendants hear Dr. McGuire explain his change of heart.  Nor could he credibly do so, since the premise of Plaintiffs' legal theory is that rational, non-conspiring firms would share the same "objective" view of the patent merits.  McGuire July 18 Tr. 81:13-82:22.  If Dr. McGuire disagrees with Plaintiffs' legal theory, his opinion should have been excluded months ago.  *See, e.g.*, *Terdata Corp. v. SAP SE*, 570 F. Supp. 3d 810, 842 (N.D. Cal. 2021) (excluding expert opinion that was "inconsistent with his methodology" on other issues).

Even if it were somehow feasible at this late date to allow for a supplemental deposition, that possibility would not mitigate the substantial prejudice to Defendants.  As noted above, Defendants have built their trial strategy—and crucially, their presentation to the jury—on countering the expert opinions of Dr. McGuire that Plaintiffs timely disclosed.  For example, in Gilead's opening statement, counsel explained to the jury that Dr. McGuire's model and resulting opinion regarding generic delay were built on the "assumption … that Teva was likely to win the FTC patent litigation," which relied "completely on the opinion of … Mr. Edward Lentz" without regard to evidence of Teva's own contemporaneous assessment reflected in its "internal documents."  May 30 Trial Tr. 394:11-396:11; *see also id.* 398:6-398:12.  Likewise, in Teva's opening statement, counsel told the jury that Dr. McGuire's entry-date opinion relied on an input from "Mr. Lentz" and "did not use Teva's assessment" of its odds of invalidating both the FTC patents and the combination patents.  *Id.* 452:1-11.  Counsel further stressed that Dr. McGuire "knew" "about the Teva evidence," but that he "never ran his model using the numbers that Teva put in his documents at the time," creating a significant evidentiary gap.  *Id.* 452:12-19.  As a result, counsel told the jury, if the jury concludes "that Teva's assessment of the probabilities is reasonable, then for that reason alone, you can find that Dr. McGuire provides no evidence of generic delay."  *Id.* 452:20-23.

Allowing Plaintiffs to contradict Defendants' representations to the jury through the belated introduction of a new expert opinion that contradicts their earlier disclosures would cause severe and incurable prejudice. Defendants based their opening statements, and their broader trial strategy, on the understanding that Dr. McGuire would only "testify about material in [his] report, not things that are not in [his] report." McGuire July 18 Tr. 27:11-14. Plaintiffs should not be permitted to gain an unfair tactical advantage through their "trial by ambush." *Nanjing Elble Envt'l Protection Tech. Corp. v. RePET, Inc.*, 2018 WL 5115577, at *6 (C.D. Cal. Mar. 20, 2018).

Nor can Plaintiffs justify their violation of Rule 26(a)(2) by reference to the April 6, 2023 exhibit list, which listed Expanded Table 3 among thousands of other exhibits and misleadingly dated the document as June 23, 2022—the date of Dr. McGuire's original report. Expert discovery closed in August 2022; Defendants did not receive this chart in any form until April 2023. Moreover, the demonstrative, categorized as a Rule 1006 summary document, was not identified for use with Dr. McGuire specifically, and certainly did not purport to contain a new opinion not included in any of Dr. McGuire's expert reports:



| TRIAL EX. | DOC DATE | BEGBATES | ENDBATES | DESCRIPTION | PURPOSE | POSSIBLE WITNESS(ES) | OBJECTION(S) | RESPONSE TO OBJECTIONS | TIER |
|---|---|---|---|---|---|---|---|---|---|
| 5592A | 6/23/2022 | N/A | N/A | McGuire MFEP Report Table 3: The Timing of Teva Generic Entry in Alternative Settlements Based on Teva's Chance of Winning the Truvada/Atripla FTC Patent Litigation (Expanded) | PLFS: May be used as a Rule 1006 summary | PLFS: Expert(s) | DEFS: 403, 802, 602, 901, 1006 | PLFS: This document summarizes evidence and testimony that is relevant and not prejudicial. It is expected to be used with expert witness, to whom Rule 602 does not apply, and the foundation for the evidence will be properly laid. | PLFS: 2 |

By contrast, when Plaintiffs disclosed new opinions with other experts (specifically Frank, Berndt, and Hoyt), they did so ***before*** trial, with newly issued reports—signaling that their expert was providing a new opinion, and providing Defendant an opportunity to depose the experts accordingly. Indeed, these updated expert reports were disclosed in first several weeks of April—precisely the same time that Plaintiffs buried the Expanded Table 3 in their exhibit list. *See* Ex. I (Plaintiffs' April 7, 2023 email disclosing the Updated Expert Damages Report of Richard G. Frank); Ex. J (Plaintiffs' April 18, 2023 email disclosing the Supplemental Expert Damages Report of Ernst R. Berndt); Ex. K (Plaintiffs' April 19, 2023 email disclosing the Update to the Expert Reply Report of Brian E. Hoyt). Such a disclosure would still have been improper, but the failure to make even that attempt at disclosure is all the more egregious. Allowing

Plaintiffs to flout their disclosure obligations by burying a new expert opinion on a critical issue among thousands of exhibits will reward gamesmanship of the worst kind.

