Francis O. Scarpulla (Cal. Bar 41059)
**LAW OFFICES OF FRANCIS O. SCARPULLA**
3708 Clay Street
San Francisco, CA 94118
Telephone: (415) 751-4193
Facsimile: (415) 788-0706
fos@scarpullalaw.com

*Liaison Counsel for the Direct Purchaser Classes*

Michael L. Roberts
**ROBERTS LAW FIRM US, PC**
1920 McKinney Avenue, Suite 700
Dallas, TX 75201
Telephone: (501) 821-5575
mikeroberts@robertslawfirm.us

Dianne M. Nast
**NASTLAW LLC**
1101 Market Street, Suite 2801
Philadelphia, PA 19107
Telephone: (215) 923-9300
Facsimile: (215) 923-9302
dnast@nastlaw.com

*Co-Lead Counsel for the Direct Purchaser Classes*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| *IN RE HIV ANTITRUST LITIGATION* | Case No. 3:19-cv-02573-EMC (lead case) |
| THIS DOCUMENT RELATES TO : <br><br> KPH Healthcare Services, Inc. v. Gilead Sciences, Inc. *et al.*, 3:20-cv-06961-EMC | **DIRECT PURCHASER CLASS PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT WITH GILEAD DEFENDANTS** <br><br> Date:     September 21, 2023* <br> Time:     1:30 p.m. <br> Ctrm:    5 – 17th Floor <br> Judge:   Honorable Edward M. Chen <br><br> *Subject to Court's consent, Direct Purchaser Class Plaintiffs seek to vacate hearing and have motion decided on the papers.* |

**NOTICE OF MOTION AND MOTION**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that Plaintiff KPH Healthcare Services, Inc. a/k/a Kinney Drugs, Inc., on behalf of itself and the Direct Purchaser Classes, hereby moves the Court pursuant to Federal Rule of Civil Procedure 23(e) for entry of an Order:

1.     Granting preliminary approval of the agreement by and between KPH, on behalf of itself and the Direct Purchaser Classes previously certified by this Court, and Defendants Gilead Sciences, Inc.; Gilead Holdings, LLC; Gilead Sciences, LLC; Gilead Sciences Ireland UC to settle the claims against Gilead in this action (the "Settlement" or "Settlement Agreement"), based on the Court's finding that the Settlement is fair, reasonable, and adequate within the meaning of Fed. R. Civ. P. 23;

2.     Appointing KCC Class Action Services, LLC as Settlement Administrator to disseminate settlement notice to the Classes, process and engage in follow-up communications relating to Claim Forms, and, if the Settlement is granted final approval, administer distribution of the Gilead Settlement Fund;

3.     Appointing The Huntington National Bank as Escrow Agent to receive and invest the Gilead Settlement Fund in the Escrow Account in accordance with the terms of the Escrow Agreement;

4.     Finding that dissemination of notice to the Classes is warranted and approving the proposed forms and manners of notice as compliant with Rule 23 and due process;

5.     Directing Gilead to serve notice on the appropriate federal and state officials as required by the Class Action Fairness Act, 28 U.S.C. § 1715 ("CAFA Notice") and contemporaneously provide an electronic copy of the notice to Co-Lead Class Counsel;

6.     Approving the proposed Plan of Allocation;

7.     Setting a schedule for the final approval process, including deadlines for claim submissions and objections and a date for a Final Approval Hearing; and

1

DPPS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION
SETTLEMENT WITH GILEAD / CASE NO: 3:19-CV-02573-EMC / RELATED CASE NO. 3:20-CV-06961-EMC

8.      Providing that if final approval of the Settlement is not obtained, the Settlement shall be null and void, and the settling parties will revert to their positions *ex ante* without prejudice to their claims or defenses.

In support of this motion, KPH submits that the Settlement is fair, reasonable, and adequate. The Settlement requires Gilead to pay $246,750,000 into a Settlement Fund for the benefit of the certified Direct Purchaser Classes, and the proposed form and manner of notice will adequately inform the Direct Purchaser Classes of the terms of the Settlement.

This motion is based on the Notice of Motion, the Supporting Memorandum of Points and Authorities, the supporting declarations and exhibits, and all papers and records on file in this matter.

KPH has conferred with counsel for Gilead. Gilead does not oppose this motion.

PLEASE TAKE FURTHER NOTICE that the hearing on this motion is presently set for September 21, 2023, at 1:30 p.m., or as soon thereafter as the matter may be heard, before the Honorable Edward M. Chen, United States District Judge, in Courtroom 5 of the United States District Court for the Northern District of California in San Francisco, California.  KPH respectfully submits that this matter is appropriate for disposition without a hearing, and requests that the Court vacate the hearing date and decide the motion on the papers.

# TABLE OF CONTENTS

I.     INTRODUCTION ................................................................................................1

II.    THE SETTLEMENT ...........................................................................................1

     A.     The Settlement Classes ..........................................................................1

     B.     Benefits of the Settlement to the Classes................................................2

     C.     The Released Claims ..............................................................................2

     D.     Attorneys' Fees, Costs and Expenses, and Representative Plaintiff Service Award ..................................................................................................4

III.   ARGUMENT.....................................................................................................4

     A.     The Settlement Meets the Standard for Preliminary Approval ...............4

         1.     The Classes Are Adequately Represented. ...................................6

         2.     The Settlement was Reached on the Eve of Trial and is the Result of Arm's-Length Negotiations. ........................................................7

         3.     The Settlement Is Fair and Equitable for All Members of the Classes. .......9

         4.     Similar Allocation and Notice Plans Were Approved in the BMS Settlement Earlier in This Litigation. .........................................10

         5.     The Settlement is an Excellent Result for the Classes and Is Within the Range of Possible Approval. .................................................11

     B.     The Proposed Forms and Manner of Notice Will Inform Members of the Classes of the Settlement and their Options. .........................................13

         1.     The Proposed Manner of Notice Ensures that All Members of the Classes will Timely Receive Notice ...........................................13

         2.     The Proposed Claim Form Process Effectuates the Plan of Allocation, which is Fair, Adequate, and Reasonable ...............................15

         3.     The Proposed Forms of Notice Satisfy the Guidance Provided in Rule 23(c)(2)(B), the Manual, and the ND CA Procedural Guidance........17

         4.     The Court Should Not Allow Another Opt-Out Opportunity....................18

     C.     The Court Should Appoint The Huntington National Bank as Escrow Agent and KCC Class Action Services, LLC as Settlement Administrator.....................20

     D.     The Proposed Schedule Meets the Standard for Approval .....................21

IV.   CONCLUSION................................................................................................22

i

1

# TABLE OF AUTHORITIES

2

**Cases**

3

*Acosta v. Trans Union, LLC,*
243 F.R.D. 377 (C.D. Cal. 2007) ........................................................................................ 7, 8, 11

4

5

*Alberto v. GMRI, Inc.,*
252 F.R.D. 652 (E.D. Cal. 2008) .................................................................................................. 5

6

*Bellinghausen v. Tractor Supply Co.,*
303 F.R.D. 611 (N.D. Cal. 2014) ............................................................................................... 12

7

8

*Churchill Village, LLC v. Gen. Elec.,*
361 F.3d 566 (9th Cir. 2004) ....................................................................................................... 5

9

*Class Plaintiffs v. Seattle,*
955 F.2d 1268 (9th Cir. 1992) ................................................................................................ 4, 19

10

11

*Collins v. Cargill Meat Solutions Corp.,*
274 F.R.D. 294 (E.D. Cal. 2011) ............................................................................................... 12

12

*Cottle v. Plaid Inc.,*
No. 20-cv-03056-DMR, 2021 WL 5415252 (N.D. Cal. Nov. 19, 2021) ................................. 5, 6

13

14

*Cuzick v. Zodiac U.S. Seat Shells, LLC,*
No. 16-cv-03793-HSG, 2017 WL 4536255 (N.D. Cal. Oct. 11, 2017) ............................ 7, 11, 12

15

*Denney v. Deutsche Bank AG,*
443 F.3d 253 (2d Cir. 2006) ....................................................................................................... 18

16

17

*Eisen v. Carlisle & Jacquelin,*
417 U.S. 156 (1974) ................................................................................................................... 15

18

*Haralson v. U.S. Aviation Servs. Corp.,*
383 F. Supp. 3d 959 (N.D. Cal. 2019) ...................................................................................... 4, 5

19

20

*Harris v. Vector Mktg. Corp.,*
No. 08-cv-05198-EMC, 2011 WL 1627973 (N.D. Cal. Apr. 29, 2011) .................................. 7, 11

21

*Hunt v. Check Recovery Sys., Inc.,*
No. 05-cv-04993-MJJ, 2007 WL 2220972 (N.D. Cal. Aug. 1, 2007) ......................................... 15

22

23

*In re Aggrenox Antitrust Litig.,*
No. 14-md-02516 (D. Conn. Dec. 19, 2017), ECF No. 740 ......................................................... 9

24

*In re Aggrenox Antitrust Litig.,*
No. 14-md-02516 (D. Conn. Nov. 22, 2017), ECF No. 733-1 ...................................................... 9

25

26

*In re Aggrenox Antitrust Litig.,*
No. 14-md-02516, 2017 WL 11636126 (D. Conn. Dec. 21, 2017) ............................................. 10

