UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE HIV ANTITRUST LITIGATION. | Case No. 19-cv-02573-EMC<br><br>**ORDER GRANTING DPPS' MOTION FOR PRELIMINARY APPROVAL**<br><br>Docket No. 2086 |

Currently pending before the Court is the DPPs' motion for preliminary approval of a class action settlement with Gilead. The Court previously certified two DPP classes: (1) the Truvada Class and (2) the Atripla Class. *See* Docket No. 1388 (order). There are approximately 76 Truvada Class Members and 53 Atripla Class Members. Having considered the briefing submitted, as well as all other evidence of record, the Court hereby **GRANTS** the motion for preliminary approval.

A court may grant preliminary approval to a class action settlement only if it finds the settlement fair, reasonable, and adequate. *See* Fed. R. Civ. P. 23(e)(2). In making this assessment, a court considers whether:

    (A)    the class representatives and class counsel have adequately represented the class;

    (B)    the proposal was negotiated at arm's length;

    (C)    the relief provided for the class is adequate, taking into account:

        (i)    the costs, risks, and delay of trial and appeal;

        (ii)    the effectiveness of any proposed method of

|   |   |
|---|---|
|   | distributing relief to the class, including the method of processing class-member claims; |
| (iii) | the terms of any proposed award of attorney's fees, including timing of payment; and |
| (iv) | any agreement required to be identified under Rule 23(e)(3); and |
| (D) | the proposal treats class members equitably relative to each other. |

Fed. R. Civ. P. 23(e)(2).

The Ninth Circuit has endorsed consideration of similar or related factors:

> the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998). "This list is not exclusive and different factors may predominate in different factual contexts." *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993).

In the instant case, the DPPs and Gilead have proposed a settlement under which a gross settlement fund of $246,750,000 would be created for the benefit of the Truvada and Atripla Classes. Deductions would be made from the gross settlement fund, including up to $82.25 million in attorneys' fees (*i.e.*, 33 1/3% of the gross settlement fund) and up to $4 million in expenses. After deductions (including the fully requested attorneys' fees), there would be approximately $164 million to be distributed to the two classes. The estimated average payout per class member is more than $2 million. The net settlement fund will be distributed to class members pursuant to a Plan of Allocation. As explained in the motion, the net settlement fund "shall be distributed *pro rata* to each Member of one or both of the Classes that submits a valid claim based on the *volume* of Truvada, Atripla, and generic equivalents purchased, with varying weights applied, based on the *specific* drugs purchased and whether the drugs were *brand or generic*." Mot. at 2. The DPPs have submitted a declaration from their expert, Dr. Lamb, to support the Plan of Allocation.

None of the net settlement fund shall revert back to Gilead (unless the terms of a confidential agreement between the DPPs and Gilead are triggered). This is true even if, *e.g.*, the Court were to find that not all attorneys' fees and expenses requested should be awarded.

The Court has considered the Rule 23(e)(2) and *Hanlon* factors. Those factors weigh in favor of preliminary approval of the class action settlement. For example, the settlement appears reasonable given the maximum value of the case and the litigation risks. Based on an analysis done by Dr. Lamb, the DPP Classes' damages were approximately $2.08 billion. The DPPs settled for about 12% of those maximum damages. Although this percentage is less than robust, the absolute dollar value of the gross settlement fund is still significant. Moreover, there were significant litigation risks, as the Court repeatedly cautioned the parties during the course of the proceedings. This was an antitrust case involving a complicated regulatory scheme and a patent overlay. There were a multitude of experts who would provide testimony about complex scientific and economic issues. The elements of the antitrust claims were not simple, requiring the jury to work through a rule-of-reason test with three steps. The jury would also have had to deal with multiple plaintiffs and multiple defendants. And of course, with hindsight, it is clear that there were significant litigation risks given that the indirect purchasers chose to proceed to trial and lost.

The Court, therefore, shall forthwith stamp the proposed order on preliminary approval submitted by the parties. *See* Docket No. 2086-5 (proposed order). The Court, however, modifies that order as follows.

- **Notice to the class.** The Court acknowledges that notice in the BMS settlement – which is consistent with the notice proposed here – was strong. *See* Supp. Br. at 8 (stating that the claims submitted represented more than 99% of the volume of drugs covered by the settlement). Nevertheless, given the significant settlement fund in this settlement, the Court shall require additional publication and digital notice. The cost of additional notice is not significant. Furthermore, as stated in their supplemental brief, the parties are amenable to additional publication and digital notice. *See* Supp. Br. at 8 (stating that "the notice in the e-newsletters may be published more than once, and the press release may be published in *Business*

3

*Wire* as well as in the *PR Newswire*"). The Court shall also require the DPPs to contact class members by phone and email as part of the reminder notice.

- **Second opportunity to opt out.** Rule 23(e) provides: "If the class action was previously certified under Rule 23(b)(3), the court may refuse to approve a settlement unless it affords a new opportunity to request exclusion to individual class members who had an earlier opportunity to request exclusion but did not do so." Fed. R. Civ. P. 23(e)(4). The Court finds that a second opportunity to opt out is not necessary in this case. The class members are sophisticated entities and thus understood the importance of the decision of whether or not to opt out at the time they were notified of class certification. Indeed, at the time of that decision, most if not all class members had already been notified of the BMS settlement and thus they were already familiar with the case at bar. Since notice of class certification was issued and the deadline to opt out expired, there have been no material changes, *e.g.*, in the information available to the classes, that would warrant a second opportunity to opt out. Indeed, the most significant development since the original class notice was the trial on the claims of indirect purchasers – a trial that ended with a defense verdict. As a practical matter, it seems unlikely that anyone would opt out with a second notice given that the DPPs achieved a significant settlement and the indirect purchasers lost at trial. *See* Fed. R. Civ. P. 23, 2003 advisory committee notes ("The decision whether to approve a settlement that does not allow a new opportunity to elect exclusion is confided to the court's discretion. . . . Many factors may influence the court's decision. Among these are changes in the information available to class members since expiration of the first opportunity to request exclusion, and the nature of the individual class members' claims."); *see also Low v. Trump Univ., LLC*, 881 F.3d 1111, 1121 (9th Cir. 2018) ("[There is] no authority of any kind suggesting that due process requires that members of a Rule 23(b)(3) class be given a second chance to opt out. We think it does not. Byrd's rights are protected by the mechanism provided in the rule: approval by the district

court after notice to the class and a fairness hearing at which dissenters can voice their objections, and the availability of review on appeal.  Moreover, to hold that due process requires a second opportunity to opt out after the terms of the settlement have been disclosed to the class would impede the settlement process so favored in the law.").

- **Language of the notice.**  The Court shall not require the first bolded sentence in each notice to include information about the average payout.  However, the Court shall require a modification to that sentence so that members are alerted to the amount of the gross settlement fund: "If you purchased brand or generic Truvada or Atripla directly from the manufacturer, you may receive a payment from a class action settlement.  Under the settlement, Gilead agreed to pay $246,750,000 into a Settlement Fund."

The Court shall hold a hearing on a motion for final approval on **January 18, 2024, at 1:30 p.m.**  As noted above, the Court shall stamp the proposed order at Docket No. 2086-5 forthwith.

This order disposes of Docket No. 2086.

**IT IS SO ORDERED**.

Dated: September 25, 2023

_____
EDWARD M. CHEN
United States District Judge