1
2
3
4                      UNITED STATES DISTRICT COURT
5                     NORTHERN DISTRICT OF CALIFORNIA
6

IN RE HIV ANTITRUST LITIGATION.

Case No.  19-cv-02573-EMC

**ORDER DENYING PLAINTIFFS'
MOTION FOR ENTRY OF SET-ASIDE
ORDER**

Docket No. 2080

United States District Court
Northern District of California

This antitrust suit began in 2019, with a complaint filed by indirect purchasers of HIV drugs manufactured by, *inter alia*, Gilead.  As the case progressed, other indirect purchasers filed suit as did direct purchasers.  By the time of the trial of the reverse payment claims in 2023,[1] there were five groups of plaintiffs: the EPPs (representing the indirect purchaser classes), the IHPPs (essentially, indirect purchaser opt-outs), United (also an indirect purchaser opt-out)[2], the DPPs (representing the direct purchaser classes), and the Retailer Plaintiffs (essentially, direct purchaser opt-outs).  Some of these plaintiffs asserted claims against Gilead alone (*e.g.*, the EPPs), and some asserted claims against both Gilead and Teva (*e.g.*, the Retailer Plaintiffs).  During the course of the litigation, the parties engaged the services of the mediator Kenneth Feinberg.  All the parties actively engaged in settlement discussions with Mr. Feinberg.

On the eve of trial, the two sets of direct purchasers – namely, the DPPs and the Retailer

---

[1] The Court bifurcated the trial into two phases: Phase I was to deal with the reverse payment claims only; Phase II was to deal with the NGR (No Generics Restraint) claims only.

[2] United also had direct purchaser claims by virtue of an assignment.  For purposes of this opinion, however, the Court groups United with the indirect purchasers.

Plaintiffs – announced a settlement with Gilead and Teva.  The indirect purchasers, including the EPPs, did not reach a settlement with Defendants and proceeded to a jury trial on the reverse payment claims.  They lost.  Approximately a month later, the EPPs filed the currently pending motion.  In their motion, the EPPs ask the Court to issue an order directing that, if any defendant is to make a payment to a plaintiff (whether under a settlement or a judgment), then a portion of that payment should be set aside into an escrow account so that the EPPs can then hash out with the receiving plaintiff whether the EPPs are entitled to some part of that payment, representing the common benefit that the EPPs provided to the litigation.

Initially, the EPPs filed this motion as to all of the other plaintiffs, both direct purchasers and indirect purchasers.  However, the EPPs resolved their disputes with all of the plaintiffs except for the Retailer Plaintiffs (who are direct purchasers).  Accordingly, at this stage, the only issue for the Court is whether a set-aside order should be entered against the Retailer Plaintiffs who settled before trial.  Having considered the parties' briefs and accompanying submissions, as well as the oral argument of counsel, the Court hereby **DENIES** the EPPs' motion for a set-aside order.

## I.   FACTUAL & PROCEDURAL BACKGROUND

Below is a brief timeline of the relevant events.

- **5/14/2019.**  The first suit was filed.  The EPPs were the first plaintiffs to initiate the litigation.  *See* Docket No. 1 (complaint).

- **9/9/2019.**  The Court appointed interim lead counsel for the EPPs.  *See* Docket No. 163 (order).

- **3/3/2020.**  The Court granted in part and denied in part Defendants' 12(b)(6) motions to dismiss the EPPs' operative complaint.  (The motions were filed by Gilead, BMS, Japan Tobacco, and Janssen.)

- **7/29/2020.**  The Court granted in part and denied in part Defendants' second 12(b)(6) motion to dismiss the EPPs' operative complaint.  (The motion was filed by Gilead, BMS, and Janssen.  Japan Tobacco had been dismissed by the prior order, and the EPPs did not name Japan Tobacco in their amended complaint.)

- **9/22/2021.**  The Retailer Plaintiffs filed their lawsuits – *i.e.*, some two years after

United States District Court
Northern District of California

the EPPs first initiated this litigation.  *See CVS Pharm., Inc. v. Gilead Scis., Inc.*, No. C-21-7378 (N.D. Cal.); *Walgreen Co. v. Gilead Scis., Inc.*, No. C-21-7374 (N.D. Cal.).  Unlike the EPPs and DPPs, the Retailer Plaintiffs included Teva as one of the named defendants.

- **5/29/2023.**  All direct purchasers, including the Retailer Plaintiffs, settled with Gilead and Teva, essentially right as trial was about to start.

- **6/30/2023.**  The jury rendered its verdict in favor of Gilead and Teva and against the indirect purchasers.  *See* Docket No. 2057 (verdict form).