## CONCLUSION

The Court should exclude the improper demonstrative and preclude Dr. McGuire from testifying about any previously undisclosed opinion.

Dated:  June 9, 2023

**KIRKLAND & ELLIS LLP**

By:  _/s/ Jay P. Lekowitz_

Jay P. Lefkowitz, P.C. (*pro hac vice*)
Devora W. Allon, P.C. (*pro hac vice*)
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York 10022
Tel: (212) 446-4800
lefkowitz@kirkland.com
devora.allon@kirkland.com

James F. Hurst, P.C. (*pro hac vice*)
Kevin T. Van Wart, P.C. (*pro hac vice*)
Kevin M. Jonke (*pro hac vice*)
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, Illinois 60654
Tel: (312) 862-2000
james.hurst@kirkland.com
kevinvanwart@kirkland.com
kevin.jonke@kirkland.com

Michael J. Shipley (SBN 233674)
KIRKLAND & ELLIS LLP
555 South Flower Street
Suite 3700
Los Angeles, California 90071
Tel: (213) 680-8400
michael.shipley@kirkland.com

Bart H. Williams (SBN 134900)
Susan L. Gutierrez (SBN 273980)
Christina Maria Assi (SBN 311992)
PROSKAUER ROSE LLP

11

1

2029 Century Park East, Suite 2400
Los Angeles, California 90067
Tel: (310) 557-2900
bwilliams@proskauer.com
sgutierrez@proskauer.com
cassi@proskauer.com

2

3

4

5

*Counsel for Defendants*
*Gilead Sciences, Inc., Gilead Holdings, LLC, Gilead*
*Sciences, LLC, and Gilead Sciences Ireland UC*

6

7

Dated:  June 9, 2023

**GOODWIN PROCTER LLP**

8

By:  */s/ Christopher T. Holding*

9

Christopher T. Holding (*pro hac vice*)
Daryl L. Wiesen (*pro hac vice*)
Joseph Rockers (*pro hac vice*)
Molly R. Grammel (*pro hac vice*)
Tucker DeVoe (*pro hac vice*)
Jordan Bock (SBN 321477)
GOODWIN PROCTER LLP
100 Northern Avenue
Boston, MA 02210
Telephone: (617) 570-1000
Facsimile: (617) 523-1231
CHolding@goodwinlaw.com
DWiesen@goodwinlaw.com
JRockers@goodwinlaw.com
MGrammel@goodwinlaw.com
TDeVoe@goodwinlaw.com
JBock@goodwinlaw.com

10

11

12

13

14

15

16

17

18

Brian T. Burgess (*pro hac vice*)
GOODWIN PROCTER LLP
1900 N Street, NW
Washington, DC 20036
Telephone: (202) 346-4000
Facsimile: (617) 523-1231
BBurgess@goodwinlaw.com

19

20

21

22

Ariel Rogers (SBN 316910)
GOODWIN PROCTER LLP
601 Marshall Street
Redwood City, CA 94063
Telephone: (650) 752-3100
Facsimile: (650) 853-1038
ARogers@goodwinlaw.com

23

24

25

26

*Attorneys for Defendant*
*Teva Pharmaceuticals USA, Inc.*

27

28

12

**FILER'S ATTESTATION**

Pursuant to Local Rule 5-1(i)(3) of the Northern District of California, regarding signatures, I Christopher T. Holding attest that concurrence in the filing of this document has been obtained.

*/s/ Christopher T. Holding*
Christopher T. Holding

13

DEFENDANTS' MOTION TO PRECLUDE UNTIMELY EXPERT OPINIONS FROM DR. MCGUIRE
(CASE NO: 3:19-CV-02573-EMC)

1

## CERTIFICATE OF SERVICE

2

3

On June 9, 2023, I electronically filed the foregoing with the Clerk of the Court by using the

4

CM/ECF system which will send a notice of electronic filing to all persons registered for ECF.  All copies

of documents required to be served by Fed. R. Civ. P. 5(a) and L.R. 5-1 have been so served.

5

6

*/s/ Christopher T. Holding*
Christopher T. Holding

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANTS' COMMENTS ON THE COURT'S PROPOSED JURY INSTRUCTIONS
(CASE NO: 3:19-CV-02573-EMC)