27

*In re Aggrenox Antitrust Litig.,*
No. 14-md-02516 (D. Conn. Nov. 22, 2017), ECF 733-8 ........................................................... 10

28

ii

DPPS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION
SETTLEMENT WITH GILEAD / CASE NO: 3:19-CV-02573-EMC / RELATED CASE NO. 3:20-CV-06961-EMC

*In re Asacol Antitrust Litig.*,
No. 15-cv-12730 (D. Mass. Aug. 18, 2017), ECF No. 419-9.........................................................9

*In re Asacol Antitrust Litig.*,
No. 15-cv-12730 (D. Mass. Dec. 7, 2017), ECF No. 648 ...............................................................9

*In re Asacol Antitrust Litig.*,
No. 15-cv-12730 (D. Mass. Feb. 28, 2019), ECF No. 756............................................................16

*In re Asacol Antitrust Litig.*,
No. 15-cv-12730 (D. Mass. Nov. 20, 2017), ECF No. 582-4.........................................................16

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
No. 07-cv-05944-JST, 2016 WL 721680, (N.D. Cal. Jan. 28, 2016).............................................10

*In re Celebrex (Celecoxib) Antitrust Litig.*,
No. 14-cv-00361 (E.D. Va. Apr. 18, 2018), ECF No. 630 ..............................................................9

*In re Celebrex (Celecoxib) Antitrust Litig.*,
No. 14-cv-00361 (E.D. Va. Nov. 22, 2017), ECF No. 609-4...........................................................9

*In re Celebrex (Celecoxib) Antitrust Litig.*,,
No. 14-cv-00361, 2018 WL 2382091 (E.D. Va. Apr. 18, 2018).....................................................10

*In re Citric Acid Antitrust Litig.*,
145 F. Supp. 2d 1152 (N.D. Cal. 2001)........................................................................................10

*In re Glumetza Antitrust Litig.*,
No. 19-cv-05822-WHA, 2022 WL 327707 (N.D. Cal. Feb. 3, 2022).............................................9

*In re High-Tech Emp. Antitrust Litig.*,
No. 11-cv-02509-LHR, 2013 WL 6328811 (N.D. Cal. Oct. 30, 2013)............................................5

*In re Lidoderm Antitrust Litig.*,
No. 14-md-02521-WHO (N.D. Cal. Mar. 20, 2018), ECF No. 1004-5.............................................9

*In re Lidoderm Antitrust Litig.*,
No. 14-md-02521-WHO (N.D. Cal. Mar. 20, 2018), ECF No. 1004-6.............................................9

*In re Lidoderm Antitrust Litig.*,
No. 14-md-02521-WHO (N.D. Cal. Sept. 20, 2018), ECF No. 1054 ..............................................9

*In re Lidoderm Antitrust Litig.*,
No. 14-md-02521-WHO, 2018 WL 11293766 (N.D. Cal. May 3, 2018) ......................................19

*In re Lidoderm Antitrust Litig.*,
No. 14-md-02521-WHO, 2018 WL 11375216 (N.D. Cal. Sept. 20, 2018) ....................................10

*In re Loestrin 24 Fe Antitrust Litig.*,
No. 13-md-02472 (D.R.I. Sept. 1, 2020), ECF No. 1462 ...............................................................9

*In re Loestrin 24 Fe Antitrust Litig.*,
No. 13-md-2472 (D.R.I. Jan. 22, 2020), ECF No. 1396-8 ..............................................................9

*In re Loestrin 24 Fe Antitrust Litig.*,
No. 13-md-02472 (D.R.I. Aug. 13, 2020), ECF No. 1448 .............................................................13

iii

*In re Loestrin 24 Fe Antitrust Litig.*,
  No. 13-md-02472 (D.R.I. Mar. 23, 2020), ECF No. 1426 ........................................ 19

*In re Loestrin 24 Fe Antitrust Litig.*,
  No. 13-md-02472, 2020 WL 5203323 (D.R.I. Sept. 1, 2020) ....................................... 10

*In re Nexium (Esomeprazole) Antitrust Litig.*,
  No. 12-md-02409 (D. Mass. June 12, 2015), ECF 1536 ............................................ 19

*In re Pac. Enters. Sec. Litig.*,
  47 F.3d 373 (9th Cir. 1995) ....................................................................... 8

*In re Painewebber Ltd. P'Ships Litig.*,
  171 F.R.D. 104 (S.D.N.Y. 1997) ................................................................... 8

*In re Restasis (Cyclosporine Ophthalmic Emulsion) Antitrust Litig.*,
  No. 18-md-02819 (E.D.N.Y. Apr. 8, 2021) ECF No. 667 ........................................... 11

*In re Restasis (Cyclosporine Ophthalmic Emulsion) Antitrust Litig.*,
  No. 18-md-02819 (E.D.N.Y. Mar. 23, 2021), ECF No. 663 ......................................... 16

*In re Restasis (Cyclosporine Ophthalmic Emulsion) Antitrust Litig.*,
  No. 18-md-02819, 2020 WL 6193857 (E.D.N.Y. Oct. 7, 2020) ............................... 9, 10, 11

*In re Solodyn (Minocycline Hydrochloride) Antitrust Litig.*,
  No. 14-md-02503 (D. Mass. July 18, 2018), ECF No. 1179 .......................................... 9

*In re Solodyn (Minocycline Hydrochloride) Antitrust Litig.*,
  No. 14-md-02503 (D. Mass. June 11, 2018), ECF No. 1163-4 ....................................... 9

*In re Solodyn (Minocycline Hydrochloride) Antitrust Litig.*,
  No. 14-md-02503, 2018 WL 11293802 (D. Mass. Mar. 12, 2018) .................................. 19

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
  No. 07-md-01827-SI, 2011 WL 7575004 (N.D. Cal. Dec. 27, 2011) ............................... 10

*In re Wellbutrin XL Antitrust Litig.*,
  No. 08-cv-02431 (E.D. Pa. Aug. 17, 2012), ECF No. 473 ......................................... 19

*King Drug Co. of Florence, Inc. v. Cephalon, Inc.*,
  No. 06-cv-01797 (E.D. Pa. Oct. 15, 2015), ECF No. 870 .......................................... 9

*King Drug Co. of Florence, Inc. v. Cephalon, Inc.*,
  No. 06-cv-01797 (E.D. Pa. Oct. 8, 2015), ECF No. 864-17 ........................................ 9

*Low v. Trump Univ., LLC*,
  881 F.3d 1111 (9th Cir. 2018) ................................................................... 18

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,
  221 F.R.D. 523 (C.D. Cal. 2004) ............................................................... 8, 11

*Officers for Justice v. Civil Serv. Comm'n of City and Cnty. of San Francisco*,
  688 F.2d 615 (9th Cir. 1982) ................................................................... 18

*Phillips Petroleum Co. v. Shutts*,
  472 U.S. 797 (1985) ........................................................................... 18

iv

*Roberts v. AT & T Mobility LLC*,
  No. 15-cv-03418-EMC, 2021 WL 9564450 (N.D. Cal. Mar. 31, 2021) ................................... 8, 9

*Rodriguez v. W. Publishing Corp.*,
  563 F.3d 948 (9th Cir. 2009) ....................................................................................... 6

*Satchell v. Federal Express Corp.*,
  No. 03-cv-02659-SI, 2007 WL 1114010 (N.D. Cal. Apr. 13, 2007) ................................ 8

*Smith v. American Greetings Corp.*,
  No. 14-cv-02577-JST, 2015 WL 4498571 (N.D. Cal. July 23, 2015) ........................... 12

*Torres v. Pick-A-Part Auto Wrecking*,
  No. 16-cv-01915, 2018 WL 306287 (E.D. Cal. Jan. 5, 2018) ..................................... 16

*Uschold v. NSMG Shared Services, LLC*,
  333 F.R.D. 157 (N.D. Cal. 2019) ......................................................................... 7, 8, 11

*Villegas v. J.P. Morgan Chase & Co.*,
  No. 09 cv-00261-SBA-EMC, 2012 WL 5878390 (N.D. Cal. Nov. 21, 2012) ............... 8

*Zepeda v. PayPal, Inc.*,
  Nos. 10-cv-02500-SBA, 10-cv-01668-SBA, 2014 WL 718509 (N.D. Cal. Feb. 24, 2014)........... 5

**Other Authorities**

15 U.S.C. §§ 1, 2..................................................................................................... 1

*Manual for Complex Litigation (Fourth)* § 21.312 ........................................... 21

*Manual for Complex Litigation (Fourth)* § 21.321 ........................................... 24

*Manual for Complex Litigation (Fourth)* § 21.632 ............................................. 5

Northern District of California's *Procedural Guidance for Class Action Settlements* ........... 6, 21, 27

**Rules**

Fed. R. Civ. P. 23(c) ....................................................................................... 18, 20, 22

Fed. R. Civ. P. 23(e) ........................................................................................... 2, 5, 6

v

DPPS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION
SETTLEMENT WITH GILEAD / CASE NO: 3:19-CV-02573-EMC / RELATED CASE NO. 3:20-CV-06961-EMC

1   **MEMORANDUM OF POINTS AND AUTHORITIES**

2   **I.      INTRODUCTION**

3       On July 24, 2023 KPH Healthcare Services, Inc. ("KPH" or "Plaintiff"), on behalf of itself

4   and the Direct Purchaser Classes ("DPPs" or "Classes"), reached a settlement in this matter with

5   Defendants Gilead Sciences, Inc.; Gilead Holdings, LLC; Gilead Sciences, LLC; and Gilead

6   Sciences Ireland UC (collectively "Gilead"), resolving more than three years of active litigation and

7   several rounds of mediation.[1] KPH alleged that Defendants engaged in anticompetitive conduct in

8   violation of Sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1, 2, which caused DPPs to pay more

9   than they would have otherwise paid for certain drugs used to treat and prevent HIV (Truvada and

10   Atripla) if generic versions of those drugs had not been delayed. Pursuant to the Settlement, Gilead

11   shall pay $246,750,000 for the benefit of the DPPs in exchange for certain releases and the dismissal

12   of the action. As detailed in this Memorandum, this Settlement meets the standard for preliminary

13   approval and provides fair, reasonable, and adequate relief to the previously certified DPPs.