- **7/24/2023.**  The EPPs filed the pending motion for a set-aside order.  In the motion, the EPPs asked for a set aside of 6-8% of any recovery made by a plaintiff (whether an indirect or direct purchaser and whether through settlement or a judgment).  Six percent would apply to any "tag-along" plaintiff that filed its complaint in 2020. Eight percent would apply to any "tag-along" plaintiff that filed its complaint in 2021.  *See* Mot. at 2.  Because the Retailer Plaintiffs filed their lawsuits in 2021, they would be subject to the 8% set-aside request.

In their papers, the EPPs underscore the work they did (1) before their lawsuit was ever filed, (2) before the Retailer Plaintiffs filed their suits, and (3) even after the Retailer Plaintiffs filed their suits.

- *See* Mot. at 3 (asserting that, before filing suit, the EPPs spent "nearly two years and more than 3,000 hours to factual and legal research").

- *See* Mot. at 8 (asserting that, before the Retailer Plaintiffs filed their suits, the EPPs had, *inter alia*, opposed two motions to dismiss, negotiated various protocols, propounded discovery, negotiated search terms and custodians, reviewed discovery, taken depositions, retained and worked with experts, and were about to file a motion for class certification[3]); *see also* Reply at 8 (asserting that the EPPs spent

---

[3] In their opening brief, the EPPs asserted that they had "fully briefed and argued the motion for certification," Mot. at 8, but they corrected this misstatement in their reply brief.  *See* Reply at 10 n.4 (noting that the motion for certification was "filed a month after the retailers joined the case").

"more than 39,000 hours (totaling more than $24 million in attorney and staff time) developing and advancing this litigation before the retailers joined"; adding that the retailers copied the EPP complaint, "adopted all prior orders, were granted access to the million documents and extensive work product in the document review database and the shared work product . . . , and received the roadmap and 'the benefit of the *imprimatur* of [the court] on the theory of the case formulated by' end-payor counsel").

- *See* Reply at 12-14 (arguing that, even after the Retailer Plaintiffs joined, the EPPs "performed the lion's share of the common benefit work" – *e.g.*, serving as the organization and strategic lead for all plaintiffs, preparing for and taking the majority of the deposition, drafting key motions and leading argument at hearings, etc.).

In opposition, the Retailer Plaintiffs challenge or criticize the work done by the EPPs – *e.g.*, spending more time on unsuccessful liability theories rather than on the reverse payment theory, not suing Teva, and spending significant time on class certification of indirect purchasers (whereas Retailer Plaintiffs are direct purchasers). The Retailer Plaintiffs also claim that, when they entered the suit, discovery on the reverse payment theory "was just beginning" and that they substantively contributed to the litigation. Ret. Opp'n at 3. The EPPs, of course, dispute such. *See, e.g.*, Reply at 10 & n.4.

## II.   DISCUSSION

As an initial matter, the Court notes that the type of motion brought by the EPPs here is more commonly seen in the mass tort context. The EPPs do not dispute such. *See, e.g.*, *In re Packaged Seafood Prod. Antitrust Litig.*, No. 315MD02670DMSMDD, 2021 WL 5326517, at *2 (S.D. Cal. Nov. 16, 2021) (noting that "set aside orders 'make[ ] a lot more sense' in mass tort cases wherein large numbers of individual plaintiffs who did not retain the court's designated lead counsel stand to unfairly benefit from the labor of lead counsel"); *In re Zetia Ezetimibe Antitrust Litig.*, No. 2:18-md-2836, 2022 U.S. Dist. LEXIS 234944, at *23 (E.D. Va. Nov. 8, 2022) (noting that mass-tort "cases 'typically involve large numbers of claims asserted by individual plaintiffs

United States District Court
Northern District of California

United States District Court
Northern District of California

who have separately retained counsel that might "free-ride" off the work of designated lead counsel'[;] [s]et-aside orders in such cases are appropriate to give class counsel a path to compensation for their efforts on behalf of the class and ensure that 'high-quality legal work [is not] under-incentivized and, ultimately, under-produced'").