14       KPH, on behalf of the Classes, seeks preliminary approval of the proposed Settlement,

15   approval of the forms and manner of notice to the Classes, appointment of a settlement administrator

16   and escrow agent, and a schedule for the final approval process.

17   **II.      THE SETTLEMENT**

18   **A.      The Settlement Classes**

19       The Settlement was entered into on behalf of the following previously certified Direct

20   Purchaser Classes:

21       **Truvada Class**: All persons or entities in the United States and its
         territories who purchased Truvada or generic Truvada directly from
22       any of Defendants or any brand or generic drug manufacturer from
         February 1, 2018, until the date of the class certification order,
23       September 27, 2022.

24       **Atripla Class**: All persons or entities in the United States and its
         territories who purchased Atripla or generic Atripla directly from
25       any of Defendants or any brand or generic drug manufacturer from

26   _____

27   [1] A copy of the Settlement Agreement ("Settlement" or "S.A.") is attached as Exhibit 1 to the
     Declaration of Michael L. Roberts in Support of Motion for Preliminary Approval of Class Action
28   Settlement ("Roberts Decl."), filed contemporaneously with this motion. The definitions in the
     Settlement are incorporated herein by reference.

1

February 1, 2018, until the date of the class certification order, September 27, 2022.

S.A. ¶ 1(e). The Settlement classes are the certified Direct Purchaser Classes. The following persons and entities are excluded from the Classes: (1) Defendants, named co-conspirators, and their officers, directors, employees, subsidiaries, and affiliates; (2) federal, state, and local governmental entities; (3) any judicial officer presiding over the litigation and members of their immediate family and judicial staff; (4) the Retailer Plaintiffs;[2] and (5) United Healthcare Services Inc. *Id.*

### B.    Benefits of the Settlement to the Classes

Pursuant to the Settlement, Gilead shall pay $246,750,000 into an Escrow Account for the benefit of the Classes (the "Gilead Settlement Fund").[3] All Notice and Administration Expenses and Court-approved attorneys' fees, costs, expenses, and a representative-plaintiff service award shall be paid from the Gilead Settlement Fund. *Id.* ¶ 7. All amounts remaining in the Gilead Settlement Fund after these payments are made (the "Net Gilead Settlement Fund") shall be distributed *pro rata* to each Member of one or both of the Classes that submits a valid claim based on the volume of Truvada, Atripla, and generic equivalents purchased, with varying weights applied, based on the specific drugs purchased and whether the drugs were brand or generic, as set forth in the proposed Plan of Allocation.[4]

### C.    The Released Claims

Under the Settlement, the Classes will release:

> Gilead and each and every Gilead Release Party (collectively, the "Releasees"), from all manner of claims, debts, obligations,

---

[2] The Retailer Plaintiffs are: Walgreen Co.; The Kroger Co.; Albertsons Companies, Inc.; H-E-B, L.P.; Rite Aid Corporation; Rite Aid Hdqtrs. Corp.; and CVS Pharmacy, Inc. The Retailers Plaintiffs and United Healthcare Services Inc. opted out of the DPP Classes.

[3] *Id.* ¶¶ 1(q), 7. Paragraphs 14 and 16 of the Settlement describe the limited scenarios in which the Gilead Settlement Fund, less any incurred Notice and Administration Expenses, would be returned to Gilead. *See also id.* ¶ 7(d) (noting incurred Notice and Administration Expenses are non-refundable).

[4] *See* S.A. Ex. H. The parties to the Settlement submit that a second opt-out period pursuant to Fed. R. Civ. P. 23(e)(4) is not necessary, (*see* S.A. ¶ 16(a)); however, should another opt-out period be ordered by the Court, the parties to the Settlement "have agreed to certain confidential terms regarding the potential reduction of the Gilead Settlement Fund and termination of the Settlement. The parties will lodge the termination and diminution agreement with the Court for *in camera* review, if requested by the Court." *See id.* ¶ 16(b).

> demands, actions, suits, causes of action, damages whenever incurred, liabilities of any nature whatsoever, including costs, expenses, penalties and attorneys' fees, under federal or state laws, whether known or unknown, foreseen or unforeseen, suspected or unsuspected, contingent or non-contingent, assigned or otherwise, in law or equity, that arise out of or relate, in whole or in part in any manner, to all conduct, acts, or omissions alleged in the Action and/or that could have been alleged in the Action (or arising out of substantially the same subject matter), regardless of legal theory.

S.A. ¶ 13(a). Except as otherwise provided in the agreement, the Settlement is not intended to release any claims arising in the ordinary course of business between DPPs and Gilead Release Parties under the Uniform Commercial Code, the laws of negligence, product liability, implied warranty, contract, or personal injury (other than breach of warranty or contract based in whole or in part on any conduct challenged by DPPs in the Action). *Id.* Pursuant to the Settlement, Gilead releases "all claims related to the allegations made in letters to KPH's assignor, McKesson, dated: June 2, 2021 and others, relating to alleged noncompliance with ADR provisions contained in the McKesson/Gilead distribution agreement." *Id.* ¶ 13(b). Furthermore, "[f]or the avoidance of doubt, Gilead shall not seek indemnification from Direct Purchaser Class Member McKesson Corporation as to any and all claims arising out of the Direct Purchaser Class settlement of the above-captions antitrust dispute." Finally, the Settlement provides generally that both Gilead and the DPPs release the provisions, rights, and/or benefits conferred by Section 1542 of the California Civil Code and by any similar, comparable, or equivalent law or principle of common law. *See id.* ¶ 13(c).

The released claims virtually match the claims certified for class treatment on behalf of the DPPs. Before the DPPs and Gilead reached an agreement to settle their claims, the parties to the Settlement had the benefit of having completed discovery; receiving rulings from the Court on class certification and motions for summary judgment, motions *in limine*, *Daubert* motions, and other pretrial motions; and preparing for trial. When the parties settled, opening statements were set to begin the following morning. Co-Lead Counsel therefore well understood the advantages and disadvantages of their case, including what claims were viable for the Classes. With over three years of litigation, the DPPs' claims released by the Settlement accurately reflect the claims having value for the Classes.

3

DPPS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION
SETTLEMENT WITH GILEAD / CASE NO: 3:19-CV-02573-EMC / RELATED CASE NO. 3:20-CV-06961-EMC

### D. Attorneys' Fees, Costs and Expenses, and Representative Plaintiff Service Award

The Settlement provides for the payment of attorneys' fees, costs, expenses, and service awards from the Escrow Account no later than 30 days after the Effective Date of the Settlement; there is no quick-pay provision in the Settlement. S.A. ¶ 12(a).  Pursuant to the Settlement, the amounts of any such awards are intended to be considered by the Court separately from the fairness, reasonableness, and adequacy of the Settlement. *Id.* ¶ 12(b). Aside from the fact that the Settlement would include a common fund, the parties did not discuss attorneys' fees, costs, and expenses or a representative-plaintiff service award until after all substantive elements of the Settlement were agreed upon. *See* Roberts Decl. ¶ 6.

Co-Lead Class Counsel intend to seek Court approval for payment of: (1) an award of attorneys' fees not to exceed 33⅓% of the Gilead Settlement Fund; (2) reimbursement of reasonable out-of-pocket costs and expenses not to exceed $4 million;[5] and (3) a representative-plaintiff service award in the amount of $40,000. DPP counsels' reported lodestar in the case as of August 1, 2023, was $34,111,242 at current rates, with counsel expending more than 39,100 hours litigating the case.[6]  Class Counsel did not seek an award of attorneys' fees in connection with the BMS Settlement. Roberts Decl. ¶ 7.

### III. ARGUMENT

### A. The Settlement Meets the Standard for Preliminary Approval

"The Ninth Circuit maintains a 'strong judicial policy' that favors the settlement of class actions." *Haralson v. U.S. Aviation Servs. Corp.*, 383 F. Supp. 3d 959, 966 (N.D. Cal. 2019) (quoting *Class Plaintiffs v. Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992)). Class action settlements require court approval, *see* Fed. R. Civ. P. 23(e), but "[a]t the preliminary approval stage, 'a full fairness analysis is unnecessary.'" *Zepeda v. PayPal, Inc.*, Nos. 10-cv-02500-SBA, 10-cv-01668-

---

[5] DPP counsel collectively report having incurred $3,379,946 (paid and due) in unreimbursed costs and expenses advancing the litigation. Roberts Decl. ¶ 6. This figure does not include the $2,500,000 DPP counsel were reimbursed in connection with the settlement with Defendant BMS. *Id.* ¶¶ 6, 7. DPP counsel are awaiting a few additional invoices and expect that this number will increase prior to final approval.