Some courts have "have declined to enter set-aside orders outside of the mass tort context." *Id.* Those decisions have been informed by, *e.g.*, the ability of class counsel to use "[t]he traditional mechanisms for recovery of fees and costs [in a class action] readily available under Rule 23(h)." *Packaged Seafood*, 2021 WL 5326517, at *2. But other courts have been willing to enter set-aside orders in non-mass tort cases, including in antitrust class actions such as this. *See Zetia*, 2022 U.S. Dist. LEXIS 234944, at *23. *Cf. Packaged Seafood*, 2021 WL 5326517, at *2 (conceding that "an MDL court has authority to establish a trust or common fund and order contributions to compensate designated lead counsel under its inherent 'managerial' powers over consolidated actions"); *In re Roundup Products Liability Litigation*, 544 F. Supp. 3d 950, 961-62 (N.D. Cal. 2021) (noting that "district courts handling a mass of related cases have the power to appoint lead counsel to manage the litigation" – that power being "rooted in [its] inherent authority to efficiently manage the cases on its docket because, without lead counsel, hundreds of diligent lawyers would lobby the court for attention, leaving it unable to manage and adjudicate the related cases, not to mention the rest of its docket[;] [i]t follows . . . that a district court can order additional compensation for lead counsel (beyond whatever contingency fee they receive from their own clients) based on the work they do for the collective whole").

For purposes of this order, the Court assumes, without deciding, that it has the inherent authority to enter a set-aside order even though this is not a mass tort case. The Court also assumes, without deciding, that party moving for a set-aside order does not necessarily have to show that it succeeded (or has the potential to succeed) on its own claims in order to be entitled to relief.[4] Rather the Court assumes that the most important animating principle for a set-aside order

---

[4] To be sure, it appears that, in many of the cases cited by the EPPs, the party moving for a set-aside order did prevail or had the potential of prevailing on its own claims. *See, e.g., Roundup*, 544 F. Supp. 3d at 954, 960 (stating that "common benefit" funds are "often created in MDLs so that if lead counsel *succeeds* in a way that benefits all the plaintiffs, they can be compensated from

is unjust enrichment – *i.e.*, if another plaintiff benefitted from the work done by lead counsel (for its client) and *that* plaintiff subsequently achieved success, then as a matter of equity lead counsel should ordinarily be entitled to some compensation.

The problem for the EPPs is that, if equity is what drives their request for fees, then equity demands that the Court consider the Retailer Plaintiffs' laches argument – *i.e.*, that the EPPs' delay in seeking a set-aside order, and resulting prejudice to the Retailer Plaintiffs, is a basis to deny the pending motion.

As indicated by the above, laches has two elements: (1) delay by the moving party and (2) prejudice to the nonmoving party. *See, e.g.*, *Grand Canyon Trust v. Tucson Elec. Power Co.*, 391 F.3d 979, 988 (9th Cir. 2004) (noting that "'laches is not a doctrine concerned solely with timing'" but rather "'is primarily concerned with prejudice'[;] [a] lengthy delay, even if unexcused, that does not result in prejudice does not support a laches defense," but "a brief unexcused delay that causes sufficient prejudice to the defendant is a proper ground for invocation of the doctrine").

In the instant case, it is clear that the EPPs delayed in seeking a set-aside order. The EPPs could have asked the Retailer Plaintiffs to enter into some kind of set-aside agreement when the

---

the fund"; also stating that free riding concerns "arise when people sit back and watch one plaintiff work hard (and spend hard) *to obtain a favorable result*, only to swoop in and benefit from that result in the end") (emphasis added); *In re Terrorist Attacks on September 11, 2001*, No. 03-MDL-01570 (GBD)(SN), 2019 U.S. Dist. LEXIS 169698, at *295-96 (S.D.N.Y. Sept. 30, 2019) (stating that, "under the common benefit doctrine, an award of attorney's fees is appropriate where [*e.g.*] the plaintiff's *successful* litigation confers a substantial benefit on the members of an ascertainable class") (emphasis added). EPPs have not cited any case such as this involving a class action in which the party seeking the set aside lost their case.

Moreover, the Court acknowledges that the Retailer Plaintiffs have raised a significant policy argument as to why success should be a requirement in order for a party moving for a set-aside order to obtain relief. That is, if success were not required, then lead counsel could take a gamble with its client's recovery, safe in the knowledge that it could still get some fees through a plaintiff that it did not represent if that plaintiff succeeded. *See* Opp'n at 12 ("An award of fees to counsel who gambled away their clients' recovery trying to hit a jackpot at trial when their clients are left with nothing would encourage reckless behavior by class counsel and punish responsible counsel who correctly advised their own clients to settle. To avoid such perverse incentives, lawyers who have lost a case on behalf of their own clients should not be permitted to take the fees of other lawyers who competently and prudently advised their clients to settle."). On the other hand, the EPPs argue there are policy arguments to the contrary – *i.e.*, if only prevailing counsel can seek a set aside order, class counsel might have an incentive to compromise the interests of the class in reaching a less-then-optimal settlement in order to be in a position to seek a set aside order.