[6] Roberts Decl. ¶ 6. Based on the reported lodestar through August 1, 2023, from counsel for the DPPs, an attorneys' fee award of 33⅓% of the fund equates to a lodestar multiplier of 2.41 (($246,750,000 / 3) / $34,111,242 = 2.41). *Id.*

4

DPPS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT WITH GILEAD / CASE NO: 3:19-CV-02573-EMC / RELATED CASE NO. 3:20-CV-06961-EMC

SBA, 2014 WL 718509, at *4 (N.D. Cal. Feb. 24, 2014) (quoting *Alberto v. GMRI, Inc.*, 252 F.R.D. 652, 665 (E.D. Cal. 2008)). The Court need make only an "initial evaluation of the fairness of the proposed settlement . . . on the basis of written submissions and informal presentation from the settling parties." *In re High-Tech Emp. Antitrust Litig.*, No. 11-cv-02509-LHR, 2013 WL 6328811, at *1 (N.D. Cal. Oct. 30, 2013) (citing *Manual for Complex Litigation (Fourth)* ("*Manual*") at § 21.632).

The first step is for the Court to "make a preliminary determination that the settlement is 'fair, reasonable, and adequate' when considering the factors set out in Rule 23(e)(2)." *Haralson*, 383 F. Supp. 3d at 966 (quoting Fed. R. Civ. P. 23(e)(2)). Those factors, set forth in the December 1, 2018 amendments to Rule 23, are whether:

> (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorneys' fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

These amended factors were not intended to "displace" any factor previously adopted by courts, "but rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." Rule 23(e)(2) Advisory Committee Notes to 2018 Amendments. To that end, the Court additionally may consider the *Churchill* factors previously adopted by the Ninth Circuit:

> (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of future litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the state of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement.

*Churchill Vill., LLC v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004); *see also Cottle v. Plaid Inc.*, No. 20-cv-03056-DMR, 2021 WL 5415252, at *11 (N.D. Cal. Nov. 19, 2021) (court examines Rule

23(e)(2) and *Churchill* factors in deciding whether to grant preliminary approval). No additional analysis is required here, however, because the first six *Churchill* factors are included within the analysis of the factors listed in Rule 23(e)(2),[7] and the last two factors are not pertinent to this motion.[8]

The Court also should consider the extent to which the Settlement complies with the Northern District of California's *Procedural Guidance for Class Action Settlements* ("ND CA Procedural Guidance"). Consideration of the foregoing demonstrates that the Settlement is fair, reasonable, adequate, and likely to be granted final approval.

### 1.     The Classes Are Adequately Represented.

The Classes are well represented in this matter. This case was hard-fought from beginning to end. Counsel for the Direct Purchaser Classes spent more than 39,100 hours litigating the case and incurred costs and expenses of $5,879,946 in advancing the matter. Roberts Decl. ¶ 6. Co-Lead Class Counsel, Michael L. Roberts and Dianne M. Nast ("Class Counsel"), have significant experience prosecuting complex antitrust class action cases.[9] When negotiating the Settlement, Class Counsel possessed a clear, comprehensive understanding of the strengths, weaknesses, and value of the claims, enabling them to evaluate the fairness of the Settlement for the Classes.

Additionally, KPH fulfilled its duties as Class Representative by keeping apprised of the litigation, producing significant discovery, presenting a corporate representative for deposition, presenting a corporate representative who was prepared to attend and testify at trial, and evaluating and approving the Settlement. Roberts Decl. ¶ 4. This factor supports preliminary approval.

---

[7] The first four factors are covered under Rule 23(e)(2)(C)(i)'s analysis of whether "the relief provided for the class is adequate, taking into account . . . the costs, risks, and delay of trial and appeal." The fifth and sixth factors are covered under Rule 23(e)(2)(B)'s analysis of whether "the proposal was negotiated at arm's length."

[8] The seventh factor "is inapplicable because there is no government participant in this case." *Cottle*, 2021 WL 5415252, at *14. The eighth factor "is best assessed at the final approval hearing since the court can look at how many class members submitted claim forms and objections." *Id.* (citing *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 967 (9th Cir. 2009)).

[9] *See* Order Granting in Part and Denying in Part Motions for Class Certification at 91, ECF No. 1452-7; Motion to Appoint Counsel as Direct-Purchaser Interim Co-Lead Counsel at 3-7, ECF No. 447.

### 2. The Settlement was Reached on the Eve of Trial and is the Result of Arm's-Length Negotiations.

The Settlement is supported by experienced counsel and was reached on the eve of trial after years of hard-fought litigation and several rounds of contested negotiations assisted by one of the nation's top mediators. "[A]n initial presumption of fairness" is afforded to settlements "recommended by class counsel after arm's-length bargaining." *Cuzick v. Zodiac U.S. Seat Shells, LLC*, No. 16-cv-03793-HSG, 2017 WL 4536255, at \*5 (N.D. Cal. Oct. 11, 2017) (quoting *Harris v. Vector Mktg. Corp.*, No. 08-cv-05198-EMC, 2011 WL 1627973, at \*8 (N.D. Cal. Apr. 29, 2011)). To negotiate at arm's length, counsel "must have been armed with sufficient information about the case to have been able to reasonably assess its strengths and value." *Acosta v. Trans Union, LLC*, 243 F.R.D. 377, 396 (C.D. Cal. 2007). The "court must be satisfied that the parties 'have engaged in sufficient investigation of the facts to enable the court to intelligently make . . . an appraisal of the settlement.'" *Uschold v. NSMG Shared Servs., LLC*, 333 F.R.D. 157, 169 (N.D. Cal. 2019) (quoting *Acosta*, 243 F.R.D. at 396).

By the time KPH and Gilead executed their Memorandum of Understanding ("MOU"), KPH had defeated arbitration and dismissal motions, evaluated extensive briefings and rulings on motions to dismiss other actions, reviewed millions of pages of discovery documents, participated in depositions of dozens of fact witnesses, prepared expert reports and a memorandum in support of class certification, worked with merit experts to support its case-in-chief, briefed numerous pretrial motions, held multiple focus groups, orchestrated a mock trial, participated in jury selection after which a jury was empaneled, and engaged in extensive trial preparation with opening statements scheduled to begin on May 25, 2023. *See* Roberts Decl. ¶¶ 5, 10. Negotiations continued after the MOU was signed for an additional eight weeks while KPH and Gilead met, conferred, and edited the Settlement and its attachments until reaching a meeting of the minds on critical provisions such as the scope of the Classes, the terms of the DPPs' release, and timing for funding, with the exception of one issue. *Id.* ¶ 7. KPH and Gilead re-engaged mediator Kenneth Feinberg to assist the parties in binding mediation to resolve the remaining issue. *Id.* Following the mediator's decision and additional rounds of negotiation on the Settlement and related documents, KPH and Gilead executed the Settlement on July 24, 2023. *Id.*

Class Counsel entered into this agreement with a clear understanding of the strengths, weaknesses, and value of their claims. They have extensive experience litigating antitrust cases and believe the recovery provided in the Settlement is a highly favorable result for the Classes in light of the risks of litigating this case to judgment. *Id.* ¶¶ 5, 10. *See Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004) ("*Rural Telecomms.*") (quoting *In re Painewebber Ltd. P'Ships Litig.*, 171 F.R.D. 104, 125 (S.D.N.Y. 1997)) (Courts afford "[g]reat weight … to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation."); *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995) ("Parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation."). *See also Roberts v. AT & T Mobility LLC*, No. 15-cv-03418-EMC, 2021 WL 9564450, at *1 (N.D. Cal. Mar. 31, 2021) (preliminarily approving settlement reached after "significant litigation[,] . . . investigation and discovery").

These risks included the significant complexity of the trial in this case. KPH was litigating alongside four other plaintiff groups with sometimes diverging interests and trial strategies, involving mostly adverse fact witnesses and weeks of expert testimony, regarding highly complex and abstract subject matter. Roberts Decl. ¶ 10. The jury verdict reached on June 30, 2023 in favor of Defendants Gilead and Teva in the actions brought by the End Payor Plaintiffs ("EPPs"), the Individual Health Plan Plaintiffs ("IHPPs"), and United Healthcare Services Inc. ("United") demonstrates the high level of risk. This factor weighs heavily in favor of preliminary approval.

Importantly, this Settlement was negotiated before an experienced mediator, Kenneth Feinberg. The parties' use of an experienced mediator, particularly after extensive discovery, "supports the conclusion that Plaintiffs were armed with sufficient information about the case to broker a fair settlement." *Uschold*, 333 F.R.D. at 170; *see also Acosta*, 2018 WL 646691, at *8 ("The use of a mediator and the presence of discovery 'support[s] the conclusion that the Plaintiff was appropriately informed in negotiating a settlement.'") (quoting *Villegas v. J.P. Morgan Chase & Co.*, No. 09 cv-00261-SBA-EMC, 2012 WL 5878390, at *6 (N.D. Cal. Nov. 21, 2012)); *Satchell v. Fed. Express Corp.*, No. 03-cv-02659-SI, 2007 WL 1114010, at *4 (N.D. Cal. Apr. 13, 2007) ("The assistance of an experienced mediator in the settlement process confirms that the settlement is non

collusive."); *Roberts*, 2021 WL 9564450 at *1 (finding the settlement was the product of arms' length negotiations through an experienced mediator).