United States District Court
Northern District of California

1    Retailers first filed suit in 2021 (*e.g.*, an agreement to a holdback in exchange for access to

2    common benefit work), but they did not.  *Cf. In re Bard Ivc Filters Prod. Liab. Litig.*, No. 22-

3    15872, 2023 U.S. App. LEXIS 22334, at *5 (9th Cir. Aug. 24, 2023) ("We hold that a district

4    court properly exercises its authority to order common benefit fund holdback assessments from

5    claimants' recoveries in non-MDL cases when (1) counsel for claimants voluntarily consents to the

6    district court's authority by signing, or otherwise entering into, a participation agreement requiring

7    contributions in exchange for access to common benefit work product, (2) that participation

8    agreement is incorporated into a court order, and (3) as a result of entering the participation

9    agreement, counsel receives access to common benefit work product.").

10         The EPPs also could have asked the Retailers to enter into some kind of set-aside

11   agreement at any time before trial.  The EPPs did not.

12         At the hearing, the EPPs pointed out for the first time that the various plaintiffs *did* enter

13   into a joint prosecution agreement ("JPA") wherein the parties reserved their positions regarding

14   fees and costs.  However, that agreement was not submitted in conjunction with the pending

15   motion, nor was the JPA ever previously provided to the Court, and thus should not be considered

16   in respect to the instant motion.  *See* Docket No. 1692 (Mot., Ex. A) (simply referring to the JPA

17   but not providing a copy of the agreement).  And in any event, the EPPs admit that the plaintiffs

18   did not reach an agreement on a set aside as part of the JPA; that being the case, that should have

19   put even more of a premium on the filing of a motion for a set aside – and sooner rather than later.

20   The failure of the EPPs to act is puzzling given that, in other cases (*e.g.*, *Zetia*), counsel for the

21   EPPs did move for relief, at the very least prior to trial.

22         The EPPs contend that there are cases in which a plaintiff has successfully moved for a set-

23   aside order after a judgment has been entered or a settlement reached.  *See* Reply at 14-15.  But

24   those cases largely appear to be distinguishable given that, in those cases, lead counsel had

25   succeeded itself, and thus was in a stronger position to argue unjust enrichment.  Furthermore, it

26   does not appear that laches was ever raised or addressed in those cases.  The point here is that the

27   EPPs took a risk by not seeking relief sooner; they must now bear the consequences of that risk.

28   *Cf. Vincent v. Hughes Air West, Inc.*, 557 F.2d 759, 764 (9th Cir. 1977) (referring to lower court

order which did *not* require settlements already completed to be subject to the contribution order).

Having established that the EPPs did delay in seeking relief, the Court now turns to the issue of prejudice.  The Court finds that the Retailer Plaintiffs have adequately established that the EPPs' delay was prejudicial.  Had the Retailer Plaintiffs known that the EPPs would seek a set aside from them (8% of any recovery), that clearly would have informed the Retailer Plaintiffs' position in settlement discussions with Defendants.  In other words, had the Retailer Plaintiffs known differently, they might have negotiated for a different result.

Accordingly, the Court concludes that laches bars the EPPs from seeking relief here.  The Court also notes that the EPPs have pointed to no other case where a plaintiff has been granted a set-aside order even though it waited to seek relief until after both (1) another plaintiff settled *and* (2) the plaintiff itself proceeded to trial and lost.[5]

### III.   CONCLUSION

For the foregoing reasons, the EPPs' motion for a set-aside order is denied.

This order disposes of Docket No. 2080.


**IT IS SO ORDERED**.


Dated: November 8, 2023


_____

EDWARD M. CHEN
United States District Judge

---

[5] Although the Court is denying the EPPs' motion based on laches, it notes that there are also serious questions about the merits of the EPPs' motion.  For example, arguably, the Retailer Plaintiffs have not been unjustly enriched because, even if their position at settlement was informed by the EPPs' prior work, ultimately the reason why the Retailer Plaintiffs achieved success was because their counsel prepared for trial and made a good risk assessment, and not simply because they were effortlessly free riding on the coattails of the EPPs (who made a different risk assessment).  *Cf. Roundup*, 544 F. Supp. 3d at 965-66 (addressing lead counsel's argument that the set-aside order should apply to a plaintiff who is not part of the MDL but whose attorney represents someone in the MDL; "while much of the pretrial work was done in the MDL, and while much of that work laid the groundwork for the three trials, ultimately it was the three jury verdicts that brought Monsanto the table, and two of those were not even in federal court").