Furthermore, Class Counsel will request a reasonable fee award, reimbursement for their out-of-pocket costs and expenses, and a service award for KPH. This will be paid from the Gilead Settlement Fund, S.A. ¶ 12(a), and any amounts requested but not awarded will revert to the Classes. While Gilead has agreed not to take any position with respect to these requests, *id.*, the Settlement is not contingent on these awards. To the contrary, Class Counsel and Gilead have agreed that the Court will consider these requests separately from the fairness, reasonableness, and adequacy of the Settlement, and that any order relating to these awards, or any appeal from any such orders, or any modification or reversal to these awards on appeal, shall not operate to modify, cancel, or allow for the termination of the Settlement or affect or delay the finality of any judgment approving the Settlement. *Id.* ¶ 12(b). This factor weighs in favor of preliminary approval.

### 3.     The Settlement Is Fair and Equitable for All Members of the Classes.

The share of the Settlement for each Member of the Classes will be calculated in the same way pursuant to the proposed Plan of Allocation, which provides a standardized method based on the Member's purchases for a *pro rata* calculation of recovery, S.A. Ex. H, as has been approved in this case and similar antitrust cases brought by direct purchasers to recover overcharges. *See, e.g.,* Order Granting DPPs' Mot. for Final Approval of Class Action Settlement with BMS ¶ 2, ECF No. 1524.[10]

The standard for approval of a proposed allocation plan is the same as the standard for approval of a class action settlement; each must be "fair, reasonable and adequate." *See In re Citric*

---

[10] *See also In re Glumetza Antitrust Litig.*, No. 19-cv-05822-WHA, 2022 WL 327707 (N.D. Cal. Feb. 3, 2022); *In re Restasis (Cyclosporine Ophthalmic Emulsion) Antitrust Litig.*, No. 18-md-02819, 2020 WL 6193857, at *1 (E.D.N.Y. Oct. 7, 2020) ("*Restasis*"); *In re Loestrin 24 Fe Antitrust Litig.*, No. 13-md-2472 (D.R.I. Jan. 22, 2020), ECF Nos. 1396-8, 1462 (approved Sept. 1, 2020) ("*Loestrin*"); *In re Lidoderm Antitrust Litig.*, No. 14-md-02521-WHO (N.D. Cal.), ECF Nos. 1004-5, 1004-6, 1054 (approved Sept. 20, 2018) ("*Lidoderm*"); *In re Solodyn (Minocycline Hydrochloride) Antitrust Litig.*, No. 14-md-02503 (D. Mass.), ECF Nos. 1163-4, 1179 (approved July 18, 2018) ("*Solodyn*"); *In re Celebrex (Celecoxib) Antitrust Litig.*, No. 14-cv-00361 (E.D. Va.), ECF Nos. 609-4, 630 (approved Apr. 18, 2018) ("*Celebrex*"); *In re Aggrenox Antitrust Litig.*, No. 14-md-02516 (D. Conn.), ECF Nos. 733-1, 740 (approved Dec. 19, 2017) ("*Aggrenox*"); *In re Asacol Antitrust Litig.*, No. 15-cv-12730 (D. Mass.), ECF Nos. 419-9, 648 (approved Dec. 7, 2017) ("*Asacol*"); *King Drug Co. of Florence, Inc. v. Cephalon, Inc.*, No. 06-cv-01797 (E.D. Pa.), ECF Nos. 864-17, 870 (approved Oct. 15, 2015).

1    *Acid Antitrust Litig.*, 145 F. Supp. 2d 1152, 1154 (N.D. Cal. 2001) (citations omitted). An allocation

2    plan is reasonable if it "reimburses class members based on the type and extent of their injuries." *Id.*

3          The Plan of Allocation provides that each claimant will receive a *pro rata* share of the Net

4    Gilead Settlement Fund based on its total unit volume of applicable purchases, with varying weights

5    applied depending on which drugs were purchased. S.A. Ex. H ¶¶ 12-14. To address the fact that

6    alleged damages stemming from the purchase of brand drugs are higher than those stemming from

7    the purchase of generic drugs, full value will be placed on purchases of brand drugs for which no

8    generic is available, a multiplier of 0.89 will be applied to brand purchases for which a generic was

9    available, and a multiplier of 0.11 will be applied to generic purchases. *Id.* ¶¶ 12, 14.

10         This plan should be deemed reasonable, given that "in this District, a '*pro-rata* [plan] for

11    allocation has been used in many antitrust cases.'" *See In re Cathode Ray Tube (CRT) Antitrust*

12    *Litig.*, No. 07-cv-05944-JST, 2016 WL 721680, at *21 (N.D. Cal. Jan. 28, 2016) (quoting *In re TFT-*

13    *LCD (Flat Panel) Antitrust Litig.*, No. 07-md-01827-SI, 2011 WL 7575004, at *4 (N.D. Cal. Dec.

14    27, 2011)); *see also In re Lidoderm Antitrust Litig.,* No. 14-md-02521-WHO, 2018 WL 11375216, at

15    * 2 (N.D. Cal. Sept. 20, 2018). Indeed, courts throughout the nation have approved *pro rata*

16    allocation plans in pharmaceutical antitrust class actions similarly alleging generic delay.[11]

17             **4.**     **Similar Allocation and Notice Plans Were Approved in the BMS**
                      **Settlement Earlier in This Litigation.**

18

19         This Court approved similar allocation and notice plans for the settlement between another

   defendant in this litigation, BMS, and KPH, individually and on behalf of a settlement class of direct

20

21    purchasers (the "BMS Settlement"), orchestrated by the same DPP Class Counsel, Dianne Nast and

   Michael Roberts. *See* ECF No. 1524 ¶¶ 2, 9. The certified settlement class for the BMS Settlement

22

23    included:

24              All persons or entities in the United States and its territories who
             directly purchased Atripla, Evotaz, Reyataz, Sustiva, Truvada,

25

26    [11] *See, e.g.*, *Restasis*, 2020 WL 6193857, at *3; *Loestrin*, No. 13-md-02472, ECF 1396-8 at 2-3, 6-8
   (D.R.I. Jan. 22, 2020) (plan submitted); *Loestrin*, No. 13-md-02472, 2020 WL 5203323, at *5
   (D.R.I. Sept. 1, 2020) (plan approved); *Celebrex*, No. 14-cv-00361, 2018 WL 2382091, at *3 (E.D.

27    Va. Apr. 18, 2018); *Aggrenox*, No. 14-md-02516, ECF 733-8 at 2-6 (D. Conn. Nov. 22, 2017) (plan
   submitted); *Aggrenox,* No. 14-md-02516, 2017 WL 11636126, at *2 (D. Conn. Dec. 21, 2017) (plan

28    approved).

Complera or Stribild, or any of their generic equivalents, if any (together, "cART Drugs") from any Defendant or any brand or generic manufacturer from October 6, 2016 until October 19, 2021.

Order Granting DPPs' Mot. for Preliminary Approval of Class Action Settlement with BMS ¶ 2, ECF No. 1159. The Court approved $10.8 million to be paid by BMS into a settlement fund for the settlement class members and up to an additional $200,000 toward costs for providing notice of the settlement to class members. *See id.* ¶ 8. In addition, BMS agreed to waive enforcement of contractual provisions that would otherwise prohibit co-Defendant Gilead from making, or licensing others to make, a version of Evotaz formulated with generic atazanavir (a generic version of BMS's Reyataz). *Id.*

The manner of notice approved by the Court was similar to that proposed here, with direct mail notice consisting of a summary notice and reminder notice and reminder phone calls; digital notice in the form of header banners with the settlement website URL and notice headlines; and a settlement website. *Id.* ¶¶ 14, 15, 16. At the time the motion for final approval was filed, the response rate for the BMS settlement was 75%, or 58 of the 77 known Members of the Classes. *See* Second Decl. of Derek Smith Regarding BMS Allocation Plan ¶ 2, ECF No. 1489-1.

This factor weighs in favor of preliminary approval.[12]

### 5.       The Settlement is an Excellent Result for the Classes and Is Within the Range of Possible Approval.

Whether a settlement falls within the range for possible approval concerns "substantive fairness and adequacy," including "plaintiff's expected recovery balanced against the value of the settlement offer." *Acosta*, 2018 WL 646691, at *9 (quoting *Harris*, 2011 WL 1627973, at *9). An evaluation of the strength of a case is required. *Cuzick*, 2017 WL 4536255, at *6. "[I]t is well-settled law that a proposed settlement may be acceptable even though it amounts to only a fraction of the potential recovery that might be available to class members at trial." *Uschold*, 333 F.R.D. at 171 (quoting *Rural Telecomms.*, 221 F.R.D. at 527).

---

[12] *See also Restasis*, 2020 WL 6193857, at *1, 2, n.3, 6 (similar allocation plan approved where KPH, represented in part by Dianne Nast and Michael Roberts, and plan required distribution of remaining balance after fees, expenses, and service awards on a *pro rata* basis to 32 claimants); *In re Restasis Antitrust Litig.*, No. 18-md-02819, (E.D.N.Y. Apr. 8, 2021), ECF No. 667 ¶¶ 2-3, 4, 16 .

11

DPPS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION
SETTLEMENT WITH GILEAD / CASE NO: 3:19-CV-02573-EMC / RELATED CASE NO. 3:20-CV-06961-EMC

The estimated settlement value cannot be viewed in a vacuum; the court must evaluate the strengths and weaknesses of the case to determine the likelihood of recovering that value. *See Cuzick,* 2017 WL 4536255, at *6; *see also Smith v. Am. Greetings Corp.*, No. 14-cv-02577-JST, 2015 WL 4498571, at *7 (N.D. Cal. July 23, 2015) (evaluating recovery in view of risks). Had KPH not entered into the Settlement on the eve of trial and participated in the jury trial with the other plaintiff groups, it would have faced a significant risk that the jury would find that Gilead lacked market power, that Gilead did not engage in an antitrust violation, or that Members of the Classes suffered no damages. This risk was demonstrated, as discussed, by the June 30, 2023 jury verdict in the related actions of the EPPs, IHPPs, and United.

Here, the Classes' recovery compares favorably to their potential recovery at trial. Before the Settlement, the DPPs' economist, Dr. Russell Lamb, estimated the certified classes' damages of approximately $2,080,000,000. *See* Roberts Decl. ¶ 14. Dr. Lamb's analysis estimated the difference between the amount the DPPs paid for the brand Truvada and Atripla they purchased directly from Gilead and the amount they would have paid as early as May 2019 (when generic Truvada and Atripla likely would have entered the market) by purchasing lower-priced generic versions of Truvada and Atripla absent Gilead's anticompetitive conduct.

The Classes' recovery of $246,750,000 from Gilead therefore amounts to 11.9% of the Class's claimed damages. Although Class Counsel are confident in the strength of the Classes' claims, there was no guarantee that a jury would reach a favorable verdict. Given the relatively high risks of no recovery or a substantially reduced recovery, the Classes' recovery through this Settlement is significant. *See Bellinghausen v. Tractor Supply Co.*, 303 F.R.D. 611, 624 (N.D. Cal. 2014) ("The Court considers that even if 'Plaintiffs were to prevail, they would be required to expend considerable additional time and resources potentially outweighing any additional recovery obtained through successful litigation,' and these delays will affect 'payment to the Class Members and increase the amount of attorneys' fees.'") (quoting *Collins v. Cargill Meat Solutions Corp.*, 274 F.R.D. 294, 302 (E.D. Cal. 2011)).

Furthermore, as noted above, in approving proposed class settlements, courts afford great weight to the recommendation of counsel, who are most closely acquainted with the facts of the

underlying litigation. Class Counsel and the Class Representative KPH support this settlement, and the amount of the Classes' recovery in view of the foregoing factors is well within the range of possible approval.

The amount of the Classes' recovery in view of the foregoing factors is well within the range of possible approval. It compares favorably, for example, to the direct purchaser class settlement in the reverse payment case *In re Loestrin 24 Fe Antitrust Litigation*, No. 13-md-02472, (D.R.I.). In that case, the total settlement fund for the direct purchaser class (of 47) was approximately $120 million.[13] Notice of the settlement and claim forms were sent to all the class members by U.S. First-Class Mail. For the 39 class members and five additional assignees who returned valid claim forms, the average payment per claimant was $1,756,453.96. *Id.* The cost of administering the settlement was $57,517.50, and the court awarded $3,965,558.00 to Class Counsel in reimbursable expenses and 33 ⅓% of the Settlement Fund (net of reimbursed expenses), or $38,678,147.00, as attorneys' fees to Class Counsel. *Id.*

## B. The Proposed Forms and Manner of Notice Will Inform Members of the Classes of the Settlement and their Options.

As required by the ND CA Procedural Guidance at § 2, Class Counsel provide the information below regarding how the settlement administrator plans to provide notice, process claim forms, and send payments to the Classes.

### 1. The Proposed Manner of Notice Ensures that All Members of the Classes will Timely Receive Notice

The proposed notice plan is comprised of three parts.[14] *First*, the settlement administrator will send direct notice via U.S. First-Class mail to each Member of the Classes identified during the notice plan for class certification and confirmed through transactional-level data produced in this litigation, *id.* ¶ 7, and will re-mail any returned notices to any alternate addresses available through postal service forwarding information, *id.* ¶ 8. Before the initial mailing, the settlement administrator

---

[13] *Loestrin*, No. 13-md-02472 (D.R.I. Sept. 1, 2020), ECF No. 1462. This represented a recovery of between 18.75% and 82.75% of single damages, depending on the scenario. *Loestrin*, No. 13-md-02472 (D.R.I. Aug. 13, 2020), ECF No. 1448 at 18-19 (Memo in Support of DPPs' Motion for Final Approval).

[14] *See* Declaration of Carla A. Peak ("Peak Decl.") ¶¶ 7-16, Ex. 3 to the Roberts Decl.

13

DPPS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION
SETTLEMENT WITH GILEAD / CASE NO: 3:19-CV-02573-EMC / RELATED CASE NO. 3:20-CV-06961-EMC

will check all postal addresses against the National Change of Address database maintained by the USPS, certify them via the Coding Accuracy Support System, and verify them through Delivery Point Verification. *Id.* The plan to provide notice of class certification earlier in this litigation identified 78 Members of the Classes, excluding the Retailers and United Healthcare Services, Inc., which opted out of the Classes. *See* Russell L. Lamb Decl. ¶ 5, Ex. 2 to Roberts Decl.

*Second*, the settlement administrator will provide digital notice via *Becker's Pharmacy Report*, *NAW SmartBrief*, and *Pharmaceutical Commerce Direct*, which are the same digital publication services utilized for the Classes' certification notice. Peak Decl. ¶ 9. *Becker's Pharmacy Report* is an electronic publication geared to pharmacy leaders to cover important topics related to pharmacy and supply chain, among others, delivered to more than 18,500 subscribers four times per week. *Id.* ¶ 12. *NAW SmartBrief* is a subscription-only news service dedicated to informing wholesalers and distributors of the news shaping their industry and is delivered to more than 14,500 subscribers daily. *Id.* ¶ 11. *Pharmaceutical Commerce Direct* is geared toward pharmaceutical, biopharmaceutical, marketing communications and other service/consulting industries and is issued twice monthly and has over 14,000 e-newsletter subscribers. *Id.* ¶ 13.

KCC will also cause a press release to appear once in the *PR Newswire*. The *PR Newswire* is the premier global provider of multimedia platforms and distribution that marketers, corporate communicators, sustainability officers, public affairs officers, and investor relations officers leverage to engage key audiences. Its network reaches nearly 3,000 newsrooms, including The New York Times and ABC News, and it sends content to more than 550 news content systems including Moody's, SmartBriefs, LexisNexis and McGraw-Hill. *Id.* ¶ 14.

*Third*, KCC will update the case-specific website as the website used for class certification notice that will maintain copies of the Settlement, a detailed notice, a static blank claim form, a dynamic claim form for use by Members of the Classes with pre-populated claim forms; the Plan of Allocation; the Escrow Agreement; instructions on how to submit a claim form; the motions for approval of this settlement; the motion for approval of fees, expenses, and a service award; pertinent court orders; and any other important documents in the case. *Id.* ¶ 15. The website address will be

1   displayed in the notice documents and will be accessible via a hyperlink embedded in the paid digital

2   notice described above. *Id.*

3          This plan of sending "individual notice to all members who can be identified through

4   reasonable effort" constitutes "the best notice that is practicable under the circumstances." *See* Fed.

5   R. Civ. P. 23(c)(2)(B); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173-77 (1974). This is

6   particularly true here where data should allow most, if not all, members to be identified. *See Hunt v.*

7   *Check Recovery Sys., Inc.*, No. 05-cv-04993-MJJ, 2007 WL 2220972, at *3 (N.D. Cal. Aug. 1, 2007)

8   ("Delivery by first-class mail can satisfy the best notice practicable when there is no indication that

9   any of the class members cannot be identified through reasonable efforts."). The plan to supplement

10  this direct notice with digital notice and the settlement website further supports the conclusion that

11  the proposed notice plan satisfies due process. Given that class notice was previously successful with

12  these same entities, the proposed dissemination of settlement notice by direct mail, paired with the

13  digital notice and website, will be sufficient to reach all Class Members. This factor weighs in favor

14  of preliminary approval.

15          **2.      The Proposed Claim Form Process Effectuates the Plan of Allocation,**
                      **which is Fair, Adequate, and Reasonable**

16          The direct mail notice will include a claim form, pre-populated based on the transactional

17  data referenced above. S.A. Ex. H ¶¶ 2-3. Members of the Classes will have an opportunity to verify

18  the accuracy of the information on the pre-populated forms and/or challenge the accuracy of the pre-

19  populated information with supporting purchase records. *Id.* ¶ 3. The settlement administrator, with

20  assistance from the DPPs' expert economist, Dr. Russel L. Lamb and his staff, shall review and

21  process all claim forms and any challenges, after which the settlement administrator shall advise the

22  claimant in writing if an amendment has been made to its total qualifying purchases. *Id.* ¶¶ 9, 15, 16.

23          Distributions shall be made solely to Members of the Classes who timely execute and return a

24  valid Claim Form. *Id.* ¶ 5. To maximize submissions, the settlement administrator shall follow up by

25  U.S. First-Class mail with any Members of the Classes that do not submit a Claim Form within 42

26  days after the entry of the Preliminary Approval Order, and a second time by U.S. First-Class mail

27  28 days after that. *Id.* ¶¶ 6-8. In the interim, Class Counsel shall follow up by phone with any Class

28

1  Member that has not yet submitted a completed Claim Form. *Id.* ¶ 7. Any Members of the Classes

2  who submit timely but deficient Claim Forms shall be given 28 days from the date on which they are

3  contacted by the settlement administrator to cure the deficiency. *Id.* ¶ 10. Class Counsel have

4  conservatively estimated that with all of these follow-up procedures in place, at least 75% of class

5  members should submit a claim form.[15]

6      Once all allocations are finalized, the settlement administrator shall mail each Member of the

7  Classes who had timely submitted a valid Claim Form a check for its approved distribution, which

8  shall be valid for a period of 90 days. S.A. Ex. H ¶ 17. No later than 28 days after the Claims

9  deadline set forth in the Preliminary Approval Order, the settlement administrator and Dr. Lamb will

10  submit declarations summarizing their efforts and the costs and expenses they incurred and expect to

11  incur in connection with the Allocation Plan. *Id.* ¶ 18.

12      It is anticipated that the entire Net Gilead Settlement Fund will be distributed at one time, but

13  if amounts that are not *de minimis* remain in the fund 180 days after the initial distribution dates,

14  such amounts shall be distributed *pro rata* to claimants that timely cashed their settlement checks

15  based on the same formula used for the initial distribution. *Id.* ¶ 19. If the amounts remaining are *de*

16  *minimis* such that a second distribution would not be economically feasible, Co-Lead Class Counsel

17  shall apply to the Court, with notice to Gilead, addressing the proposed distribution of those funds.

18  *Id.* Unless the confidential reduction provision is triggered, *see supra* n.4, no unclaimed amounts

19  from the Gilead Settlement Fund will revert to Gilead. S.A. ¶ 7.

20      This factor weighs in favor of preliminary approval. *See Torres v. Pick-A-Part Auto*

21  *Wrecking*, No. 16-cv-01915, 2018 WL 306287, at *3-4 (E.D. Cal. Jan. 5, 2018) (finding no obvious

22  deficiencies in proposed agreement providing for non-reversionary cash fund to be divided among

23  class members who submit valid claims and release of liability narrowly tailored to claims).

24  _____

[15] *See* Roberts Decl. ¶ 18. As suggested by ND CA Procedural Guidance at § 1(g), Class Counsel
25  have based this estimate on the BMS Settlement response rate, as well as the claim form return rates
   in other recent antitrust class actions involving direct purchaser plaintiffs. *See Restasis*, No. 18-md-
26  02819 (E.D.N.Y. Mar. 23, 2021), ECF No. 663 ¶ 6 (30 of 37 identified class members, or 81%,
   submitted claim forms; 2 assignees also submitted claims); *Asacol*, No. 15-cv-12730 (D. Mass.
27  Nov. 20, 2017), ECF No. 582-4 ¶¶ 4-5 (Declaration) (notices mailed to 27 class members); *Asacol*,
   No. 15-cv-12730 (D. Mass. Feb. 28, 2019), ECF No. 756 at 2 (Order) (23 (of 27) class members, or
28  85%, submitted claim forms).

### 3. The Proposed Forms of Notice Satisfy the Guidance Provided in Rule 23(c)(2)(B), the Manual, and the ND CA Procedural Guidance

The proposed long-form notice states the following, as required by Rule 23(c)(2)(B): (1) the nature of the action (at No. 1); (2) the definition of the classes certified (at No. 3); (3) the class claims, issues, or defenses (at No. 1); (4) that a class member may enter an appearance through an attorney if the member so desires (at No. 16); and (5) the binding effect of a class judgment on members under Rule 23(c)(3) (at Nos. 4, 8, 11-13). *See* S.A. Ex. D.

The proposed long-form notice also includes additional information recommended by the *Manual* at § 21.312 by: (1) describing options and deadlines (at Nos. 6, 11-13); (2) describing essential terms (at No. 4); (3) disclosing any special benefits provided to the class representatives (at No. 10); (4) providing information regarding fees and costs that will be requested (at No. 10); (5) indicating the time and place of the hearing to consider approval of the settlement (at No. 15); (6) explaining the procedures for allocating and distributing settlement funds (at No. 7); and (7) prominently displaying the procedure for making inquiries (at No. 18).[16]

The proposed long-form notice also includes the additional non-duplicative information recommended in the ND CA Procedural Guidance at § 3, including: (1) contact information for class counsel (at No. 18); (2) the settlement website address (at No. 18); and (3) how to determine if the final approval hearing date has changed (at No. 15).[17] The long-form notice also includes much of the ND CA Procedural Guidance's suggested language about how to access the case docket and Settlement (at No. 18) and how to object via the submission of listed information to only the Court (at Nos. 12, 16).[18]

In sum, the proposed notice provide sufficient information to Members of the Classes to satisfy due process.

---

[16] *See* S.A. Ex. D. As to item 6, the notice refers to *pro rata* distributions, without describing how class members can calculate or estimate their individual recoveries, because calculations cannot be made until after all claim forms are received and processed.

[17] *See* S.A. Ex. D. As to item 2, the settlement website will contain links to the documents listed in the ND CA Procedural Guidance at § 3, as described in the Proposed Manner of Notice section above.

[18] *See* ND CA Procedural Guidance at §§ 3-5; S.A. Ex. D.

1        **4.     The Court Should Not Allow Another Opt-Out Opportunity**

2        A second opt-out opportunity is unnecessary because the Classes previously certified by the

3   Court are the same Classes to benefit from this Settlement, and the Members of the Classes received

4   notice that met and surpassed the constitutional standards for due process and all requirements for

5   Rule 23 when the Classes were certified, as described below. As required by due process and Rule

6   23(c)(2)(B), the initial class notice was "the best practicable [notice], 'reasonably calculated, under all

7   the circumstances, to apprise interested parties of the pendency of the action and afford them an

8   opportunity to present their objections.'" *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812

9   (1985). Class Counsel made every reasonable effort to identify and deliver direct, individual notice to

10  all Class Members. *See* Fed. R. Civ. P. 23(c)(2)(B). And to the greatest extent practicable under the

11  circumstances, Class Counsel apprised all interested parties who could be contacted with reasonable

12  effort of the impending litigation, their rights to participate in or be excluded from the Action, and the

13  legal effect(s) of either choice. The Retailers and United opted out (a total of eight Members).

14      The Court already allowed Members of the Classes an opportunity to opt out following notice,

15  and Rule 23 does not require a second opt-out period. As the Ninth Circuit Court of Appeals observed,

16  forgoing a second opt-out opportunity does not implicate due process concerns:

17              [The objector]'s rights are protected by the mechanism provided in the
                rule: approval by the district court after notice to the class and a

18              fairness hearing at which dissenters can voice their objections, and the
                availability of review on appeal. Moreover, to hold that due process

19              requires a second opportunity to opt out after the terms of the
                settlement have been disclosed to the class would impede the

20              settlement process so favored in the law.

21  *Officers for Justice v. Civil Serv. Comm'n of City and Cnty. of San Francisco*, 688 F.2d 615, 635

22  (9th Cir. 1982).

23      Numerous additional courts throughout the country have likewise declined to order a second

24  opportunity to opt out of certified classes. *See, e.g., Low v. Trump Univ., LLC*, 881 F.3d 1111, 1121

25  (9th Cir. 2018) (affirming rejection of objection to lack of opportunity to opt out at settlement stage

26  because "due process requires that class members be given [only] a single opportunity to opt out");

27  *Denney v. Deutsche Bank AG*, 443 F.3d 253, 271 (2d Cir. 2006) ("Requiring a second opt-out period

28  as a blanket rule would disrupt settlement proceedings because no certification would be final until

after the final settlement terms had been reached"); *Seattle*, 955 F.2d at 1289 ("Class Members were given notice of the action and afforded an opportunity to opt out. The . . . Class Members also were given notice of the proposed settlement and afforded the opportunity to object. This is all that Rule 23 requires."); *Lidoderm*, No. 14-md-02521-WHO, 2018 WL 11293766, at *2 (N.D. Cal. May 3, 2018) ("[B]ecause prior notice of class certification . . . satisfied the requirements of Fed. R. Civ. P. 23(c)(2)(B) and due process, and because the prior notice of class certification provided an opt-out period that [had] closed . . . , there is no need for an additional opt-out period.").

For these reasons, forgoing a second opt-out period is consistent with common practice in other direct purchaser pharmaceutical antitrust class actions in this and other circuits. *See, e.g.*, *Loestrin*, No. 13-md-02472 (D.R.I. Mar. 23, 2020), ECF No. 1426 ¶ 9; *Lidoderm,* 2018 WL 11293766 ¶ 8; *Solodyn*, No. 14-md-02503, 2018 WL 11293802 ¶ 8 (D. Mass. Mar. 12, 2018); *In re Nexium (Esomeprazole) Antitrust Litig.*, No. 12-md-02409 (D. Mass. June 12, 2015), ECF No. 1536 ¶ 3; *In re Wellbutrin XL Antitrust Litig.*, No. 08-cv-02431 (E.D. Pa. Aug. 17, 2012), ECF No. 473 ¶ 5.

A second opt-out period similarly is unwarranted here. Class Members decided not to opt out by the February 3, 2022 deadline indicated in the class notice. Class Members were advised of the consequences of choosing not to exercise their right opt out of the Classes (and the method and deadline for doing so) in clear, concise, conspicuous, and plainly written language, so as to be easily understood by the average class member, and Class Counsel did so repeatedly throughout the notice program:

> ***If you exclude yourself from the Direct Purchaser Class***, you will not be legally bound by anything that happens in this Lawsuit. If you exclude yourself from the Direct Purchaser Class so you can start or continue your own lawsuit against Gilead, or be part of any other lawsuit against Gilead relating to the legal and factual issues in this case, you should talk to your own lawyer because your claims will be subject to a statute of limitations, which means that your claims may be subject to expiration without timely action.
>
> ***If you do not exclude yourself from the Direct Purchaser Class***, you will keep the right to a share of any recovery that may come from a trial or settlement of this Lawsuit. You will not be able to start, continue, or be part of any other lawsuit against Gilead about the legal or factual issues in this case. All the Court's orders in the Lawsuit will

19

apply to you and legally bind you. You also will be bound by any judgment in the Lawsuit.

Class Long Form Notice, ECF No. 1538-6. The explicit exclusion language clearly informed the Class Members of the legal consequences of either remaining in or opting out of the Classes and expressly stated that the possible outcomes of the Action included trial or settlement. *See also id.* at 2, 8 ("If you do nothing, you will keep the right to a share of any recovery that may come from a trial or settlement of this Lawsuit."). Class Members were given a reasonable opportunity to opt-out within at least 49 days of issuance of the notice (from December 16, 2022, from the notice date of the Court's order, ECF No. 1548, and February 3, 2023, the deadline to opt-out). *Manual* § 21.321 ("Courts usually establish a period of thirty to sixty days (or longer if appropriate) following mailing or publication of the notice for class members to opt out."). Therefore, as part of the Settlement Agreement, the Settling Parties have expressly agreed to recommend that a second opt-out opportunity is unnecessary.

There is no reason to believe that Class Members would elect to opt out now, less than a year later, nor should they be allowed to do so. They instead can object to the Settlement if they are opposed to any part of it. *See supra* n.4. Plaintiffs therefore respectfully submit that no additional opt-out opportunity should be provided during notice to the Classes for settlement purposes.

## C.   The Court Should Appoint The Huntington National Bank as Escrow Agent and KCC Class Action Services, LLC as Settlement Administrator

KPH has retained KCC Class Action Services, LLC ("KCC") to serve as Settlement Administrator, and The Huntington National Bank ("Huntington") to serve as Escrow Agent. KCC has been recognized as a best settlement administrator by *The Recorder*, *The New York Law Journal*, and *The National Law Journal*, and has administered over 6,500 cases.[19] The 2020 Antitrust Annual Report on Class Action Filings in Federal Court, published in August 2021, reports that from 2009-2020, KCC was the third top settlement administrator by aggregate settlement amount and the second top settlement administrator by number of settlements.[20] Huntington is a top-25 U.S. bank

---

[19] *See* https://www.kccllc.com/our-services/class-action/what-we-do.

[20] *See* https://papers.ssrn.com/sol3/papers.cfm?abstract_id=3898782, Linked Document at 36.

holding company with $189 billion in assets.[21] Founded in 1866, the bank maintains more than 1,100 branches in twelve states.[22] Huntington's National Settlement Team has handled more than 4,500 settlements totaling over $70 billion and 160 million checks for law firms, settlement administrators, and regulatory agencies.[23] Counsel for the DPPs have securely and successfully used Huntington's escrow services in multiple class action settlements and have requested that Huntington be appointed the escrow agent for this Settlement.

Class Counsel is working with KCC on the previous settlement with BMS in this litigation. During the selection process for the previous BMS Settlement, Class Counsel sought bids from four established settlement administrators, all of which recommended direct mail notice, digital notice, a settlement website, and relatively similar plans for processing claims, deficiency letters, resubmissions, and payments. *See* Roberts Decl. ¶ 15. Class Counsel do not have any financial ties with KCC. *Id.* ¶ 16. Class counsel selected KCC for this settlement because of its competitive proposal and its decades of experience administering complex class action settlements. *Id.*

KCC has estimated the total cost of its administrative services, less discounts, to be $48,381.00, and has agreed to a cap of $50,000.00. *Id.* ¶ 16. This capped amount, representing significantly less than 1% of the Gilead Settlement Fund, is reasonable. KCC's experience, along with the reasonableness of its plans and costs when viewed alone and compared to bids submitted by three additional established entities, supports the appointment of KCC as Settlement Administrator and Huntington as Escrow Agent.

### D.     The Proposed Schedule Meets the Standard for Approval

The schedule outlined in the proposed preliminary approval order provides for the notice process to start within 14 days after entry of the order, with direct mail notice, a press release, and the live settlement website. S.A. Ex. A ¶ 15. Then, 28 days after the entry of the order, KCC will cause digital notice to issue in three separate publications. *Id.* ¶ 16. KCC will follow up with Class Members that have not submitted claim forms via the reminder notice 42 days after entry of the

---

[21] *See* https://www.huntington.com/About-Us.

[22] *See id.*

[23] *See id.*

1  order, and Class Counsel will follow up with those Class Members who have not submitted claims

2  forms by telephone 14 days after that (56 days after entry of the order). *Id.* ¶¶ 17, 18. A second

3  reminder notice will be sent directly to Class Members who have not yet submitted a Claim Form 14

4  days later (70 days after entry of the order). *Id.* ¶ 19. The claim form deadline will follow 28 days

5  after that (98 days after entry of the order). *Id.* ¶ 20. Counsel will move for attorneys' fees,

6  reimbursement of litigation and administrative expenses and costs, and payment of a class

7  representative service award at least 56 days before the Final Approval Hearing, *id.* ¶ 26, and Class

8  Members will have 35 days after that (until 21 days before the Final Approval Hearing) to object to

9  the proposed settlement or the requested attorneys' fees, litigation and administrative expenses, or

10  class representative service award, *id.* ¶ 20. This proposed schedule comports with due process and

11  complies with the timeline required by the ND CA Procedural Guidance at § 9.

12  **IV.    CONCLUSION**

13  For all the foregoing reasons, KPH respectfully requests that the Court preliminarily approve

14  the Settlement, the proposed schedule, and the proposed manner and forms of notice; appoint KCC

15  as Settlement Administrator, and Huntington as Escrow Agent; and set a schedule for the final

16  approval process and the Final Approval Hearing.

17  Respectfully submitted,

18

19  Dated:  August 9, 2023                    LAW OFFICES OF FRANCIS O. SCARPULLA

20  By:  */s/ Francis O. Scarpulla*
      _____

21  FRANCIS O. SCARPULLA (SBN 41059)
     fos@scarpullalaw.com

22  PATRICK B. CLAYTON (SBN 240191)
     pbc@scarpullalaw.com

23  3708 Clay Street
     San Francisco, CA 94118

24  Telephone: (415) 751-4193
     Facsimile:  (415) 788-0706

25

26  *Liaison Counsel for Direct Purchaser Plaintiff Classes*

27

28

ROBERTS LAW FIRM US, PC
MICHAEL L. ROBERTS (*pro hac vice*)
mikeroberts@robertslawfirm.us
ERICH P. SCHORK (*pro hac vice*)
erichschork@robertslawfirm.us
SARAH E. DELOACH (*pro hac vice*)
sarahdeloach@robertslawfirm.us
1920 McKinney Avenue, Suite 700
Dallas, TX 75204
Telephone: (501) 821-5575

NASTLAW LLC
DIANNE M. NAST (*pro hac vice*)
dnast@nastlaw.com
DANIEL N. GALLUCCI (*pro hac vice*)
dgallucci@nastlaw.com
MICHELE S. BURKHOLDER (*pro hac vice*)
mburkholder@nastlaw.com
1101 Market Street, Suite 2801
Philadelphia, PA 19107
Telephone: (215) 923-9300
Facsimile: (215) 923-9302

*Co-Lead Counsel fort the Direct Purchaser Plaintiff Classes*

HAUSFELD LLP
MICHAEL D. HAUSFELD (*pro hac vice*)
mhausfeld@hausfeld.com
888 16th St. NW, Suite 300
Washington DC 20006
Telephone: (202) 540-7200
Facsimile: (202) 540-7201

HAUSFELD LLP
MICHAEL P. LEHMANN (SBN 77152)
mlehmann@hausfeld.com
600 Montgomery Street, Suite 3200
San Francisco, CA 94111
Telephone: (415) 633-1908
Facsimile: (415) 358-4980

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

HAUSFELD LLP
BRENT W. LANDAU (*pro hac vice*)
blandau@hausfeld.com
325 Chestnut Street, Suite 900
Philadelphia, PA 19106
Telephone: (215) 985-3273
Facsimile: (215) 985-3271

*Counsel for the Direct Purchaser Classes*

24

DPPS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION
SETTLEMENT WITH GILEAD / CASE NO: 3:19-CV-02573-EMC / RELATED CASE NO. 3:20-CV-06961-EMC